CASE NO. 20-15029

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――――

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company as successor to Insurance Company of North
America; ALLIANZ UNDERWRITERS INSURANCE COMPANY;
CHICAGO INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; and THE CONTINENTAL
INSURANCE COMPANY

*Appellants,*

v.

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES
CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT

*Respondents.*

―――――――――

Appeal From The United States District Court,
Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB,
Hon. William B. Shubb

―――――――――

## APPELLANTS' OPENING BRIEF

―――――――――

Wood, Smith, Henning & Berman LLP
THOMAS F. VANDENBURG (STATE BAR NO. 163446)
NICHOLAS M. GEDO (STATE BAR NO. 130503)
STRATTON P. CONSTANTINIDES (STATE BAR NO. 305103)
10960 WILSHIRE BLVD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024
TEL: (310) 481-7600 / FAX: (310) 481-7650

*Attorneys for Proposed Intervenors - Appellants,*
*CENTURY INDEMNITY COMPANY, ALLIANZ UNDERWRITERS INSURANCE*
*COMPANY, CHICAGO INSURANCE COMPANY, and FIREMAN'S FUND*
*INSURANCE COMPANY*

Nicolaides Fink Thorpe Michaelides Sullivan LLP
SARA M. THORPE (STATE BAR NO. 146529)
RANDALL P. BERDAN (STATE BAR NO. 199623)
101 MONTGOMERY STREET, SUITE 2300
SAN FRANCISCO, CA 94104
TEL: 415-745-3770 / FAX: 415-745-3771

*Attorneys for Proposed Intervenor - Appellant,*
*THE CONTINENTAL INSURANCE COMPANY*

## CORPORATE DISCLOSURE STATEMENT

Proposed Intervenor-Appellant Century Indemnity Company is a wholly owned subsidiary of Brandywine Holdings Corp., which is a wholly owned subsidiary of INA Financial Corp.  INA Financial Corp. is a wholly owned subsidiary of INA Corporation, which is a wholly owned subsidiary of Chubb INA Holdings, Inc.  Chubb INA Holdings, Inc. is 80% owned by Chubb Group Holdings Inc. and 20% owned by Chubb Limited.  Chubb Group Holdings, Inc. is a wholly owned subsidiary of Chubb Limited.  Chubb Limited, the ultimate parent corporation, is publicly traded (NYSE: CB).

Proposed Intervenor-Appellant Allianz Underwriters Insurance Company Allianz Underwriters Insurance Company, an Illinois corporation, is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, an Illinois corporation ("AGR US"). Eight percent (8%) of the equity and twenty percent (20%) of the voting control of AGR US are held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE. Ninety-two percent (92%) of the equity and eighty percent (80%) of the voting control of AGR US are held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE. Allianz SE is a publicly

held company that indirectly holds ten percent (10%) or more of Allianz Underwriters Insurance Company's stock.

Proposed Intervenor-Appellant Chicago Insurance Company Chicago Insurance Company, an Illinois corporation, is a wholly owned subsidiary of Proposed Intervenor-Appellant Fireman's Fund Insurance Company, a California corporation, which in turn is a wholly owned subsidiary of Allianz Global Risks US Insurance Company, an Illinois corporation ("AGR US"). Eight percent (8%) of the equity and eighty percent (80%) of the voting control of AGR US are held by Allianz of America, Inc., which is a wholly owned subsidiary of Allianz Europe B.V., a wholly owned subsidiary of Allianz SE. Ninety-two percent (92%) of the equity and twenty percent (20%) of the voting control of AGR US are held by AGCS International Holding B.V., which is a wholly owned subsidiary of Allianz Global Corporate & Specialty SE, a wholly owned subsidiary of Allianz SE. Allianz SE is a publicly held company that indirectly holds ten percent (10%) or more of Fireman's Fund Insurance Company (and its subsidiaries, including Chicago Insurance Company).

Proposed Intervenor-Appellant The Continental Insurance Company is a wholly owned (100%) subsidiary of Continental Casualty Company, Inc., which is a wholly-owned (100%) subsidiary of The Continental Corporation, which is a wholly-owned (100%) subsidiary of CNA Financial Corporation, which is an

owned (approximately 89%) subsidiary of Loews Corporation.  No parent entity or publicly held entity owns 10% or more of the stock of Loews Corporation.


DATED: April 8, 2021          WOOD, SMITH, HENNING & BERMAN LLP


By:      */s/ Thomas F. Vandenburg*
          THOMAS F. VANDENBURG
          NICHOLAS M. GEDO
          STRATTON P. CONSTANTINIDES
Attorneys for Proposed Intervenors-Appellants,
CENTURY INDEMNITY COMPANY,
ALLIANZ UNDERWRITERS INSURANCE
COMPANY, CHICAGO INSURANCE
COMPANY, and FIREMAN'S FUND
INSURANCE COMPANY


DATED: April 8, 2021          NICOLAIDES FINK THORPE MICHAELIDES
SULLIVAN LLP


By:      */s/ Randall P. Berdan*
          SARA M. THORPE
          RANDALL P. BERDAN
Attorneys for Proposed Intervenor-Appellant,
THE CONTINENTAL INSURANCE
COMPANY

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ................................................................1

STATEMENT OF ISSUES PRESENTED ..............................................6

STATEMENT OF FACTS ....................................................................6

I.  PREDECESSOR ENTITIES OF C&A PRODUCTS, LLC BOUGHT
    THE SUBJECT PROPERTY IN 1979, ALLEGEDLY OPERATED
    THE SITE UNTIL 1982, AND PERFORMED THERE UNDER THE
    DTSC'S SUPERVISION UNTIL 2005. ..........................................6

II. IN 2005, C&A PRODUCTS, LLC DECLARED BANKRUPTCY
    AND ALLEGEDLY STOPPED PERFORMING REMEDIATION
    ACTIVITIES ON THE SUBJECT SITE. ......................................8

III. AFTER THE DTSC INITIATED THE INSTANT ACTION IN 2014,
     C&A PRODUCTS, LLC'S RECEIVER CHOSE TO *ALLOW DTSC
     TO TAKE C&A PRODUCTS, LLC'S DEFAULT* AND ALSO
     FAILED TO NOTIFY PROPOSED INTERVENORS OF THAT
     DEFAULT. ...............................................................................10

     A.  The DTSC Paid for the Appointment of a Receiver for C&A
         Products, LLC in 2014, with the Appointment Order Providing
         that that Receiver Had "the Power, but Not the Obligation" to
         Defend C&A Products, LLC in any Litigation. ...................10

     B.  After The DTSC Served the Receiver with Its FAC in
         December 2014, He Chose Not to Defend C&A Products, LLC
         and to Allow DTSC to Take C&A Products, LLC's Default, and
         Then Failed to Notify any of C&A Products, LLC's Putative
         Insurers of the Litigation or the Default. ............................11

     C.  After Taking C&A Products, LLC's Default without Notifying
         the Proposed Intervenors, Between 2015 and 2018, the DTSC
         Settled with and Dismissed All Defendants Except C&A
         Products, LLC. ..................................................................12

IV. IN OCTOBER 2019, WITHIN *WEEKS* OF LEARNING OF THE
    ACTION'S EXISTENCE, THE PROPOSED INTERVENORS
    MOVED TO INTERVENE AND TO VACATE THE DEFAULT,
    BUT THE DISTRICT COURT DENIED THAT MOTION. .................13

STATEMENT OF JURISDICTION.................................................19

APPEALABILITY ...................................................................................**19**

STANDARD OF REVIEW .....................................................................**19**

ARGUMENT ...........................................................................................**21**

I.     THE PROPOSED INTERVENORS ARE ENTITLED TO
INTERVENE IN THE INSTANT ACTION AS A MATTER OF
RIGHT. ........................................................................................**21**

     A.    Intervention as a Matter of Right Under *F.R.C.P.* Rule 24(a)(2)
Is Governed by the Four-Part *Citizens for Balanced Use* Test.**21**

     B.    The Proposed Intervenors' Motions to Intervene Were as
Timely as Possible, Given the DTSC's and Receiver's Failure to
Notify Them of the Litigation's Existence for Almost Five
Years. .......................................................................................**22**

          1.    The Proposed Intervenors Acted with Diligence, and the
Receiver's Dilatory Conduct Cannot Be Imputed to Their
Insured. ..........................................................................**22**

          2.    The Requested Interventions Will Not Prejudice the
DTSC. ............................................................................**27**

     C.    The Only Remaining Party in the Instant Action—the DTSC—
Will Absolutely Not Represent the Proposed Intervenors'
Interests, Since Its Interests Are Completely Adverse to Theirs. **28**

     D.    The Proposed Intervenors Have a Significant Protectable
Interest in the Litigation. .......................................................**29**

          1.    Irrespective of Whether the Trial Court Erred in Ruling
that the Proposed Intervenors Had to Issue a Reservation
of Rights in Order to Have a Protectable Interest, Allianz
Did Issue Such a Reservation. ......................................**29**

          2.    In any Case, the District Court Erred in Ruling that the
Proposed Intervenors Lack a Protectable Interest. ........**30**

               (a)    The Proposed Intervenors Have a Significant
Protectable Interest in this Action Because the
DTSC Intends to File Section 11580 Coverage
Actions Directly Against Those Carriers. ..............**30**

               (b)    The Authorities on Which the District Court
Relied in Ruling that the Proposed Intervenors

Have No Protectable Interest in the Instant Action
Are Completely Distinguishable and Irrelevant.............**36**

E. The Proposed Intervenors' Interests Will Be Significantly
Impaired if They Are Deprived of Their Right to Intervene. ............**42**

II. IN ANY CASE, PROPOSED INTERVENORS ARE ALSO
ENTITLED TO PERMISSIVE INTERVENTION UNDER *F.R.C.P.*
Rule 24(b). ...............................................................................**45**

III. GOOD CAUSE EXISTS TO VACATE THE ENTRY OF DEFAULT
AGAINST C&A PRODUCTS, LLC UNDER THE *F.R.C.P* Rule
55(c) / *JOE HAND PROMOTIONS* STANDARD.......................**46**

A. The Default Was Entered Solely as a Result of the DTSC and
Its Receiver's Conduct, Rather than from any Culpability on the
Part of C&A Products, LLC or the Proposed Intervenors. .............**46**

B. The Proposed Intervenors Have Meritorious Defenses that They
Could Assert on C&A Products, LLC's Behalf if the Default Is
Vacated. ...............................................................................**50**

C. The DTSC Will Not Be Prejudiced if the Default Is Set Aside.........**55**

IV. CONCLUSION.......................................................................**57**

# TABLE OF AUTHORITIES

**Page**

## CASES

*Agyeman v. INS*, 296 F.3d 871 ................................................................20

*Akina v. Hawaii*, 835 F.3d 1003 ............................................................19

*Allen v. Bedolla*, 787 F.3d 1218 ............................................................20

*Arakaki v. Cayetano* 324 F.3d 1078 .......................................................28

*Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 .........................19

*Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610 ...............................48

*Brandt v. Am. Bankers Ins. Co. of Florida*, 653 F.3d 1108 ..................20

*Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108...........48

*Carroll v. Abbott Laboratories, Inc.* (1982) ..........................................26

*Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260 .........52

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 11CV1277 BTM(WMc), 2012 .......52

*Citizens for Balanced Use v. Montana Wilderness Ass'n.*, 647 F.3d 893...............21

*City of Emeryville v. Robinson*, 621 F.3d 1251 .....................................42

*City of Houston v. American Traffic Solutions, Inc*. 668 F.3d 291 ........22

*CML V, LLC v. Bax*, 6 A.3d 238 ............................................................24

*Coon v. Grenier*, 867 F.2d 73 ................................................................50

*Donnelly v. Glickman*, 159 F.3d 405 .....................................................19

*Edwards v. City of Houston*, 78 F.3d 983 ..............................................19

*Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038.........................19

*Falk v. Allen*, 739 F.2d 461 ...................................................................55

*Fisher v. Townsends, Inc*. (Del. Supr.), 695 .........................................25

*Flying J, Inc. v. J.B. Van Hollen*, 578 F.3d 569....................................31

*Franchise Holding II v. Huntington Restaurants Group, Inc.*, 375 F.3d 922 .........20

*Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922 .......... 55

*Gray v. Begley,* 182 Cal.App.4th 1509 .................................................... 36

*Hinton v. Beck* (2009) 176 Cal.App.4th 1378 ............................................ 37

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349 ...................... 50

*Key Tronic Corp. v. U.S.*, 511 U.S. 809, 817 (1994) .................................... 54

*Kleissler v. United States Forest Service,* 157 F.3d 964 ............................... 30

*Meadows v. Dominican Republic*, 817 F.2d 517 ........................................ 48

*Mendoza v. Wight Vineyard Management*, 783 F.2d 941 ............................... 51

*NAACP v. New York*, 413 ................................................................ 23

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 .............................. 22

*O'Connor v. Nevada*, 27 F.3d 357 ...................................................... 48

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811 ..................................... 48

*Perry v. Schwarzenegger*, 630 F.3d 898 ................................................ 19

*Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967 ............................... 20

*Reliance Insurance Co. v. Superior Court*, 84 Cal.App.4th 383 ........................ 32

*Sagebrush Rebellion, Inc. v. Watt* (9th Cir. 1983) 713 F.2d 525 ...................... 28

*Secci v. United Independent TaxiDrivers, Inc.* (2017) ................................. 25

*Smith v. Pangilinan*, 651 F.2d 1320 .................................................... 30

*Stallworth v. Monsanto Co.*, 558 F.2d 257 ............................................. 46

*TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691 .................................. 48

*Thompson v. American Home Assur. Co.*, 95 F.3d 429 ................................. 55

*Tomassi v. Scarff* (2000) 85 Cal.App.4th 1053 ........................................ 37

*U.S. v. Alisal Water Corp.*, 370 F.3d 915 ............................................... 20

*U.S. v. Oregon*, 913 F.2d 576 .......................................................... 22

*UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 ........................... 45

*United States v. Aguilar*, 782 F.3d 1101 ............................................... 20

*United States v. Alisal Water Corp.*, (9th Cir. 2004) .................................. 31

*United States v. Consolidation Coal Co.*, 345 F.3d 409 ........................................53

*United States v. Union Electric Co.*, 64 F.3d 1152 ...................................................31

*Utica Mut. Ins. Co. v. Hamilton Supply Co.*, No. C 06-07846 ...............................27

*Venegas v. Skaggs,* 867 F.2d 527 ..............................................................................46

*WildEarth Guardians v. National Park Service*, (10th Cir. 2010) 604 F.3d
1192 .................................................................................................................30

*WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992 ..................................42

*Willoughby v. Howard*, 302 .......................................................................................24

## STATUTES

28 *U.S.C.* § 1291 ......................................................................................................19

28 *U.S.C.* § 1331 ......................................................................................................19

42 *U.S.C.* § 9601(9) ..................................................................................................51

42 *U.S.C.* § 9607 ....................................................................................................9, 51

42 *U.S.C.* § 9613(g)(2) ............................................................................................51

42 *U.S.C.* §§9601 ....................................................................................................19

California *Health & Safety Code §§ 25300* ..............................................................9

## RULES

*F.R.C.P.* Rule 24(a) ................................................................................. 1, 6, 19, 21

*F.R.C.P.* Rule 24(b)(2) ...............................................................................................20

*F.R.C.P.* Rule 55(c) ................................................................................... 4, 6, 46

Rule 24(a)(2) .................................................................................................. passim

Rule 24(b) ....................................................................................... 6, 20, 45, 46

Rule 60(b) ......................................................................................................... 47, 48

Proposed Intervenors and Appellants Century Indemnity Company ("Century")[1], Allianz Underwriters Insurance Company ("Allianz"), Chicago Insurance Company ("Chicago"), Fireman's Fund Insurance Company ("FFIC")[2], and The Continental Insurance Company ("Continental") (collectively, the "Proposed Intervenors"), as putative insurers of defendant Collins & Aikman Products, LLC ("C&A Products, LLC"), submit the following Opening Brief:

## SUMMARY OF ARGUMENT

Plaintiff/Appellee the Department of Toxic Substances Control (the "DTSC") has manipulated the legal system in an attempt to make the Proposed Intervenors vulnerable and inert, incapable of raising any defense to the DTSC's liability and damages claims against their insured and left only with defenses relating to coverage issues. The District Court erred when it denied those carriers' motions seeking to intervene in this action as a matter of right under *F.R.C.P.* Rule 24(a)(2) and to vacate the default entered against their insured, as such relief represents the only way to protect their right to fundamental due process.

---

[1] Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America

[2] Allianz Reinsurance America, Inc., handles legacy claims involving insurance policies issued by Proposed Intervenors Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company. (2-ER-160-81.) The subject motions seeking to intervene and to vacate the default entered against C&A Products, LLC were filed in the names of Century, Continental, and Allianz.

In its operative First Amended Complaint ("FAC"), the DTSC alleged that that the putative insured, C&A Products, LLC, and multiple co-defendants were liable under CERCLA for cleanup/remediation costs incurred at an Elmira, California wood preserving facility. Because C&A Products, LLC was a cancelled corporate entity, the DTSC petitioned and paid for a Delaware receiver to be appointed for the express purpose of allowing it to pursue its claims against that company; the DTSC paid that receiver's fees, and his appointment order gave him "the power, but not the obligation" to defend C&A Products, LLC in the instant action.

When the DTSC served that FAC on the receiver in December, 2014, the DTSC-paid and arranged receiver did not retain counsel to defend C&A Products, LLC, file any responsive pleading on its behalf, tender its defense to the Proposed Intervenors, or even notify those carriers or C&A Products, LLC of the litigation. He instead allowed the DTSC to take C&A Products, LLC's default in March, 2015, again without notifying C&A Products, LLC or its insurers of that fact.

The DTSC then litigated its claims against C&A Products, LLC's co-defendants for four years, and after reaching settlements and consent decrees with them in late 2018, applied for a default judgment of $3,219,449.85 against C&A Products, LLC and a declaration that "C&A Products is jointly and severally liable without regard to fault to the Plaintiffs for all costs incurred after May 31, 2019,

and future response costs incurred by the [DTSC] as a result of the release and threatened release of hazardous substances at and/or from the Site." The DTSC represented to the Proposed Intervenors that it would not execute on that judgment against C&A Products, LLC, but would try instead to bootstrap it as a vehicle to pursue direct coverage actions against that company's historic insurers under California *Insurance Code* § 11580.

Only after applying for that default judgment did the DTSC, through an intermediary, notify the Proposed Intervenors on September 10, 2019 of the litigation, the default entered against their insured, and the pending default judgment application. That late-2019 notice of the early-2015 default was the first that those carriers had heard of any of those events, and their counsel scrambled to file motions seeking to intervene and vacate the default over the next few weeks.

Given those facts, the District Court erred in ruling that, because they had not accepted coverage or issued any reservation of rights within mere weeks of receiving notice of the litigation, Proposed Intervenors Century and Continental lacked the "significant protectable interest" in the instant action such that they could intervene as a matter of right under Rule 24(a)(2).

The court's reliance on authorities which suggested that such a reservation was required before an insurer could intervene in an action against its insured was misplaced. Those cases involved situations in which an insured actually faced

exposure in an action and tendered its defense to the carrier, a carrier actually had an opportunity to defend that insured, and the action against the insured did not merely represent a springboard for a direct coverage action against the insurer in which the judgment against the insured would determine that insurer's potential exposure—in complete contrast to the circumstances in the instant case.

The District Court likewise erred in denying Proposed Intervenor Allianz's intervention motion; while Allianz had, in fact, issued a reservation of rights, the court ruled that, because Allianz was an excess carrier, and the DTSC had not yet determined which primary carrier would be responsible for liability imposed on C&A Products, LLC, Allianz could not intervene to protect its interests.

That ruling, however, was fundamentally inconsistent with the black-letter rule that, under Rule 24(a)(2), a proposed intervenor bears only the "minimal burden" of showing that "impairment of its substantial legal interest is possible if intervention is denied" (emphasis added). Since the evidence that the DTSC itself submitted indicated that Allianz had issued excess policies covering several relevant periods during the Site's operation, it is absolutely possible that the potential $3,219,449.85 judgment, coupled with a declaration of liability for all future remediation costs against its insured, could impair Allianz's legal interests. In any case, a party's right to intervene should never be dependent on the opposing party's engineering of the facts.

-4-

The Proposed Intervenors are also entitled to an order permitting them to intervene to defend their respective interests directly as parties, by vacating the default entered against their insured pursuant to *F.R.C.P.* Rule 55(c), or both. Before taking that default, neither the DTSC nor its agent and apparent puppet, the appointed receiver for the defunct C&A Products, LLC, ever notified that insured or those carriers of the litigation, the service of the FAC on the receiver, or the receiver's choice not to defend the insured. In these circumstances, as a matter of law, the default did not result from any culpability on C&A Products, LLC's part.

The Proposed Intervenors also alleged potential meritorious defenses to the DTSC's claims, specifically, with respect to the DTSC's claimed total damages, the consistency of its claimed costs with the National Contingency Plan, its right to recover attorneys' fees, and its right to pre-judgment interest.

Finally, vacating the default will not result in prejudice to the DTSC, since it has not conducted any discovery or done anything to develop a substantive case against C&A Products, LLC. Merely having to prosecute its case on the merits does not constitute prejudice under Rule 55(c).

The DTSC is charged with the important task of cleaning up toxic contamination in California sites. That laudable end, however, does not justify the means it employed in this case to manipulate the legal system and deprive the Proposed Intervenors and their insured of basic due process. Reversing the District

-5-

Court's denial of those carriers' requests to intervene and to vacate the default entered against their insured represents the only way to protect their rights and prevent a gross injustice.

## STATEMENT OF ISSUES PRESENTED

1.     Are the Proposed Intervenors entitled to intervene in this action as a matter of right under *F.R.C.P.* Rule 24(a)(2)?

2.     Are the Proposed Intervenors entitled to permissive intervention in this action under *F.R.C.P.* Rule 24(b)?

3.     Pursuant to *F.R.C.P.* Rule 55(c), are the Proposed Intervenors entitled to vacate the default against C&A Products, LLC obtained by DTSC in 2015?

## STATEMENT OF FACTS

**I.**     **PREDECESSOR ENTITIES OF C&A PRODUCTS, LLC BOUGHT THE SUBJECT PROPERTY IN 1979, ALLEGEDLY OPERATED THE SITE UNTIL 1982, AND PERFORMED THERE UNDER THE DTSC'S SUPERVISION UNTIL 2005.**

According to allegations in the DTSC's First Amended Complaint ("FAC") in this action,[3] between 1972 to September 12, 1979, an entity called Pacific Wood

---

[3] Except where otherwise indicated, all pre-September, 2019 events described in this Statement of Facts are based on the FAC's allegations, since the Proposed Intervenors have never had any opportunity to conduct any discovery in this action. Those allegations are set forth in order to give this court a description of the nature

Preserving operated a wood preservation business at the property located at 147A
Street, Elmira, California 95625 (the "Site"). (3-ER-530, ¶ 17.) In September
1979, Pacific Wood Preserving sold the Site and business to The Wickes
Corporation ("Wickes"). (3-ER-531, ¶ 16.) Wickes and then its corporate
successor, Collins & Aikman Products Co. ("C&A Products Co."), owned the Site
until March 20, 1997. (3-ER-530-31, ¶¶ 15, 16.)

During their respective operations at the Site which ended in 1982, Pacific
Wood Preserving and Wickes allegedly released hazardous substances, including
arsenic, chromium, and copper, into the surrounding environment. (3-ER-531, ¶
19.) From the 1980s through 2005, Wickes and then C&A Products, Co. took
responsive actions under the oversight of DTSC and its predecessor agency to
address contamination there, including soil excavation, installation of an asphalt
cap over contaminated soils, construction of a building and drainage system over
another contaminated area, installation/operation of a groundwater extraction and
treatment system, and groundwater monitoring. (3-ER-531, ¶ 20.)

In March 1996, DTSC and C&A Products Co. entered into an "Operation
and Maintenance Agreement," which certified implementation of the final remedial
action at the Site. (4-ER-704-14.) C&A Products Co. agreed to perform soil

---

of the DTSC's claims, and those intervenors do not concede that any of them are
necessarily true.

excavation and off-site disposal, install an asphalt cap, and conduct ground water

extraction and treatment in an on-site chemical treatment plant.  (4-ER-708, ¶ 7.A.)

It also agreed that, as part of post-closure activities, it would continue to extract,

treat, sample, and analyze groundwater and take samples and otherwise monitor

the on-site chemical treatment system and asphalt cap on the Site.  (4-ER-711, ¶

12.A.)

On March 20, 1997, C&A Products Co. allegedly sold the Site to defendants

Jim Dobbas, Inc. and Continental Rail, Inc., but continued to address

environmental contamination there. (3-ER-532, ¶ 22.)

## II.  IN 2005, C&A PRODUCTS, LLC DECLARED BANKRUPTCY AND ALLEGEDLY STOPPED PERFORMING REMEDIATION ACTIVITIES ON THE SUBJECT SITE.

On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the

United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-

55932, jointly administered with the bankruptcy cases of other debtors under Case

No. 05-55927.  (3-ER-532, ¶ 23.)  In the summer of 2005, while in Chapter 11

bankruptcy proceedings, C&A Products Co. allegedly stopped its remediation

efforts.  (3-ER-532, ¶ 24.)

In 2006, DTSC requested that Jim Dobbas, Inc. and Continental Rail, Inc.,

as the then-owners of the Site, resume remediation efforts there.  (3-ER-532, ¶ 25.)

In December, 2007, however, they supposedly stopped doing so. (3-ER-533, ¶ 27.)

C&A Products, LLC was formed on or about December 6, 2007, as a conversion of C&A Products Co. (3-ER-530-31, ¶ 15.)

Jim Dobbas, Inc. and Continental Rail, Inc. sold the Site to David Van Over in 2011, and the DTSC then allegedly issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order requiring all three to conduct additional remediation activities. (3-ER-533, ¶¶ 30-31; 4-ER-627-48) All three allegedly failed to comply with those orders. (3-ER-533, ¶ 32.)

The DTSC then allegedly itself undertook responsive actions to remediate the Site, incurring unreimbursed costs. (3-ER-533-34, ¶¶ 33-36.) Those purported efforts included the repair and restart of the groundwater extraction and treatment system, completion of a remedial investigation of soils, preparation of a "Removal Action Workplan," implementation of the that plan in October and November 2011, and groundwater monitoring. (3-ER-533-34, ¶ 33.)

On March 3, 2014, the DTSC filed its original Complaint in the instant action against Jim Dobbas, Inc., Continental Rail, Inc., David Van Over, Pacific Wood Preserving, and West Coast Wood Preserving, seeking cost recovery under CERCLA, 42 *U.S.C.* § 9607, declaratory relief under CERCLA, 42 *U.S.C.* § 9613(g), and damages, injunctive relief, and civil penalties under the Hazardous

Substance Account Act, California *Health & Safety Code* §§ 25300, *et seq.* against potentially responsible parties at the Site.  (4-ER-749-60.)

## III. AFTER THE DTSC INITIATED THE INSTANT ACTION IN 2014, C&A PRODUCTS, LLC'S RECEIVER CHOSE TO *ALLOW DTSC TO TAKE C&A PRODUCTS, LLC'S DEFAULT* AND ALSO FAILED TO NOTIFY PROPOSED INTERVENORS OF THAT DEFAULT.

### A. The DTSC Paid for the Appointment of a Receiver for C&A Products, LLC in 2014, with the Appointment Order Providing that that Receiver Had "the Power, but Not the Obligation" to Defend C&A Products, LLC in any Litigation.

On December 8, 2014, the Delaware Court of Chancery appointed Brian Rostocki as the receiver for C&A Products, LLC "for the limited purpose of allowing [C&A Products, LLC] to be sued [in the instant action], and *with the power, but not the obligation, to defend, in the name of [C&A Products, LLC]*, any claims made against it."  (2-ER-186, lines 4-9;  s*ee also, In re Collins & Aikman Prods., LLC*, No. 10348-CB, 2014 WL 6907689, \*1-2 [Del. Ch. Dec. 8, 2014] [emphasis added.])

As receiver, Rostocki "act[ed] as registered agent in the State of Delaware for service of process on [C&A Products, LLC], including, without limitation, for service of process [in the DTSC Action]."  *Id*. at \*1.  At the December 2, 2019

-10-

hearing on the subject motions seeking to intervene, the DTSC conceded that <u>it had</u> <u>Rostocki appointed as a receiver in order to sue C&A Products, LLC, and paid his</u> <u>fees for his services</u>.  (2-ER-28, lines 1-11.)

**B.    After The DTSC Served the Receiver with Its FAC in December 2014, He Chose Not to Defend C&A Products, LLC and to Allow DTSC to Take C&A Products, LLC's Default, and Then Failed to Notify any of C&A Products, LLC's Putative Insurers of the Litigation or the Default.**

On December 11, 2014, the DTSC filed its FAC against C&A Products, LLC and other potentially responsible parties.  (3-ER-526-38.)  The DTSC served Rostocki with that FAC on December 18, 2014 (3-ER-522-23), but he chose not to retain counsel, file a responsive pleading, or otherwise take any steps to defend C&A Products, LLC.  (3-ER-516-18;  2-ER-186, lines 4-11.)  He also failed to give the Proposed Intervenors any notice of the FAC's filing  or service, or even of the litigation's existence.  (2-ER-240-42;  2-ER-214, lines 11-19;  2-ER-186, lines 4-11; 2-ER-161, lines 19-25.)

Given the absence of any responsive pleading, on March 25, 2015, the DTSC filed its request for the entry of C&A Products, LLC's default under *F.R.C.P.* Rule 55(a), with service again being on Rostocki but not on C&A Products, LLC or on the Proposed Intervenors.  (3-ER-516-18.)  On March 26,

2015, the clerk entered that default, again without any notice to C&A Products, LLC or on Proposed Intervenors.  (3-ER-515.)

**C.     After Taking C&A Products, LLC's Default without Notifying the Proposed Intervenors, Between 2015 and 2018, the DTSC Settled with and Dismissed All Defendants Except C&A Products, LLC.**

The DTSC took the defaults of Continental Rail, Inc. and Pacific Wood Preserving on June 2, 2014.  (4-ER-747-48.)  It then settled with defendants West Coast Wood Preserving for $350,000, Jim Dobbas, Inc. for $265,000, and David Van Over for $250,000, entering into public settlements and consent decrees with each of them.  (3-ER-433-38;  3-ER-492-94, ¶¶ 13, 23;  3-ER-478-80, ¶¶ 12, 22; 3-ER-454-56, ¶¶ 12, 25.)

The District Court approved those consent decrees on September 16, 2015, November 18, 2015, and March 28, 2018, respectively—again, all long before the Proposed Intervenors ever received notice of the DTSC Action.  (3-ER-487-500; 3-ER-473-86 and 3-ER-449-67.)

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. IN OCTOBER 2019, WITHIN *WEEKS* OF LEARNING OF THE ACTION'S EXISTENCE, THE PROPOSED INTERVENORS MOVED TO INTERVENE AND TO VACATE THE DEFAULT, BUT THE DISTRICT COURT DENIED THAT MOTION.

On August 21, 2019, the DTSC applied for entry of a default judgment of $3,219,449.85 against C&A Products, LLC and a declaration that "C&A Products is jointly and severally liable without regard to fault to the Plaintiffs for all costs incurred after May 31, 2019, and future response costs incurred by the [DTSC] as a result of the release and threatened release of hazardous substances at and/or from the Site." (3-ER-447.) Such future costs include groundwater monitoring well into the future. (2-ER-291-3-ER-322 [describing the continued response actions as including groundwater monitoring and constant maintenance of the asphalt cap].)

The DTSC served that application on Rostocki, but <u>not</u> on the Proposed Intervenors. (2-ER-241, lines 11-15; 2-ER-243-45; 2-ER-214, lines 11-19, 2-ER-216-18; 2-ER-161, lines 19-25; 2-ER-173-75.)

The Proposed Intervenors' first notice of the instant action, the default taken against C&A Products, LLC, and the pending DTSC request for a default judgment came through a letter that a company called the Arcina Risk Group ("Arcina") sent to those carriers on September 10, 2019—i.e., nearly <u>five years</u> after the DTSC had named C&A Products, LLC as a defendant in that Action. (2-ER-216-18; 2-ER-

-13-

240-45; 2-ER-173-75.) That letter also requested that those carriers "defend and indemnify" C&A Products, LLC, although it did <u>not</u> state on whose behalf it made that request. *Id.*

As the DTSC admitted in its opposition to the Proposed Intervenor's subject Motions to Intervene/Vacate Default (2-ER-95-127), however, Arcina actually sent that letter <u>on behalf of the DTSC itself</u>, as part of DTSC's effort to "locate additional coverage" by conducting "research into the existence of insurance policies that could cover" the periods when C&A Products, LLC operated the Site. (2-ER-106-07, lines 21-7.)

The only "tender" of C&A Products, LLC's defense and request for indemnity or coverage for it in this action to the Proposed Intervenors therefore came from the DTSC itself; there is no indication in the record that C&A Products, LLC itself, its appointed receiver, or anybody other than the DTSC ever made such a tender or request to those carriers. (See, entirety of record.)

As the DTSC also admitted, it only began its "research" into the existence of historic insurers and had Arcina contact those companies <u>after</u> it had settled its cases against the "solvent defendants" through the entry of the 2015 consent judgments. (2-ER-106-07, lines 21-7.)

The September 10, 2019 letter therefore represented those carriers' first notice that the DTSC's Application for Default Judgment was scheduled for

hearing on September 25, 2019, less than two weeks after those carriers' receipt of that letter.  (2-ER-221-42; 2-ER-188-220; 2-ER-128-81.)

In its subsequent communications with the Proposed Intervenors, the DTSC stated that it would "not seek enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a direct action against the company's historic insurers."  (2-ER-248, ¶ 6; 2-ER-264, ¶ 3 [emphasis added.])

After receiving the September 10, 2019 Arcina letter, the Proposed Intervenors immediately engaged outside counsel to seek to intervene in this action in order to protect their interests as C&A Products, LLC's putative insurers.  On September 20, 2019, October 17, 2019, and November 4, 2019, respectively, Continental, Century, and Allianz filed their subject Motions to Intervene and Set Aside Default.  (2-ER-221-39; 2-ER-188-212; 2-ER-128-59.)

Those motions were made in part on the grounds that those carriers had never had any notice of the litigation or opportunity to defend their interests, had never received a tender of defense from their insured itself, and had not even had time to reach or issue any formal decision regarding coverage.  *Id*.

On October 22, 2019, the District Court issued its order denying the motion to intervene and the request to set aside the default entered against C&A Products, LLC filed by The Travelers Indemnity Company—an insurer which is not one of the Proposed Intervenors.  (2-ER-182-87.)  Although it denied the intervention

motion, the District Court also noted in that order that, even if it had allowed Travelers to intervene, it would still have denied the motion seeking to vacate the default, reasoning that the receiver's dilatory conduct in failing to respond to the DTSC's FAC could be imputed to C&A Products, LLC.[4]  (2-ER-185-86, lines 22-11.)

On November 18, 2019, the DTSC filed its Memorandum of Points and Authorities in Opposition to Allianz's, Century's, and Continental's Motions to Intervene and Vacate Default.  (2-ER-95-127.)  In support of that opposition, the DTSC submitted as "Exhibit A" to the declaration of its counsel a "coverage chart" prepared by Arcina that purportedly reflected different primary and excess insurance policies applicable to the Site between May 1, 1978 and July 24, 1986. (2-ER-91-92.)

On November 25, 2019, Century and Continental filed their Joint Reply to Plaintiffs' Opposition, and on November 25, 2019, Allianz filed its Reply.  (2-ER-43-87.)  In those briefs, Century and Continental contended, among other things, that they were not precluded from intervening simply because they had not

---

[4] It should also be noted that, had Travelers been allowed to intervene, it would not have been bound by the default entered against its insured. *Western Heritage Insurance Co. v. Superior Court*, 199 Cal.App.4th 1196, 1206 (2011) (an "insurer intervening in an action to pursue its own interests after its insured has defaulted is not required to move to vacate the insured's default as to itself; the insured's default simply has no effect on the insurer.").

formally accepted coverage for or issued a reservation of rights with respect to any liability that could be imposed on their insured in the instant action. *Id*.

They specifically contended that circumstances in the instant case, including their inability to conduct discovery and especially the DTSC's expressed intent to pursue a third-party coverage action against those carriers pursuant to *Insurance Code* § 11580(b) based on any judgment that it could obtain against C&A Products, LLC, meant that the absence of any reservation of rights or acceptance of coverage could not preclude their intervention. *Id*.

On December 2, 2019, the District Court conducted the hearing on those motions, and on December 4, 2019, it issued its order denying all of them. (1-ER-3-8.) With respect to Continental, the court based its denial on the evidence that Continental had "neither admitted coverage nor agreed to defend C&A Products on a reservation of rights." (1-ER-5, lines 7-9.)

As to its denial of Century's motion, the court stated that Century "disclaimed coverage of any claims arising from the DTSC litigation, citing a settlement agreement Century purportedly signed with C&A Products in 2000," citing to a portion of Century's Motion to Intervene. (1-ER-5, lines 24-27.)

Finally, with respect to Allianz's motion, the court noted that, unlike Continental or Century, Allianz had issued a reservation of rights with respect to the instant action. (1-ER-6, lines 14-18.) The court, however, nonetheless denied

-17-

Allianz's motion on the grounds that it was an excess rather than a primary insurer; the court reasoned that, "because DTSC has yet to determine which primary insurer…will be responsible for [C&A Products, LLC's] damages," it could not determine "what the 'primary indemnity limits' are" (1-ER-8, lines 3-10.)—i.e., whether the primary policy limits would be exhausted, so that Allianz's excess policy could be reached.

The court's rationale ignores the evidence that the DTSC itself submitted indicating that Allianz had issued excess policies covering several relevant periods during the Site's operation. It is therefore possible that the potential $3,219,449.85 judgment, coupled with a declaration of liability for all future remediation costs against its insured, could impair Allianz's legal interests.

The District Court's December 4, 2019 order did not address the Proposed Intervenors' requests to vacate the default. (1-ER-3-8.) On December 18, 2019, the court issued an order setting the hearing on the DTSC's Application for Default Judgment (3-ER-445-48) for January 29, 2020 (2-ER-42.)

On January 3, 2020, the Proposed Intervenors then filed their timely appeal of the December 4, 2019 order. (4-ER-797-809.) On February 26, 2020, the District Court issued an order staying the action and vacating the hearing on the DTSC's default judgment application, pending this appeal. (2-ER-12-13.)

/ / /

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over this action pursuant to 28 *U.S.C.* § 1331, as the DTSC's action was based on federal law, i.e., CERCLA, 42 *U.S.C.* §§9601, *et seq*.

## APPEALABILITY

The denial of a motion to intervene of right is an appealable final order under 28 *U.S.C.* § 1291. *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

## STANDARD OF REVIEW

A District Court's determination of whether a third party is entitled to intervene in an action as a matter of right under *F.R.C.P*. Rule 24(a) is reviewed under the de novo standard. *See, Akina v. Hawaii*, 835 F.3d 1003, 1011 (9th Cir. 2016); *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (per curiam). That de novo standard includes review of whether Rule 24(a)'s legal requirements were met. *See Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

Under that standard, the appellate court must consider the matter anew, as if no decision previously had been rendered, and no deference is given to the District Court. *See, Barrientos v. Wells Fargo Bank, N.A*., 633 F.3d 1186, 1188 (9th Cir.

2011); *Agyeman v. INS*, 296 F.3d 871, 876 (9th Cir. 2002) (review is "independent").

A District Court's determination of whether an application to intervene is timely is reviewed for an abuse of discretion. *See Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015); *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 918-19 (9th Cir. 2004). "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 977 (9th Cir. 2003) (citation and internal quotation marks omitted).

A District Court's decision regarding whether permissive intervention pursuant to *F.R.C.P.* Rule 24(b)(2) is appropriate is also reviewed under the abuse of discretion standard. *See Allen*, supra, 787 F.3d at 1222; *Perry*, supra, 630 F.3d at 905-06.

Likewise, the denial of a motion seeking to set aside a default is reviewed for an abuse of discretion. *See United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015); *Brandt v. Am. Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1110-11 (9th Cir. 2011); *Franchise Holding II v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).

As discussed further below, under these standards of review, the Proposed Intervenors are entitled to a reversal of the subject December 4, 2019 order.

## ARGUMENT

### I. THE PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE IN THE INSTANT ACTION AS A MATTER OF RIGHT.

#### A. Intervention as a Matter of Right Under *F.R.C.P.* Rule 24(a)(2) Is Governed by the Four-Part *Citizens for Balanced Use* Test.

*F.R.C.P.* Rule 24(a) provides in relevant part:

**(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

\* \* \*

(2) <u>claims an interest relating to the property or transaction that is the subject of the action</u>, and is so situated that disposing of the action may <u>as a practical matter impair or impede the movant's ability to protect its interest</u>, unless existing parties adequately represent that interest.  (Emphasis added.)

Intervention is appropriate when:  1) The intervention application is timely;  2) The applicant has a significant protectable interest relating to the property or transaction that is the subject of the action;  3) The disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and 4) The existing parties may not adequately represent the applicant's interest. *Citizens for Balanced Use v. Montana Wilderness Ass'n.*, 647 F.3d 893, 897 (9th Cir. 2011).

In determining whether to permit intervention, a court is "guided primarily by practical considerations, not technical distinctions," and "the requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use*, *supra*, 647 F.3d at 897; *City of Houston v. American Traffic Solutions, Inc*. 668 F.3d 291, 293 (5th Cir. 2012) (although each element must be met, "intervention of right must be measured by a practical rather than technical yardstick" [internal quotes omitted]).

**B.     The Proposed Intervenors' Motions to Intervene Were as Timely as Possible, Given the DTSC's and Receiver's Failure to Notify Them of the Litigation's Existence for Almost Five Years.**

**1.     The Proposed Intervenors Acted with Diligence, and the Receiver's Dilatory Conduct Cannot Be Imputed to Their Insured.**

With respect to the timeliness prong of the Rule 24(a)(2) analysis, the Ninth Circuit considers:  1) The stage of the proceeding;  2) Whether the parties would be prejudiced;  and 3) The reason for the delay, if any, in moving to intervene. *See, Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).

The mere lapse of time alone does not necessarily preclude intervention. *See U.S. v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) (although underlying action had been underway for nearly 20 years when intervention was sought, "the length of

time that has passed since a suit was filed does not alone determine timeliness"). Timeliness is to "be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973).

In the instant case, these principles all militate in favor of finding that the Proposed Intervenors' motions were timely, and the DTSC did not argue otherwise in the District Court. Neither the DTSC nor receiver Rostocki ever notified the Proposed Intervenors of the litigation or the default, and those carriers only learned of those events through Arcina's September 10, 2019 letter, <u>five years</u> after the DTSC filed the action and only <u>two weeks</u> before the scheduled hearing on the its application seeking a default judgment.

Contrary to the District Court's conclusion in denying Travelers' intervention motion, in furthering the DTSC's interests to the detriment of C&A Products, LLC and its insurers through that conduct, Rostocki acted at all times as the DTSC's agent, and <u>not</u> as C&A Products, LLC's agent; his dilatory conduct therefore cannot be imputed to C&A Products, LLC.[5] In fact, the DTSC took advantage of

---

[5] As discussed *supra* at IV. of the Statement of Facts, while the District Court did not expressly deny the Proposed Intervenors' subject motions on the grounds that Rostocki's conduct could be imputed to C&A Products, LLC, it denied Travelers' motion in part on its conclusion that that motion was untimely because of the delay between service of the FAC on Rostocki and that motion's filing. In any case, as discussed *infra* at I.D.3.b. and III.A., Rostocki's status as the DTSC's agent impacts several other issues, including why the authorities on which the District Court relied in ruling that the Proposed Intervenors have no "significant protectable

Delaware law expressly providing that creditors of a cancelled LLC may seek

appointment of a receiver. *See CML V, LLC v. Bax*, 6 A.3d 238, 252 (Del.

Chancery Ct. 2010); 6 Del. C. § 18-805.

Every receiver of an estate has the duty to exercise "reasonable care in the

custody of the fiduciary estate," and this common law standard has been articulated

as that required by an "ordinarily prudent person." *United States ex rel.

Willoughby v. Howard*, 302 U.S. 445, 450 (1938); *In re Ebel*, 338 B.R. 862, 875

(Bankr. D. Colo. 2005).

A receiver appointed at the request of a creditor, such as the DTSC, must

"'safeguard the collection and administration of still existing property interests of a

dissolved' LLC." *In re Dow Chem. Int'l Inc.*, 2008 Del. Ch. LEXIS 147 at *4,

2008 WL 4603580, at *1 (Del. Ch. Oct. 14, 2008) (quoting *In re Citadel Indus.,

Inc.*, 423 A.2d 500, 506 (Del. Ch. 1980)).

Consequently, under both California and Delaware law, Rostocki acted in

the capacity of the DTSC's agent, rather than as an agent of C&A Products, LLC.

It is undisputed that the DTSC had him appointed solely for the purpose of

pursuing the instant action against C&A Products, LLC, and that the DTSC paid

him for those services. Those facts alone, even irrespective of his subsequent

---

interest" are distinguishable and why those carriers are entitled to vacate the
default entered against C&A Products, LLC.

conduct, establish his agency relationship with the DTSC under California and Delaware law. *See, Secci v. United Independent TaxiDrivers, Inc.* (2017) 8 Cal.App.5th 846, 855 (whether agency relationship exists is determined by the parties' relationship as it in fact exists by agreement or acts, especially the primary right of control); *Fisher v. Townsends, Inc.* (Del. Supr.), 695 A.2d 53, 58 (1997) (agency relationship created when one party consents to have another act on its behalf, with the principal controlling and directing agent's acts).

Rostocki's conduct during the course of his receivership—including failing to respond to the FAC on C&A Products, LLC's behalf, failing to retain counsel to defend the company, failing to tender its defense to its carriers or even to notify them of the litigation's existence, and allowing the DTSC to take its default and apply for a default judgment—also reflected that he was the DTSC's agent, acting at all times in its interests and without regard to those of C&A Products, LLC. *Secci, supra,* 8 Cal.App.5th at 855.

Indeed, Rostocki's appointment as C&A Products, LLC's receiver limited his mandatory obligations to accepting service for the express purpose of facilitating the DTSC's pursuit of insurance coverage. He had no other mandatory obligations because C&A Products, LLC was a cancelled entity with no assets other than insurance, and he therefore could not be characterized as C&A Products, LLC agent with respect to any aspect of its defense in this action.

In any case, even assuming for the sake of argument that Rostocki ever had any agency relationship with C&A Products, LLC, a purported agent's acts or omissions cannot be imputed to the principal when the agent completely abandons the principal's interests. *See, Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 (with respect to motions seeking relief from default under California *C.C.P.* § 473(b)'s "excusable neglect" provisions, attorney's fault is generally imputed to client, but <u>not</u> when attorney abandons client and case completely). In the instant case, Rostocki unquestionably always sought to advance the DTSC's interests to the detriment of C&A Products, LLC's interests.

Rostocki's failure to take any steps to protect C&A Products, LLC, and any resulting delay in the Proposed Intervenors' ability to bring their subject intervention motions, therefore cannot be imputed to C&A Products, LLC—or, by extension, to the Proposed Intervenors.

Despite the DTSC and Rostocki's machinations, after finally receiving notice of this action, those Proposed Intervenors managed to retain outside counsel, obtain basic information necessary to prepare their subject intervention motions, and file those motions within two to seven weeks. Any delay in those motions'

filing therefore resulted from the dilatory conduct of the DTSC and the receiver, rather than from those carriers' conduct.[6]

### 2. The Requested Interventions Will Not Prejudice the DTSC.

The prejudice factor likewise militates in favor of finding that the carriers sought to intervene in a timely manner because, since taking C&A Products, LLC's default in March, 2015, the DTSC did not take <u>any</u> steps to pursue its claims against that company until it applied for a default judgment in September, 2019. *See, Utica Mut. Ins. Co. v. Hamilton Supply Co.*, No. C 06-07846 SI, 2007 WL 3256485 (N.D. Cal. Nov. 5, 2007) (although default was entered against insured prior to the insurer's application to intervene, plaintiff would suffer little to no prejudice by intervention "<u>because plaintiff has done little up to this point other than file a motion for default judgment</u>." *Id*. at *3-4 (emphasis added).

The requested interventions would therefore not prejudice the DTSC and would instead merely require it to prove its claims against C&A Products, LLC. *See Utica*, *supra*, 2007 WL 3256485 at *5 (insurer's intervention on behalf of insured and setting aside default did not prejudice plaintiff under Rule 24, as

---

[6] If for any reason this court remands this matter back to the District Court for any further determinations with respect to either the subject motions seeking to intervene, or the motions seeking to vacate the default entered against C&A Products, LLC, the Proposed Intervenors therefore request that this court specially instruct the District Court that Rostocki's acts and/or omissions cannot be imputed to C&A Products, LLC, or, by extension, to its insurers.

intervention "will not hamper discovery," which had not yet begun). The Proposed

Intervenors' respective motions seeking to intervene were therefore timely,

especially under Rule 24(a)'s liberal standards.

**C.     The Only Remaining Party in the Instant Action—the DTSC—**

**Will Absolutely Not Represent the Proposed Intervenors'**

**Interests, Since Its Interests Are Completely Adverse to Theirs.**

In determining the adequacy of representation prong of the Rule 24(a)(2)

analysis, courts consider the following factors in assessing whether existing parties

to the action will adequately represent the proposed intervenor's interests:

> 1) Whether the interest of a present party is such that it will
> undoubtedly make all of a proposed intervenor's arguments;  2)
> Whether the present party is capable and willing to make such
> arguments;  and 3) Whether a proposed intervenor would offer any
> necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use, supra*, 647 F.3d at 898 (noting, "[t]he 'most important

factor' in assessing the adequacy of representation is 'how the interest compares

with the interests of existing parties.'")

Establishing inadequacy of representation only requires a "minimal"

showing.  *Arakaki v. Cayetano* 324 F.3d 1078, 1086 (9th Cir. 2003);  *Sagebrush

Rebellion, Inc. v. Watt* (9th Cir. 1983) 713 F.2d 525, 528 (9th Cir. 1983).

In the instant case, the Proposed Intervenors easily met this liberal standard,

and the DTSC did not argue otherwise at the District Court level.  As C&A

-28-

Products, LLC is in default, the DTSC is currently the only remaining party in the action, and its interests are fundamentally opposed to those of the Proposed Intervenors. As it expressly admitted, the instant action in fact at this point only represents a springboard for it to pursue direct *Insurance Code* § 11580 actions against those carriers. This prong of the Rule 24(a)(2) analysis is therefore satisfied as a matter of law.

**D.     The Proposed Intervenors Have a Significant Protectable Interest in the Litigation.**

**1.     Irrespective of Whether the Trial Court Erred in Ruling that the Proposed Intervenors Had to Issue a Reservation of Rights in Order to Have a Protectable Interest, Allianz Did Issue Such a Reservation.**

Because Allianz issued a reservation of rights, even under the District Court's erroneous interpretation of the law, Allianz had a significant protectable interest in the instant action as a matter of law. As also discussed *supra* in section I.B., a significant possibility exists that its interest will be impaired if it is denied the right to intervene in this action, even though it is an excess rather than a primary insurer of C&A Products, LLC. Allianz is accordingly entitled to an order reversing the trial court's denial of its right to intervene in this action.

2.     In any Case, the District Court Erred in Ruling that the Proposed Intervenors Lack a Protectable Interest.

(a)     The Proposed Intervenors Have a Significant Protectable Interest in this Action Because the DTSC Intends to File Section 11580 Coverage Actions Directly Against Those Carriers.

The "significantly protectable" interest requirement is generally satisfied when the proposed intervenor merely has an interest protectable under some law, and some relationship exists between that interest and the claims at issue. *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981) (proposed intervenor need only show "a protectible interest of sufficient magnitude to warrant inclusion in the action").

There is no "precise and authoritative definition" of the phrase "significantly protectible interest." *Kleissler v. United States Forest Service,* 157 F.3d 964, 969 (3rd Cir. 1998). The Ninth Circuit views the "interest test" as "<u>primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process</u>. …" *In re Estate of Ferdinand E. Marcos Human Rights Litigation,* 536 F.3d 980, 985 (9th Cir. 2008) (emphasis added; internal quotes omitted); *WildEarth Guardians v. National Park Service*, (10th Cir. 2010) 604 F.3d 1192, 1199.

-30-

In the Ninth Circuit, the potential intervenor's claimed interest must "be related to the underlying subject matter of the litigation";  an interest that merely could be "impacted" by that litigation's outcome is not sufficient to intervene "of right."  *United States v. Alisal Water Corp*., (9th Cir. 2004) 370 F.3d 915, 920 (9th Cir. 2004).  Otherwise, a mere creditor seeking to enforce a debt against a defendant's assets could "bootstrap" that stake into an interest in litigation which is totally unrelated to the debt's creation.  *Id;  Flying J, Inc. v. J.B. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) (party's creditors may have an "economic interest" in litigation's outcome, but that would not entitle them to intervene).

Intervention is not barred, however, simply because the proposed intervenor's interest is contingent and inchoate.  *United States v. Union Electric Co*., 64 F.3d 1152, 1162 (8th Cir. 1995).  Although the interest cannot be wholly remote and speculative, it may be "contingent upon the outcome of the litigation." *Id.*

Both California and federal courts[7] have allowed insurers to intervene when they have faced exposure to a future coverage action under *Insurance Code* §

---

[7]  California's standard for intervention, set out at *C.C.P.* § 387(d)(1), contains language very similar to Rule 24(a)(2).  Section 387(d)(1) provides in relevant part that:

"(d)(1) The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if either of the following conditions is satisfied:

11580 by third parties who claimed that they had suffered a loss resulting from the insured's conduct. *Reliance Insurance Co. v. Superior Court*, 84 Cal.App.4th 383, 386-87 (2000); *Dave Drilling Environmental Engineering, Inc. v. Gamblin* 2015 WL 4051968 (N.D. CA); *B.G.N. Fremont Square LTD v. Chung, CV 10-9749 GAP (RZx)*, 2011 WL 13129968, *4 (CD CA 2011).

In *Reliance, supra*, 84 Cal.App.4th at 384-86, the trial court denied an insurer's motion to intervene in a negligence action brought by owners of personal property against an insured moving company that plaintiffs alleged lost their personal property and then obtained that defendant's default. <u>The appellate court held that the trial court erred in denying the insurer's motion to intervene in the action because, if the plaintiffs obtained a default judgment, that insurer would have been subject to a direct action under *Insurance Code* § 11580</u>. 84 Cal.App.4th at 386-87.

The court specifically held that the insurer had a direct and immediate interest in the litigation, since it "may be required [in that Section 11580 action] to satisfy any default judgment entered against [the insured.]" 84 Cal.App.4th at 387

---

\* \* \*

(B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties."

(emphasis added). Notably, the *Reliance* court did not focus on (or, for that matter, even mention) whether the carrier had issued a reservation of rights before seeking to intervene. 84 Cal.App.4th at 383-84.

It also noted that the intervention would not expand the issues to be litigated beyond those that could have been raised by the insured had the insured's corporate status not been suspended, and that denial of intervention could result in a windfall to the plaintiffs. 384 Cal.App.4th at 388; *see also, B.G.N. Fremont Square LTD, supra*, 2011 WL 13129968, *4 (carrier had right to intervene when it faced potential Section 11580 action).

Similarly, in *Dave Drilling Environment Engineering, Inc., supra*, 2015 WL 4051968, the court granted an insurer's intervention motion because, due to the plaintiff's and insured's failure to notify it of the litigation, it never had an opportunity to defend its interests, issue a reservation of rights or other coverage opinion. In addition, the insurer had a protectable interest because the plaintiff's stated interest in filing the action was to use that litigation as a vehicle or proxy to bring a Section 11580 action against the insurer. *Id.*

For several reasons, these principles dictate that the Proposed Intervenors had a significant protectable interest such that they were entitled to intervene as a matter of right in the instant case. First, as discussed supra, the DTSC expressly stated in its communications with the Proposed Intervenors that it would <u>not</u>

execute on that judgment against the bankrupt C&A Products, LLC, and would instead only use it as a vehicle to pursue a direct Section 11580 coverage action against the Proposed Intervenors. (2-ER-248, ¶ 6; 2-ER-264, ¶ 3.)

The Proposed Intervenors' maximum potential exposure in any such future Section 11580 action, however, will necessarily be determined by the judgment that the DTSC can obtain against C&A Products, LLC in the <u>instant</u> action. As discussed *supra*, the DTSC seeks both a monetary recovery and a declaration that C&A Products, LLC is jointly and severally liable for all future environment remediation costs, including groundwater monitoring well into the future.

Permitting those carriers to intervene in this action will allow them to contest the amount and nature of the DTSC's claimed past and future damages and their insured's underlying liability in the instant action, as they cannot do so in any future Section 11580 action; it would therefore be consistent with due process and basic considerations of fairness.

Those carriers' intervention would also be appropriate because their interests in the instant litigation, while contingent and inchoate, are not speculative. According to the "coverage chart" which the DTSC itself submitted in opposing the subject intervention motions, Continental and Century issued primary policies with limits of $1,000,000 for several of the periods identified on that chart, and Allianz issued excess policies covering several relevant periods during the Site's

operation. It is therefore absolutely possible that the potential $3,219,449.85 judgment, coupled with a declaration of C&A Products, LLC's liability for all future remediation costs, could impair Allianz's legal interests.

While Century and Continental have not had any opportunity to conduct discovery and determine whether they have any obligation to provide coverage for any liability that C&A Products, LLC might incur in this action, and Allianz has issued a reservation of rights, those carriers all face at least potential exposure in any future Section 11580 action that the DTSC has stated it will bring.

Since the DTSC itself claims that the Proposed Intervenors are obligated to cover any judgment entered against C&A Products, LLC, it cannot argue with a straight face that those carriers' interests in the instant action are purely speculative.

Finally, allowing those carriers to intervene will also advance the Ninth Circuit's express policy goal of "disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," emphasizing that intervention motions must be considered from a practical perspective. *In re Estate of Ferdinand E. Marcos Human Rights Litigation, supra,* 536 F.3d at 985.

Specifically, such intervention could limit or reduce the amount of any judgment entered against C&A Products, LLC in the instant action, potentially simplifying and reducing the scope and size of any future Section 11580 coverage

action that the DTSC could bring.  For all these reasons, the Proposed Intervenors have a significantly protectable interest in the instant action;  as discussed below, the District Court's reasoning in ruling otherwise was flawed.

> **(b)** **The Authorities on Which the District Court Relied in Ruling that the Proposed Intervenors Have No Protectable Interest in the Instant Action Are Completely Distinguishable and Irrelevant.**

Primarily relying on *Gray v. Begley,* 182 Cal.App.4th 1509, 152-23 (2010), the DTSC claimed—and the District Court accepted—that an insurer seeking to intervene in an action must always have either accepted coverage or issued a reservation of rights in order to have the significant protectable interest needed for intervention under Rule 24(a)(2).  *Gray*, however, is completely distinguishable, irrelevant, and inapplicable.

In *Gray, supra,* 182 Cal.App.4th at 1512-14, a motorist injured in an accident sued a defendant who was insured by a carrier that defended him <u>through a jury trial</u> under a reservation of rights.  After that trial resulted in a judgment against that defendant, he moved vacate the judgment, but then, without the insurer's participation or knowledge, reached an apparently collusive agreement with the plaintiff which in part involved his withdrawal of that motion.  *Id.*  The insurer moved to intervene in order to pursue that motion, but the trial court denied that motion as being untimely.  *Id.*

In reversing the trial court's order, the appellate court held that the insurer had the necessary "direct and immediate interest in the litigation" required under California's intervention statute, even though it had reserved its rights to contest coverage in any future proceeding, rather than accepting coverage outright. 182 Cal.App.4th at 1521-22. The court reasoned that "'an insurer that has received notice of the action against its insured but refuses to defend will be bound on the judgment to all issues material to liability.'" 182 Cal.App.4th at 1523 (internal citations omitted).

The court reasoned that, "when the insured tenders the suit, the carrier is receiving its chance to be heard"; when that carrier rejects that opportunity, however, it waives its chance to contest liability, and "'cannot reach back for due process to void a deal that the insured has entered to eliminate personal liability.'" *Id.* (emphasis added, citations omitted).

The "key factor" in determining the carrier's right to intervene "is whether the insurer provided the insured with a defense, not whether the insurer denied coverage." *Id.; see also, Tomassi v. Scarff* (2000) 85 Cal.App.4th 1053, 1058 (insurer that received notice of suit against insured but refuses to defend will be bound by the resulting judgment on all issues material to liability); *Hinton v. Beck* (2009) 176 Cal.App.4th 1378, 1384 (insurer that denies coverage and refuses to

defend loses right to intervene in litigation and seek to vacate insured's default at later stage).

For a myriad of reasons, *Gray* is therefore in a completely different factual universe from the instant case and cases like *Reliance, supra*, 84 Cal.App.4th at 386-87 and *Dave Drilling Environment Engineering, Inc., supra*, 2015 WL 4051968, which held that insurers facing a potential future Section 11580 claim had a right to intervene in actions against their insureds.

First, <u>there essentially are no insured interests</u> to protect in the instant case, so that it is irrelevant whether or not the Proposed Interveners issued a reservation of rights. Again, C&A Products, LLC is defunct and bankrupt, and the DTSC has expressly stated that it will *not* execute on any judgment against C&A Products, LLC; it will instead only pursue a direct Section 11580 coverage action against the Proposed Intervenors. (2-ER-248, ¶ 6; 2-ER-264, ¶ 3.)

The Proposed Intervenors therefore have the right to defend the DTSC's action directly as parties and, as intervening parties, would not bound by the default of the insured. *See, Western Heritage Ins. Co., supra* 199 Cal.App.4th at 1206 (an intervener may defend an action and is not bound by the default against its alleged insured). On that basis alone, the District Court's rigid requirement that those carriers either accept coverage and/or issue a reservation of rights in order to intervene constituted error.

-38-

*Gray* is also completely distinguishable because, in the instant case, the insured, C&A Products, LLC, never itself tendered its defense to or requested indemnity from the Proposed Intervenors, and those carriers never had a chance to provide a defense to their insured before the default was entered. The only "tender" of its defense that those carriers ever received was from the DTSC itself (through its agent, Arcina—very conveniently for the DTSC, made only *after* it had already taken C&A Products, LLC's default and applied for a default judgment). See, *Dave Drilling Environment Engineering, Inc., supra*, 2015 WL 4051968 (insurer's intervention proper where it "never had the opportunity to defend [its insured], and never stated whether it reserved its rights…or admitted coverage").

Furthermore, unlike the insured in *Gray*, the DTSC did not actually want the Proposed Intervenors to provide a defense; to the contrary, by opposing their intervention motions, it did everything in its power to *prevent* them from defending either C&A Products, LLC or their own interests, or even to make such a defense possible by vacating the default entered C&A Products, LLC. By the time they received notice of the action, the DTSC had already taken that insured's default, and the hearing on the application seeking a default judgment was only two weeks away.

Also unlike in *Gray*, the insured, C&A Products, LLC, was itself never even served with the DTSC's Complaint or FAC; the DTSC instead served the FAC on the receiver, Rostocki. As discussed at length supra, Rostocki acted at all times as the DTSC's de facto agent, since it had him appointed and paid him, and he at all times blatantly advanced its interests at the expense of those of C&A Products, LLC. In effect, the DTSC served its FAC on itself, enabling it to take C&A Products, LLC's default without opposition.

As the Proposed Intervenors also expressly stated in their subject motions, *Gray* is also distinguishable because, on a purely practical level, it was virtually impossible for them even to reach or issue any formal coverage opinion before filing their subject motions seeking to intervene—especially given the need to file those motions on an urgent basis.

They only received notice of the litigation on September 10, 2019, the hearing on the DTSC's default judgment application was set mere weeks later, and their insured was defunct, bankrupt, and apparently unaware of and uninvolved in that litigation with those carriers. The underlying litigation also involved purported toxic contamination by multiple parties covered by multiple primary and excess insurance policies over decades at the Site—a completely different situation than simple personal injury cases like *Gray* or *Hinton*, where the carriers' investigation and coverage analysis was presumably significantly simpler.

-40-

In any case, it is difficult to imagine what any carrier that <u>had</u> issued a reservation of rights would have done differently than Proposed Intervenors did here. Immediately after learning of the litigation and their insured being in default, those carriers sought to intervene in the action and vacate the default so that they could present a defense to the DTSC's claims. That situation is hardly comparable to cases like *Hinton*, where the insurer's denial of coverage <u>resulted</u> in its insured's default.

Finally, the instant case is fundamentally distinguishable from *Gray* simply on a basic level of fairness, equity, and due process. In this case, the DTSC and its paid agent and apparent puppet, receiver Rostocki, simply manipulated events by not defending C&A Products, LLC under Rostocki's express power to do so, and then not providing notice of the litigation to the Proposed Intervenors until over <u>five years</u> after the DTSC filed its original Complaint, <u>four years</u> after the DTSC took C&A Products, LLC's default, and until <u>after</u> the DTSC had already filed its application seeking a default judgment (set for hearing only two weeks <u>after</u> the date of that notice). The Proposed Intervenors accordingly request that this court reverse the order denying their intervention motions.

/ / /

/ / /

/ / /

**E.    The Proposed Intervenors' Interests Will Be Significantly**

**Impaired if They Are Deprived of Their Right to Intervene.**

In order to satisfy the significant impairment prong of the Rule 24(a)(2)

analysis, a proposed intervenor "must show only that impairment of its substantial

legal interest is *possible* if intervention is denied.  Under this burden is minimal."

*WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009)

(emphasis added).

As the court stated in *Citizens for Balanced Use, supra*, 647 F.3d at 898, the

standard is whether "the disposition of this action may, as a practical matter, impair

or impede Applicants' ability to protect their interest," and "[i]f an absentee would

be substantially affected in a practical sense by the determination made in an

action…'") (emphasis added);  *City of Emeryville v. Robinson*, 621 F.3d 1251,

1259 (9th Cir. 2010) (party "has a sufficient interest for intervention purposes if it

will suffer a practical impairment of its interests as a result of the pending

litigation.").

In the instant case, the Proposed Intervenors easily meet this liberal standard

for a showing of possible impairment of their interests.  Without giving them any

prior notice, the DTSC has already taken a default of those carriers' insured and

applied for a default judgment of $3,219,449.85 and a declaration that "C&A

Products is jointly and severally liable without regard to fault to the Plaintiffs for

-42-

all costs incurred after May 31, 2019, and future response costs incurred by the [DTSC] as a result of the release and threatened release of hazardous substances at and/or from the Site"; it also expressly admits that, if that judgment would be entered against that insured, it would then turn around and file a direct Section 11580 coverage action against some or all of C&A Products, LLC's historic carriers. (2-ER-248, ¶ 6; 2-ER-264, ¶ 3.)

The DTSC, in effect, seeks to deprive the Proposed Intervenors of any defenses that they could assert on C&A Products, LLC's behalf in the instant action with respect to the DTSC's liability or damages claims, and leave those carriers only with whatever coverage defenses they could assert in that separate Section 11580 action. Denying them the right to intervene in the instant action could therefore not only significantly impair their interests, but would deprive them of basic due process.

In addition, with respect to Allianz, the District Court erred in ruling that it could not intervene in the action in part on the grounds that the court did not know "what the 'primary indemnity limits' are," i.e., whether Allianz's excess limits would be reached by any judgment in the DTSC's favor. That reasoning was fundamentally inconsistent with the rule that a proposed intervenor must only meet a "minimal" burden of showing that "impairment of its substantial legal interest is

-43-

possible if intervention is denied."  *WildEarth Guardians, supra*, 573 F.3d at 995

(emphasis added).

Given the DTSC's claim that C&A Products, LLC's liability under CERCLA

was $3,219,449.85 coupled with a declaration that "C&A Products is jointly and

severally liable" for all <u>future</u> response costs, it is certainly possible that Allianz's

excess layer of coverage could be at risk in any future Section 11580 action

brought against it by the DTSC.

It is also downright probable, if not virtually certain, that that risk would be

significantly magnified if Allianz and the other Proposed Intervenors are not

afforded an opportunity to intervene in this action and seek to vacate the default

entered against C&A Products, LLC, so that they could assert defenses against the

DTSC's liability and damages claims.  The liberal *WildEarth Guardians* standard

for impairment of interest was therefore satisfied.

In any case, the District Court's reasoning that Allianz could not intervene

because the DTSC had not determined "which primary insurer, if any, will be

responsible for the [insured's] damages," so that the court could not determine

"what the 'primary indemnity limits' are"  (1-ER-8, lines 3-6) was fundamentally

flawed in several respects.  Preliminarily, it focused on insurance coverage

determinations that, as a matter of law, cannot be litigated in the DTSC action.  It

also effectively put Allianz's ability to intervene in the hands of the DTSC, the

-44-

party opposing intervention—making intervention impossible, in contravention of Rule 24(a)(2) and basic notions of due process.

Nonetheless, as also discussed *supra*, the DTSC felt that Allianz's potential exposure to the remediation costs was certain enough that (through Arcina), it tendered to Allianz and demanded that Allianz cover any judgment rendered against C&A Products, LLC. Those carriers accordingly request that this court reverse the District Court's denial of their intervention motions.

## II.   IN ANY CASE, PROPOSED INTERVENORS ARE ALSO ENTITLED TO PERMISSIVE INTERVENTION UNDER *F.R.C.P.* Rule 24(b).

If this court determines for any reason that Proposed Intervenors are not entitled to intervene as a matter of right, the Proposed Interveners would still be entitled to seek intervention under Rule 24(b) which allows a permissive intervention. Rule 24(b) provides:

> **(b) Permissive Intervention.** (1) In General. On timely motion, the court may permit anyone to intervene who:…(B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. (Emphasis added.)

Like the "interest" requirement of Rule 24(a)(2), the existence of a "common question" is liberally construed. *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 412 (ND CA 2004) ("significant protectable interest" not required for

-45-

permissive intervention under Rule 24(b); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 265 (5th Cir. 1977).

Delay and added expense to the original parties in litigating the proposed intervenor's claims are factors that a District Court must consider in ruling on a permissive intervention motion, but they must be asserted and proved. *Venegas v. Skaggs,* 867 F.2d 527, 530 (9th Cir. 1989).

In the instant case, the Proposed Intervenors seek to defend the DTSC's claims against C&A Products, LLC. The DTSC seeks to establish C&A Products, LLC's liability, and the Proposed Intervenors seek to challenge that liability and the amount of the DTSC's claimed damages. As such, the Proposed Intervenors fulfill the threshold requirement for permissive intervention in this action under Rule 24(b).

## III.  GOOD CAUSE EXISTS TO VACATE THE ENTRY OF DEFAULT AGAINST C&A PRODUCTS, LLC UNDER THE *F.R.C.P* Rule 55(c) / *JOE HAND PROMOTIONS* STANDARD.

### A.  The Default Was Entered Solely as a Result of the DTSC and Its Receiver's Conduct, Rather than from any Culpability on the Part of C&A Products, LLC or the Proposed Intervenors.

*F.R.C.P.* Rule 55(c) provides that a "court may set aside an entry of default for good cause ...."

-46-

The good cause standard that the Ninth Circuit applies under Rule 55(c) is the same as that for vacating default judgments under Rule 60(b), but the test for vacating a default is much less rigid and is more generous to the party in default. *See Joe Hand Promotions, Inc. v. Williams*, No. 2:14-cv-02663-JAM-AC, 2015 WL 5923611 at * 2 (E.D. Cal. Oct. 9, 2015) (motion to set aside entry of default/default judgment granted, as "default is a drastic step appropriate only in extreme circumstances" and cases should, whenever possible, be decided on merits [emphasis added]); *U.S. Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX, Corp.*, No. SACV 10-1876 DOC (RNBx), 2011 WL 4946810 at * 1 -2 (C.D. Cal. Oct. 17, 2011) ("[t]he 'good cause' standard under Rule 55(c) is an easier burden for the allegedly defaulting party than the excusable neglect standard required to obtain relief from default judgment under Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*, No. 15-cv-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep. 12, 2016) (motion to vacate default granted, as good cause standard "is more liberally applied in the Rule 55(c) context'" than Rule 60(b) context, where no judgment has been entered, and interest in judgment's finality exists).

To determine "good cause," a court must consider three factors:  1) Whether the party seeking relief engaged in culpable conduct that led to the default;  2) Whether the moving party had no meritorious defense;  or 3) Whether reopening

the default judgment would prejudice the opposing party. *Joe Hand Promotions, supra*, 2015 WL 592361 1 at *2; *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011) (setting forth same factors and affirming the District Court's decision to grant insurer's motion to set aside default judgment).

"The law does not favor defaults," and "<u>any doubts as to whether a party is in default should be decided in favor of the defaulting party</u>." *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995*)* (emphasis added)*; Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored" and should be decided on merits "[w]henever it is reasonably possible"); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

In the Ninth Circuit, analysis of "culpability" for the purposes of demonstrating "good cause" under Rule 55(c) overlaps with the standard for "excusable neglect" under Rule 60(b)(l). *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001) (overruled on alternate grounds); *see also, Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987). The Ninth Circuit finds a negligent failure to respond excusable if the defaulting party offers a credible, good-faith explanation for the delay that negates "any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *TCI, supra,* 244 F.3d at 697-98.

In the instant case, the good cause for vacating the default entered against C&A Products, LLC under these liberal standards was overwhelming. As discussed *supra*, the DTSC never even served C&A Products, LLC with the FAC, instead serving only the DTSC's own paid agent and puppet, receiver Rostocki. Rostocki then chose <u>not</u> to provide a defense for C&A Products, LLC, and not to tender its defense to its historic insurers or even notify them or C&A Products, LLC of the litigation's existence, inevitably resulting in the DTSC taking C&A Products, LLC's default in March, 2015.

For over <u>four years</u>, Rostocki and the DTSC then continued to keep C&A Products, LLC and its insurers in the dark about the litigation and that default without making any attempt to provide that company with a defense. The DTSC's agent, Arcina, only gave notice of those facts to the Proposed Intervenors on September 10, 2019, <u>after</u> the DTSC had already settled with all co-defendants and applied for a default judgment against C&A Products, LLC.

As also discussed at length *supra*, in engaging in this dilatory conduct, Rostocki acted only in the capacity of the DTSC's agent/puppet, not as C&A Products, LLC's agent.

As also discussed *supra*, after finally receiving notice of the litigation and of their insured's default, those carriers acted with extreme diligence in getting their

subject intervention motions filed within weeks.  In these circumstances, as a

matter of law, the Proposed Intervenors are entitled to have the default vacated.

**B.      The Proposed Intervenors Have Meritorious Defenses that They**
**        Could Assert on C&A Products, LLC's Behalf if the Default Is**
**        Vacated.**

The "meritorious defense" component of the test for setting aside an entry of

default pursuant to Rule 55(c) does <u>not</u> require that moving party demonstrate

likelihood of success on merits;  instead, that party need only "*allege* sufficient

facts that, if true, would constitute a defense .. . [at] the later litigation."  *U.S. v.*

*Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir.

2010) (all emphasis added);  *see also, Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir.

1989) (moving party "need only plausibly suggest the existence of facts which, if

proven at trial, would constitute a cognizable defense");  *Sosa v. Bridge Store, Inc.*,

1:10-CV-01494-OWW, 2011 WL 1332049, *3 (E.D. Cal. Apr. 6, 2011)

(defendants had no obligation to prove their contentions regarding a meritorious

defense to be relieved from default, as their allegations regarding defenses "will be

tested for truth and accuracy later in the litigation" [citations omitted]).

The meritorious defense can relate to issues of liability or the amount of

damages.  *Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 354-55

(1st Cir. 1996) (defendants had a potentially meritorious defense that the figures on

which the default judgment was based were erroneous). When "the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945-46.

In the instant case, the Proposed Intervenors' subject motions set forth several potential meritorious defenses militating in favor of vacating the default entered against C&A Products, LLC under Rule 55(b). The DTSC's primary claim against C&A Products, LLC is that its alleged predecessors did not fulfill their obligations under an operation and maintenance agreement to treat contaminated groundwater, so that the DTSC advanced clean-up costs for which C&A Products, LLC and its co-defendants are jointly and severally liable, without regard to fault, under Section 107(a) of CERCLA (42 *U.S.C.* § 9607(a). (3-ER-535, ¶ 43.)

The DTSC also claims that, pursuant to Section 113(g)(2) of CERCLA (42 *U.S.C.* § 9613(g)(2), it is entitled to a declaratory judgment that C&A Products, LLC and its co-defendants are jointly and severally liable in any subsequent actions by DTSC for any further costs incurred in response to the potential or actual release of hazardous substances from the Site. (3-ER-535, ¶ 45.)

To establish a claim for recovery of response costs under Section 107(a), a plaintiff must demonstrate: 1) The property at issue is a "facility" as defined in 42 *U.S.C.* § 9601(9); 2) A "release" or "threatened release" of a "hazardous

substance" has occurred;  3) The "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"[8];  and 4) The defendants are in one of four classes of persons subject to the liability.  *Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (party was not entitled to recover its response costs under Section 107).

C&A Products, LLC's first potential defense to these claims is simply that the DTSC's claimed damages of $3,219,449.85 are disputed and that the DTSC should be required to prove that amount in a contested proceeding in which C&A Products, LLC and the Proposed Intervenors are afforded due process.  *See, Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 11CV1277 BTM(WMc), 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012) (defendants set forth a meritorious defense where

---

[8]  The National Oil and Hazardous Substances Pollution Contingency Plan ("National Contingency Plan" or "NCP") is essentially the federal government's "blueprint" for responding to releases of hazardous substances and oil spills, and has since been broadened to address releases at hazardous waste sites requiring emergency removal actions.  40 *C.F.R.* Part 300.  Generally speaking, the NCP consists of regulations implementing environmental response actions under CERCLA, and requires both private parties and regulators (e.g., DTSC) to follow specific steps and meet certain criteria in site investigation and removal/remedial actions.  *Id.*  For example, certain activities may require varying degrees of public participation, and other activities require consideration of remedial alternatives and cost-effectiveness of the selected remedy.  Failure to meet these specific criteria may result in the inability of a party (e.g., DTSC) to recover past response costs related to investigation and/or cleanup of hazardous substances.

they "estimate[d]" that damage sums alleged Complaint were wrong, and accuracy of their estimate did "not need be decided by the Court at this time" because they had alleged sufficient facts to support a potentially meritorious defense on that issue).

C&A Products, LLC also has a meritorious defense with respect to the prejudgment interest that the DTSC seeks. Pursuant to Section 9607(a), the FAC seeks such interest from each defendant for the response costs that it allegedly incurred, but such interest is only available if DTSC demanded a <u>sum certain</u> from each defendant. *See, United States v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003) (Complaint did not satisfy Section 107(a)'s written demand requirement because it did not specify the specific amount sought from each defendant).

The DTSC added C&A Products, LLC as a defendant in its December 18, 2014 FAC, which named multiple defendants, but failed to give a breakdown of the specific amount sought from each defendant. C&A Products, LLC therefore has a meritorious defense that the FAC failed to state the specific amount of pre-judgment interest sought from it. Irrespective of that procedural defect, the amount of such interest is disputed, and DTSC should be required to prove this amount at trial.

-53-

C&A Products, LLC also has a meritorious defense to attorney's fees DTSC seeks. Neither Section 107's liabilities and defenses provision nor Section 113 (which authorizes contribution claims) "expressly calls for the recovery of attorney's fees by the prevailing party." *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 817 (1994) (holding that litigation-related attorney's fees were not recoverable in a CERCLA litigation). In any case, even if DTSC were entitled to attorney's fees, the amount is disputed, and it should be required to prove up the amount of such fees at trial.

Nevertheless, the DTSC and the receiver (who, as discussed *supra*, was the DTSC's actual and de facto agent) failed to notify either the Proposed Intervenors or C&A Products, LLC of this action until <u>after</u> the DTSC had already taken C&A Products, LLC's default. Those carriers have therefore not even had the opportunity to conduct discovery or otherwise develop evidence rebutting the DTSC's response cost claims or the consistency of these costs with the National Contingency Plan.

Given these extraordinary circumstances, Rule 55(c)'s standard for consideration of defendants' allegations of a meritorious defense should be given the most liberal and expansive interpretation possible. Proposed Intervenors have accordingly stated factual and cognizable defenses sufficient to satisfy the second requirement for vacating default against C&A Products, LLC.

### C. The DTSC Will Not Be Prejudiced if the Default Is Set Aside.

The final issue to be considered with respect to relief from a default or default judgment is whether reopening the action will result in prejudice to the non-defaulting party. *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).

To be prejudicial, however, such relief <u>must result in greater harm than simply requiring a plaintiff to try the case on the merits or delaying resolution of the case</u>. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("the standard is whether [plaintiffs] ability to pursue his claim will be hindered"); *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion"); *Utica, supra*, 2007 WL 32566485, at *3 (N.D. Cal. 2007) (mere delay in entering judgment did not constitute prejudice).

In the instant case, the DTSC would absolutely not be prejudiced under this standard if the default entered against C&A Products, LLC was vacated. Any delay in the DTSC's prosecution of its action against C&A Products, LLC resulted solely from the dilatory conduct of the DTSC or its agent, Rostocki, or from events like the Coronavirus pandemic outside of any party's control, rather than from any

-55-

conduct on the Proposed Intervenors or C&A Products, LLC's part. The DTSC accordingly could not be prejudiced by default's being vacated.

In the alternative, if this court cannot order the default to be vacated outright, the Proposed Intervenors request that it reverse the order denying their intervention motion and remand this action back to the District Court for a determination of their motions seeking to vacate that default.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.   **CONCLUSION.**

For the reasons set forth above, the Proposed Intervenors request that this court reverse the District Court's December 4, 2019 Order denying their motions seeking to intervene and to vacate the default entered against C&A Products, LLC. If for any reason cannot vacate that order outright, the Proposed Intervenors request that it remand with special instructions to the District Court that the acts or omissions of C&A Products, LLC's receiver, Rostocki, cannot be imputed to C&A Products, LLC, or by extension, to that company's insurers.

DATED: April 8, 2021          WOOD, SMITH, HENNING & BERMAN LLP


By:      */s/ Thomas F. Vandenburg*
       THOMAS F. VANDENBURG
       NICHOLAS M. GEDO
       STRATTON P. CONSTANTINIDES
Attorneys for Proposed Intervenors-Appellants,
CENTURY INDEMNITY COMPANY,
ALLIANZ UNDERWRITERS INSURANCE
COMPANY, CHICAGO INSURANCE
COMPANY, and FIREMAN'S FUND
INSURANCE COMPANY

DATED: April 8, 2021          NICOLAIDES FINK THORPE MICHAELIDES
SULLIVAN LLP


By:      */s/ Randall P. Berdan*
       SARA M. THORPE
       RANDALL P. BERDAN
Attorneys for Proposed Intervenor-Appellant,
THE CONTINENTAL INSURANCE
COMPANY

-57-

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 32-1</u>

The undersigned certified that the attached brief has been prepared in proportionately spaced Times New Roman typeface of fourteen (14) point, in double spaced text and the word count, as determined by the word processing system used in preparing this brief, is 13,248 words.

DATED: April 8, 2021   WOOD, SMITH, HENNING & BERMAN LLP

         By:  */s/ Thomas F. Vandenburg*
            THOMAS F. VANDENBURG
            NICHOLAS M. GEDO
            STRATTON P. CONSTANTINIDES
         Attorneys for Proposed Intervenors-Appellants,
         CENTURY INDEMNITY COMPANY,
         ALLIANZ UNDERWRITERS INSURANCE
         COMPANY, CHICAGO INSURANCE
         COMPANY, and FIREMAN'S FUND
         INSURANCE COMPANY

DATED: April 8, 2021   NICOLAIDES FINK THORPE MICHAELIDES
         SULLIVAN LLP

         By:  */s/ Randall P. Berdan*
            SARA M. THORPE
            RANDALL P. BERDAN
         Attorneys for Proposed Intervenor-Appellant,
         THE CONTINENTAL INSURANCE
         COMPANY