CASE NO. 20-15029

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company as successor to Insurance Company of North
America; ALLIANZ UNDERWRITERS INSURANCE COMPANY;
CHICAGO INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; and THE CONTINENTAL
INSURANCE COMPANY

*Appellants,*

v.

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES
CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT

*Respondents.*

———————

Appeal From The United States District Court,
Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB,
Hon. William B. Shubb

———————

## APPELLANTS' EXCERPTS OF RECORD
## VOLUME 2 OF 4

———————

Wood, Smith, Henning & Berman LLP
THOMAS F. VANDENBURG (STATE BAR NO. 163446)
NICHOLAS M. GEDO (STATE BAR NO. 130503)
STRATTON P. CONSTANTINIDES (STATE BAR NO. 305103)
10960 WILSHIRE BLVD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024
TEL: (310) 481-7600 / FAX: (310) 481-7650

*Attorneys for Proposed Intervenors - Appellants,*
*CENTURY INDEMNITY COMPANY, ALLIANZ UNDERWRITERS INSURANCE*
*COMPANY, CHICAGO INSURANCE COMPANY, and FIREMAN'S FUND*
*INSURANCE COMPANY*

Nicolaides Fink Thorpe Michaelides Sullivan LLP
SARA M. THORPE (STATE BAR NO. 146529)
RANDALL P. BERDAN (STATE BAR NO. 199623)
101 MONTGOMERY STREET, SUITE 2300
SAN FRANCISCO, CA 94104
TEL: 415-745-3770 / FAX: 415-745-3771

*Attorneys for Proposed Intervenor - Appellants,*
*THE CONTINENTAL INSURANCE COMPANY*

**DKT. 256**

MINUTE ORDER: In light of the Court's Order 255 staying this matter pending the Proposed Intervenors' appeal, the Clerk is directed to administratively terminate Plaintiff's Motion for Default Judgment 184 . Counsel for Plaintiff may re-notice their motion for default judgment after the stay has been lifted. Ordered by Magistrate Judge Edmund F. Brennan on 2/26/2020. (Text only entry) (Cannarozzi, N) (Entered: 02/26/2020)

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   CALIFORNIA DEPARTMENT OF TOXIC          No. 2:14-CV-00595 WBS EFB
     SUBSTANCES CONTROL and the TOXIC
13   SUBSTANCES CONTROL ACCOUNT,

14              Plaintiffs,                   ORDER RE: MOTION TO STAY

15        v.

16   JIM DOBBAS, INC. a California
     corporation; CONTINENTAL RAIL,
17   INC., a Delaware corporation;
     DAVID VAN OVER, individually;
18   PACIFIC WOOD PRESERVING, a
     dissolved California
19   corporation; WEST COAST WOOD
     PRESERVING, LLC., a Nevada
20   limited liability company; and
     COLLINS & AIKMAN PRODUCTS, LLC,
21   a Delaware limited liability
     company,
22
                Defendants.
23

24                              ----oo0oo----

25          Before the court is Century Indemnity Company

26   ("Century"), Allianz Underwriters Insurance Company, Chicago

27   Insurance Company, and Fireman's Fund Insurance Company

28

                                    1

1    (collectively, "Allianz") and The Continental Insurance Company

2    ("Continental") (collectively, "Proposed Intervenors") motion to

3    temporarily stay proceedings in this court as they appeal the

4    denial of their motions to intervene and vacate C&A Products'

5    default.  (Docket No. 244.)

6           A federal court can stay a proceeding pending the

7    outcome of an interlocutory appeal.  See Nken v. Holder, 556 U.S.

8    418, 421 (2009).  The power to stay proceedings is "incidental to

9    the power inherent in every court to control the disposition of

10   the cases on its docket with economy of time and effort for

11   itself, for counsel, and for litigants."  Landis v. N. Am. Co.,

12   229 U.S. 248, 254 (1936).  In the interests of judicial economy

13   and based on the court's determination that minimal, if any,

14   prejudice to plaintiff would result from a stay, the court will

15   grant the motion to stay pending appeal.

16          Accordingly, all proceedings in this case are hereby

17   STAYED pending Proposed Intervenors' appeal.  The Status

18   Conference set for March 2, 2020 (Docket No. 239) is VACATED.

19          IT IS SO ORDERED.

20   Dated:  February 25, 2020

     WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

2

**ER-13**

1

1    IN THE UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF CALIFORNIA
2       BEFORE THE HONORABLE WILLIAM B. SHUBB

3   CALIFORNIA DEPARTMENT OF
    TOXIC SUBSTANCES CONTROL and
4   the TOXIC SUBSTANCES CONTROL
    ACCOUNT,
5
                  Plaintiffs,
6   vs.                              Sacramento, California
                                     No. 2:14-CV-00595
7   JIM DOBBAS, INC., a California   Monday, December 2, 2019
    corporation; CONTINENTAL RAIL,   2:58 p.m.
8   INC., a Delaware corporation;
    DAVID VAN OVER, individually;
9   PACIFIC WOOD PRESERVING, LLC.,
    a Nevada limited liability
10  company; and COLLINS & AIKMAN
    PRODUCTS, LLC, a Delaware
11  limited liability company,

12                Defendants.
    _____/
13

14                   --oOo--
            REPORTER'S TRANSCRIPT OF PROCEEDINGS
15                MOTIONS TO INTERVENE
                     --oOo--
16  APPEARANCES:

17  For the Plaintiffs:        OFFICE OF THE ATTORNEY GENERAL
                               LAURA J. ZUCKERMAN
18                             Deputy Attorney General
                               TIMOTHY THORNTON
19                             Deputy Attorney General
                               1515 Clay Street, 20th Floor
20                             Oakland, CA  94612

21  (Appearances continued on page 2.)

22  Official Reporter:         KACY PARKER BARAJAS
                               CSR No. 10915, RMR, CRR, CRC
23                             501 I Street
                               Sacramento, CA  95814
24                             kbarajas.csr@gmail.com

25  *Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.*

2

1    APPEARANCES (Continued):

2    For the Intervenors Century    WOOD SMITH HENNING & BERMAN LLP
     Indemnity Company,             THOMAS VANDENBURG
3    Allianz Underwriters           Attorney at Law
     Insurance Company,             10960 Wilshire Blvd., 18th Floor
4    Chicago Insurance Company,     Los Angeles, CA  90024
     Fireman's Fund Insurance
5    Company:

6    For the Intervenor             NICOLAIDES FINK THORPE
     Continental Insurance          MICHAELIDES SULLIVAN LLP
7    Company:                       RANDALL BERDAN
                                    Attorney at Law
8                                   101 Montgomery Street, Suite 2300
                                    San Francisco, CA  94104

9

10                              --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          SACRAMENTO, CALIFORNIA, MONDAY, DECEMBER 2, 2019, 2:58 PM

2                              --oOo--

3          THE CLERK:  Calling civil case 14-0595, California

4    Department of Toxic Substances Control, et al. versus Jim

5    Dobbas, Inc., et al.  Your Honor, this matter is on calendar

6    for Continental Insurance Company's motion to intervene and to

7    vacate default, Century Indemnity Company's motion to

8    intervene, Allianz Underwriters Insurance Company's motion to

9    intervene and to vacate default.

10         THE COURT:  Please state your appearances.

11         MR. VANDENBURG:  Good afternoon, your Honor.  Thomas

12   Vandenburg for Century Indemnity Company, for Allianz

13   Underwriters Insurance Company, for Chicago Insurance Company,

14   and Fireman's Fund Insurance Company.

15         MR. BERDAN:  Good afternoon, your Honor.  Randall

16   Berdan for the Continental Insurance Company.

17         MS. ZUCKERMAN:  Good afternoon, your Honor.  Laura

18   Zuckerman from the California Attorney General's Office on

19   behalf of the Department of Toxic Substances Control, and I

20   have with me my colleague Mr. Timothy Thornton who will be

21   assisting us on insurance issues as needed.

22         THE COURT:  All right.  Mr. Vandenburg, let's start

23   with you.  The Court has already denied Travelers' motion to

24   set aside the default and to intervene.  How are you or any of

25   your several clients in any different position?

4

1    MR. VANDENBURG:  Your Honor, we're in a very different

2  position for one important reason.  We did not receive notice

3  from DTSC about this lawsuit until after they filed their

4  application for default judgment.

5    There's four very important dates, your Honor.  The

6  default was entered by the clerk March 26th of 2015.  On

7  August 21st of 2019, DTSC filed its application for default

8  judgment.  On September 10th an entity called Arcina, which is

9  an agent of DTSC, gave notice to all my clients that they were

10  at issue in this case and that they were -- DTSC was seeking a

11  default judgment.

12    That hearing -- that default judgment was to be heard

13  on September 25th.  It was to be heard 15 days after my clients

14  were given notice.  The notice issue, your Honor, means that we

15  had no delay on bringing this matter before the Court.  We had

16  no delay in seeking intervention.  It puts us in a completely

17  different position, I would assert, your Honor, than

18  Travelers.

19    THE COURT:  On one prong it may because there are two

20  prongs to Travelers' problems.  First was that they let the

21  default be taken.  The other one was that they didn't accept

22  coverage or agree to defend on a reservation of rights.  They

23  denied coverage.

24    Now on that second prong, are you in any different

25  position than they were?

5

1    MR. VANDENBURG:  Your Honor, I think that what DTSC

2    has tried to do in this case is DTSC has tried to make us pay

3    an admission price for intervention, and the admission price

4    they want us to pay is to make a concession on coverage, and I

5    would contend, your Honor, that the case law does not support

6    that position.

7         DTSC has argued to the Judge -- argued to your

8    Honor.

9         THE COURT:  You can defend on a reservation of rights.

10        MR. VANDENBURG:  Your Honor, in this case I don't

11   think that that applies because there's nothing to defend.

12   The --

13        THE COURT:  Well, you want to set aside the default,

14   and then you want to defend it.

15        MR. VANDENBURG:  Right.  But we --

16        THE COURT:  But you're not going to defend it.  If I

17   set aside the default, you're not going to defend it.  You're

18   going to say, we don't have any coverage.

19        MR. VANDENBURG:  The coverage issues are going to be

20   decided by another judge, your Honor.

21        THE COURT:  No, they're not.

22        MR. VANDENBURG:  I'm asking to intervene solely to

23   address liability, which is divisibility that your Honor

24   addressed in the previous case, and damages.

25        THE COURT:  Were you here when we had the discussion

6

1  with Travelers?

2       MR. VANDENBURG:  I've read the transcript, your

3  Honor.

4       THE COURT:  I made the point facetiously that every

5  insurance company in the world could come in here and say we

6  don't cover this, so we want to intervene because we don't

7  cover it.  We want to get some sort of a declaration from the

8  Court that we don't cover it.  Right now these plaintiffs are

9  not asking for anything from either of your clients.

10      MR. VANDENBURG:  Your Honor, I'm solely asking to

11 intervene to address the issues that are addressed in the

12 default and their application for default judgment.

13      THE COURT:  But the default judgment is not against

14 your client.

15      MR. VANDENBURG:  Right.  But they've made it very

16 clear that they intend to take that default judgment and then

17 file a separate action and go after my clients.

18      THE COURT:  And then when they do that, you can make

19 all these arguments you want.

20      MR. VANDENBURG:  I can't, your Honor.  I'm precluded

21 at that point from arguing against the default judgment.  I

22 have to come before your Honor --

23      THE COURT:  No.  Of course you're precluded from

24 arguing against a default judgment, but you're not precluded

25 from arguing that you don't cover the risk.

7

1      MR. VANDENBURG:  Yes, your Honor.  But I'm not going

2  to address any coverage issues with your Honor in this case.

3  I'm solely going to come in and address liability and

4  damages.

5      THE COURT:  Liability and damages?

6      MR. VANDENBURG:  Yes.

7      THE COURT:  So anybody can come in out of the blue --

8  and I had this discussion with Travelers' counsel -- anybody

9  can come to me out of the blue and say I want to intervene

10  because I want to set aside that judgment of default against

11  somebody else.

12      MR. VANDENBURG:  Only if you have a protectable

13  interest, your Honor.  That's what the case law says.

14      THE COURT:  Everybody has a protectable interest by

15  your definition of it.

16      MR. VANDENBURG:  I don't believe so, your Honor.  DTSC

17  says in their opposition papers that they are seeking a default

18  judgment solely so they can enforce it against the parties that

19  they think are carriers.  So those are the only parties, and my

20  clients are amongst those that they assert are potentially

21  insurance carriers for the defaulted entity.  Those -- that's

22  the universe of parties that can come before your Honor, and

23  we've chosen to do that and say, your Honor, we're here.  We

24  want to step in.  We want to address the liability, which is

25  mainly divisibility, and especially the damages.  We want to

8

1    address are there response costs inconsistent with the NCP.

2           THE COURT:  You can get together with the lawyers that

3    were just in here.  You can talk about divisibility together.

4           MR. VANDENBURG:  Yes, your Honor.  But the issues that

5    we see with the response costs go to the amount of prejudgment

6    interest and the -- whether or not the -- sorry, your Honor,

7    one moment -- whether or not the costs that DTSC are claiming

8    their fixed costs are reasonably necessary and incidental to

9    implementation of the response actions.

10          So we would address those specific issues, and we

11   would have the right to question their witnesses, the

12   individuals that put forward declarations, to make sure that

13   those costs were incurred in a manner that were not -- that was

14   not inconsistent with the NCP.

15          THE COURT:  One of your clients is Allianz?

16          MR. VANDENBURG:  Yes, your Honor, Allianz Underwriters

17   Insurance Company.

18          THE COURT:  They're an excess carrier.

19          MR. VANDENBURG:  Yes.  There's three excess carriers.

20   There's one primary and three excess carriers.

21          THE COURT:  Who were the other excess, Chicago and

22   Fireman's Fund?

23          MR. VANDENBURG:  Chicago and Fireman's Fund, yes, your

24   Honor.

25          THE COURT:  They're in a little different position,

9

1    aren't they?

2          MR. VANDENBURG:  Well, your Honor, I think that for

3    them, the rationale of *Gray versus Begley* is even less strong

4    because they have the duty to defend.  DTSC has told your Honor

5    that *Gray versus Begley* controls.  I would like to submit to

6    your Honor that the case of *Reliance Insurance Company versus*

7    *Superior Court* controls this instance.  That case cite is 84

8    Cal. App. 4th 383.  And there's two main reasons why *Gray*

9    *versus Begley* doesn't control this case in this context.

10   Number one, there's no insured at jeopardy in this case.

11   There's no party that -- and DTSC has admitted this again in

12   its opposition that it's not going after the insured.  It's

13   only going after the insurers.

14         THE COURT:  I understand your argument, but I don't

15   think it's less.  I think it's more depending on how you look

16   at it.  They don't have a duty to defend yet, and so there's no

17   need for them to intervene.  There's no need for them to have

18   the judgment set aside.  There's no exposure to those excess

19   carriers unless and until there's a finding of liability and

20   damages, right?

21         MR. VANDENBURG:  Your Honor, I would submit that they

22   are part of that -- that part of the universe of limited scope

23   of folks that have exposure to that default judgment.  And if

24   your Honor decides that the primary carriers -- if your Honor

25   decides that *Gray versus Begley* controls and that the primary

10

1    carriers don't have a protectable right to intervene because

2    they did not agree to defend, then the only parties that can

3    step in, the only parties that have the ability to be -- to

4    dispute anything are the excess carriers because they don't

5    have that duty to defend.

6         THE COURT:  I see what you're saying.  You're saying

7    if I rule the way you think I'm going to rule on the other

8    insurers, then your client has more of a concern because now

9    they are the ones that, A, should come in, and B, couldn't come

10   in earlier.

11        MR. VANDENBURG:  Correct.

12        THE COURT:  Okay.

13        MR. VANDENBURG:  Your Honor, I would also like to

14   address permissive intervention under Rule 24(b).  Your Honor

15   has broad discretion under 24(b).  Your Honor only needs to

16   find that there are common questions of law and fact -- law or

17   fact.  I believe that those exist in this case.  And again, I

18   want to distinguish my client's position from Travelers.  My

19   clients have had no delay.  They found out about this on

20   September 10th, and we're before your Honor today within two

21   and a half months of that date.

22        So we are not in the same position as Travelers in

23   terms of coming to your Honor and saying, your Honor, we think

24   under these circumstances we should have the right to

25   intervene.  Similarly, to vacate default --

11

1       THE COURT:  Your clients had a duty, though, to tell

2   you this if they were sued.  I'm sure that's a term and

3   condition of each one of those policies.

4       MR. VANDENBURG:  Your Honor, the party that was served

5   was the receiver.  The receiver was set up as a result of

6   DTSC's application in the chancery court in Delaware.

7       THE COURT:  So you're saying the receiver didn't have

8   the same obligation as the insured?

9       MR. VANDENBURG:  I don't know on the coverage side

10   whether they did or they didn't, your Honor.

11       THE COURT:  They're stepping into the shoes of the

12   insured, and I would wonder whether they had the same

13   obligation that the insured did to inform every potential

14   carrier of the existence of the lawsuit.

15       MR. VANDENBURG:  Your Honor, I would like to note that

16   in the opposition papers, DTSC also takes the position that the

17   insurers are not responsible for the default of CNA Products,

18   LLC.  They specifically state that.  So I believe that's a

19   judicial admission, your Honor.  I don't believe that my

20   clients stand in the shoes of the receiver.  The receiver was

21   not my insurer -- our insurer.

22       THE COURT:  No, no.  I'm sorry.  I meant to say the

23   receiver stood in the shoes of the insured.  Not the insurer,

24   the insured.

25       MR. VANDENBURG:  Right.  But they were only given --

12

1    they were given certain rights but not obligations.

2         THE COURT:  Well, that was my question.  You're saying

3    they didn't have the same obligation that the insured did to

4    inform the insurer of the existence of the lawsuit.

5         MR. VANDENBURG:  That's what the order from the

6    chancery court in Delaware says, your Honor.

7         THE COURT:  Is that what it said?

8         MR. VANDENBURG:  That's what it says.  It's my

9    understanding.  I haven't read the actual order, but every time

10   I've seen that referenced, the specific language -- and counsel

11   can correct me if I'm wrong about that -- but the specific

12   language that says the right but not the obligation, I believe

13   that was an important part of that.

14        THE COURT:  I see.

15        MR. VANDENBURG:  Your Honor, I would like to address

16   the issue of vacating default under FRCP 55.  There's three

17   elements whether or not we engaged in culpable conduct.  Again,

18   we've had no delay.  We came as quickly as we could to your

19   Honor's courtroom to request intervention, and we don't believe

20   that we -- that we are -- that the receiver is our agent.

21        Second, whether or not there's a meritorious defense,

22   and I've addressed for your Honor --

23        THE COURT:  No.  But that question -- that means

24   whether or not there is a meritorious defense to the action

25   against the insured, not whether or not you have a meritorious

13

1  defense.  According to you, you're not being sued for anything.

2  You don't need a defense.

3          MR. VANDENBURG:  Right.  I would come in and argue

4  that the judgment --

5          THE COURT:  If you want to make that point, you have

6  to come in and tell the Court what the meritorious defense is

7  that your insured would have had or whatever.

8          MR. VANDENBURG:  The insured would have been able to

9  come into this court and argue, your Honor, that DTSC is not

10  entitled to recover prejudgment interest.  The insured would

11  come in and argue that they're not entitled to recover their

12  fixed costs that have nothing to do -- there's no relation to

13  the site.

14          THE COURT:  Have you briefed that?

15          MR. VANDENBURG:  I'm sorry?

16          THE COURT:  Have you briefed that?

17          MR. VANDENBURG:  We've brought it here to your Honor

18  this morning.  I don't believe -- I believe the prejudgment

19  interest issue was addressed in our reply brief, your Honor.

20  So if your Honor wants supplemental briefing on the meritorious

21  defense issue, we would be happy to provide that to your

22  Honor.

23          THE COURT:  Well, it's just that I think you were

24  addressing the wrong issue when you were talking about your

25  meritorious defense as opposed to their meritorious defense.

14

1       MR. VANDENBURG:  Yes, your Honor.

2       THE COURT:  So what was the other issue?

3       MR. VANDENBURG:  The last point is no prejudice.  And

4   again we've undertaken no action that has prejudiced DTSC.  The

5   delay was caused by DTSC failing to give us notice.  It wasn't

6   delay where we were given notice and we sat on our rights.

7       THE COURT:  It was caused by the insured or the

8   receiver not informing you about the pendency of the lawsuit.

9       MR. VANDENBURG:  Or DTSC, either party.  And counsel's

10  declaration specifically says that the receiver is DTSC's

11  agent.

12      THE COURT:  What says that?

13      MR. VANDENBURG:  The declaration of Ms. Zuckerman,

14  your Honor.

15      MS. ZUCKERMAN:  I'm sorry, Counsel.  Where does it say

16  that?

17      THE COURT:  The receiver is DTSC's agent?

18      MS. ZUCKERMAN:  I don't recall that.

19      MR. VANDENBURG:  Oh, I'm sorry, your Honor.  They paid

20  them.  That was what was asserted in the previous hearing

21  before your Honor.

22      THE COURT:  Who paid?

23      MR. VANDENBURG:  DTSC paid the receiver's costs.  So

24  our argument would be that they were an agent of DTSC, not an

25  agent of us.

15

1          THE COURT:  They paid DTSC's costs?

2          MR. VANDENBURG:  No.  I'm sorry.  The receiver's

3    costs.  DTSC paid the receiver's costs.

4          THE COURT:  Is that right?

5          MS. ZUCKERMAN:  Yes, your Honor.  In order to sue

6    Collins & Aikman in Delaware, since it's a canceled

7    corporation, we had to appoint a receiver, and we had to pay

8    for it.

9          THE COURT:  Is that the receiver that accepted

10   service?

11         MS. ZUCKERMAN:  That's right.

12         THE COURT:  Okay.  Go ahead.  What would you like to

13   say in response?

14         MS. ZUCKERMAN:  Just a couple points.  First of all,

15   I'll just address the intervention motion first, and then we'll

16   get to the default issue.  The insurers here have it backward.

17   They're asking the Court to assume that they have some sort of

18   protectable interest so they can control the litigation in case

19   it turns out later on that they do have a protected interest.

20   But that's not how Federal Rule 24 works.  They have to show

21   that they have a protectable interest before they are allowed

22   to intervene.  And their arguments about delay and prejudice

23   really only go to the issue of setting aside the default.  They

24   don't go to the issue of intervention.

25         We sent an email to these insurers before this hearing

16

1  reiterating our offer to stipulate to intervention for any

2  insurer who either accepted coverage or alternatively

3  acknowledged that there was at least a potential for coverage

4  and agreed to defend under a reservation of rights.

5        THE COURT:  One of them said that they were

6  investigating.  They didn't go so far as to say they would

7  defend under a reservation of rights.

8        MS. ZUCKERMAN:  That's right, your Honor.  These

9  insurance companies have had three months since they were

10  notified of this litigation.  They have had plenty of time to

11  do a lot of investigation.  Century, one of the insurers filing

12  this motion, has essentially said -- has essentially denied

13  coverage.  The other two apparently are still investigating.

14  But no one has taken a position that would entitle them to any

15  type of protectable interest.  And in our view, at least at

16  this point in time, there's no protectable interest that would

17  entitle them to intervene.

18        THE COURT:  What I'm gathering just from this argument

19  today is that, if they're permitted to intervene, they will

20  contest the prejudgment interest and what else?

21        MR. VANDENBURG:  Whether or not the fixed costs that

22  DTSC are claiming, they have certain fixed costs as a

23  governmental entity that addresses environmental contamination,

24  whether or not some of those fixed costs can be applied to this

25  site.

17

1      THE COURT:  And what amount are you talking about,

2  percentagewise or total amount?

3      MR. VANDENBURG:  I don't know the percentage, your

4  Honor, because I haven't been able to depose --

5      THE COURT:  Were they a substantial part of the fixed

6  costs?

7      MR. VANDENBURG:  I can tell you this, your Honor, that

8  the response costs that they claim for this site are on the

9  order of 2.6 million, and then they have attorneys' fees and

10 other costs that they -- I believe the numbers are

11 approximately 654,000.

12     THE COURT:  So which number would you be contesting

13 don't relate to this case?

14     MR. VANDENBURG:  I would contest all of them, your

15 Honor.

16     THE COURT:  Percentage of them.

17     MR. VANDENBURG:  I would like to contest all -- I

18 would like to contest all of them, your Honor, because I've had

19 no discovery rights to be able to depose any of these

20 individuals.  I'm not talking about decades of litigation, your

21 Honor.  I'm talking about a reasonable period of time to take

22 depositions of the people that gave the declarations --

23     THE COURT:  See, that's the prejudice.  That's the

24 prejudice.  You said there's no prejudice.  That's the

25 prejudice.  We let you intervene.  You take a long time.  You

18

1     take depositions.  You contest every issue.

2          MR. VANDENBURG:  Your Honor, I'll sit down with

3     counsel and negotiate a schedule today.

4          MS. ZUCKERMAN:  Your Honor, I would just like to

5     address the motion to set aside the default.  As you are aware,

6     it's a dysjunctive standard.  There are three different prongs,

7     and any one -- a finding on any one of those prongs disallows

8     them from setting aside the default.

9          The default in this case that they are trying to set

10    aside is essentially a finding of liability.  It does not have

11    anything to do with damages.  Because we only had a clerk's --

12         THE COURT:  Your point is that if we allow the default

13    to stay, to remain, there will still be a subsequent hearing to

14    determine damages.

15         MS. ZUCKERMAN:  That's right.  And that's on file.

16         THE COURT:  Is it further a part of your position that

17    they would be allowed to be heard at that hearing?

18         MS. ZUCKERMAN:  No, your Honor -- I mean, yes, if they

19    acknowledge a potential for coverage, agree to defend their

20    insured, accept a duty to defend and perhaps with a reservation

21    of rights which incidentally is not impossible here.  They

22    could hire a defense firm to fight the default or review the

23    costs and negotiate a settlement with DTSC.  I mean, there are

24    things that could be done, but what they don't get to do is say

25    we have no responsibility here.

19

1      THE COURT:  If they defend under a reservation of

2   rights, the only thing they would be out would be their

3   attorneys' fees.  Then they could prevail if they don't have

4   coverage, and you wouldn't be able to recover from them, right?

5      MS. ZUCKERMAN:  If they don't have coverage?

6      THE COURT:  Right.

7      MS. ZUCKERMAN:  If they -- well, we are confident that

8   we can prove our case because there's no defense to liability

9   here.  And even the issues that they have raised in their

10   motion, which they have not submitted any evidence to support,

11   all relate to damages, not to liability.  And all that's at

12   issue here is whether there's a meritorious defense to

13   liability, and we do not believe that there is.

14      So for them to set aside the default, even assuming

15   the Court were to grant the motion to intervene, it would be a

16   waste of judicial resources and the parties' resources to try

17   to move to set aside, have a big trial --

18      THE COURT:  The question I was asking is, if I rule in

19   your favor and a default remains, eventually there would be a

20   hearing on the damages.

21      MS. ZUCKERMAN:  That's correct, your Honor.

22      THE COURT:  And are you agreeing that they would be

23   allowed to participate in that hearing if they do so on a

24   reservation of rights?

25      MS. ZUCKERMAN:  If they accept or if they acknowledge

20

1   there is a possibility of coverage, they accept a duty to

2   defend with a reservation of rights, we would stipulate to

3   their intervention, and then they could oppose the motion for

4   default judgment.

5           THE COURT:  On damages, they could contest the

6   damages.

7           MS. ZUCKERMAN:  That's right.  That's right.

8           And another alternative is they've had three months to

9   look at all the evidence we've submitted relating to the

10  spills.  They have their own files.  They have -- they could

11  have asked us for information.  Allianz has not asked us for

12  anything.  There's a lot of investigation they could do.

13  They've had three months to do it.  And they could take a

14  position and say there's a potential for coverage here, and

15  therefore, we should be able to intervene.

16          Did you have anything --

17          THE COURT:  Not to set aside the default but to

18  intervene on the damages?

19          MS. ZUCKERMAN:  That's right, your Honor.

20          THE COURT:  Right.  Did you want to add anything?

21          MR. THORNTON:  Sure, your Honor.  Just in terms of a

22  reservation of rights, the reason that Ms. Zuckerman's offer is

23  framed as accept coverage or agree that there's potential for

24  coverage is because the DTSC wants it to be a true reservation

25  of rights, that they have coverage for the judgment if there is

21

1   a judgment or that they may have coverage for a judgment if

2   there is a judgment.  Maybe an exclusion applies.  Maybe an

3   exclusion does not apply.

4           THE COURT:  When an insurer defends on a reservation

5   of rights, they don't usually have to make a showing to the

6   other side that there's a potential for coverage.  The reason

7   that language is used at all is because that's the language you

8   use to tell them when they have to defend on a reservation of

9   rights.  They don't usually have to make that showing to the

10  other side.

11          MR. THORNTON:  That is the standard for determining

12  the duty to defend, but they have to reserve rights.

13          THE COURT:  I understand.

14          MR. THORNTON:  They have to say, we'll defend you,

15  but, hey, there's a pollution exclusion.  We may not have to

16  cover you.

17          THE COURT:  I know.  But that language about potential

18  for coverage is in there because it's when there's a potential

19  for coverage, you have to defend, and then you can have a

20  reservation of rights.  See there's no showing that I'm aware

21  of that they have to satisfy you or represent to you that

22  there's a potential for coverage.  That's between them and

23  their client.  That's the way I understand it.

24          MR. THORNTON:  But they have to show significant

25  protectable interest.

22

1      THE COURT:  They don't have to show that to you.

2      MR. THORNTON:  They have to show it to the Court.

3      MS. ZUCKERMAN:  To the Court.

4      THE COURT:  Well, if they didn't have this motion,

5  they could do it on their own.  They wouldn't have to show it

6  to anybody if a default hadn't already been entered.

7      MR. THORNTON:  Yeah.  But they have to -- I think they

8  have to show it to establish a protectable interest.  In other

9  words, there's some set of facts under which we might have to

10  pay this judgment; therefore, we have a significant protectable

11  interest.  And those scenarios are either we've accepted

12  coverage, or we think that there's potential coverage;

13  therefore, we have a duty to defend.

14      THE COURT:  The point is, if they said we will defend

15  on a reservation of rights, that's enough.  They don't have to

16  come in and show me what their protectable interest is.  If an

17  insurance company comes in and says we will defend on a

18  reservation of rights, I let them do it.

19      Now it's another story when they've already had a

20  default entered.  Now that's a different issue.  But just to

21  defend on a reservation of rights, they have to say they'll

22  defend.

23      I don't ask -- if I have two parties in here and I'm

24  not dealing with the question of setting aside a default and an

25  insurance company wants to provide the defense to the

23

1    defendant, they don't have to show the Court that there's a

2    possibility or that they've got a policy or anything.  They

3    could just be doing it out of the goodness of their heart, and

4    they could do it.

5                MS. ZUCKERMAN:  Your Honor, might I address that just

6    briefly and then let Mr. Thornton add anything.  The reason

7    that this is an issue here is that we sent a notice to 11

8    different insurers.  These are very old policies.  DTSC, as

9    we've said multiple times both to the insurance companies and

10   stated in our papers, does not yet know in part because it has

11   not received position statements, it does not yet know which if

12   any of these insurance companies it will proceed against.

13               THE COURT:  I understand all that.  But what I'm

14   saying is, if it wasn't for the default, you sent that letter

15   out.  They don't have to tell you we have a potential for

16   coverage or we have a protectable interest or anything.  If any

17   one of those insurance companies before the default was entered

18   had come in here and said we'll defend this case on a

19   reservation of rights, you would -- the Court, nobody could

20   stop them, right?

21               MR. THORNTON:  You mean, for instance, if CNA was

22   solvent and they were just dealing with them, we as the

23   plaintiff couldn't inquire into that?

24               THE COURT:  Right.  Even if they weren't solvent, even

25   if they were in bankruptcy, if somebody wants to come in and

24

1    defend them, nobody's going to stop them, right?

2         MR. THORNTON:  I think if -- you know, they have an

3    interest to do it.  It can't be any insurer in the world,

4    right?

5         THE COURT:  I don't know.

6         MR. THORNTON:  They have to have some interest.

7         THE COURT:  I don't know.  Nobody would ask a question

8    if somebody comes in and defends them.  Maybe somebody would

9    ask a question.  Maybe you would say we want to disqualify

10   counsel because they don't have a protectable interest in here.

11   They're an officious intermeddler, maybe.

12        MS. ZUCKERMAN:  Because it does seem to make the most

13   sense for the insurance company that has the significant

14   interest to be the one controlling the litigation.

15        THE COURT:  I just don't want you to think that you

16   can use that letter that you sent out to 11 different insurance

17   companies as a way to smoke out which one is going to admit

18   coverage.  That's not the purpose of that, and I don't want you

19   to think that's a legitimate purpose.

20        MS. ZUCKERMAN:  That's right, your Honor.

21        THE COURT:  So if they had wanted to come in and say

22   we'll defend, but we're not going to tell you -- we've got a

23   reservation of rights, we're not going to tell you what our

24   contractual relationship is, that would be enough.  That's my

25   position.  But it didn't happen.  So it's moot.

25

1    MS. ZUCKERMAN:  And in fact, one of the companies has

2    already announced that there's no coverage.

3    THE COURT:  Right.

4    MS. ZUCKERMAN:  Just one -- two last items.  One is on

5    the issue of whether the receiver is required to do -- to

6    notify, it seems to me that the policy would control.  We have

7    not researched this issue but --

8    THE COURT:  Apparently the Court made some

9    determination that the receiver did not inherit the

10   obligations, only the rights under the contract.

11   MS. ZUCKERMAN:  Not exactly, your Honor.  The Court

12   did say that the receiver had the right but not the obligation

13   to defend, but it's not clear and neither side --

14   THE COURT:  Oh, that's a different story, whether or

15   not the obligation to defend.

16   MS. ZUCKERMAN:  Right.

17   THE COURT:  And not the obligations of the contract.

18   MS. ZUCKERMAN:  That's all the order says, your

19   Honor.

20   THE COURT:  Okay, sure, sure.

21   MS. ZUCKERMAN:  The only other issue I promised I

22   would raise is we have found out from counsel for Allstate that

23   there is no Allstate motion to intervene.  It has not filed a

24   motion to intervene.  It's not at issue today.  We weren't

25   sure, and so we addressed it in our brief.

26

1        THE COURT:  I see.  So there's a company somewhere in
2    the world that's not in this case.
3        MS. ZUCKERMAN:  So there are only the three moving
4    parties here.
5        THE COURT:  Well, I didn't realize we've got Chicago
6    and Fireman's Fund as well.
7        MS. ZUCKERMAN:  Well, they're considered a part of
8    Allianz; is that correct?
9        MR. VANDENBURG:  That's correct, your Honor.
10        THE COURT:  I see.  All right.
11        MR. VANDENBURG:  Your Honor, counsel mentioned 11
12    carriers.  I want to make sure the Court is aware there are
13    three primary carries.  There's Travelers that your Honor heard
14    back in October, then there's Century Indemnity and
15    Continental.  Those are the three purported primary carriers,
16    and two of those three are before your Honor, and the other was
17    already heard back in October.
18        THE COURT:  I understand.  Anything else?
19        MR. VANDENBURG:  Your Honor, I would just ask the
20    Court to take a look at the *Reliance Insurance Company* case.  I
21    strongly believe that that's more on point for this particular
22    circumstance.  I'll give your Honor that cite again, 84 Cal
23    App. 4th 383.
24        THE COURT:  And what did you cite it for?
25        MR. VANDENBURG:  Cited for the proposition that our

27

1    right to intervene is not based upon the duty to defend or the

2    agreement to defend where we have a defunct entity and there's

3    no insured to defend and the insured is not at risk.  And

4    there's also been --

5              THE COURT:  Didn't I address that in the previous

6    case?

7              MS. ZUCKERMAN:  Yes, your Honor.

8              THE COURT:  I think I did.

9              MR. VANDENBURG:  Well, your Honor, I just want to

10   distinguish *Gray versus Begley* on two important facts.  There's

11   been no tender by the insured, and there's no insured at

12   jeopardy.  Both of those are significant facts that I believe

13   takes us outside of *Gray versus Begley*.

14             THE COURT:  All right.  Thank you.

15             MR. VANDENBURG:  Thank you, your Honor.

16             MR. THORNTON:  Thank you, your Honor.

17             MS. ZUCKERMAN:  Thank you, your Honor.

18             MR. BERDAN:  Thank you.

19             THE COURT:  Motion is taken under submission.

20             THE CLERK:  Court's adjourned.

21             (The proceedings adjourned 2:58 p.m.)

22                            --oOo--

23

24

25

28

1    I certify that the foregoing is a correct transcript from the

2    record of proceedings in the above-entitled matter.

3                     /s/ Kacy Parker Barajas

4                    _____
KACY PARKER BARAJAS
CSR No. 10915, RMR, CRR, CRC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DKT. 238**

MINUTE ORDER: Plaintiffs' California Department of Toxic Substances Control and the Toxic Substances Control Account Motion for Default Judgment 184 is ordered set for hearing on 1/29/2020 at 10:00 AM in Courtroom 8 (EFB) before Magistrate Judge Edmund F. Brennan. Ordered by Magistrate Judge Edmund F. Brennan on 12/18/2019. (Text only entry)(Cannarozzi, N) (Entered: 12/18/2019)

1   Thomas F. Vandenburg (State Bar No. 163446)
    tvandenburg@wshblaw.com
2   Stratton P. Constantinides (State Bar No. 305103)
    sconstantinides@wshblaw.com
3   **WOOD, SMITH, HENNING & BERMAN LLP**
    10960 Wilshire Boulevard, 18th Floor
4   Los Angeles, California 90024-3804
    Phone: 310-481-7600 ♦ Fax: 310-481-7650
5
6   Attorneys for Proposed Intervenor Century Indemnity Company as successor to CCI
    Insurance Company as successor to Insurance Company of North America
7   Sara M. Thorpe (SBN: 146529)
    sthorpe@nicolaidesllp.com
8   Randall P. Berdan (SBN: 199623)
    rberdan@nicolaidesllp.com
9   Nicolaides Fink Thorpe Michaelides Sullivan LLP
    101 Montgomery Street, Suite 2300
10  San Francisco, CA 94104
    Phone: 415-745-3770 / Fax: 415-745-3771
11
12  Attorneys for Proposed Intervenor The Continental Insurance Company

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT, <br><br> Plaintiffs, <br><br> v. <br><br> JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,, <br><br> Defendants. <br><br> AND RELATED CROSS-ACTIONS | Case No. 2:14-cv-0595-WBS-EFB <br><br> **CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT** <br><br> Date:      December 2, 2019 <br> Time:      1:30 p.m. <br> Place:     Courtroom 5, 14th Floor <br>            501 I Street <br>            Sacramento, CA 95814 <br><br> The Hon. William B. Shubb <br> Trial Date:      None Set |

LEGAL:10468-0108/13272404.1                    -1-

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Proposed Intervenors CENTURY INDEMNITY COMPANY AS SUCCESSOR TO CCI INSURANCE COMPANY AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA ("Century") and THE CONTINENTAL INSURANCE COMPANY ("Continental") (hereinafter, collectively, "Proposed Intervenors") hereby submit their Joint Memorandum of Points and Authorities in Reply to CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT (hereinafter, collectively, "DTSC" or "Plaintiffs") Opposition (Dkt. 227) to Century's Motion to Intervene as Alleged Insurer to Defendant Collins & Aikman Products, LLC ("C&A Products, LLC") and to Vacate Default (Dkt. 217) and to Continental's Motion to Intervene and Set Aside Default (Dkt. 205).

## I.   INTRODUCTION

In its Opposition, DTSC conflates the facts and questions of law, missing the grounds upon which Proposed Intervenors seek to intervene.  As an initial matter, the following facts are crucial for the Court to consider:

- By granting the requested intervention, insurers will indeed be defending the interests of the underlying insured, Defendant C&A Products, LLC, by allowing for its alleged liability and consequences to be given the first chance of adjudication.

- Despite litigating this action for the past five (5) years and having full knowledge of the existing insurance policies that may apply to the instant claims, DTSC, DTSC's agent/appointed receiver, Brian Rostocki, and DTSC's agent, Arcina Risk Group, failed to inform Proposed Intervenors of the pending action until after DTSC sought to have the Court enter a default judgment.

- DTSC's and its agents' failures to timely inform Proposed Intervenors

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   have completely deprived Proposed Intervenors of their right to

2   conduct discovery and seek adjudication of DTSC's allegations of

3   contamination and/or whether DTSC's remediation activities are

4   consistent with the National Contingency Plan ("NCP") as statutorily

5   required in a CERCLA action.

6   • DTSC is alleging that Proposed Intervenors are putative insurers, not

7   of DTSC but of C&A Products, LLC, and that Proposed Intervenors

8   have an interest in the pending action, which serves as the basis for the

9   instant Motion.

10  • By DTSC's own admission, it waited over 4.5 years since its request

11  for default and until a mere two weeks before the initial hearing on

12  DTSC's application for entry of default judgment to inform Proposed

13  Intervenors of the pending litigation.

14  DTSC's arguments in opposition are refuted by a number of facts and legal

15  authority.  First, Proposed Intervenors' position is separate and distinct from that of

16  Travelers in that Proposed Intervenors had no notice of the present litigation until

17  September 10, 2019. *See* Century's Motion, Jacobs Decl. ¶ 4, Exhibit A (Dkt. 217-

18  1); Continental's Motion, Berdan Decl. ¶ 3, Exhibit A (Dkt. 205-1); Zuckerman

19  Decl. ¶ 7 (Dkt. 200).  This delayed notice has deprived Proposed Intervenors the

20  opportunity to conduct discovery as to DTSC's damages (i.e., consistency with the

21  NCP under CERCLA cost-recovery action).

22  Second, DTSC misapprehends the standard under *Gray v. Begley*, as that

23  case does not hold that an insurer must either accept coverage or acknowledge a

24  potential of coverage for it to intervene.  Further, *Gray v. Begley* does not even

25  apply to these circumstances where C&A Products, LLC is defunct and never

26  tendered the lawsuit to its insurers to defend – providing a "defense" to C&A

27  Products, LLC now would be an unnecessary fiction.  DTSC only seeks insurance

28  proceeds.

LEGAL:10468-0108/13272404.1

-3-

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1    Third, DTSC is itself alleging that Proposed Intervenors *are* putative insurers

2  of C&A Products, LLC, so for DTSC to argue that Proposed Intervenors have no

3  protectable interest is incongruous.  DTSC wants Proposed Intervenors to pay its

4  *unchallenged* costs, an inequity that Proposed Intervenors justifiably seek to avert.

5    Fourth, there are common questions of law and facts, specifically with

6  respect to DTSC's claimed damages, that should allow permissive intervention.

7    Here, DTSC has alleged over $3.4 million in damages without providing to

8  Proposed Intervenors, which DTSC specifically alleges are responsible insurers for

9  C&A Products, LLC, sufficient documentary support or evidence to prove its

10  damages or to show that these costs are consistent with the NCP.  Although DTSC

11  alleges that Proposed Intervenors are able to argue coverage in a separate action,

12  the fact remains that denial of intervention *here* will deprive Proposed Intervenors

13  of the ability to determine whether DTSC's costs and damages were, in fact,

14  consistent with the NCP as statutorily required in a cost-recovery CERCLA action.

15  DTSC, through its own dilatory approach and unreasonable delay in providing

16  notice of the instant lawsuit, is attempting to shift the burden of proof of its own

17  damages which is required in order to comply with statutory requirements for cost-

18  effective remediation.  Should coverage be determined at a later date and/or in a

19  separate action, denying intervention here will prevent Proposed Intervenors from

20  disputing the nature and extent of DTSC's alleged damages, and will essentially

21  give DTSC a "free pass" to skirt its statutory obligations under CERCLA.

22    As set forth in the Motions and instant Joint Reply, Proposed Intervenors

23  have satisfied the enumerated requirements under FRCP Rule 24 for intervention.

24  Furthermore, Proposed Intervenors satisfy all three requirements to permit the

25  Court to vacate default against C&A Products, LLC.  Accordingly, Proposed

26  Intervenors respectfully request that the Court grant the instant Motions.

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## II.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE IN THE LAWSUIT

### A.   DTSC's Unreasonable Delay In Providing Notice Of The Pending Action Has Prejudiced Proposed Intervenors

In the present matter, Proposed Intervenors' position is distinguishable from that of Travelers in that Proposed Intervenors had no notice of the present litigation until September 10, 2019, which was nearly five years *after* the initial filing of the Complaint, more than four years *after* default was entered, more than two weeks *after* DTSC had filed its application for entry of default judgment, and a mere two weeks prior to the initially scheduled hearing on the application.  It appears that, despite having notice of potential insurers for C&A Products, LLC, DTSC, by and through its agent Arcina Risk Group, failed to provide notice of the pending litigation for the past five years.  *See* Zuckerman Decl. ¶ 7 (Dkt. 200). Furthermore, after DTSC arranged for the appointment of Brian Rostocki as Receiver for C&A Products, LLC in 2014 in order to obtain default, Mr. Rostocki failed to make a good faith effort to provide notice or make any tender of defense or indemnity to Proposed Intervenors with respect to this lawsuit.  Based on this astonishing timeline, any claim by DTSC that it would be "prejudiced" upon Proposed Intervenors' intervention is baseless and without merit, and any perceived prejudice that would occur is the result of DTSC's own dilatory conduct.

This failure to provide notice by DTSC and its agents, Arcina Risk Group and Mr. Rostocki, has effectively denied Proposed Intervenors the opportunity to conduct discovery as to DTSC's allegations of contamination and liability and to the consistency of DTSC's remediation activities with the NCP (i.e., DTSC's alleged damages).  Moreover, DTSC's assertion that Proposed Intervenors have failed to provide a meritorious defense as to damages is due only to DTSC's own making.

It is important for the Court to note that, should intervention be denied in the

present case, ***Proposed Intervenors will essentially be denied due process by depriving these putative insurers of a full and fair opportunity to evaluate DTSC's remediation costs within the framework of the NCP***.  Despite DTSC's claims in opposition, ***allowing an unchallenged entry of default judgment will render Proposed Intervenors with <u>no recourse</u> to challenge DTSC's alleged damages, even if those damages were incurred in a manner statutorily inconsistent with the NCP***.  The purpose of the right to discovery and cross-examination is to allow the parties the ability to discover and present a meritorious defense.  Denial of intervention would severely prejudice Proposed Intervenors through no fault of their own, and, should coverage exist, would reward DTSC for its unreasonable delay in providing notice to C&A Products, LLC's insurers despite apparent knowledge of potentially applicable insurance policies for the underlying litigation.

Based on the foregoing, it is clear that Proposed Intervenors, as putative insurers of C&A Products, LLC, should be provided an opportunity to intervene in the instant lawsuit so as to permit discovery as to DTSC's claims and damages.

**B.** *Gray v. Begley* **Does Not Control The Court's Decision In This Case Involving A Defunct Insured**

In *Gray v. Begley*, the Court's holding is set forth in the first paragraph of the Court of Appeal opinion:

> "While this case presents a somewhat tortured procedural history, it also presents a significant question in the field of insurance litigation.  When an insurer provides an insured a defense under a reservation of rights, and the insured subsequently reaches a private settlement with the third party claimant without the participation of the insurer, may the insurer intervene in its own interests – including the right to seek a set-off of the judgment against the insured based upon a prior settlement by the claimant with another party?  We conclude that it may."

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

-6-

1    182 Cal.App.4th 1509 (2010).

2         *Gray v. Begley* concerned a motorist who was injured in an automobile

3    accident with an insured and brought an action against the insured.  The insurance

4    company, CNA, defended its insured under a reservation of rights.  After a jury

5    trial, the insured first filed a motion to vacate judgment, then reached an agreement

6    without the insurer's participation, and thereafter withdrew its motion to vacate.

7    The insurer intervened to file its own motion to vacate judgment.  The trial court

8    denied the insurer's motion to vacate as untimely.  The insurer appealed, and the

9    Court of Appeal reversed and remanded.  182 Cal.App.4th 1509, 1527.

10        The Court's holding in *Gray v. Begley* is of very limited usefulness for this

11   Court when considering Proposed Intervenors' motions to intervene.  Here, in 2014,

12   DTSC filed suit and engineered the default against C&A Products, LLC, a

13   cancelled Delaware limited liability company, by paying for the Receiver, Brian

14   Rostocki, to be served with summons despite having no obligation to respond to the

15   same.  Then, despite having knowledge either directly or by and through its agents

16   (which DTSC does not deny), neither DTSC, Mr. Rostocki, nor Arcina Risk Group

17   provided notice to Proposed Intervenors of the lawsuit.  DTSC then proceeded to

18   obtain default against C&A Products, LLC, without the involvement of its potential

19   insurers, on March 26, 2015.  On August 21, 2019, DTSC moved for entry of a

20   judgment of default against C&A Products, LLC, and yet DTSC *still* waited

21   another three weeks before providing notice to Proposed Intervenors of the lawsuit

22   and pending application for default judgment on September 10, 2019.  In response,

23   Proposed Intervenors (as distinguished from Travelers) promptly filed their

24   respective motions to intervene and vacate default.

25        Because C&A Products, LLC, a cancelled Delaware limited liability

26   company, no longer exists, and because C&A Products, LLC (i.e., Mr. Rostocki)

27   never sought a defense from any of its putative insurers, it is clear that DTSC

28   positioned this lawsuit solely to pursue compensation from those historical insurers.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

-7-

ER 40

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1  As such, these insurers are now seeking to intervene directly in the litigation as is

2  standard practice, specifically because there is no longer an existing entity left to

3  defend (C&A Products, LLC has been cancelled).  If the Court allows DTSC to

4  secure an unchallenged default judgment against a defunct C&A Products, LLC,

5  "This result would have the effect of punishing [Proposed Intervenors] for

6  something [they] did not do, since '[i]nsurers have no control over the solvency or

7  corporate viability of their insureds.'" *Reliance Ins. Co. v. Superior Court*, 84

8  Cal.App.4th 383, 389 (citation omitted).  Based on these facts, Proposed

9  Intervenors indisputably have sought to intervene in a timely manner, and

10 unquestionably have a protectable interest under California Insurance Code section

11 11580, *et seq*.

12      Due to the unreasonably delayed notice of the pending action, as well as the

13 historical nature of coverage and the underlying potential liability, Proposed

14 Intervenors are not in a position to either disclaim or accept coverage for C&A

15 Products, LLC.  This is due, in large part, to the fact that Proposed Intervenors has

16 not yet had an opportunity at all to investigate potential coverage issues, nor to

17 conduct discovery as to the allegations against C&A Products, LLC, as it only

18 received notice of these claims on September 10, 2019.  ***Simply put, the instant

19 motion is distinguishable from Gray on the facts but consistent with that

20 decision's rationale because Proposed Intervenors are attempting to <u>defend</u> the

21 interests of its insured under these policies.***  Accordingly, the Court should allow

22 Proposed Intervenors' intervention in the instant lawsuit.

23 **C.**   <u>**Proposed Intervenors Have A Protectable Interest Under FRCP**</u>
24      <u>**Rule 24(a), And Denial Of This Motion Will Impair Proposed**</u>
25      <u>**Intervenors' Ability To Protect Their Interests**</u>

26      Pursuant to DTSC's own allegations that Proposed Intervenors are insurers of

27 C&A Products, LLC, Proposed Intervenors' protectable interests in this case

28 include vetting of DTSC's alleged damages.  As set forth more fully above, should

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   C&A Products, LLC be deemed covered by Proposed Intervenors' policies at a later

2   date, Proposed Intervenors may be responsible for payment of DTSC's alleged

3   damages, which include alleged indirect costs and enforcement costs that would

4   otherwise be unrecoverable in a CERCLA action.  However, should intervention be

5   denied by this Court, Proposed Intervenors will be unable to challenge DTSC's

6   alleged damages and the consistency of remediation costs with the NCP, and it will

7   prevent Proposed Intervenors from demonstrating that a reasonable basis for

8   apportionment exists.

9       As in any CERCLA case, DTSC is required in a cost recovery action to prove

10  liability on the part of the defendant, allocation of liability among the parties, as well

11  as show that the costs it seeks to recover were incurred in a manner consistent with

12  the NCP.  CERCLA provides that when responding to releases of hazardous

13  substances into the environment, a State has the right to recover all costs of a

14  removal or remedial action that are "not inconsistent with" the NCP.  42 U.S.C.

15  § 9607 (a)(4)(A); *see also* 40 C.F.R. § 300 *et seq.* (setting forth NCP).  Response

16  costs incurred by a State are presumed to not be inconsistent with the NCP, and a

17  potentially responsible party has the burden of proving any inconsistency.  *Wash.*

18  *State Dept. of Transp. v. Wash. Nat. Gas Co., Pacificorp,* 59 F.3d 793, 799–800 (9th

19  Cir. 1995).

20      To prove that a response action was inconsistent with the NCP, a defendant

21  must prove that the agency's response action was arbitrary and capricious.  *Cal. ex*

22  *rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.,* 358 F.3d 661, 673

23  (9th Cir. 2004) (citations omitted).  The standard of review applicable to a State's

24  response action is set forth in the Code of Federal Regulations, which states:

25  "Actions under [CERCLA section 107(a)] will not be considered 'inconsistent with

26  the NCP,'[…] based on immaterial or insubstantial deviations from the provisions of

27  40 C.F.R. part 300."  40 C.F.R. § 300.700(c)(4).  States cannot recover costs

28  inconsistent with the response methods outlined in the NCP.  *State of N.Y. v. Shore*

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

EB-51

1    *Realty Group,* 759 F.2d 1032, 1047–48 (2d. Cir. 1985).

2         In the present case, and again due to DTSC's and its agents' dilatory tactics

3    and unreasonable delay in providing notice of this case to C&A Products, LLC's

4    putative insurers, Proposed Intervenors have been deprived of the ability to obtain

5    evidence through discovery of DTSC's potential material and substantial deviations

6    from basic NCP requirements during its response to contamination at the Site.

7    Thus, because denial of intervention here would bar Proposed Intervenors from

8    disputing DTSC's claimed damages, Proposed Intervenors' protectable interest

9    herein is DTSC's investigation and remediation costs and whether these costs were

10   incurred in a manner consistent with the NCP.

11        Moreover, contrary to DTSC's assertion, Proposed Intervenors' interests

12   herein are not adequately represented by any other party.  This is primarily due to

13   the fact that there *are no other parties to this lawsuit* other than DTSC, as C&A

14   Products, LLC is a defunct entity that has not appeared, and the remaining

15   defendants have all settled out of the case prior to Proposed Intervenors' knowledge

16   of the pending litigation.

17        Based on the foregoing, it is clear that there is good cause to permit Proposed

18   Intervenors' intervention in this case so as to allow Proposed Intervenors to

19   represent their own protectable interests as putative insurers of C&A Products, LLC.

20   To deny such intervention would effectively deny Proposed Intervenors their right

21   to due process and to contest damages as a putative insurer would be permitted to do

22   in any other CERCLA action.  DTSC should not be rewarded for its shrewd tactics

23   and unreasonable delay in providing notice of the pending action to C&A Products,

24   LLC's putative insurers, and should be required to rebut any evidence uncovered by

25   Proposed Intervenors with respect to damages upon a full and fair opportunity to

26   conduct discovery related to the same.  Accordingly, as putative insurers of C&A

27   Products, LLC, Proposed Intervenors should be allowed to intervene as a matter of

28   right to protect their own interests.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**D.**   **There Are Common Questions Of Law And Fact Sufficient To Allow For Permissive Intervention**

Under FRCP Rule 24(b), the Court may permit intervention by a party who has a claim or defense that shares with the main action a common question of law or fact.  Fed. R. Civ. P. 24(b)(1).  Here, as stated above, the common questions of law and fact are directly related to DTSC's claimed costs for investigation and remediation in response to contamination at the Site, and whether those costs were incurred in a manner consistent with the NCP.  As such, Proposed Intervenors' intervention will not "serve only to prolong the action" or "unduly delay the litigation" as claimed by DTSC, but will allow those parties potentially responsible for payment of DTSC's alleged damages the full and fair opportunity to conduct discovery and seek adjudication as to these damages and afford due process to insurers that DTSC alleges are responsible for payment of C&A Products, LLC's liabilities.  As such, Proposed Intervenors should also be permitted to intervene under the permissive intervention statute of FRCP Rule 24(b).

**III.**   **GOOD CAUSE EXISTS TO VACATE DEFAULT UNDER FRCP RULE 55(c)**

As with its argument concerning intervention, DTSC again conflates the facts and law cited in opposition to Proposed Intervenors' motions to vacate default. DTSC claims that, because Proposed Intervenors have not presented a meritorious defense to potential liability on the part of C&A Products, LLC, it would be futile to reopen judgment in the present case.  This argument fails for two reasons.

First, as described in detail above, DTSC's own delay in providing notice of this action is the sole reason that Proposed Intervenors have been unable to conduct discovery necessary to present a meritorious defense against DTSC's claims.  Thus, DTSC should not be allowed to profit from its own failure to provide timely notice to putative insurers of C&A Products, LLC.

Second, it would not be futile to reopen judgment because DTSC's claimed

1    costs for responding to contamination at the Site may have been incurred in a

2    manner inconsistent with the NCP.  This would impact DTSC's ability to recover its

3    claimed damages against putative insurers of C&A Products, LLC.

4         Good cause clearly exists to vacate default in this case.  The "meritorious

5    defense" component of the test for setting aside an entry of default pursuant to Rule

6    55(c) does not require that movant demonstrate likelihood of success on merits.

7    DTSC's assertion that "[t]he Insurers have produced no evidence that DTSC's costs

8    were inconsistent with the NCP" is not the standard here.  (*See* Plaintiff's

9    Opposition, Page 23, Lines 16-17.)  Rather, "[a]ll that is necessary to satisfy the

10   'meritorious defense' requirement is to allege sufficient facts that, if true, would

11   constitute a defense ... [at] the later litigation."  *U.S. v. Signed Personal Check No.*

12   *730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010).  Again, Proposed

13   Intervenors are representing here that a meritorious defense may exist with respect

14   to DTSC's incursion of costs inconsistent with the NCP as detailed in Proposed

15   Intervenors' opening briefs.

16        Based on the foregoing, it is clear that there is a potential meritorious defense

17   as to DTSC's claims herein.  With respect to the second factor for the Court to

18   consider, DTSC admitted that Proposed Intervenors have not engaged in any

19   culpable conduct.  *See* Plaintiff's Opposition, Page 15, Lines 26-27.  On the third

20   factor concerning alleged prejudice to DTSC, as outlined above, the intended

21   intervention at this later stage of litigation is due solely to DTSC's unreasonable

22   delay in providing notice of the same.  Furthermore, DTSC has not conducted any

23   discovery in this litigation concerning C&A Products, LLC or its putative insurers.

24   Thus, if there is any prejudice to DTSC (which Proposed Intervenors expressly

25   deny), that prejudice was brought on solely by DTSC's strategy to wait until after

26   filing its application for default judgment to notify Proposed Intervenors of this

27   lawsuit.  For these reasons, the Court should vacate the default against C&A

28   Products, LLC.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

-12-

ER 34

1

## IV.  <u>CONCLUSION</u>

2       In summary, DTSC claims that Proposed Intervenors have not presented any

3  evidence sufficient to overcome the alleged "prima facie" case of CERCLA liability

4  and damages, but ignores the fact that its own unreasonable delay and dilatory

5  tactics have prejudicially deprived Proposed Intervenors of the ability to do so.

6  Therefore, for the foregoing reasons, Proposed Intervenors respectfully request that

7  this Court permit Proposed Intervenors to intervene in the instant lawsuit as

8  putative insurers of underlying Defendant C&A Products, LLC, and to vacate the

9  default against C&A Products, LLC.

10

11  DATED:  November 25, 2019       WOOD, SMITH, HENNING & BERMAN LLP

12

13

14                                  By:  ___/s/ Stratton P. Constantinides___
                                         THOMAS F. VANDENBURG
15                                       STRATTON P. CONSTANTINIDES
16                                  Attorneys for Proposed Intervenor
                                    Century Indemnity Company as successor to
17                                  CCI Insurance Company as successor to
18                                  Insurance Company of North America

19

20  DATED:  November 25, 2019       NICOLAIDES FINK THORPE
                                    MICHAELIDES SULLIVAN LLP
21

22

23                                  By:  ___/s/ Randall P. Berdan___
24                                       SARA M. THORPE
                                         RANDALL P. BERDAN
25                                  Attorneys for Proposed Intervenor
26                                  The Continental Insurance Company

27

28

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1

# PROOF OF SERVICE

2  I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address
3  is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

4  On November 25, 2019, I served the following document(s) described as
**CENTURY INDEMNITY COMPANY AND THE CONTINENTAL**
5  **INSURANCE COMPANY'S JOINT MEMORANDUM OF POINTS AND**
**AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION**
6  **TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS &**
**AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT**  on the interested
7  parties in this action as follows:

8  ### SEE ATTACHED SERVICE LIST

9  **BY MAIL:**  I placed true copies of the foregoing document(s) enclosed in
sealed envelopes addressed as shown on the Service List.  I am "readily familiar"
10  with Wood, Smith, Henning & Berman's practice for collecting and processing
correspondence for mailing with the United States Postal Service.  Under that
11  practice, it would be deposited with the United States Postal Service that same day
in the ordinary course of business.  Such envelope(s) were placed for collection and
12  mailing with postage thereon fully prepaid at Los Angeles, California, on that same
day following ordinary business practices.
13
14  I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
of a member of the bar of this Court at whose direction the service was made.
15
16  Executed on November 25, 2019, at Los Angeles, California.

17
18  */s/ Christina Samayoa*
Christina Samayoa
19
20
21
22
23
24
25
26
27
28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1

**SERVICE LIST**

2

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*
**Case No. 2:14-cv-0595-WBS-EFB**

3

4

5

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for
service) State Bar No. 161896
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-1299
Fax: (510) 622-2270
E-mail: Laura.Zuckerman@doj.ca.gov
**Attorneys for Plaintiffs California**
**Department of Toxic Substances Control**
**and the Toxic Substances Control Account**

6

7

8

9

10

11

12

13

14

U.S.MAIL

15

Brian M. Rostocki
Reed Smith LLP - Delaware
1201 Market Street - Suite 1500
Wilmington, DE 19801
**Registered Agent for C&A Products, LLC**

16

17

18

Alexander Eugene Potente
Clyde & Co US LLP
101 2nd Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 365-9800
Fax: (415) 365-9801
Email: alex.potente@clydeco.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**Attorneys for Intervenor, THE**
**TRAVELERS INDEMNITY**
**COMPANY**

Sam M. Thorpe
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3772
Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com
LEAD ATTORNEY
ATTORNEY 70 BE NOTICED
**Attorneys for the Intervenor,**
**THE CONTINENTAL**
**INSURANCE COMPANY**

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1 | Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
2 | Stratton P. Constantinides (State Bar No. 305103)
sconstantinides@wshblaw.com
3 | **WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
4 | Los Angeles, California 90024-3804
Phone: 310-481-7600 ♦ Fax: 310-481-7650
5 |
6 | Attorneys for Proposed Intervenor Century Indemnity Company as successor to CCI
Insurance Company as successor to Insurance Company of North America
7 | Sara M. Thorpe (SBN: 146529)
sthorpe@nicolaidesllp.com
8 | Randall P. Berdan (SBN: 199623)
rberdan@nicolaidesllp.com
9 | Nicolaides Fink Thorpe Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
10 | San Francisco, CA 94104
Phone: 415-745-3770 / Fax: 415-745-3771
11 |
12 | Attorneys for Proposed Intervenor The Continental Insurance Company

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>        Plaintiffs,<br><br>    v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,,<br><br>        Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No. 2:14-cv-0595-WBS-EFB<br><br>**CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT**<br><br>Date:      December 2, 2019<br>Time:      1:30 p.m.<br>Place:     Courtroom 5, 14th Floor<br>               501 I Street<br>               Sacramento, CA 95814<br><br>The Hon. William B. Shubb<br>Trial Date:      None Set |

LEGAL:10468-0108/13272404.1                                         -1-

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

ER 50

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Proposed Intervenors CENTURY INDEMNITY COMPANY AS SUCCESSOR TO CCI INSURANCE COMPANY AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA ("Century") and THE CONTINENTAL INSURANCE COMPANY ("Continental") (hereinafter, collectively, "Proposed Intervenors") hereby submit their Joint Memorandum of Points and Authorities in Reply to CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT (hereinafter, collectively, "DTSC" or "Plaintiffs") Opposition (Dkt. 227) to Century's Motion to Intervene as Alleged Insurer to Defendant Collins & Aikman Products, LLC ("C&A Products, LLC") and to Vacate Default (Dkt. 217) and to Continental's Motion to Intervene and Set Aside Default (Dkt. 205).

I.   **INTRODUCTION**

In its Opposition, DTSC conflates the facts and questions of law, missing the grounds upon which Proposed Intervenors seek to intervene.  As an initial matter, the following facts are crucial for the Court to consider:

- By granting the requested intervention, insurers will indeed be defending the interests of the underlying insured, Defendant C&A Products, LLC, by allowing for its alleged liability and consequences to be given the first chance of adjudication.

- Despite litigating this action for the past five (5) years and having full knowledge of the existing insurance policies that may apply to the instant claims, DTSC, DTSC's agent/appointed receiver, Brian Rostocki, and DTSC's agent, Arcina Risk Group, failed to inform Proposed Intervenors of the pending action until after DTSC sought to have the Court enter a default judgment.

- DTSC's and its agents' failures to timely inform Proposed Intervenors

have completely deprived Proposed Intervenors of their right to conduct discovery and seek adjudication of DTSC's allegations of contamination and/or whether DTSC's remediation activities are consistent with the National Contingency Plan ("NCP") as statutorily required in a CERCLA action.

- DTSC is alleging that Proposed Intervenors are putative insurers, not of DTSC but of C&A Products, LLC, and that Proposed Intervenors have an interest in the pending action, which serves as the basis for the instant Motion.

- By DTSC's own admission, it waited over 4.5 years since its request for default and until a mere two weeks before the initial hearing on DTSC's application for entry of default judgment to inform Proposed Intervenors of the pending litigation.

DTSC's arguments in opposition are refuted by a number of facts and legal authority.  First, Proposed Intervenors' position is separate and distinct from that of Travelers in that Proposed Intervenors had no notice of the present litigation until September 10, 2019.  *See* Century's Motion, Jacobs Decl. ¶ 4, Exhibit A (Dkt. 217-1); Continental's Motion, Berdan Decl. ¶ 3, Exhibit A (Dkt. 205-1); Zuckerman Decl. ¶ 7 (Dkt. 200).  This delayed notice has deprived Proposed Intervenors the opportunity to conduct discovery as to DTSC's damages (i.e., consistency with the NCP under CERCLA cost-recovery action).

Second, DTSC misapprehends the standard under *Gray v. Begley*, as that case does not hold that an insurer must either accept coverage or acknowledge a potential of coverage for it to intervene.  Further, *Gray v. Begley* does not even apply to these circumstances where C&A Products, LLC is defunct and never tendered the lawsuit to its insurers to defend – providing a "defense" to C&A Products, LLC now would be an unnecessary fiction.  DTSC only seeks insurance proceeds.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1    Third, DTSC is itself alleging that Proposed Intervenors *are* putative insurers

2  of C&A Products, LLC, so for DTSC to argue that Proposed Intervenors have no

3  protectable interest is incongruous.  DTSC wants Proposed Intervenors to pay its

4  *unchallenged* costs, an inequity that Proposed Intervenors justifiably seek to avert.

5    Fourth, there are common questions of law and facts, specifically with

6  respect to DTSC's claimed damages, that should allow permissive intervention.

7    Here, DTSC has alleged over $3.4 million in damages without providing to

8  Proposed Intervenors, which DTSC specifically alleges are responsible insurers for

9  C&A Products, LLC, sufficient documentary support or evidence to prove its

10 damages or to show that these costs are consistent with the NCP.  Although DTSC

11 alleges that Proposed Intervenors are able to argue coverage in a separate action,

12 the fact remains that denial of intervention *here* will deprive Proposed Intervenors

13 of the ability to determine whether DTSC's costs and damages were, in fact,

14 consistent with the NCP as statutorily required in a cost-recovery CERCLA action.

15 DTSC, through its own dilatory approach and unreasonable delay in providing

16 notice of the instant lawsuit, is attempting to shift the burden of proof of its own

17 damages which is required in order to comply with statutory requirements for cost-

18 effective remediation.  Should coverage be determined at a later date and/or in a

19 separate action, denying intervention here will prevent Proposed Intervenors from

20 disputing the nature and extent of DTSC's alleged damages, and will essentially

21 give DTSC a "free pass" to skirt its statutory obligations under CERCLA.

22    As set forth in the Motions and instant Joint Reply, Proposed Intervenors

23 have satisfied the enumerated requirements under FRCP Rule 24 for intervention.

24 Furthermore, Proposed Intervenors satisfy all three requirements to permit the

25 Court to vacate default against C&A Products, LLC.  Accordingly, Proposed

26 Intervenors respectfully request that the Court grant the instant Motions.

27 / / /

28 / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## II.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE IN THE LAWSUIT

### A.   DTSC's Unreasonable Delay In Providing Notice Of The Pending Action Has Prejudiced Proposed Intervenors

In the present matter, Proposed Intervenors' position is distinguishable from that of Travelers in that Proposed Intervenors had <u>no notice</u> of the present litigation until September 10, 2019, which was nearly five years *after* the initial filing of the Complaint, more than four years *after* default was entered, more than two weeks *after* DTSC had filed its application for entry of default judgment, and a mere two weeks prior to the initially scheduled hearing on the application. It appears that, despite having notice of potential insurers for C&A Products, LLC, DTSC, by and through its agent Arcina Risk Group, failed to provide notice of the pending litigation for the past five years. *See* Zuckerman Decl. ¶ 7 (Dkt. 200). Furthermore, after DTSC arranged for the appointment of Brian Rostocki as Receiver for C&A Products, LLC in 2014 in order to obtain default, Mr. Rostocki failed to make a good faith effort to provide notice or make any tender of defense or indemnity to Proposed Intervenors with respect to this lawsuit. Based on this astonishing timeline, any claim by DTSC that it would be "prejudiced" upon Proposed Intervenors' intervention is baseless and without merit, and any perceived prejudice that would occur is the result of DTSC's own dilatory conduct.

This failure to provide notice by DTSC and its agents, Arcina Risk Group and Mr. Rostocki, has effectively denied Proposed Intervenors the opportunity to conduct discovery as to DTSC's allegations of contamination and liability and to the consistency of DTSC's remediation activities with the NCP (i.e., DTSC's alleged damages). Moreover, DTSC's assertion that Proposed Intervenors have failed to provide a meritorious defense as to damages is due only to DTSC's own making.

It is important for the Court to note that, should intervention be denied in the

1   present case, ***Proposed Intervenors will essentially be denied due process by***

2   ***depriving these putative insurers of a full and fair opportunity to evaluate***

3   ***DTSC's remediation costs within the framework of the NCP***.  Despite DTSC's

4   claims in opposition, ***allowing an unchallenged entry of default judgment will***

5   ***render Proposed Intervenors with <u>no recourse</u> to challenge DTSC's alleged***

6   ***damages, even if those damages were incurred in a manner statutorily***

7   ***inconsistent with the NCP***.  The purpose of the right to discovery and cross-

8   examination is to allow the parties the ability to discover and present a meritorious

9   defense.  Denial of intervention would severely prejudice Proposed Intervenors

10  through no fault of their own, and, should coverage exist, would reward DTSC for

11  its unreasonable delay in providing notice to C&A Products, LLC's insurers despite

12  apparent knowledge of potentially applicable insurance policies for the underlying

13  litigation.

14          Based on the foregoing, it is clear that Proposed Intervenors, as putative

15  insurers of C&A Products, LLC, should be provided an opportunity to intervene in

16  the instant lawsuit so as to permit discovery as to DTSC's claims and damages.

17  **B.**   ***<u>Gray v. Begley</u> Does Not Control The Court's Decision In This***
         ***<u>Case Involving A Defunct Insured</u>***

18

19          In *Gray v. Begley*, the Court's holding is set forth in the first paragraph of the

20  Court of Appeal opinion:

21              "While this case presents a somewhat tortured procedural
                history, it also presents a significant question in the field
22              of insurance litigation.  When an insurer provides an
                insured a defense under a reservation of rights, and the
23              insured subsequently reaches a private settlement with the
                third party claimant without the participation of the
24              insurer, may the insurer intervene in its own interests –
25              including the right to seek a set-off of the judgment
                against the insured based upon a prior settlement by the
26              claimant with another party?  We conclude that it may."
27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1
-6-
CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1  182 Cal.App.4[th] 1509 (2010).

2      *Gray v. Begley* concerned a motorist who was injured in an automobile

3  accident with an insured and brought an action against the insured.  The insurance

4  company, CNA, defended its insured under a reservation of rights.  After a jury

5  trial, the insured first filed a motion to vacate judgment, then reached an agreement

6  without the insurer's participation, and thereafter withdrew its motion to vacate.

7  The insurer intervened to file its own motion to vacate judgment.  The trial court

8  denied the insurer's motion to vacate as untimely.  The insurer appealed, and the

9  Court of Appeal reversed and remanded.  182 Cal.App.4th 1509, 1527.

10      The Court's holding in *Gray v. Begley* is of very limited usefulness for this

11  Court when considering Proposed Intervenors' motions to intervene.  Here, in 2014,

12  DTSC filed suit and engineered the default against C&A Products, LLC, a

13  cancelled Delaware limited liability company, by paying for the Receiver, Brian

14  Rostocki, to be served with summons despite having no obligation to respond to the

15  same.  Then, despite having knowledge either directly or by and through its agents

16  (which DTSC does not deny), neither DTSC, Mr. Rostocki, nor Arcina Risk Group

17  provided notice to Proposed Intervenors of the lawsuit.  DTSC then proceeded to

18  obtain default against C&A Products, LLC, without the involvement of its potential

19  insurers, on March 26, 2015.  On August 21, 2019, DTSC moved for entry of a

20  judgment of default against C&A Products, LLC, and yet DTSC *still* waited

21  another three weeks before providing notice to Proposed Intervenors of the lawsuit

22  and pending application for default judgment on September 10, 2019.  In response,

23  Proposed Intervenors (as distinguished from Travelers) promptly filed their

24  respective motions to intervene and vacate default.

25      Because C&A Products, LLC, a cancelled Delaware limited liability

26  company, no longer exists, and because C&A Products, LLC (i.e., Mr. Rostocki)

27  never sought a defense from any of its putative insurers, it is clear that DTSC

28  positioned this lawsuit solely to pursue compensation from those historical insurers.

LEGAL:10468-0108/13272404.1

-7-

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   As such, these insurers are now seeking to intervene directly in the litigation as is

2   standard practice, specifically because there is no longer an existing entity left to

3   defend (C&A Products, LLC has been cancelled).  If the Court allows DTSC to

4   secure an unchallenged default judgment against a defunct C&A Products, LLC,

5   "This result would have the effect of punishing [Proposed Intervenors] for

6   something [they] did not do, since '[i]nsurers have no control over the solvency or

7   corporate viability of their insureds.'" *Reliance Ins. Co. v. Superior Court*, 84

8   Cal.App.4th 383, 389 (citation omitted).  Based on these facts, Proposed

9   Intervenors indisputably have sought to intervene in a timely manner, and

10  unquestionably have a protectable interest under California Insurance Code section

11  11580, *et seq*.

12          Due to the unreasonably delayed notice of the pending action, as well as the

13  historical nature of coverage and the underlying potential liability, Proposed

14  Intervenors are not in a position to either disclaim or accept coverage for C&A

15  Products, LLC.  This is due, in large part, to the fact that Proposed Intervenors has

16  not yet had an opportunity at all to investigate potential coverage issues, nor to

17  conduct discovery as to the allegations against C&A Products, LLC, as it only

18  received notice of these claims on September 10, 2019.  ***Simply put, the instant***

19  ***motion is distinguishable from Gray on the facts but consistent with that***

20  ***decision's rationale because Proposed Intervenors are attempting to <u>defend</u> the***

21  ***interests of its insured under these policies.***  Accordingly, the Court should allow

22  Proposed Intervenors' intervention in the instant lawsuit.

23      **C.**     **<u>Proposed Intervenors Have A Protectable Interest Under FRCP</u>**

24              **<u>Rule 24(a), And Denial Of This Motion Will Impair Proposed</u>**

25              **<u>Intervenors' Ability To Protect Their Interests</u>**

26          Pursuant to DTSC's own allegations that Proposed Intervenors are insurers of

27  C&A Products, LLC, Proposed Intervenors' protectable interests in this case

28  include vetting of DTSC's alleged damages.  As set forth more fully above, should

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  C&A Products, LLC be deemed covered by Proposed Intervenors' policies at a later

2  date, Proposed Intervenors may be responsible for payment of DTSC's alleged

3  damages, which include alleged indirect costs and enforcement costs that would

4  otherwise be unrecoverable in a CERCLA action.  However, should intervention be

5  denied by this Court, Proposed Intervenors will be unable to challenge DTSC's

6  alleged damages and the consistency of remediation costs with the NCP, and it will

7  prevent Proposed Intervenors from demonstrating that a reasonable basis for

8  apportionment exists.

9  As in any CERCLA case, DTSC is required in a cost recovery action to prove

10  liability on the part of the defendant, allocation of liability among the parties, as well

11  as show that the costs it seeks to recover were incurred in a manner consistent with

12  the NCP.  CERCLA provides that when responding to releases of hazardous

13  substances into the environment, a State has the right to recover all costs of a

14  removal or remedial action that are "not inconsistent with" the NCP.  42 U.S.C.

15  § 9607 (a)(4)(A); *see also* 40 C.F.R. § 300 *et seq.* (setting forth NCP).  Response

16  costs incurred by a State are presumed to not be inconsistent with the NCP, and a

17  potentially responsible party has the burden of proving any inconsistency.  *Wash.*

18  *State Dept. of Transp. v. Wash. Nat. Gas Co., Pacificorp,* 59 F.3d 793, 799–800 (9th

19  Cir. 1995).

20  To prove that a response action was inconsistent with the NCP, a defendant

21  must prove that the agency's response action was arbitrary and capricious.  *Cal. ex*

22  *rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.,* 358 F.3d 661, 673

23  (9th Cir. 2004) (citations omitted).  The standard of review applicable to a State's

24  response action is set forth in the Code of Federal Regulations, which states:

25  "Actions under [CERCLA section 107(a)] will not be considered 'inconsistent with

26  the NCP,'[…] based on immaterial or insubstantial deviations from the provisions of

27  40 C.F.R. part 300."  40 C.F.R. § 300.700(c)(4).  States cannot recover costs

28  inconsistent with the response methods outlined in the NCP.  *State of N.Y. v. Shore*

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  *Realty Group,* 759 F.2d 1032, 1047–48 (2d. Cir. 1985).

2  In the present case, and again due to DTSC's and its agents' dilatory tactics
3  and unreasonable delay in providing notice of this case to C&A Products, LLC's
4  putative insurers, Proposed Intervenors have been deprived of the ability to obtain
5  evidence through discovery of DTSC's potential material and substantial deviations
6  from basic NCP requirements during its response to contamination at the Site.
7  Thus, because denial of intervention here would bar Proposed Intervenors from
8  disputing DTSC's claimed damages, Proposed Intervenors' protectable interest
9  herein is DTSC's investigation and remediation costs and whether these costs were
10  incurred in a manner consistent with the NCP.

11  Moreover, contrary to DTSC's assertion, Proposed Intervenors' interests
12  herein are not adequately represented by any other party.  This is primarily due to
13  the fact that there *are no other parties to this lawsuit* other than DTSC, as C&A
14  Products, LLC is a defunct entity that has not appeared, and the remaining
15  defendants have all settled out of the case prior to Proposed Intervenors' knowledge
16  of the pending litigation.

17  Based on the foregoing, it is clear that there is good cause to permit Proposed
18  Intervenors' intervention in this case so as to allow Proposed Intervenors to
19  represent their own protectable interests as putative insurers of C&A Products, LLC.
20  To deny such intervention would effectively deny Proposed Intervenors their right
21  to due process and to contest damages as a putative insurer would be permitted to do
22  in any other CERCLA action.  DTSC should not be rewarded for its shrewd tactics
23  and unreasonable delay in providing notice of the pending action to C&A Products,
24  LLC's putative insurers, and should be required to rebut any evidence uncovered by
25  Proposed Intervenors with respect to damages upon a full and fair opportunity to
26  conduct discovery related to the same.  Accordingly, as putative insurers of C&A
27  Products, LLC, Proposed Intervenors should be allowed to intervene as a matter of
28  right to protect their own interests.

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

D.     <u>There Are Common Questions Of Law And Fact Sufficient To Allow For Permissive Intervention</u>

Under FRCP Rule 24(b), the Court may permit intervention by a party who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1). Here, as stated above, the common questions of law and fact are directly related to DTSC's claimed costs for investigation and remediation in response to contamination at the Site, and whether those costs were incurred in a manner consistent with the NCP. As such, Proposed Intervenors' intervention will not "serve only to prolong the action" or "unduly delay the litigation" as claimed by DTSC, but will allow those parties potentially responsible for payment of DTSC's alleged damages the full and fair opportunity to conduct discovery and seek adjudication as to these damages and afford due process to insurers that DTSC alleges are responsible for payment of C&A Products, LLC's liabilities. As such, Proposed Intervenors should also be permitted to intervene under the permissive intervention statute of FRCP Rule 24(b).

## III.    <u>GOOD CAUSE EXISTS TO VACATE DEFAULT UNDER FRCP RULE 55(c)</u>

As with its argument concerning intervention, DTSC again conflates the facts and law cited in opposition to Proposed Intervenors' motions to vacate default. DTSC claims that, because Proposed Intervenors have not presented a meritorious defense to potential liability on the part of C&A Products, LLC, it would be futile to reopen judgment in the present case. This argument fails for two reasons.

First, as described in detail above, DTSC's own delay in providing notice of this action is the sole reason that Proposed Intervenors have been unable to conduct discovery necessary to present a meritorious defense against DTSC's claims. Thus, DTSC should not be allowed to profit from its own failure to provide timely notice to putative insurers of C&A Products, LLC.

Second, it would not be futile to reopen judgment because DTSC's claimed

1    costs for responding to contamination at the Site may have been incurred in a

2    manner inconsistent with the NCP.  This would impact DTSC's ability to recover its

3    claimed damages against putative insurers of C&A Products, LLC.

4         Good cause clearly exists to vacate default in this case.  The "meritorious

5    defense" component of the test for setting aside an entry of default pursuant to Rule

6    55(c) does not require that movant demonstrate likelihood of success on merits.

7    DTSC's assertion that "[t]he Insurers have produced no evidence that DTSC's costs

8    were inconsistent with the NCP" is not the standard here.  (*See* Plaintiff's

9    Opposition, Page 23, Lines 16-17.)  Rather, "[a]ll that is necessary to satisfy the

10   'meritorious defense' requirement is to allege sufficient facts that, if true, would

11   constitute a defense ... [at] the later litigation."  *U.S. v. Signed Personal Check No.*

12   *730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010).  Again, Proposed

13   Intervenors are representing here that a meritorious defense may exist with respect

14   to DTSC's incursion of costs inconsistent with the NCP as detailed in Proposed

15   Intervenors' opening briefs.

16        Based on the foregoing, it is clear that there is a potential meritorious defense

17   as to DTSC's claims herein.  With respect to the second factor for the Court to

18   consider, DTSC admitted that Proposed Intervenors have not engaged in any

19   culpable conduct.  *See* Plaintiff's Opposition, Page 15, Lines 26-27.  On the third

20   factor concerning alleged prejudice to DTSC, as outlined above, the intended

21   intervention at this later stage of litigation is due solely to DTSC's unreasonable

22   delay in providing notice of the same.  Furthermore, DTSC has not conducted any

23   discovery in this litigation concerning C&A Products, LLC or its putative insurers.

24   Thus, if there is any prejudice to DTSC (which Proposed Intervenors expressly

25   deny), that prejudice was brought on solely by DTSC's strategy to wait until after

26   filing its application for default judgment to notify Proposed Intervenors of this

27   lawsuit.  For these reasons, the Court should vacate the default against C&A

28   Products, LLC.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    **IV.    <u>CONCLUSION</u>**

2          In summary, DTSC claims that Proposed Intervenors have not presented any

3    evidence sufficient to overcome the alleged "prima facie" case of CERCLA liability

4    and damages, but ignores the fact that its own unreasonable delay and dilatory

5    tactics have prejudicially deprived Proposed Intervenors of the ability to do so.

6    Therefore, for the foregoing reasons, Proposed Intervenors respectfully request that

7    this Court permit Proposed Intervenors to intervene in the instant lawsuit as

8    putative insurers of underlying Defendant C&A Products, LLC, and to vacate the

9    default against C&A Products, LLC.

10

11   DATED:  November 25, 2019          WOOD, SMITH, HENNING & BERMAN LLP

12

13

14                                      By:  _*/s/ Stratton P. Constantinides*_

15                                          THOMAS F. VANDENBURG
                                            STRATTON P. CONSTANTINIDES

16                                      Attorneys for Proposed Intervenor
                                        Century Indemnity Company as successor to

17                                      CCI Insurance Company as successor to
                                        Insurance Company of North America

18

19

20   DATED:  November 25, 2019          NICOLAIDES FINK THORPE
                                        MICHAELIDES SULLIVAN LLP

21

22

23                                      By:  _*/s/ Randall P. Berdan*_

24                                          SARA M. THORPE
                                            RANDALL P. BERDAN

25                                      Attorneys for Proposed Intervenor
                                        The Continental Insurance Company

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

-13-

**FR-70**

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1

## PROOF OF SERVICE

2     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address
3 is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

4     On November 25, 2019, I served the following document(s) described as
**CENTURY INDEMNITY COMPANY AND THE CONTINENTAL**
5 **INSURANCE COMPANY'S JOINT MEMORANDUM OF POINTS AND**
**AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION**
6 **TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS &**
**AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT** on the interested
7 parties in this action as follows:

8 ### SEE ATTACHED SERVICE LIST

9     **BY MAIL:**  I placed true copies of the foregoing document(s) enclosed in
sealed envelopes addressed as shown on the Service List.  I am "readily familiar"
10 with Wood, Smith, Henning & Berman's practice for collecting and processing
correspondence for mailing with the United States Postal Service.  Under that
11 practice, it would be deposited with the United States Postal Service that same day
in the ordinary course of business.  Such envelope(s) were placed for collection and
12 mailing with postage thereon fully prepaid at Los Angeles, California, on that same
day following ordinary business practices.
13

14     I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
of a member of the bar of this Court at whose direction the service was made.
15

16     Executed on November 25, 2019, at Los Angeles, California.

17

18 /s/ Christina Samayoa
Christina Samayoa

19

20

21

22

23

24

25

26

27

28

LEGAL:10468-0108/13272404.1

-1-

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1

## SERVICE LIST

2

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*
**Case No. 2:14-cv-0595-WBS-EFB**

3

4

5   XAVIER BECERRA
Attorney General of California
6   EDWARD H. OCHOA
Supervising Deputy Attorney General
7   OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for
8   service) State Bar No. 161896
Deputy Attorneys General
9   1515 Clay Street, 20th Floor
Oakland, CA 94612
10  Telephone: (510) 879-1299
Fax: (510) 622-2270
11  E-mail: Laura.Zuckerman@doj.ca.gov
**Attorneys for Plaintiffs California**
12  **Department of Toxic Substances Control**
**and the Toxic Substances Control Account**

13

14  U.S.MAIL

15  Brian M. Rostocki
Reed Smith LLP - Delaware
16  1201 Market Street - Suite 1500
Wilmington, DE 19801
17  **Registered Agent for C&A Products, LLC**

Alexander Eugene Potente
Clyde & Co US LLP
101 2nd Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 365-9800
Fax: (415) 365-9801
Email: alex.potente@clydeco.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**Attorneys for Intervenor, THE**
**TRAVELERS INDEMNITY**
**COMPANY**

Sam M. Thorpe
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3772
Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com
LEAD ATTORNEY
ATTORNEY 70 BE NOTICED
**Attorneys for the Intervenor,**
**THE CONTINENTAL**
**INSURANCE COMPANY**

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/13272404.1

-2-

ER 72

CENTURY INDEMNITY COMPANY AND THE CONTINENTAL INSURANCE COMPANY'S REPLY TO
PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1  Thomas F. Vandenburg (State Bar No. 163446)
   tvandenburg@wshblaw.com
2  Stratton P. Constantinides (State Bar No. 305103)
   sconstantinides@wshblaw.com
3  **WOOD, SMITH, HENNING & BERMAN LLP**
   10960 Wilshire Boulevard, 18th Floor
4  Los Angeles, California 90024-3804
   Phone: 310-481-7600 ♦ Fax: 310-481-7650
5

6  Attorneys for Proposed Intervenors Allianz Underwriters Insurance Company,
   Chicago Insurance Company, and Fireman's Fund Insurance Company
7

8              **UNITED STATES DISTRICT COURT**

9    **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

10

11  CALIFORNIA DEPARTMENT OF          Case No. 2:14-cv-0595-WBS-EFB
    TOXIC SUBSTANCES CONTROL
12  and the TOXIC SUBSTANCES          **ALLIANZ UNDERWRITERS**
    CONTROL ACCOUNT,                  **INSURANCE COMPANY,**
13                                     **CHICAGO INSURANCE**
                Plaintiffs,            **COMPANY, AND FIREMAN'S**
14                                     **FUND INSURANCE COMPANY'S**
          v.                          **MEMORANDUM OF POINTS AND**
15                                     **AUTHORITIES IN REPLY TO**
    JIM DOBBAS, INC., a California     **PLAINTIFFS' OPPOSITION TO**
16  corporation; CONTINENTAL RAIL,    **MOTION TO INTERVENE AS**
    INC., a Delaware corporation; DAVID **ALLEGED INSURER OF**
17  VAN OVER, individually; PACIFIC   **DEFENDANT COLLINS &**
    WOOD PRESERVING, a dissolved      **AIKMAN PRODUCTS, LLC AND**
18  California corporation; WEST COAST **TO VACATE DEFAULT**
    WOOD PRESERVING, LLC., a
19  Nevada limited liability company; and
    COLLINS & AIKMAN PRODUCTS,        Date:        December 2, 2019
20  LLC, a Delaware limited liability  Time:        1:30 p.m.
    company,,                          Place:       Courtroom 5, 14th Floor
21                                                  501 I Street
                Defendants.                         Sacramento, CA 95814
22
                                       The Hon. William B. Shubb
23  AND RELATED CROSS-ACTIONS
                                       Trial Date:        None Set
24

25

26  / / /

27  / / /

28  / / /

LEGAL:05971-0074/13272687.1

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

ER-73

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Proposed Intervenors ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY ("Allianz Intervenors") hereby submit their Memorandum of Points and Authorities in Reply to CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT (hereinafter, collectively, "DTSC" or "Plaintiffs") Opposition (Dkt. 227) to Allianz Intervenors' Motion to Intervene as excess insurers of the Wickes Companies, Inc. ("Wickes"), alleged predecessor of underlying Defendant Collins & Aikman Products, LLC ("C&A Products, LLC") and to Vacate Default (Dkt. 222).

## I. <u>INTRODUCTION</u>

In its Opposition, DTSC has attempted to conflate the facts and questions of law in order to distract the Court from the grounds upon which Allianz Intervenors seek to intervene.  As an initial matter, the following facts are crucial for the Court to consider:

- Despite litigating this action for the past five (5) years, DTSC, DTSC's agent/appointed receiver, Brian Rostocki, and DTSC's agent, Arcina Risk Group failed to inform Allianz Intervenors of the pending action, even though they had knowledge of insurance policies that may apply to the instant claims.

- DTSC's and its agents' purposeful failures to inform have deprived Allianz Intervenors of their right to conduct discovery as to DTSC's allegations of contamination, and/or as to whether DTSC's remediation activities are consistent with the National Contingency Plan ("NCP") as statutorily required in a CERCLA action.

- DTSC is alleging that Allianz Intervenors are insurers against whom

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

DTSC will seek to enforce any default judgment and that Allianz Intervenors have an interest in the pending action, which serves as the basis for the instant Motion.

- By DTSC's own admission, it waited until two weeks before the initial hearing on DTSC's application for entry of default to inform Allianz Intervenors of the pending litigation.

In addition, DTSC's arguments in opposition are refuted by a number of facts and legal authority.  First, Allianz Intervenors' position is separate and distinct from that of Travelers in that Allianz Intervenors had no notice of the present litigation until September 10, 2019.  *See* Motion, Solomon Decl. ¶ 5, Exhibit B (Dkt. 222-1); Zuckerman Decl. ¶ 7 (Dkt. 200).  This purposefully delayed notice has denied Allianz Intervenors the opportunity to conduct discovery as to which entities released each alleged contaminant and the quantity, timing and nature of each release – all of which are relevant to the determination of which entity(ies) are liable and the proportionate responsibility of said entities.  Allianz Interveners' clear interest here stems from the fact that it only insured Wickes and, consequently, contesting Wickes liability, as respects the other defendants, is of paramount concern.  The late notice has also prejudiced Allianz's ability to rebut the DTSC's alleged damages (i.e., consistency with the NCP under CERCLA cost-recovery action) or to form a coverage position with respect to C&A Products, LLC.

Second, Allianz Interveners reserved all rights concerning coverage, which is all that an excess insurer must do to preserve the right to intervene.

Third, DTSC misrepresents the standard under *Gray v. Begley*, and the opinion in that case relies on facts distinguishable from the present lawsuit.

Fourth, DTSC is itself alleging that Allianz Intervenors *is* an insurer of Wickes, so for DTSC to rely on arguments in Opposition that Allianz Intervenors have no protectable interest is contrary to applicable law and is disingenuous at best.

LEGAL:05971-0074/13272687.1

-3-

ER-75

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    Finally, there are common questions of law and facts, specifically with

2    respect to liability, apportionment and DTSC's claimed damages, that would serve

3    to allow permissive intervention.

4    Here, DTSC specifically alleges numerous parties conducted operations that

5    contributed to the alleged contamination.  No facts are alleged concerning the

6    nature, quantity, timing or duration of any release of contaminants.  Nothing is

7    alleged concerning the specific activities of Wickes that allegedly caused any

8    contamination.  Certainly, Allianz has not been afforded the opportunity to contest

9    the vague allegations concerning Wickes' operations.

10   DTSC has also alleged over $3.4 million in damages without providing to

11   Allianz Intervenors, who are alleged by DTSC to be insurers for Wickes, sufficient

12   documentary support or evidence to prove its damages, show that these costs are

13   consistent with the NCP or establish apportionment of liability.

14   Although DTSC alleges that Allianz Intervenors are able to argue coverage

15   under a separate action (impliedly admitting there is a protectable interest), the fact

16   remains that denial of intervention *here* will solidify the actual prejudice to Allianz

17   Intervenors due to the late notice, and preclude any ability to contest that its insured

18   bears any true liability or the relative apportionment of fault.  Denial of intervention

19   will also prevent Allianz Intervenors from contesting DTSC's costs and damages,

20   including whether they are, in fact, consistent with the NCP as statutorily required

21   in a cost-recovery CERCLA action.

22   As set forth in the Motion and instant Reply, Allianz Intervenors have

23   satisfied the enumerated requirements under FRCP Rule 24 for intervention.

24   Furthermore, Allianz Intervenors satisfy all three requirements to permit the Court

25   to vacate default against C&A Products, LLC.  Accordingly, Allianz Intervenors

26   respectfully request that the Court grant the instant Motion.

27   / / /

28   / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## II.   ALLIANZ INTERVENORS ARE ENTITLED TO INTERVENE IN THE LAWSUIT

### A.   DTSC's Unreasonable Delay In Providing Notice Of The Pending Action Has Prejudiced Allianz Intervenors

As noted, Allianz Intervenors' position is distinguishable from that of Travelers in that Allianz Intervenors had <u>no notice</u> of the present litigation until September 10, 2019, which was *after* DTSC had filed its application for entry of default judgment and a mere two weeks prior to the hearing on the application.  It appears that, despite having notice of potential insurers for C&A Products, LLC, DTSC, by and through its agent Arcina Risk Group, failed to provide notice of the pending litigation for the past five years.  *See* Zuckerman Decl. ¶ 7 (Dkt. 200).  Furthermore, after DTSC orchestrated the appointment of Brian Rostocki as Receiver for C&A Products, LLC in 2014 in order to obtain default, Mr. Rostocki failed to make a good faith effort to provide notice or make any tender of defense or indemnity to Allianz Intervenors with respect to this lawsuit.  Based on this timeline, any claim by DTSC that it would be "prejudiced" upon Allianz Intervenors' intervention is baseless and without merit, and any perceived prejudice that would occur is the result of DTSC's own dilatory tactics.

This failure to provide notice by DTSC and its agents, Arcina Risk Group and Mr. Rostocki, has resulted in actual prejudice to Allianz Intervenors by effectively precluding Allianz Intervenors the opportunity to conduct discovery as to DTSC's allegations of contamination and liability, the relative apportionment of responsibility, and the consistency of DTSC's remediation activities with the NCP (i.e., DTSC's alleged damages).  Moreover, DTSC's assertion that Allianz Intervenors failed to show a meritorious defense exists is due only to DTSC's own dilatory tactics which has prevented Allianz Intervenors from conducting any discovery with respect to these claims in order to formulate its defenses.

It is important for the Court to note that, should intervention be denied in the

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ◆ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   present case, ***Allianz Intervenors will essentially be denied due process by***
2   ***depriving this insurer of a full and fair opportunity to evaluate DTSC's***
3   ***allegations of liability and claimed remediation costs within the framework of the***
4   ***NCP***.  Despite DTSC's claims in opposition, ***allowing an unchallenged entry of***
5   ***default will render Allianz Intervenors with <ins>no recourse</ins> to contest the issues***
6   ***within the scope of the default judgment***.  The purpose of the right to discovery
7   and cross-examination is to allow the parties the ability to discover and present a
8   meritorious defense.  Denial of intervention would solidify the actual prejudice to
9   Allianz Interveners caused by the late notice at no fault of their own.
10          Based on the foregoing, it is clear that Allianz Intervenors, as putative
11  insurers of Wickes, should be provided an opportunity to intervene in the instant
12  lawsuit so as to permit discovery as to DTSC's claims and damages.
13      **B.      <ins>*Gray v. Begley* Does Not Control The Court's Decision In This</ins>**
14              **<ins>Case</ins>**
15          In *Gray v. Begley*, the Court's holding is set forth in the first paragraph of the
16  Court of Appeal opinion:
17              "While this case presents a somewhat tortured procedural
18              history, it also presents a significant question in the field
19              of insurance litigation.  When an insurer provides an
20              insured a defense under a reservation of rights, and the
21              insured subsequently reaches a private settlement with the
22              third party claimant without the participation of the
23              insurer, may the insurer intervene in its own interests –
24              including the right to seek a set-off of the judgment
                against the insured based upon a prior settlement by the
                claimant with another party?  We conclude that it may."
25  182 Cal.App.4th 1509 (2010).
26          *Gray v. Begley* concerned a motorist who was injured in an automobile
27  accident with an insured and brought an action against the insured.  The insurance
28  company, CNA, defended its insured under a reservation of rights.  After a jury

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1   trial, the Insured first filed a motion to vacate judgment, then reached an agreement

2   without the Insurer's participation, and thereafter withdrew its motion to vacate.

3   The Insurer intervened to file its own motion to vacate judgment. The trial court

4   denied the Insurer's motion to vacate as untimely.  The Insurer appealed, and the

5   Court of Appeal reversed and remanded.  *Id.* at 1527.

6   The Court's holding in *Gray v. Begley* is of very limited usefulness for this

7   Court when considering Allianz Intervenors' motion to intervene.  Here, in 2014,

8   DTSC filed suit and engineered the default against C&A Products, LLC, a

9   cancelled Delaware limited liability company, by paying for the Receiver, Brian

10  Rostocki, to be served with summons despite having no obligation to respond to the

11  same.  Then, despite having knowledge either directly or by and through its agents

12  (which DTSC does not deny), neither DTSC, Mr. Rostocki, nor Arcina Risk Group

13  provided notice to Allianz Intervenors of the lawsuit.  DTSC then proceeded to

14  obtain default against C&A Products, LLC, without the involvement of its potential

15  insurers, on March 26, 2015.  On August 21, 2019, DTSC moved for entry of a

16  judgment of default against C&A Products, LLC, and yet DTSC *still* waited

17  another three weeks before providing notice to Allianz Intervenors of the lawsuit

18  and pending application for default judgment on September 10, 2019.  In response,

19  Allianz Intervenors (as distinguished from Travelers) promptly filed its motion to

20  intervene and vacate default.

21  Because C&A Products, LLC, a cancelled Delaware limited liability

22  company, no longer exists, and because C&A Products, LLC (i.e., Mr. Rostocki)

23  never sought a defense from any of its insurers, it is clear that DTSC positioned this

24  lawsuit solely to pursue compensation from those historical insurers.   As such,

25  these insurers are now seeking to intervene directly in the litigation as is standard

26  practice, specifically because there is no longer an existing entity with any interest

27  left to defend (C&A Products, LLC has been cancelled).  If the Court allows DTSC

28  to secure an unchallenged default judgment against a defunct C&A Products, LLC,

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:05971-0074/13272687.1                                -7-

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

ER-79

1   "This result would have the effect of punishing [Allianz Intervenors] for something

2   it did not do, since '[i]nsurers have no control over the solvency or corporate

3   viability of their insureds.'" *Reliance Ins. Co. v. Superior Court*, 84 Cal.App.4th

4   383, 389 (citation omitted).  Additionally, it is well-settled under California law

5   that "an excess or secondary policy does not cover a loss, nor does any duty to

6   defend the insured arise, until all of the primary insurance has been exhausted."

7   *Community Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329,

8   339 (1996).  Based on these facts, Allianz Intervenors indisputably have sought to

9   intervene in a timely manner, and unquestionably have a protectable interest under

10  California Insurance Code section 11580, *et seq.*

11          This Court should not rest its decision in this case upon the Court's holding

12  in *Gray v. Begley*.  The instant case differs from *Gray v. Begley* in virtually every

13  procedural aspect.  The two cases have completely different factual backgrounds.

14  The substantive law covering each case is wholly different – the instant case is a

15  CERCLA cost recovery action, while *Gray v. Begley* was a state law tort matter.

16  Allianz Intervenors submit that the Court's holding in *Gray v. Begley* fails to

17  control, or even inform, the Court's decision in this case.

18  **C.    Allianz Intervenors Have A Protectable Interest Under FRCP**

19          **Rule 24(a), And Denial Of This Motion Will Impair Allianz**

20          **Intervenors' Ability To Protect Their Interest**

21          Furthermore, pursuant to DTSC's own allegations that Allianz Intervenors

22  are insurers of Wickes, Allianz Intervenors' protectable interests in this case include

23  the respective liability of Wickes, as opposed to the other defendant entities and

24  DTSC's alleged damages.  As set forth more fully above, DTSC plans to pursue

25  Allianz Intervenors in a direct action for payment of DTSC's alleged damages.

26  However, Wickes' respective responsibility, if any, may in fact be a small fraction

27  of that assignable to the other defendant parties.  DTSC's damages may also include

28  indirect costs and enforcement costs that would otherwise be unrecoverable in a

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:05971-0074/13272687.1

-8-

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  CERCLA action.  However, should intervention be denied by this Court, Allianz

2  Intervenors will be unable to challenge liability and DTSC's alleged damages and

3  the consistency of remediation costs with the NCP, and it will prevent Allianz

4  Intervenors from demonstrating that a reasonable basis for apportionment exists.

5  As in any CERCLA case, DTSC is required in a cost recovery action to prove

6  liability on the part of the defendant, allocation of liability among the parties, as well

7  as show that the costs it seeks to recover were incurred in a manner consistent with

8  the NCP.  CERCLA provides that when responding to releases of hazardous

9  substances into the environment, a State has the right to recover all costs of a

10  removal or remedial action that are "not inconsistent with" the NCP.  42 U.S.C. §

11  9607(a)(4)(A); *see also* 40 C.F.R. § 300, *et seq.* (setting forth NCP).  Response costs

12  incurred by a State are presumed to not be inconsistent with the NCP, and a

13  potentially responsible party has the burden of proving any inconsistency.  *Wash.*

14  *State Dept. of Transp. v. Wash. Nat. Gas Co., Pacificorp,* 59 F.3d 793, 799–800 (9th

15  Cir. 1995).

16  To prove that a response action was inconsistent with the NCP, a defendant

17  must prove that the agency's response action was arbitrary and capricious.  *Cal. ex*

18  *rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.,* 358 F.3d 661, 673

19  (9th Cir. 2004) (citations omitted).  The standard of review applicable to a State's

20  response action is set forth in the Code of Federal Regulations, which states:

21  "Actions under [CERCLA section 107(a)] will not be considered 'inconsistent with

22  the NCP,'[…] based on immaterial or insubstantial deviations from the provisions of

23  40 C.F.R. part 300."  40 C.F.R. § 300.700(c)(4).  States cannot recover costs

24  inconsistent with the response methods outlined in the NCP.  *State of N.Y. v. Shore*

25  *Realty Group,* 759 F.2d 1032, 1047–48 (2d. Cir. 1985).

26  In the present case, and again due to DTSC's and its agents' dilatory tactics

27  and unreasonable delay in providing notice of this case to C&A Products, LLC's

28  putative insurers, Allianz Intervenors have been deprived of the ability to obtain

1   evidence through discovery of DTSC's potential material and substantial deviations

2   from basic NCP requirements during its response to contamination at the Site.

3   Thus, because denial of intervention here would bar Allianz Intervenors from

4   disputing DTSC's claimed damages, Allianz Intervenors' protectable interest herein

5   is DTSC's investigation and remediation costs and the whether these costs were

6   incurred in a manner consistent with the NCP.

7          Moreover, contrary to DTSC's assertion, Allianz Intervenors' interests herein

8   are not adequately represented by any other party.  This is primarily due to the fact

9   that there *are no other parties to this lawsuit* other than DTSC, as C&A Products,

10  LLC is a defunct entity that has not appeared, and the remaining defendants have all

11  settled out of the case prior to Allianz Intervenors' knowledge of the pending

12  litigation.

13         Additionally, Allianz Intervenors as <u>excess</u> insurers for Wickes creates a

14  unique situation with respect to representation of interests.  As an initial matter, it is

15  important for the Court to note that if no primary insurer is permitted to intervene in

16  this lawsuit, then Allianz Intervenors will have no party representing its interests in

17  the litigation.  In *County of Orange v. Great Lakes Reinsurance (UK) PLC*, 2013

18  U.S. Dist. LEXIS 197988*, the Central District of California held that, although the

19  excess insurer has a protectable interest, intervention as of right was denied because

20  the underlying primary insurer had appeared in the case such that the excess

21  insurer's interests were protected.  Here, we have the opposite set of facts wherein

22  the underlying insurer has *not* appeared in the case, rendering the Allianz

23  Interveners unable to have their interests represented in the instant lawsuit.  This

24  serves to support Allianz Intervenors' argument for intervention herein.

25         Based on the foregoing, it is clear that there is good cause to permit Allianz

26  Intervenors' intervention in this case so as to allow Allianz Intervenors to represent

27  its own protectable interests as putative excess insurers of Wickes, LLC.  To deny

28  such intervention would effectively deny Allianz Intervenors their right to due

LEGAL:05971-0074/13272687.1

-10-

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  process and to contest liability, apportionment and damages as a putative insurer

2  would be permitted to do in any other CERCLA action.  DTSC should not be

3  rewarded for its shrewd tactics and unreasonable delay in providing notice, and

4  should be required to rebut any evidence uncovered  by Allianz Intervenors with

5  respect to liability and damages upon a full and fair opportunity to conduct

6  discovery related to the same.

7  **D.   There Common Questions Of Law And Fact Sufficient To Allow**

8  **For Permissive Intervention**

9  Under FRCP Rule 24(b), the Court may permit intervention by a party who

10  has a claim or defense that shares with the main action a common question or law

11  or fact.  Fed. R. Civ. P. 24(b)(1).  Here, as stated above, the common questions of

12  law and fact are directly related to DTSC's claimed costs for investigation and

13  remediation in response to contamination at the Site, and whether those costs were

14  incurred in a manner consistent with the NCP.  As such, Allianz Intervenors'

15  intervention will not "serve only to prolong the action" or "unduly delay the

16  litigation" as claimed by DTSC, but will allow those parties potentially responsible

17  for payment of DTSC's alleged damages the full and fair opportunity to conduct

18  discovery as to these damages and afford due process to an insurer that DTSC

19  alleges is responsible for payment of C&A Products, LLC's liabilities.

20  Moreover, as set forth above in the analysis of *Great Lakes Reinsurance*,

21  since no primary insurers have appeared, Allianz Intervenors (as excess insurers)

22  are unable to have their interests represented in the instant lawsuit.  This serves to

23  support Allianz Intervenors' argument for permissive intervention herein.

24  As such, Allianz Intervenors should also be permitted to intervene under the

25  permissive intervention statute of FRCP Rule 24(b).

26  **III.   GOOD CAUSE EXISTS TO VACATE DEFAULT UNDER FRCP**

27  **RULE 55(a)**

28  As with its argument concerning intervention, DTSC again attempts to

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

**ER 83**

1    conflate the facts and law cited in opposition to Allianz Intervenors' motion to

2    vacate default.  DTSC claims that, because Allianz Intervenors have not presented a

3    meritorious defense to potential liability on the part of C&A Products, LLC, that it

4    would be futile to reopen judgment in the present case.  This argument fails for two

5    reasons.

6         First, as described in detail above, DTSC's own delay in providing notice of

7    this action is the sole reason that Allianz Intervenors have been unable to conduct

8    discovery necessary to present a meritorious defense against DTSC's claims.  Thus,

9    DTSC should not be allowed to profit off of its own failure to provide timely notice

10   to putative insurers of C&A Products, LLC.

11        Second, it would not be futile to reopen judgment because DTSC's claimed

12   costs for responding to contamination at the Site may have been incurred in a

13   manner inconsistent with the NCP.  This would impact DTSC's ability to recover its

14   claimed damages against putative insurers of C&A Products, LLC.

15        Good cause clearly exists to vacate default in this case.  The "meritorious

16   defense" component of test for setting aside an entry of default pursuant to Rule

17   55(c) does not require that movant demonstrate likelihood of success on merits.

18   Rather, "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to

19   allege sufficient facts that, if true, would constitute a defense .. . [at] the later

20   litigation."  *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d

21   1085, 1094 (9th Cir. 2010).  Again, Allianz Intervenors are representing here that a

22   potential meritorious defense may exist with respect to liability, apportionment and

23   DTSC's incursion of costs inconsistent with the NCP.

24        Based on the foregoing, it is clear that there is a potential meritorious defense

25   as to DTSC's claims herein.  With respect to the second factor for the Court to

26   consider, DTSC admitted that Allianz Intervenors has not engaged in any culpable

27   conduct.  *See* Plaintiff's Opposition, Page 15, Lines 26-27.  On the third factor

28   concerning alleged prejudice to DTSC, as outlined above the intended intervention

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1   at this later stage of litigation is due solely to DTSC's unreasonable delay in

2   providing notice of the same.  Furthermore, DTSC has not conducted any discovery

3   in this litigation concerning C&A Products, LLC or its putative insurers.  Thus, if

4   there is any prejudice to DTSC (which Allianz Intervenors expressly deny), that

5   prejudice was brought on solely by DTSC's strategy to wait until after filings its

6   application for default judgment to notify Allianz Intervenors of this lawsuit.  For

7   these reasons, the Court should vacate the default against C&A Products, LLC.

8   **IV.   <u>CONCLUSION</u>**

9       In summary, DTSC claims that Allianz Intervenors have not presented any

10   evidence sufficient to overcome the alleged "prima facie" case of CERCLA liability

11   and damages, but ignores the fact that its own unreasonable delay and dilatory

12   tactics have prejudicially deprived Allianz Intervenors of the ability to do so.

13   Therefore, for the foregoing reasons, Allianz Intervenors respectfully request that

14   this Court permit Allianz Intervenors to intervene in the instant lawsuit as putative

15   insurers of underlying Wickes , and to vacate the default against C&A Products,

16   LLC.

17

18   DATED:  November 25, 2019          WOOD, SMITH, HENNING & BERMAN LLP

19

20

21                                          By:   */s/ Stratton P. Constantinides*

22                                              THOMAS F. VANDENBURG
                                                STRATTON P. CONSTANTINIDES

23                                          Attorneys for Proposed Intervenors

24                                          Allianz Underwriters Insurance Company,
                                            Chicago Insurance Company, and Fireman's

25                                          Fund Insurance Company

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On November 25, 2019, I served the following document(s) described as **ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY MAIL:**  I placed true copies of the foregoing document(s) enclosed in sealed envelopes addressed as shown on the Service List.  I am "readily familiar" with Wood, Smith, Henning & Berman's practice for collecting and processing correspondence for mailing with the United States Postal Service.  Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business.  Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 25, 2019, at Los Angeles, California.


*/s/ Christina Samayoa*
Christina Samayoa

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:05971-0074/13272687.1

-1-

ER-86

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1

**SERVICE LIST**

2

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*

3

**Case No. 2:14-cv-0595-WBS-EFB**

4

5   XAVIER BECERRA
    Attorney General of California

6   EDWARD H. OCHOA
    Supervising Deputy Attorney General

7   OLIVIA W. KARLIN, State Bar No. 150432
    LAURA J. ZUCKERMAN (Counsel for

8   service) State Bar No. 161896
    Deputy Attorneys General

9   1515 Clay Street, 20th Floor
    Oakland, CA 94612

10  Telephone: (510) 879-1299
    Fax: (510) 622-2270

11  E-mail: Laura.Zuckerman@doj.ca.gov
    **Attorneys for Plaintiffs California**

12  **Department of Toxic Substances Control**
    **and the Toxic Substances Control Account**

13
    Brian M. Rostocki

14  Reed Smith LLP - Delaware
    1201 Market Street - Suite 1500

15  Wilmington, DE 19801
    **Registered Agent for C&A Products, LLC**

16

Alexander Eugene Potente
Clyde & Co US LLP
101 2nd Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 365-9800
Fax: (415) 365-9801
Email: alex.potente@clydeco.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**Attorneys for Intervenor, THE**
**TRAVELERS INDEMNITY**
**COMPANY**

Sam M. Thorpe
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3772
Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com
LEAD ATTORNEY
ATTORNEY 70 BE NOTICED
**Attorneys for the Intervenor,**
**THE CONTINENTAL**
**INSURANCE COMPANY**

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS'
OPPOSITION TO MOTION TO INTERVENE AND TO VACATE DEFAULT

1  XAVIER BECERRA
   Attorney General of California
2  EDWARD H. OCHOA
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No.
   150432
4  LAURA J. ZUCKERMAN (Counsel for
   service)
5  State Bar No. 161896
   Deputy Attorneys General
6  1515 Clay Street, 20th Floor
   Oakland, CA 94612
7  Telephone:  (510) 879-1299
   Fax:  (510) 622-2270
8  E-mail:  Laura.Zuckerman@doj.ca.gov

9  TIMOTHY M. THORNTON, JR., State Bar
   No. 106413
10 GRAY-DUFFY, LLP
   15760 Ventura Blvd, 16th Fl.
11 Encino, CA 91436-3027
   Telephone:  (818) 907-4000
12 Fax:  (818) 783-4551
   E-mail:  tthornton@grayduffylaw.com
13 *Attorneys for Plaintiffs California
   Department of Toxic Substances
14 Control and the Toxic Substances
   Control Account*

15
               IN THE UNITED STATES DISTRICT COURT
16
            FOR THE EASTERN DISTRICT OF CALIFORNIA
17
                     SACRAMENTO DIVISION
18

19 | CALIFORNIA DEPARTMENT OF TOXIC | 2:14-cv-00595-WBS-EFB |
   | SUBSTANCES CONTROL and the TOXIC | |
20 | SUBSTANCES CONTROL ACCOUNT, | DECLARATION OF LAURA J. |
   | | ZUCKERMAN IN SUPPORT OF |
21 | Plaintiffs, | PLAINTIFFS' MEMORANDUM OF |
   | | POINTS AND AUTHORITIES IN |
22 | v. | OPPOSITION TO ALLIANZ, |
   | | ALLSTATE, CENTURY, and |
23 | JIM DOBBAS, INC., et al., | CONTINENTAL'S MOTIONS TO |
   | | INTERVENE AND TO VACATE |
24 | Defendants. | DEFAULT |
25 | |
   | | Date:    December 2, 2019 |
26 | AND RELATED COUNTERCLAIMS AND CROSS | Time:    1:30 p.m. |
   | CLAIMS | Judge:   Hon. William Shubb |
27 | | Place:   Courtroom 5 |
   | | Action Filed: March 3, 2014 |
28

                                    1

                Decl. of Laura J. Zuckerman in Support of Opp. To Allianz, Allstate, Century,
                                 and Continental's Motions to Intervene and
                                       to Vacate Default(2:14-cv-00595-WBS-EFB)

ER-88

1    I, Laura J. Zuckerman, declare:

2      1.   I am a Deputy Attorney General with the California

3   Department of Justice, Office of the Attorney General, and have

4   been assigned to represent Plaintiffs the California Department

5   of Toxic Substances Control and the Toxic Substances Control

6   Account (collectively, "DTSC" or "Plaintiffs") in this action.  I

7   make the following statements upon personal knowledge or upon my

8   review of files that the Office of the Attorney General maintains

9   in the regular course of business, and, if called as a witness,

10   could testify competently to these statements.  This declaration

11   is made in support of Plaintiffs' Memorandum of Points and

12   Authorities in Opposition to Allianz, Allstate, Century, and

13   Continental's Motions to Intervene and to Vacate Default.

14      2.   Exhibit A hereto is a true and correct copy of a draft

15   insurance coverage chart, subject to change, prepared by DTSC's

16   agent Arcina Risk Group and dated October 1, 2019.

17      3.   DTSC has stated that it will seek enforcement of a

18   default judgment, not against C&A Products, but "only as a means

19   to pursue a direct action against the company's historic

20   insurers." *See* Docket No. 197-4.  The investigation into the old

21   insurance policies is still ongoing; tenders have been sent to

22   multiple insurance companies, not just to Allianz, Allstate,

23   Century, and Continental; and DTSC has not yet determined which

24   insurers to proceed against if its default judgment motion is

25   granted.

26      4.   Exhibit B hereto is a true and correct copy of an e-mail

27   sent on November 15, 2019, by Laura Zuckerman to Thomas F.

28

Decl. of Laura J. Zuckerman in Support of Opp. To Allianz, Allstate, Century,
and Continental's Motions to Intervene and
to Vacate Default(2:14-cv-00595-WBS-EFB)

**ER-89**

1   Vandenburg and Stratton P. Constantinides, Mario Quintero, Sara
2   Thorpe, and Randall P. Berdan, listing as cc's Brian Rostocki,
3   Timothy Thornton, Christopher Kane, Robin McGinnis, Olivia W.
4   Karlin, and Ed Ochoa.  As of the time of this filing, I have
5   received no response to this e-mail.
6       I declare under penalty of perjury, pursuant to 28 U.S.C. §
7   1746, that the foregoing is true and correct to the best of my
8   knowledge and that this declaration was executed in Oakland,
9   California, on November 18, 2019.

11
12   _____
13           LAURA J. ZUCKERMAN

28                          3

Decl. of Laura J. Zuckerman in Support of Opp. To Allianz, Allstate, Century,
and Continental's Motions to Intervene and
to Vacate Default(2:14-cv-00595-WBS-EFB)
ER-90

EXHIBIT A

## California -DOJ - Wickes Policy Chart

**Key**

| Color | Description |
|---|---|
| (green) | Policy Materials Available |
| (yellow) | Listed as underlying on Excess Policy |
| (blue) | Awaiting/Searching for Policy Materials |

The chart below shows insurance policy layers by coverage amount (vertical axis: $10M, $25M, $35M, $51M, $76M, $101M) and by policy period (horizontal axis).

**$101M level**

- INA — XCP 144099 — $10M p/o $25M XS $75M XS $1M
- INA — XCP 144683 — $10M p/o $25M XS $75M XS $1M
- INA — XCP 145543 — $10M P/O $50M XS $50M XS $1M
- (Possible Mission Ins Co) — MN 025282
- Aetna Casualty & Surety Co — OXN 5341 WCA — $25M P/O $50M XS $50M XS $1M

- Northbrook Excess Ins — 63007936 — $10M p/o $25M XS $75M XS $1M
- Twin City Fire Ins Co — TXS 100948 — $10M P/O $25M XS $75M XS $1M
- Associated International Ins Co — XS 101278 — $5M P/O $50M XS $50M XS $1M
- Aetna Casualty & Surety Co — OXN 4170 WCA — $30M P/O $40M XS $50M XS $1M
- Home Ins Co — HXL 1643384 — $15M P/O $50M XS $50M XS $1M

**$76M level**

- Mututal Fire Ins Co — MEL 40328 — $5M P/O $25M XS $75M XS $1M
- Northbrook Excess Ins — 63008720 — $10M P/O $25M XS $75M XS $1M
- Northbrook Excess Ins — 63009155 — $10M P/O $50M XS $50M $1M
- INA — XCPG 00044428 — $5M P/O $50M XS $50M XS $1M

- Lexington Ins Co — 5514490 — $20M P/O $25M XS $50M XS $1M
- Lexington Ins Co — 552243 — $20M P/O $25M XS $25M XS $1M
- Lexington Ins Co — 552S417 — $25M P/O $50M XS $50M XS $1M
- Unknown Carrier(s) — $20M P/O $40M XS $50M XS $1M — (Possible Fireman's Fund) — XLX 1620264
- Federal Ins Co — 79291742 — $5M P/O $50M XS $50M XS $1M

- Old Republic Ins Co — OZX12647 — $5M P/O $25M XS $50M XS $1M
- Twin City Fire Ins Co — TXS 100948 — $10M P/O $50M XS $25M XS $1M

**$51M level**

- Allianz Underwriters — AUX 5201182 — $10M P/O $25M XS $15M XS $10M XS $1M — Policy Canceled 4/24/1982
- Allianz Underwriters — AUX 5201482 — $10M P/O $50M XS $25M XS $1M
- Allianz Underwriters — AUX 5201083 — $10M P/O $25M XS $25M XS $10M XS $1M
- Federal Ins Co — (B6) 79287443 — $15M XS $36M

- Assoctiated International — AEL 051138 — $5M P/O $25M XS $15M XS $10M XS $1M
- Associated International — XS 101278 — $5M P/O $50M XS $25M XS $1M
- Twin City Fire — TXS 101597 — $15M P/O $25M XS $15M XS $10M XS $1M
- Federal Ins Co — (B5) 92874443 — $25M XS $25M XS $1M
- Continental Ins Co — Unknown Policy # — $5M P/O $10M XS $26M

**$35M level**

- Lexington Insurance Co. — 5514420 — $10M XS Uknown — or — National Union Fire Ins Co of PA — BE1330332 — $10M XS Uknown
- Integrity Ins Co — XL 203172 — $5M P/O $25M XS $15M XS $10M XS $1M
- Integrity Ins Co — XL 203487 — $5M P/O $25M XS $25M XS $1M
- AIU Ins Co — 75103421 — $5M P/O $10M XS $26M

- Old Republic Ins Co — OZX 12647 — $5M P/O $25M XS $15M XS $1M
- Twin City Fire — TXS 100948 — $10M P/O $25M XS $15M XS $1M

**$25M level**

- Chicago Ins Co — 2SS UO 32341 — $5M P/O $15M XS $10M XS $1M
- Chicago Ins Co — 2SS UO 33533 — $5M P/O $15M XS $10M XS $1M
- Transcontinental Ins Co — RDX 2820518 — $10M P/O $20M XS $5M XS $1M
- Industrial Indemnity Ins Co — XS 8764771 — $15M XS $10M XS $1M

- Travelers Indemnity Co. — TRL-NSL-1337700178 — $25M XS $500K — 5/1/1978 to 5/1/1981
- Travelers Indemnity Co. — TRL-NSL-1337700178 — $25M XS $500K — 5/1/1978 to 5/1/1981
- Travelers Indemnity Co. — TRL-NSL-1337700178 — $25M XS $500K — 5/1/1978 to 5/1/1981
- Transcontinental Ins Co — RDX 2820351 — $10M P/O $15M XS $10M XS $1M
- Transcontinental Ins Co — EU 9360117 — $10M P/O $20M XS $5M XS $1M
- INA — XBC 154417 — $25M XS $1M
- INA — XCPG 00044428 — $5M P/O $5M XS $1M

**$10M level**

- New England Re Corp — 686942 — $10M XS $1M
- First State Ins Co — 951246 — $10M XS $1M
- St. Paul Surplus Lines Ins Co — 966XA0702 — $5M XS $1M
- Continental Ins Co — SRU 2101360 — $5M XS $1M

- Gap/Unknown
- Travelers Indemnity Co. — TRNSL-133T679-3-79 — $500,000 — 5/1/1979 to 5/1/1980
- Travelers Indemnity Co. — TRNSL-133T-3-80 — $500,000 — 5/1/1980 to 5/1/1981
- INA — GO-1907608 — $1M — 5/1/1981 to 5/1/1982
- INA — GLPG-0041245 — $1M — $250K Deductible — 4/24/1982 to 4/24/1983
- INA — GLPG-0004216A — $1M — $250K Deductible — 4/24/1983 to 4/24/1984
- Continental Ins Co — SRL 3344602 — $1M — 4/24/1984 to 4/24/1985
- Continental Ins Co — SRL 3344617 — $1M — 7/24/1985 to 7/24/1986

**Leftmost columns (blue):** Unknown — Unknown (5/1/1978 to 5/1/1979)

**Policy period columns (bottom axis):**
5/1/1978 to 5/1/1979 | 5/1/1979 to 5/1/1980 | 5/1/1980 to 5/1/1981 | 5/1/1981 to 5/1/1982 | 4/24/1982 to 4/24/1983 | 4/24/1983 to 4/24/1984 | 4/24/1984 to 4/24/1985 | 7/24/1985 to 7/24/1986

PRIVILEGED AND CONFIDENTIAL

as of 10/1/2019

EXHIBIT B

| From: | Laura Zuckerman |
|---|---|
| To: | "Thomas F. Vandenburg"; "Stratton P. Constantinides"; mquintero@hinshawlaw.com; Sara M. Thorpe; Randall P. Berdan |
| Cc: | "Rostocki, Brian M."; "Timothy Thornton"; "Kane, Christopher@DTSC"; "McGinnis, Robin@DTSC"; Olivia W. Karlin; Ed Ochoa |
| Subject: | RE: DTSC et al. v. Jim Dobbas, Inc. et al. - Motions to intervene and vacate default |
| Date: | Friday, November 15, 2019 4:28:00 PM |

Counsel,

In an effort to address concerns raised by Mr. Constantides and to narrow the issues before the Court at the December 2 hearing in *DTSC et al. v. Jim Dobbas, Inc. et al.* on the motions to intervene and vacate C&A Products, LLC's default, **DTSC reiterates its offer to stipulate to the intervention of any insurer that (1) accepts coverage for C&A Products, LLC's potential liability without a reservation of rights, or (2) any insurer who agrees that there is a potential for coverage, as defined by *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263 (1966), so that (if a primary insurer) it has a duty to defend C&A Products, LLC with a reservation of rights.** Please let us know by November 18, 2019 if your client will take such a position on coverage.

Thank you,

Laura

1    XAVIER BECERRA
     Attorney General of California
2    EDWARD H. OCHOA
     Supervising Deputy Attorney General
3    OLIVIA W. KARLIN, State Bar No.
     150432
4    LAURA J. ZUCKERMAN (Counsel for
     service)
5    State Bar No. 161896
     Deputy Attorneys General
6    1515 Clay Street, 20th Floor
     Oakland, CA 94612
7    Telephone:  (510) 879-1299
     Fax:  (510) 622-2270
8    E-mail:  Laura.Zuckerman@doj.ca.gov

9    TIMOTHY M. THORNTON, JR., State Bar
     No. 106413
10   GRAY-DUFFY, LLP
     15760 Ventura Blvd, 16th Fl.
11   Encino, CA 91436-3027
     Telephone:   (818) 907-4000
12   Fax:  (818) 783-4551
     E-mail:  tthornton@grayduffylaw.com

13
     *Attorneys for Plaintiffs California*
14   *Department of Toxic Substances*
     *Control and the Toxic Substances*
15   *Control Account*

16                IN THE UNITED STATES DISTRICT COURT

17            FOR THE EASTERN DISTRICT OF CALIFORNIA

18                      SACRAMENTO DIVISION

19   CALIFORNIA DEPARTMENT OF TOXIC        2:14-cv-00595-WBS-EFB
     SUBSTANCES CONTROL and the
20   TOXIC SUBSTANCES CONTROL             PLAINTIFFS' MEMORANDUM OF
     ACCOUNT,                             POINTS AND AUTHORITIES IN
21                                        OPPOSITION TO ALLIANZ,
                            Plaintiffs,   ALLSTATE, CENTURY, and
22                                        CONTINENTAL'S MOTIONS TO
                    v.                    INTERVENE AND TO VACATE
23                                        DEFAULT
     JIM DOBBAS, INC., et al.,
24                                        Date:     December 2, 2019
                            Defendants.   Time:     1:30 p.m.
25                                        Judge:    Hon. William Shubb
                                          Place:    Courtroom 5
26   AND RELATED COUNTERCLAIMS AND        Action Filed: March 3, 2014
     CROSS CLAIMS
27

28

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ................................................... 1

4

FACTUAL BACKGROUND ............................................. 3

LEGAL STANDARD ................................................. 7

5

6

    I.   Motion to Intervene Under Rule 24 of the Federal
        Rules of Civil Procedure ........................... 7

    II.  Motion to Set Aside Default Under Rule 55(c)of the

7

        Federal Rules of Civil Procedure ................... 7

8

ARGUMENT ....................................................... 8

9

    I.   The Insurers Should Not Be Permitted to Intervene,
        Either as of Right or Permissively. ................. 8

10

        A.   Having Failed Either to Accept Coverage or
            Acknowledge Potential Coverage and Agree to
            Defend Their Insured Under a Reservation of

11

            Rights, the Insurers Have No Protectable
            Interests Sufficient to Permit Intervention

12

            as of Right. ................................. 12

13

        B.   The Insurers Cannot Show That Their Ability
            to Protect Their Interests Will Be Impaired,

14

            or that Their Interests Are Not Adequately
            Represented, as They Have No Such Interests. ... 13

15

        C.   The Insurers Do Not Meet the Test for

16

            Permissive Intervention ...................... 14

    II.  None of the Insurers Has Established Good Cause to

17

        Set Aside C&A Products' Default. .................... 15

18

        A.   DTSC Has Established Its Prima Facie Case
            Against C&A Products Under CERCLA, and C&A

19

            Products Has No Viable Defense. ................ 16

20

            1.   The Site is a "Facility." ................. 17

            2.   A Release or Threatened Release of

21

                Hazardous Substances Occurred at the
                Site. ................................. 17

22

            3.   DTSC Incurred Costs in Response to the
                Releases and Threatened Releases at the

23

                Site. ................................. 18

24

            4.   C&A Products Was an Owner or Operator or
                Both of the Site at the Time of Disposal

25

                of Hazardous Substances at the Site, and
                Thus Is a Responsible Party Under

26

                CERCLA. ............................... 21

27

            5.   C&A Products Has No Defense to CERCLA
                Liability. ............................ 23

28

i

1

**TABLE OF CONTENTS**
(continued)

2                                                                                    **Page**

3          B.    DTSC Will Be Prejudiced by Setting Aside the
               Default. ....................................... 25

4     CONCLUSION ................................................. 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

4

CASES

5
*3550 Stevens Creek Associates v. Barclays Bank*
6
   915 F.2d 1355 (9th Cir. 1990).................................17

7
*Asarco LLC v. Atlantic Richfield Co.*
   866 F.3d 1108 (9th Cir. 2017).................................16

8
*California Department of Toxic Substances Control v.*
9
   *Commercial Realty Projects, Inc.*
   309 F.3d 1113 (9th Cir. 2002)..................................7

10
*Carson Harbor Village, Ltd. v. Unocal Corp.*
11
   270 F.3d 863 (9th Cir. 2001).................................17

12
*Choice Hotels Intern., Inc. v. Kusum*
13
   11CV1277BTM (WMC), 2012 WL 1570844 (S.D. Cal. May 3,
   2012).......................................................25

14
*Continental Vinyl Products Corp. v. Mead Corp*
15
   27 Cal. App. 3d 543 (1972)....................................9

16
*Fox Hollow of Turlock Owner's Ass'n v. Sinclair*
   No. 1:03-CV-5439, 2013 WL 1628260 (E.D. Cal. April
17
   15, 2013).....................................................5

18
*Franchise Holding II, LLC v. Huntington Restaurants*
19
   *Group, Inc.*
   375 F.3d 922 (9th Cir. 2004)..................................8

20
*Freedom from Religion Found., Inc. v. Geithner*
21
   644 F.3d 836 (9th Cir. 2011).................................12

22
*Gray v. Begley*
   182 Cal. App. 4th 1509 (Cal. Ct. App. 2010).............10, 11
23

24
*Gray v. Zurich Ins. Co.*
   65 Cal.2d 263 (Cal. 1966).....................................6

25
*Haw. Carpenters' Trust Funds v. Stone*
26
   794 F.2d 508 (9th Cir. 1986).................................15

27
*Hinton v. Beck*
   176 Cal. App. 4th 1378 (Cal. Ct. App. 2009)...............9, 11
28

iii

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *In re First T.D. & Invest., Inc.*
      253 F.3d 520 (9th Cir. 2001)..................................5

4

5   *Key Bank of Maine v. Tablecloth Textile Co. Corp.*
      74 F.3d 349 (1st Cir. 1996)...............................24, 25

6

7   *Levin Metals Corp. v. Parr-Richmond Terminal Co.*
      799 F.2d 1312 (9th Cir. 1986)...............................23

8   *Louisiana-Pacific Corp. v. Beazer Materials & Services*
      811 F.Supp. 1421 (E.D. Cal. 1993)..........................19

9

10  *Matthew v. Laudamiel*
      C.A. No. 5957-VCN, 2012 WL 605589 (Del. Ch. Feb. 21,
      2012)........................................................5

11

12  *Nabisco, Inc.* v. *Transport Indemnity Co.*
      143 Cal. App. 3d 831 (Cal. Ct. App. 1983)....................2

13

14  *Noya v. A.W. Coulter Trucking*
      143 Cal. App. 4th 838 (Cal. Ct. App. 2006)..................11

15  *Olden v. Hagerstown Cash Register, Inc.*
      619 F.2d 271 (3rd Cir. 1980)................................9

16

17  *Parker v. Dean Transp., Inc.*
      No. CV 13-02621, 2013 WL 7083269 (C.D. Cal. Oct. 15,
      2013)........................................................4

18

19  *Reliance Ins. Co. v. Superior Court*
      84 Cal. App. 4th 383 (Cal. Ct. App. 2000)..................10

20

21  *State of Cal. Dept. of Toxic Substances Control v.
      Snydergeneral Corp.*
      876 F.Supp. 222 (E.D. Cal. 1994)...........................19

22

23  *State of California ex. rel. Cal. Dept. of Toxic
      Substances Control v. Neville Chem. Co.*
      358 F.3d 661 (9th Cir. 2004).............................19, 20

24

25  *Travelers Indem. Co. v. Dingwell*
      884 F.2d 629 (1st Cir. 1989)...............................11

26

27  *U.S. v. Aguilar*
      782 F.3d 1101 (9th Cir. 2015)..............................15

28

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

<u>Page</u>

3  *U.S. v. Signed Personal Check No. 730 of Yubran Mesle*
4     615 F.3d 1085 (9th Cir. 2010).........................8, 16, 24

*Uniroyal Chemical Co., Inc. v. Deltech Corp.*
5     160 F.3d 238 (5th Cir. 1998)...............................17

6  *United States v. Carolina Transformer Co.*
7     739 F.Supp. 1030 (E.D.N.C. 1989)...........................18

8  *United States v. Chapman*
      146 F.3d 1166 (9th Cir. 1998)...................16, 19, 20, 23
9
*United States v. Hunter*
10    70 F.Supp.2d 1100 (C.D. Cal. 1999).........................16

11 *United States v. W.R. Grace & Co.*
12    429 F. 3d 1224 (9th Cir. 2005)..............................20

13 *Washington State Dept. of Transp. V. Washington Natural*
      *Gas Co.*
14    59 F.3d 793 (9th Cir. 1995)..............................21, 23

15 **STATUTES**

16 6 Delaware Code
17    § 18-805...................................................4, 5

18 Comprehensive Environmental Response, Compensation, and
      Liability Act of 1980, 42 United States Code
19    § 9601(8)..................................................18
      § 9601(9)..................................................17
20    § 9601(14).................................................17
      § 9601(22).................................................18
21    § 9601(23).................................................19
      § 9601(24).................................................19
22    § 9601(25).................................................18
23    § 9607.................................................16, 23
      § 9607(a)..........................................16, 17, 23
24    § 9607(a)(2)...........................................21, 22
      § 9607(a)(4)(A)........................................18, 23
25    § 9607(b)..................................................22
      § 9613(j)..................................................20
26
27 California Code of Civil Procedure
      § 387..................................................9, 11
28

**TABLE OF AUTHORITIES**
**(continued)**

<u>Page</u>

California Corporations Code
    § 17708.01(a) ............................................. 4

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 17(b)(3) ............................................. 4
    Rule 24 ............................................... 7, 9
    Rule 24(a) ...................................... 2, 3, 7, 13
    Rule 24(a)(2) ...................................... 7, 11
    Rule 24(a)(3) ............................................ 14
    Rule 24(a)(4) ............................................ 14
    Rule 24(b) ....................................... 3, 7, 14
    Rule 24(b)(1) ............................................. 7
    Rule 55(b) ............................................... 6
    Rule 55(b)(2) ............................................ 6
    Rule 55(c) .................................... 3, 7, 8, 14
    Rule 60(b) ........................................... 7, 8

**OTHER AUTHORITIES**

40 Code of Federal Regulations
    §302.4 ................................................... 17

**INTRODUCTION**

1
2    Plaintiffs California Department of Toxic Substances Control
3 and the Toxic Substances Control Account (collectively, DTSC)
4 have been forced to spend in excess of $3.4 million in
5 unreimbursed taxpayer funds to clean up a hazardous waste site in
6 Elmira, California, formerly the site of a wood treatment and
7 preserving facility (the Site).  One of the parties originally
8 responsible for the contamination under the Comprehensive
9 Environmental Response, Compensation, and Liability Act of 1980,
10 42 U.S.C. § 9601 (CERCLA), is defendant Collins & Aikman
11 Products, LLC (C&A Products), against whom a default was entered
12 in March 2015, prior to the resolution of the issues against the
13 other defendants.
14    Allianz Underwriters Insurance Company, Chicago Insurance
15 Company, and Fireman's Fund Insurance Company (collectively,
16 Allianz), Allstate Insurance Company (Allstate), and Century
17 Indemnity Company (Century), successors in interest to several of
18 C&A Products' historical insurers, and The Continental Insurance
19 Company (Continental) (collectively, the "Insurers") now seek to
20 intervene and to vacate C&A Products' default.[1]
21    Pursuant to Federal Rule of Civil Procedure (24)(a), a

22    [1] Allstate did not file a motion to intervene and vacate C&A
23 Products' default.  Instead, it filed a joinder in "The Travelers
   Indemnity Company's Ex Parte Application for an Order to Continue
   Hearing on Plaintiffs' Motion for Default Judgment, or
24 Alternatively, for an Order Shortening Time for Hearing on
   Travelers' Proposed Motion to Intervene and to Vacate Default,"
25 Docket Nos. 218, 218-1.  Because Allstate's joinder was set for
   hearing on the same date as Travelers' Motion to Intervene and
26 Vacate Default (which the Court denied), the title of the
   document may have been in error.  In the interests of caution,
27 DTSC treats Allstate's joinder as a joinder in the arguments of
   the insurers filing motions to intervene and to vacate C&A
28 Products' default.

1

1  litigant may move to intervene in an action, but only under

2  certain conditions.  First, the critical requirement for a motion

3  to intervene under Rule 24(a) is that the party seeking to

4  intervene must have an interest to protect.  Here, none of the

5  Insurers has a protectable interest in this matter.  Century

6  asserts that it has been released from claims that DTSC asserts

7  against C&A Products in this lawsuit.  Docket No. 217-1

8  (Declaration of Natalie Jacobs), ¶ 5.  Allianz reserves all of

9  its rights, including the right to deny coverage entirely.[2]

10  Neither Allstate nor Continental has taken a position on

11  coverage, and thus neither company has identified a protectable

12  interest.

13      Second, under Rule 24(a), the Insurers must show that

14  disposition of this action may, as a practical matter, impair

15  their respective abilities to protect their interests.  Having no

16  protectable interests at this point, they cannot meet this

17  requirement. Denying the Insurers' premature motions to intervene

18  would not materially impair their abilities to protect any

19  _____

20  [2] Unlike Century, which insured C&A Products as a primary
insurer, Allianz insured C&A Products as an excess insurer.  *See*
Declaration of Laura J. Zuckerman in Support of Plaintiffs' MPA

21  in Opp. To Allianz, Allstate, Century, and Continental's Motions
to Intervene and to Vacate Default (Zuckerman Decl.), ¶ 2 and Ex.

22  A.  Allstate, too, as successor in interest to one of C&A
Products' historical insurers, Northbrook Excess and Surplus

23  Insurance Company (formerly known as Northbrook Insurance
Company), issued excess level policies of insurance to C&A

24  Products' predecessors.  Notice of Joinder, Docket No. 218, at 2.
Given these facts, even if Allianz or Allstate acknowledged

25  coverage, they would not have a protectable interest at this
point to justify intervention. "Generally, an *excess* insurer has

26  no duty to participate in the insured's defense or contribute to
a settlement on its behalf until primary coverages are

27  exhausted."  *Nabisco, Inc.* v. *Transport Indemnity Co.*, 143 Cal.
App. 3d 831, 836 (Cal. Ct. App. 1983) (emphasis added) (citations

28  omitted).

2

**ER-103**

1    interests they may ultimately have, for two reasons: first, if a

2    default judgment is entered, the Insurers can move to set it

3    aside on a showing of good cause; and, second, if DTSC files a

4    direct action against one or more of the Insurers, they can

5    assert all their coverage defenses in that action at that time.

6        Third, the Insurers cannot show that the existing parties do

7    not adequately represent their interests, because none of them

8    has a protectable interest at this stage.  Because the Insurers

9    cannot make the necessary showing under Rule 24(a) (or under the

10   permissive intervention standard of Rule 24(b)), their motions to

11   intervene should be denied.

12       In addition, the Insurers have not shown "good cause" for the

13   Court to vacate C&A Products' default, as required by Rule 55(c)

14   of the Federal Rules of Civil Procedure.  Their motions will

15   cause prejudice to DTSC, and will result in DTSC's having

16   incurred significant unnecessary costs.  Most critically,

17   granting the Insurers' motions would be futile, and a waste of

18   judicial resources, as the Insurers cannot show that C&A Products

19   has any cognizable defense to CERCLA liability, or that DTSC's

20   response costs are inconsistent with the National Contingency

21   Plan.  Accordingly, the Court should deny the Insurers' motions

22   to intervene and to vacate the default.

23                         **FACTUAL BACKGROUND**

24       DTSC generally does not dispute the summary of facts in the

25   Insurers' motions as it relates to the contamination at the Site,

26   a former wood treatment and preserving facility in Elmira,

27   California, located at the intersection of A Street and Holdener

28   Road, and identified by Solano County Assessor's Parcel Numbers

                                    3

1   142-010-130, 142-010-140, and 142-042-010 (the Site), and the

2   dealings among third parties.  A more comprehensive summary of

3   facts is set forth in DTSC's Memorandum of Points and Authorities

4   in support of its recently-filed Motion for Default Judgment,

5   Docket No. 185, and is incorporated herein by reference.  DTSC

6   also sets forth below certain information not included in the

7   Insurers' summaries.

8       As the Court is aware, DTSC filed this CERCLA action in 2014

9   to recover unreimbursed taxpayer funds which DTSC was forced to

10  spend to respond to soil and groundwater contamination at the

11  Site because all of the responsible parties were defunct, stopped

12  doing the cleanup, or refused to do it in the first instance.

13  C&A Products, a cancelled Delaware corporation and the insured of

14  the Insurers, is one of these responsible parties.

15      In late 2014, DTSC successfully petitioned the Delaware Court

16  of Chancery to appoint a receiver for C&A Products so that the

17  company would have the capacity to be sued under Rule 17(b)(3) of

18  the Federal Rules of Civil Procedure.[3]  Under Delaware law, a

19  cancelled limited liability company can be sued if the Delaware

20  Court of Chancery appoints a trustee or receiver for the company

21      [3] Rule 17(b)(3) provides in pertinent part that capacity to
    be sued is determined "by the law of the state where the court is
22  located . . . ."  Fed. R. Civ. P. 17(b)(3).  California law in
    turn provides that "[t]he law of the state or other jurisdiction
23  under which a foreign limited liability company [such as C&A
    Products, LLC] is formed governs . . . [t]he organization of the
24  limited liability company, its internal affairs, and the
    authority of its members and managers."  Cal. Corp. Code §
25  17708.01(a).  Therefore, Delaware law governs the capacity of a
    Delaware limited liability company to be sued in federal court in
26  California.  *Parker v. Dean Transp., Inc.*, No. CV 13-02621, 2013
    WL 7083269, *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other
27  grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir.
    2014).

28

4

1   under 6 Delaware Code section 18-805, or nullifies the

2   certificate of cancellation.[4]   *Matthew v. Laudamiel*, C.A. No.

3   5957-VCN, 2012 WL 605589, *21 (Del. Ch. Feb. 21, 2012); *see also*

4   6 Del. C. § 18-805.

5       After the Delaware Court of Chancery granted DTSC's petition

6   and appointed Mr. Brian Rostocki as the receiver for C&A Products

7   on December 8, 2014, Docket No. 73-1, with the right (but not the

8   obligation) to defend it in this action, DTSC added C&A Products

9   to its complaint as a defendant.  Docket No. 77.  In March 2015,

10  when C&A Products failed to answer the First Amended Complaint,

11  DTSC obtained a clerk's entry of default.  Docket No. 129.  DTSC

12  did not, however, move for a default judgment against C&A

13  Products at that time, since such a motion is appropriate in a

14  multi-defendant case only after resolution of the case as to all

15  defendants.  *See In re First T.D. & Invest., Inc.*, 253 F.3d 520,

16  532 (9th Cir. 2001) (where a complaint alleges defendants are

17  jointly and severally liable, and one of them defaults, a default

18  judgment should not be entered against the defaulting defendant

19  until the matter has been adjudicated with respect to all

20  defendants).

21      Three years later, once DTSC had concluded its case against

22  the solvent defendants through the entry of consent judgments by

23  the Court, Docket Nos. 141, 150, 182, in June 2018, DTSC sent a

24  tender to Travelers and the Hartford Insurance Company, two of

25  C&A Products' historical insurers.  DTSC simultaneously continued

26  _____

27      [4] By contrast, under California law, a cancelled California
    limited liability company may not be sued.  *See Fox Hollow of*

28  *Turlock Owner's Ass'n v. Sinclair*, No. 1:03-CV-5439, 2013 WL
    1628260, *4 (E.D. Cal. April 15, 2013).

5

1  its research into the existence of insurance policies that could

2  cover the period during which C&A Products and its predecessors

3  were operational, making it worth the significant expenditure of

4  funds required for DTSC to file a motion for default judgment.[5]

5  Thereafter, DTSC located additional coverage and gave notice to

6  ten other insurers, including the Insurers, by letters dated

7  September 10, 2019.

8      DTSC is still in the process of determining which of C&A

9  Products' insurers, if any, to proceed against.[6]  DTSC offered to

10  stipulate to the intervention of (1) any insurer that accepts

11  coverage for C&A Products' liability without a reservation of

12  rights, or (2) any insurer who agrees that there is a potential

13  for coverage, as defined by *Gray v. Zurich Ins. Co.*, 65 Cal.2d

14  263 (Cal. 1966), so that (if a primary insurer) it has a duty to

15  defend C&A Products, subject to a reservation of rights.

16  Zuckerman Decl., ¶ 4 and Ex. B.  To date, none of the Insurers

17  has agreed. Zuckerman Decl., ¶ 4.

18

19

———————————

20      [5] Because the prayer for relief in the First Amended
Complaint (FAC), Docket No. 77, did not set forth a sum certain

21  or a sum that could be made certain by computation, the clerk
could not enter default judgment in the case.  Fed. R. Civ. P. 55

22  (b).  Default judgment in this case will have to be entered by
the Court, and the Court may hold a "prove-up" hearing. See Fed.
R. Civ. P. 55(b)(2).  DTSC has filed its motion for default

23  judgment, together with declarations relating to the response
costs incurred.  Docket Nos. 184-190.

24      [6] DTSC has stated that it will seek enforcement of a default
judgment, not against C&A Products, but "only as a means to

25  pursue a direct action against *the company's historic insurers*."
Zuckerman Decl., ¶ 3; *see* Docket No. 197-4.  The investigation

26  into the old insurance policies is still ongoing; tenders have
been sent to multiple insurance companies, not just to Allianz,

27  Allstate, Century, and Continental; and DTSC has not yet
determined which insurers to proceed against if its default

28  judgment motion is granted.  Zuckerman Decl., ¶ 3.

6

1

**LEGAL STANDARD**

2  **I.  MOTION TO INTERVENE UNDER RULE 24 OF THE FEDERAL RULES OF CIVIL
    PROCEDURE**

3

4      Under Rule 24(a)(2) of the Federal Rules of Civil Procedure,

5  which provides for intervention as of right, a person is

6  permitted to intervene in an action, "upon timely application,"

7  ". . . when the applicant claims an interest relating to the

8  property or transaction which is the subject of the action and

9  the applicant is so situated that the disposition of the action

10 may as a practical matter impair or impede the applicant's

11 ability to protect that interest, unless the applicant's interest

12 is adequately represented by existing parties."[7]  These are the

13 four requirements an applicant must meet to satisfy Rule 24(a).

14     Under the permissive intervention provision of Rule 24(b), on

15 timely motion, the court may permit anyone to intervene who has a

16 claim or defense that shares with the main action a common

17 question of law or fact.  Fed. R. Civ. P. 24(b)(1).

18 **II. MOTION TO SET ASIDE DEFAULT UNDER RULE 55(C) OF THE FEDERAL RULES OF
    CIVIL PROCEDURE**

19

20     Pursuant to Rule 55(c) of the Federal Rules of Civil

21 Procedure, "the court may set aside an entry of default for good

22 cause, and it may set aside a final default judgment under Rule

23

24     [7] CERCLA has a nearly identical intervention provision:  the
   only difference is that under CERCLA, the burden to show that
   existing parties adequately represent the prospective
25 intervenor's interests is allocated to the President or the
   State, as applicable, whereas under Rule 24(a)(2) the party
26 seeking to intervene has the burden to show that existing parties
   do not adequately represent its interests.  *California Department*
27 *of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
   309 F.3d 1113, 1118-19 (9th Cir. 2002) (citing Fed. R. Civ. P.
28 24(a)(2) and CERCLA § 113(i), 42 U.S.C. § 9613(i)).

7

60(b)."  Many courts have held that the "good cause" standard

applicable to Rule 55(c) is the same standard that applies to

vacating a default judgment under Rule 60(b).  *E.g., Franchise*

*Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d

922, 925 (9th Cir. 2004); *U.S. v. Signed Personal Check No. 730*

*of Yubran Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

In either case, three factors are relevant to the analysis:

(1) whether the party seeking to set aside the default engaged in

culpable conduct leading to the default, (2) whether no

meritorious defense exists, and (3) whether reopening the

[default] would prejudice the other party.  *Mesle*, 615 F.3d at

1092.  Because the standard is disjunctive, the district court

may deny the motion to set aside the default if any one of these

conditions exists.  *Ibid.*  Although a movant need not prove the

defense by a preponderance of the evidence, it must present

"specific facts that would constitute a defense."  *Id.* at 1094.

**ARGUMENT**

**I.   THE INSURERS SHOULD NOT BE PERMITTED TO INTERVENE, EITHER AS OF RIGHT
      OR PERMISSIVELY.**

The Insurers have moved to intervene.[8]  As indicated above,

DTSC is willing to stipulate to intervention if the Insurers who

do not agree to accept coverage acknowledge a potential for

coverage and accept a duty to defend (if primary insurers),

subject to a reservation of rights. If the Insurers continue to

not accept any coverage, defense, or indemnification obligation

as insurers for C&A Products, however, their motions should be

---

[8] Continental also joined in Travelers' motion to intervene,
which was denied on October 22, 2019 (Docket No. 221).

8

1   denied, for the reasons set forth below and in the Court's Order

2   denying The Travelers Indemnity Company's Motion to Intervene and

3   Set Aside Default, Docket No. 221.  Unless the Insurers accept

4   coverage, or acknowledge a potential for coverage and state that

5   they will accept a duty to defend subject to a reservation of

6   rights, they cannot show a protectable interest to support either

7   intervention as of right or permissive intervention, and their

8   motions should be denied, for the reasons set forth below.

9       Not every interest in the outcome of litigation gives to its

10  possessor the right to intervene in a lawsuit.  *Continental Vinyl*

11  *Products Corp. v. Mead Corp*, 27 Cal. App. 3d 543, 549 (Cal. Ct.

12  App. 1972); *Hinton v. Beck,* 176 Cal. App. 4th 1378, 1383 (Cal.

13  Ct. App. 2009).[9]  The interest must be direct and not

14  consequential, and it must be an interest that is proper to be

15  determined in the action in which the intervention is sought.

16  *Continental Vinyl, supra,* 27 Cal. App. 3d at 549.  A person has a

17  direct interest justifying intervention in litigation where the

18  judgment in the action of itself adds to or detracts from his or

19  her legal rights without reference to rights and duties not

20  involved in the litigation.  *Ibid.*  A consequential interest, one

21  that is insufficient for intervention, occurs when the action in

22  which intervention is sought does not directly affect it,

23  _____

24      9 These California cases interpret California Code of Civil
    Procedure section 387, not Rule 24 of the Federal Rules of Civil
    Procedure.  Procedural issues such as timing and manner of

25  intervention are governed by Federal law. But the scope of the
    intervenor's interest is determined by the law that creates those

26  rights, and with regard to this matter of insurance coverage,
    those rights are determined by state law.  *See Olden v.*

27  *Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273-74 (3rd Cir.
    1980).

28

9

1    although the results of the action may indirectly benefit or harm

2    its owner.  *Id.* at 550.

3        When an action asserting a claim for property damage is

4    brought against an insured, and the insured tenders the defense

5    to the insurer, there are three possible positions the insurer

6    can take towards the request for coverage and a defense.[10]  *Gray*

7    *v. Begley,* 182 Cal. App. 4th at 1522 (Cal. Ct. App. 2010).  It

8    can (1) admit coverage and provide a defense; (2) deny coverage

9    and refuse to provide a defense; or (3) provide a defense under a

10   reservation of rights to contest coverage.  *Id.* at 1522.

11       Which of these three courses is taken by the insurer

12   determines if it has a protectable interest that would support a

13   right to intervene.  *Gray, supra,* 182 Cal. App. 4th at 1522-25.

14        If an insurer admits coverage, it clearly has a direct and

15   immediate interest in the outcome of the action against its

16   insured and may intervene.  *Id.; see also Reliance Ins. Co. v.*

17   *Superior Court,* 84 Cal. App. 4th 383 (Cal. Ct. App. 2000)

18   (permitting intervention where no denial of coverage or

19   reservation of rights).

20       If an insurer does not accept coverage or acknowledge

21   potential coverage and agree to defend its insured under a

22   reservation of rights (***as the Insurers have not done here***), it

23   _____

24        [10] As Allstate and Continental have taken no positions on
     coverage as of the date of this filing, but at the same time have
     neither acknowledged a potential for coverage nor agreed to
25   defend (with or without a reservation of rights), DTSC treats
     them for purposes of this motion as if they have denied coverage
26   and refused to defend their insured.  As moving parties, Allstate
     and Continental have the burden of proof, and until they
27   acknowledge coverage or agree to defend because there is a
     potential for coverage, they cannot show that they have
28   protectable interests.

                                    10

1    does not have a direct interest in the litigation between the

2    plaintiff and the insured sufficient to warrant intervention.

3    *Gray v. Begley, supra,* 182 Cal. App. 4th at 1522 (citing *Hinton*

4    *v. Beck, supra,* 176 Cal. App. 4th at 1384); *Noya v. A.W. Coulter*

5    *Trucking*, 143 Cal. App. 4th 838, 842 (Cal. Ct. App. 2006) (while

6    insurer had "a direct and immediate interest in the lawsuit,

7    because it may ultimately be required to pay the judgment," it

8    was "in no position to complain about this circumstance when it

9    has consistently denied coverage and refused to provide [the

10   insured] with any defense."); *Order*, Docket No. 221, at 3 (by

11   disclaiming coverage and any duty to defend C&A Products,

12   "Travelers forfeited any direct interest in the action," and its

13   motion to intervene was denied).  By its denial, the insurer has

14   lost its right to control the litigation.  *Gray v. Begley, supra,*

15   182 Cal. App. 4th at 1522.[11]

16       Finally, if an insurer agrees to defend the insured under a

17   reservation of rights, it arguably has a protectable interest

18   that would support a right to intervene.  *Gray v. Begley, supra,*

19   182 Cal. App. 4th at 1523-24.  It has that right because the

20   reservation of rights will state that it may pay a judgment under

21   one set of facts, but not pay it under another set of facts

22   (e.g., if the insurer reserves rights under an expected and

23   intended injury or damage exclusion, it may pay the judgment if

24   _____

25       [11] Some courts find the asserted interest when an insurer has
     reserved rights is not a cognizable protected interest for
26   purposes of Rule 24(a)(2).  *E.g., Travelers Indem. Co. v. Dingwell,*
     884 F.2d 629, 638 (1st Cir. 1989).  But California state cases
27   interpreting Code of Civil Procedure section 387 find there is a
     cognizable protected interest where the insurer is defending
28   under reservation of rights.

                                    11

1    the injury or damage is found by the jury not to be expected or

2    intended, but will not pay the judgment if the injury or damage

3    is found by the jury to have been expected or intended).  Of

4    course, if it "reserves its rights" because it will pay a

5    judgment under *no* set of facts, then the insurer is in effect

6    denying coverage, and it would have no significant protectable

7    interest to support a right to intervene.

8        **A.  Having Failed Either to Accept Coverage or**
         **Acknowledge Potential Coverage and Agree to Defend**
9        **Their Insured Under a Reservation of Rights, the**
         **Insurers Have No Protectable Interests Sufficient to**
10       **Permit Intervention as of Right.**

11       The Insurers have not issued reservation of rights letters,

12   accepted coverage, or acknowledged a potential for coverage and

13   agreed to defend C&A Products under a reservation of rights.  As

14   they have done none of these things, they have not shown that

15   they have protectable interests sufficient to permit intervention

16   as of right.[12]

17       As the moving parties, the Insurers have the burden of

18   showing that they have a significant protectable interest. *See*

19   *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841

20   (9th Cir. 2011).

21       The Insurers have not met their burden.  At best, the

22   Insurers' motions are premature, since none of the Insurers has

23   issued a formal coverage position. Each needs to take a formal

24   position of accepting coverage, or accepting coverage with a

25

26       [12] Century is in a slightly different position because it has
     also asserted it has no liability under a confidential settlement
27   agreement, and further asserts that there was a dismissal with
     prejudice of a prior lawsuit against it.  Docket No. 217 (Century
28   Mot.), at 6, 14.

                                  12

1    reservation of rights, and agreeing to defend under such

2    acceptance or reservation, to show a protectable interest.

3        The authorities cited by the Insurers in support of their

4    argument to the contrary are inapposite.  Many of the cases

5    concern intervention under different regulatory schemes, or

6    situations where there were questions regarding the insured's

7    liability; and the unpublished CERCLA case does not have a fact

8    pattern remotely similar to this one.  None of the cases involves

9    an insurer that disclaimed liability, as Century did, or had

10   failed to take a coverage position at all, as is the case for all

11   the Insurers.

12       The Insurers, as moving parties, must establish a significant

13   protected interest.  To do this, they must show that they have

14   accepted coverage, or accepted coverage under a reservation of

15   rights. That is to say, they must show that they will have to pay

16   the judgment if the insured is liable, or that they will have to

17   pay the judgment if the insured is liable and if the reserved

18   rights do not apply to such judgment. The Insurers have not made,

19   and cannot make, such a showing.

20       **B.   The Insurers Cannot Show That Their Ability to
             Protect Their Interests Will Be Impaired, or that
21           Their Interests Are Not Adequately Represented, as
             They Have No Such Interests.**
22

23       Because the Insurers have no protectable interests in the

24   present litigation to start with, they cannot meet the remaining

25   requirements of Rule 24(a) for intervention as of right.  The

26   insurers have no interests to be impaired by the disposition of

27   this action.  Not only is intervention unnecessary for protection

28   of their coverage defenses, but it is premature, and

                                    13

1   affirmatively inadvisable – it will not lead to the orderly

2   distribution of funds to pay to remediate the Site.  To the

3   extent other tendered insurers accept the duty to defend and

4   indemnify (even with a reservation of rights), such insurers will

5   be better positioned to intervene in the litigation on behalf of

6   the insured than insurers like Allianz, Allstate, Century, and

7   Continental, who have not accepted coverage, or acknowledged a

8   potential for coverage and agreed to defend C&A Products under a

9   reservation of rights.  Because the Insurers have no protectable

10  interests in this litigation, the Court need not assess whether

11  their interests will be impaired by the disposition of this

12  action or are adequately represented in this case.  *See* Fed. R.

13  Civ. P. 24(a)(3),(4).

14      **C.  The Insurers Do Not Meet the Test for Permissive
15          Intervention**

16      Intervention may be permitted in the court's discretion when

17  the moving party's claim or defense and the main action involve a

18  common question of law or fact.  *See* Fed. R. Civ. P. 24(b).  But

19  the Insurers have identified no common questions of law or fact

20  that would support intervention.  Thus, intervention by the

21  Insurers here "would only serve to prolong the action."  Order,

22  Docket No. 221, at 4 (court may consider the "'nature and extent

23  of the intervenors' interest'" and "'whether intervention will

24  prolong or unduly delay the litigation'" (quoting *Perry v.*

25  *Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (per curiam))).

26

27

28

Pls.' Memo of P&A In Opp to Mot to Intervene and to Vacate Default (2:14-cv-
00595-WBS-EFB)

**ER-115**

1   **II.  NONE OF THE INSURERS HAS ESTABLISHED GOOD CAUSE TO SET ASIDE C&A**
2       **PRODUCTS' DEFAULT.**

3        Nor do the Insurers have good cause for their motion to set

4   aside the default under Rule 55(c) of the Federal Rules of Civil

5   Procedure.  Allianz's and Century's breach of contract argument

6   is simply wrong:  C&A Products' joint and several liability for

7   response costs here is founded in CERCLA, not in the breach of

8   contract cause of action Alliance and Century erroneously suggest

9   DTSC is claiming.  *See* Docket No. 222 (Allianz Mot.) at 23;

10  Century Mot. at 19.  As set forth below, even assuming the

11  Insurers could assert defenses on their insured's behalf, C&A

12  Products has no viable defense to liability it could have

13  asserted under CERCLA, meaning that even if the Insurers were to

14  intervene to litigate the matter on the merits, their

15  intervention would be futile – the outcome would be the same.  In

16  such a case, the motion should be denied.  *See, e.g., U.S. v.*

17  *Aguilar*, 782 F.3d 1101, 1106-07 (9th Cir. 2015) (if "the

18  defendant presents no meritorious defense, then nothing but

19  pointless delay can result from reopening the judgment")

20  (citation and internal quotation marks omitted); *accord, e.g.,*

21  *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th

22  Cir. 1986).

23       Moreover, vacating the default would prejudice DTSC and delay

24  the complete resolution of the case.  Because the three-factor

25  standard for setting aside a default is disjunctive, even though

26  one of the factors is not present here (none of the Insurers was

27  responsible for C&A Products' default), the Court may and should

28

**ER-116**

1   deny the motion to set aside the default because of the presence

2   of the two other factors alone.  *E.g., Mesle*, 615 F.3d at 1092.

3       **A.   DTSC Has Established Its Prima Facie Case Against C&A**

4           **Products Under CERCLA, and C&A Products Has No Viable**
            **Defense.**

5       Congress enacted CERCLA for two primary purposes: (1) to

6   ensure that hazardous substances released to the environment are

7   promptly and properly cleaned up; and (2) to ensure cleanup costs

8   are borne by those parties responsible for the releases rather

9   than by the public.  *Asarco LLC v. Atlantic Richfield Co.*, 866

10  F.3d 1108, 1115 (9th Cir. 2017).  DTSC undertook a response

11  action at the Site and filed this lawsuit to recover its expenses

12  from the defendants, liable parties pursuant to CERCLA section

13  107, and, as applicable here, their historical insurers.

14      To establish a defendant's liability under CERCLA section

15  107, a plaintiff must prove the following elements: "(1) the site

16  is a 'facility;' (2) a 'release' or 'threatened release' of a

17  hazardous substance occurred; (3) the government incurred costs

18  in responding to the release or threatened release; and (4) the

19  defendant is a liable party."  *United States v. Chapman,* 146 F.3d

20  1166, 1169 (9th Cir. 1998).  The fourth element is met by

21  establishing that a defendant falls into one of the categories of

22  "persons" set forth in CERCLA section 107(a), which includes

23  being a past owner of the facility at the time of disposal of

24  hazardous substances.  *Id.*

25      Defendants are jointly and severally liable under CERCLA for

26  DTSC's response costs incurred, and future costs to be incurred,

27  at the Site.  *United States v. Hunter*, 70 F.Supp.2d 1100, 1106

28  (C.D. Cal. 1999).  CERCLA imposes strict liability without regard

16

1  to the party's fault or state of mind.  *Carson Harbor Village,*

2  *Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001); *3550*

3  *Stevens Creek Associates v. Barclays Bank*, 915 F.2d 1355, 1357

4  (9th Cir. 1990).

5       **1.   The Site is a "Facility."**

6       The first element of CERCLA section 107(a) liability requires

7  that the Site be a "facility."  CERCLA defines "facility" as "any

8  site or area where a hazardous substance has been deposited,

9  stored, disposed of, or placed or otherwise come to be located .

10  . . ."  42 U.S.C. § 9601(9); *see also 3550 Stevens Creek Assoc.*,

11  915 F.2d at 1360 n.10 (term "facility" has been broadly construed

12  by the courts); *Uniroyal Chemical Co., Inc. v. Deltech Corp.,* 160

13  F.3d 238, 245 (5th Cir. 1998) ("facility is defined in the

14  broadest possible terms, encompassing far more than traditional

15  waste sites").  Investigations conducted at the Site showed that

16  the soil and groundwater at the Site were contaminated with

17  arsenic, chromium, and copper.  *See* Declaration of McKinley

18  Lewis, Jr. (Lewis Decl.), ¶ 11, Docket No. 189.  These

19  contaminants are designated hazardous substances under CERCLA

20  section 101(14) and 40 C.F.R., Part 302.4 (designation of CERCLA

21  hazardous substances).  The Site is a facility as defined in

22  CERCLA section 101(9) because there is undisputed evidence that

23  hazardous substances have come to be located at the Site.

24       **2.   A Release or Threatened Release of Hazardous**
           **Substances Occurred at the Site.**

25

26       The second element of liability under CERCLA section 107(a)

27  is that there has been a release or threatened release of

28  hazardous substances from the facility.  The term "release" means

                              17

1  "any spilling, leaking, pumping, pouring, emitting, emptying,

2  discharging, injecting, escaping, leaching, dumping, or disposing

3  into the environment . . . ."  42 U.S.C. § 9601(22).

4  "Environment" is defined broadly to include "surface water,

5  ground water, drinking water supply, land surface or subsurface

6  strata, or ambient air . . . ."  42 U.S.C. § 9601(8).  These

7  expansive definitions, taken together, provide that a release is

8  established whenever hazardous substances are present in the

9  soil.  *United States v. Carolina Transformer Co.*, 739 F.Supp.

10  1030, 1036 (E.D.N.C. 1989), *aff'd.*, 978 F.2d 832 (4th Cir. 1992)

11  (release defined broadly to encompass the entire universe of ways

12  in which hazardous substances may come to exist in the

13  environment). Here, during wood preserving operations, hazardous

14  substances were released at the Site.  *See* Lewis Decl., ¶¶ 8-10 &

15  Exs. B-H, Docket No. 189; FAC, ¶ 12, 16-19, Docket No. 77.

16  Again, there is indisputable evidence that there has been a

17  release or threatened release of hazardous substances at the

18  Site.

19          **3.   DTSC Incurred Costs in Response to the Releases
                   and Threatened Releases at the Site.**
20

21      The third element of CERCLA liability is that DTSC incurred

22  costs in response to the release of hazardous substances at the

23  Site.  "Response" is broadly defined as "remove, removal, remedy

24  and remedial action."  42 U.S.C. § 9601(25).  CERCLA defines

25  these terms to include the cleanup or removal of released

26  hazardous substances from the environment, actions taken in the

27  event of the threat of release of hazardous substances, actions

28  to monitor, assess, and evaluate the release or threat of release

18

1   of hazardous substances, the disposal of removed material, and

2   actions consistent with a permanent remedy.  42 U.S.C. §

3   9601(23), (24).

4        CERCLA authorizes the recovery of "all costs of removal or

5   remedial action incurred by . . . a State . . . *not inconsistent*

6   *with the national contingency plan*."  42 U.S.C. § 9607(a)(4)(A)

7   (emphasis added).  Recoverable "response costs" have been held to

8   include oversight costs incurred by a government agency in an

9   effort to ensure that a site is being adequately investigated and

10  remediated by responsible parties.  *State of Cal. Dept. of Toxic*

11  *Substances Control v. Snydergeneral Corp.*, 876 F.Supp. 222, 224-

12  25 (E.D. Cal. 1994); *State of California ex. rel. Cal. Dept. of*

13  *Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673

14  (9th Cir. 2004).  DTSC is also entitled to recover attorneys'

15  fees as part of its response costs expended for the enforcement

16  of this matter, as well as indirect costs, or overhead.  *United*

17  *States v. Chapman,* 146 F.3d 1166, 1175 (9th Cir. 1988); *Neville*

18  *Chem. Co.*, 358 F.3d at 673.  However, it is the fact of the

19  response costs, not the amount, which constitutes an element of

20  liability under CERCLA.  *Chapman*, 146 F.3d at 1169.  Where the

21  government shows "some connection" between the release at the

22  site and the incurrence of response costs, those costs are

23  recoverable.  *Louisiana-Pacific Corp. v. Beazer Materials &*

24  *Services,* 811 F.Supp. 1421, 1430 (E.D. Cal. 1993).

25       There is an abundance of uncontestable evidence, submitted in

26  support of DTSC's motions to approve the consent decrees, its

27  motion for partial summary judgment, and its motion for default

28  judgment (currently taken off calendar), that DTSC has incurred

19

1  costs in response to the releases of hazardous substances at the

2  Site and related to its efforts to clean up the Site. *See* Docket

3  Nos. 137-2, 144, 158, 161, 178, and 186-90; Lewis Decl., ¶ 18 and

4  accompanying exhibits, Docket No. 189.  DTSC has incurred

5  response costs related to its efforts to repair and restart the

6  groundwater extraction and treatment system, completion of a

7  removal investigation for site soils, preparation and

8  implementation of the Removal Action Workplan, groundwater

9  monitoring, and monitoring the condition of the asphalt cap.

10  *Ibid.*  Indeed, the Court has entered three consent decrees

11  acknowledging DTSC's having incurred these necessary response

12  costs.  Docket Nos. 141, 150, 182.

13      Once DTSC establishes a prima facie case that its response

14  costs were incurred in connection with the release or threatened

15  release of hazardous substances from a site, as it has done here,

16  the costs are presumed consistent with the National Contingency

17  Plan (NCP), and the burden shifts to the defendants to prove

18  otherwise.  *Chapman*, 146 F.3d at 1170-71.  Pursuant to Section

19  113(j) of CERCLA and established Ninth Circuit precedent,

20  defendants have the burden of proving that DTSC's choice of a

21  particular response action is "arbitrary and capricious" based on

22  the administrative record to maintain an assertion that the

23  action was inconsistent with the NCP.  42 U.S.C. § 9613(j);

24  *Chapman*, 146 F.3d at 1170; *United States v. W.R. Grace & Co.*, 429

25  F. 3d 1224 (9th Cir. 2005); *see also California Dept. of Toxic*

26  *Substances Control v. Neville Chem. Co.*, 358 F. 3d 661, 673 (9th

27  Cir. 2004) (emphasizing that opposing party must prove that the

28  government acted "arbitrarily and capriciously in choosing a

20

1  particular response action") (emphasis in original).  The

2  arbitrary and capricious standard is justified "because

3  determining the appropriate removal and remedial action involves

4  specialized knowledge and expertise, [and therefore] the choice

5  of a particular cleanup method is a matter within the discretion

6  of the [government]." *Washington State Dept. of Transp. V.*

7  *Washington Natural Gas Co.*, 59 F.3d 793, 798-99 (9th Cir. 1995)

8  (quoting *United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir.

9  1992) (whether response costs were necessary and "not

10  inconsistent" with the NCP is not an element of the plaintiff's

11  prima facie case)).

12      As discussed further below in Section II.A(5), two of the

13  Insurers claim they have a meritorious defense by asserting that

14  the response costs were not necessary and were inconsistent with

15  the NCP.  Century Mot. at 20; Docket No. 205 (Continental Mot.),

16  at 12.  However, they offer no specific facts or evidence to

17  rebut DTSC's showing.  Simply pointing out that DTSC has the

18  burden to establish its response costs, which DTSC does in its

19  motion for default judgment and supporting declarations, does not

20  suffice to establish a viable defense either to liability or

21  damages.

**4.   C&A Products Was an Owner or Operator or Both of
the Site at the Time of Disposal of Hazardous
Substances at the Site, and Thus Is a Responsible
Party Under CERCLA.**

The final element of liability under CERCLA is that C&A

Products falls within one of the four classes of responsible

parties in CERCLA.  Under CERCLA section 107(a)(2), "any person

who at the time of disposal of any hazardous substance owned or

21

1   operated any facility at which such hazardous substances were

2   disposed of . . ." is a liable party.  42 U.S.C. § 9607(a)(2).

3       C&A Products' ownership of the Site is through its

4   predecessor Wickes.  Wickes bought the assets of Pacific Wood

5   Preserving, a dissolved California corporation, including the

6   Site, on or about September 12, 1979, and operated at the Site

7   thereafter as Wickes Companies, Inc. until 1982, when the

8   facility closed.  FAC, ¶ 16, Docket No. 77.  Wickes changed its

9   name to Collins & Aikman Group, Inc., and later merged into

10  Collins & Aikman Products Co.  FAC, ¶ 15, Docket No. 77.  Collins

11  & Aikman Products Co. owned the Site until 1997.  *Ibid.*  C&A

12  Products was formed in 2007 from Collins & Aikman Products Co.

13  *Ibid.*

14      As set forth above, hazardous substances, including arsenic,

15  chromium, and copper, were used in wood preserving operations at

16  the Site, and were released into the environment at and from the

17  Site, from the beginning of operations in 1972.  FAC, ¶¶ 12, 17,

18  19, Docket No. 77.  These spills of hazardous substances were

19  documented during Wickes's and C&A Products' ownership and

20  operation.[13]  FAC, ¶ 19, Docket No. 77.  Because there were

21          [13] For example, on December 24, 1979, a large amount of green
22  liquid flowed from a large tank located in the yard at the Site.
    Lewis Decl., ¶ 9, Docket No. 189.  The wind blew the liquid
    beyond a safety trough around the tank and onto the driveway of
23  the company's building and flowed down the driveway *onto A Street
    into the drainage ditch running along A Street.*  Ibid.  This
24  liquid flowed down the drainage ditch for approximately 150 yards
    where it entered the drainage ditch.  *Ibid.*  The Site manager
25  admitted that the substance that had flowed into the drainage was
    a mixture of water, copper, chromium, and arsenic.  *Ibid.*  A
26  second large spill occurred on November 7, 1980, when a well
    water supply valve malfunctioned, causing water to flow into a
27  mixing tank that had about 1.5 feet of sludge in it.  Lewis
    Decl., ¶ 10, Docket No. 189.  The mixture overflowed onto the

28

                                    22

1  disposals of hazardous substances during C&A Products' ownership

2  and operation of the facility, the final element of liability

3  under CERCLA has been satisfied.

4  **5.  C&A Products Has No Defense to CERCLA Liability.**

5  Strict liability applies to this right of recovery, except

6  for in three limited situations not present in this action.[14]

7  Further, a party found liable under Section 107 of CERCLA is

8  liable for "all costs of removal or remedial action incurred by .

9  . . a State . . . not inconsistent with the national contingency

10  plan."  42 U.S.C. § 9607(a)(4)(A).  As discussed above, once DTSC

11  establishes a prima facie case that its response costs were

12  incurred in connection with the release or threatened release of

13  hazardous substances from a site, the costs are presumed

14  consistent with the NCP, and the burden shifts to the defendant

15  to prove otherwise.  *Chapman,* 146 F.3d at 1170-1171.

16  The Insurers have produced no evidence that DTSC's costs were

17  inconsistent with the NCP.  Even if they had, whether some or all

18  of DTSC's costs are "not inconsistent" with the NCP (and the

19  other arguments the Insurers make in support of their assertion

20  that they have a meritorious defense to assert in favor of C&A

21  Products) is a factual issue affecting only the amount of

22  damages.  *Washington State Dept. of Transp.*, 59 F.3d at 798.

23  ─────────────

surrounding soil and travelled through a drainage ditch in front
of the Site on A Street.  *Ibid.*  The spill travelled along the A

24  Street ditch, both east and west of the Site entrance.  *Ibid.*

[14] CERCLA section 107(b) sets forth three statutory

25  affirmative defenses to liability under section 107(a): an act of
God; an act of war; and "an act or omission of a third party" who

26  is not related to the defendant by any sort of "contractual
relationship."  These are the only cognizable defenses to

27  liability under section 107(a), *see Levin Metals Corp. v. Parr-
Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986),

28  and none are relevant here.

23

1   Thus, Century's and Continental's arguments, *see* Century Mot. at

2   20; Continental Mot. at 12, have no relevance to the issue

3   whether C&A Products has a valid defense to liability.  C&A

4   Products does not.

5        Moreover, the Insurers' challenges to the appropriateness of

6   DTSC's response costs incurred go no further than speculation.

7   The Insurers have not submitted with their motions proposed

8   answers, affidavits, or declarations alleging facts that would

9   support an assertion that any of the response costs incurred were

10  unnecessary or inconsistent with the NCP.  This despite having

11  all the information they needed to do so:  *all of DTSC's evidence*

12  *relating to response costs has already been submitted to the*

13  *Court with the motion for default judgment on August 21, 2019.*

14  Docket Nos. 186-90.

15       If the Insurers could allege facts that would provide a

16  defense if true, they have failed to do so.  Instead, without

17  addressing any specifics, the Insurers merely *question* whether

18  DTSC has met its burden to establish this aspect of its

19  entitlement to relief.  *E.g.*, Allianz Mot. at 23-25; Century Mot.

20  at 18-22.  Because the Insurers have presented no "specific facts

21  that would constitute a defense," much less any form of evidence,

22  they have not established the existence of a meritorious defense

23  that would justify setting aside the clerk's entry of default

24  under applicable Ninth Circuit law.[15]  *See Mesle*, 615 F.3d at

25  1094.

26       [15] By contrast, in the cases cited by the Insurers, the
    moving party submitted evidence to establish the existence of a
27  meritorious defense.  *E.g.*, *Mesle*, 615 F.3d at 1092 (sworn
    assertions submitted); *Key Bank of Maine v. Tablecloth Textile*
28

                                    24

1  **B.  DTSC Will Be Prejudiced by Setting Aside the Default.**

2  If the Insurers' motions to set aside C&A Products' default

3  are granted, DTSC will be prejudiced by having had to prepare and

4  file a motion for default judgment and supporting declarations

5  that may turn out not to be necessary, and having to litigate

6  multiple times when the Insurers can assert no meritorious

7  defense to liability.  C&A Products is liable under CERCLA: the

8  Insurers have provided no evidence that C&A Products can assert a

9  defense under CERCLA to DTSC's claims, or any evidence that

10 DTSC's response costs are inconsistent with the NCP.  Having to

11 litigate these motions after having drafted and filed a motion

12 for default judgment will cause DTSC to incur unnecessary

13 expense.

14 **CONCLUSION**

15 For all the foregoing reasons, the Insurers' motions to

16 intervene and to vacate the default of C&A Products should be

17 denied.

18

19

20

21

22

23

24

25

26

27 *Co. Corp.*, 74 F.3d 349, 354 (1st Cir. 1996) ("strong evidence"
   presented); *Choice Hotels Intern., Inc. v. Kusum*, 11CV1277BTM
28 (WMc), 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012).

25

1

Dated:   November 18, 2019                    Respectfully Submitted,

2

XAVIER BECERRA

3                                             Attorney General of California
                                              EDWARD H. OCHOA

4                                             Supervising Deputy Attorney
                                              General

5                                             OLIVIA W. KARLIN
                                              Deputy Attorney General

6

7                                             /S/   *Laura J. Zuckerman*

8

LAURA J. ZUCKERMAN

9                                             Deputy Attorney General
                                              *Attorneys for Plaintiffs*

10                                            *California Department of*
                                              *Toxic Substances Control and*

11                                            *the Toxic Substances Control*
                                              *Account*

12

13    Docket No.:   LA2012602448

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ER-127**

1   Thomas F. Vandenburg (State Bar No. 163446)
    tvandenburg@wshblaw.com
2   Stratton P. Constantinides (State Bar No. 305103)
    sconstantinides@wshblaw.com
3   **WOOD, SMITH, HENNING & BERMAN LLP**
    10960 Wilshire Boulevard, 18th Floor
4   Los Angeles, California 90024-3804
    Phone: 310-481-7600 ♦ Fax: 310-481-7650
5

6   Attorneys for Proposed Intervenors Allianz Underwriters Insurance Company,
    Chicago Insurance Company, and Fireman's Fund Insurance Company
7

8

9                   **UNITED STATES DISTRICT COURT**

10      **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

11

12  CALIFORNIA DEPARTMENT OF          Case No. 2:14-cv-0595-WBS-EFB
    TOXIC SUBSTANCES CONTROL
13  and the TOXIC SUBSTANCES          **ALLIANZ UNDERWRITERS
    CONTROL ACCOUNT,**                **INSURANCE COMPANY,
14                                     CHICAGO INSURANCE
                Plaintiffs,            COMPANY, AND FIREMAN'S
15                                     FUND INSURANCE COMPANY'S
          v.                          NOTICE OF MOTION AND
16                                     MOTION TO INTERVENE AS
    JIM DOBBAS, INC., a California     ALLEGED INSURER OF
17  corporation; CONTINENTAL RAIL,    DEFENDANT COLLINS &
    INC., a Delaware corporation; DAVID AIKMAN PRODUCTS, LLC AND
18  VAN OVER, individually; PACIFIC   TO VACATE DEFAULT;
    WOOD PRESERVING, a dissolved      MEMORANDUM OF POINTS AND
19  California corporation; WEST COAST AUTHORITIES**
    WOOD PRESERVING, LLC., a
20  Nevada limited liability company; and
    COLLINS & AIKMAN PRODUCTS,        **Date:**      December 2, 2019
21  LLC, a Delaware limited liability  **Time:**      1:30 p.m.
    company,,                          **Place:**     Courtroom 5, 14th Floor
22                                                    501 I Street
                Defendants.                           Sacramento, CA 95814
23

24  AND RELATED CROSS-ACTIONS         The Hon. William B. Shubb

25                                     Trial Date:       None Set

26

27  ///

28  ///

    LEGAL:05971-0074/13099344.1
    _____
    ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
    FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 2, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of the above Court, located at 14 Floor, 501 I Street, Sacramento, CA 95814, Proposed Intervenors ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY ("Allianz Intervenors") as putative insurers of the Wickes Companies, Inc. ("Wickes"), alleged predecessor of underlying Defendant Collins & Aikman Products, LLC ("C&A Products, LLC"), a cancelled Delaware limited liability company, will move for an order permitting Allianz Intervenors to intervene in the above-captioned action, vacate default and oppose entry of judgment against C&A Products, LLC.

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 24, on the grounds that Allianz Intervenors have a direct interest in this litigation because C&A Products, LLC is a cancelled Delaware limited liability company and lacks the resources or capacity to defend itself in this matter, and because DTSC has indicated that it seeks to recover any default judgment against putative insurers of C&A Products, LLC. Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to vacate the default taken by DTSC against C&A Products, LLC.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1    This Motion is based upon this Notice, the accompanying Memorandum of

2 Points and Authorities, the concurrently filed Declaration of Joey D. Solomon and

3 exhibits attached thereto, all pleadings and papers on file in this action, and such

4 other matters as may be properly presented to the Court at the time of the hearing.

5

6 DATED: November 4, 2019           WOOD, SMITH, HENNING & BERMAN LLP

7

8

9                                  By:    _/s/ Stratton P. Constantinides_
                                          THOMAS F. VANDENBURG
10                                         STRATTON P. CONSTANTINIDES
11                                 Attorneys for Proposed Intervenors Allianz
                                   Underwriters Insurance Company, Chicago
12                                 Insurance Company, and Fireman's Fund
                                   Insurance Company
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

ER-130

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................5

II.  FACTUAL BACKGROUND ................................................................................5

    A.   The Site And Potentially Responsible Parties ..........................................5

    B.   C&A Products Co.'s Bankruptcy And The Cessation Of Its Remedial
        Activities At The Site ........................................................................7

    C.   DTSC's 2014 Action Under CERCLA ..................................................8

III. LEGAL ARGUMENT ....................................................................................10

    A.   As Putative Insurers Of C&A Products, LLC, Allianz Intervenors Are
        Entitled To Intervene As A Matter Of Right To Protect Their Own Interests ........10

        1.   Allianz Intervenors' Motion To Intervene Is Timely ...................................12

            (a)   There Has Been No Active Litigation on the Merits .......................13

            (b)   DTSC Will Not Be Prejudiced .........................................13

            (c)   Allianz Intervenors Have Not Delayed Seeking the Relief
                 Sought Herein .....................................................14

        2.   Allianz Intervenors Have A Significant Protectable Interest ....................15

        3.   Allianz Intervenors' Interests May Be Impaired If.....................................17

    Intervention Is Not Permitted ................................................................17

        4.   The Existing Parties Do Not Represent Allianz Intervenors'.......................18

    Interests ........................................................................................18

IV.  CONCLUSION .......................................................................................27

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610 ........................................................ 3

*Brandt v.* American Bankers Ins. Co. of Florida, 653 F.3d 1108 ................................... 3

*Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260 ................................. 6

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 11CV1277 BTM(WMc), 2012 WL 1570844 ........... 7

*Citizens for Balanced Use v. Mont. Wilderness Ass 'n*, 647 F.3d 893 .......................... 11, 12, 15, 1

*City of Emeryville v. Robinson*, 621 F.3d 1251 ............................................................ 17

*Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX, Corp.*, No. SACV 10-1876 DOC (RNBx) ........................................................................................ 2

*Coon v. Grenier*, 867 F.2d 73 ...................................................................................... 5

*E.Digital Corporation v. Ivideon LLC*, No. 15-cv-00691-JST ..................................... 3

*Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ....................................................... 9

*Forest Res. Council v. Glickman*, 82 F.3d 825 ......................................................... 12

*Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004) ................................................................................................................. 9

*Fremont Square LTD. v. Chung*, CV 10-9749 GAP (RZx) ........................................ 16

*Gray v. Begley*, 182 Cal.App.4th 1509 ...................................................................... 11

*Joe Hand Promotions, Inc. v. Williams*, No. 2:14-cv-02663-JAM-AC ....................... 2

*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 ................. 16

*Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349 ............................... 5

*Meadows v. Dominican Republic*, 817 F.2d 517 ........................................................ 4

*Mendoza v. Wight Vineyard Management*, 783 F.2d 941 ........................................ 3, 5

*NAACP v. New York*, 413 U.S. 345 ........................................................................... 12

*O'Connor v. Nevada*, 27 F.3d 357 .......................................................................... 4, 9

*Reliance Ins. v. Superior Court*, 84 .................................................................... 14, 16

*Sosa v. Bridge Store, Inc.*, 1:10-CV-01494-OWW, 2011 ........................................... 8

-2-

WOOD, SMITH, HENNING & BERMAN LLP
Attorney at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ● FAX 310-481-7650

ER-132

1 | *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 ............................... 15

2 | *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691 ...................................... 4

3 | *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) ............................ 9

4 | *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3rd Cir. 1951)........................... 9

5 | *U.S. v. Oregon*, 913 F.2d 576 ........................................................ passim

6 | *U.S.v. City of Los Angeles*, 288 F.3d 391 ................................................ 16

7 | *United States v. Consolidation Coal Co.*, 345 F.3d 409 (6th Cir. 2003) .............................. passim

8 | *United States v. Signed Personal Check No. 730 of Yubran Mesle,* 615 F.3d 1085 ....................... 3

9 | *Utica Mut. Ins. Co. v. Hamilton Supply Co.*, No. C 06-07846 SI ....................... 13, 16, 9

10

11 | **STATUTES**

12 | Cal. Health & Safety Code §§ 25300 ................................................... 8

13 | CERCLA, 42 U.S.C. § 9607 ......................................................... 8

14 | CERCLA, 42 U.S.C. § 9607(a) ...................................................... 6, 7

15 | CERCLA, 42 U.S.C. § 9613(g) ...................................................... 8, 6

16 | CERCLA, 42 U.S.C. § 9613(g)(2) .................................................... 6

17

18 | **OTHER AUTHORITIES**

19 | *TCI*, 244 F.3d at 697-98 ............................................................. 4

20

21 | **RULES**

22 | Fed. R. Civ. P. 24(a)............................................................ 5, 10, 11

23 | Fed. R. Civ. P. 24(a). ............................................................. 10

24 | Fed. R. Civ. Proc. 55(c) .......................................................... passim

25 | Fed. R. Civ. Proc. 60 ........................................................... 17, 2, 4

26 | Federal Rules of Civil Procedure, Rule 55(a) ............................................. 9

27 | Rule 24(b).................................................................... 1, 2

28 | Rule 55 ..................................................................... passim

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

Rule 60(b)..........................................................................................................3

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Allianz Intervenors move to intervene in this action to protect their interests as excess liability insurers of Wickes and to vacate the default against C&A Products, LLC.  Any rulings or judgment made against C&A Products, LLC in this case may impact Allianz Intervenors' obligations, if any, to DTSC, if DTSC becomes a judgment creditor of C&A Products, LLC.

C&A Products, LLC is a cancelled Delaware limited liability company against which DTSC has obtained entry of default.  As Wickes's putative insurer, alleged predecessor to C& A Products, LLC, Federal Rules of Civil Procedure, Rule 24(a) and substantive California law allow Allianz Intervenors to intervene as a matter of right.  Allianz Intervenors' request is timely within the meaning of Rule 24(a), Allianz Intervenors have a "significantly protectable" interest regarding C&A Products, LLC's exposure in this action, disposition of this action without intervention may impair Allianz Intervenors' interest, and Allianz Intervenors' interest is not represented by any party to the action.  Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to vacate the default taken by DTSC against C&A Products, LLC.  Allianz Intervenors respectfully requests that this Court grant their motion to intervene and to vacate the default against C&A Products, LLC.

## II.   FACTUAL BACKGROUND

### A.   The Site And Potentially Responsible Parties

DTSC alleges the following:

- From 1972 until September 12, 1979, Pacific Wood Preserving conducted wood preserving operations at the property located at 147A Street, Elmira, California 95625 ("Site").  (ECF No. 77, ¶ 17.)[1]

---

[1] ECF Numbers referred to herein are references to pleadings within the above-entitled action.

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

- In September 1979, Pacific Wood Preserving sold the Site and wood preserving business to The Wickes Corporation (later known as Wickes Companies, Inc.).  (ECF No. 77, ¶ 16.)

- Wickes operated the Site from 1979 to 1982.  (Id.)  Wickes and its successor Collins & Aikman Products Co. ("C&A Products Co."), owned and operated the Site until March 20, 1997. (ECF No. 77, ¶¶ 15, 16.)

- C&A Products Co. became known as the defendant C&A Products, LLC on December 6, 2007. (ECF No. 77,¶ 15.)

- During their respective wood preserving operations, Pacific Wood Preserving and Wickes released hazardous substances, including arsenic, chromium, and copper.  (ECF No. 77, ¶ 19.)

- From the 1980s through 2005, DTSC claims that Wickes and then C&A Products, Co. took responsive actions under oversight of the DTSC and its predecessor agency to address environmental contamination at the Site. (ECF No. 77, ¶ 20.)  Those actions included soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring. (Id.)  In March 1996, DTSC and C&A Products Co. entered into the "Operation and Maintenance Agreement," which certified implementation of the final remedial action at the Site.  (ECF No. 23-3.)  C&A Products Co. agreed to perform soil excavation and off-site disposal, install an asphalt cap, and conduct ground water extraction and treatment in an on-site chemical treatment plant.  (ECF No. 23-3, ¶ 7.A.) As part of the post-closure activities, C&A Products Co. was required to continue to extract, treat, sample, and analyze ground water, sample and analyze procedures associated with the on-site chemical treatment system and asphalt cap from the Site.  (ECF No. 23-3, ¶ 12.A.)

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

-6-

- On March 20, 1997, C&A Products Co. sold the Site to defendants Jim Dobbas, Inc. and Continental Rail, Inc., while continuing to address environmental contamination at the Site. (ECF No. 77, ¶ 22.)

**B.    C&A Products Co.'s Bankruptcy And The Cessation Of Its Remedial Activities At The Site**

On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932, jointly administered with the bankruptcy cases of other debtors under Case No. 05-55927.  (ECF No. 77, ¶ 23.)  DTSC claims that in the summer of 2005, while in Chapter 11 bankruptcy proceedings, C&A Products Co. stopped its remediation efforts.  (ECF No. 77, ¶ 24.)

In 2006, DTSC claims to have requested that Jim Dobbas, Inc. and Continental Rail, Inc., as the then owners of the Site, resume remediation efforts at the Site.  (ECF No. 77, ¶ 25.)  C&A Products, LLC was purportedly formed on or about December 6, 2007, as a conversion of the Delaware corporation Collins & Aikman Products Co.  (ECF No. 77, ¶ 15.)  DTSC further asserts that in December 2007, after agreeing to perform certain remedial actions, Jim Dobbas, Inc. and Continental Rail, Inc. failed and refused to perform most of the actions formerly conducted by C&A Products Co. to address contamination at the Site.  (ECF No. 77, ¶ 27.)  After Jim Dobbas, Inc. and Continental Rail, Inc. sold the Site to defendant David Van Over in 2011, DTSC allegedly issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order requiring Jim Dobbas, Inc., Continental Rail, Inc., and David Van Over to conduct additional remediation activities.  (ECF No. 77, ¶¶ 30-31, and Ex. D.)  All three of those defendants allegedly failed to comply with these orders.  (ECF No. 77, ¶ 32.)  As a result, DTSC claims to have itself undertaken the responsive actions to remediate the Site, thereby incurring unreimbursed remediation costs.  (ECF No. 77, ¶¶ 33-36.)  Specifically, the response actions DTSC claims to have taken

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1  included efforts to repair and restart the groundwater extraction and treatment

2  system, completion of a remedial investigation for site soils, preparation of the

3  "Removal Action Workplan," implementation of the that plan in October and

4  November 2011, and groundwater monitoring.  (ECF No. 77, ¶ 33.)

5  **C.    DTSC's 2014 Action Under CERCLA**

6  On March 3, 2014, DTSC filed the present action (the "DTSC Action"),

7  seeking cost recovery under CERCLA, 42 U.S.C. § 9607, declaratory relief under

8  CERCLA, 42 U.S.C. § 9613(g), and damages, injunctive relief, and civil penalties

9  under the Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300,

10  *et seq*. against potentially responsible parties at the Site.

11  On November 13, 2014, DTSC filed a Petition for the Appointment of a

12  Receiver for C&A Products, LLC with the Delaware Court of Chancery, so that it

13  could add C&A Products, LLC to this action, obtain a default judgment and bring

14  direct actions against that entities' historic insurers.  Solomon Decl. ¶ 4, Exhibit A

15  (¶¶ 2-3).  Significantly, DTSC admitted it had knowledge of the existence of C&A

16  Products, LLC's historic insurance when it filed the Petition.  (Id. ¶ 12.)

17  On December 8, 2014, the Delaware Court of Chancery appointed Brian

18  Rostocki the receiver for C&A Products, LLC "for the limited purpose of allowing

19  Collins & Aikman Products, LLC to be sued [in the DTSC Action], and with the

20  power, ***but not the obligation***, to defend, in the name of Collins & Aikman

21  Products, LLC, any claims made against it [in the DTSC Action]."  *See In re*

22  *Collins & Aikman Prods., LLC*, No. 10348-CB, 2014 WL 6907689, *1-2 (Del. Ch.

23  Dec. 8, 2014) (emphasis added).   As receiver, Mr. Rostocki "act[ed] as registered

24  agent in the State of Delaware for service of process on Collins & Aikman

25  Products, LLC, including, without limitation, for service of process [in the DTSC

26  Action].  *Id*. at * 1.  DTSC agreed to pay the reasonable costs of the receiver.

27  Solomon Decl. ¶ 4, Exhibit A (¶ 16).

28  On December 11, 2014, DTSC filed its First Amended Complaint (the

-8-

1   "Amended Complaint") against C&A Products, LLC and other potentially

2   responsible parties in the DTSC Action.  DTSC served Mr. Rostocki with the

3   Amended Complaint.  C&A Products, LLC did not respond or appear.

4        Despite DTSC's and C&A Products, LLC's knowledge of the historical

5   insurers, Allianz Intervenors received no notice of the DTSC's Petition to Appoint

6   Receiver, filing of the original or Amended Complaint or service of the Amended

7   Complaint on C&A Products, LLC, at the time those events occurred, or at any

8   time prior to September 10, 2019.

9        On March 25, 2015, without notice to Allianz Intervenors, DTSC took the

10  default, under Federal Rules of Civil Procedure, Rule 55(a), of C&A Products, LLC

11  for having failed to answer the complaint in the DTSC Action.  (ECF No. 126.)  On

12  March 26, 2015, the clerk entered default against C&A Products, LLC in the DTSC

13  Action.  (ECF No. 129.)  Allianz Intervenors did not receive notice of such default

14  at that time, or at any time prior to September 10, 2019.

15       DTSC then settled with defendants West Coast Wood Preserving for

16  $350,000, Jim Dobbas, Inc., for $265,000, and David Van Over for $250,000,

17  entering into public settlements and consent decrees with each of them.  (ECF No.

18  185, p. 10 of 21, ECF No. 141, ¶¶ 13, 23; ECF No. 150, ¶¶ 12, 22.; ECF No. 182,

19  ¶¶ 12, 25.)  The Court approved these consent decrees on September 16, 2015,

20  November 18, 2015, and March 28, 2018, respectively, again all long before

21  Allianz Intervenors received notice of the DTSC Action.  (ECF Nos. 141, 150,

22  182.)

23       Allianz Intervenors were first notified of the DTSC Action by letter dated

24  September 10, 2019 from Arcina Risk Group ("Arcina Letter"), which was nearly

25  five (5) years after naming C&A Products, LLC in the DTSC Action.  Solomon

26  Decl. ¶ 5, Exhibit B.  Allianz Intervenors assume the DTSC retained, directed the

27  actions of or is funding the cost of Arcina Risk Group, based on the fact that the

28  DTSC committed to paying the Receiver's costs and the Arcina Letter directs all

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

-9-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1  responses to the DTSC and the Receiver.  The Arcina Letter further served as

2  Allianz Intervenors' first notice of the pending Application for Default Judgment,

3  which was then scheduled for September 25, 2019.  Solomon Decl. ¶ 5, Exhibit B.

4  On September 23, 2019, Allianz Intervenors sent a response and acknowledgement

5  letter to Arcina Risk Group.  Solomon Decl. ¶ 6, Exhibit C.  Furthermore, Allianz

6  Intervenors promptly initiated a search for the insurance policies identified by

7  Arcina Risk, commenced an investigation regarding the claims at issue and

8  engaged outside counsel to assist with intervention in the DTSC Action in order to

9  protect Allianz Intervenors' interests as putative insurers for Wickes.  Solomon

10  Decl. ¶ 7.

11       On August 21, 2019, DTSC moved for application for entry of default

12  judgment against C&A Products, LLC. (ECF No. 184.)  DTSC served the

13  application for entry of default judgment against C&A Products, LLC on Rostocki,

14  but neither it nor Rostocki notified Allianz Intervenors of the application.  Allianz

15  Intervenors, which only recently learned of this application for entry of default

16  judgment by the September 10, 2019 Arcina Letter, is now submitting this motion

17  to intervene without delay.

18  **III.  LEGAL ARGUMENT**

19      **A.  As Putative Insurers Of C&A Products, LLC, Allianz Intervenors**

20         **Are Entitled To Intervene As A Matter Of Right To Protect Their**

21         **Own Interests**

22       Federal Rule of Civil procedure 24(a) provides the criteria for intervention as

23  a matter of right, and it allows for intervention here because DTSC likely intends to

24  attempt to have Allianz Intervenors pay any judgment against C&A Products, LLC:

25      **(a) Intervention of Right.** On timely motion, the court must permit
    anyone to intervene who: (1) is given an unconditional right to

26      intervene by a federal statute; or (2) claims an interest relating to the
    property or transaction that is the subject of the action, and is so

27      situated that disposing of the action may as a practical matter impair or
    impede the movant's ability to protect its interest, unless existing

28      parties adequately represent that interest.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1     Fed. R. Civ. P. 24(a).

2

3         As putative insurers of Wickes, Allianz Intervenors can establish the four

4     elements needed for intervention as a matter of right:

5          (1) the intervention application is timely; (2) the applicant has a
           significant protectable interest relating to the property or transaction
6           that is the subject of the action; (3) the disposition of the action may, as
           a practical matter, impair or impede the applicant's ability to protect its
7           interest; and (4) the existing parties may not adequately represent the
           applicant's interest.

8

9     *Citizens for Balanced Use v. Mont. Wilderness Ass 'n*, 647 F.3d 893, 897 (9th Cir.

10     2011) (reversing district court's denial of intervention in the ongoing litigation

11     because the proposed intervenor satisfied the four elements for intervention as of

12     right under Fed. R. Civ. P. 24(a)).  In determining whether to permit intervention, a

13     court is "guided primarily by practical considerations, not technical distinctions,"

14     and "the requirements are broadly interpreted in favor of intervention." *Citizens for*

15     *Balanced Use*, 647 F.3d at 897 (emphasis added).

16         Furthermore, when coverage has not yet been denied, an insurer is allowed to

17     intervene while reserving  rights to contest coverage at a later date. *See Gray v.*

18     *Begley*, 182 Cal.App.4[th] 1509 (2010).

19         Here, unlike Travelers, ***Allianz Intervenors have <u>not</u> disclaimed coverage as***

20     ***related to the instant action***.  Instead, as Allianz Intervenors only received notice

21     of the instant action on September 10, 2019, Allianz Intervenors are still in the

22     process of gathering information regarding coverage and or duties as described

23     above.  As such, Allianz Intervenors have reserved all rights to decline coverage on

24     any applicable ground and expressly have not waived or otherwise forfeited any

25     direct interest in the instant action that would serve to defeat Allianz Intervenors'

26     claim for intervention of right.[2]

27

28     _____
[2] In the Court's Order re Travelers' Motion to Intervene and Set Aside Default (ECF No. 221), the Court based its

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ● FAX 310-481-7650

1    For these reasons, as well as satisfaction of the factors set forth in *Citizens*

2    *for Balanced Use* as described below, Allianz Intervenors should be entitled to

3    intervention as a matter of right in the instant action.

4                    **1.    Allianz Intervenors' Motion To Intervene Is Timely**

5    Allianz Intervenors' motion to intervene is timely.  DTSC has merely taken

6    C&A Products, LLC's default.  DTSC has not otherwise advanced this litigation,

7    and has utterly failed to notify Allianz Intervenors of the DTSC Action or of the

8    default.  In fact, Allianz Intervenors were not notified of the DTSC Action until

9    nearly five (5) years after its filing, and were not notified DTSC's Petition for

10   Appointment of a Receiver or any of the events in this action, including the March

11   25, 2015 entry of default against C&A Products, LLC, until Allianz Intervenors

12   received the September 10, 2019 Arcina Letter.

13   In deciding whether a movant's motion is timely, the Ninth Circuit considers

14   the following three factors: (1) the stage of the proceeding; (2) whether the parties

15   would be prejudiced; and (3) the reason for the delay, if any, in moving to

16   intervene.  *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir.

17   1996).  The mere lapse of time alone does not necessarily preclude intervention.

18   *See U.S. v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) (holding that although the

19   underlying action "had been underway for nearly twenty years when [the

20   intervenor] sought to intervene, the length of time that has passed since a suit was

21   filed does not alone determine timeliness") (emphasis added).  Timeliness is to "be

22   determined from all the circumstances," and is in the court's "sound discretion."

23   *NAACP v. New York*, 413 U.S. 345, 366 (1973).

24   / / /

25

26   denial of Travelers' motion on the grounds that (1) Travelers had sufficient prior notice of the action, and (2) Travelers
     had "disclaimed coverage and any duty to defend C&A Products…and refused to provide a defense under a
27   reservation of rights."  Here, as distinguished from Travelers, DTSC has not offered to stipulate to Allianz Intervenors'
     intervention in the instant action, and Allianz Intervenors have not disclaimed coverage, but have reserved its right to
28   disclaim coverage on all applicable grounds.

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

### (a)     There Has Been No Active Litigation on the Merits

DTSC has not materially advanced this action against C&A Products, LLC; it has merely orchestrated appointment of a receiver who it then served with the Amended Complaint, sought default, and filed an application for a default judgment against C&A Products, LLC.

Moreover, no discovery has been conducted against C&A Products, LLC, nor have any dispositive motions been filed, heard, and decided.  DTSC has taken no discovery and has not proven the merits of any its claims against C&A Products, LLC.  Allianz Intervenors' intervention would therefore not "prejudice" DTSC within the meaning of Rule 24, as intervention would merely require DTSC to prove its claims against C&A Products, LLC.  This does not create "prejudice" under Rule 24.  *See Utica*, 2007 WL 3256485 at *5 (holding that an insurer's intervention on behalf of an insured and setting aside an entry of default did not prejudice plaintiff "in any meaningful way" under Rule 24 because granting insurer's motion to intervene "will not hamper discovery," which had not yet commenced).

### (b)     DTSC Will Not Be Prejudiced

No prejudice to DTSC will result by permitting Allianz Intervenors to intervene.  As noted, DTSC has not advanced litigation of the merits in this action. *Utica Mut. Ins. Co. v. Hamilton Supply Co.*, No. C 06-07846 SI, 2007 WL 3256485 (N.D. Cal. Nov. 5, 2007) supports Allianz Intervenors' position.  That, "although default was entered against [the insured] prior to the [insurer's] application to intervene," the court found that "this is not dispositive" because "plaintiff would suffer little to no prejudice if the Court were to grant [insurer's] motion to intervene because plaintiff has done little up to this point other than file a motion for default judgment." *Id*. at *3 - 4.

In contrast, Allianz Intervenors would suffer severe prejudice should the Court deny intervention.  DTSC admits it had knowledge of the C&A Products,

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

-13-

LLC's historic insurers since at least November 2014. However, it failed to notify Allianz Intervenors that it had petitioned for appointment of a receiver for C&A Products, LLC, added that entity as a defendant to this action on December 11, 2014, and obtained entry of default against C&A Products, LLC. Solomon Decl. ¶ 5. Again, without notice to Allianz Intervenors, on August 21, 2019, DTSC filed an application for entry of default judgment against C&A Products, LLC. (ECF No. 184.) As described above, Allianz Intervenors did not receive notice of the DTSC Action, the March 2015 entry of default, pending Application for Entry of Default against C&A Products, LLC or any event associated with this action until the September 10, 2019 Arcina Letter. Solomon Decl. ¶ 5, Exhibit B.

The Arcina Letter requests that Allianz Intervenors indemnify and defend C&A Products. LLC. But this request comes after entry of default and without any prior notice to Allianz Intervenors. If Allianz Intervenors is not permitted to intervene, and DTSC seeks to enforce a judgment adverse to C&A Products, LLC against Allianz Intervenors, the failure of the putative insured and those acting on its behalf, including the Receiver, to provide timely notice will constitute prejudice to Allianz Intervenors.

### (c)   Allianz Intervenors Have Not Delayed Seeking the Relief Sought Herein

After receiving notice in mid-September of this action and the default of C&A Products, LLC, Allianz Intervenors promptly acknowledge receipt of the Arcina Letter, initiated a search for the insurance policies identified by Arcina Risk, commenced an investigation regarding the claims at issue and engaged outside counsel to protect Allianz Intervenors' interests and prepare the instant Motion to Intervene. Solomon Decl. ¶¶ 6-7, Exhibit C. Allianz Intervenors' investigation and search efforts are not yet complete, and all rights under policies issued to Wickes as well as under any other agreement involving those policies or the site at issue have been reserved. Under such circumstances, California law permits the insurer to

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

-14-

intervene and protect its interests. *See Reliance Ins. v. Superior Court,* 84

Cal.App.4th 385 (2000) (abuse of discretion not to allow liability insurer to

intervene); *Grey v. Begley,* 182 Cal.App.4th 1509 (insurer who reserves its right to

deny coverage may intervene).

Allianz Intervenors submit that the relief sought was timely made when

considering the above facts. It is also justified in light of what appears to be a

designed effort to obtain entry of default and enforcement of the same against

putative insurers without providing notice and allowing those insurers the

opportunity to defend their interests. As excess insurers of Wickes, it is crucial that

Allianz Intervenors be permitted, at a minimum, to conduct discovery into and

contest DTSC's alleged damages. Accordingly, Allianz Intervenors now move to

intervene and, under the liberal standard for intervention of right under Rule 24,

Allianz Intervenors' motion to intervene is timely.

## 2.   Allianz Intervenors Have A Significant Protectable Interest

To warrant intervention as of right, Allianz Intervenors must have a

significant protectable interest relating to the property or transaction that is the

subject of the action. *See Citizens for Balanced Use*, 647 F.3d at 897 (holding that

"[t]o demonstrate a significant protectable interest, an applicant must establish that

the interest is protectable under some law and that there is a relationship between

the legally protected interest and the claims at issue") (reversing district court's

denial of intervention in the ongoing litigation). An applicant for intervention has a

significantly protectable interest if "the interest is protectable under some law, and

there is a relationship between the legally protected interest and the claims at

issue*." Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th

Cir. 2001) (reversing district court's denial of motion for intervention).

Allianz Intervenors have a significant protectable interest in the property and

transaction that are the subject matter of this litigation. Although default has been

entered, judgment has not yet been entered against C&A Products, LLC. If Allianz

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

-15-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1  Intervenors are not allowed to intervene, Allianz Intervenors expect that DTSC will

2  seek to enforce its judgment against Allianz Intervenors under Insurance Code Sec.

3  11580, as it has communicated to other putative insurers of C&A Products, LLC.

4  (ECF No. 197, Exhibit D.)  Under such circumstances, both California and federal

5  courts allow insurers to intervene.  *See Reliance Ins. Co. v. Superior Court*, *supra*,

6  84 Cal.App.4th at 386-87 (reversing trial court's refusal to allow insurer to

7  intervene to vacate default of insured reasoning, "where the insurer may be subject

8  to a direct action under Insurance Code section 11580 by a judgment creditor who

9  has or will obtain a default judgment in a third party action against the insured,

10  intervention is appropriate" and noting the "insurer may either intervene in that

11  action prior to judgment or move under Code of Civil Procedure section 473 to set

12  aside the default judgment."); *Utica*, 2007 WL 3256485, at *3 (permitting insurer

13  proceeding under reservation of rights to preserve its coverage defenses to

14  intervene under Rule 24 and granting request of insurer to vacate default judgment

15  against insured); *B.G.N. Fremont Square LTD. v. Chung*, CV 10-9749 GAP (RZx),

16  2011 WL 13129968, *4 (C.D. Cal. Sep. 27, 2011) (holding, "[i]n short, California

17  law provides that an insurer has a protectable interest in litigation brought against

18  its suspended insured, that its failure to intervene could subject it to liability for

19  default judgment subject to any coverage defenses that it may have, and that it can

20  intervene without waiving those coverage defenses by giving notice of its

21  reservation of rights.").

22      As set forth in the preceding section, as excess insurers for Wickes , Allianz

23  Intervenors should be permitted to conduct discovery as to and contest DTSC's

24  alleged damages, as excess policies only respond once the loss exceeds stated

25  underlying limits.  Furthermore, allowing Allianz Intervenors to intervene now

26  avoids Allianz Intervenors from having to challenge the default judgment after it is

27  entered, reducing inefficient and duplicative litigation between DTSC and Allianz

28  Intervenors.  *See U.S.v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("By

-16-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1  allowing parties with a practical interest in the outcome of a particular case to

2  intervene, we often prevent or simplify future litigation involving related issues

3  …"); *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136

4  Cal. App. 4 212, 216 (2006) (holding that an insurer must intervene or challenge

5  the default judgment after it is entered to protect its interest or risk waiver of such a

6  challenge).  Allowing Allianz Intervenors to intervene now also allows them to

7  challenge the default under the more liberal standard to vacate a default under Fed.

8  R. Civ. Proc. 55(c), as opposed to vacating a default judgment under Fed. R. Civ.

9  Proc. 60.[3]

10        Under California law, both fairness and efficiency dictate that Allianz

11  Intervenors be allowed to intervene under a reservation of rights in this action and

12  defend their interests against any potential judgment DTSC seeks against C&A

13  Products, LLC as DTSC may intend to enforce any such judgment against C&A

14  Products, LLC's putative insurers.  (ECF No. 197, Exhibit D.)

### 3.    Allianz Intervenors' Interests May Be Impaired If Intervention Is Not Permitted

17        In the event that, in a separate action, DTSC is able to establish coverage

18  under Allianz Intervenors' alleged policies of insurance, Allianz Intervenors'

19  interests would be significantly prejudiced if they were not allowed to intervene

20  because they would be potentially liable for any judgment against C&A Products,

21  LLC.  "A party has a sufficient interest for intervention purposes if it will suffer a

[3] The Ninth Circuit applies a "good cause" standard for vacating both an entry of default under Rule 55(c) and for vacating a default judgment under Rule 60(b), but the test for setting aside entry of default is less rigid and is more generous to the party in default.  *See U.S. Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX, Corp.*, No. SACV 10-1876 DOC (RNBx), 2011 WL 4946810 at *1, 2 (C.D. Cal. Oct. 17, 2011) (granting motion to set aside entry of default, reasoning that "[t]he 'good cause' standard under Rule 55(c) is an easier burden for the allegedly defaulting party than the excusable neglect standard required to obtain relief from default judgment under Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*, No. 15-CV-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep. 12, 2016) (granting motion to vacate entry of default, reasoning " '[W]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context,' as where no judgment has been entered, 'there is no interest in the finality of the judgment with which to contend'").

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

practical impairment of its interests as a result of the pending litigation." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010).

As a proposed intervenor, Allianz Intervenors "must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) (emphasis added); *see also Citizens for Balanced Use*, 647 F.3d at 898 (the standard is whether "the disposition of this action may, as a practical matter, impair or impede Applicants' ability to protect their interest [and] '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene …'") (emphasis added). Again, if DTSC obtains a judgment against C&A Products, LLC, it would be entitled to proceed directly against Allianz Intervenors to enforce the judgment. Accordingly, Allianz Intervenors should be allowed to intervene.

### 4.   The Existing Parties Do Not Represent Allianz Intervenors' Interests

Allianz Intervenors also satisfies the fourth requirement for intervention of right. None of the parties present in this action represent Allianz Intervenors' interests. In determining adequacy of representation, courts consider the following factors in assessing adequate representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (noting, "[t]he 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties'").

The existing parties do not represent Allianz Intervenors' interests. DTSC is adverse to Allianz Intervenors and C&A Products, LLC. C&A Products, LLC has no assets and made no effort to defend itself. Neither DTSC nor C&A Products, LLC provided timely notice of suit. Furthermore, as noted above, DTSC has represented that it "will not seek enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a direct action against the company's historic insurers." (ECF No. 197, Exhibit D.)

/ / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND
FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

**B.      Alternatively, Allianz Intervenors Should Be Permitted To Intervene Pursuant To Rule 24(b)**

If the Court determines that Allianz Intervenors are not entitled to intervene as a matter of right, the Court should nonetheless exercise its discretion to allow Allianz Intervenors to intervene under Rule 24(b) which allows a permissive intervention. Rule 24(b) provides:

> **(b) Permissive Intervention.** (1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed R. Civ. P. 24(b) (emphasis added).

Here, Allianz Intervenors' defense for entry of judgment against C&A Products, LLC and DTSC's claims against C&A Products, LLC share common questions of law and fact.  DTSC seeks to establish C&A Products, LLC's liability in the DTSC Action.  Allianz Intervenors seeks to challenge C&A Products, LLC's liability and the amount of the proposed judgment.  As such, Allianz Intervenors fulfill the threshold requirement for the Court to allow Allianz Intervenors' permissive intervention under Rule 24(b).

**C.      Allianz Intervenors Have Shown Good Cause To Vacate The Entry Of Default**

Rule 55 provides that a "court may set aside an entry of default for good cause . . .." Fed. R. Civ. Pro. 55(c).  The Ninth Circuit's good cause standard for vacating entry of default is the same as that for vacating default judgments under Rule 60(b), but the test for vacating an entry of default is much less rigid and is more generous to the party in default. *See Joe Hand Promotions, Inc. v. Williams*, No. 2:14-cv-02663-JAM-AC, 2015 WL 5923611 at * 2 (E.D. Cal. Oct. 9, 2015) (granting motion to set aside the entry of default and default judgment, reasoning that "'judgment by default is a drastic step appropriate only in extreme

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

-19-

circumstances; a case should, whenever possible, be decided on the merits.'"); *U.S. Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX, Corp.*, No. SACV 10-1876 DOC (RNBx), 2011 WL 4946810 at * 1 -2 (C.D. Cal. Oct. 17, 2011) (granting a motion to set aside entry of default, reasoning that "[t]he 'good cause' standard under Rule 55(c) is an easier burden for the allegedly defaulting party than the excusable neglect standard required to obtain relief from default judgment under Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*, No. 15-cv-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep. 12, 2016) (granting motion to vacate entry of default, reasoning " '[W]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context,' as where no judgment has been entered, 'there is no interest in the finality of the judgment with which to contend'").

In evaluating relief from an entry of default against C&A Products, LLC, the "court's discretion is 'especially broad'" to grant relief. *Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000) (emphasis added) (finding that the district court did not abuse its discretion in granting a motion to set aside the default); *see also Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986) (holding that a "decision on a motion to set aside a default is not an abuse of discretion unless the court is 'clearly wrong' in its determination of good cause").

To determine "good cause," a court will consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the moving party had a meritorious defense; and (3) whether reopening the default judgment would prejudice the other party. *United States v. Signed Personal Check No. 730 of Yubran Mesle,* 615 F.3d 1085, 1091 (9th Cir. 2010); *Joe Hand Promotions*, 2015 WL 592361 1 at *2 (internal citation omitted) *Brandt v.* American Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011) (setting forth same factors and affirming the district court's decision to grant insurer's motion to set aside default judgment).

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

In addition, "[t]he law does not favor defaults," and "therefore, any doubts as to whether a party is in default should be decided in favor of the defaulting party." *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995); *Pena v. Seguros La Comercial*, S.A., 770 F.2d 811,814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored.  Whenever it is reasonably possible, cases should be decided upon their merits."); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (holding same).

### 1.   Allianz Intervenors Did Not Engage In Culpable Conduct

In the Ninth Circuit, analysis of "culpability" for the purposes of demonstrating "good cause" under Rule 55(c) overlaps with the standard for "excusable neglect" under Rule 60(b)(l).  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001); *see also Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).  The Ninth Circuit finds a negligent failure to respond excusable if the defaulting party offers a credible, good-faith explanation for the delay that negates "any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697-98.

Here, Allianz Intervenors had no notice that DTSC sued C&A Products, LLC in the 2014 DTSC Action until the September 10, 2019 Arcina Letter.  Solomon Decl. ¶ 5, Exhibit B.  This was nearly four and a half (4.5) years after DTSC obtained a default against C&A Products, LLC on March 25, 2015. (ECF No. 126.)

Without knowledge of the DTSC Action or entry of default against C&A Products, LLC, Allianz Intervenors were not willful in failing to intervene and moving to vacate the default sooner.  When Allianz Intervenors learned of the default, they immediately engaged outside counsel to assist with intervention in the DTSC Action in order to protect Allianz Intervenors' interests as putative insurers for Wickes.  Solomon Decl. ¶ 7.  Allianz Intervenors submit these facts establish it did not engage in any culpable conduct.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

By comparison, the DTSC orchestrated the appointment of a Receiver for C&A Products, LLC, agreed to pay the receiver's costs, obtained an order from the Delaware Court of Chancery that expressly provided the Receiver was not obligated to defend C&A Products, LLC, obtained entry of default, sought entry of judgment thereon and then, and only then, did DTSC provide notice to Allianz Intervenors.  Given these facts, Allianz Intervenors request that the Court find no culpable conduct occurred within the meaning of Rule 55.

### 2.  Allianz Intervenors Have Meritorious Defenses To Assert Against DTSC in Favor Of C&A Products, LLC

The "meritorious defense" component of test for setting aside an entry of default pursuant to Rule 55(c) does not require that movant demonstrate likelihood of success on merits.  Rather, "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense .. . [at] the later litigation." *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (finding that good cause warranted setting aside default); *see also Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) (holding "[t]he 'meritorious defense' component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits.  Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense," and reversing the district court's denial of a motion to set aside default).  When "the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." *Mendoza*, 783 F.2d at 945-46 (finding that the district court did not err in setting aside the default).  The meritorious defense can be to the issue of liability or amount of damages. *See Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 354-55 (1st Cir. 1996) (holding that the defendants possessed a potentially meritorious defense that the figures upon which the default judgment

-22-

was premised were erroneous).

DTSC's essential claim against C&A Products, LLC is that C&A Products, LLC's alleged predecessors entered an operation and maintenance agreement in which they agreed to maintain the cap and operation of the ground water extraction and treatment system to treat contaminated groundwater. DTSC further alleges that after C&A Products Co. sought Chapter 11 bankruptcy, its successors in interest stopped remediating the Site. DTSC allegedly advanced the clean-up costs, and it now alleges, in its first claim for relief, that each of the defendants, including C&A Products, LLC is jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for DTSC's costs allegedly incurred in response to the alleged release or threatened release of hazardous substances at or from the Site. (ECF No. 77, ¶ 43.) DTSC also contends, in its second claim for relief, that under section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), DTSC is entitled to a declaratory judgment that each of the defendants, including C&A Products, LLC, is jointly and severally liable in any subsequent action or actions by the DTSC to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site. (ECF No. 77, ¶ 45.)

To establish a claim for recovery of response costs under Section 107(a), plaintiff must demonstrate:

> (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan,"; and (4) the defendants are in one of four classes of persons subject to the liability.

*Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (affirming the district court's decision that does not allow a party to recover its response cost for cleanup). CERCLA also contains a provision for declaratory relief. Section 9613(g)(2) provides that in any initial cost-recovery action under

-23-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

section 107, "the court shall enter a declaratory judgment on liability for response

costs or damages that will be binding on any subsequent action or actions to

recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

Moreover, C&A Products, LLC also has a meritorious defense to DTSC's

alleged amount of damages. In its June 7, 2018 letter, DTSC asserts that it has

unreimbursed response costs that exceed $3,400,000. (ECF No. 197, Exhibit A.)

This amount is disputed, and DTSC should be required to prove this amount. *See,

e.g., Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 11CV1277 BTM(WMc), 2012

WL 1570844, at *4 (S.D. Cal. May 3, 2012) (finding a meritorious defense where

defendants "estimate[d]" that the monetary sums contained in the complaint, upon

which plaintiff based its cause of action, were wrong; and explaining that

"[w]hether [d]efendants' figures are accurate need not be decided by the Court at

this time [because] [d]efendants have alleged sufficient facts to support a

potentially meritorious defense regarding the amount of damages").

Here, based in large part on the delayed notice of the DTSC Action, Allianz

Intervenors have not even been afforded the opportunity to review or rebut any

evidence DTSC may offer regarding response costs and the alleged consistency of

these costs with the National Contingency Plan (NCP). Without being provided the

ability to conduct discovery to which they would be entitled with respect to DTSC's

alleged costs (and potential inconsistency with the NCP), Allianz Intervenors will

be prevented from conducting the very investigation that could serve to provide a

meritorious defense to the instant action. It would be unfair to both C&A Products,

LLC and its putative insurers to enter judgment in favor of DTSC with respect to

these costs without allowing those parties potentially responsible for paying

DTSC's damages the ability to investigate or address whether these costs are

reasonable and consistent with the NCP.

Furthermore, C&A Products, LLC also has a meritorious defense to

prejudgment interest DTSC seeks. The Amended Complaint seeks interest on the

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1   response costs DTSC allegedly incurred from each defendant as provided under

2   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).  Prejudgment interest is only

3   available if DTSC demanded a sum certain from each defendant.  *See United States*

4   *v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003) (holding that

5   complaint was not sufficient to satisfy Section 107(a)'s written demand requirement

6   because it did not specify the specific amount sought from each defendant).

7          Here, C&A Products, LLC was added as a defendant to DTSC's Amended

8   Complaint in the DTSC Action on December 18, 2014, which named many

9   defendants.  C&A Products, LLC has a meritorious defense, under *Consolidation*,

10  that prejudgment interest is not available because DTSC's Amended Complaint was

11  not sufficient to satisfy Section 107(a)'s written demand requirement in that the

12  amount DTSC seeks from C&A Products, LLC is not specific enough.  Further,

13  even if DTSC is entitled to prejudgment interests, the amount is disputed, and

14  DTSC should be required to prove this amount at trial.

15         Finally, C&A Products, LLC has a meritorious defense to the attorney's fees

16  DTSC seeks.  Neither Section 107, the liabilities and defenses provision, nor

17  Section 113, which authorizes contribution claims, "expressly calls for the recovery

18  of attorney's fees by the prevailing party."  *See Key Tronic Corp. v. U.S.*, 511 U.S.

19  809, 817 (1994) (holding that litigation-related attorney's fees were not recoverable

20  in a CERCLA litigation).  Further, even if DTSC is entitled to attorney's fees, the

21  amount is disputed, and DTSC should be required to prove this amount at trial.

22         Since Allianz Intervenors have stated factual and cognizable defenses, they

23  have met the second requirement to vacate the entry of default in this action.  *See*

24  *Sosa v. Bridge Store, Inc.*, 1:10-CV-01494-OWW, 2011 WL 1332049, *3 (E.D.

25  Cal. Apr. 6, 2011) (holding that, that "[d]efendants have no obligation to prove

26  their contentions to establish a meritorious defense for purposes of being relieved

27  from an entry of default [and] [defendant's factual allegation . . . is an allegation

28  that will be tested for truth and accuracy later in the litigation.") (citations omitted).

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

-25-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ● FAX 310-481-7650

### 3.   DTSC Will Not Be Prejudiced By Setting Aside The Entry Of Default

Because relief from a default entry or judgment essentially is a matter of fairness and judicial discretion, the single most persuasive reason for denying a Rule 55(c) motion is prejudice to the non-defaulting party caused by reopening the action. *See Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3rd Cir. 1951); *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004); *O'Connor*, 27 F.3d at 364.  To be prejudicial, courts have determined that the setting aside of a judgment must result in greater harm than simply requiring plaintiff to try the case on the merits or delaying resolution of the case. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("the standard is whether [plaintiffs] ability to pursue his claim will be hindered"); *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion"); *Franchise Holding II*, 75 F.3d at 925-26; *O'Connor*, 27 F.3d at 364. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI*, 244 F.3d at 701 ; Utica, 2007 WL 32566485, at *3 (N.D. Cal. 2007) (granting request of insurer to vacate default judgment against insured and finding that delay in intervening and requesting to vacate default did not constitute prejudice before mere delay in entering judgment did not constitute prejudice).

DTSC would not be prejudiced if the Court vacated the default against C&A Products, LLC.  It cannot be disputed that Allianz Intervenors' first notice of this action was approximately one month ago, when it received the Arcina Letter.  In contrast, DTSC filed this action more than five years ago, and has not attempted to advance this litigation against C&A Products, LLC since 2015.  DTSC's ability to pursue its claims will not be hindered.  No discovery has been conducted, and

-26-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

1 DTSC has done nothing except for filing a complaint, obtaining a default, and filing

2 an application for a default judgment. No dispositive motions have been filed,

3 heard, and decided.

4 Furthermore, DTSC admits to having knowledge of C&A Products, LLC's

5 historic insurance in 2014 but failed to provide notice of the instant action to

6 Allianz Intervenors, as Allianz Intervenors only received notice of the action and

7 pending default on September 10, 2019. Since DTSC would not be prejudiced by

8 the Court's decision to vacate the entry of default of C&A Products, LLC, Allianz

9 Intervenors have also met the third requirement to vacate the entry of default in this

10 action.

11 **IV.    CONCLUSION**

12 For the foregoing reasons, Allianz Intervenors respectfully request that this

13 Court allow Allianz Intervenors to intervene in the instant lawsuit as putative

14 insurers of Wickes, alleged predecessor to underlying Defendant Collins & Aikman

15 Products, LLC ("C&A Products, LLC"), a cancelled Delaware limited liability

16 company, and to vacate the default against C&A Products, LLC.

17

18 DATED:  November 4, 2019          WOOD, SMITH, HENNING & BERMAN LLP

19

20

21 By:    _/s/ Stratton P. Constantinides_

22 THOMAS F. VANDENBURG
STRATTON P. CONSTANTINIDES

23 Attorneys for Proposed Intervenors Allianz
Underwriters Insurance Company, Chicago

24 Insurance Company, and Fireman's Fund
Insurance Company

25

26

27

28

ER-157

**WOOD, SMITH, HENNING & BERMAN LLP**
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE: 310-481-7600 ● FAX 310-481-7650

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On November 4, 2019, I served the following document(s) described as **ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 4, 2019, at Los Angeles, California.

*/s/ Christina Samayoa*
Christina Samayoa

-28-

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

ER-158

# SERVICE LIST

***California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,***
***United States District Court, Eastern District of California***
**Case No. 2:14-cv-0595-WBS-EFB**

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service) State Bar No. 161896
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-1299
Fax: (510) 622-2270
E-mail: Laura.Zuckerman@doj.ca.gov
**Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account**

Alexander Eugene Potente
Clyde & Co US LLP
101 2nd Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 365-9800
Fax: (415) 365-9801
Email: alex.potente@clydeco.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**Attorneys for Intervenor, THE TRAVELERS INDEMNITY COMPANY**

Brian M. Rostocki
Reed Smith LLP - Delaware
1201 Market Street - Suite 1500
Wilmington, DE 19801
**Registered Agent for C&A Products, LLC**

Sam M. Thorpe
Nicolaides Fink Thorpe Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3772
Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com
LEAD ATTORNEY
ATTORNEY 70 BE NOTICED
**Attorneys for the Intervenor, THE CONTINENTAL INSURANCE COMPANY**

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

ER-159

Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
Stratton P. Constantinides (State Bar No. 305103)
sconstantinides@wshblaw.com
**WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Phone: 310-481-7600 ♦ Fax: 310-481-7650

Attorneys for Proposed Intervenors Allianz Underwriters Insurance Company,
Chicago Insurance Company, and Fireman's Fund Insurance Company

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,,<br><br>Defendants.<br><br>AND RELATED CROSS-ACTIONS | Case No. 2:14-cv-0595-WBS-EFB<br><br>**DECLARATION OF JOEY D. SOLOMON IN SUPPORT OF ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT**<br><br>Date:        December 2, 2019<br>Time:        1:30 p.m.<br>Place:       Courtroom 5, 14th Floor<br>                 501 I Street<br>                 Sacramento, CA 95814<br><br>The Hon. William B. Shubb<br><br>Trial Date:        None Set |

## DECLARATION OF JOEY D. SOLOMON

I, Joey D. Solomon, declare as follows:

1.      I am a Claim Adjuster at Allianz Reinsurance America, Inc.  I am over

1  18 years of age.  I know the following facts to be true of my own knowledge, and if

2  called to testify, I could competently do so.

3      2.    My employer, Allianz Reinsurance America, Inc., handles legacy

4  claims involving insurance policies issued by Proposed Intervenors Allianz

5  Underwriters Insurance Company, Chicago Insurance Company, and Fireman's

6  Fund Insurance Company ("Allianz Intervenors").

7      3.    On November 13, 2014, DTSC filed a Petition for the Appointment of

8  a Receiver for C&A Products, LLC with the Delaware Court of Chancery, so that it

9  could add C&A Products, LLC to this action, obtain a judgment and bring direct

10  actions against that entities' historic insurers.  Attached hereto as **Exhibit "A"** is a

11  true and correct copy of the Verified Petition for the Appointment of a Receiver for

12  a Cancelled Limited Liability Company.

13      4.    On December 11, 2014, the California Department of Toxic Substances

14  Control and the Toxic Substances Control Account (collectively, "DTSC") filed its

15  First Amended Complaint in *California Department of Toxic Substances Control, et*

16  *al. v. Jim Dobbas, Inc., et al.*, United States District Court, Eastern District of

17  California, Case No. 2:14-cv-00595-WBS-EFB I ("DTSC Action"), in which it

18  named Collins & Aikman Products, LLC ("C&A Products, LLC").

19      5.    Allianz Intervenors were first notified of the DTSC Action by letter

20  dated September 10, 2019 from Arcina Risk Group ("Arcina Letter"), which was

21  nearly five (5) years after naming C&A Products, LLC in the DTSC Action.  The

22  Arcina Letter further served as Allianz Intervenors' first notice of the pending

23  Application for Default Judgment, which was then scheduled for September 25,

24  2019.  Attached hereto as **Exhibit "B"** is a true and correct copy of the September

25  10, 2019 Arcina Letter.

26      6.    On September 23, 2019, Allianz Intervenors sent a response and

27  acknowledgement letter to Arcina Risk Group.  Attached hereto as **Exhibit "C"** is a

28  true and correct copy of the September 23, 2019 Response Letter.

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

7.     Upon receipt of the September 10, 2019 Arcina Letter, Allianz
Intervenors promptly initiated a search for the insurance policies identified by
Arcina Risk, commenced an investigation regarding the claims at issue and engaged
outside counsel to assist with intervention in the DTSC Action in order to protect
Allianz Intervenors' interests as putative insurers for Wickes.

I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

Executed November 4, 2019, at Ipswich, Massachusetts.

Joey D. Solomon

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:05971-0074/13099274.1

-3-

DECLARATION OF JOEY D. SOLOMON IN SUPPORT OF MOTION TO INTERVENE AND TO VACATE
DEFAULT

# EXHIBIT A

EFiled: Nov 13 2014 01:09PM EST
Transaction ID 56332830
Case No. 10348-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE:                                          )
COLLINS & AIKMAN PRODUCTS, LLC,                 )      C.A. No. _____
a cancelled Delaware limited liability company  )

## VERIFIED PETITION FOR THE APPOINTMENT OF A RECEIVER FOR <br> A CANCELLED LIMITED LIABILITY COMPANY

Petitioner California Department of Toxic Substances Control, a California

state agency, on behalf of itself and California's Toxic Substances Control

Account (collectively "DTSC"), petitions for appointment of a receiver under 6

Delaware Code § 18-805 as follows:

### INTRODUCTION

1.    DTSC requests an order under the Delaware Limited Liability

Company Act (the "Act"), section 18-805 appointing a receiver for Collins &

Aikman Products, LLC (C&A Products LLC), a Delaware limited liability

company for which a Certificate of Cancellation was filed on or about August 28,

2013.  A true and correct copy of the Certificate of Cancellation attached as

Exhibit 1.

2.    DTSC petitions for appointment of a receiver to allow DTSC to add

C&A Products LLC as an additional defendant in a pending federal environmental

cost recovery case entitled *California Dept. of Toxic Substances Control, et al. v.*

*Jim Dobbas, Inc., et al.*, No. 2:14-cv-00595 (E.D. Cal., filed March 3, 2014)

1

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 157 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 6 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 2 of 9

(hereinafter *DTSC v. Dobbas*). A copy of the complaint in that case is attached as Exhibit 2.

3.      DTSC wants to add C&A Products LLC as a defendant in *DTSC v. Dobbas* as the first step in pursuing historic insurance coverage of C&A Products LLC for DTSC's costs of cleaning up a contaminated property in California. Under California law, a judgment against C&A Products LLC is necessary before DTSC can pursue a direct action against the company's historic insurers. DTSC seeks to add C&A Products LLC as a defendant in *DTSC v. Dobbas* to obtain such a judgment, which in turn would allow a direct action against the company's historic insurers. DTSC will not seek enforcement of the judgment directly against C&A Products LLC, but only as a means to pursue a direct action against the company's historic insurers. To ensure that C&A Products LLC has the capacity to be sued in *DTSC v. Dobbas*, DTSC requests that a receiver be appointed for the company under 6 *Del. C.* § 18-805.

## BACKGROUND

4.      DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code section 58000 et seq. It is responsible under California law for determining whether there has been, and for responding to, a release and/or threatened release of a hazardous substance into the environment. The Toxic Substances Control Account is an account within the

2

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 158 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 7 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 3 of 9

State of California General Fund that DTSC administers to help pay for
environmental cleanups.

5.      C&A Products LLC was formed on or about December 6, 2007, as a
conversion of the Delaware corporation Collins & Aikman Products Co.  Collins &
Aikman Products Co. was the successor by merger to the Delaware corporation
Collins & Aikman Group, Inc., which was formerly known as Wickes Companies,
Inc., and before that, The Wickes Corporation (collectively "Wickes").  True and
correct copies of the records evidencing this corporate history are attached as
Exhibit 3 through 7.

6.      From on or about September 12, 1979 through approximately 1982,
Wickes conducted wood preserving operations at an approximately 7.5 acre
property located northwest of the intersection of A Street and Holdener Road in the
community of Elmira, Solano County, California.  Wickes and its successor
Collins & Aikman Products Co. also owned the property from on or about
September 12, 1979 until on or about March 20, 1997.  The property has a street
address of 147 A Street, Elmira, Solano County, California 95625, and is referred
to herein as "the Site."

7.      At various times since on or about September 12, 1979, Wickes
and/or Collins & Aikman Products Co. released "hazardous substances" as defined
in the Comprehensive Environmental Response, Compensation, and Liability Act

3

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 159 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 8 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 4 of 9

of 1980 ("CERCLA") (42 U.S.C. section 9601(14)), into the environment at and

from the Site.  These hazardous substances included arsenic, chromium, and

copper, which were constituents of wood preserving chemicals that Wickes used at

the Site.  The releases of those hazardous substances, along with those of a prior

owner and operator of the Site (Pacific Wood Preserving), contaminated the soil

and groundwater.

       8.     Beginning in the 1980s, Wickes and Collins & Aikman Products Co.

took various actions under the oversight of DTSC and its predecessor agency to

address environmental contamination at, around, and/or beneath the Site.  Collins

& Aikman Products Co. sold the Site in 1997 to two other owners (Jim Dobbas,

Inc. and Continental Rail, Inc.), but continued to take those actions at the Site until

2005.  But in May 2005, Collins & Aikman Products Co. filed a Chapter 11

petition in the United States Bankruptcy Court for the Eastern District of Michigan,

Case No. 05-55932, and stopped taking actions to address contamination at,

around, and/or beneath the Site.  The two other owners of the Site also failed to

take the actions necessary to address that contamination.

       9.     From November 2005 to the present, DTSC has taken "response"

actions of the Site, as that term is defined in CERCLA (42 U.S.C. § 9601(25)),

related to the release and/or threatened release of hazardous substances at the Site.

DTSC incurred expenses taking response actions at the Site; DTSC's unpaid costs

4

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 160 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 9 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 5 of 9

related to the Site from November 2005 through September 2013 total
$2,202,176.92, exclusive of interest.  DTSC expects to continue incurring
additional response costs related to the release and/or threatened release of
hazardous substances at, beneath, and/or from the Site

## BANKRUPTCY STIPULATION

10.    In the Chapter 11 bankruptcy of Collins & Aikman Products Co., the
bankruptcy court preserved DTSC's ability to sue Collins & Aikman Products Co.
in state or federal court in the future, and obtain a judgment against the company to
allow DTSC to pursue a direct action against the company's past insurers
concerning the Site.  True and correct copies of the stipulation containing these
terms, and the bankruptcy court's order approving it, are attached as Exhibits 8 and
9, respectively.  The bankruptcy court ordered that the automatic stay and
injunction under the confirmed plan of reorganization for Collins & Aikman
Products Co. and other debtors be modified to permit DTSC to prosecute legal or
administrative actions against the debtors with respect to the Site, up to and
including the entry of judgment against the debtors, provided that no such
judgment may be collected against the debtors, the trusts created under the
confirmed plan, and each of their respective officers, directors, employees, agents
and attorneys.  Furthermore, the bankruptcy court ordered that DTSC may file
actions against the debtors to establish liability and to seek recovery of debtors'

5

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 161 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 10 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 6 of 9

insurance proceeds in any non-bankruptcy forums, whether administrative, or in

state or federal court, including in California, and none of the debtors could object

on the ground that such action is barred by the bankruptcy.  Ex. 8 at 6-8, ¶¶ 6-11;

Ex. 9 at 60, ¶ 114.

## BASIS FOR THIS PETITION

11.    Section  18-805 of the Act authorizes the Court of Chancery to

appoint a receiver for a cancelled Delaware limited liability company on

application of "any person who shows good cause therefor, at any time:"

> When the certificate of formation of any limited liability company
> formed under this chapter shall be canceled by the filing of a
> certificate of cancellation pursuant to § 18-203 of this title, the Court
> of Chancery, on application of any creditor, member or manager of
> the limited liability company, or any other person who shows good
> cause therefor, at any time, may either appoint 1 or more of the
> managers of the limited liability company to be trustees, or appoint 1
> or more persons to be receivers, of and for the limited liability
> company, to take charge of the limited liability company's property,
> and to collect the debts and property due and belonging to the limited
> liability company, with the power to prosecute and defend, in the
> name of the limited liability company, or otherwise, all such suits as
> may be necessary or proper for the purposes aforesaid, and to appoint
> an agent or agents under them, and to do all other acts which might be
> done by the limited liability company, if in being, that may be
> necessary for the final settlement of the unfinished business of the
> limited liability company. The powers of the trustees or receivers may
> be continued as long as the Court of Chancery shall think necessary
> for the purposes aforesaid.

6

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 162 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 11 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 7 of 9

12.     Here, there is good cause for appointment of a receiver for C&A
Products LLC.  DTSC seeks to add C&A Products LLC as an additional defendant
in *DTSC v. Dobbas*, as the first step in pursuing historic insurance coverage of
C&A Products LLC.  DTSC has information that such historic policies exist and
may not have been exhausted through other settlements or judgments in favor of
other claimants.  Therefore, these historic insurance policies may be a source of
payment for DTSC's response costs at the Site.

13.     Under California law, a judgment against an insured person or
company is generally necessary before a third party claimant can pursue a direct
action against the person's or company's insurer.  Cal. Ins. Code  § 11580(b)(2);
*Royal Indem. Co. v. United Enterprises, Inc.*, 162 Cal.App.4th 194, 205 (2008).
None of the limited exceptions to this rule applies here, and DTSC therefore must
obtain a judgment against C&A Products LLC for DTSC's response costs at the
Site before DTSC can pursue a direct action against C&A Products LLC's historic
insurers.  To do so, DTSC must first add C&A Products LLC as a defendant in
*DTSC v. Dobbas*.

14.     To add C&A Products LLC as a defendant in *DTSC v. Dobbas*, DTSC
must ensure that C&A Products LLC has the capacity to be sued in that case under
Federal Rule of Civil Procedure 17(b)(3).  Under Rule 17(b)(3), capacity to be
sued is generally determined "by the law of the state where the court is located,"

7

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 163 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 12 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 8 of 9

which for *DTSC v. Dobbas* is in California. California law provides that "The law of the state or other jurisdiction under which a foreign limited liability company [such as C&A Products LLC] is formed governs . . . [t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers." Cal. Corp. Code § 17708.01(a). Under this language and California's choice of law rules, Delaware law governs the capacity of a Delaware limited liability company to be sued in federal court in California. *Parker v. Dean Transportation, Inc.*, No. CV 13–02621, 2013 WL 7083269, *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014). Under Delaware law, a cancelled limited liability company may not be sued, unless a trustee or receiver is appointed under the procedure described in section 18-805 of the Act or the certificate of cancellation is nullified. 6 Del. C. § 18-803(b); *Matthew v. Laudamiel*, C.A. No. 5957–VCN, 2012 WL 605589, *21 (Del. Ch. Feb. 21, 2012). These authorities indicate that there is good cause to appoint a receiver, to ensure that C&A Products LLC has the capacity to be sued in *DTSC v. Dobbas*.

15.     Appointing a receiver for C&A Products LLC will not cause prejudice to the limited liability company. DTSC will not seek enforcement of any judgment directly against C&A Products LLC; in fact, the bankruptcy court stipulation and

8

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-3, Page 164 of 300
Case 2:14-cv-00595-WBS-JDP   Document 222-1   Filed 11/04/19   Page 13 of 22
Case 2:19-cv-01892-WBS-EFB   Document 1-2   Filed 09/18/19   Page 9 of 9

order described above prevent it.  DTSC only seeks such a judgment as a means to

pursue a direct action against the company's historic insurers.

16.    C&A Products LLC has no known assets apart from the historic

insurance policies referenced above.  Therefore, DTSC agrees to pay the

reasonable costs of the receiver appointed by the Court, unless and until an insurer

of C&A Products LLC begins defending the company.

WHEREFORE, DTSC respectfully requests that the Court enter an Order

pursuant to 6 *Del. C.* § 18-805, in the form filed herewith, appointing a receiver for

Collins & Aikman Products, LLC.

Dated: November 13, 2014              PINCKNEY, WEIDINGER, URBAN
                                      & JOYCE LLC


                                       */s/ Michael A. Weidinger*
                                      Michael A. Weidinger (DE No. 3330)
                                      1220 N. Market Street, Suite 950
                                      Wilmington, DE 19801
                                      Telephone:  (302) 504-1497
                                      Facsimile:   (302) 655-5123
                                      Email:        mweidinger@pwujlaw.com

                                      *Counsel for Petitioner*

9

# EXHIBIT B



**ARCINA**
R I S K   G R O U P

September 10, 2019

<u>**Via U.S. Mail and E-Mail**</u>
newlossnotice@ffic.com

Allianz Resolution Management
P.O. Box 13340
Sacramento, CA 95813

<u>**IMMEDIATE ATTENTION REQUIRED**</u>

| | | |
|---|---|---|
| Re: | Notice of Suit: | *California Department of Toxic Substances Control and the Toxic Substances Control Account v. Jim Dobbas, Inc., et al., U.S. District Court for the Eastern District of California, Civil Case No.* 2:14-595 WBS EFB Elmira Site Contamination – Solano County California |
| | Insured: | Wickes Corporation and Wickes Companies, Inc., et al |
| | Insurer(s): | Allianz Underwriters Insurance Co., Inc. Fireman's Fund Insurance Company |
| | Policy Numbers: | Allianz: AUX 5201182 for the period 5/1/1981 to 4/24/1982 Allianz: AUX 5201482 for the period 4/24/1982 to 4/24/1983 Allianz: AUX 5201083 for the period 4/24/1983 to 4/24/1984 Fireman's Fund: XLX 1620264 for the period 4/241984 to 7/24/1985 |

Dear Allianz Claims:

This letter is to tender and advise you of an Application for Default Judgment pending against your insured Collins and Aikman Products, LLC (C&A). C&A is the successor in interest to the Wickes Companies, Inc. and the Wickes Corporation. This tender is under the identified policies and any other applicable policies that the company may have issued to the Wickes Companies, Inc. or the Wickes Corporation.

Attached hereto please find the Amended Notice of Hearing, setting the hearing on September 25, 2019. The Application for Default Judgment and Memorandum of Points and Authorities are also attached hereto. The Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, DTSC) seek to recover $3,219,449.85 in unreimbursed public funds that DTSC has spent through May 31, 2019 under CERCLA, and a declaration that C&A is liable for DTSC's future response costs at the Elmira Site.

We understand that Travelers intends to seek to intervene in the matter.

835 Wilshire Blvd., Suite 400, Los Angeles, CA 90017  •  213.234.9575  •  arcinarisk.com

**ER-174**

Allianz Underwriters Insurance Co., Inc. and Fireman's Fund Insurance Company (Allianz)
*Re: Elmira Site*
September 10, 2019
Page 2


As per the policy terms and conditions, we request that you indemnify and defend your insured immediately.  Please direct any future correspondence and communication to the undersigned with copies to:

> Brian M. Rostocki  - Receiver for Collins & Aikman Products, LLC
> ReedSmith LLP
> 1201 Market Street, Suite 1500
> Wilmington, DE 19801
> brostocki@reedsmith.com

and

> Olivia W. Karlin
> Deputy Attorney General
> State of California Department of Justice
> 300 South Spring Street
> Los Angeles, CA 90013
> Olivia.Karlin@doj.ca.gov

We request that you contact us for additional information regarding the Elmira Site and pending application for a default judgment.

We continue to search for additional coverage for these matters.  **We kindly request you search your archives and underwriting materials and notify us of ANY information, including impairment, related to policies issued to the Wickes Corporation or Wickes Companies, Inc. with respect to the Elmira Site.**

**We also kindly ask that you provide us with copies of any policies, claims, files and underwriting materials in your possession immediately related to policies issued between 1979 and 1987.  Materials may be sent by email to rjanisch@arcinarisk.com or by mail.**

We look forward to hearing from you.

Sincerely,

Richard A. Janisch


RAJ/fr
Enclosures

cc:   brostocki@reedsmith.com
      Olivia.Karlin@doj.ca.gov
      msalem@arcinarisk.com

# EXHIBIT C



**Allianz Resolution Management®**

September 23, 2019

<u>SENT VIA EMAIL AND REGULAR MAIL</u>
rjanisch@arcinarisk.com

Richard Janisch
Arcina Risk Group LLC
835 Wilshire Blvd., Suite 400
Los Angeles, CA  90017

|  |  |
|---|---|
| Alleged Insured: | Wickes Corporation and Wickes Companies, Inc., et al |
| Claim No.: | |
| Site: | Elmira Site Contamination – Solano County California |
| Claimant/Suit: | California Department of Toxic Substances Control and the Toxic Substances Control Account v. Jim Dobbas, Inc., et al., U.S. District Court for the Eastern District of California, Civil Case No. 2:14-595 WBS EFB Elmira Site Contamination – Solano |

Dear Mr. Janisch,

This correspondence serves to acknowledge receipt of your letter of September 10, 2019, wherein you have requested that Chicago Insurance Company agree to defend and indemnify Collins and Aikman Products, LLC ("C&A") as the successor in interest to the Wickes Companies, Inc. and the Wickes Corporation in the above matter under policies 255 UO 32341 and 255 UO 33533.  Please note we are handling this matter on behalf of the Chicago Insurance Company, a Company of Allianz (referred herein as "Allianz").  Please send future communications regarding this matter to my attention.

We have initiated a search for copies of alleged policies 255 UO 32341 and 255 UO 33533, as well as any additional policies that may have been issued to Wickes Companies, Inc. or the Wickes Corporation by Allianz.  If you have copies of these alleged policies, or any secondary evidence of the issuance of these alleged policies to Wickes Companies, Inc. or the Wickes Corporation, please forward them to my attention at your earliest opportunity.  We will review any policies and/or secondary evidence, along with the facts and allegations associated with this claim, and advise you of C&A's rights to coverage, if any, for the above claim under the alleged policies.  If necessary, we may request additional information.

**Allianz Reinsurance America, Inc.**
1465 N. McDowell Blvd., Suite 100
Petaluma, CA 94954
USA

Allianz is in the process of evaluating our potential obligations to C&A under 255 UO 32341 and 255 UO 33533 with respect to this matter. In the interim, Allianz reserves all of its rights as to insurance coverage issues that may potentially arise from this matter, including the right to deny coverage entirely in the event that our investigation indicates that this loss is outside the scope of coverage provided under any policies.

While our policy search and investigation proceeds, we ask that you please provide us with a copy of the operative complaint in this suit as soon as possible:

Neither this letter nor our investigation into this matter should be construed to change, waive or modify any of the terms, conditions or provisions of the alleged and/or confirmed policies issued by Allianz to C&A. The acknowledgment of this matter and any further actions taken in regard to this matter are undertaken subject to a complete reservation of rights under the terms, conditions and provisions of any and all policies issued to C&A, and in law and equity. No action taken by Allianz shall constitute an admission of liability or coverage under any policies issued to or alleged to have been issued to C&A and should not be construed as a waiver of any rights or estoppel from asserting any right to disclaim or limit coverage under policies issued to C&A.

If you have any questions regarding this correspondence, or should you wish to discuss it further, please do not hesitate to contact the undersigned via direct dial at (415)899-3932 or via email at joey.solomon@allianzrm-us.com.

Sincerely,

Joey D. Solomon
Claims Specialist
Chicago Insurance Company

cc:                    VIA EMAIL ONLY

                       Brian M. Rostocki - Receiver for Collins & Aikman Products, LLC
                       ReedSmith LLP
                       1201 Market Street, Suite 1500
                       Wilmington, DE 19801
                       brostocki@reedsmith.com

                       and

                       Olivia W. Karlin
                       Deputy Attorney General
                       State of California Department of Justice
                       300 South Spring Street
                       Los Angeles, CA 90013
                       Olivia.Karlin@doj.ca.gov

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On November 4, 2019, I served the following document(s) described as **DECLARATION OF JOEY D. SOLOMON IN SUPPORT OF ALLIANZ UNDERWRITERS INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, AND FIREMAN'S FUND INSURANCE COMPANY'S MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 4 , 2019, at Los Angeles, California.

/s/ *Christina Samayoa*
Christina Samayoa

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1

**SERVICE LIST**

2

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*

3

**Case No. 2:14-cv-0595-WBS-EFB**

4

5 XAVIER BECERRA                          Alexander Eugene Potente
Attorney General of California           Clyde & Co US LLP

6 EDWARD H. OCHOA                         101 2nd Street, Suite 2400
Supervising Deputy Attorney General     San Francisco, CA 94105

7 OLIVIA W. KARLIN, State Bar No. 150432  Telephone: (415) 365-9800
LAURA J. ZUCKERMAN (Counsel for         Fax: (415) 365-9801

8 service) State Bar No. 161896           Email: alex.potente@clydeco.us
Deputy Attorneys General                 LEAD ATTORNEY

9 1515 Clay Street, 20th Floor            ATTORNEY TO BE NOTICED
Oakland, CA 94612                        **Attorneys for Intervenor, THE**

10 Telephone: (510) 879-1299              **TRAVELERS INDEMNITY**
Fax: (510) 622-2270                      **COMPANY**

11 E-mail: Laura.Zuckerman@doj.ca.gov
**Attorneys for Plaintiffs California**

12 **Department of Toxic Substances Control**
**and the Toxic Substances Control Account**

13

14 Brian M. Rostocki                       Sam M. Thorpe
Reed Smith LLP - Delaware                Nicolaides Fink Thorpe

15 1201 Market Street - Suite 1500         Michaelides Sullivan LLP
Wilmington, DE 19801                     101 Montgomery Street, Suite 2300

16 **Registered Agent for C&A Products, LLC** San Francisco, CA 94104
Telephone: (415) 745-3772

17                                         Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com

18                                         LEAD ATTORNEY
ATTORNEY 70 BE NOTICED

19                                         **Attorneys for the Intervenor,**
**THE CONTINENTAL**

20                                         **INSURANCE COMPANY**

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7500 ♦ FAX 310-481-7650

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                               ----oo0oo----

11

12   CALIFORNIA DEPARTMENT OF TOXIC          No. 2:14-CV-00595 WBS EFB
     SUBSTANCES CONTROL and the TOXIC
13   SUBSTANCES CONTROL ACCOUNT,

14             Plaintiffs,                   ORDER RE: MOTION TO INTERVENE
                                             AND SET ASIDE DEFAULT
15        v.

16   JIM DOBBAS, INC. a California
     corporation; CONTINENTAL RAIL,
17   INC., a Delaware corporation;
     DAVID VAN OVER, individually;
18   PACIFIC WOOD PRESERVING, a
     dissolved California
19   corporation; WEST COAST WOOD
     PRESERVING, LLC., a Nevada
20   limited liability company; and
     COLLINS & AIKMAN PRODUCTS, LLC,
21   a Delaware limited liability
     company,
22
               Defendants.
23

24                               ----oo0oo----

25          Plaintiffs Department of Toxic Substances Control and

26   the Toxic Substances Control Account (collectively "DTSC") sought

27   recovery of costs and interest incurred during the cleanup of a

28

                                       1

1  wood preserving operation in Elmira, California against multiple

2  defendants under the Comprehensive Environmental Response,

3  Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et

4  seq. (First Am. Compl. ("FAC") at ¶ 19.)  DTSC obtained an entry

5  of default against a canceled Delaware corporation, defendant

6  Collins & Aikman Products, LLC ("C&A Products") in 2015 after it

7  failed to respond to DTSC's First Amended Complaint. (Docket No.

8  129.)  Presently before the court is The Travelers Indemnity

9  Company's ("Travelers") motion to intervene as a defendant in

10  this matter and vacate default against its insured, C&A Products.

11  (Mot. to Intervene and Vacate Default ("Mot.") at 2 (Docket No.

12  196).)

13  I.   Motion to Intervene

14          Travelers seeks to intervene as of right or, in the

15  alternative, permissively under Federal Rule of Civil Procedure

16  Rule 24.  (Mot. at 6.)

17          In order to intervene as of right, the party must

18  demonstrate that it has an interest in the litigation and that

19  interest would be practically impaired if the intervention was

20  not granted.  Cal. Dep't. of Toxic Substances Control v.

21  Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir.

22  2002) (quoting United States v. State of Washington, 86 F.3d

23  1499, 1503 (9th Cir. 1996)).  Ordinarily, insurance companies do

24  not have an interest in actions between those they insure and

25  another party when they deny coverage and refuse to provide a

26  defense.  Gray v. Begley, 182 Cal. App. 4th 1509, 1522 (2d Dist.

27  2010).

28          However, "an insurer providing a defense under a

2

1  reservation of rights has not lost its right to control the

2  litigation" and thus retains an interest in the action.  Hyundai

3  Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. SACV

4  08-00020-JVS (RNBx), 2010 WL 11468348, at *3 (C.D. Cal. Oct. 26,

5  2010) (citing Gray, 182 Cal. App. 4th at 1523-24)).  Under

6  California law, where the insured defendant is "legally

7  incapacitated" because of suspension or cancelation, the insurer

8  can intervene in the action under a reservation of rights because

9  "if an insurer were unable to intervene . . . the insurer would

10 be deprived of any opportunity to 'contest its insured's fault or

11 the available damages.'"  B.G.N. Fremont Square Ltd. v. Chung,

12 No. CV 10-9749 GAF (RZx), 2011 WL 13129968, at *5 (C.D. Cal. Sep.

13 27, 2011) (citing APL Co. Pte. Ltd. v. Valley Forge Ins. Co., No.

14 C 09-05641 MHP, 2010 WL 1340373, at *4 (N.D. Cal. Apr. 5, 2010).

15      But here, Travelers has both disclaimed coverage and

16 any duty to defend C&A Products (See Decl. of Alexander E.

17 Potente ("Potente Decl.") at Exs. B & C (Docket Nos. 197-2, 197-

18 3)) and refused to provide a defense under a reservation of

19 rights.[1] (Decl. of Laura J. Zuckerman ("Zuckerman Decl.") at 2

20 (Docket No. 215-1).)  Accordingly, Travelers forfeited any direct

21 interest in the action and the court will not permit it to

22 intervene as of right.

23      Alternatively, permissive intervention may be granted

24 by the district court under its broad discretion.  Perry v.

25 Schwarzenegger, 630 F.3d 898, 905 (9th Cir. 2011) (per curiam).

26

27     [1]   DTSC offered to stipulate to Travelers' intervention if
   it provides a defense under a reservation of rights.  Travelers
28 refused.  (Zuckerman Decl. at 2.)

                                    3

1    Courts may consider the "nature and extent of the intervenors'

2    interest" and "whether intervention will prolong or unduly delay

3    the litigation." Id. at 905 (citing Spangler v. Pasadena Bd. of

4    Educ., 552 F.2d 1326, 1329 (9th Cir. 1977)). For the reasons

5    above, the court finds Travelers does not have an interest in

6    this litigation and its intervention would only serve to prolong

7    the action. The court will not permit Travelers to intervene

8    permissively, and the court will deny Travelers' motion to

9    intervene.

10   II.  Motion to Vacate Default

11           Under Federal Rule of Civil Procedure Rule 55(c), a

12   court may set aside an entry of default for good cause. To

13   determine good cause, a court will consider: (1) whether the

14   party seeking to set aside default engaged in culpable conduct

15   that led to the default; (2) whether the party had a meritorious

16   defense; and (3) whether reopening the default would prejudice

17   the other party. United States v. Signed Personal Check No. 730

18   of Yubran Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal

19   quotations omitted). "[A] finding that any one of these factors

20   is true is sufficient reason for the district court to refuse to

21   set aside the default." Id.

22           Looking to the Signed Personal Check No. 730 of Yubran

23   Mesle considerations, even if Travelers were permitted to

24   intervene, it has failed to establish good cause to set aside C&A

25   Products' default. First, although there is no claim that

26   Travelers itself engaged in any culpable conduct, the conduct of

27   its insured corporation, through its duly authorized receiver,

28   can be considered culpable. C&A Products was a Delaware limited

4

1    liability company.  Under Delaware law, a cancelled limited

2    liability company can be sued if the Delaware Court of Chancery

3    appoints a trustee or receiver for the company.  6 Del. C. § 18-

4    805.  The Court of Chancery's appointed receiver, Brian Rostocki,

5    had "the power, but not the obligation, to defend, in the name of

6    Collins & Aikman Products, LLC, any claims made against it in

7    DTSC v. Dobbas."  In re Collins & Aikman Prods., LLC, No. 10348-

8    CB, 2014 WL 6907689, at *1-2 (Del. Ch. Dec. 8, 2014) (Docket No.

9    73-1).  Mr. Rostocki accepted service of DTSC's First Amended

10   Complaint and failed to respond, leading to the entry of default.

11   (Docket No. 129.)

12          Second, Travelers has not offered or suggested any

13   meritorious defense that C&A Products would have to the complaint

14   if its default were set aside.  Travelers' disagreement with Mr.

15   Rostocki's decision not to respond does not rise to the level of

16   a "meritorious defense" necessary to show good cause.  Further,

17   the court expresses no opinion as to the merits of Travelers' own

18   declaratory relief action against DTSC, except to note that the

19   relief sought in that action would not constitute a defense which

20   C&A Products could assert to liability in this action.

21          Third, Travelers has failed to show that reopening the

22   default would not prejudice DTSC.  The harm here is "greater"

23   than "simply delaying the resolution of the case."  TCI Grp. Life

24   Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001),

25   overruled on other grounds by Egelhoff v. Egelhoff ex rel.

26   Breiner, 532 U.S. 141 (2001).  DTSC sought entry of default

27   against C&A Products in 2015.  Neither C&T Products nor Travelers

28   did anything to attempt to set aside that default for over three

5

1  years.   DTSC relied in good faith on that default and incurred

2  the litigation expenses associated with preparing and filing a

3  motion for entry of judgment on that default.   Accordingly, the

4  court will deny Travelers' motion to vacate entry of default.

5         IT IS THEREFORE ORDERED that Traveler's Motion to

6  Intervene and Motion to Vacate Default (Docket No. 196) be, and

7  the same thereby is, DENIED.

8  Dated:   October 22, 2019

9  WILLIAM B. SHUBB

10 UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**ER-187**

1 | Thomas F. Vandenburg (State Bar No. 163446)
tvandenburg@wshblaw.com
2 | Stratton P. Constantinides (State Bar No. 305103)
sconstantinides@wshblaw.com
3 | **WOOD, SMITH, HENNING & BERMAN LLP**
10960 Wilshire Boulevard, 18th Floor
4 | Los Angeles, California 90024-3804
Phone: 310-481-7600 ♦ Fax: 310-481-7650
5 |
6 | Attorneys for Proposed Intervenor Century Indemnity Company as successor to CCI Insurance Company as successor to Insurance Company of North America
7 |

10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650
Attorneys at Law
WOOD, SMITH, HENNING & BERMAN LLP

8 | # UNITED STATES DISTRICT COURT

9 | ## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

10 |

11 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,

12 |

13 |                  Plaintiffs,

14 |         v.

15 |

16 | JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,,

17 |

18 |

19 |

20 |

21 |                  Defendants.

22 |

23 | AND RELATED CROSS-ACTIONS

Case No. 2:14-cv-0595-WBS-EFB

**CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:        December 2, 2019
Time:        1:30 p.m.
Place:       Courtroom 5, 14th Floor
             501 I Street
             Sacramento, CA 95814

The Hon. William B. Shubb

Trial Date:        None Set

24 |

25 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

26 |         PLEASE TAKE NOTICE that on December 2, 2019, at 1:30 p.m., or as soon

27 | thereafter as the matter may be heard, in Courtroom 5 of the above Court, located at

28 | 14 Floor, 501 I Street, Sacramento, CA 95814, Proposed Intervenor CENTURY

LEGAL:10468-0108/12924886.1

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1  INDEMNITY COMPANY AS SUCCESSOR TO CCI INSURANCE COMPANY

2  AS SUCCESSOR TO INSURANCE COMPANY OF NORTH AMERICA

3  ("Century")  as a putative insurer of underlying Defendant Collins & Aikman

4  Products, LLC ("C&A Products, LLC"), a cancelled Delaware limited liability

5  company, as successor in interest to the Wickes Corporation and/or the Wickes

6  Companies, Inc., will move for an order permitting Century to intervene in the

7  above-captioned action, vacate default and oppose entry of judgment against C&A

8  Products, LLC.

9      This motion is made pursuant to Federal Rules of Civil Procedure, Rule 24,

10  on the grounds that Century has a direct interest in this litigation because C&A

11  Products, LLC is a cancelled Delaware limited liability company and lacks the

12  resources or capacity to defend itself in this matter, and because DTSC has

13  indicated that it seeks to recover any default judgment against putative insurers of

14  C&A Products, LLC.  Pursuant to Federal Rules of Civil Procedure, Rule 55(c),

15  good cause also exists to vacate the default taken by DTSC against C&A Products,

16  LLC.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1    This Motion is based upon this Notice, the accompanying Memorandum of

2  Points and Authorities, the concurrently filed Declaration of Natalie M. Jacobs, all

3  pleadings and papers on file in this action, and such other matters as may be

4  properly presented to the Court at the time of the hearing.

5  DATED:  October 17, 2019          WOOD, SMITH, HENNING & BERMAN LLP

6

7

8                                    By:  ___/s/ Stratton P. Constantinides___

9                                          THOMAS F. VANDENBURG
                                          STRATTON P. CONSTANTINIDES
10                                   Attorneys for Proposed Intervenor Century
                                     Indemnity Company as successor to CCI
11                                   Insurance Company as successor to Insurance
                                     Company of North America
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Century moves to intervene in this action to protect its interests as C&A Products, LLC's putative insurer and to vacate the default against C&A Products, LLC.  Any rulings or judgment made against C&A Products, LLC in this case may impact Century's obligations, if any, to DTSC, if DTSC becomes a judgment creditor of C&A Products, LLC.

C&A Products, LLC is a cancelled Delaware limited liability company against which DTSC has obtained entry of default.  As C&A Products, LLC's alleged putative insurer, as successor in interest to the Wickes Corporation and/or the Wickes Companies, Inc., Federal Rules of Civil Procedure, Rule 24(a) and substantive California law allow Century to intervene as a matter of right. Century's request is timely within the meaning of Rule 24(a), Century has a "significantly protectable" interest regarding C&A Products, LLC's exposure in this action, disposition of this action without intervention may impair Century's interest, and Century's interest is not represented by any party to the action.  Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to vacate the default taken by DTSC against C&A Products, LLC.  Century respectfully requests that this Court grant Century's motion to intervene and to vacate the default against C&A Products, LLC.

## II.    FACTUAL BACKGROUND

### A.    The Site And Potentially Responsible Parties

From 1972 until September 12, 1979, Pacific Wood Preserving conducted wood preserving operations at the property located at 147A Street, Elmira, California 95625 ("Site").  (ECF No. 77, ¶ 17.)[1]  In September 1979, Pacific Wood Preserving sold the Site and wood preserving business to The Wickes Corporation

---

[1] ECF Numbers referred to herein are references to pleadings within the above-entitled action.

LEGAL:10468-0108/12924886.1

-4-

ER-191

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  ("Wickes").  (ECF No. 77, ¶ 16.)  Wickes operated the Site from 1979 to 1982.  (Id)

2  Wickes and its successor Collins & Aikman Products Co. ("C&A Products Co."),

3  owned and operated the Site until March 20, 1997. (ECF No. 77, ¶¶ 15, 16.)  DTSC

4  claims C&A Products Co. became known as the defendant C&A Products, LLC on

5  December 6, 2007. (ECF No. 77,¶ 15.)

6      DTSC claims that during their respective wood preserving operations, Pacific

7  Wood Preserving and Wickes released hazardous substances, including arsenic,

8  chromium, and copper.  (ECF No. 77, ¶ 19.)  From the 1980s through 2005, DTSC

9  claims that Wickes and then C&A Products, Co. took responsive actions under

10 oversight of the DTSC and its predecessor agency to address environmental

11 contamination at the Site.  (ECF No. 77, ¶ 20.)  Those actions included soil

12 excavation, installing an asphalt cap over contaminated soils, constructing a

13 building and a drainage system over another contaminated area of the Site,

14 installing and operating a groundwater extraction and treatment system, and

15 groundwater monitoring.  (Id.)

16     In March 1996, DTSC and C&A Products Co. entered into the "Operation

17 and Maintenance Agreement," which certified implementation of the final remedial

18 action at the Site.  (ECF No. 23-3.)  C&A Products Co. agreed to perform soil

19 excavation and off-site disposal, install an asphalt cap, and conduct ground water

20 extraction and treatment in an on-site chemical treatment plant.  (ECF No. 23-3, ¶

21 7.A.) As part of the post-closure activities, C&A Products Co. was required to

22 continue to extract, treat, sample, and analyze ground water, sample and analyze

23 procedures associated with the on-site chemical treatment system and asphalt cap

24 from the Site.  (ECF No. 23-3, ¶ 12.A.)  On March 20, 1997, C&A Products Co.

25 allegedly sold the Site to defendants Jim Dobbas, Inc. and Continental Rail, Inc.,

26 while continuing to address environmental contamination at the Site. (ECF No. 77,

27 ¶ 22.)

28 / / /

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

**B.    Settlement Agreement Between C&A Products Co. and Century**

On April 12, 2000, C&A Products Co., corporate predecessor to C&A Products, LLC, entered into a settlement agreement to address certain outstanding litigation concerning coverage for environmental investigation and remediation activities at certain properties ("Confidential Settlement Agreement"), including the Site which serves as the subject of the DTSC Action.  Declaration of Natalie M. Jacobs ("Jacobs Declaration") ¶ 5.  The Confidential Settlement Agreement was effective April 13, 2000.  Jacobs Decl. ¶ 5.

Under the terms of the Confidential Settlement Agreement, Century made a settlement payment to C&A Products Co. which, in exchange for that payment, released Century from certain claims, including the claims DTSC has now asserted against C&A Products, LLC arising out of or relating to the Site.  Jacobs Decl. ¶ 5.  As part of the Confidential Settlement Agreement, C&A Products Co. dismissed its coverage actions against Century with prejudice.  Jacobs Decl. ¶ 5.

**C.    C&A Products Co.'s Bankruptcy And The Cessation Of Its Remedial Activities At The Site**

On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932, jointly administered with the bankruptcy cases of other debtors under Case No. 05-55927.  (ECF No. 77, ¶ 23.)  In the summer of 2005, while in Chapter 11 bankruptcy proceedings, C&A Products Co. stopped its remediation efforts.  (ECF No. 77, ¶ 24.)

In 2006, DTSC claims to have requested that Jim Dobbas, Inc. and Continental Rail, Inc., as the then owners of the Site, resume remediation efforts at the Site.  (ECF No. 77, ¶ 25.)  C&A Products, LLC was formed on or about December 6, 2007, as a conversion of the Delaware corporation Collins & Aikman Products Co.  (ECF No. 77, ¶ 15.)  In December 2007, after agreeing to perform certain remedial actions, Jim Dobbas, Inc. and Continental Rail, Inc. failed and

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1  refused to perform most of the actions formerly conducted by C&A Products Co. to

2  address contamination at the Site.  (ECF No. 77, ¶ 27.)  After Jim Dobbas, Inc. and

3  Continental Rail, Inc. sold the Site to defendant David Van Over in 2011, DTSC

4  allegedly issued an Imminent or Substantial Endangerment Determination Order

5  and Remedial Action Order requiring Jim Dobbas, Inc., Continental Rail, Inc., and

6  David Van Over to conduct additional remediation activities.  (ECF No. 77, ¶¶ 30-

7  31, and Ex. D.)  All three of those defendants allegedly failed to comply with these

8  orders.  (ECF No. 77, ¶ 32.)  As a result, the DTSC claims to have itself undertaken

9  the responsive actions to remediate the Site, thereby incurring unreimbursed

10 remediation costs.  (ECF No. 77, ¶¶ 33-36.)  Specifically, the response actions

11 DTSC claims to have taken included efforts to repair and restart the groundwater

12 extraction and treatment system, completion of a remedial investigation for site

13 soils, preparation of the "Removal Action Workplan," implementation of the that

14 plan in October and November 2011, and groundwater monitoring.  (ECF No. 77, ¶

15 33.)

16        **D.    The DTSC's 2014 Action Under CERCLA**

17        On March 3, 2014, the DTSC filed the present action (the "DTSC Action"),

18 seeking cost recovery under CERCLA, 42 U.S.C. § 9607, declaratory relief under

19 CERCLA, 42 U.S.C. § 9613(g), and damages, injunctive relief, and civil penalties

20 under the Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300,

21 *et seq*. against potentially responsible parties at the Site.

22        On December 8, 2014, Delaware Court of Chancery appointed Brian

23 Rostocki the receiver for C&A Products, LLC "for the limited purpose of allowing

24 Collins & Aikman Products, LLC to be sued [in the DTSC Action], and with the

25 power, but not the obligation, to defend, in the name of Collins & Aikman

26 Products, LLC, any claims made against it [in the DTSC Action]."  *See In re*

27 *Collins & Aikman Prods., LLC*, No. 10348-CB, 2014 WL 6907689, *1-2 (Del. Ch.

28 Dec. 8, 2014).   As receiver, Mr. Rostocki "act[ed] as registered agent in the State

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1 of Delaware for service of process on Collins & Aikman Products, LLC, including,

2 without limitation, for service of process [in the DTSC Action].  *Id*. at * 1.

3       On December 11, 2014, DTSC filed its First Amended Complaint (the

4 "Amended Complaint") against C&A Products, LLC and other potentially

5 responsible parties in the DTSC Action. DTSC served Mr. Rostocki with the

6 Amended Complaint, and C&A Products, LLC did not respond or appear.  Century

7 received no notice of the original or Amended Complaint or service of the

8 Amended Complaint when it was filed and served on C&A Products, LLC.

9       DTSC took the defaults of Continental Rail, Inc. and Pacific Wood

10 Preserving on June 2, 2014.  (ECF Nos. 18 and 19.)  On March 25, 2015, without

11 notice to Century, DTSC took the default, under Federal Rules of Civil Procedure,

12 Rule 55(a), of C&A Products, LLC for having failed to answer the complaint in the

13 DTSC Action.  (ECF No. 126.)  On March 26, 2015, the clerk entered default

14 against C&A Products, LLC in the DTSC Action.  (ECF No. 129.)  Likewise,

15 Century did not receive notice of such default at that time.

16       DTSC then settled with defendants West Coast Wood Preserving for

17 $350,000, Jim Dobbas, Inc., for $265,000, and David Van Over for $250,000,

18 entering into public settlements and consent decrees with each of them.  (ECF No.

19 185, p. 10 of 21, ECF No. 141, ¶¶ 13, 23; ECF No. 150, ¶¶ 12, 22.; ECF No. 182,

20 ¶¶ 12, 25.)  The Court approved these consent decrees on September 16, 2015,

21 November 18, 2015, and March 28, 2018, respectively, again all long before

22 Century received notice of the DTSC Action.  (ECF Nos. 141, 150, 182.)

23       DTSC never provided notice to Century of the DTSC Action or the March

24 25, 2015 entry of default against C&A Products, LLC.  Jacobs Decl. ¶ 4.  Century

25 was first provided notice of the DTSC Action, including a tender of defense and

26 indemnity, in a September 10, 2019 letter from Arcina Risk Group ("Arcina

27 Letter"), which was nearly five (5) years after naming C&A Products, LLC in the

28 DTSC Action.  Jacobs Decl. ¶ 4, Exhibit A.  The Arcina Letter further served as

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1  Century's first notice of the pending Application for Default Judgment, scheduled

2  for September 25, 2019.  Jacobs Decl. ¶ 4, Exhibit A.  After receiving this letter,

3  Century promptly engaged outside counsel to assist with intervention in the DTSC

4  Action in order to protect Century's interests as putative insurer for C&A Products,

5  LLC.  Jacobs Decl. ¶ 4.

6  On August 21, 2019, DTSC moved for application for entry of default

7  judgment against C&A Products, LLC. (ECF No. 184.)  DTSC served the

8  application for entry of default judgment against C&A Products, LLC on Rostocki,

9  but neither it nor Rostocki notified Century of the application.  Century, which only

10  recently learned of this application for entry of default judgment by THE

11  September 10, 2019 Arcina Letter, is now submitting this motion to intervene

12  without delay.

## III.  LEGAL ARGUMENT

### A.  As Putative Insurer Of C&A Products, LLC, Century Is Entitled To Intervene As A Matter Of Right To Protect Its Own Interests

17  Federal Rule of Civil procedure 24(a) provides the criteria for intervention as

18  a matter of right, and it allows for intervention here because DTSC likely intends to

19  attempt to have Century pay any judgment against C&A Products, LLC:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

24  Fed. R. Civ. P. 24(a).

25  As an alleged putative insurer of C&A Products, LLC, Century can establish

26  the four elements needed for intervention as a matter of right:

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass 'n*, 647 F.3d 893, 897 (9th Cir. 2011) (reversing district court's denial of intervention in the ongoing litigation because the proposed intervenor satisfied the four elements for intervention as of right under Fed. R. Civ. P. 24(a)).  In determining whether to permit intervention, a court is "guided primarily by practical considerations, not technical distinctions," and "the requirements are broadly interpreted in favor of intervention."  *Citizens for Balanced Use*, 647 F.3d at 897 (emphasis added).

### 1.   <u>Century's Motion To Intervene Is Timely</u>

Century's motion to intervene is timely.  DTSC has merely taken C&A Products, LLC's default.  DTSC has not otherwise advanced this litigation, and DTSC utterly failed to notify Century of the DTSC Action or of the default.  In fact, Century was not notified of the DTSC Action until nearly five (5) years after its filing, and was not notified of the entry of default against C&A Products, LLC until four and a half (4.5) years after entry, via the September 10, 2019 Arcina Letter.  This notice did <u>not</u> come from DTSC, who has never contacted Century regarding the pending DTSC Action.

In deciding whether a movant's motion is timely, the Ninth Circuit considers the following three factors: (1) the stage of the proceeding; (2) whether the parties would be prejudiced; and (3) the reason for the delay, if any, in moving to intervene.  *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).  The mere lapse of time alone does not necessarily preclude intervention. *See U.S. v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) (holding that although the underlying action "had been underway for nearly twenty years when [the intervenor] sought to intervene, <u>the length of time that has passed since a suit was filed does not alone determine timeliness</u>") (emphasis added).  Timeliness is to "be determined from all the circumstances," and is in the court's "sound discretion."

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   *NAACP v. New York*, 413 U.S. 345, 366 (1973).

2   Furthermore, DTSC has not materially advanced this action against C&A

3   Products, LLC; it has merely filed a complaint, sought default, and filed an

4   application for a default judgment against C&A Products, LLC.  *Utica Mut. Ins.*

5   *Co. v. Hamilton Supply Co.*, No. C 06-07846 SI, 2007 WL 3256485 (N.D. Cal.

6   Nov. 5, 2007) supports Century's position.  That, "although default was entered

7   against [the insured] prior to the [insurer's] application to intervene," the court

8   found that "this is not dispositive" because "plaintiff would suffer little to no

9   prejudice if the Court were to grant [insurer's] motion to intervene because plaintiff

10  has done little up to this point other than file a motion for default judgment."  *Id.* at

11  \*3 - 4.

12  Moreover, no discovery has been conducted against C&A Products, LLC,

13  nor have any dispositive motions been filed, heard, and decided.  DTSC has taken

14  no discovery and has not proven the merits of any its claims against C&A Products,

15  LLC.  Century's intervention would therefore not "prejudice" DTSC within the

16  meaning of Rule 24, as intervention would merely require DTSC to prove its claims

17  against C&A Products, LLC.  This does not create "prejudice" under Rule 24.  *See*

18  *Utica*, 2007 WL 3256485 at \*5 (holding that an insurer's intervention on behalf of

19  an insured and setting aside an entry of default did not prejudice plaintiff "in any

20  meaningful way" under Rule 24 because granting insurer's motion to intervene

21  "will not hamper discovery," which had not yet commenced).

22  Likewise, although DTSC filed suit on March 3, 2014, and named C&A

23  Products, LLC as a defendant in the DTSC Action on December 11, 2014, <u>DTSC</u>

24  <u>did not, at any time, provide notice</u> of suit and entry of default against C&A

25  Products, LLC to Century.  Jacobs Decl. ¶ 4.  As described above, Century did not

26  receive notice of the DTSC Action, March 2015 entry of default, and pending

27  Application for Entry of Default against C&A Products, LLC until the September

28  10, 2019 Arcina Letter.  Jacobs Decl. ¶ 4, Exhibit A.  After receiving notice of the

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1   default, Century promptly engaged outside counsel to protect Century's interests

2   and prepare the instant Motion to Intervene.  Jacobs Decl. ¶ 4.

3     Without notice to Century, on August 21, 2019, DTSC filed an application

4   for entry of default judgment against C&A Products, LLC.  (ECF No. 184.)

5   Century now moves to intervene. Under the liberal standard for intervention of

6   right under Rule 24, Century's motion to intervene is timely.

7       **2.**   <u>**Century Has A Significant Protectable Interest**</u>

8     To warrant intervention as of right, Century must have a significant

9   protectable interest relating to the property or transaction that is the subject of the

10  action.  *See Citizens for Balanced Use*, 647 F.3d at 897 (holding that "[t]o

11  demonstrate a significant protectable interest, an applicant must establish that the

12  interest is protectable under some law and that there is a relationship between the

13  legally protected interest and the claims at issue") (reversing district court's denial

14  of intervention in the ongoing litigation).  An applicant for intervention has a

15  significantly protectable interest if "the interest is protectable under some law, and

16  there is a relationship between the legally protected interest and the claims at

17  issue*." Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th

18  Cir. 2001) (reversing district court's denial of motion for intervention).

19    Century has a significant protectable interest in the property and transaction

20  that are the subject matter of this litigation.  Although default has been entered,

21  judgment has not yet been entered against C&A Products, LLC.  If Century is not

22  allowed to intervene into this DTSC Action, Century expects that DTSC will seek

23  to enforce its judgment against Century under Insurance Code Sec. 11580, as it has

24  communicated to other putative insurers of C&A Products, LLC.  (ECF No. 197,

25  Exhibit D.)  Under such circumstances, both California and federal courts allow

26  insurers to intervene.  *See Reliance Ins. Co. v. Superior Court*, 84 Cal.App.4th 383,

27  386-87 (2000) (reversing trial court's refusal to allow insurer to intervene to vacate

28  default of insured reasoning, "where the insurer may be subject to a direct action

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12924886.1

-12-

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1  under Insurance Code section 11580 by a judgment creditor who has or will obtain

2  a default judgment in a third party action against the insured, intervention is

3  appropriate" and noting the "insurer may either intervene in that action prior to

4  judgment or move under Code of Civil Procedure section 473 to set aside the

5  default judgment."); *Utica*, 2007 WL 3256485, at *3 (permitting insurer proceeding

6  under reservation of rights to preserve its coverage defenses to intervene under

7  Rule 24 and granting request of insurer to vacate default judgment against insured);

8  *B.G.N. Fremont Square LTD. v. Chung*, CV 10-9749 GAP (RZx), 2011 WL

9  13129968, *4 (C.D. Cal. Sep. 27, 2011) (holding, "[i]n short, California law

10  provides that an insurer has a protectable interest in litigation brought against its

11  suspended insured, that its failure to intervene could subject it to liability for default

12  judgment subject to any coverage defenses that it may have, and that it can

13  intervene without waiving those coverage defenses by giving notice of its

14  reservation of rights.").

15      Allowing Century to intervene now avoids Century from having to challenge

16  the default judgment after it is entered, reducing inefficient and duplicative

17  litigation between DTSC and Century.  *See U.S. v. City of Los Angeles*, 288 F.3d

18  391, 398 (9th Cir. 2002) ("By allowing parties with a practical interest in the

19  outcome of a particular case to intervene, we often prevent or simplify future

20  litigation involving related issues …"); *Kaufman & Broad Communities, Inc. v.*

21  *Performance Plastering, Inc.*, 136 Cal. App. 4 212, 216 (2006) (holding that an

22  insurer must intervene or challenge the default judgment after it is entered to

23  protect its interest or risk waiver of such a challenge).  Allowing Century to

24  intervene now also allows it to challenge the default under the more liberal standard

25  to vacate a default under Fed. R. Civ. Proc. 55(c), as opposed to vacating a default

26  judgment under Fed. R. Civ. Proc. 60.[2]  Under California law, both fairness and

27

28  [2] The Ninth Circuit applies a "good cause" standard for vacating both an entry of default under Rule 55(c) and for

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12924886.1
-13-
CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1   efficiency dictate that Century be allowed to intervene in this action and defend its

2   interests against any potential judgment DTSC seeks against C&A Products, LLC

3   as DTSC may intend to enforce any such judgment against C&A Products, LLC's

4   putative insurers.  (ECF No. 197, Exhibit D.)

5          **3.      Century's Interests May Be Impaired If Intervention Is Not**

6   **Permitted**

7          It is Century's position that the Confidential Settlement Agreement applies to

8   DTSC's claims.  However, in the event that DTSC is able to establish coverage

9   under Century's alleged policies of insurance, Century's interests would be

10  significantly impaired if it were not allowed to intervene in this DTSC Action

11  because it would be potentially liable for any judgment against C&A Products,

12  LLC.  "A party has a sufficient interest for intervention purposes if it will suffer a

13  practical impairment of its interests as a result of the pending litigation."  *City of*

14  *Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010).

15         As a proposed intervenor, Century "must show only that impairment of its

16  substantial legal interest is possible if intervention is denied.  This burden is

17  minimal."  *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th

18  Cir. 2009) (emphasis added); *see also Citizens for Balanced Use*, 647 F.3d at 898

19  (the standard is whether "the disposition of this action may, as a practical matter,

20  impair or impede Applicants' ability to protect their interest [and] '[i]f an absentee

21  would be substantially affected in a practical sense by the determination made in an

22  action, he should, as a general rule, be entitled to intervene …'") (emphasis added).

23  _____

24  vacating a default judgment under Rule 60(b), but the test for setting aside entry of default is less rigid and is more
    generous to the party in default.  *See U.S. Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX,*

25  *Corp.*, No. SACV 10-1876 DOC (RNBx), 2011 WL 4946810 at *1, 2 (C.D. Cal. Oct. 17, 2011) (granting motion to
    set aside entry of default, reasoning that "[t]he 'good cause' standard under Rule 55(c) is an easier burden for the
    allegedly defaulting party than the excusable neglect standard required to obtain relief from default judgment under

26  Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*, No. 15-CV-00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep.
    12, 2016) (granting motion to vacate entry of default, reasoning " '[W]hile the same test applies for motions seeking

27  relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c)
    context,' as where no judgment has been entered, 'there is no interest in the finality of the judgment with which to

28  contend'").

LEGAL:10468-0108/12924886.1

-14-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

Again, if DTSC obtains a judgment against C&A Products, LLC, it may try to enforce that judgment against Century if DTSC establishes coverage under Century's alleged policies of insurance, in which case Century will not be able to challenge the existence or amount of the judgment.  Accordingly, Century should be allowed to intervene.

### 4.  The Existing Parties Do Not Represent Century's Interests

Century also satisfies the fourth requirement for intervention of right.  None of the parties present in this action represent Century's interests.  In determining adequacy of representation, courts consider the following factors in assessing adequate representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (noting, "[t]he 'most important factor' in assessing the

adequacy of representation is 'how the interest compares with the interests of existing parties'").

The existing parties do not represent Century's interests.  DTSC is adverse to Century and C&A Products, LLC. C&A Products, LLC has no assets and made no effort to defend itself, let alone even appear.  Furthermore, as noted above, DTSC has represented that it "will not seek enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a direct action against the company's historic insurers."  (ECF No. 197, Exhibit D.)

### B.  Alternatively, Century Should Be Permitted To Intervene Pursuant To Rule 24(b)

If the Court determines that Century is not entitled to intervene as a matter of right, the Court should nonetheless exercise its discretion to allow Century to intervene under Rule 24(b) which allows a permissive intervention. Rule 24(b)

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12924886.1

-15-

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1 | provides:

2 |     **(b) Permissive Intervention.** (1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

6 | Fed R. Civ. P. 24(b) (emphasis added).

7 |     Here, Century's defense for entry of judgment against C&A Products, LLC and DTSC's claims against C&A Products, LLC share common questions of law and fact.  DTSC seeks to establish C&A Products, LLC's liability in the DTSC Action.  Century seeks to challenge C&A Product, LLC's liability and the amount of the proposed judgment.  As such, Century fulfills the threshold requirement for the Court to allow Century's permissive intervention under Rule 24(b).

13 |     **C.**    **<u>Century Has Shown Good Cause To Vacate The Entry Of Default</u>**

14 |     Rule 55 provides that a "court may set aside an entry of default for good cause . ..." Fed. R. Civ. Pro. 55(c).  The Ninth Circuit's good cause standard for vacating entry of default is the same as that for vacating default judgments under Rule 60(b), but the test for vacating an entry of default is much less rigid and is more generous to the party in default. *See Joe Hand Promotions, Inc. v. Williams*, No. 2:14-cv-02663-JAM-AC, 2015 WL 5923611 at * 2 (E.D. Cal. Oct. 9, 2015) (granting motion to set aside the entry of default and default judgment, reasoning that "'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'"); *U.S. Commodity Futures Trading Corn 'n v. American Bullion Exchange ABEX, Corp.*, No. SACV 10-1876 DOC (RNBx), 2011 WL 4946810 at * 1 -2 (C.D. Cal. Oct. 17, 2011) (granting a motion to set aside entry of default, reasoning that "[t]he 'good cause' standard under Rule 55(c) is an easier burden for the allegedly defaulting party than the excusable neglect standard required to obtain relief from default judgment under Rule 60(b)"); *E.Digital Corporation v. Ivideon LLC*, No. 15-cv-

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  00691-JST, 2016 WL 4728550 at *1 (N.D. Cal. Sep. 12, 2016) (granting motion to

2  vacate entry of default, reasoning " '[W]hile the same test applies for motions

3  seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test

4  is more liberally applied in the Rule 55(c) context,' as where no judgment has been

5  entered, 'there is no interest in the finality of the judgment with which to contend'").

6       In evaluating relief from an entry of default against C&A Products, LLC, the

7  "court's discretion is 'especially broad'" to grant relief.  *Brady v. U.S.*, 211 F.3d 499,

8  504 (9th Cir. 2000) (emphasis added) (finding that the district court did not abuse

9  its discretion in granting a motion to set aside the default); *see also Mendoza v.*

10 *Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986) (holding that a

11 "decision on a motion to set aside a default is not an abuse of discretion unless the

12 court is 'clearly wrong' in its determination of good cause").

13      To determine "good cause," a court must "consider [ ] three factors: (1)

14 whether [the party seeking to set aside the default] engaged in culpable conduct that

15 led to the default; (2) whether [the moving party] had [no] meritorious defense; or

16 (3) whether reopening the default judgment would prejudice the other party".  *Joe*

17 *Hand Promotions*, 2015 WL 592361 1 at *2 (internal citation omitted) Brandt v.

18 American Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011) (setting

19 forth same factors and affirming the district court's decision to grant insurer's

20 motion to set aside default judgment).

21      In addition, "[t]he law does not favor defaults," and "therefore, any doubts as

22 to whether a party is in default should be decided in favor of the defaulting party."

23 *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995); *Pena v.*

24 *Seguros La Comercial*, S.A., 770 F.2d 811,814 (9th Cir. 1985) ("[D]efault

25 judgments are generally disfavored.  Whenever it is reasonably possible, cases

26 should be decided upon their merits."); *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th

27 Cir. 1994) (holding same).

28 / / /

LEGAL:10468-0108/12924886.1
CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT
ER-204

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

### 1.   Century Did Not Engage In Culpable Conduct

In the Ninth Circuit, analysis of "culpability" for the purposes of demonstrating "good cause" under Rule 55(c) overlaps with the standard for "excusable neglect" under Rule 60(b)(l).  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001); *see also Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987).  The Ninth Circuit finds a negligent failure to respond excusable if the defaulting party offers a credible, good-faith explanation for the delay that negates "any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *TCI*, 244 F.3d at 697-98.

Here, Century had no notice that DTSC sued C&A Products, LLC in the 2014 DTSC Action until the September 10, 2019 Arcina Letter.  Jacobs Decl. ¶ 4. This was nearly four and a half (4.5) years after DTSC obtained a default against C&A Products, LLC on March 25, 2015. (ECF No. 126.)

Without knowledge of the DTSC Action or entry of default against C&A Products, LLC, Century was not willful in failing to intervene and moving to vacate the default sooner.  When Century learned of the default, it immediately engaged outside counsel to assist with intervention in the DTSC Action in order to protect Century's interests as putative insurer for C&A Products, LLC.  Jacobs Decl. ¶ 4, Exhibit A.  Given these facts, Century has not engaged in "culpable conduct" within the meaning of Rule 55.  Century has not sought to take unfair advantage of DTSC or to interfere with or otherwise to manipulate the judicial decision-making process.

### 2.   Century Has A Meritorious Defense To Assert Against DTSC in Favor Of C&A Products, LLC

The "meritorious defense" component of test for setting aside an entry of default pursuant to Rule 55(c) does not require that movant demonstrate likelihood of success on merits.  Rather, "[a]ll that is necessary to satisfy the 'meritorious

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  defense' requirement is to allege sufficient facts that, if true, would constitute a

2  defense .. . [at] the later litigation." *U.S. v. Signed Personal Check No. 730 of*

3  *Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (finding that good cause

4  warranted setting aside default); *see also Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir.

5  1989) (holding "[t]he 'meritorious defense' component of the test for setting aside a

6  default does not go so far as to require that the movant demonstrate a likelihood of

7  success on the merits.  Rather, a party's averments need only plausibly suggest the

8  existence of facts which, if proven at trial, would constitute a cognizable defense,"

9  and reversing the district court's denial of a motion to set aside default).  When "the

10  movant has a meritorious defense, doubt, if any, should be resolved in favor of the

11  motion to set aside the default so that cases may be decided on their merits."

12  *Mendoza*, 783 F.2d at 945-46 (finding that the district court did not err in setting

13  aside the default).  The meritorious defense can be to the issue of liability or

14  amount of damages. *See Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74

15  F.3d 349, 354-55 (1st Cir. 1996) (holding that the defendants possessed a

16  potentially meritorious defense that the figures upon which the default judgment

17  was premised were erroneous).

18  DTSC's essential claim against C&A Products, LLC is that C&A Products,

19  LLC's alleged predecessors entered an operation and maintenance agreement in

20  which they agreed to maintain the cap and operation of the ground water extraction

21  and treatment system to treat contaminated groundwater.  DTSC further alleges that

22  after C&A Products Co. sought Chapter 11 bankruptcy, its successors in interest

23  stopped remediating the Site.  DTSC allegedly advanced the clean-up costs, and it

24  now alleges, in its first claim for relief, that each of the defendants, including C&A

25  Products, LLC is jointly and severally liable, without regard to fault, under section

26  107(a) of CERCLA, 42 U.S.C. section 9607(a), for DTSC's costs allegedly incurred

27  in response to the alleged release or threatened release of hazardous substances at

28  or from the Site.  (ECF No. 77, ¶ 43.)  DTSC also contends, in its second claim for

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  relief, that under section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2),

2  DTSC is entitled to a declaratory judgment that each of the defendants, including

3  C&A Products, LLC, is jointly and severally liable in any subsequent action or

4  actions by the DTSC to recover any further costs incurred in response to the release

5  and/or threatened release of hazardous substances into the environment at or from

6  the Site.  (ECF No. 77, ¶ 45.)

7        To establish a claim for recovery of response costs under Section 107(a),

8  plaintiff must demonstrate:

9        (1) the property at issue is a "facility" as defined in 42 U.S.C. §
    9601(9); (2) a "release" or "threatened release" of a "hazardous
10   substance" has occurred; (3) the "release" or "threatened release" has
    caused the plaintiff to incur response costs that were "necessary" and
11   "consistent with the national contingency plan,"; and (4) the defendants
    are in one of four classes of persons subject to the liability.

12  *Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir.

13  2006) (affirming the district court's decision that does not allow a party to recover

14  its response cost for cleanup).  CERCLA also contains a provision for declaratory

15  relief.  Section 9613(g)(2) provides that in any initial cost-recovery action under

16  section 107, "the court shall enter a declaratory judgment on liability for response

17  costs or damages that will be binding on any subsequent action or actions to

18  recover further response costs or damages."  42 U.S.C. § 9613(g)(2).  Here, based

19  in large part on the delayed notice of the DTSC Action (which was not even

20  provided by DTSC, but by another entity), Century has not even been afforded the

21  opportunity to review or rebut any evidence submitted by DTSC regarding response

22  costs and the alleged consistency of these costs with the National Contingency Plan

23  (NCP).

24        Moreover, C&A Products, LLC also has a meritorious defense to DTSC's

25  alleged amount of damages.  In its June 7, 2018 letter, DTSC asserts that it has

26  unreimbursed response costs that exceed $3,400,000.  (ECF No. 197, Exhibit A.)

27  This amount is disputed, and DTSC should be required to prove this amount.  *See,*

28

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   *e.g., Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 11CV1277 BTM(WMc), 2012

2   WL 1570844, at *4 (S.D. Cal. May 3, 2012) (finding a meritorious defense where

3   defendants "estimate[d]" that the monetary sums contained in the complaint, upon

4   which plaintiff based its cause of action, were wrong; and explaining that

5   "[w]hether [d]efendants' figures are accurate need not be decided by the Court at

6   this time [because] [d]efendants have alleged sufficient facts to support a

7   potentially meritorious defense regarding the amount of damages").

8   Furthermore, C&A Products, LLC also has a meritorious defense to

9   prejudgment interest DTSC seeks.  The Amended Complaint seeks interest on the

10  response costs DTSC allegedly incurred from each defendant as provided under

11  Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).  Prejudgment interest is

12  only available if DTSC demanded a sum certain from each defendant.  *See United*

13  *States v. Consolidation Coal Co.*, 345 F.3d 409, 416 (6th Cir. 2003) (holding that

14  complaint was not sufficient to satisfy Section 107(a)'s written demand requirement

15  because it did not specify the specific amount sought from each defendant).

16  Here, C&A Products, LLC was added as a defendant to DTSC's Amended

17  Complaint in the DTSC Action on December 18, 2014, which named many

18  defendants.  C&A Products, LLC has a meritorious defense, under Consolidation,

19  that prejudgment interest is not available because DTSC's Amended Complaint was

20  not sufficient to satisfy Section 107(a)'s written demand requirement in that the

21  amount DTSC seeks from C&A Products, LLC is not specific enough.  Further,

22  even if the DTSC is entitled to prejudgment interests, the amount is disputed, and

23  DTSC should be required to prove this amount at trial.

24  Finally, C&A Products, LLC also has a meritorious defense to attorney's fees

25  DTSC seeks.  Neither Section 107, the liabilities and defenses provision, nor

26  Section 113, which authorizes contribution claims, "expressly calls for the recovery

27  of attorney's fees by the prevailing party."  *See Key Tronic Corp. v. U.S.*, 511 U.S.

28  809, 817 (1994) (holding that litigation-related attorney's fees were not recoverable

LEGAL:10468-0108/12924886.1

-21-

1     in a CERCLA litigation).  Further, even if DTSC is entitled to attorney's fees, the

2     amount is disputed, and DTSC should be required to prove this amount at trial.

3         Since Century has stated a factual and cognizable defense, it has met the

4     second requirement to vacate the entry of default in this action.  *See Sosa v. Bridge*

5     *Store, Inc.*, 1:10-CV-01494-OWW, 2011 WL 1332049, *3 (E.D. Cal. Apr. 6, 2011)

6     (holding that, that "[d]efendants have no obligation to prove their contentions to

7     establish a meritorious defense for purposes of being relieved from an entry of

8     default [and] [defendant's factual allegation . . . is an allegation that will be tested

9     for truth and accuracy later in the litigation.") (citations omitted).

10        **3.**      <u>**DTSC Will Not Be Prejudiced By Setting Aside The Entry**</u>

11            <u>**Of Default**</u>

12        Because relief from a default entry or judgment essentially is a matter of

13     fairness and judicial discretion, the single most persuasive reason for denying a

14     Rule 55(c) motion is prejudice to the non-defaulting party caused by reopening the

15     action.  *See Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (3rd Cir. 1951);

16     *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26

17     (9th Cir. 2004); *O'Connor*, 27 F.3d at 364.  To be prejudicial, courts have

18     determined that the setting aside of a judgment must result in greater harm than

19     simply requiring plaintiff to try the case on the merits or delaying resolution of the

20     case. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("the standard is whether

21     [plaintiffs] ability to pursue his claim will be hindered"); *Thompson v. American*

22     *Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996) (to be considered prejudicial,

23     "the delay must result in tangible harm such as loss of evidence, increased

24     difficulties of discovery, or greater opportunity for fraud or collusion"); *Franchise*

25     *Holding II*, 75 F.3d at 925-26; *O'Connor*, 27 F.3d at 364. "To be prejudicial, the

26     setting aside of a judgment must result in greater harm than simply delaying

27     resolution of the case." *TCI*, 244 F.3d at 701 ; Utica, 2007 WL 32566485, at *3

28     (N.D. Cal. 2007) (granting request of insurer to vacate default judgment against

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1  insured and finding that delay in intervening and requesting to vacate default did

2  not constitute prejudice before mere delay in entering judgment did not constitute

3  prejudice).

4       DTSC would not be prejudiced if the Court vacated the default against C&A

5  Products, LLC.  DTSC filed this action more than five years ago, and it has not

6  attempted to advance this litigation against C&A Products, LLC since 2015.

7  DTSC's ability to pursue its claims will not be hindered.  No discovery has been

8  conducted, and DTSC has done nothing except for filing a complaint, obtaining a

9  default, and filing an application for a default judgment.  No dispositive motions

10 have been filed, heard, and decided.  Since DTSC would not be prejudiced by the

11 Court's decision to vacate the entry of default of C&A Products, LLC, Century has

12 also met the third requirement to vacate the entry of default in this action.

13 **IV.   <u>CONCLUSION</u>**

14       For the foregoing reasons, Century respectfully requests that this Court allow

15 Century to intervene in the instant lawsuit as a putative insurer of underlying

16 Defendant Collins & Aikman Products, LLC ("C&A Products, LLC"), a cancelled

17 Delaware limited liability company, as successor in interest to the Wickes

18 Corporation and/or the Wickes Companies, Inc., and to vacate the default against

19 C&A Products, LLC.

20 DATED:  October 17, 2019          WOOD, SMITH, HENNING & BERMAN LLP

21

22

23                                 By:   /s/ Stratton P. Constantinides

24                                     THOMAS F. VANDENBURG
                                      STRATTON P. CONSTANTINIDES
25                                 Attorneys for Proposed Intervenor Century
                                   Indemnity Company as successor to CCI
26                                 Insurance Company as successor to Insurance
                                   Company of North America
27

28

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On October 17, 2019, I served the following document(s) described as **CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 17, 2019, at Los Angeles, California.

/s/ Jacqueline V. Wilburn
Jacqueline V. Wilburn

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12924886.1

-24-

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

**SERVICE LIST**

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*
**Case No. 2:14-cv-0595-WBS-EFB**

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service) State Bar No. 161896
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone: (510) 879-1299
Fax: (510) 622-2270
E-mail: Laura.Zuckerman@doj.ca.gov
**Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account**

Alexander Eugene Potente
Clyde & Co US LLP
101 2nd Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 365-9800
Fax: (415) 365-9801
Email: alex.potente@clydeco.us
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**Attorneys for Intervenor, THE TRAVELERS INDEMNITY COMPANY**

Brian M. Rostocki
Reed Smith LLP - Delaware
1201 Market Street - Suite 1500
Wilmington, DE 19801
**Registered Agent for C&A Products, LLC**

Sam M. Thorpe
Nicolaides Fink Thorpe
Michaelides Sullivan LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 745-3772
Fax: (415) 745-3771
Email: ssthorpe@nicolaidesllp.com
LEAD ATTORNEY
ATTORNEY 70 BE NOTICED
**Attorneys for the Intervenor, THE CONTINENTAL INSURANCE COMPANY**

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

CENTURY INDEMNITY COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AS ALLEGED
INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT

1  Thomas F. Vandenburg (State Bar No. 163446)
   tvandenburg@wshblaw.com
2  Stratton P. Constantinides (State Bar No. 305103)
   sconstantinides@wshblaw.com
3  **WOOD, SMITH, HENNING & BERMAN LLP**
   10960 Wilshire Boulevard, 18th Floor
4  Los Angeles, California 90024-3804
   Phone: 310-481-7600 ♦ Fax: 310-481-7650
5
   Attorneys for Proposed Intervenor Century Indemnity Company as successor to CCI Insurance
6  Company as successor to Insurance Company of North America
7
8                    **UNITED STATES DISTRICT COURT**
9        **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**
10

| | |
|---|---|
| 11  CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC 12  SUBSTANCES CONTROL ACCOUNT,  13                    Plaintiffs,  14          v.  15  JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware 16  corporation; DAVID VAN OVER, individually; PACIFIC WOOD 17  PRESERVING, a dissolved California corporation; WEST COAST WOOD 18  PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN 19  PRODUCTS, LLC, a Delaware limited liability company,,  20                    Defendants.  21  | Case No. 2:14-cv-0595-WBS-EFB  **DECLARATION OF NATALIE M. JACOBS IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT**  Date:        December 2, 2019 Time:        1:30 p.m. Place:       Courtroom 5, 14th Floor              501 I Street              Sacramento, CA 95814  The Hon. William B. Shubb  Trial Date:        None Set |

22  AND RELATED CROSS-ACTIONS
23
24
25             <u>**DECLARATION OF NATALIE M. JACOBS**</u>
26      I, Natalie M. Jacobs, declare as follows:
27      1.      I am a Senior Direct Claims Handler at the Brandywine Group of Insurance and
28  Reinsurance Companies ("Brandywine Holdings"). I am over 18 years of age. I know the

LEGAL:10468-0108/12925016.1

---

DECLARATION OF NATALIE M. JACOBS IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION
TO INTERVENE AND TO VACATE DEFAULT

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

1   following facts to be true of my own knowledge, and if called to testify, I could competently do

2   so.

3       2.      My employer, Brandywine Holdings, handles legacy claims involving insurance

4   policies issued by Proposed Intervenor Century Indemnity Company as successor to CCI

5   Insurance Company as successor to Insurance Company of North America ("Century").

6       3.      December 11, 2014, the California Department of Toxic Substances Control and

7   the Toxic Substances Control Account (collectively, "DTSC") filed its First Amended Complaint

8   in *California Department of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al.*, United

9   States District Court, Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB I ("DTSC

10  Action"), in which it named Collins & Aikman Products, LLC ("C&A Products, LLC").

11      4.      DTSC never provided notice to Century of the DTSC Action or the March 25, 2015

12  entry of default against C&A Products, LLC.  Century was first provided notice of the DTSC

13  Action, including a tender of defense and indemnity, in a September 10, 2019 letter from Arcina

14  Risk Group ("Arcina Letter"), which was nearly five (5) years after DTSC named C&A Products,

15  LLC in the DTSC Action.  The Arcina Letter further served as Century first notice of the pending

16  Application for Default Judgment, scheduled for September 25, 2019.  After receiving the Arcina

17  Letter, Century promptly engaged outside counsel to assist with intervention in the DTSC Action

18  in order to protect Century's interests as putative insurer for C&A Products, LLC.  **Attached hereto**

19  **as Exhibit "A"** is a true and correct copy of the September 10, 2019 Arcina Letter.

20      5.      On April 12, 2000, C&A Products Co., corporate predecessor to C&A Products,

21  LLC, entered into a settlement agreement to address certain outstanding litigation concerning

22  coverage for environmental investigation and remediation activities at certain properties

23  ("Confidential Settlement Agreement"), including the Site which serves as the subject of the

24  DTSC Action.  The Confidential Settlement Agreement was effective April 13, 2000.  Under the

25  terms of the Confidential Settlement Agreement, Century made a settlement payment to C&A

26  Products Co. which, in exchange for that payment, released Century from certain claims, including

27  the claims DTSC has now asserted against C&A Products, LLC arising out of or relating to the

28  Site.  As part of the Confidential Settlement Agreement, C&A Products Co. dismissed its coverage

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12925016.1                    **-2-**

DECLARATION OF NATALIE M. JACOBS IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION
TO INTERVENE AND TO VACATE DEFAULT

1    actions against Century with prejudice.

2         I declare under penalty of perjury under the laws of the State of California that the

3    foregoing is true and correct.

4         Executed October 17, 2019, at Bordentown, New Jersey.

6                                              Natalie M. Jacobs

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 • FAX 310-481-7650

# EXHIBIT A

**ARCINA**
RISK GROUP

September 10, 2019

**Via U.S. Mail and E-Mail**
john.glowackijr@brandywineholdings.com

John Glowacki, Jr.
Brandywine Group of Insurance and
Reinsurance Companies
510 Walnut Street, WB11E
Philadelphia, PA  19106

**IMMEDIATE ATTENTION REQUIRED**

Re:   Notice of Suit:   *California Department of Toxic Substances Control and the Toxic Substances Control Account v. Jim Dobbas, Inc., et al., U.S. District Court for the Eastern District of California, Civil Case No.* 2:14-595 WBS EFB
Elmira Site Contamination – Solano County California

Insured:   Wickes Corporation and Wickes Companies, Inc., et al
Insurer(s):   Insurance Company of North America
Industrial Indemnity Insurance Company
Policy Numbers:   INA: GO 1907608 for the period 5/1/1981 to 5/1/1982
INA: XCP 144099 for the period 5/1/1981 to 5/1/1982
INA: GLPG 0041245 for the period 4/24/1982 to 4/24/1983
INA: XCP 144683 for the period 4/24/1982 to 4/24/1983
INA: GLPG 000 4216A for the period 4/24/1983 to 7/24/1984
INA: XCP 145543 for the period 4/24/1983 to 4/24/1984
INA: XBC 154417 for the period 4/24/1984 to 4/24/1985
INA: XCPG 000 44428 for the period 7/24/1985 to 7/24/1986
Industrial Indemnity: XS 8764771 for the period 7/24/1985 to 7/24/1986

Dear Mr. Glowacki:

This letter is to tender and advise you of an Application for Default Judgment pending against your insured Collins and Aikman Products, LLC (C&A).  C&A is the successor in interest to the Wickes Companies, Inc. and the Wickes Corporation. This tender is under the identified policies and any other applicable policies that the company may have issued to the Wickes Companies, Inc. or the Wickes Corporation.

Attached hereto please find the Amended Notice of Hearing, setting the hearing on September 25, 2019.  The Application for Default Judgment and Memorandum of Points and Authorities are also attached hereto.  The Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, DTSC) seek to recover $3,219,449.85 in unreimbursed public

855 Wilshire Blvd., Suite 400, Los Angeles, CA 90017 • 213.234.9575 • arcinarisk.com

**ER-217**

(Brandywine)
*Re: Elmira Site*
September 10, 2019
Page 2

funds that DTSC has spent through May 31, 2019 under CERCLA, and a declaration that C&A is liable for DTSC's future response costs at the Elmira Site.

We understand that Travelers intends to seek to intervene in the matter.

As per the policy terms and conditions, we request that you indemnify and defend your insured immediately. Please direct any future correspondence and communication to the undersigned with copies to:

> Brian M. Rostocki - Receiver for Collins & Aikman Products, LLC
> ReedSmith LLP
> 1201 Market Street, Suite 1500
> Wilmington, DE 19801
> brostocki@reedsmith.com

and

> Olivia W. Karlin
> Deputy Attorney General
> State of California Department of Justice
> 300 South Spring Street
> Los Angeles, CA 90013
> Olivia.Karlin@doj.ca.gov

We request that you contact us for additional information regarding the Elmira Site and pending application for a default judgment.

We continue to search for additional coverage for these matters. **We kindly request you search your archives and underwriting materials and notify us of ANY information, including impairment, related to policies issued to the Wickes Corporation or Wickes Companies, Inc. with respect to the Elmira Site.**

**We also kindly ask that you provide us with copies of any policies, claims files and underwriting materials in your possession immediately related to policies issued between 1979 and 1987. Materials may be sent by email to rjanisch@arcinarisk.com or by mail.**

We look forward to hearing from you.

Sincerely,

Richard A. Janisch
RAJ/fr
Enclosures
cc:   brostocki@reedsmith.com
      Olivia.Karlin@doj.ca.gov
      msalem@arcinarisk.com

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On October 17, 2019, I served the following document(s) described as **DECLARATION OF NATALIE M. JACOBS IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION TO INTERVENE AS ALLEGED INSURER OF DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC AND TO VACATE DEFAULT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 17, 2019, at Los Angeles, California.

/s/ Jacqueline V. Wilburn
Jacqueline V. Wilburn

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7500 • FAX 310-481-7650

DECLARATION OF NATALIE M. JACOBS IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION TO INTERVENE AND TO VACATE DEFAULT

1

## SERVICE LIST

2

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*
Case No. 2:14-cv-0595-WBS-EFB

3

4

5    XAVIER BECERRA                          Alexander Eugene Potente
     Attorney General of California          Clyde & Co US LLP
6    EDWARD H. OCHOA                         101 2nd Street, Suite 2400
     Supervising Deputy Attorney General     San Francisco, CA 94105
7    OLIVIA W. KARLIN, State Bar No. 150432  Telephone: (415) 365-9800
     LAURA J. ZUCKERMAN (Counsel for         Fax: (415) 365-9801
8    service) State Bar No. 161896           Email: alex.potente@clydeco.us
     Deputy Attorneys General                LEAD ATTORNEY
9    1515 Clay Street, 20th Floor            ATTORNEY TO BE NOTICED
     Oakland, CA 94612                       **Attorneys for Intervenor, THE**
10   Telephone: (510) 879-1299               **TRAVELERS INDEMNITY**
     Fax: (510) 622-2270                     **COMPANY**
11   E-mail: Laura.Zuckerman@doj.ca.gov
     **Attorneys for Plaintiffs California**
12   **Department of Toxic Substances Control**
     **and the Toxic Substances Control Account**
13
     Brian M. Rostocki                       Sam M. Thorpe
14   Reed Smith LLP - Delaware               Nicolaides Fink Thorpe
     1201 Market Street - Suite 1500         Michaelides Sullivan LLP
15   Wilmington, DE 19801                    101 Montgomery Street, Suite 2300
     **Registered Agent for C&A Products, LLC** San Francisco, CA 94104
16                                           Telephone: (415) 745-3772
                                             Fax: (415) 745-3771
17                                           Email: ssthorpe@nicolaidesllp.com
                                             LEAD ATTORNEY
18                                           ATTORNEY 70 BE NOTICED
                                             **Attorneys for the Intervenor,**
19                                           **THE CONTINENTAL**
                                             **INSURANCE COMPANY**
20

21

22

23

24

25

26

27

28

WOOD, SMITH, HENNING & BERMAN LLP
Attorneys at Law
10960 WILSHIRE BOULEVARD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024-3804
TELEPHONE 310-481-7600 ♦ FAX 310-481-7650

LEGAL:10468-0108/12925016.1

-5-

ER-220

DECLARATION OF NATALIE M. JACOBSEN IN SUPPORT OF CENTURY INDEMNITY COMPANY'S MOTION
TO INTERVENE AND TO VACATE DEFAULT

1  SARA M. THORPE (SBN: 146529)
   sthorpe@nicolaidesllp.com
2  RANDALL P. BERDAN (SBN: 199623)
   rberdan@nicolaidesllp.com
3  NICOLAIDES FINK THORPE
   MICHAELIDES SULLIVAN LLP
4  101 Montgomery Street, Suite 2300
5  San Francisco, CA 94104
   Telephone:    (415) 745-3770
6  Facsimile:    (415) 745-3771

7
   Attorneys for Proposed Intervenor
8  THE CONTINENTAL INSURANCE COMPANY

9              UNITED STATES DISTRICT COURT

10     EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

11 | CALIFORNIA DEPARTMENT OF TOXIC | 2:14-cv-00595-WBS-EFB
   | SUBSTANCES CONTROL and the TOXIC |
12 | SUBSTANCES CONTROL ACCOUNT, |
                                      | **THE CONTINENTAL INSURANCE**
13 |            Plaintiffs,          | **COMPANY'S NOTICE OF MOTION AND**
                                      | **MOTION TO INTERVENE AND TO SET**
14 | v.                              | **ASIDE DEFAULT; MEMORANDUM OF**
                                      | **POINTS AND AUTHORITIES IN**
15 | JIM DOBBAS, INC., a California   | **SUPPORT OF MOTION TO INTERVENE**
   | corporation; CONTINENTAL RAIL, INC., a | **AND TO SET ASIDE DEFAULT**
16 | Delaware corporation; DAVID VAN OVER, |
   | individually; PACIFIC WOOD       | [Pursuant to F.R.C.P. 24, 55(c)]
17 | PRESERVING, a dissolved California |
   | corporation; WEST COAST WOOD     | Date:     October 21, 2019
18 | PRESERVING, LLC., a Nevada limited | Time:     1:30 p.m.
   | liability company; and COLLINS & | Place:    Courtroom 5, 14th Floor
19 | AIKMAN PRODUCTS, LLC, a Delaware |           501 I Street
   | limited liability company,       |           Sacramento, CA 95814
20 |                                  | Judge:    Hon. William B. Shubb
21 |            Defendants.          |
                                      | Action Filed: March 3, 2014
22 | AND RELATED COUNTERCLAIMS AND   |
   | CROSS CLAIMS.                    |
23

24       **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25       PLEASE TAKE NOTICE that on October 21, 2019 at 1:30 p.m., or as soon thereafter as

26 the matter may be heard, in Courtroom 5 of the above Court located at 501 I Street, Sacramento,

27 California 95814, the proposed intervenor The Continental Insurance Company ("Continental"),

28 as putative insurer of defendant Collins & Aikman Products, LLC ("C&A Products"), will

CONTINENTAL'S MOTION TO INTERVENE AND TO SET ASIDE DEFAULT
ER 221
1

1    move for an order permitting Continental to intervene in the above-captioned action, setting

2    aside the entry of default, and opposing entry of judgment against C&A Products.  Continental

3    does not seek to litigate insurance coverage as part of this intervention.

4         This motion is made pursuant to Federal Rules of Civil Procedure, Rule 24, on the

5    grounds that Continental has a direct interest in this litigation because C&A Products is a

6    canceled Delaware limited liability company and lacks the resources or capacity to defend itself

7    in this lawsuit, and because Plaintiffs California Department of Toxic Substances Control and

8    the Toxic Substances Control Account (collectively, "DTSC") have indicated that they seek to

9    recover any default judgment against C&A Products from its insurers.  Pursuant to Federal

10   Rules of Civil Procedure, Rule 55(c), good cause exists to set aside the default taken by the

11   DTSC against C&A Products.

12        This motion is based on the accompanying Memorandum of Points and Authorities, the

13   Declaration of Randall P. Berdan, as well as the complete files and records in this matter and

14   such other matters as may be presented to the Court at or before the time of hearing on this

15   motion.

16   Dated:   September 20, 2019              NICOLAIDES FINK THORPE
                                             MICHAELIDES SULLIVAN LLP
17

18                                           By:          /s/ Sara M. Thorpe
                                                     Sara M. Thorpe
19                                                   Randall P. Berdan
                                             Attorneys for Proposed Intervenor
20                                           The Continental Insurance Company

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    I.      INTRODUCTION ................................................................. 1

3    II.     FACTUAL BACKGROUND ................................................. 1

4            A.    C&A Products and Potential Predecessors ................ 1

5            B.    DTSC's Lawsuit.......................................................... 2

6            C.    Notice to Continental and Alleged Policies ............... 3

7    III.    ARGUMENT ........................................................................ 4

8            A.    Continental Is Entitled To Intervene As A Matter Of Right To Protect Its Own
9                  Interests ..................................................................... 4

10                 1.    Continental's Motion To Intervene Is Timely ......... 5

11                 2.    Continental Has A Significant Protectable Interest ................. 6

12                 3.    Continental's Interest May Be Impaired If Intervention Is Not Permitted 7

13                 4.    The Existing Parties Do Not Represent Continental's Interests ............... 8

14           B.    Continental Should Be Permitted to Intervene Pursuant to Rule 24(b) ............... 8

15           C.    Continental Has Shown Good Cause To Set Aside The Entry Of Default............ 9

16                 1.    The Entry Of Default Was Not The Result Of Continental's Willful
17                       Conduct ................................................................... 9

18                 2.    DTSC Will Not Be Prejudiced By Setting Aside The Entry Of Default . 10

19                 3.    Continental Has A Meritorious Defense Against DTSC In Favor Of C&A
20                       Products................................................................. 11

21   IV.    CONCLUSION...................................................................... 13

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Bonita Packing Co. v. O'Sullivan*,
   165 F.R.D. 610 (C.D. Cal. 1995) .......................................................... 9

*Brandt v. American Bankers Ins. Co. of Florida*,
   653 F.3d 1108 (9th Cir. 2011) ............................................................ 9

*Carson Harbor Village v. County of Los Angeles*,
   433 F.3d 1260 (9th Cir. 2006) ......................................................... 12

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*,
   2012 WL 1570844 (S.D. Cal. May 3, 2012) ...................................... 12

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F .3d 893 (9th Cir. 2011) ........................................................ 4, 8

*City of Colton v. American Promotional Events, Inc.-West*,
   614 F.3d 998 (9th Cir. 2010) ........................................................... 12

*City of Emeryville v. Robinson*,
   621 F.3d 1251 (9th Cir. 2010) ........................................................... 7

*Cutting v. Town of Allenstown*,
   936 F.2d 18 (1st Cir. 1991) .............................................................. 10

*Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*,
   346 F.3d 552 (5th Cir. 2003) ............................................................. 9

*Forest Conservation Council v. United States Forest Service*,
   66 F.3d 1489 (9th Cir. 1995) ............................................................. 4

*Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*,
   375 F.3d 922 (9th Cir. 2004) ........................................................... 11

*Heartwood, Inc v. U.S. Forest Service, Inc.*,
   316 F.3d 694 (7th Cir. 2003) ............................................................. 6

*In re Collins & Aikman Prods., LLC*, WL 6907689,
   (Del. Ch. Dec. 8, 2014) ..................................................................... 3

*Key Tronic Corp. v. U.S.*,
   511 U.S. 809 (1994) ......................................................................... 13

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002) ........................................................... 9

*Lacy v. Sitel Corp.*,
  227 F.3d 290 (5th Cir. 2000) ............................................................ 10

*Mach v. Florida Casino Cruise, Inc.*,
  (D. Mass. 1999) 187 F.R.D. 15 ......................................................... 10

*NAACP v. New York*,
  413 U.S.345 (1973) ............................................................................ 5

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ................................................................ 5

*Pellegrino v. Nesbit*,
  203 F.2d 463 (9th Cir. 1953) .............................................................. 5

*Pena v. Seguros La Comercial, S.A.*,
  770 F.2d 811 (9th Cir. 1985) .............................................................. 9

*Rasmussen v. W. E. Hutton & Co.*,
  (N.D. Ga. 1975) 68 F.R.D. 231 .......................................................... 9

*Reliance Ins. Co. v. Superior Court*,
  84 Cal. App. 4th 383 (2000) ............................................................... 7

*Securities & Exchange Comm'n v. McNulty*,
  137 F.3d 732 (2nd Cir. 1998) ........................................................... 11

*Southwest Center for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) .............................................................. 6

*Spangler v. Pasadena City Board of Education*,
  552 F.2d 1326 (9th Cir. 1977) ............................................................ 9

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) ......................................................... 5, 8

*U.S. v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) .............................................................. 7

*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*,
  615 F.3d 1085 (9th Cir. 2010) .......................................................... 11

*United States v. British American Tobacco Australia Services, Ltd.*,
  437 F.3d 1235 (D.C. Cir. 2006) .......................................................... 5

*United States v. Consolidation Coal Co.*,
  345 F.3d 409 (6th Cir. 2003) ............................................................ 13

*United States v. Oregon*,
  745 F.2d 550 (9th Cir. 1984) .............................................................. 5

*Whelan v. Abell*,
   48 F.3d 1247 (D.C. Cir. 1995) ................................................................ 10

*Wild Earth Guardians v. U.S. Forest Service*,
   573 F.3d 992 (10th Cir. 2009) ............................................................... 7

## **STATUTES**

42 U.S.C. § 9607 ...................................................................................... 2

42 U.S.C. § 9613(g) ................................................................................. 2

42 U.S.C. section 9607(a) ................................................................. 11, 13

42 U.S.C. section 9613(g)(2) ............................................................. 11, 12

CERCLA section 107(a) .................................................................... 11, 13

CERCLA section 113(g)(2) ...................................................................... 11

CERCLA Section 9613(g)(2) ................................................................... 12

Federal Rule of Civil Procedure 24 ..................................................... 4, 5

Federal Rule of Civil Procedure 24 (a) ....................................... 1, 4, 7, 8

Federal Rule of Civil Procedure 24(b) ...................................................... 8

Federal Rule of Civil Procedure 55 .......................................................... 9

Federal Rule of Civil Procedure 60(b) ...................................................... 9

Federal Rules of Civil Procedure, Rule 55(c) ........................................... 1

Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300 ................................ 2

Insurance Code Section 11580 ................................................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Continental moves to intervene in this action to protect its interests as C&A Products' putative insurer and to set aside the default entered by DTSC against C&A Products.  Any rulings or judgments made against C&A Products may affect Continental's obligations, if any, to DTSC, if DTSC becomes a judgment creditor of C&A Products.

C&A Products is a canceled Delaware limited liability company against which DTSC has obtained entry of default.  As C&A Products' putative insurer, Federal Rules of Civil Procedure, Rule 24(a) and substantive California law allow Continental to intervene as a matter of right.  Continental's request is timely within the meaning of Rule 24(a) as DTSC only provided notice on September 10, 2019 to Continental of this lawsuit and that an Application for Default Judgment is pending against defendant C&A Products.  Continental has a "significantly protectable" interest regarding C&A Products' exposure in this action, disposition of this action without intervention may impair Continental's interest, and Continental's interest is not represented by any party to the action.

Pursuant to Federal Rules of Civil Procedure, Rule 55(c), good cause also exists to set aside the default taken by DTSC against C&A Products because Continental was unaware of the lawsuit brought by DTSC against C&A Products until recently, DTSC will not be prejudiced by setting aside the default, and Continental has a meritorious claim against DTSC.

Continental respectfully requests that this Court grant Continental's motion to intervene and to set aside the default against C&A Products.

## II.    FACTUAL BACKGROUND

### A.    C&A Products and Potential Predecessors

From 1979 to 1982, alleged predecessor of C&A Products, The Wickes Corporation ("Wickes") conducted wood preserving operations at the property located at 147 A Street, Elmira, California 95625 (the "Site").  (ECF No. 77, ¶ 16.)[1]  Wickes and its successor Collins & Aikman Products Co. ("C&A Products Co."), owned and operated the site until March 20,

---

[1] ECF Numbers referred here are to papers filed within this action.

1997.  (ECF No. 77, ¶¶ 15,16.)  DTSC claims C&A Products Co. became known as defendant C&A Products on December 6, 2007.  (ECF No. 77, ¶ 15.)

DTSC claims that during Wickes' wood preserving operations, Wickes released hazardous substances, including arsenic, chromium, and copper.  (ECF No. 77, ¶ 19.)  From the 1980s through 2005, DTSC claims that Wickes and then C&A Products Co. took responsive actions under oversight of the DTSC and its predecessor agency to address environmental contamination at the Site.  (ECF No. 77, ¶20.)  Those actions included soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring.  (*Id*.)

On May 17, 2005, C&A Products Co. filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932, jointly administered with the bankruptcy cases of other debtors under Case No. 05-55927.  (ECF No. 77, ¶ 23.)  In the summer of 2005, while in Chapter 11 bankruptcy proceedings, C&A Products Co. discontinued its remediation efforts.  (ECF No. 77, ¶ 24.)

**B.** **DTSC's Lawsuit**

DTSC filed this action on March 3, 2014, seeking the recovery of costs under CERCLA, 42 U.S.C. § 9607, declaratory relief under CERCLA, 42 U.S.C. § 9613(g), and damages, injunctive relief, and civil penalties under the Hazardous Substance Account Act, Cal. Health & Safety Code §§ 25300 *et seq*. against potentially responsible parties at the Site ("DTSC Action").

On November 14, 2014, DTSC filed a petition for appointment of receiver for C&A Products in Delaware Court of Chancery in which DTSC represents that it "will not seek enforcement of the judgment directly against C&A Products, LLC, but only as a means to pursue a direct action against the company's historic insurers."  (ECF No. 197, ¶ 6, Exh. D [Declaration of Alexander E. Potente in Support of Proposed Intervenor The Travelers Indemnity Company's *Ex Parte* Application].)  On December 8, 2014, Delaware Court of Chancery appointed Brian Rostocki the receiver for C&A Products "for the limited purpose of

1   allowing Collins & Aikman Products, LLC to be sued [in the DTSC Action], and with the

2   power, but not the obligation, to defend, in the name of Collins & Aikman Products, LLC, any

3   claims made against it [in the DTSC Action]."  See *In re Collins & Aikman Prods., LLC*, WL

4   6907689, * 1-2 (Del. Ch. Dec. 8, 2014).  As receiver, Mr. Rostocki "act[ed] as registered agent

5   in the State of Delaware for service of process on Collins & Aikman Products, LLC, including,

6   without limitation, for service of process [in the DTSC Action]."  *Id*. at * 1.

7          On December 11, 2014, DTSC filed its First Amended Complaint ("FAC") against C&A

8   Products and other potentially responsible parties in the DTSC Action.  DTSC served Mr.

9   Rostocki with the FAC.  C&A Products did not respond or appear and DTSC filed a request for

10  entry of default on March 20, 2015.  (ECF No. 125.)  The Court entered default as to C&A

11  Products on March 26, 2015, without DTSC having to prove any portion of its case.  (ECF No.

12  129.)  On August 21, 2019, DTSC moved for an Application for Entry of Default Judgment

13  against C&A Products.  (ECF No. 184.)  DTSC served the Application for Entry of Default

14  Judgment against C&A Products on Rostocki, but neither DTSC nor Rostocki timely notified

15  Continental of the Application or even this lawsuit.

16         **C.     Notice to Continental and Alleged Policies**

17         On September 10, 2019, Resolute Management, Inc. ("Resolute"), which is the claims

18  administrator for Continental, received notice from DTSC's agent, Arcina Risk Group, about

19  this lawsuit and DTSC's Application for Default Judgment against C&A Products.  Declaration

20  of Randall P. Berdan ("Berdan Decl."), ¶ 3, Exh. A; ECF No. 200, ¶ 7 (Declaration of Laura J.

21  Zuckerman in Support of Plaintiffs' Memorandum of Points and Authorities in Opposition to

22  The Travelers Indemnity Company's *Ex Parte* Application).  Arcina Risk Group alleges that

23  several insurance policies were issued to "Wickes Corporation and Wickes Companies, Inc., et

24  al" by Continental and Transcontinental Insurance Company.  Berdan Decl., ¶ 4, Exh. A.

25  Continental is conducting searches for insurance policies in response to the letter from Arcina

26  Risk Group and continues to investigate.  Berdan Decl., ¶ 5.  Shortly after it received notice,

27  Continental requested that DTSC continue the hearing set for September 25, 2019 on its

28

1    Application for Default Judgment against C&A Products and requested that DTSC allow

2    Continental to intervene in this lawsuit, but DTSC refused.  Berdan Decl., ¶ 6.

3         Having just received notice of this action and the Application for Default Judgment,

4    Continental is now submitting this motion to intervene and set aside the default without delay.

5    **III.   ARGUMENT**

6         **A.   Continental Is Entitled To Intervene As A Matter Of Right To Protect Its**
            **Own Interests**
7

8         DTSC is expected to seek to have Continental pay any judgment against C&A Products

9    as its alleged insurer.  Federal Rule of Civil Procedure 24 ("Rule 24") authorizes the Court to

10   grant a non-party's timely motion to intervene in pending litigation.  Rule 24 is to be broadly

11   interpreted in favor of allowing intervention.  *See Forest Conservation Council v. United States*

12   *Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995).  Rule 24(a) provides that a non-party shall

13   be permitted to intervene as of right:

14        **(a) Intervention of Right**. On timely motion, the court must permit anyone to
          intervene who: (1) is given an unconditional right to intervene by a federal
15        statute; or (2) claims an interest relating to the property or transaction that is
          the subject of the action, and is so situated that disposing of the action may as
16        a practical matter 9 impair or impede the movant's ability to protect its
          interest, unless existing parties adequately represent that interest.
17

18   Fed. R. Civ. P. 24(a).

19        A motion to intervene under Rule 24(a) is subject to the following four-part test:

20        (1) the intervention application is timely; (2) the applicant has a significant
          protectable interest relating to the property or transaction that is the subject of
21        the action; (3) the disposition of the action may, as a practical matter, impair or
          impede the applicant's ability to protect its interest; and (4) the existing parties
22        may not adequately represent the applicant's interest.
23

24   *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F .3d 893, 897 (9th Cir. 2011)

25   (reversing district court's denial of intervention in the ongoing litigation because the proposed

26   intervenor satisfied the four elements for intervention as of right under Fed. R. Civ. P. 24(a)).

27   In determining whether to permit intervention, a court is "guided primarily by practical

28

---

CONTINENTAL'S MOTION TO INTERVENE AND TO SET ASIDE DEFAULT

1  considerations, not technical distinctions," and "the requirements are broadly interpreted in

2  favor of intervention." *Id*. at 897.

3                **1.   Continental's Motion To Intervene Is Timely**

4          Continental's motion to intervene is timely, particularly because DTSC only provided

5  notice to Continental of the lawsuit and Application for Default Judgment on September 10,

6  2019 and shortly thereafter DTSC refused to allow Continental to intervene.  "Timeliness is a

7  prerequisite to any claim for intervention under Rule 24."  *United States v. British American*

8  *Tobacco Australia Services, Ltd.,* 437 F.3d 1235, 1238 (D.C. Cir. 2006).  Timeliness is to "be

9  determined from all the circumstances," and is in the court's "sound discretion."  *NAACP v.*

10  *New York*, 413 U.S.345, 366 (1973).  Courts are required to be more lenient in applying the

11  timeliness requirement where intervention is sought as a matter "of right," than where it is

12  merely "permissive" because of the likelihood of more serious harm.  *United States v. Oregon,*

13  745 F.2d 550, 552 (9th Cir. 1984).

14          In deciding whether a movant's motion is timely, the Ninth Circuit considers the

15  following three factors: (1) the stage of the proceeding; (2) whether the parties would be

16  prejudiced; and (3) the reason for the delay, if any, in moving to intervene.  *See Nw. Forest Res.*

17  *Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996).

18          Here, as it pertains to C&A Products, DTSC has merely taken a default against C&A

19  Products.  No discovery has been conducted against C&A Products, nor have any dispositive

20  motions been decided.  *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977)

21  (entry of judgment does not alone disqualify application for intervention).  DTSC has not

22  proven the merits of its claims against C&A Products.  DTSC would not be prejudiced by

23  Continental's entrance into the case since the addition of Continental would not cause DTSC to

24  relitigate matters.  Instead, allowing Continental to intervene would simply require DTSC to

25  prove its case rather than obtain a default judgment against a defunct corporation.

26          Intervention after judgment is disfavored, but may be granted where it is the only way to

27  protect the intervenor's rights.  *Pellegrino v. Nesbit,* 203 F.2d 463 (9th Cir. 1953) (where

28  stockholder allowed to intervene after company decided not to appeal judgment in the lower

CONTINENTAL'S MOTION TO INTERVENE AND TO SET ASIDE DEFAULT

1  court).  Although default has been entered, judgment has not yet been entered against C&A

2  Products.  The entry of default should not preclude Continental from intervening in the action

3  since Continental has an interest in the request for a default judgment and will seek to set aside

4  the default.  If Continental is not allowed to intervene, DTSC has already represented that it

5  seeks to "pursue a direct action against [C&A Products'] historic insurers."  (ECF No. 197, ¶ 6,

6  Exh. D [Declaration of Alexander E. Potente in Support of Proposed Intervenor The Travelers

7  Indemnity Company's *Ex Parte* Application].)  Intervention now will eliminate the possibility

8  of inefficient and duplicative litigation between DTSC and Continental.  The case has not

9  proceeded so far as to justify precluding Continental from intervening and fairness dictates that

10  Continental be allowed to defend its interests.

11      Continental acted in a prompt manner to protect its interest in the present litigation by

12  filing this motion to intervene less than two weeks after it learned of this lawsuit and that DTSC

13  intends to seek a default judgment against C&A Products.  "A prospective intervenor must

14  move promptly to intervene as soon as it knows or has reason to know that its interests might be

15  adversely affected by the outcome of the litigation."  *Heartwood, Inc v. U.S. Forest Service, Inc*.

16  316 F.3d 694 (7th Cir. 2003).

17      Under the liberal standard for intervention as a matter of right under Rule 24(a),

18  Continental's motion to intervene is timely.

19              **2.  Continental Has A Significant Protectable Interest**

20      Continental has a significant protectable interest relating to the property or transaction

21  that is subject to the DTSC Action.  An applicant for intervention has a significantly protectable

22  interest if "the interest is protectable under some law, and there is a relationship between the

23  legally protected interest and the claims at issue."  *Southwest Center for Biological Diversity v.*

24  *Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

25      Here, Continental has a significant protectable interest in the property and transaction

26  that are the subject matter as an alleged insurer of Wickes, the alleged predecessor of C&A

27  Products.  Although default judgment has not yet been entered against C&A Products, it is very

28  likely that DTSC will seek to enforce any judgment against C&A Products against Continental.

1   Under such circumstances, both California and federal courts allow insurers to intervene.  *See*

2   *Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383, 386-87 (2000) (reversing trial court's

3   refusal to allow insurer to intervene to vacate default of insured reasoning, "where the insurer

4   may be subject to a direct action under Insurance Code section 11580 by a judgment creditor

5   who has or will obtain a default judgment in a third party action against the insured, intervention

6   is appropriate.").

7           Allowing Continental to intervene now avoids Continental from having to challenge the

8   default judgment after it is entered, reducing inefficient and duplicative litigation between

9   DTSC and Continental.  See *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) ("By

10  allowing parties with a practical interest in the outcome of a particular case to intervene, we

11  often prevent or simplify future litigation involving related issues . . . .").  As further discussed

12  below, "a party has sufficient interest for intervention purposes if it will suffer a practical

13  impairment of its interests as a result of the pending litigation."  *City of Emeryville v. Robinson*,

14  621 F.3d 1251, 1259 (9th Cir. 2010).

15          **3.    Continental's Interest May Be Impaired If Intervention Is Not
                      Permitted**
16

17          Continental's interest would be significantly impaired if intervention is not permitted

18  because it would potentially be liable for any judgment against C&A Products.  "A party has a

19  sufficient interest for intervention purposes if it will suffer a practical impairment of its interests

20  as a result of the pending litigation."  *Robinson*, 621 F.3d at 1259.

21          As a proposed intervenor, Continental "must show only that impairment of its

22  substantial legal interest is possible if intervention is denied.  This burden is minimal."  *Wild*

23  *Earth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009).  Again, DTSC has

24  represented that it will seek to enforce the judgment against C&A Products against its

25  "historical insurers" – including allegedly, Continental.  Therefore, Continental satisfies the

26  third element required for intervention under Rule 24(a).

27  / / /

28  / / /

CONTINENTAL'S MOTION TO INTERVENE AND TO SET ASIDE DEFAULT

### 4.    The Existing Parties Do Not Represent Continental's Interests

Continental's interests are not adequately protected by the current parties to the DTSC Action.  In determining adequacy of representation, courts consider the following factors in assessing adequate representation:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Citizens for Balanced Use*, 647 F.3d at 898 (noting, "[t]he 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties'").

The existing parties do not represent Continental's interests.  DTSC is adverse to Continental and C&A Products.  C&A Products is defunct, has no assets, cannot defend itself, and has failed to appear in this suit.  Furthermore, as noted above, DTSC has represented that it will "pursue a direct action against the company's historic insurers."  Therefore, Continental satisfies the fourth element required for intervention under Rule 24(a).

### B.    Continental Should Be Permitted to Intervene Pursuant to Rule 24(b)

Alternatively, this Court should allow Continental to intervene as a matter of permissive intervention.  Rule 24(b) provides:

> **(b) Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: ...(2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)

Once the intervenor proves the existence of the common questions of law or fact, the court must then exercise its discretion in deciding whether intervention should be allowed. *Stallworth*, 588 F.2d at 269.  The existence of a "common question" is liberally construed.

1   *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094, 1108-1109 (9th Cir. 2002) ("significant

2   protectable interest" not required for intervention under Rule 24(b)).

3          Continental's claims present common questions of law and/or fact.  DTSC seeks to

4   establish C&A Products' liabilities in the DTSC Action.  Whereas Continental seeks to

5   challenge C&A Products' liability and damages.  Also, Continental's intervention would

6   "significantly contribute to full development of the underlying factual issues in the suit and to

7   the just and equitable adjudication of the legal questions presented."  *Spangler v. Pasadena City*

8   *Board of Education,* 552 F.2d 1326, 1329 (9th Cir. 1977).  As such, Continental fulfills the

9   threshold requirement for the Court to allow Continental to intervene.

10         **C.     Continental Has Shown Good Cause To Set Aside The Entry Of Default**

11         Federal Rule of Civil Procedure 55 regulates default judgments and states that an entry

12  of default can be set aside for good cause or a judgment by default can be set aside in

13  accordance with Rule 60(b).  Factors the Court considers in determining whether "good cause"

14  exists for setting aside entry of default include: (1) whether the failure to act was willful; (2)

15  whether setting the default aside would prejudice the adversary; and (3) whether a meritorious

16  claim has been presented.  *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d

17  552 (5th Cir. 2003); *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th

18  Cir. 2011) (setting forth same factors and affirming the district court's decision to grant insurer's

19  motion to set aside default judgment).

20         In addition, "[t]he law does not favor defaults," and "therefore, any doubts as to whether

21  a party is in default should be decided in favor of the defaulting party."  *Bonita Packing Co. v.*

22  *O'Sullivan*, 165 F.R.D. 610, 614 (C.D. Cal. 1995); *Pena v. Seguros La Comercial, S.A*., 770

23  F.2d 811, 814 (9th Cir. 1985) ("[D]efault judgments are generally disfavored.  Whenever it is

24  reasonably possible, cases should be decided upon their merits.").

25         **1.     The Entry Of Default Was Not The Result Of Continental's Willful**
           **Conduct**

26

27         Although it is not always necessary that the default be excusable, the default must not be

28  the product of gross neglect or willful misconduct.  *Rasmussen v. W. E. Hutton & Co.* 68 F.R.D.

1 | 231, 235 (N.D. Ga. 1975); *see also Mach v. Florida Casino Cruise, Inc*. (D. Mass. 1999) 187
2 | F.R.D. 15.

3 | Here, Continental was given no notice that DTSC filed this lawsuit against C&A
4 | Products until **the week before this filing**, and over four years after the default was entered.
5 | Without knowledge of the lawsuit, Continental was not willful in failing to intervene and
6 | moving to set aside the default sooner.  Continental acted to protect its interest immediately
7 | after receiving notice that DTSC intends to move forward with its Application for Entry of
8 | Default Judgment against C&A Products.  Consequently, there was no willful conduct or gross
9 | negligence by Continental that resulted in the entry of default.

10 | **2.    DTSC Will Not Be Prejudiced By Setting Aside The Entry Of Default**

11 | The party opposing the motion to set aside the default must show that the delay resulted
12 | in the loss of evidence, that it increased the difficulty of discovery, or that it thwarted plaintiffs'
13 | ability to obtain relief.  *See Cutting v. Town of Allenstown*, 936 F.2d 18, 22 (1st Cir. 1991)
14 | (plaintiff died in intervening period); *Whelan v. Abell*, 48 F.3d 1247, 1258-59 (D.C. Cir. 1995)
15 | (trial completed against other defendants).  "There is no prejudice to the plaintiff where the
16 | setting aside of the default has done no harm to plaintiff except to require it to prove its case."
17 | *Lacy v. Sitel Corp*., 227 F.3d 290, 293 (5th Cir. 2000).

18 | Here, as it pertains to C&A Products, DTSC has done nothing except file a complaint
19 | over five years ago, request to enter default and only recently file an application for default
20 | judgment.  No evidence has been lost nor have any witnesses become unavailable.  No party
21 | discovery has been conducted.  No dispositive motions have been filed, heard, and decided.
22 | DTSC will not be prejudiced by Continental's entrance into the case since DTSC seeks
23 | monetary compensation from potential insurance policies for which the evidence has not
24 | changed since DTSC filed its case.  Therefore, DTSC would not be prejudiced by the Court's
25 | decision to vacate the entry of default.  Consequently, the Court should set aside the default.
26 | / / /
27 | / / /
28 | / / /

### 3. Continental Has A Meritorious Defense Against DTSC In Favor Of C&A Products

The party seeking relief from default bears the burden of showing a defense that might make the result at trial different than that reached by default. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (litigant must present "specific facts that would constitute a defense"). The standard is not a likelihood of success. Rather, defendant need only show that the allegations, if proven, would constitute a complete defense. *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (finding that good cause warranted setting aside default); *see also Securities & Exchange Comm'n v. McNulty*, 137 F.3d 732, 740 (2nd Cir. 1998).

Here, DTSC alleges that C&A Products' alleged predecessors entered an operation and maintenance agreement in which they agreed to maintain the cap and operation of the ground water extraction and treatment system to treat contaminated groundwater. DTSC further alleges that after C&A Products Co. sought Chapter 11 bankruptcy, its successors in interest stopped remediating the Site. In response, DTSC allegedly advanced the clean-up costs, and it now alleges, in its first claim for relief, that each of the defendants, including C&A Products is jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for DTSC's costs allegedly incurred in response to the alleged release or threatened release of hazardous substances at or from the Site. (ECF No. 77, ¶ 43.) DTSC also contends, in its second claim for relief, that under section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), DTSC is entitled to a declaratory judgment that each of the defendants, including C&A Products, is jointly and severally liable in any subsequent action or actions by the DTSC to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site. (ECF No. 77, ¶ 45.)

To establish a claim for recovery of response costs under Section 107(a), DTSC must demonstrate:

> (1) the property at issue is a "facility" as defined in 42 U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred; (3)

the "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan,"; and (4) the defendants are in one of four classes of persons subject to the liability.

*Carson Harbor Village v. County of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (affirming the district court's decision that does not allow a party to recover its response cost for cleanup). CERCLA also contains a provision for declaratory relief. Section 9613(g)(2) provides that in any initial cost-recovery action under section 107, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

C&A Products has a meritorious defense as to whether the response costs were necessary and consistent with the national contingency plan. Furthermore, if DTSC cannot show that it is entitled to recover any of its past costs, its claim for declaratory relief as to its future costs necessarily fails. *See e.g., City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1002-03 (9th Cir. 2010) (holding that past response costs were not recoverable since the City failed to establish Section 107 liability in its initial cost-recovery action; CERCLA declaratory relief as to future response costs was unavailable absent recoverable past costs).

C&A Products, LLC also has a meritorious defense to DTSC's alleged amount of damages. DTSC should be required to prove this amount. *See, e.g., Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.,* 2012 WL 1570844, at *4 (S.D. Cal. May 3, 2012) (finding a meritorious defense where defendants "estimate[d]" that the monetary sums contained in the complaint, upon which plaintiff based its cause of action, were wrong; and explaining that "[w]hether [d]efendants' figures are accurate need not be decided by the Court at this time [because] [d]efendants have alleged sufficient facts to support a potentially meritorious defense regarding the amount of damages").

///

///

1    Furthermore, C&A Products, LLC also has a meritorious defense to prejudgment

2  interest DTSC seeks.  The FAC seeks interest on the response costs DTSC allegedly incurred

3  from each defendant as provided under Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

4    Prejudgment interest is only available if DTSC demanded a sum certain from each

5  defendant. *See United States v. Consolidation Coal Co*., 345 F.3d 409, 416 (6th Cir. 2003)

6  (holding that complaint was not sufficient to satisfy the Section 107(a) written demand

7  requirement because it did not specify the specific amount sought from each defendant). Here,

8  C&A Products has a meritorious defense that prejudgment interest is not available because the

9  FAC is not sufficient specific enough to satisfy Section 107(a)'s written demand requirement in

10 that the amount DTSC seeks from C&A Products.

11   Finally, C&A Products also has a meritorious defense to attorneys' fees.  Neither

12 Section 107, the liabilities and defenses provision, nor Section 113, which authorizes

13 contribution claims, "expressly calls for the recovery of attorney's fees by the prevailing party."

14 *See Key Tronic Corp. v. U.S.*, 511 U.S. 809, 817 (1994) (holding that litigation-related

15 attorney's fees were not recoverable in a CERCLA litigation).

16   Under these circumstances, Continental's claims are meritorious, and the default should

17 be set aside.

18 **IV.    CONCLUSION**

19   For the foregoing reasons, Continental respectfully requests this Court allow Continental

20 to intervene and grant Continental's motion to set aside the default against C&A Products.

21 Dated:   September 20, 2019                    NICOLAIDES FINK THORPE
                                                 MICHAELIDES SULLIVAN LLP
22

23                                      By:              */s/ Sara M. Thorpe*
                                                 Sara M. Thorpe
24                                               Randall P. Berdan
                                          Attorneys for Proposed Intervenor
25                                        The Continental Insurance Company

26

27

28

SARA M. THORPE (SBN: 146529)
sthorpe@nicolaidesllp.com
RANDALL P. BERDAN (SBN: 199623)
rberdan@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone:    (415) 745-3770
Facsimile:    (415) 745-3771

Attorneys for Proposed Intervenor
THE CONTINENTAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>                    Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS AND CROSS CLAIMS. | 2:14-cv-00595-WBS-EFB<br><br>**DECLARATION OF RANDALL P. BERDAN IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO INTERVENE AND SET ASIDE DEFAULT**<br><br>[Pursuant to F.R.C.P. 24, 55(c)]<br><br>Date:        October 21, 2019<br>Time:        1:30 p.m.<br>Place:       Courtroom 5, 14th Floor<br>             501 I Street<br>             Sacramento, CA 95814<br>Judge:       Hon. William B. Shubb<br><br>Action Filed: March 3, 2014 |

1     I, Randall P. Berdan, declare as follows:

2     1.     I am an attorney at law admitted to practice before all courts in the State of

3     California and the United States District Court for the Eastern District of California.  I am

4     senior counsel at Nicolaides Fink Thorpe Michaelides Sullivan LLP which serves as counsel for

5     proposed intervenor The Continental Insurance Company ("Continental") in the above-

6     captioned matter.

7     2.     This Declaration is made in support of Continental's Motion to Intervene and to

8     Set Aside Default in this lawsuit.  I have personal knowledge of the facts contained in this

9     Declaration, unless stated on information and belief, and if called as a witness I could and

10    would competently testify to these facts.

11    3.     On September 10, 2019, Resolute Management, Inc. ("Resolute"), which is the

12    claims administrator for Continental, received notice from Arcina Risk Group about this lawsuit

13    and the Application for Default Judgment against Collins & Aikman Products, LLC ("C&A

14    Products").  A true and correct copy of the September 10, 2019 letter from Arcina Risk Group is

15    attached hereto as Exhibit A.

16    4.     Arcina Risk Group alleges that several insurance policies were issued to "Wickes

17    Corporation and Wickes Companies, Inc., et al" by Continental and Transcontinental Insurance

18    Company.

19    5.     On information and belief, Resolute is conducting searches for insurance policies

20    in response to the letter from Arcina Risk Group.  Resolute continues to investigate.

21    6.     On information and belief, a representative of Resolute contacted counsel for

22    Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control

23    Account on September 19, 2019, just nine days after Resolute received notice from Arcina Risk

24    Group about this lawsuit and the Application for Default Judgment against C&A Products.  The

25    Resolute representative requested that Plaintiffs continue the hearing set for September 25, 2019

26    on their Application for Default Judgment against C&A Products and requested that Plaintiffs

27    stipulate to allow Continental to intervene in this lawsuit, but Plaintiffs refused.

28    / / /

DECLARATION OF RANDALL P. BERDAN IN SUPPORT OF PROPOSED INTERVENOR
CONTINENTAL'S NOTICE OF MOTION AND MOTION TO INTERVENE AND SET ASIDE DEFAULT

1    I declare under penalty of perjury under the laws of the United States of America and the

2    State of California that the above is true and correct.  Executed on September 20, 2019 in San

3    Francisco, California.

4                                              _/s/ Randall P. Berdan_

5                                              Randall P. Berdan

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RANDALL P. BERDAN IN SUPPORT OF PROPOSED INTERVENOR
CONTINENTAL'S NOTICE OF MOTION AND MOTION TO INTERVENE AND SET ASIDE DEFAULT

# Exhibit A

# ARCINA

### R I S K   G R O U P

September 10, 2019

**Via U.S. Mail and E-Mail**
Claimreporting@resolutemgmt.com

Resolute Management
141 W. Jackson Blvd., Suite 1800
Chicago, IL 60604

**IMMEDIATE ATTENTION REQUIRED**

| | | |
|---|---|---|
| Re: | Notice of Suit: | *California Department of Toxic Substances Control and the Toxic Substances Control Account v. Jim Dobbas, Inc., et al., U.S. District Court for the Eastern District of California, Civil Case No.* 2:14-595 WBS EFB Elmira Site Contamination – Solano County California |
| | Insured: | Wickes Corporation and Wickes Companies, Inc., et al |
| | Insurer(s): | Continental Insurance Company Transcontinental Insurance Company |
| | Policy Numbers: | Continental: SRL 3344602 for the period 7/24/1984 to 7/24/1985 |
| | | Continental: SRL 3344617 for the period 7/24/1985 to 7/24/1986 |
| | | Continental: SRU 2101360 for the period 7/24/1985 to 7/24/1986 |
| | | Continental: Unknown policy number for the period 7/24/1985 to 7/24/1986 |
| | | Transcontinental: RDX 2820351 for the period 5/1/1981 to 5/1/1982 |
| | | Transcontinental: RDX 2820433 for the period 4/24/1982 to 4/24/1983 |
| | | Transcontinental: RDX 2820518 for the period 4/24/1983 to 4/24/1984 |

Dear Resolute Claims Unit:

This letter is to tender and advise you of an Application for Default Judgment pending against your insured Collins and Aikman Products, LLC (C&A).  C&A is the successor in interest to the Wickes Companies, Inc. and the Wickes Corporation. This tender is under the identified policies and any other applicable policies that the company may have issued to the Wickes Companies, Inc. or the Wickes Corporation.

Attached hereto please find the Amended Notice of Hearing, setting the hearing on September 25, 2019.  The Application for Default Judgment and Memorandum of Points and Authorities are also attached hereto.  The Department of Toxic Substances Control and the Toxic Substances

Continental Insurance Company and Transcontinental Insurance Company (Resolute)
*Re: Elmira Site*
September 10, 2019
Page 2


Control Account (collectively, DTSC) seek to recover $3,219,449.85 in unreimbursed public funds that DTSC has spent through May 31, 2019 under CERCLA, and a declaration that C&A is liable for DTSC's future response costs at the Elmira Site.

We understand that Travelers intends to seek to intervene in the matter.

As per the policy terms and conditions, we request that you indemnify and defend your insured immediately.  Please direct any future correspondence and communication to the undersigned with copies to:

    Brian M. Rostocki  - Receiver for Collins & Aikman Products, LLC
    ReedSmith LLP
    1201 Market Street, Suite 1500
    Wilmington, DE 19801
    brostocki@reedsmith.com
and
    Olivia W. Karlin
    Deputy Attorney General
    State of California Department of Justice
    300 South Spring Street
    Los Angeles, CA 90013
    Olivia.Karlin@doj.ca.gov

We request that you contact us for additional information regarding the Elmira Site and pending application for a default judgment.

We continue to search for additional coverage for these matters.  **We kindly request you search your archives and underwriting materials and notify us of ANY information, including impairment, related to policies issued to the Wickes Corporation or Wickes Companies, Inc. with respect to the Elmira Site.**

**We also kindly ask that you provide us with copies of any policies, claims, files and underwriting materials in your possession immediately related to policies issued between 1979 and 1987.  Materials may be sent by email to rjanisch@arcinarisk.com or by mail.**

We look forward to hearing from you.


Sincerely,

Richard A. Janisch
RAJ/fr
Enclosures
cc:    brostocki@reedsmith.com
       Olivia.Karlin@doj.ca.gov
       msalem@arcinarisk.com

1  **CLYDE & CO US LLP**
   Alexander E. Potente, State Bar No. 208240
2  Email:  alex.potente@clydeco.us
   Hynki ("John") Jung, State Bar No. 318887
3  Email: john.jung@clydeco.us
   101 Second Street, 24th Floor
4  San Francisco, CA  94105
   Telephone:  415.365.9800
5  Facsimile:   415.24th Floor
   San Francisco, California 94105365.9801
6

7  Attorney for Proposed Intervenor
   THE TRAVELERS INDEMNITY COMPANY
8

9            UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11             SACRAMENTO DIVISION

12

13 CALIFORNIA DEPARTMENT OF TOXIC        Case No. 2:14-CV-00595-WBS-EFB
   SUBSTANCES CONTROL, et al.,
14                                        **DECLARATION OF ALEXANDER E.**
                                          **POTENTE IN SUPPORT OF**
15         Plaintiffs,                    **PROPOSED INTERVENOR THE**
                                          **TRAVELERS INDEMNITY**
16      v.                                **COMPANY'S** *EX PARTE*
                                          **APPLICATION AND NOTICE OF**
17 JIM DOBBAS, INC., a California corporation, **MOTION AND MOTION TO**
   et al.                                 **INTERVENE AND TO VACATE**
18                                        **DEFAULT**
           Defendants,
19                                        [Pursuant to F.R.C.P. 24, 55(c)]

20
                                          Date:       October 21, 2019
21                                        Time:       01:30 p.m.
                                          Ctrm:       Courtroom 5, 14th Floor
22                                                    501 I Street
                                                      Sacramento, CA 95814
23                                        Judge:      Hon. William B. Shubb
24
                                          Complaint Filed:      March 3, 2014
25

26

27

28

4701258
                              1
DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR'S EX PARTE
APPLICATION AND NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1    I, Alexander E. Potente, declare as follows:

2         1.    I am a partner with the law firm of Clyde & Co US LLP, which serves as counsel

3    of the proposed intervenor, The Travelers Indemnity Company ("Travelers") in the above-

4    captioned matter.  The statements made herein are based upon my personal knowledge and are

5    true.  If called as a witness, I could and would competently testify to the following matters under

6    oath.

7         2.    On December 11, 2014, the California Department of Toxic Substances Control

8    and the Toxic Substances Control Account (collectively, "DTSC") filed its First Amended

9    Complaint in *California Department of Toxic Substances Control, et al. v. Jim Dobbas, Inc.*, et al.,

10   United States District Court, Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB

11   ("*DTSC* Action"), in which it named Collins & Aikman Products, LLC ("C&A Products, LLC).

12   DTSC provided notice of the *DTSC* Action and the entry of default in the *DTSC* Action against

13   C&A Products, LLC to Travelers on June 11, 2018, when DTSC served Travelers with a demand

14   letter dated June 7, 2018 for payment of C&A Products, LLC's liabilities in the *DTSC* Action.  A

15   true and correct copy of the June 7, 2018 demand letter without attachments from counsel for

16   DTSC, Olivia W. Karlin, to Travelers is attached hereto as **Exhibit A**.

17        3.    After receiving notice of the default against C&A Products, LLC from DTSC and

18   its demand that Travelers would be liable to DTSC for any judgment entered against C&A

19   Products, LLC, counsel for Travelers promptly engaged in discussions with DTSC, explaining that

20   the putative predecessor to C&A Products, LLC, Collins & Aikman Products Co., had released

21   Travelers from the claims DTSC now asserts against C&A Products, LLC, which arise out of or

22   relating to the property located at 147A Street, Elmira, California 95625 ("Site") in 2000.  True

23   and correct copies of correspondence between counsel for Travelers and counsel for DTSC

24   without attachments are attached hereto as **Exhibit B**.

25        4.    After counsel for Travelers explained in a letter dated January 15, 2019 why the

26   Confidential Settlement Agreement precluded coverage for any claim by DTSC against Travelers

27   as a potential judgment creditor of C&A Products, LLC, and after providing DTSC with a copy of

28   the Confidential Settlement Agreement pursuant an agreement to keep it confidential, Travelers

CLYDE & CO US LLP
101 Second Street, 24ᵗʰ Floor
San Francisco, California 94105
Telephone: (415) 365-9800

4701258

2

DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR'S EX PARTE
APPLICATION AND NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1  heard nothing further from DTSC until after DTSC filed an application for default judgment in the

2  *DTSC* Action.  A true and correct copy of the January 15, 2019 letter from counsel for Travelers to

3  DTSC is attached hereto as **Exhibit C**.

4       5.       Despite claiming that Travelers was C&A Products, LLC's insurer for any future

5  judgment against C&A Products, LLC in the *DTSC* Action, DTSC provided no advance notice to

6  Travelers that it intended to seek entry of default judgment against C&A Products, LLC.

7  Travelers only learned of DTSC's application for entry of default judgment because its counsel

8  was monitoring the docket.

9       6.       DTSC has stated in legal filings that it will seek to enforce its judgment against

10  Travelers under Insurance Code Sec. 11580.  A true and correct copy of DTSC's petition for

11  appointment of receiver, filed with Delaware Court of Chancery on November 13, 2014, in which

12  DTSC represents that it "will not seek enforcement of the judgment directly against C&A

13  Products, LLC, but only as a means to pursue a direct action against the company's historic

14  insurers" is attached hereto as **Exhibit D**.

15       7.       When DTSC did file its application for entry of default judgment against C&A

16  Products, LLC on August 21, 2019, counsel for Travelers contacted counsel for DTSC, Laura

17  Zuckerman and Olivia W. Karlin of California Department of Justice, on September 6, 2019, by

18  telephone and by email to request that DTSC continue the hearing on its motion for judgement

19  against C&A Products, LLC and requested that DTSC stipulate to allowing Travelers to intervene.

20  After having received no response, counsel for Travelers sent a follow up request on September

21  11, 2019.  On September 12, 2019, counsel for DTSC sent a letter to counsel for Travelers and

22  stated that DTSC was "not willing either to stipulate to intervention by Travelers or to postpone

23  the date of the September 25, 2019, hearing on the motion for default judgment so that Travelers

24  may intervene, move to vacate C&A Products, LLC's default, and oppose DTSC's motion for

25  default judgment."  Counsel for DTSC further stated that it would be prejudiced by a continuance

26  because the Receiver's appointment for C&A Products, LLC is set to expire in October 2019.  On

27  September 17, 2019, counsel for Travelers contacted Brian Rostocki, the receiver for C&A

28  Products, LLC, via telephone to inquire the status and duration of his receivership in the DTSC

DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR'S EX PARTE
APPLICATION AND NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

1    Action.  Rostocki confirmed, pursuant to the Delaware Court of Chancery's December 14, 2014

2    order granting DTSC's petition for the appointment of a receiver, that his appointment does not

3    expire until the conclusion of the *DTSC* Action and any appeals thereof or until the Delaware court

4    terminates his receivership upon motion.  True and correct copies of correspondence between

5    counsel for Travelers and counsel for DTSC are attached hereto as **Exhibit E**.

6         8.    On September 17, 2019, counsel for Travelers contacted counsel for DTSC via

7    email to inform DTSC of Travelers' intent to move to intervene and to vacate the entry of default

8    against C&A Products, LLC in the DTSC Action, and to file an *ex parte* application for

9    continuance of the hearing date on DTSC's motion for default judgment.  In the same e-mail,

10   counsel for Travelers also inquired whether DTSC would be filing an opposition to Travelers' *ex*

11   *parte* application.  A true and correct copy of a September 17, 2019 email from counsel for

12   Travelers to counsel for DTSC is attached hereto as **Exhibit F**.

13        9.    On September 17, 2019, counsel for DTSC notified counsel for Travelers that

14   DTSC will file an opposition to Travelers' *ex parte* application.  A true and correct copy of a

15   September 17, 2019 letter from counsel for DTSC to counsel for Travelers is attached hereto as

16   **Exhibit G**.

17        I declare under penalty of perjury under the laws of the United States of America and the

18   State of California that the above is true and correct.  Executed on September 18, 2019 in San

19   Francisco, California.

20

21

22   _____
                Alexander E. Potente

23

24

25

26

27

28

DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR'S EX PARTE
APPLICATION AND NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT

PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 101 Second Street, 24th Floor, San Francisco, CA 94105.

On September 18, 2019, I served true copies of the following document(s) described as **DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR THE TRAVELERS INDEMNITY COMPANY'S EX PARTE APPLICATION AND NOTICE OF MOTION AND MOTION TO INTERVENE AND TO VACATE DEFAULT** on the interested parties in this action as follows:

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 18, 2019, at San Francisco, California.


_/s/ Trish Marwedel_
Trish Marwedel

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

4701258

DECLARATION OF ALEXANDER E. POTENTE IN SUPPORT OF PROPOSED INTERVENOR THE
TRAVELERS INDEMNITY COMPANY'S EX PARTE APPLICATION AND NOTICE OF MOTION AND
MOTION TO INTERVENE AND TO VACATE DEFAULT



**SLM / ALL**
**Transmittal Number: 18291792**
**Date Processed: 06/12/2018**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Pamela Beyer<br>The Travelers Companies, Inc.<br>385 Washington Street,  9275-LC12L<br>Saint Paul, MN 55102 |

| | |
|---|---|
| **Entity:** | The Travelers Indemnity Company<br>Entity ID Number  2317465 |
| **Entity Served:** | Travelers Insurance |
| **Title of Action:** | California Department of Toxic Substances Control vs. Jim Dobbas, Inc |
| **Document(s) Type:** | Other |
| **Nature of Action:** | Contract |
| **Court/Agency:** | U.S. District Court Eastern District, California |
| **Case/Reference No:** | 2:14-C V-00 S 95-W I3 S-tTB |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 06/11/2018 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Ulivia W, Karlin<br>213-269-6000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA  90013

Public: (213) 269-6000
Telephone: (213) 269-6333
Facsimile: (213) 897-2802
E-Mail: Olivia.Karlin@doj.ca.gov

June 7, 2018

Corporation Service Company
DBA CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833-3505

RE:    Travelers Insurance Policies Relating to California Department of Toxic Substances
       Control v. Jim Dobbas, Inc., et. al.
       United States District Court, Eastern District of California, Case No. 2:14-CV-00595-
       WBS-EFB

Dear Corporation Service Company:

        The California Attorney General's Office represents the California Department of Toxic
Substances Control (DTSC) in the above-referenced lawsuit.  The lawsuit was brought under
section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for the recovery of response costs that
DTSC has incurred in connection with releases and threatened releases of hazardous substances,
at, beneath, and/or from the approximately 7.5 acre property located northwest of the intersection
of A Street and Holdener Road in the community of Elmira, Solano County, California (the Site).
The property has a street address of 147A Street, Elmira, California 95625.  I am enclosing a
copy of the First Amended Complaint which names Pacific Wood Preserving and Collins and
Aikman Products, L.L.C., as defendants.

        Pacific Wood Preserving operated a wood treatment and preserving business at the Site
from 1972 to September 1979.  Pacific Wood Preserving owned the Site from 1977 to 1979.  In
September 1979, Pacific Wood Preserving sold the Site and wood preserving business to the
Wickes Corporation (Wickes).  Wickes operated the site from 1979 to 1982.  In 1991, Wickes
changed its name to Collins & Aikman Group.  In 1994, Collins & Aikman Group merged into
Collins & Aikman Products. L.L.C, who owned the Site until 1997.

        During Pacific Wood Preserving's and Wickes' ownership and operation of the Site,
hazardous substances were released into the environment, which included arsenic, chromium,
and copper.  These hazardous substances were constituents of wood preserving chemicals used at
the Site.

June 7, 2018
Page 2

On June 2, 2014, the clerk entered a default judgment against Pacific Wood Preserving. Enclosed is a copy of the Clerk's entry of default. On March 26, 2015, the clerk entered a default judgment against Collins & Aikman Products, L.L.C. Enclosed is a copy of the Clerk's entry of default against Colling & Aikman Products, L.L.C.

Pursuant to section 107(a) of CERCLA, Pacific Wood Preserving and Collins & Aikman Products, L.L.C. are jointly and severally liable, without regard to fault, for DTSC's costs incurred in response to the release of hazardous substances at the Site. DTSC's unreimbursed response costs are estimated to exceed $3.4 million.

All or part of Wickes', and therefore Collins & Aikman Product, L.L.C.'s, liability under the judgment is covered by one or more insurance policies with you. These policies are:

Wickes. Travelers Policy 11501
Wickes. Travelers Policy 11448
Wickes, Travelers Policy 11449

I have enclosed copies of these three policies with this letter.

Now that DTSC has secured judgments against Pacific Wood Preserving and Collins & Aikman Products, L.L.C. for response costs incurred at the Site, DTSC may bring an action against you on the above-referenced policies, subject to their terms and limitations to recover on that judgment. DTSC seeks to do that now. Please contact me to discuss resolution of this matter.

Sincerely,

OLIVIA W. KARLIN
Deputy Attorney General

For      XAVIER BECERRA
Attorney General

OWK:jfa
Enclosures

Docket No.: LA2012602448

**ER-253**

# CLYDE&CO

Clyde & Co US LLP
101 Second Street
24th Floor
San Francisco, California 94105
Telephone:  (415) 365-9800
Facsimile:  (415) 365-9801
www.clydeco.us
Alexander E. Potente
alex.potente@clydeco.us

**VIA EMAIL AND U.S. MAIL**

July 25, 2018

Olivia W. Karlin
Deputy Attorney General
Department of Justice State of California
300 S. Spring Street, Suite 1702
Los Angeles, CA 90013

**Re:**   **Travelers Insurance Policies Relating to California Department of Toxic Substances
Control v. Jim Dobbas, Inc., et al.
United States District Court, Eastern District of California, Case No. 2:14-cv-00595**

Dear Ms. Karlin:

This firm represents The Travelers Indemnity Company ("Travelers") in connection with the matters raised in your letter dated June 7, 2018 (served on June 11, 2018), in which you state that the California Department of Toxic Substances Control ("DTSC") secured a judgment against Collins & Aikman Products, LLC and Pacific Wood Preserving in the above referenced lawsuit for costs incurred in response to the release of hazardous substances at the site located at 147A Street, Elmira, Solano County, California (the "Site").  We understand that DTSC seeks reimbursement of costs in excess of $3,400,000.  DTSC contends that Collins & Aikman Products, LLC's liability is covered under one or more Travelers policies issued to Wickes Corp. As discussed below, Collins & Aikman Products Co., formerly Collins & Aikman Group, Inc., Wickes Companies, Inc., and The Wickes Corporation (collectively "Collins & Aikman") settled the environmental claim for that Site, which was the subject of prior coverage litigation, and released Travelers from any and all such environmental claims.

The Travelers polices contain the following condition:

Action Against Company.  No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Clyde & Co US LLP is a Delaware limited liability partnership with offices in
Atlanta, Chicago, Long Beach, Los Angeles, Miami, New Jersey, New York, Orange County, San Francisco and Washington D.C.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.
3935726                                                              **ER-254**

# CLYDE&CO

Olivia W. Karlin
July 25, 2018
Page 2

> Any person or organization or the legal representative thereof who has secured
> such judgment or written agreement shall thereafter be entitled to recover under
> this policy to the extent of the insurance afforded by this policy....

At the outset we note that the clerk's entry of default against Collins & Aikman Products, LLC
on 3/26/201 is not a final judgment against the insured after actual trial. According to the order,
Collins & Aikman Products, LLC failed to appear, plead or answer the complaint within the time
allowed by law. The mere fact that defendant's default has been entered does not constitute an
adjudication of any of the issues raised in the underlying complaint. *See Arango v. Guzman
Travel Advisors,* 761 F.2d 1527, 1530 (11th Cir. 1985); *Johnson v. Dayton Elec. Mfg. Co.,* 140
F.3d 781, 783 (8th Cir. 1998); *Bixler v. Foster,* 596 F.3d 751, 762 (10th Cir. 2010).

California Insurance Code Section 11580 authorizes a judgment creditor to recover
directly against the insurer "on the policy and subject to its terms" when a judgment is secured
against the insured. Cal. Ins. Code § 11580(b)(2). The effect of section 11580 is to make an
injured party who obtains a final judgment against the insured a third party beneficiary of the
insurance contract between the insured and his or her carrier. *See Murphy v. Allstate Ins. Co*., 17
Cal. 3d 937, 943 (1976); *Hand v. Farmers Ins. Exchange* (1994) 23 Cal. App. 4th 1847, 1858
(1994). A third-party beneficiary of a contract can gain no greater rights under that contract than
the contracting parties. *See Zahn v. Canadian Indem. Co*. 57 Cal. App. 3d 509, 513 (1976).
Therefore, a judgment creditor stands in the shoes of the insured and has no greater rights than
the insured.

DTSC acknowledged in the First Amended Complaint filed in Case No. 2:14-cv-00595
that Collins & Aikman had been addressing the environmental contamination at the Site for
many years.

> From the 1980's through 2005, Wickes and its successor Collins & Aikman
> Products Co. took various actions under oversight of the Department and its
> predecessor agency to address environmental contamination at, around, and/or
> beneath the Site. Those actions included, among other things, soil excavation,
> installing an asphalt cap over contaminated soils, constructing a building and a
> drainage system over another contaminated area of the Site, installing and
> operating a groundwater extraction and treatment system, and groundwater
> monitoring.

DTSC's First Amended Complaint, ¶ 20. DTSC asserted a claim against Collins & Aikman and
other defendants "under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for the recovery
of response costs and interest on such response costs that Plaintiffs have incurred in connection
with releases and threatened releases of hazardous substances, including arsenic, chromium, and
copper, at, beneath, and/or from the approximately 7.5 acre property located northwest of the

**ER-255**

# CLYDE&CO

Olivia W. Karlin
July 25, 2018
Page 3

intersection of A Street and Holdener Road in the community of Elmira, Solano County, California." *Id.*, ¶ 4. DTSC alleged it incurred response costs related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site. *Id.*, ¶ 34. DTSC's alleged unpaid costs related to the Site were incurred beginning November 2005. *Id.*, ¶ 35.

To the extent DTSC is or becomes a judgment creditor, DTCS has no greater rights under the Travelers policies than does the insured, Collins & Aikman. Collins & Aikman has released Travelers from any and all environmental claims by or against Collins & Aikman, including those in connection with the Site, and agreed that Travelers' obligations under the Travelers policies are fully discharged in connection with those claims. Accordingly, DTSC cannot assert a claim under the Travelers policies for this Site and has no right to reimbursement as a judgment creditor or otherwise for the sums it allegedly incurred since Collins & Aikman has no such rights against Travelers.

By way of brief background, Collins & Aikman filed an action against The Travelers Indemnity Company in United States District Court for the Northern District of California, Case No. C 97-3639, on or about October 3, 1997. Collins & Aikman asserted that the underlying claims asserted by DTSC and others for the cost of investigation and remediating the alleged environmental conditions at the Site were covered under the insurance policies issued by Travelers, including the policies identified in and attached to your letter. A copy of Collins & Aikman's First Amended Complaint is attached. Once the complaint was served on Travelers, the parties began discussing the resolution of the case outside of court. *See* Plaintiff's Request for Dismissal dated January 7, 1998, also attached. The parties initially entered into a Standstill and Tolling Agreement. Ultimately, they settled the litigation and entered into the Confidential Settlement Agreement and Release, effective June 2000, whereby a settlement amount was paid in exchange of the release of all environmental claims, including those arising out of the Site. As part of the settlement, Collins & Aikman dismissed the entire coverage action, Case No. C 97-3639, with prejudice on July 10, 2000. *See* attached docket report.

As we have discussed with you, due to the confidentiality provisions in the settlement agreement, Travelers cannot disclose it to DTSC without Collins & Aikman's consent. Collins & Aikman, the insured entity and party to the settlement agreement, has since dissolved and giving notice consistent with the provisions of the agreement would be futile. Travelers is willing provide a redacted copy for purposes of addressing DTSC's present claim and enforcing the terms of the agreement, if you and Ms. Murai of DTSC will agree to maintain the confidentiality of the Confidential Settlement Agreement and then return the agreement to us, without retaining a copy. We also understand that DTSC, as a public agency, needs to be able to document the settlement in the public record, such as with a declaration under penalty of perjury stating that the environmental claims regarding the Site were previously settled and released or a

**ER-256**

CLYDE&CO

Olivia W. Karlin
July 25, 2018
Page 4

more heavily redacted copy of the settlement agreement.  We are in the process of addressing this issue with our client.

Please confirm that, upon DTSC being able to verify the settlement and release, DTSC will not be pursuing Travelers for its response costs incurred in connection with the Site.

Very truly yours,

*Alex Potente*

Alexander E. Potente

AEP:tm
Enclosures

**ER-257**

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013

Public: (213) 269-6000
Telephone: (213) 269-6333
Facsimile: (213) 897-2802
E-Mail: Olivia.Karlin@doj.ca.gov

January 3, 2019

Alex Potente, Esq.
Lenell McCallum, Esq.
101 Second Street, 24th Floor
San Francisco, CA 94105

RE:   Travelers Insurance Policies Relating to California Department of Toxic Substances
       Control v. Jim Dobbas, Inc., et. al.
       United States District Court, Eastern District of California, Case No. 2:14-CV-00595-
       WBS-EFB

Dear Mr. Potente and Ms. McCallum:

Thank you for providing us with a redacted copy of the Confidential Settlement
Agreement and Release, between Collins & Aikman Products, Co. ("Collins & Aikman") and
Travelers' Indemnity Company, the Travelers' Indemnity Company of Illinois, and the
Travelers' Casualty and Surety Company (collectively "Travelers") entered into in July 2000
(the "2000 Settlement Agreement"). After reviewing the agreement, we have a few follow up
questions for you.

The California Department of Toxic Substances Control ("DTSC") was not a party to the
2000 Settlement Agreement. Also, the 2000 Settlement Agreement specifically states it is not
binding on non-parties to the agreement. (See Settlement Agreement, paragraph 11.) Does
Travelers have evidence that DTSC was involved in the 2000 Settlement Agreement in any way?
Absent DTSC being a party to the 2000 Settlement Agreement, it appears that the 2000
Settlement Agreement cannot affect DTSC's rights in the Travelers' insurance policies, and that
DTSC may still have a claim as against those policies. When Travelers entered into the 2000
Settlement Agreement, what did Travelers calculate the insurance policy limits for all of the
subject policies to be?

The law does not allow the insured and insurer to enter an agreement which extinguishes
a third-party beneficiary's rights. (See *Shapiro v. Republic Indem. Co. of Am.* (1959) 52 Cal.2d
437, 440 [once coverage is triggered, the insured and insurer cannot modify policies in any
manner that would affect the interest of the injured party; the injured party is a third party
beneficiary of the insurance policy, whose interest in the policy must "not be altered or

**ER-258**

January 3, 2019
Page 2

conditioned by independent action of the insurer and the insured."])  Please let us know if you
have legal authority to the contrary.

Accordingly, Travelers and Collins and Aikman did not have legal authority to enter any
agreement that extinguishes DTSC's rights in the insurances policies.  Thus, the 2000 Settlement
Agreement does not affect DTSC's rights in the Travelers' insurance policies.

Enclosed with the hard copy of this letter is the 2000 Settlement Agreement, which I am
returning to you.  Please let us know if you would like to set up a time to discuss the questions
set out in this letter.

Sincerely,

OLIVIA W. KARLIN
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

cc:  Vivian Murai
     DTSC

OWK:jfa
Enclosure

**ER-259**

# CLYDE&CO

Clyde & Co US LLP

101 Second Street

24th Floor

San Francisco, California 94105

Telephone:  (415) 365-9800

Facsimile:  (415) 365-9801

www.clydeco.us

Alexander E. Potente

alex.potente@clydeco.us

January 15, 2019

*VIA E-MAIL AND U.S. MAIL*

Olivia W. Karlin, Esq.
Deputy Attorney General
State of California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

Re:   California Department of Toxic Substances Control v. Jim Dobbas, Inc., et al.
        Clyde Ref:      10119309

Dear Ms. Karlin:

We are in receipt of your letter dated January 3, 2019 and acknowledge that you have returned the hard copy of the Confidential Settlement Agreement and Release between Travelers and Collins & Aikman Products Co. ("Collins & Aikman"), effective July 2000 (the "2000 Settlement Agreement") as agreed.

California Department of Toxic Substances Control ("DTS") was not a party to the 2000 Settlement Agreement.  At the time the settlement agreement was executed, DTSC had not sued Collins & Aikman for recovery of response costs incurred in connection with releases and threatened releases of hazardous substances at the Elmira site.  In fact, DTSC did not sue Collins & Aikman for fourteen more years:  DTSC filed suit in 2014.  Moreover, as alleged in that suit, DTSC did not suffer any loss until November 2005 when it began to take response actions and to incur costs related to the Elmira site.  Thus, DTSC is not in the same position as the injured plaintiffs in *Shapiro v. Republic Indemnity Co. of America,* 52 Cal. 2d 437 (1959).  In Shapiro, an automobile insurer, Republic Indemnity, reformed its policy <u>after</u> plaintiffs obtained a judgment of liability against the Republic Indemnity's insureds and after the third-party plaintiff had a vested right in the Republic Indemnity policy.  In contrast to *Shapiro*, when Travelers and Collins & Aikman effectuated the Settlement Agreement in July of 2000, DTSC had no vested right as a third-party claimant.  It had not even filed a suit or even suffered any liquidated damages.

Clyde & Co US LLP is a Delaware limited liability partnership with offices in

Atlanta, Chicago, Los Angeles, Miami, New Jersey, New York, Orange County, San Francisco and Washington D.C.

Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.

**ER-260**

CLYDE&CO

Olivia W. Karlin, Esq.
Deputy Attorney General
January 15, 2019
Page 2


Furthermore, *Shapiro* merely held that the reformation judgment the insurer obtained did not preclude, by operation of res judicata, the injured plaintiffs from recovering under reformed insurance policy. *See Shapiro,* 52 Cal. 2d at 439. *Shapiro* still allowed the insurer to assert reformation as a defense to coverage against the third party plaintiff. *Id*. at 440. Similarly, in any action DTSC may file against Travelers, Travelers may similarly raise the defenses it has against Collins & Aikman, including the 2000 settlement of all environmental claims arising out of the Elmira site. *See* Cal. Ins. Code § 11580(b)(2) (judgment creditor authorized to recover against the insurer "on the policy and subject to its terms and limitations" when a judgment is secured).

No case has extended the holding of *Shapiro* to preclude a settlement between an insurer and its insured under circumstances remotely similar to those at issue here. Your assertion that Travelers and Collins & Aikman did not have legal authority to enter into the 2000 settlement agreement has no foundation in fact or law.

When the 1997 action instituted by Collins & Aikman against Travelers for coverage arising out of the Elmira site was settled, no suit had been filed by DTSC. Collins & Aikman was incurring the costs of investigating and remediating the alleged environmental contamination, under the oversight of DTSC. Under California law, the duty to defend does not extend to costs associated with an administrative investigation or other proceeding against an insured related to alleged environmental contamination. *See Foster-Gardner, Inc. v. National Union Fire Ins. Co*., 18 Cal. 4th 857 (1998) (rejecting the policyholder's argument that the insurers were required to defend it against an order from the DTSC requiring the policyholder to investigate potential contamination and prepare a remedial investigation and feasibility study and holding that administrative proceedings against an insured regarding alleged environmental contamination do not constitute a suit and that a suit is "a court proceeding initiated by the filing of a complaint").

Nor was the defense of the 2014 action DTSC filed against Collins & Aikman ever tendered to Travelers. California law, as articulated in California Supreme Court in *Aerojet– General Corp. v. Transport Indemnity Co*., 17 Cal. 4th 38 (1997), limits coverage for site investigation to those occurring "between tender of the defense and conclusion of the action." *Id.* at 61*; accord Foster–Gardner, Inc. v. Nat'l Union Fire Ins. Co*., 18 Cal.4th at 886 (holding that "site investigation expenses incurred prior to the instigation of a lawsuit against the insured are not defense costs the insurer must incur....because the insurer does not yet have a duty to defend the insured."). All of the costs incurred by DTSC occurred before tender of the defense of the DTSC action to Travelers and are not covered under the Travelers policies, regardless of the release, and are therefore not covered for this additional reason.

**ER-261**

# CLYDE&CO

Olivia W. Karlin, Esq.
Deputy Attorney General
January 15, 2019
Page 3


We are available to discuss the above.

Very truly yours,

Alexander E. Potente


AEP:tm

**ER-262**

EFiled: Jan 14 2014 01:09PM EST
Transaction ID 56332830
Case No. 10348-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE:                                          )
COLLINS & AIKMAN PRODUCTS, LLC,                 )      C.A. No. _____
a cancelled Delaware limited liability company  )

## VERIFIED PETITION FOR THE APPOINTMENT OF A RECEIVER FOR A CANCELLED LIMITED LIABILITY COMPANY

Petitioner California Department of Toxic Substances Control, a California state agency, on behalf of itself and California's Toxic Substances Control Account (collectively "DTSC"), petitions for appointment of a receiver under 6 Delaware Code § 18-805 as follows:

## INTRODUCTION

1.    DTSC requests an order under the Delaware Limited Liability Company Act (the "Act"), section 18-805 appointing a receiver for Collins & Aikman Products, LLC (C&A Products LLC), a Delaware limited liability company for which a Certificate of Cancellation was filed on or about August 28, 2013.  A true and correct copy of the Certificate of Cancellation attached as Exhibit 1.

2.    DTSC petitions for appointment of a receiver to allow DTSC to add C&A Products LLC as an additional defendant in a pending federal environmental cost recovery case entitled *California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al.*, No. 2:14-cv-00595 (E.D. Cal., filed March 3, 2014)

1

(hereinafter *DTSC v. Dobbas*).  A copy of the complaint in that case is attached as Exhibit 2.

3.   DTSC wants to add C&A Products LLC as a defendant in *DTSC v. Dobbas* as the first step in pursuing historic insurance coverage of C&A Products LLC for DTSC's costs of cleaning up a contaminated property in California. Under California law, a judgment against C&A Products LLC is necessary before DTSC can pursue a direct action against the company's historic insurers.  DTSC seeks to add C&A Products LLC as a defendant in *DTSC v. Dobbas* to obtain such a judgment, which in turn would allow a direct action against the company's historic insurers.  DTSC will not seek enforcement of the judgment directly against C&A Products LLC, but only as a means to pursue a direct action against the company's historic insurers.  To ensure that C&A Products LLC has the capacity to be sued in *DTSC v. Dobbas*, DTSC requests that a receiver be appointed for the company under 6 *Del. C.* § 18-805.

## BACKGROUND

4.   DTSC is a public agency of the State of California, organized and existing under California Health and Safety Code section 58000 et seq.  It is responsible under California law for determining whether there has been, and for responding to, a release and/or threatened release of a hazardous substance into the environment.  The Toxic Substances Control Account is an account within the

2

State of California General Fund that DTSC administers to help pay for environmental cleanups.

5.      C&A Products LLC was formed on or about December 6, 2007, as a conversion of the Delaware corporation Collins & Aikman Products Co.  Collins & Aikman Products Co. was the successor by merger to the Delaware corporation Collins & Aikman Group, Inc., which was formerly known as Wickes Companies, Inc., and before that, The Wickes Corporation (collectively "Wickes").  True and correct copies of the records evidencing this corporate history are attached as Exhibit 3 through 7.

6.      From on or about September 12, 1979 through approximately 1982, Wickes conducted wood preserving operations at an approximately 7.5 acre property located northwest of the intersection of A Street and Holdener Road in the community of Elmira, Solano County, California.  Wickes and its successor Collins & Aikman Products Co. also owned the property from on or about September 12, 1979 until on or about March 20, 1997.  The property has a street address of 147 A Street, Elmira, Solano County, California 95625, and is referred to herein as "the Site."

7.      At various times since on or about September 12, 1979, Wickes and/or Collins & Aikman Products Co. released "hazardous substances" as defined in the Comprehensive Environmental Response, Compensation, and Liability Act

3

of 1980 ("CERCLA") (42 U.S.C. section 9601(14)), into the environment at and

from the Site.  These hazardous substances included arsenic, chromium, and

copper, which were constituents of wood preserving chemicals that Wickes used at

the Site.  The releases of those hazardous substances, along with those of a prior

owner and operator of the Site (Pacific Wood Preserving), contaminated the soil

and groundwater.

8.     Beginning in the 1980s, Wickes and Collins & Aikman Products Co.

took various actions under the oversight of DTSC and its predecessor agency to

address environmental contamination at, around, and/or beneath the Site.  Collins

& Aikman Products Co. sold the Site in 1997 to two other owners (Jim Dobbas,

Inc. and Continental Rail, Inc.), but continued to take those actions at the Site until

2005.  But in May 2005, Collins & Aikman Products Co. filed a Chapter 11

petition in the United States Bankruptcy Court for the Eastern District of Michigan,

Case No. 05-55932, and stopped taking actions to address contamination at,

around, and/or beneath the Site.  The two other owners of the Site also failed to

take the actions necessary to address that contamination.

9.     From November 2005 to the present, DTSC has taken "response"

actions of the Site, as that term is defined in CERCLA (42 U.S.C. § 9601(25)),

related to the release and/or threatened release of hazardous substances at the Site.

DTSC incurred expenses taking response actions at the Site; DTSC's unpaid costs

4

related to the Site from November 2005 through September 2013 total

$2,202,176.92, exclusive of interest.  DTSC expects to continue incurring

additional response costs related to the release and/or threatened release of

hazardous substances at, beneath, and/or from the Site

**BANKRUPTCY STIPULATION**

10.     In the Chapter 11 bankruptcy of Collins & Aikman Products Co., the

bankruptcy court preserved DTSC's ability to sue Collins & Aikman Products Co.

in state or federal court in the future, and obtain a judgment against the company to

allow DTSC to pursue a direct action against the company's past insurers

concerning the Site.  True and correct copies of the stipulation containing these

terms, and the bankruptcy court's order approving it, are attached as Exhibits 8 and

9, respectively.  The bankruptcy court ordered that the automatic stay and

injunction under the confirmed plan of reorganization for Collins & Aikman

Products Co. and other debtors be modified to permit DTSC to prosecute legal or

administrative actions against the debtors with respect to the Site, up to and

including the entry of judgment against the debtors, provided that no such

judgment may be collected against the debtors, the trusts created under the

confirmed plan, and each of their respective officers, directors, employees, agents

and attorneys.  Furthermore, the bankruptcy court ordered that DTSC may file

actions against the debtors to establish liability and to seek recovery of debtors'

5

insurance proceeds in any non-bankruptcy forums, whether administrative, or in

state or federal court, including in California, and none of the debtors could object

on the ground that such action is barred by the bankruptcy.  Ex. 8 at 6-8, ¶¶ 6-11;

Ex. 9 at 60, ¶ 114.

## **BASIS FOR THIS PETITION**

11.    Section  18-805 of the Act authorizes the Court of Chancery to

appoint a receiver for a cancelled Delaware limited liability company on

application of "any person who shows good cause therefor, at any time:"

> When the certificate of formation of any limited liability company
> formed under this chapter shall be canceled by the filing of a
> certificate of cancellation pursuant to § 18-203 of this title, the Court
> of Chancery, on application of any creditor, member or manager of
> the limited liability company, or any other person who shows good
> cause therefor, at any time, may either appoint 1 or more of the
> managers of the limited liability company to be trustees, or appoint 1
> or more persons to be receivers, of and for the limited liability
> company, to take charge of the limited liability company's property,
> and to collect the debts and property due and belonging to the limited
> liability company, with the power to prosecute and defend, in the
> name of the limited liability company, or otherwise, all such suits as
> may be necessary or proper for the purposes aforesaid, and to appoint
> an agent or agents under them, and to do all other acts which might be
> done by the limited liability company, if in being, that may be
> necessary for the final settlement of the unfinished business of the
> limited liability company. The powers of the trustees or receivers may
> be continued as long as the Court of Chancery shall think necessary
> for the purposes aforesaid.

6

12.     Here, there is good cause for appointment of a receiver for C&A
Products LLC.  DTSC seeks to add C&A Products LLC as an additional defendant
in *DTSC v. Dobbas*, as the first step in pursuing historic insurance coverage of
C&A Products LLC.  DTSC has information that such historic policies exist and
may not have been exhausted through other settlements or judgments in favor of
other claimants.  Therefore, these historic insurance policies may be a source of
payment for DTSC's response costs at the Site.

13.     Under California law, a judgment against an insured person or
company is generally necessary before a third party claimant can pursue a direct
action against the person's or company's insurer.  Cal. Ins. Code § 11580(b)(2);
*Royal Indem. Co. v. United Enterprises, Inc*., 162 Cal.App.4th 194, 205 (2008).
None of the limited exceptions to this rule applies here, and DTSC therefore must
obtain a judgment against C&A Products LLC for DTSC's response costs at the
Site before DTSC can pursue a direct action against C&A Products LLC's historic
insurers.  To do so, DTSC must first add C&A Products LLC as a defendant in
*DTSC v. Dobbas*.

14.     To add C&A Products LLC as a defendant in *DTSC v. Dobbas*, DTSC
must ensure that C&A Products LLC has the capacity to be sued in that case under
Federal Rule of Civil Procedure 17(b)(3).  Under Rule 17(b)(3), capacity to be
sued is generally determined "by the law of the state where the court is located,"

7

which for *DTSC v. Dobbas* is in California.  California law provides that "The law of the state or other jurisdiction under which a foreign limited liability company [such as C&A Products LLC] is formed governs . . . [t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers."  Cal. Corp. Code § 17708.01(a).  Under this language and California's choice of law rules, Delaware law governs the capacity of a Delaware limited liability company to be sued in federal court in California.  *Parker v. Dean Transportation, Inc.*, No. CV 13–02621, 2013 WL 7083269, *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014).  Under Delaware law, a cancelled limited liability company may not be sued, unless a trustee or receiver is appointed under the procedure described in section 18-805 of the Act or the certificate of cancellation is nullified. 6 Del. C. § 18-803(b); *Matthew v. Laudamiel*, C.A. No. 5957–VCN, 2012 WL 605589, *21 (Del. Ch. Feb. 21, 2012  These authorities indicate that there is good cause to appoint a receiver, to ensure that C&A Products LLC has the capacity to be sued in *DTSC v. Dobbas*.

15.    Appointing a receiver for C&A Products LLC will not cause prejudice to the limited liability company.  DTSC will not seek enforcement of any judgment directly against C&A Products LLC; in fact, the bankruptcy court stipulation and

8

order described above prevent it.  DTSC only seeks such a judgment as a means to pursue a direct action against the company's historic insurers.

16.     C&A Products LLC has no known assets apart from the historic insurance policies referenced above.  Therefore, DTSC agrees to pay the reasonable costs of the receiver appointed by the Court, unless and until an insurer of C&A Products LLC begins defending the company.

WHEREFORE, DTSC respectfully requests that the Court enter an Order pursuant to 6 *Del. C.* § 18-805, in the form filed herewith, appointing a receiver for Collins & Aikman Products, LLC.

Dated: November 13, 2014                    PINCKNEY, WEIDINGER, URBAN
                                            & JOYCE LLC

                                             */s/ Michael A. Weidinger*
                                            Michael A. Weidinger (DE No. 3330)
                                            1220 N. Market Street, Suite 950
                                            Wilmington, DE 19801
                                            Telephone:  (302) 504-1497
                                            Facsimile:   (302) 655-5123
                                            Email:        mweidinger@pwujlaw.com

                                            *Counsel for Petitioner*

9

**Jung, John**

| | |
|---|---|
| **From:** | Potente, Alex <Alex.Potente@clydeco.us> |
| **Sent:** | Friday, September 6, 2019 9:01 AM |
| **To:** | Laura.Zuckerman@doj.ca.gov |
| **Cc:** | Jung, John |
| **Subject:** | Wickes/Collins & Aikman –  DTSC v. Dobbas – Travelers intends to intervene |

Laura:  per my voicemail, I represent certain Travelers entities, which issued insurance policies to entities affiliated with Collins & Aikman Products, LLC.  Travelers intends to intervene in the matter DTSC v. Dobbas, EDCA, 2:14-cv-00595-WBS-EFB, and respectfully requests that the hearing of application for default judgment against Collins & Aikman Products be reset so that Travelers may first intervene in this matter.

Please call me at your convenience to discuss these matters.  Thank you.

**Alex Potente**
Partner | Clyde & Co US LLP
**Direct Dial:** 415 365 9869 | **Mobile:**  415 845 3049
alex.potente@clydeco.us



101 Second Street | 24th Floor | San Francisco | CA
94105 | USA
**www.clydeco.us**

**Jung, John**

| | |
|---|---|
| **From:** | Potente, Alex <Alex.Potente@clydeco.us> |
| **Sent:** | Friday, September 6, 2019 6:04 PM |
| **To:** | Laura.Zuckerman@doj.ca.gov; Olivia W. Karlin |
| **Cc:** | Jung, John |
| **Subject:** | Wickes - DTSC v. Dobbas - please find the attached cases liberally allowing intervention by an insurer |
| **Attachments:** | Reliance Ins Co v Superior Court.doc; Kaufman And Broad Communities Inc v Performance Plastering Inc.doc; Utica Mut Ins Co v Hamilton Supply Co.doc; BGN Fremont Square Ltd v Chung.doc |

Ms. Karlin and Ms. Zuckerman:

As we discussed, please find the attached cases liberally allowing intervention by an insurer, including an insurer that has reserved its rights regarding whether coverage exists or has disclaimed coverage, to prevent a default judgment from being entered against its insured.  *See Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*, 136 Cal. App. 4th 212 (2006) (holding that an insurer "must intervene in the action to protect its own interests");  *Reliance Ins. Co. v. Superior Court*, 84 Cal. App. 4th 383 (2000) (reversing trial court's refusal to allow insurer to intervene to vacate default of insured reasoning, "where the insurer may be subject to a direct action under Insurance Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third party action against the insured, intervention is appropriate" and noting the "insurer may either intervene in that action prior to judgment or move under Code of Civil Procedure section 473 to set aside the default judgment."); *Utica Mut Ins. Co. v. Hamilton Supply Co.*, 2007 WL 32566485,  at *3 (N.D. Cal. 2007) (permitting insurer proceeding under reservation of rights to intervene under Rule 24 and vacating default judgment); *B.G.N. Freemont Square LTD. v. Chung*, 2011 WL 13129968, at *3 ("In short, California law provides that an insurer has a protectable interest in litigation brought against its suspended insured, that its failure to intervene could subject it to liability for default judgment subject to any coverage defenses that it may have, and that it can intervene without waiving those coverage defenses by giving notice of its reservation of rights.").

Please let me know as soon as practicable DTSC's position regarding Travelers' intended request to intervene and whether DTSC will agree to continue the pending hearing for application of default judgment against C&A Products currently set for September 25, 2019.  We would be happy to meet and confer with you about a suitable revised briefing schedule.

Thank you.

**Alex Potente**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9869 | **Mobile:** +1 415 845 3049

CLYDE&CO | 101 Second Street | 24th Floor | San Francisco | CA 94105 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

**Jung, John**

| | |
|---|---|
| **From:** | Potente, Alex <Alex.Potente@clydeco.us> |
| **Sent:** | Wednesday, September 11, 2019 9:05 PM |
| **To:** | Laura.Zuckerman@doj.ca.gov; Olivia W. Karlin |
| **Cc:** | Jung, John |
| **Subject:** | RE: Wickes - DTSC v. Dobbas - Follwo Up on Travelers' request to reschedule the hearing on DTSC's motion |

Ms. Karlin and Ms. Zuckerman:  I write to follow up on Travelers' request to reschedule the hearing on DTSC's motion for default judgment of C&A Products, LLC and whether DTSC will stipulate to Travelers' intervention in this action.

Please let me know DTSC's position on these two requests as soon as practicable, so that we may take the requisite steps if DTSC does not agree.

Thank you.


**Alex Potente**
Partner | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9869 | **Mobile:** +1 415 845 3049

 | 101 Second Street | 24th Floor | San Francisco | CA 94105 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1515 CLAY STREET, 20TH FLOOR
P.O. BOX 70550
OAKLAND, CA  94612-0550

Public:  (510) 879-1300
Telephone:  (510) 879-1299
Facsimile:  (510) 622-2270
E-Mail:  Laura.Zuckerman@doj.ca.gov

September 12, 2019

**VIA E-MAIL ONLY**

Alexander E. Potente, Esq.
Clyde & Co. US LLP
101 Second Street
24th Floor
San Francisco, CA 94105
Alex.Potente@clydeco.us

RE:     *California Department of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al.*
        U.S. District Court, Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB

Dear Mr. Potente:

In response to your recent inquiry, Plaintiffs the Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, DTSC) are not willing either to stipulate to intervention by Travelers or to postpone the date of the September 25, 2019, hearing on the motion for default judgment so that Travelers may intervene, move to set aside C&A Products, LLC's default, and oppose DTSC's motion for default judgment.

Travelers has been aware of this lawsuit, and of the March 2015 clerk's entry of default, since at least June 7, 2018, yet waited until shortly before the upcoming hearing to take steps to seek intervention.  Travelers' motion to intervene under Rule 24 of the Federal Rules of Civil Procedure would be untimely.  This alone is reason enough for DTSC not to agree to postpone the hearing.

In addition, however, Travelers has no valid grounds for a motion to set aside the default under Rule 55(c) of the Federal Rules of Civil Procedure.  First, C&A Products, LLC, had no viable defense it could have asserted under CERCLA to contest liability, meaning that even if Travelers were to intervene to litigate the matter on the merits, the outcome would be the same.  Second, a delay at this point would prejudice DTSC, as the receivership is due to expire in October 2019.  Third, you have unnecessarily delayed any motion to set aside the default by 1 ¼ years.

Further, the authority you have provided is inapposite.  The reported cases concern intervention under California state law, which is different from federal intervention law, and the unreported federal cases you provide do not have fact patterns similar to DTSC's case.  None of the cases involves an insurer that disclaimed coverage, as Travelers did in your letter to us dated July 25,

Alexander E. Potente, Esq.
September 12, 2019
Page 2

2018, when you stated, "DTSC cannot assert a claim under the Travelers policies for this Site and has no right to reimbursement as a judgment creditor or otherwise for the sums it allegedly incurred . . . ."  July 25, 2018, Letter from Alexander E. Potente to Olivia W. Karlin, at 3.

If you decide to proceed with your motion to intervene or seek to obtain any other order from the Court, please provide us with an electronic courtesy copy of all filings the day you file them. Thank you for your attention to this matter.

Sincerely,

/S/  *Laura J. Zuckerman*

LAURA J. ZUCKERMAN
Deputy Attorney General

For   XAVIER BECERRA
Attorney General

LA2012602448

**ER-276**

**Jung, John**

| | |
|---|---|
| **From:** | Jung, John |
| **Sent:** | Tuesday, September 17, 2019 2:29 PM |
| **To:** | Laura Zuckerman |
| **Cc:** | Olivia W. Karlin; Ed Ochoa; Potente, Alex |
| **Subject:** | RE: DTSC v. Jim Dobbas, Inc. et al. [CC-US2.FID674399] |

Ms. Zuckerman:

On behalf of Travelers, we will file an *ex parte* application tomorrow, September 18, 2019, for an order to continue the September 25, 2019 hearing date on DTSC's application for default judgment. We will also move to intervene and set aside the default against Collins & Aikman, LLC.

Please let us know whether DTSC will be filing an opposition to Travelers' *ex parte* request.

Thank you.

**John Jung**
Associate | Clyde & Co US LLP
**Direct Dial:** +1 415 365 9841 | **Mobile:** +1 415 297 7743

 | 101 Second Street | 24th Floor | San Francisco | CA 94105 | USA
**Main** +1 415 365 9800 | **Fax** +1 415 365 9801 | **www.clydeco.us**

**Jung, John**

| | |
|---|---|
| **From:** | Laura Zuckerman <Laura.Zuckerman@doj.ca.gov> |
| **Sent:** | Tuesday, September 17, 2019 2:40 PM |
| **To:** | Jung, John |
| **Cc:** | Olivia W. Karlin; Ed Ochoa; Potente, Alex |
| **Subject:** | Re: DTSC v. Jim Dobbas, Inc. et al. [CC-US2.FID674399] |

Mr. Jung,

DTSC plans to file an opposition to Travelers's ex parte request.

Laura Zuckerman

1
2
3
4
5
6
7
8
9

XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
LAURA J. ZUCKERMAN (Counsel for service)
State Bar No. 161896
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  Oakland, CA 94612
  Telephone:  (510) 879-1299
  Fax:  (510) 622-2270
  E-mail:  Laura.Zuckerman@doj.ca.gov
*Attorneys for Plaintiffs California
Department of Toxic Substances Control and the
Toxic Substances Control Account*

10
11
12
13

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,**

Plaintiffs,

v.

**JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; WEST COAST WOOD PRESERVING, LLC., a Nevada limited liability company; and COLLINS & AIKMAN PRODUCTS, LLC, a Delaware limited liability company,**

Defendants.

**AND RELATED COUNTERCLAIMS AND CROSS CLAIMS**

2:14-cv-00595-WBS-EFB

**DECLARATION OF LAURA J. ZUCKERMAN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT JUDGMENT BY COURT AGAINST DEFENDANT COLLINS & AIKMAN PRODUCTS, LLC**

FED. R. CIV. P. 55(b)

Date:  September 23, 2019
Time:  1:30 p.m.
Place:  Courtroom 5, 14th Floor
  501 I Street
  Sacramento, CA  95814

Action Filed:  March 3, 2014

1

1    I, Laura J. Zuckerman, declare:

2        1.    I am a Deputy Attorney General with the California Department of Justice, Office of

3    the Attorney General, and have been assigned to represent Plaintiffs the California Department of

4    Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC" or

5    "Plaintiffs") in this action.  I make the following statements upon personal knowledge or upon my

6    review of files that the Office of the Attorney General maintains in the regular course of business,

7    and, if called as a witness, could testify competently to these statements.  This declaration is made

8    in support of Plaintiffs' Application for Entry of Default Judgment Against Defendant Collins &

9    Aikman Products, LLC ("C&A Products" or "Defendant").

10       2.    In 2005, Defendant declared bankruptcy.  On or about December 8, 2014, the

11   Delaware Court of Chancery granted DTSC's petition for appointment of a receiver for C&A

12   Products under Delaware Code § 18-805, and appointed a receiver.

13       3.    On December 16, 2014, DTSC served Defendant, through the court-appointed

14   receiver, with the Summons and First Amended Complaint in this case.  Defendant never

15   responded to the First Amended Complaint.  The clerk of the Court entered the default of C&A

16   Products on March 26, 2015.  Attached as Exhibit A hereto is a true and correct copy of the

17   Clerks Certificate of Entry of Default entering the default of Defendant Collins & Aikman

18   Products, LLC.

19       4.    In April 2019, counsel for DTSC met and conferred with the court-appointed receiver

20   with respect to this Application for Default Judgment.

21       I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true

22   and correct to the best of my knowledge and that this declaration was executed in Oakland,

23   California, on August 8, 2019.

24

25

26                                         LAURA J. ZUCKERMAN

27

28                                              2

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF CALIFORNIA

**CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, ET AL.,**

v.

**JIM DOBBAS, INC., ET AL.,**

**CLERKS CERTIFICATE OF ENTRY OF DEFAULT**

**2:14−CV−00595−WBS−EFB**

**TO ALL COUNSEL:**

By application of Plaintiff and it appearing that the defendant having been duly served with process as appears from the record and papers on file herein; and having failed to appear, plead or answer Plaintiff's complaint within the time allowed by law; the default of the following Defendant(s) is/are hereby entered:

Collins & Aikman Products, LLC

Counsel is/are referred to Rule 55(b), of the Federal Rules of Civil Procedure, and Local Rules 302(c)(19) and 230. If there is more then one defendant in this case, counsel are further referred to Fed. R. Civ. P. 54(b).



IN TESTIMONY WHERE OF, I have hereunto subscribed my name and affixed the seal of the United States District Court for the Eastern District of California, on March 26, 2015.

**MARIANNE MATHERLY**
**CLERK OF COURT**

By: /s/ **H. Kaminski**

**Deputy Clerk**

1  XAVIER BECERRA
   Attorney General of California
2  EDWARD H. OCHOA
   Supervising Deputy Attorney General
3  OLIVIA W. KARLIN, State Bar No. 150432
   LAURA J. ZUCKERMAN (Counsel for service)
4  State Bar No. 161896
   Deputy Attorneys General
5   1515 Clay Street, 20th Floor
    Oakland, CA 94612
6   Telephone: (510) 879-1299
    Fax: (510) 622-2270
7   E-mail: Laura.Zuckerman@doj.ca.gov
   *Attorneys for Plaintiffs California*
8  *Department of Toxic Substances Control and the*
   *Toxic Substances Control Account*
9
               IN THE UNITED STATES DISTRICT COURT
10
             FOR THE EASTERN DISTRICT OF CALIFORNIA
11
                        SACRAMENTO DIVISION
12

13

14  **CALIFORNIA DEPARTMENT OF TOXIC**        2:14-cv-00595-WBS-EFB
    **SUBSTANCES CONTROL and the TOXIC**
15  **SUBSTANCES CONTROL ACCOUNT,**           **DECLARATION OF MCKINLEY LEWIS,**
                                              **JR., IN SUPPORT OF PLAINTIFFS'**
16                              Plaintiffs,   **APPLICATION FOR ENTRY OF**
                                              **DEFAULT JUDGMENT BY COURT**
17      **v.**                                **AGAINST DEFENDANT COLLINS &**
                                              **AIKMAN PRODUCTS, LLC**
18                              Defendants.

19                                            FED. R. CIV. P. 55(b)

20  **JIM DOBBAS, INC., a California**         Date:   September 23, 2019
    **corporation; CONTINENTAL RAIL, INC.,**  Time:   1:30 p.m.
21  **a Delaware corporation; DAVID VAN**     Place:  Courtroom 5, 14th Floor
    **OVER, individually; PACIFIC WOOD**              501 I Street
22  **PRESERVING, a dissolved California**            Sacramento, CA 95814
    **corporation; WEST COAST WOOD**
23  **PRESERVING, LLC., a Nevada limited**    Action Filed: March 3, 2014
    **liability company; and COLLINS &**
24  **AIKMAN PRODUCTS, LLC, a Delaware**
    **limited liability company,**
25                              Defendants.

26  **AND RELATED COUNTERCLAIMS AND**
    **CROSS-CLAIMS**
27

28
                                    1
DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

ER-283

I, McKinley Lewis, Jr., declare as follows:

1.      I make this declaration in support of the Application for Entry of Default Judgment by Court Against Defendant Collins & Aikman Products, LLC ("C&A Products") filed by Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account (collectively, "DTSC").  The facts stated in this declaration are based on my personal knowledge and on my review of files which DTSC maintains in the regular course of business and files DTSC obtained from Solano County and the Central Valley Regional Water Quality Control Board ("Water Board").  If called as a witness, I could and would competently testify to the following:

2.      I have been employed by DTSC since January 2008, and am currently employed by DTSC as a Hazardous Substances Engineer.  My job duties include working in the National Priorities List Unit ("NPL Unit") within the Site Mitigation and Restoration Program.  The NPL Unit conducts and oversees response actions under the Hazardous Substances Account Act, California Health and Safety Code section 25300 *et seq.* and its federal counterpart, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. section 9601 *et seq.* ("CERCLA").

3.      DTSC is the state agency responsible for enforcing California Health and Safety Code Section 25300 *et seq.*, and for investigating and remediating hazardous substances releases at sites in California.

4.      As part of my responsibilities at DTSC, I oversee the investigation and cleanup of contaminated sites in California.  I am currently the Project Manager for a contaminated site known as at the former Wickes Forest Industries Site, located at the intersection of A Street and Holdener Road in the unincorporated community of Elmira, Solano County, California, identified by Solano County Assessor/Recorder's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010 (the "Site").   I have visited the Site on many occasions, and have participated in, among other things, Site inspections and oversight of groundwater sampling.  I have obtained and reviewed historical documents concerning the Site from DTSC's files.  I have also reviewed documents obtained from Solano County and the Water Board.  As the Project Manager for the

2

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

ER-284

1   Site, I have also managed contracts and the staff of environmental engineering firms who have

2   worked at the Site on behalf of DTSC.

3                                     **Site History**

4       5.      Prior to 1972, the Site was used for agriculture.  *See* page 8 of the Remedial

5   Investigation Report dated July 2008, a true and correct copy of which is attached hereto as

6   **Exhibit A**.  At various times since 1972, hazardous substances within the definition of

7   section 101(14) of CERCLA, 42 U.S.C. section 9601(14), were released into the environment at

8   and from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. section

9   9601(22).  First Amended Complaint, Docket No. 77 ("FAC"), ¶ 19.  These hazardous substances

10  included arsenic, chromium, and copper, which were constituents of wood preserving chemicals

11  used at the Site.  *Ibid.*

12      6.      Defendant Pacific Wood Preserving ("PWP") conducted wood preserving

13  operations at the Site from approximately 1972 through on or about September 12, 1979.  FAC, ¶

14  17.  Spills of hazardous substances occurred at the Site during PWP's ownership and operation.

15      7.      On approximately September 12, 1979, The Wickes Corporation ("Wickes")

16  purchased the Site, subsequently conducting business operations at the Site until approximately

17  1982.  FAC, ¶ 16.  Wickes and its eventual successor, defendant C&A Products, continued to

18  own the Site until about March 20, 1997.  *Ibid.*

19      8.      From on or about September 12, 1979 through approximately 1982, Wickes

20  conducted wood preserving operations at the Site.  FAC, ¶ 18.  Spills of hazardous substances

21  occurred at the Site during Wickes and C&A Products's ownership and operation.

22      9.      On December 24, 1979, a large amount of green liquid flowed from a large tank

23  located in the yard at the Site.  *See* Solano County Sheriff's Department report regarding tank

24  overflow on December 24, 1979, dated December 24, 1979, a true and correct copy of which is

25  attached hereto as **Exhibit B**, at 2.  The wind blew the liquid beyond a safety trough around the

26  tank and onto the driveway of the company's building, and flowed down the driveway onto A

27  Street into the drainage ditch running along A Street.  *Ibid.*  This liquid flowed down the drainage

28  ditch for approximately 150 yards.  *Ibid.*  The Site manager admitted that the substance that had

3

1    flowed into the drainage was a mixture of water, copper, chromium, and arsenic. *Id*. at 3.

2        10.    On November 7, 1980, a well water supply valve malfunctioned, causing water to

3    flow into a mixing tank that had about 1.5 feet of sludge in it. The spill travelled along the A

4    Street ditch, both east and west of the Site entrance. *See* Solano County Memo from David

5    Eubanks to Albert Vervais regarding wastewater spill on November 7, 1980, dated

6    November 25, 1980, a true and correct copy of which is attached hereto as **Exhibit C**; Letter from

7    Central Valley Regional Water Quality Control Board ("CVRWQCB") to Wickes regarding spill

8    on November 7, 1980, dated December 10, 1980, a true and correct copy of which is attached

9    hereto as **Exhibit D**; CVRWQCB Memorandum from J. Lawrence Pearson to Kathleen Harder

10   regarding spill on November 7, 1980, dated December 10, 1980, a true and correct copy of which

11   is attached hereto as **Exhibit E**; Letter from CVRWQCB to Wickes that references the spill on

12   November 7, 1980, dated April 30, 1981, a true and correct copy of which is attached hereto as

13   **Exhibit F**; Memo with history and status that references 1978 and 1980 spills dated December

14   21, 1981, a true and correct copy of which is attached hereto as **Exhibit G**; and Letter and Order

15   from CVRWQCB to Wickes regarding spill on November 7, 1980, dated June 9, 1982, a true and

16   correct copy of which is attached hereto as **Exhibit H**. The mixture overflowed onto the

17   surrounding soil and travelled through a drainage ditch in front of the Site on A Street. Exhibit E,

18   at 1; Exhibit F, at 1.

19       11.    Investigations conducted at the Site showed that soil and groundwater were

20   contaminated with arsenic, chromium, and copper, and that impacted groundwater had migrated

21   offsite to the south and east. *See* page 1 of the Quarterly Groundwater Monitoring Report dated

22   April 2018, a true and correct copy of which is attached hereto as **Exhibit I**.

23                    <u>**Response Actions and Response Costs at the Site**</u>

24       12.    From the 1980s through 2005, Wickes and its successor Collins & Aikman

25   Products Co. took various actions under oversight of DTSC and its predecessor agency to address

26   environmental contamination at, around, and/or beneath the Site. FAC, ¶ 20. Those actions

27   included, among other things, soil excavation, installing an asphalt cap over contaminated soils,

28   constructing a building and a drainage system over another contaminated area of the Site,

4

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

**ER-286**

1    installing and operating a groundwater extraction and treatment system, and stormwater and

2    groundwater monitoring.  *Ibid.*

3        13.    On or about March 20, 1997, C&A Products sold the Site to Jim Dobbas, Inc.

4    ("Dobbas"), and Continental Rail, Inc. ("CRI").  FAC, ¶ 22.  On or about May 17, 2005, C&A

5    Products filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District

6    of Michigan, Case No. 05-55932.  FAC, ¶ 23.  In July or August 2005, while in Chapter 11

7    bankruptcy proceedings, Collins & Aikman Products Co. stopped operating the groundwater

8    extraction and treatment system, and stopped taking other action to address contamination at,

9    around, and/or beneath the Site.  FAC, ¶ 24.  DTSC was notified that Collins & Aikman Products

10   Co. had stopped operating the groundwater extraction and treatment system in early November

11   2005.  *Ibid.*

12       14.    In 2006, DTSC requested that Dobbas and CRI, the then-owners of the Site, carry

13   out response actions to address contamination at the Site.  FAC, ¶ 25.  In December 2007, Dobbas

14   agreed to perform certain actions at the Site, which included limited maintenance of the asphalt

15   cap and repair of a roof drainage system for a building over an area that was a source of

16   contamination at the Site.  FAC, ¶ 27.  However, Dobbas and CRI failed and refused to perform

17   most of the actions formerly conducted by Collins & Aikman Products Co.  to address

18   contamination at, around, and/or beneath the Site.  *Ibid.*  As a result, DTSC issued Imminent and

19   Substantial Endangerment Determination, Docket Number I/SED 06/07-011 ("ISE

20   Determination") on November 9, 2006, and reevaluated the proposed response actions at the Site.

21   *See* ¶¶ 2.4.1 and 4.1 of the ISE Determination, a true and correct copy of which is attached hereto

22   as **Exhibit J**.

23       15.    After 2005, the groundwater extraction and treatment system fell into a state of

24   disrepair, and the extensive repairs necessary to make it operational made its operation no longer

25   cost-effective.  Exhibit A, at 2.  Therefore, at DTSC's request, the groundwater extraction and

26   treatment system and associated equipment were removed from the Site and properly disposed of

27   offsite.  Exhibit A, at 2, 11.  DTSC then reevaluated response actions for the Site.  Exhibit A, at 2.

28   In July 2010, the Department finalized a Removal Action Workplan ("RAW") for the Site that

5

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

ER-287

1   called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling,

2   demolition of the groundwater extraction and treatment system, and long-term groundwater

3   monitoring.  FAC, ¶ 29.  The RAW noted that contaminated groundwater had migrated from

4   beneath the Site to the nearby residential area, which created the potential for exposure to

5   contaminants if groundwater were used for irrigation or if crop or orchard tress roots contacted

6   shallow contaminated groundwater.  *See* Pages 3-1 and 3-6 to 3-8 and Figures 3-1 and 3-5 of the

7   Draft Final Removal Action Workplan dated October 2009, a true and correct copy of which is

8   attached hereto as **Exhibit K**.

9         16.      On or about February 11, 2011, defendants Dobbas and CRI sold the Site to

10  defendant David Van Over for $2.00.  FAC, ¶ 30.  On March 16, 2011, DTSC issued Imminent or

11  Substantial Endangerment Determination Order and Remedial Action Order, Docket Number

12  I/SE 10/11-008 ("ISE Order") ordering Dobbas, CRI, and Van Over to conduct the response

13  actions described in the RAW and to take additional response actions at the Site.  FAC, ¶ 31.  A

14  true and correct copy of the ISE Order is attached hereto as **Exhibit L**.  Dobbas, CRI, and Van

15  Over failed to comply with the ISE Order.  FAC, ¶ 32.

16        17.      At present, DTSC's ongoing work at the Site includes monitoring the condition of

17  the asphalt cap and conducting groundwater monitoring and reporting.  *See* the 2016 Five-Year

18  Review Report, a true and correct copy of which is attached hereto as **Exhibit M**, at 17.

19  Continued groundwater monitoring and evaluation of the condition of the asphalt cap are

20  necessary to ensure contaminants below the cap are not mobilized by infiltration of precipitation,

21  and to block direct exposure of contaminated soil to humans and environmental receptors.  *Ibid.*

22  Continued groundwater monitoring and reporting is necessary to further assess the performance

23  of the 2011 soil excavation, to make certain that the Site is not causing further groundwater

24  contamination, and to ensure that contaminant concentrations at the four off-Site private irrigation

25  wells do not exceed drinking water standards.  *Ibid.*

26        18.      DTSC has incurred costs for "response," and continues to incur costs for response,

27  as that term is defined in CERCLA section 101(25), 42 U.S.C. § 9601(25), in taking actions

28  related to the release and/or threatened release of hazardous substances at, around, and/or beneath

6

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

ER-288

1   the Site.  FAC, ¶ 33.  To date, DTSC's response actions at the Site include, but are not limited to,

2   the following activities:  efforts to repair and restart the groundwater extraction and treatment

3   system, completion of a remedial investigation for site soils, preparation and implementation of

4   the RAW, groundwater monitoring, and monitoring the condition of the asphalt cap.  *Ibid.*

5         19.      I have visited the Site multiple times, and currently direct and oversee the

6   groundwater monitoring at the Site.  Groundwater monitoring includes groundwater sampling and

7   reporting on a quarterly basis to evaluate contaminant trends and ensure the protection of the

8   public.  Exhibit M, at 8-9.  Groundwater samples are collected from monitoring wells located on

9   the Site and off-Site within the surrounding neighborhood.  *Ibid.*  Several wells used by residents

10  for landscape irrigation are also sampled.  *Ibid.*  November 2017 sampling results from wells on

11  the Site and off-Site were above remedial action objectives.  *See* the Semi-Annual Groundwater

12  Monitoring Report – November 2017, a true and correct copy of which is attached hereto as

13  **Exhibit N**, at 7-8.

14        20.      DTSC's contractor recently evaluated the effectiveness of the 2011 soil removal

15  action and other remedial actions undertaken at the Site as part of the 2016 Five-Year Review

16  Report.  The Protectiveness Statement in the Five-Year Review Report identifies lack of

17  maintenance of the cap and surface drainage systems as issues that could compromise the

18  integrity of the cap and its ability to function as a barrier to exposure.  *See* Exhibit M at 18.  The

19  Five-Year Review Report indicated that once cracks in the cap are mitigated, the surface

20  drainages cleared of weeds, and the cap maintained as specified, the remedy should be protective.

21  *Ibid.*  Until the cap is regularly maintained, however, and DTSC receives and evaluates additional

22  groundwater sampling data, DTSC cannot conclude that all Site actions are complete, or that

23  further response actions will not be necessary.

24        I declare under penalty of perjury that the foregoing is true and correct to the best of my

25  ///

26  ///

27  ///

28

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

1    knowledge and that this declaration was executed in Sacramento, California on August 16, 2019.

2

3

4    _____
     McKinley Lewis, Jr.

5    Project Manager
     Site Mitigation and Restoration Program

6    Dept. of Toxic Substances Control

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

DECL. OF MCKINLEY LEWIS, JR., IN SUPPORT OF PLAINTIFFS' APPLIC. FOR ENTRY BY COURT OF
DEFAULT JUDGMENT AGAINST DEF. COLLINS & AIKMAN PRODUCTS, LLC (2:14-cv-00595-WBS-EFB)

# EXHIBIT M



**2016 FIVE-YEAR REVIEW REPORT**

Wickes Forest Industries
Elmira, California

*PREPARED FOR:*

**BROWNFIELDS AND ENVIRONMENTAL RESTORATION PROGRAM
DEPARTMENT OF TOXIC SUBSTANCES CONTROL
8800 CAL CENTER DRIVE, 3RD FLOOR
SACRAMENTO, CALIFORNIA 95826**



*PREPARED BY:*

**GEOCON CONSULTANTS, INC.
3160 GOLD VALLEY DRIVE, SUITE 800
RANCHO CORDOVA, CALIFORNIA 95742**



**GEOCON PROJECT NO. S9850-03-14**                    **NOVEMBER 2016**

# GEOCON
## CONSULTANTS, INC.

G E O T E C H N I C A L  ■  E N V I R O N M E N T A L  ■  M A T E R I A L S

Project No. S9850-03-14
November 7, 2016

Deena Stanley
Project Manager
California Department of Toxic Substances Control
8800 Cal Center Drive
Sacramento, California 95826

Subject:     FINAL 2016 FIVE-YEAR REVIEW REPORT
             WICKES FOREST INDUSTRIES
             147 A STREET
             ELMIRA, CALIFORNIA
             CONTRACT NO. 14-T3962, WORK ORDER NO. 1-962-1.0-100164

Dear Ms. Stanley:

In accordance with the above-referenced contract and work order, we have prepared this Final 2016 Five-Year Review (FYR) Report for Wickes Forest Industries (the Site) located at 147 A Street in Elmira, California. The California Department of Toxic Substances Control (DTSC) Site Code for this property is 100164 and its EnviroStor number is 48240001.

The purpose of the FYR was to evaluate whether the 2011 soil removal action, ongoing asphaltic-concrete (AC) cap, and groundwater monitoring remain protective of human health and the environment. The FYR Report has been prepared consistent with the *Imminent or Substantial Endangerment Determination Order and Remedial Action Order* (Docket No. I/SE 10/11 – 008, dated March 16, 2011) and the *Agreement for Operation and Maintenance of the Groundwater Extraction and Treatment System, Storm Water Control System, and the Asphalt Cap at the Former Wickes Forest Industries Facility, Elmira, California* (February 26, 1996), both issued by the DTSC.

This report presents the results of the FYR and includes conclusions and recommendations, with respect to the need for required AC cap maintenance, and continued groundwater monitoring and reporting. This FYR report is based on a site visit, review of information in documents available on the DTSC's EnviroStor website, and data from recent groundwater monitoring and reporting efforts at the Site by Geocon.

We appreciate the opportunity to have worked with you on this project. Please let us know if you have any questions or comments regarding this report and if we may be of further service.

Sincerely,

**GEOCON CONSULTANTS, INC.**

Dan Easter, PG, CEG                    Jim Brake, PG
Senior Geologist                       Senior Geologist/Vice President

3160 Gold Valley Drive, Suite 800  ■  Rancho Cordova, CA 95742-7515  ■  Telephone 916.852.9118  ■  Fax 916.852.9132

**DISTRIBUTION LIST**

**Deena Stanley, Project Manager** (2 hard copy, 1 CD)
California Environmental Protection Agency
Department of Toxic Substances Control

**Vacaville Public Library,** 1020 Ulatis Drive, Vacaville, CA 95687

**Dan Easter, PG, CEG, Task Manager** (project file)
Geocon Consultants, Inc.

TABLE OF CONTENTS

2016 FIVE-YEAR REVIEW REPORT                                               PAGE

DISTRIBUTION LIST ……………………………………………………….……..ii
TABLE OF CONTENTS ……………………………………………………….…….iii
ACRONYMS AND ABBREVIATIONS………………………………….…………..v


EXECUTIVE SUMMARY ....................................................................................... vi
1.0    INTRODUCTION .......................................................................................... 1
       1.1    Purpose................................................................................................ 1
       1.2    Document Organization ...................................................................... 1
2.0    BACKGROUND ............................................................................................ 3
       2.1    Site History ......................................................................................... 3
       2.2    Geology and Hydrogeology ................................................................ 3
       2.3    Soil and Groundwater Investigation Chronology............................... 4
3.0    REMEDIAL ACTION ................................................................................... 6
4.0    PROGRESS SINCE LAST REVIEW ........................................................... 8
       4.1    Ongoing Groundwater Monitoring and Reporting.............................. 8
       4.2    Asphaltic-Concrete Cap ...................................................................... 9
5.0    FIVE-YEAR REVIEW PROCESS .............................................................. 11
       5.1    Administrative Components ............................................................... 11
       5.2    Public Notice..................................................................................... 11
       5.3    Data and Document Review............................................................... 11
       5.4    Site Inspection................................................................................... 11
6.0    TECHNICAL ASSESSMENT..................................................................... 14
7.0    ISSUES ........................................................................................................ 16
8.0    RECOMMENDATIONS AND FOLLOW-UP ACTIONS .......................... 17
9.0    PROTECTIVENESS STATEMENT ........................................................... 18
10.0   NEXT FIVE-YEAR REVIEW ..................................................................... 19
11.0   REFERENCES............................................................................................. 20

FIGURES

1.    Vicinity Map
2.    Site Plan
3.    Shallow Groundwater Elevation Map – March 2016
4.    Dissolved Hexavalent Chromium Concentrations in Groundwater – March 2016
5.    Dissolved Arsenic Concentrations in Groundwater – March 2016

TABLES

1.    Summary of Trend Analyses of Hexavalent Chromium and Arsenic in Groundwater 2011 to 2016
2.    Historical Groundwater Analytical Data 1990 to 2016

APPENDICES

A.    Groundwater Trend Analyses of Hexavalent Chromium and Arsenic 2012 to 2016
B.    Public Notice Published August 16, 2016
C.    Site Photographs Dated August 17, 2016

| ABBREVIATIONS AND ACRONYMS | |
|---|---|
| AC | asphaltic-concrete |
| AST | above-ground storage tank |
| COC | contaminants of concern |
| Cr(VI) | hexavalent chromium |
| CVRWQCB | Central Valley Regional Water Quality Control Board |
| DTSC | California Department of Toxic Substances Control |
| FYR | Five-Year Review |
| Geocon | Geocon Consultants, Inc. |
| GWETS | groundwater extraction and treatment system |
| I/SE Order | Imminent or Substantial Endangerment Determination Order and Remedial Action |
| LFR | Levine-Fricke |
| μg/l | micrograms per liter |
| mg/kg | milligrams per kilogram |
| mg/L | milligram per liter |
| RAOs | removal action objectives |
| RAP | remedial action plan |
| RAW | removal action work plan |
| RCRA | Resource Conservation and Recovery Act of 1976 |
| sq. yds. | square yards |
| URS | URS Corporation |

**EXECUTIVE SUMMARY**

Geocon Consultants, Inc. (Geocon), prepared this Five-Year Review (FYR) Report for the former Wickes Forest Industries property (the Site) located at 147 A Street in Elmira, California. The approximately 7.5-acre Site is comprised of Solano County Assessor's Parcel Numbers 142-010-130, 142-010-140, and 142-042-010.

The FYR was performed for the California Department of Toxic Substances Control (DTSC). The DTSC Site Code for this property is 100164 and the EnviroStor number is 48240001. This FYR Report was prepared consistent with the Imminent or Substantial Endangerment Determination Order and Remedial Action Order ([I/SE Order] Docket No. I/SE 10/11 – 008, dated March 16, 2011), issued by the DTSC. Geocon visited the Site with the DTSC and the current property owner, Mr. David van Over, on August 17, 2016, to observe and discuss site conditions.

The Site is a former wood treatment facility and the contaminants of concern (COCs) are arsenic and hexavalent chromium [Cr(VI)]. Historical site operations included lumber treatment in retort vessels using wood preservatives that contained arsenic, chromium, and copper. Previous investigations have shown that site soil and groundwater have been impacted with these metals and that COC-impacted groundwater has migrated offsite to the south and east. Site operations ceased in August 1982.

In 1983 and 1994, the Site was capped with asphaltic-concrete (AC) following remedial actions that removed soil from the site and perimeter drainage ditches to address soil and groundwater contamination issues associated with the southern portion of the property (1983) and the northern portion (1994). In 1983, a 200-foot long by 13-foot deep groundwater extraction and treatment system (GWETS) was installed adjacent to the former processing building in the southern portion of the site. The GWETS extracted groundwater then removed metals from groundwater through an ion-exchange system. In 1992, seven extraction wells were added to the GWETS, and the treatment system was replaced with a more effective, electrochemical treatment system. Metals concentrations in shallow groundwater were significantly reduced by this treatment. However, COC concentrations began to stabilize in 1998 and showed little change over the last 3 years of treatment between 2002 and 2005. The GWETS was shut down in August 2005 due to the bankruptcy of the responsible party. The GWETS was dismantled in 2011.

In April 2008, a soil investigation within and adjacent to the former processing facility building concluded that the shallow soil in the northeastern and southwestern portions of the building were a continuing source of arsenic and Cr(VI) to groundwater, particularly during periods of high groundwater elevations.

A Removal Action Work Plan (RAW), prepared by URS Corporation (June 2010), addressed remediation of the COC-impacted groundwater at the former process area of the Site. The remedial alternative selected by the RAW was to remove the most heavily COC-impacted soil from the contaminated area beneath the former chemical storage and wood treatment areas in the process facility

building and from the area of a 25-ft diameter above-ground storage tank (AST) located adjacent to the building. Removal of the soil from these areas would eliminate the likely source of groundwater contamination. Removal Action Objectives (RAOs) established in the RAW included:

- Protect existing and potential beneficial uses of groundwater to the extent technically and economically feasible by minimizing the migration of COCs to groundwater.

- Minimize exposure of humans to COCs in shallow soil through inhalation, dermal absorption, and ingestion by eliminating complete exposure pathways.

- Minimize potential for migration of COCs from the soil to groundwater by removing or treating the soil with arsenic concentrations above cleanup goals established in the RAW.

- Obtain DTSC certification, after completion of the removal action, that the necessary response actions have been completed in accordance with the approved RAW and that the RAOs have been met.

The cleanup goals established in the RAW for arsenic and Cr(VI) in groundwater were 10 micrograms per liter for both contaminants. Arsenic was chosen as the target contaminant for soil source removal actions at the Site and the established cleanup goal for arsenic in soil was 13 milligrams per kilogram.

The remedial excavations resulted in the removal of approximately 515 tons of Resource Conservation and Recovery Act of 1976 (RCRA)-hazardous concrete, 493 tons of RCRA-hazardous waste soil, and 1,066 tons of non-RCRA, California-hazardous waste soil.

The purpose of the FYR is to evaluate whether the 2011 soil removal action, AC cap, and groundwater monitoring remain protective of human health and the environment. To assess whether the RAOs of the soil removal action were successfully met, we prepared trend graphs using laboratory analytical results for groundwater samples from wells located downgradient of the removal action area. A graph of Cr(VI) and arsenic concentrations for each well from 2011 to 2016, including the tabulated data and best-fit trend line is in Appendix A. A summary of the trend direction (increasing or decreasing concentration over time) for Cr(VI) and arsenic for each well is presented in Table 1.

Of the 28 wells identified downgradient of the 2011 soil removal action area, eight wells have no or insufficient data for both Cr(VI) and arsenic. Of the 20 other wells, at least 80% show decreasing trends for both Cr(VI) and arsenic since the 2011 soil removal action was completed.

Inspection of the Site on August 17, 2016, identified cracks in the AC cap throughout the site. Weeds were abundant along the edge of the AC cap, in areas of the Site where there was no AC pavement, and where the weeds could grow in cracks in the AC cap. The perimeter drainage ditches, located outside of the perimeter fence line, were choked with weeds that would likely interfere with and/or block surface water flow leaving the site during rainfall events. The lack of maintenance of the AC cap and surface drainage systems has created the potential for surface water to penetrate the AC cap and underlying COC-impacted soil, resulting in possible renewed migration of COCs to shallow groundwater. Potential

exposure pathways that could result in unacceptable risks are not being controlled through operation and maintenance (O&M) of the Site. Therefore, the soil removal remedial action at the Site is only short term protective of human health and the environment. Once the AC cap cracks are mitigated in accordance with the I/SE Order (DTSC, 2011), surface drainages are cleared of weeds, and the AC cap is being regularly maintained, it is expected that the Site will be protective of human health and the environment in the long term.

**2016 FIVE-YEAR REVIEW REPORT**
**WICKES FOREST INDUSTRIES**
**147 A STREET**
**ELMIRA, CALIFORNIA**
**CONTRACT NO. 14-T3962, WORK ORDER NO. 1-962-1.0-100164**

## 1.0      INTRODUCTION

This Five-Year Review (FYR) Report (report) covers the period from November 2011 through October 2016 for the Former Wickes Forest Industries Facility, in Elmira, California (Site; Figure 1). The FYR Report has been prepared consistent with the *Imminent or Substantial Endangerment Determination Order and Remedial Action Order* (Docket No. I/SE 10/11 – 008 [I/SE Order], dated March 16, 2011), and the *Agreement for Operation and Maintenance of the Groundwater Extraction and Treatment System, Storm Water Control System, and the Asphalt Cap at the Former Wickes Forest Industries Facility, Elmira, California* (O&M Agreement, February 26, 1996), both issued by the California Department of Toxic Substances Control (DTSC). This is the second FYR conducted for the Site; the first FYR was completed on July 27, 2001.

### 1.1      Purpose

The purpose of this report is to comply with the requirements of the I/SE Order, O&M Agreement, and to document our review of the soil removal remedial action completed in November 2011, the asphaltic-concrete (AC) cap, and groundwater monitoring and reporting (the "remedy") and to determine if it remains protective of human health and the environment. The 2011 soil removal action is reported in the *Removal Action Completion Report Former Wickes Forest Industries, 147 A Street, Elmira, California* (Arcadis, 2012).

The purpose of a FYR is to evaluate the performance of a remedy in order to determine if it is and will continue to be protective of human health and the environment. The methods, findings, and conclusions of reviews are documented in FYR reports such as this one. In addition, FYR reports identify issues found during the review, if any, and document recommendations to address them

### 1.2      Document Organization

This Five-Year Review report is organized as follows:

**Section 1.0 – Introduction:** Provides an introduction to the report and includes the purpose and authority for conducting the FYR; identifies the lead agency (DTSC), the review number, and summarizes the organization of the report.

**Section 2.0 – Background and Chronology:** Describes the site history, geology, and hydrogeology. A summary of the findings of previous soil and groundwater investigations, is also included.

**Section 3.0 – Remedial Action:** Summarizes the 2011 soil removal action.

**Section 4.0 – Progress Since Last Review:** Presents information on the AC cap constructed over the site in 1983 and 1994, and groundwater monitoring and reporting.

**Section 5.0 - FYR Process:** Summarizes the components of the second FYR process, including administrative and community components, and data and document review.

**Section 6.0 – Technical Assessment:** Evaluates the effectiveness of the implemented remedial action.

**Section 7.0 – Issues**: Summarizes issues identified during the FYR

**Section 8.0 – Recommendations and Follow-Up Actions**: Presents recommendations and follow-up actions, if needed, to address issues identified during the review.

**Section 9.0 – Protectiveness Statement**: Provides a statement regarding the protectiveness of the site remedies.

**Section 10.0 - Next Review:** Provides the date for when the next FYR is planned.

**Section 11.0 - References:** Lists all of the citations used throughout the report.

**Appendices**

Appendix A    Groundwater Trend Analyses of Hexavalent Chromium and Arsenic 2011 to 2016

Appendix B    Public Notice Published August 16, 2016

Appendix C    Site Photographs Dated August 17, 2016

## 2.0   BACKGROUND

This section summarizes current site conditions, site history, geologic and hydrogeological conditions, previous investigations, and potential environmental and human impacts associated with the Site based on information obtained from the references indicated herein.

The Site is a former wood-treatment facility, which the DTSC refers to as Wickes Forest Industries. Other names by which the Site has been identified include: Collins & Aikman Products Company, Inc. (by the Central Valley Regional Water Quality Control Board [CVRWQCB]) and Pacific Wood Preserving (by the United States Environmental Protection Agency [EPA])

The Site comprises approximately 7.5 acres with a southern portion, including the former processing facility building, and a northern portion, including the northern warehouse. It shares its northwestern border with the Union Pacific Railroad right-of-way. A Street is located along the southeastern site boundary and becomes Holdener Road at the southern site boundary (Figure 2).

### 2.1   Site History

The Site was used for agricultural purposes before it was developed as a wood preparation, treatment, and storage facility in 1972.  Pacific Wood Preserving Company operated a wood treatment facility at the Site from 1972 to 1979. Wickes Forest Industries purchased the Site in September 1979 and continued to operate the wood-treatment facility until August 1982 (URS 2010). Reportedly, no facility operations have occurred at the Site since 1982. Process machinery and equipment including the four cylindrical product tanks and the retort vessels were removed from the Site by 1991 (Levine-Fricke [LFR], 2001).

Historical site operations included lumber treatment in retort vessels using wood preservatives that contained arsenic, chromium, and copper. Previous investigations have concluded that site soil and groundwater have been impacted with these metals and that COC-impacted groundwater has migrated offsite to the south and east.

### 2.2   Geology and Hydrogeology

The Site is near the western edge of the southern Sacramento Valley, where it abuts the California Coast Ranges. Alamo Creek flows east, approximately 2,000 feet south of the Site. Shallow soil beneath the Site consists of 1 to 3 feet of engineered fill composed of silt, sand, and gravel, underlain by silty clay. An AC cap, constructed in 1994, overlies the entire site. The Geologic Map of the Sacramento Quadrangle (California Geological Survey, 1981) depicts the Site being underlain by Quaternary alluvium.

Groundwater occurs under semi-confined conditions and is first encountered at depths of 4 to 7 feet, depending on seasonal fluctuation. Figure 3 is a groundwater elevation map of water levels from March 2016. Depth to static groundwater beneath the former wood treatment area has ranged from approximately 1 to 6 feet. In other areas of the Site, depth to static groundwater fluctuates between 1 and 4 feet depending on precipitation, seasonal recharge, and groundwater pumping from nearby irrigation wells. The prevailing groundwater flow direction beneath the Site is toward the southeast. The groundwater flow velocity is estimated to be as high as 50 feet per year; however, migration of the contaminants of concern (COCs – arsenic and hexavalent chromium Cr(VI) is much slower due to the general affinity of metals to bind with soil particles. Because of its higher water solubility, the COC Cr(VI) is more mobile than arsenic and, thus, has spread over a larger area.

## 2.3    Soil and Groundwater Investigation Chronology

The DTSC and CVRWQCB have actively overseen the site remediation since 1982. In September 1983, the DTSC and CVRWQCB approved a remedial action plan (RAP) that addressed soil and groundwater contamination issues associated with the southern portion of the Site. A portion of the Site was then capped with concrete. In February 1994, a second RAP was approved that addressed soil contamination in the northern portion of the Site. During implementation of this RAP, the entire Site was capped with asphalt and concrete. The AC cap varies in thickness

In 1983 and 1984, a groundwater extraction and treatment system (GWETS), consisting of a 13-foot-deep, 200-foot-long extraction trench and horizontal recovery well, was installed at the Site to remediate COC-impacted groundwater. Groundwater was pumped to the surface and treated by an onsite, ion-exchange treatment system. In 1992, seven additional vertical extraction wells were added to the GWETS, and the ion-exchange treatment system was replaced with a more effective, electrochemical treatment system. Metals concentrations in shallow groundwater have been significantly reduced by this treatment. However, COC concentrations began to stabilize in 1998 and showed little change over the last 3 years of treatment between 2002 and 2005. The GWETS was shut down in August 2005 due to the bankruptcy of the responsible party. The GWETS was dismantled in 2011.

In April 2008, URS Corporation (URS) conducted a soil investigation in the vicinity of former well E-6 (Figure 2). URS concluded that the shallow soil in the northeastern and southwestern portions of the building covering the former process area was a continuing source of arsenic and Cr(VI) to groundwater, particularly during periods of high groundwater elevations (URS, 2008). A Removal Action Workplan (RAW) was prepared to address soil and groundwater with COCs at concentrations that exceeded established cleanup goals (URS, 2009b). Following approval, a soil removal action was implemented in October 2011. The soil removal action required that wells E-6 and E-30 be destroyed. Replacement wells E-6A, E-6B, and E-30A were installed in March 2012. Concentrations of arsenic

and Cr(VI) in groundwater samples collected from source removal area wells E-6A and E-6B are less than those reported for groundwater in the same area prior to implementation of the removal action.

Based on groundwater monitoring results, there are two plumes of Cr(VI)-impacted groundwater beneath the Site (Figures 4 and 5). The highest detected concentrations (greater than 100 micrograms per liter [μg/l]) are in groundwater beneath the southern portion of the Site and extend south beneath A Street. The other area of Cr(VI)-impacted groundwater is beneath the northeastern portion of the Site and extends south beneath Holdener Road, beyond the site boundaries. Cr(VI) concentrations are lower in this plume, but this plume extends over a larger area than the southern plume (Geocon, 2016).

## 3.0     REMEDIAL ACTION

A Removal Action Work Plan (RAW), prepared by URS (2010), addressed the remediation of COC-impacted groundwater at the former process area of the Site. The removal action focused on removal of COC-impacted soil from the heavily contaminated area beneath the former chemical storage and wood treatment areas to eliminate the source of groundwater contamination.

Removal Action Objectives (RAOs) established in the RAW included:

- Protect existing and potential beneficial uses of groundwater to the extent technically and economically feasible by minimizing the migration of COCs to groundwater

- Minimize exposure of humans to COCs in shallow soil through inhalation, dermal absorption, and ingestion by eliminating complete exposure pathways

- Minimize potential for migration of COCs from the soil to groundwater by removing or treating the soil with arsenic concentrations above cleanup goals established in the RAW

- Obtain DTSC certification, after completion of the removal action, that the necessary response actions have been completed in accordance with the approved RAW and that the RAOs have been met.

The cleanup goals established in the RAW for arsenic and Cr(VI) in groundwater were 10 micrograms per liter (µg/l) for both contaminants. Site soil investigation results indicate that arsenic concentrations in soil are approximately 100 times higher than Cr(VI). The two contaminants have similar distribution patterns at the Site and similar toxicity. Therefore, arsenic was chosen as the target contaminant for source removal actions at the Site and the established cleanup goal for arsenic in soil was 13 milligrams per kilogram (mg/kg).

The objective of the remedial alternative selected by the RAW was to remove the most heavily COC-impacted soil within, and in the vicinity, of the former process building and from the area of a 25-ft diameter above-ground storage tank (AST) located adjacent to the process facility building. The COC-impacted soil was considered to be a potential source of groundwater contamination due to the shallow depth (2 to 7 feet) of groundwater at the Site. The COCs targeted by the remedial activities at the Site were arsenic, chromium, Cr(VI), and copper. Based on previous investigations, arsenic was found to be closely associated with chromium and copper at the Site and was therefore, used as the target COC for the removal action. Additional activities conducted as part of the removal action included removal and disposal of the contents of the AST and the actual tank, the contents of the tanks associated with the former GWETS, and repair of the gutter system of the former processing building roof.

The remedial excavations focused on the areas with the highest concentrations and resulted in the removal of 515 tons of Resource Conservation and Recovery Act of 1976 (RCRA)-hazardous concrete, 493 tons of RCRA-hazardous waste soil, and 1,066 tons of non-RCRA, California-hazardous waste

soil. The excavations were backfilled with clean fill soil. Replacement wells E-6A, E-6B, and E-30A were installed in March 2012.

Concentrations of arsenic in building perimeter confirmation soil samples ranged from 10 to 2,700 mg/kg. Concentrations of chromium in the building perimeter confirmation soil samples ranged from 59 to 1,400 mg/kg. Cr(VI) was not detected at concentrations exceeding the laboratory reporting limit in a majority of the soil samples. The maximum detected concentration of Cr(VI) in building perimeter confirmation samples was 38 mg/kg.

Twenty confirmation soil samples were collected from the bottom of the excavations within the former process building. The samples were collected from depths ranging from 2 to 5 feet and concentrations of arsenic in these samples ranged from 6.3 to 420 mg/kg. Concentrations of total chromium for soil samples from the same area ranged from 33 to 350 mg/kg. Cr(VI) was not detected at concentrations exceeding the laboratory reporting limit in a majority of the soil samples. The maximum detected concentration of Cr(VI) was 12 mg/kg.

Twelve perimeter confirmation soil samples were collected from the former AST area. Concentrations of arsenic in these samples ranged from 10 to 29 mg/kg. Concentrations of chromium ranged from 40 to 140 mg/kg. Cr(VI) was not detected at concentrations exceeding the laboratory reporting limit in eight of the twelve samples; the maximum concentration detected was 0.7 mg/kg.

## 4.0    PROGRESS SINCE LAST REVIEW

This section summarizes information regarding the ongoing groundwater monitoring and reporting, and the status of the only remaining portion of the site remedy (the AC cap).

### 4.1    Ongoing Groundwater Monitoring and Reporting

The current monitoring network at the Site consists of 43 groundwater monitoring wells, three private irrigation wells (RW, RH-A, and MP-2), and four non-operating groundwater extraction wells (EX, EX-2, E-25, and E-34) (Figure 2). Twenty-two of the monitoring wells and two extraction wells are on the Site. The others are in the immediate vicinity. Thirty-eight monitoring wells are 25 feet deep or shallower and are considered "shallow zone" wells. Five monitoring wells have screen intervals ranging in depth from 32 feet to 45.5 feet and are considered to be within the "intermediate zone," and four monitoring wells are screened at depths below 45 feet and are within the "deep zone."

The objectives of the groundwater monitoring program are:

- For the southern portion of the Site, monitor the effectiveness of the 2011 soil removal action in reducing contaminant mass, and to monitor migration of contaminants toward offsite irrigation wells and other potential downgradient receptors.

- For the northern portion of the Site, ensure that the AC cap continues to be effective in reducing the migration of contaminants from soil to groundwater then toward offsite irrigation wells and other potential receptors.

Ten monitoring wells and five extraction wells that were no longer providing useful data were decommissioned in August 2013 with DTSC concurrence (URS, 2013). Twelve of the decommissioned wells were in the undeveloped lot northeast (cross-gradient) of the Site. Additionally, sometime prior to 2009, monitoring wells E-38 and E-39 (situated along the south side of B Street) were paved over with asphalt by a neighboring property owner. URS searched for the monitoring well lids with a metal detector in February 2014, but could not locate the wells (URS, 2014a).

Geocon has been conducting the groundwater monitoring and reporting at the Site since 4th Quarter 2015. The most recent report is the *First Quarter 2016 Groundwater Monitoring Report* (Geocon, 2016). Results presented in this report include Figure 3 (attached) that depicts groundwater elevation contours for the shallow zone. Based on these contours, the shallow zone groundwater flow was toward the east-southeast at an average gradient of approximately 0.003. The inferred flow direction and gradient are similar to those of previous monitoring events. A flow direction and gradient rose diagram depicting historical flow is included on Figure 3.