CASE No. 20-15029

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company as successor to Insurance Company of North
America; ALLIANZ UNDERWRITERS INSURANCE COMPANY;
CHICAGO INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; and THE CONTINENTAL
INSURANCE COMPANY

*Appellants,*

v.

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES
CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT

*Respondents.*

———————

Appeal From The United States District Court,
Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB,
Hon. William B. Shubb

———————

## APPELLANTS' EXCERPTS OF RECORD
## VOLUME 4 OF 4

———————

Wood, Smith, Henning & Berman LLP
THOMAS F. VANDENBURG (STATE BAR NO. 163446)
NICHOLAS M. GEDO (STATE BAR NO. 130503)
STRATTON P. CONSTANTINIDES (STATE BAR NO. 305103)
10960 WILSHIRE BLVD, 18TH FLOOR
LOS ANGELES, CALIFORNIA 90024
TEL: (310) 481-7600 / FAX: (310) 481-7650

*Attorneys for Proposed Intervenors - Appellants,*
*CENTURY INDEMNITY COMPANY, ALLIANZ UNDERWRITERS INSURANCE*
*COMPANY, CHICAGO INSURANCE COMPANY, and FIREMAN'S FUND*
*INSURANCE COMPANY*

Nicolaides Fink Thorpe Michaelides Sullivan LLP
SARA M. THORPE (STATE BAR NO. 146529)
RANDALL P. BERDAN (STATE BAR NO. 199623)
101 MONTGOMERY STREET, SUITE 2300
SAN FRANCISCO, CA 94104
TEL: 415-745-3770 / FAX: 415-745-3771

*Attorneys for Proposed Intervenor - Appellants,*
*THE CONTINENTAL INSURANCE COMPANY*

      c.    Zanesville Mosaic Tile Property.

74.    The Michigan Department of Environmental Quality ("MDEQ") will not object to the abandonment pursuant to 11 U.S.C. § 554 of the Mancelona Pond Property (a/k/a the Wickes Effluent Pond) by the Debtor[4] subject to the execution and recording of both an easement of access in gross to the property and a restrictive covenant prohibiting the use of groundwater and providing any other necessary use restrictions at the property and subject to paragraph 80 of this Order.

75.    On the Effective Date, the Farmington Plant Property will be transferred to the NH Trust or such party as the State of New Hampshire may designate, free and clear of all liens and encumbrances of record; provided that (a) the Debtor shall be permitted to continue to occupy the Farmington Plant Property for the purpose of liquidating machinery and equipment, and the removal of process waste and debris (as set forth below) located therein and not required to be left in place by the terms hereof until the earlier of (i) the date the Debtor provides notice of its liquidation sales (and cleanup consistent with the terms hereof) of the Farmington Plant Property and (ii) November 1, 2007 (the "Closure Date") and (b) until the Closure Date, the Debtor shall continue to (i) pay all carrying costs associated with the Farmington Plant Property, including any taxes, utilities and other similar costs, and (ii) perform any required environmental quality obligations associated with the Farmington Plant Property and the Cardinal Landfill Property.  On or before the Closure Date, the Debtor will remove from the Farmington Plant waste and debris resulting from facility operations.  The Debtor shall leave "as is" all systems for fire suppression, security, electrical, HVAC, water and the MOM 3A hydraulic containment

---

[4]    All references to the "Debtor" in paragraphs 72 through 84 shall refer to the relevant Collins & Aikman entity or, after the Effective Date, the Post-Consummation Trust or other successor to such entity under the Plan.

47

system and all related pumps; wells; treatment equipment; electrical and plumbing systems; any keys in Debtor's possession for equipment enclosures, monitoring and pumping wells and gates; and system manuals and information that are currently on-site (the "Hydraulic Containment System"). Until the Closure Date the Debtor will continue to operate the Hydraulic Containment System. The Debtor shall provide to the State of New Hampshire all files and records in its possession pertaining to the environmental condition of the Farmington Plant and the Dover property for which it has information, including all site-specific data prepared by consultants employed by the Debtor not previously supplied to the Department. This shall include paper documents, electronic databases, spread sheets, and other electronic files and records.

76.    At the Cardinal Landfill the Debtor shall leave "as is" all security, electrical, plumbing, monitoring wells, pumps and related equipment and utilities, and the soil vapor management system that are currently on-site, including all related equipment and utilities in the on-site treatment shed ("SVMS"). The Debtor shall provide any keys in its possession for equipment enclosures, monitoring wells, pumping wells and gates at the Cardinal Landfill property. The Debtor shall provide to the State of New Hampshire all files and records in its possession pertaining to the environmental condition of the Cardinal Landfill site for which it has information, including site-specific data prepared by consultants employed by the Debtor not previously supplied to the Department. This shall include paper documents, electronic databases, spread sheets, and other electronic files and records.

77.    At the Mancelona Pond Property, the Debtor shall leave "as is" all monitoring wells, including off-site monitoring wells to the extent permitted by any access agreements between the Debtor and the owners of the property on which the monitoring wells are located, and if the monitoring wells are locked, will provide the MDEQ with keys in its possession. The

48

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-612
AGO000348

Debtor shall provide the MDEQ with keys to the gate for the fenced portion of the Mancelona Pond Property. On or before the Effective Date, the Debtor shall turn over to the MDEQ all files and records in its possession pertaining to the environmental conditions at or associated with the Mancelona Pond Site and the former Wickes Manufacturing Plant (now owned by Dura Operating Corp.), including any site-specific data prepared by consultants employed by the Debtor. This shall include paper documents, electronic databases, spread sheets and other electronic files and records. The Debtor shall also provide, as part of the restrictive covenant and easement in gross, any surveys and legal descriptions of the Mancelona Pond Property that are in its possession.

78.    The terms and conditions related to the Zanesville Mosaic Tile property are set forth in the Zanesville Settlement Agreement (as defined below). The Debtor shall provide to U.S. EPA any surveys and legal description of the Zanesville Mosaic Tile Property that are in its possession.

79.    The NH Trust will be funded with $3,642,857 on the Effective Date.

80.    On the Effective Date, the Debtor shall pay to the State of Michigan $607,143. The MDEQ's share of the base settlement proceeds will be paid directly into the State of Michigan's Environmental Response Fund pursuant to a mutually acceptable Michigan Settlement Agreement, which settlement agreement shall be the stipulation referenced in paragraph 90 of this Order. MDEQ does not assume liability for Claims against the Debtors by receipt of the settlement proceeds.

81.    An agreement in principle has been reached between the Debtor, U.S. EPA and a third party (the "Marmon Group") under which the Zanesville Mosaic Tile property will be transferred to the Zanesville Trust. The terms of the settlement relating to the Zanesville Mosaic

49

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-613
AGO000349

Tile property are set forth in the Zanesville settlement agreement by and between the Debtor, the U.S. EPA and the Marmon Group (the "Zanesville Settlement Agreement"). The date on which the Zanesville Settlement Agreement becomes effective in accordance with its terms is hereinafter referred to as the "Zanesville Effective Date."

82.    In the event the Zanesville Effective Date has not occurred on or before the Effective Date, the Debtor shall deposit $750,000 into escrow pursuant to an escrow agreement in form and substance satisfactory to the parties. If the Zanesville Effective Date occurs within 12 months of the Effective Date, the escrowed funds shall be refunded to the Debtor. If the Zanesville Effective Date does not occur within 12 months of the Effective Date, the escrowed funds less the amount of any Alternate Value (as defined below) shall be paid by the escrow agent to the Agencies (as defined below) in accordance with a formula to be agreed among them and made part of the Escrow Agreement, and escrowed funds in the amount of any Alternate Value shall be refunded to the Debtor. Interest earned on any funds in the escrow shall be paid to the party entitled to receive such funds. "Alternate Value" shall mean 70% of the monetary value of any capping, monitoring or related work at the Zanesville site that Marmon Group or another third party becomes obligated to perform; provided that in no case shall the Alternate Amount exceed $525,000. The Debtor and U.S. EPA will attempt in good faith to agree on the monetary value of such work and, if no such agreement is reached, will seek resolution with the assistance of a mutually acceptable neutral.

83.    U.S. EPA, New Hampshire DES, and MDEQ (collectively, the "Agencies") will not seek injunctive relief or otherwise pursue the Debtor or the Post-Consummation Trust for cleanup of the properties listed in paragraph 73 of this Order.

84.     The Agencies shall have an allowed administrative claim in an amount from $4,250,000 to $5,000,000 (depending upon the timing of the Zanesville Effective Date) in these cases if the Plan is confirmed and consummated, or if an alternative plan that is proposed by the Debtor or other third party is confirmed and consummated, so long as such alternative plan provides the same treatment respecting the Agencies as that afforded the Agencies under the Plan, such claim to be shared among them as set forth in paragraphs 79 through 82 of this Order; provided that in any such case such treatment shall be deemed to satisfy and discharge such administrative claim in full.  If, however, these cases are converted to a case under chapter 7 or a plan is confirmed that does not provide for the same treatment afforded the Agencies under the Plan, then the Agencies shall have (a) an allowed administrative claim, binding upon any future trustee, successor to the Debtor or alternative plan proponent totaling no more than $10,500,000 if the Marmon Settlement is finalized (such amount to be shared among New Hampshire DES ($9,000,000) and MDEQ ($1,500,000)), or (b) an allowed administrative claim, binding upon any future trustee, successor to the Debtor, or alternative plan proponent, totaling no more than $11,400,000 if the Marmon Settlement is not finalized.

85.     Paragraphs 72 through 84 of this Order shall also apply to the Debtor-leased property at 16 Industrial Park Drive in Dover, New Hampshire.

86.     Except as set forth in paragraph 83 of this Order, nothing in the Plan or this Order discharges, releases or precludes any liability to a governmental unit that is not a Claim.

87.     Except as set forth in paragraph 83 of this Order, any relief provided under the Plan or this Order to non-Debtors shall not release, discharge, enjoin or preclude any liability of such non-Debtors to a governmental unit under any federal, state or local environmental law except as set forth in the applicable Residual Trust Agreements that govern the Custodial Trusts.

51

88.   Nothing in the Plan or this Order discharges, releases or precludes any claim of a governmental unit that arises on or after the Effective Date; provided that, to the extent such claim is within the scope of the applicable Residual Trust Agreements that govern the Custodial Trusts, such claim shall be discharged, released and precluded as set forth therein or paragraph 83 of this Order.

89.   Except as set forth in paragraph 83 of this Order or the applicable Residual Trust Agreements that govern the Custodial Trusts, nothing in the Plan or this Order releases any entity from liability under environmental law as the owner or operator of property that such entity owns or operates after the Effective Date.

90.   The Debtors are authorized to enter into the stipulation between the Debtors and the State of Michigan substantially in the form of Docket No. 7729.

91.   Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan or this Order shall enjoin or otherwise preclude the assertion at any time of a right of setoff or recoupment, or any other rights or claims asserted as defenses (affirmative or otherwise), including but not limited to any right to indemnification under the by-laws of Collins & Aikman Corporation, the Delaware General Corporate Law or that certain Services Agreement dated February 23, 2001, as amended, among Heartland Industrial Partners, L.P. ("Heartland") and the Debtors, by (a) Heartland and its affiliates, including but not limited to the Heartland Affiliates (as defined in Heartland's objection to the Plan [Docket No. 4644]), (b) their respective partners (both general and limited), members (both managing and otherwise), officers, directors, employees, agents and representatives, (c) Mr. Daniel P. Tredwell, (d) Mr. W. Gerald McConnell, (e) Mr. Samuel Valenti, III and (f) Mr. David Stockman.   Such rights and/or defenses are preserved and are not reduced or impacted by the Plan or this Order.

52

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-616
AGO000352

92.    Notwithstanding anything to the contrary in the Plan or this Order, (a) Heartland and its affiliates, including but not limited to the Heartland Affiliates (as defined in Heartland's objection to the Plan [Docket No. 4644]), (b) their respective partners (both general and limited), members (both managing and otherwise), officers, directors, employees, agents and representatives, (c) Mr. Daniel P. Tredwell, (d) Mr. W. Gerald McConnell, (e) Mr. Samuel Valenti, III and (f) Mr. David Stockman shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

93.    Notwithstanding anything to the contrary in this Order, the Plan, any exhibit to the Plan or any other Plan document, nothing in this Order, the Plan, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing the legal, equitable or contractual rights and defenses of Fireman's Fund Insurance Company and National Surety Company (collectively, "FFIC"), if any, in any respect, including without limitation, any rights of recoupment, setoff, rescission, contribution and subrogation of FFIC. The rights of FFIC shall be determined under their respective insurance policies and applicable law. The Residual Claims Trust, the Post-Consummation Trust, the Litigation Trust and any other trust created by the Plan are bound by the policies issued by FFIC.

94.    Notwithstanding anything to the contrary in the Plan or this Order, The Haartz Corporation shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order, nor shall the provisions of Article XII.E of the Plan preclude the assertion at any time of a right of setoff or a right of recoupment by The Haartz Corporation for which a proof of claim asserting such right was timely Filed. Any objection to such right of

53

DTSC, et al. v.  Jim Dobbas,  Inc.,  et al.
ER-617
AGO000353

setoff or right of recoupment shall be determined in accordance with the procedures set forth in the Plan.

95.     Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of a right of setoff, recoupment or any defense (affirmative or otherwise) by Johnson Controls, Inc., Intertec Systems, LLC and Bridgewater Interiors, LLC in any context (whether as an affirmative defense, an affirmative right or otherwise).  Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

96.     Notwithstanding anything to the contrary in the Plan, this Order or the transactions contemplated thereby, The Dow Chemical Company and its subsidiaries and its affiliates (collectively "Dow") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

97.     Notwithstanding anything to the contrary in the Plan (including but not limited to Article XII. A, C and E of the Plan), this Order, or the transactions contemplated thereby, and notwithstanding Dow's acceptance of any distribution under the Plan, Dow's right to assert any Cause of Action (whether as an affirmative defense, an affirmative right or otherwise) against the Debtors, the Debtor Releasees, and the Trusts (including, without limitation, the rights of setoff, subrogation and recoupment) shall not be limited, reduced, enjoined or otherwise impacted or affected in any way whatsoever; provided that Dow's right to assert any Cause of Action that arose prior to the Effective Date against the Debtors or the Trusts is solely for defensive purposes and Dow shall not have the right to assert any such pre-Effective Date Cause of Action against the Debtors or the Trusts seeking an affirmative recovery, except that Dow may file an administrative expense claim in accordance with and subject to the provisions of the Plan.

<div align="center">54</div>

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-618
AGO000354

98.     Notwithstanding anything to the contrary in this Order, the Plan, the exhibits to the Plan, or any exhibits, schedules or other attachments to any motion or agreement providing for the sale of the Debtors' assets, any and all executory contracts with Dow are rejected as of the Effective Date of the Plan if they are still executory as of the Effective Date and Dow has no obligation to perform according to the terms of such executory contracts after their respective expiration date or the Effective Date, whichever is earlier, unless Dow consents in writing to an extension of such expiration date or rejection date or such contracts are assumed by a Court order prior to such expiration date or rejection date.

99.     Notwithstanding anything to the contrary in the Plan or this Order, Pullman Industries, Inc. ("Pullman") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

100.    Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of (a) a right of setoff, recoupment or any defense (affirmative or otherwise) by Pullman in any context (whether as an affirmative defense, an affirmative right or otherwise) or (b) any right or claim of ownership, lien, or otherwise, if and to the extent that same may be asserted as to or against any property in possession of Pullman.  Such rights and/or defenses are preserved and are not reduced or impacted by the Plan or this Order.

101.    Notwithstanding anything to the contrary in the Plan or this Order, the rights and claims of Pullman shall be determined on the merits of the matters before the Court in those adversary proceedings known as Collins & Aikman Corporation, et al. v. Noble International, Ltd., Adversary Proceeding No. 07-5679, and Collins & Aikman Corporation, et al. v. Pullman Industries, Inc., Adversary Proceeding No. 07-5461 (collectively, the

K&E 11815541.12

05-55927-swr    Doc 7827    Filed 07/18/07    Entered 07/18/07 17:01:03    Page 55 of 61

"Pullman Adversary Cases"), and Pullman shall have an Allowed Claim under the Plan as and to the extent awarded in the Pullman Adversary Cases.

102.   The Debtors shall be deemed to have segregated and hold $980,000 (the "TTERTT Fund") for amounts allegedly owed to TTERTT Associates, L.L.C. ("TTERTT") on account of the Debtors' obligations to TTERTT pursuant to the lease between TTERTT Associates, L.L.C. and Collins & Aikman Products Co. dated February 27, 2006 (as amended from time to time, the "Lease") for the period ending November 30, 2007; provided that the TTERTT Fund shall decrease dollar-for-dollar by amounts paid after the date of this Order by the Debtors to TTERTT under the Lease, which amounts once paid will not be subject to disgorgement for any reason. TTERTT shall have the same rights in the TTERTT Fund as TTERTT would have in the amounts in the TTERTT Fund as if the TTERTT Fund were escrowed solely for the benefit of TTERTT.   This provision will be binding upon any subsequently appointed chapter 7 trustee if the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code.  The Debtors (on their behalf and on behalf of the Debtors' bankruptcy estates) waive, release and discharge TTERTT (and all brokers receiving commissions under the Lease) from and against any claim, demand and cause of action that they had, have or may have with respect to the Early Termination Fee paid to TTERTT on or about May 31, 2007 in accordance with Section 3.3 of the Lease including, without limitation, the unamortized broker's fee paid to Kojaian Management Corporation.  The reservation of rights contained in the Debtors' letter to TTERTT dated May 31, 2007 (which gave notice of the Debtors' intent to terminate the Lease effective November 30, 2007) is withdrawn.

103.   To the extent the Debtors sell or otherwise dispose of the equipment (the "Textron Sales") that is the subject of the agreements (the "Textron Equipment") to which

K&E 11815541.12

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-620
AGO000356

Textron Financial Corporation and/or its affiliates (collectively, "Textron") and the Debtors or any of their respective affiliates are parties (the "Textron Agreements"), which equipment Textron has an interest in, the proceeds of such Textron Sales in an amount less than or equal to the principal amount of the Allowed Claims of Textron will be paid to Textron (collectively, the "Textron Sales Proceeds"); provided that (a) to the extent the total amount of the Textron Sales Proceeds exceeds the principal amount of the Allowed Claims of Textron, such excess shall be distributed in accordance with further order of the Court with all parties reserving their rights and defenses with respect to such excess and the treatment of Textron's remaining claim and (b) to the extent the total amount of the Textron Sales Proceeds is less than the principal amount of the Allowed Claims of Textron, Textron shall have an Allowed General Unsecured Claim in Class 5 of the Plan for such deficiency.  To the extent the Textron Equipment is not sold or otherwise disposed of as set forth in the immediately preceding sentence, the Debtors will release their rights, claims and interest in such Textron Equipment to Textron.

104.    Notwithstanding anything to the contrary in the Plan, Exhibit E to the Plan, Exhibit F to the Plan, this Order, the Notice of Rejection of Certain Executory Contracts Filed July 11, 2007 [Docket No. 7749] or any other notice or motion purporting to reject an executory contract or unexpired lease, the Master Services Agreement by and between Infocrossing, Inc. and Alicomp, a division of Alicare, Inc. (collectively, "Infocrossing"), and Collins & Aikman Products Co. dated June 1, 2003 (with all related statements of work and schedules, the "Infocrossing Agreement") shall be assumed pursuant to section 365 of the Bankruptcy Code subject to (a) the cure under section 365(b)(1)(A) of the Bankruptcy Code for the Infocrossing Agreement in the amount of $200,000 in immediately available funds being paid by the Debtors to Infocrossing no later than five business days from the date of entry of this Order

K&E 11815541.12

05-55927-swr    Doc 7827    Filed 07/18/07    Entered 07/18/07 17:01:03    Page 57 of 61

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-621
AGO000357

for all defaults under the Infocrossing Agreement and (b) the Infocrossing Agreement being amended so that the Debtors are authorized to terminate the Infocrossing Agreement without penalty upon no less than 60 days prior written notice delivered to Infocrossing by the Debtors or the Post-Consummation Trust, as applicable; provided that such written notice shall not provide for termination prior to December 31, 2007.  As soon as practicable after the entry of this Order, the Debtors shall dismiss with prejudice and without costs Adversary Proceeding No. 07-04803 against Alicomp.

105.    Nothing in the Plan or this Order confirming the Plan shall release, discharge, enjoin or impact in any way the claims or the prosecution of the claims of K.J. Egleston, et al. or the members of the putative Class Action Plaintiffs (as defined in the objection of K.J. Egleston, et al. [Docket No. 4655] (the "Egleston Objection")) asserted, or to be asserted, on behalf of the putative Class Action Plaintiffs (as defined in the Egleston Objection) or in their individual capacity against non-Debtors named in the Collins & Aikman Securities Class Action (as defined in the Egleston Objection) and/or against any other non-Debtor, provided that nothing in this paragraph shall allow K.J. Egleston, et al. or the members of the putative Class Action Plaintiffs (as defined in the Egleston Objection) to pursue those claims against the Trusts and/or any persons or entities that operate or effectuate the terms of the Trusts solely in their capacity as such.

106.    Nothing in the Plan or this Order confirming the Plan shall release, discharge, enjoin or impact in any way the claims or the prosecution of the claims of MainStay High Yield Corporate Bond Fund ("MainStay") or the members of the putative Class (as defined in MainStay's objection to the Plan [Docket No. 4628] (the "MainStay Objection")) asserted, or to be asserted, on behalf of the putative Class or in their individual capacity against non-Debtors

58

DTSC, et ER 622 v. Jim Dobbas, Inc., et al.
AGO000358

named in the Noteholder Litigation (as defined in the MainStay Objection) and/or against any other non-Debtor, provided that nothing in this paragraph shall allow MainStay or the members of the putative Class (as defined in the MainStay Objection) to pursue those claims against the Trusts and/or any persons or entities that operate or effectuate the terms of the Trusts solely in their capacity as such.

107.   The Debtors and Beirne Maynard & Parsons LLP ("BMP") reserve their respective rights with respect to BMP's alleged right and claim to any constructive trust whereby the Debtors hold funds received from insurers for the benefit of BMP.

108.   Notwithstanding anything to the contrary in the Plan or this Order, the California Department of Toxic Substances Control and the Central Valley Regional Water Quality Control Board (collectively, "California Environmental Entities") shall not be Releasing Parties and shall not be subject to the obligation to provide Third Party Releases set forth herein or in Article XII.C of the Plan.

109.   Notwithstanding anything to the contrary in the Plan or this Order, the California Environmental Entities shall not be subject to the provisions of Article XII.E and Paragraph 5 of this Order.

110.   Nothing in the Plan or this Order discharges, releases or precludes any liability to the California Environmental Entities that is not a Claim.

111.   Any relief provided under the Plan or this Order to non-Debtors shall not release, discharge, enjoin or preclude any liability of such non-Debtors to the California Environmental Entities under any federal, state or local environmental law or regulation.

112.   Nothing in the Plan or this Order discharges, releases or precludes any claim of the California Environmental Entities that arises on or after the Effective Date.

K&E 11815841.12

113.    Nothing in the Plan or this Order releases any entity from liability under environmental law as the owner or operator of property located in the State of California that such entity owns or operates after the Effective Date.

114.    The Stipulation between the Debtors and the California Environmental Entities is hereby approved and incorporated in this Order by reference.

115.    Notwithstanding anything to the contrary in the Plan, the liens, if any, of the City of Evart, Michigan (the "City") arising under Michigan or local law shall continue against the Debtors' Evart, Michigan facility (the "Facility") until the validity, extent or priority of such liens is resolved between the Debtors and the City or determined by the Court or such other court with jurisdiction, subject to any rights, claims and defenses of any party with respect thereto; provided, however, that if the Facility is or becomes subject to a sale, the liens, if any, of the City shall attach to the sale proceeds of the Facility upon the closing of such sale of the Facility, subject to (a) the validity, extent and priority of the liens, if any, of the City being resolved between the Debtors and the City or determined by the Court or such other court with jurisdiction and (b) any rights, claims and defenses of any party with respect thereto.

116.    Notwithstanding anything to the contrary in the Plan or this Order, Valiant Tool & Mold, Inc. ("Valiant") shall not be a Releasing Party and shall not be subject to Article XII.C of the Plan or paragraph 8 of this Order.

117.    Neither the provisions of Article XII.E of the Plan nor any other provision of the Plan shall enjoin or otherwise preclude the assertion at any time of (a) a right of setoff, recoupment or any defense (affirmative or otherwise) by Valiant in any context (whether as an affirmative defense, an affirmative right or otherwise) or (b) any right or claim of ownership, lien or otherwise, if and to the extent that same may be asserted as to or against any tooling or molds

60

DTSC, et al. v. Jim Dobbas, Inc., et al.
ER-624
AGO000360

built or fabricated by Valiant. Such rights and/or defenses are preserved and are not reduced or impacted by the Plan.

118.    Any lease or contract with Comerica Leasing Corporation shall be removed from Exhibit F to the Plan.

119.    Notwithstanding anything to the contrary in this Order, the Plan, any exhibit to the Plan or any other Plan document, nothing in this Order, the Plan, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing London Market Insurers' legal, equitable or contractual rights, if any, in any respect. The rights of London Market Insurers shall be determined under their respective insurance policies or settlements with any of the Debtors relating to such insurance policies.

120.    Nothing in the Plan or this Order shall prejudice the ability of the Court to enforce any order entered as a result of (a) the Order Appointing Fee Examiner in the Chapter 11 Cases [Docket No. 7331] or (b) any Fee Claim.

**Final Order**

121.    This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed on July 18, 2007

<div style="text-align:right">

/s/ Steven Rhodes
Steven Rhodes
ZZ.    Chief Bankruptcy Judge
I hereby certify that the foregoing is a
true copy of the original on file in this
office.

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
By _____
Deputy Clerk:
DATE _____

</div>

61

Form nteconfelos

211 West Fort Street
Detroit, MI 48226

<div align="center">

## UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

</div>

<div align="center">

Case No.: **05−55927−swr**
Chapter: 11

</div>

In Re: (NAME OF DEBTOR(S))
   Collins & Aikman Corporation
   250 Stephenson Highway
   Troy, MI 48083
Social Security No.:

Employer's Tax I.D. No.:
   13−3489233

<div align="center">

### NOTICE OF CONFIRMATION AND OPPORTUNITY
### TO OBJECT TO THE CLOSING OF THE CASE

</div>

To the Creditors of the above−named Debtor:

NOTICE IS HEREBY GIVEN that the Plan of Reorganization filed on 07/09/2007 was confirmed on 7/18/07 .

The Court will find that the estate has been fully administered and will enter a final decree closing the case in 30 days unless, within that time, an objection is filed. If an objection is filed, it will be set for hearing.

**If the closing is delayed past this time period for any reason, the burden will be on the debtor's counsel to notify the clerk when it is appropriate to close the case so that unnecessary U.S. Trustee fees will not accrue.**

Dated: 7/18/07

<div align="center" style="margin-left:40%">

BY THE COURT

Katherine B. Gullo , Clerk of Court
UNITED STATES BANKRUPTCY COURT

</div>

DTSC, et al. v.  Jim Dobbas,  Inc., et al.
ER-626
AGO000362

Exhibit D



# Department of Toxic Substances Control



**Linda S. Adams**
Acting Secretary for
Environmental Protection

Leonard E. Robinson
Acting Director
8800 Cal Center Drive
Sacramento, California 95826-3200

**Edmund G. Brown Jr.**
Governor

March 17, 2011

Mr. David Van Over
216 F Street #108
Davis, California 95616

Mr. Don Dobbas
Jim Dobbas, Incorporated
P.O. Box 177
Newcastle, California 95658

Continental Rail, Inc.
3218 Nacodoches Road, #8
San Antonio, Texas 78217

NOTICE OF ISSUANCE OF IMMINENT OR SUBSTANTIAL ENDANGERMENT
ORDER AND REMEDIAL ACTION ORDER (I/SE ORDER) FOR FORMER WICKES
FOREST INDUSTRIES SITE, ELMIRA, CALIFORNIA, SOLANO COUNTY

Dear  Mr. Van Over, Mr. Dobbas and Continental Rail, Inc.:

The purpose of this letter is to provide notification that the Department of Toxic
Substances Control (DTSC) is issuing an Imminent and Substantial Endangerment
Order (I/SE Order) for the former Wickes Forest Industries Site at 147 A Street (the
Property), Elmira, California, due to hazardous substances releases on the site. This
I/SE Order applies to the Property and the areal extent of contamination that resulted
from activities on the Property (hereinafter, the "Site"). Elevated levels of arsenic and
hexavalent chromium in surface and sub-surface soil on the Property are continuing to
act as a persistent source to groundwater contamination and represent a significant
threat to human health and the environment.

DTSC has enclosed a copy of the I/SE Order for your records. The Order is final and
effective five days from the date of mailing, which is the date of this cover letter
transmitting the Order to you.

Any legal representatives acting on behalf of you with regard to this letter or the I/SE
Order should contact  Ms. Marilee Hanson, with DTSC's Office of Legal Counsel  at
(916) 327-0979 or e-mail mhanson@dtsc.ca.gov.

Mr. David Van Over
Mr. Don Dobbas
Continental Rail, Inc.
March 17, 2011
Page 2


If you have any questions or comments on this letter, please feel free to contact
Mr. MacNicholl at (916) 255-3713 or e-mail at pmacnich@dtsc.ca.gov.

Sincerely,


Charles Ridenour, P.E.
Performance Manager
Cleanup Program – Sacramento Office

Enclosure

cc:     Ms. Marilee Hanson
        Staff Counsel III
        Office of Legal Counsel
        Department of Toxic Substances Control
        1011 "I" Street, 23rd Floor
        P.O. Box 806
        Sacramento, California 95812-0806

        Mr. Richard Hume, P.E.
        Supervising Hazardous Substances Engineer
        Cleanup Program – Sacramento Office
        Department of Toxic Substances Control
        8800 Cal Center Drive
        Sacramento, California 95826

        Mr. Peter MacNicholl, P.E.
        Project Manager
        Cleanup Program – Sacramento Office
        Department of Toxic Substances Control
        8800 Cal Center Drive
        Sacramento, California 95826

STATE OF CALIFORNIA
CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY
DEPARTMENT OF TOXIC SUBSTANCES CONTROL

| | | |
|---|---|---|
| In the Matter of: | ) | Docket No. I/SE 10/11 - 008 |
| | ) | |
| Wickes Forest Industries Site | ) | |
| 147 A Street | ) | IMMINENT OR SUBSTANTIAL |
| Elmira, California 95625 | ) | ENDANGERMENT |
| | ) | DETERMINATION ORDER |
| | ) | AND REMEDIAL ACTION ORDER |
| Respondents: | ) | |
| Mr. David Van Over | ) | |
| 216 F Street #108 | ) | |
| Davis, California 95616 | ) | |
| | ) | |
| Jim Dobbas, Inc. | ) | Health and Safety Code |
| P.O. Box 177 | ) | Sections |
| Newcastle, California 95658 | ) | 25355.5(a)(1)(B), |
| | ) | 25358.3(a), 58009 and 58010 |
| Continental Rail, Inc. | ) | |
| 3218 Nacodoches Road, #8 | ) | |
| San Antonio, Texas 78217 | ) | |

## I. INTRODUCTION

1.1    Parties. The California Environmental Protection Agency, Department of Toxic Substances Control (DTSC) issues this Imminent or Substantial Endangerment Determination and Order and Remedial Action Order (Order) to Jim Dobbas Inc. (Dobbas), a California Corporation, Continental Rail, Inc., a corporation (Continental Rail), and David Van Over, an individual  (Van Over) (Respondents).

1.2    Property/Site. This Order applies to the property located at 147 A Street, Elmira, Solano County, California 95625, which consists of 7.5 acres and is identified by Assessor's Parcel Number(s) 142-010-130, 142-010-140, and 142-042-010 (the Property).  A legal description of the Property is attached as Exhibit A.  This Order applies to the Property and the areal extent of contamination that resulted from activities on the Property (hereinafter, the "Site").  The Property is frequently referred to as the "Wickes Forest Industries Site."

1.3    Jurisdiction.  This Order is issued by DTSC to Respondents pursuant to DTSC's authority under Health and Safety Code  sections 25358.3(a), 25355.5(a)(1)(B), 58009 and 58010.

1 of 17

Health and Safety Code section 25358.3(a) authorizes DTSC to take various actions, including issuance of an Imminent or Substantial Endangerment Determination and Order, when DTSC determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance.

Health and Safety Code section 25355.5(a)(1)(B) authorizes DTSC to issue an order establishing a schedule for removing or remedying a release of a hazardous substance at a site, or for correcting the conditions that threaten the release of a hazardous substance. The order may include, but is not limited to, requiring specific dates by which the nature and extent of a release shall be determined and the site adequately characterized, a Remedial Action Plan (RAP) prepared and submitted to DTSC for approval, and a removal or remedial action completed.

Health and Safety Code section 58009 authorizes DTSC to commence and maintain all proper and necessary actions and proceedings to enforce its rules and regulations; to enjoin and abate nuisances related to matters within its jurisdiction which are dangerous to health; to compel the performance of any act specifically enjoined upon any person, officer, or board, by any law of this state relating to matters within its jurisdiction; and/or on matters within its jurisdiction, to protect and preserve the public health.

Health and Safety Code section 58010 authorizes DTSC to abate public nuisances related to matters within its jurisdiction.

## II. FINDINGS OF FACT

DTSC hereby finds:

2.1    Liability of Respondents.  Respondents are responsible parties or liable persons as defined in Health and Safety Code section 25323.5. Dobbas and Continental Rail both owned undivided fifty percent (50%) interests in the Property from April 1, 1997 until approximately February 15, 2011. Van Over purchased the Property from Dobbas and Continental Rail on or around February 15, 2011, with knowledge that environmental contamination exists at the Site.

2.2    Property/Site History.

2.2.1  The Property is a former wood treatment facility located on approximately 7.5 acres near the intersection of A Street and Holdener Road in Elmira, California. Pacific Wood Preserving (a domestic corporation, dissolved effective September 11, 1980) operated a wood treatment facility at the Property until September 1979. The Wickes Corporation (Wickes), the predecessor to Collins and Aikman Products Company (CAPCO), purchased the Property from Pacific Wood Preserving and then operated the wood treatment facility at the Property until August 1982. Operations at the Property included treating lumber with preservative solutions containing arsenic,

2 of 17

chromium, and copper. Investigations have shown that the Site soils have been affected by these inorganic metals. Groundwater beneath the Site has also been contaminated by chromium, copper, and arsenic. The Central Valley Regional Water Quality Control Board (CVRWQCB) and DTSC conceptually approved a Remedial Action Plan (RAP) on September 19, 1983, submitted by Wickes, which proposed storm water management and ground water removal and treatment measures for the Site. On February 26, 1984, DTSC issued to Wickes an Order and Schedule of Compliance pursuant to Health and Safety Code section 25187. The Order adopted and incorporated a Settlement Agreement and Schedule of Compliance addressing soil, surface water, and ground water contamination at the Site. The CVRWQCB has also issued a series of Waste Discharge Requirements (WDRs) over the years to Wickes and CAPCO, including the last WDR Order No. R5-2005-0022, which was issued to CAPCO on June 4, 2004.

Respondents Dobbas and Continental Rail purchased the Property from CAPCO in April 1997. Respondent Van Over purchased the Property from Dobbas and Continental Rail on or about February 15, 2011.

2.2.2  To address groundwater contamination, a subsurface french drain system 200 feet long with a single recovery well was installed along with an ion-exchange treatment system so effluent could be discharged to the ditch adjacent to Holdener Road and A Street under the 1983 RAP. In 1987, an additional extraction well was connected to the system to prevent the migration of affected ground water further off-site. This system was confined to the southern portion of the Property. In 1992, the groundwater extraction and treatment system (GWETS) was modified significantly. Seven (7) additional extraction wells were installed (five (5) off-Property) and the ion-exchange treatment system was replaced with an electrochemical treatment system that removes chromium, arsenic, and copper from ground water by co-precipitating the metal ions with ferric hydroxide particles. Treated water was then discharged to the ditch along Holdener Road and A Street under a National Pollutant Discharge Elimination System (NPDES) permit from the CVRWQCB.

2.2.3  Initial soil investigations conducted during the early 1980s were centered on the southern portion of the Property where the manufacturing process took place. In 1983, contaminated soil was excavated from the truck loading pad, and the drying pad for treated wood was sealed with a low permeability asphalt cap under a RAP approved by DTSC on September 19, 1983. Soils inside the metal sided building situated over the process area were capped in 1991 with shot-crete to prevent rainwater from further transporting the constituents of concern to ground water. Two additional RAPs were completed to address contamination at the Site. The RAP approved by DTSC on September 9, 1993 addressed the soil contamination, storm water control, and ground water treatment in the southern portion of the Site. On February 25, 1994, DTSC approved a RAP concentrating on soil in the northern portion of the Site (the "1994 RAP"). The implementation of the 1994 RAP included: (i) excavating 2,100 cubic yards of off-Property soil from drainage ditches and placing it on the Property in an area to be capped with asphalt; (ii) excavation of 89 cubic yards of soil from the railroad drainage

ditch and disposing of it at the Chemwaste Kettleman Hills facility in Kettleman City, California; (iii) regrading the Property; (iv) installing an asphalt cap in all areas of the Property that were not previously sealed; and (v) installing a positive drainage system to prevent storm water intrusion under the cap. On January 5, 1996, DTSC approved the Operation and Maintenance Plan dated October 1995 (the "O&M Plan"), which required, among other things, maintenance of the cap and operation of the GWETS.

2.2.4  On October 27, 1995, CAPCO recorded in Solano County a Covenant to Restrict Use of Property-Environmental Restriction, which was entered into between CAPCO and DTSC (the "Covenant"). The Covenant, among other things, disclosed that the Property was contaminated with hazardous substances, banned uses that would disturb the cap, and restricted the Property's use to non-residential purposes without prior written approval from DTSC. On February 26, 1996, CAPCO and DTSC entered into an Operation and Maintenance Agreement, Docket Number 95/96-038 (the "O&M Agreement") in which CAPCO agreed to maintain the cap and operate the GWETS pursuant to the O&M Plan. Respondents Dobbas and Continental Rail purchased the Property from CAPCO on April 1, 1997, after the Covenant for the Property had been recorded and the O&M Agreement was in place. Also on April 1, 1997 an "Access and Remediation Agreement" was recorded which was signed by Respondent Dobbas, in which Dobbas agreed to provide access to the Property for CAPCO's remediation activities. Dobbas subsequently apparently provided access to the Property to CAPCO's contractors to conduct O&M activities, including operating the GWETS. On May 17, 2005, CAPCO filed a voluntary Chapter 11 bankruptcy petition in United States Bankruptcy Court, Eastern District of Michigan (Detroit), Case Number 05-55927-SWR. In August, 2005, CAPCO ceased operating the GWETS. On March 7, 2006, DTSC directed CAPCO to resume operating the GWETS. On March 22, 2006, CAPCO refused to comply.

From July 24, 2006 through September 28, 2006, DTSC negotiated with Dobbas and Continental Rail regarding the continuation of O&M activities at the Site. Respondents refused to conduct O&M activities such as restarting and repairing the GWETS. DTSC issued an Imminent and Substantial Endangerment Determination on November 13, 2006. On January 19, 2007, DTSC contracted with Kleinfelder Inc. to resume operation of the GWETS, groundwater monitoring and reporting and maintenance of the asphalt cap. On December 3, 2007, Dobbas agreed to perform certain repairs at the Site, which included limited maintenance of the asphalt cap and repair of the roof drainage system for the building over the source area. On May 9, 2007, DTSC and Dobbas entered into an Access Agreement.

On February 14, 2008, DTSC contracted with URS Corporation to investigate soils in the source area of the Site. Results of the 2008 URS soil investigation confirmed that elevated levels of arsenic and hexavalent chromium in soil were continuing to act as a persistent source to groundwater contamination. In August 2009, URS on behalf of DTSC prepared a draft Removal Action Work Plan (2010 RAW) to remediate groundwater at the Site. The 2010 RAW identifies demolition of the GWETS, contaminated soil excavation, confirmation sampling, off-site disposal, backfilling,

reporting, and long-term groundwater monitoring to assess the performance of the remedial action.

In February and March 2010, DTSC staff conducted Site inspections and noticed numerous cracks in the asphalt cap, including blockage and disrepair to the drain and gutter systems. Site inspections also revealed that the lock on the main gate was removed, allowing unsecured access to the Site. In April 2010, DTSC conducted surface water sampling of accumulated stormwater inside the Site's source area. Analytical data showed dissolved arsenic at 720 µg/L and 1200 µg/L due to contact with the remaining contaminated soil. Hexavalent chromium concentrations in the storm water measured 14 µg/L and 21 µg/L, including 30 µg/L and 15 µg/L reported for total chromium.

DTSC finalized the Wickes Forest Industries 2010 RAW in July of 2010. On November 22, 2010, DTSC recorded a lien in the amount of $833,347.98 against Dobbas' undivided fifty percent interest in the Property, which reflected the amount of funds DTSC had spent to clean up and mitigate impacts from the Site since December 2006.

Reports about the Site are available on DTSC's website at http://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=48240001 and are otherwise publically available.

2.3   <u>Hazardous Substances Found at the Property</u>.  The Property has been used as a wood preparation, treatment, and storage area. Wood preserving solutions used at the Property contained copper, chromium, and arsenic. Property investigations conducted in 1982 showed that Site soil and ground water have been contaminated with chromium, copper, and arsenic. Samples of groundwater taken in June 1984, as listed in the June 1984 Monthly Monitoring and Progress Report/Wickes Forest Industries Elmira Site, had concentrations of 120 mg/L or parts per million (ppm) of hexavalent chromium and .22 mg/L (ppm) of arsenic. Groundwater samples taken by Kleinfelder Inc. between September 11 and 13, 2007 had a maximum on-Property concentration of 1700 µg/L (ppb) in monitoring well E-6 and a maximum off-Property concentration of 74 µg/L (ppb) in monitoring well E-18A for hexavalent chromium. Analytical groundwater data from February 10, 2010, reported maximum hexavalent chromium concentrations in groundwater of 1500 µg/L and 93 µg/L in both on-site and off-site groundwater, respectively. Maximum concentrations of arsenic in groundwater measured 650 µg/L on-site compared to 190 µg/L in off-site groundwater. Storm water runoff from the leaking gutter on the source area building has allowed rainwater to pond and collect in the two existing sumps. Surface water samples taken from the accumulated storm water in April 2010, identified dissolved arsenic at 720 µg/L and 1200 µg/L due to contact with the remaining contaminated soil. Hexavalent chromium concentrations in the storm water run-off measured 14 µg/L and 21 µg/L, including 30 µg/L and 15 µg/L reported for total chromium.

Near surface soil samples taken by LFR Levine and Fricke in 1991 to support the 1994 RAP showed elevated concentrations of arsenic and hexavalent chromium in the source area ranging from 52 to 70,000 mg/kg and 0.2 to 190 mg/kg (ppm), respectively. URS' 2008 soil investigation at the Site sampled the original locations from the 1991 remedial investigation, but focused efforts on deeper intervals to satisfy the data gaps. URS' 2008 fieldwork effort sampled soil at three depth intervals of 0.5, 2.5, and 5 feet below ground surface. The sampling effort was conducted to further characterize the vertical extent of contaminants remaining and augment the 1991 dataset with newer analytical data. The 2008 analytical soil data produced arsenic concentrations ranging from 4.7 mg/kg to 610 mg/kg, with hexavalent chromium levels spanning 0.05 mg/kg to 17 mg/kg. Fieldwork efforts show that contaminant concentrations are the highest in surface soil and attenuate with depth, indicating that surface releases likely contaminated the Site.

Soil cleanup goals identified in the 2010 RAW specify 13 mg/kg for arsenic (background), the target compound at the site. Due to the similar distribution patterns of arsenic and chromium in the soil, the cleanup will allow for the remediation of chromium concurrent with the removal of arsenic contaminated soil. The 2010 RAW presents a groundwater cleanup goal of 10 µg/L for both arsenic and hexavalent chromium, including 50 µg/L for total chromium. If new cleanup standards are promulgated by State or federal agencies, those new standards may be applicable at the Site.

2.4   Health Effects.

2.4.1  Arsenic. Acute ingestion of arsenic may lead to a burning sensation in the mouth, nausea and vomiting. Chronic exposure to arsenic is associated with a persistent metallic taste in the mouth, hyperkeratosis, anemia, and peripheral nerve disease, and may increase the risk of developing skin cancer, aplastic anemia and leukemia.

2.4.2  Chromium. Chronic inhalation of Chromium (VI) compounds has been associated with the development of lung disease, including cancer in humans.

2.4.3  Copper. Acute inhalation of copper fumes or dust can result in a reversible influenza-like syndrome. Chronic ingestion of high levels of copper has been reported to cause hemolysis, fibrosis, and cirrhosis of the liver, nervous system damage and kidney dysfunction.

2.5   Routes of Exposure. Potential routes of exposure at the Site for hazardous substances that may affect public health or the environment, factoring the protectiveness of the asphalt cap, include direct contact with contaminated soil, air routes for dust, contact with contaminated surface storm water in the source area, consumption of food irrigated with contaminated groundwater, migration of hazardous substances to groundwater, and migration of hazardous substances in soil and surface runoff from rain into surface water bodies. If the drinking water source is impacted, direct exposure could be through bathing or drinking the water or breathing vapors while

using the water. Ecological habitat receptors may be more sensitive to hazardous substances concentrations than are human receptors.

2.6 <u>Public Health and/or Environmental Risk</u>. The Property is limited to non-residential use by a Covenant recorded with Solano County on October 27, 1995 that will remain in effect until its termination is approved in writing by DTSC. Adjacent properties are used for commercial and residential purposes. Nearby residences use down-gradient irrigation water drawn from the contaminated aquifer to grow produce for personal consumption. Additional remedial actions are necessary at the Site to address the existing soil contamination. Remedial actions including contaminated soil removal, will eliminate human exposure pathways, protect the environment, restore the beneficial uses of the aquifer, and remediate the persistent source of groundwater contamination for both on-site and off-site aquifers. Without mitigating the persistent source of groundwater contamination, domestic irrigation wells and potential drinking water already impacted by contaminants, would likely reach concentrations that would exceed federal standards and present an acute risk to human health. Inspection and maintenance of the asphalt cap and storm water drainage systems are necessary to prevent direct contact with contaminated soil, eliminate exposure pathways due to contaminated surface storm water, help mitigate infiltration and flushing of contaminated soils with surface water, and to reduce hydraulic influences therefore aiding in the capture of the groundwater plume and helping to achieve the remedial action objectives established for the Site.

## III. CONCLUSIONS OF LAW

3.1 Respondents are responsible parties as defined by Health and Safety Code section 25323.5.

3.2 Each of the substances listed in Section 2.4 is a "hazardous substance" as defined in Health and Safety Code section 25316.

3.3 There has been a "release" and/or there is a "threatened release" of hazardous substances listed in Section 2.4 at the Site, as defined in Health and Safety Code section 25320.

3.4 The actual and threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment.

3.5 Response action is necessary to abate a public nuisance and/or to protect and preserve the public health.

## IV. DETERMINATION

4.1 DTSC issued an Imminent or Substantial Endangerment Determination for the Site on November 13, 2006, thereby determining that response actions are necessary at the Site due to the release of a hazardous substance.

7 of 17

**ER-636**

4.2     Based on the foregoing findings of fact and conclusions of law, DTSC hereby determines that there may be an imminent and/or substantial endangerment to the public health or welfare or to the environment because of the release and/or the threatened release of the hazardous substances at the Site due to the unauthorized cessation of the approved remedy.

## V.  ORDER

Based on the foregoing FINDINGS, CONCLUSIONS, AND DETERMINATION, IT IS HEREBY ORDERED THAT Respondents conduct the following response actions in the manner specified herein, and in accordance with a schedule specified by DTSC as follows:  All response actions taken pursuant to this Order shall be consistent with the requirements of Chapter 6.8 (commencing with section 25300), Division 20 of the Health and Safety Code and any other applicable state or federal statutes and regulations.

5.1     Groundwater Monitoring.  Respondents shall immediately restore groundwater monitoring in accordance with the approved O&M Plan for the Site dated October 16, 1995 and the Final Sampling and Analysis Plan for Groundwater Monitoring dated April 2009, prepared by URS Corporation.

5.2     Groundwater Remediation.  Respondents shall take all necessary steps to implement the 2010 RAW and meet its remedial action objectives, including any additional steps necessary to remediate groundwater and restore its beneficial uses.

5.3     Land Use Covenant.  The Respondents shall comply with the Covenant recorded with Solano County on October 27, 1995.

5.4     Operation and Maintenance (O&M).  Respondents shall conduct all operation and maintenance activities for the approved Site remedies including the asphalt cap and shall comply with the O&M Plan approved by DTSC for the Site dated October 16, 1995 as part of the 1993 and 1994 RAPs.  Within thirty (30) days of the effective date of this Order, Respondents shall submit to DTSC for approval an O&M Plan implementation schedule.  The schedule shall propose that Respondents initiate the following within sixty (60) days from the effective date of the Order: a) a routine inspection and necessary maintenance program for the Cap and storm water drainage system; and b) groundwater monitoring activities.  Respondents shall implement section Section G, subsection 6.0, of the O&M Plan specifying the work necessary and maintenance schedule for the asphalt cap fieldwork efforts.

5.5     Five-Year Review.  The remedial action shall be reviewed and reevaluated after a period of five (5) years from the completion of construction and startup, and every five (5) years thereafter.  The last comprehensive five year review for the Site was completed on July 27, 2001; a five year review for the asphalt cap only was completed on March 1, 2005.  The 2001 five year review determined that the current ground water pump and treat system would likely be unsuccessful in meeting the

remedial action objectives and proposed an alternative technology. The 2010 RAW specifies demolition of the GWETS due the unsuccessful system performance, required access to remaining soil contamination, and the necessity to remove impacted soil acting as continuing source to groundwater contamination.

As a result of any review performed under this Section, Respondents may be required to perform additional Work or to modify Work previously performed.

5.6     Stop Work Order. In the event that DTSC determines that any activity (whether or not pursued in compliance with this Order) may pose an imminent or substantial endangerment to the health or safety of people on the Site or in the surrounding area or to the environment, DTSC may order Respondents to stop further implementation of this Order for such period of time needed to abate the endangerment. In the event that DTSC determines that any Site activities (whether or not pursued in compliance with this Order) are proceeding without DTSC authorization, DTSC may order Respondents to stop further implementation of this Order or activity for such period of time needed to obtain DTSC authorization, if such authorization is appropriate. Any deadline in this Order directly affected by a Stop Work Order, under this Section, shall be extended for the term of the Stop Work Order.

5.7     Emergency Response Action/Notification. In the event of any action or occurrence (such as a fire, earthquake, explosion, or human exposure to hazardous substances caused by the release or threatened release of a hazardous substance) during the course of this Order, Respondents shall immediately take all appropriate action to prevent, abate, or minimize such emergency, release, or immediate threat of release and shall immediately notify the Project Manager. Respondents shall take such action in consultation with the Project Manager and in accordance with all applicable provisions of this Order. Within seven (7) days of the onset of such an event, Respondents shall furnish a report to DTSC, signed by Respondents' Project Coordinator, setting forth the events which occurred and the measures taken in the response thereto. In the event that Respondents fail to take appropriate response and DTSC takes the action instead, Respondents shall be liable to DTSC for all costs of the response action. Nothing in this Section shall be deemed to limit any other notification requirement to which Respondents may be subject.

5.8     Discontinuation of Remedial Technology. Any remedial technology employed in implementation of any DTSC approved RAP or RAW shall be left in place and operated by Respondents until and except to the extent that DTSC authorizes Respondents in writing to discontinue, move or modify some or all of the remedial technology because Respondents have met the criteria specified in the approved RAP or RAW for its discontinuance, or because the modifications would better achieve the goals of the approved RAP or RAW.

5.9     Financial Assurance. Respondents shall demonstrate to DTSC and maintain financial assurance for operation and maintenance and monitoring. Respondents shall demonstrate financial assurance within sixty (60) days of the

effective date of the Order and shall maintain it throughout the period of time necessary to complete all required operation and maintenance activities. The financial assurance mechanisms shall meet the requirements of Health and Safety Code section 25355.2. All financial assurance mechanisms are subject to the review and approval of DTSC.

## VI.  GENERAL PROVISIONS

6.1    Project Coordinator.  Within fourteen (14) days from the date the Order is signed by DTSC, Respondents shall submit to DTSC in writing the name, address, and telephone number of a Project Coordinator whose responsibilities will be to receive all notices, comments, approvals, and other communications from DTSC.  Respondents shall promptly notify DTSC of any change in the identity of the Project Coordinator. Respondents shall obtain approval from DTSC thirty (30) days before the new Project Coordinator performs any work under this Order.

6.2    Project Engineer/Geologist.  The work performed pursuant to this Order shall be under the direction and supervision of a qualified professional engineer or a registered geologist in the State of California, with expertise in hazardous substance site cleanups.  Within fourteen (14) calendar days from the date this Order is signed by DTSC, Respondents shall submit:  a) The name and address of the project engineer or geologist chosen by Respondent; and b) in order to demonstrate expertise in hazardous substance cleanup, the resumé of the engineer or geologist, and the statement of qualifications of the consulting firm responsible for the work.  Respondents shall promptly notify DTSC of any change in the identity of the Project Engineer/Geologist. Respondents shall obtain approval from DTSC before the new Project Engineer/Geologist performs any work under this Order.

6.3    Monthly Summary Reports.  Within sixty (60) days from the date this Order is signed by DTSC, and on a monthly basis thereafter, Respondents shall submit a Monthly Summary Report of its activities under the provisions of this Order.  The report shall be received by DTSC by the fifteenth (15th) day of each month and shall describe:

(a)  Specific actions taken by or on behalf of Respondents during the previous calendar month;
(b)  Actions expected to be undertaken during the current calendar month;
(c)  All planned activities for the next month;
(d)  Any requirements under this Order that were not completed;
(e)  Any problems or anticipated problems in complying with this Order; and
(f)  All results of sample analyses, tests, and other data generated under this Order during the previous calendar month, and any significant findings from these data.

6.4 Quality Assurance/Quality Control (QA/QC). All sampling and analysis conducted by Respondents under this Order shall be performed in accordance with QA/QC procedures submitted by Respondent and approved by DTSC pursuant to this Order.

6.5 Submittals. All submittals and notifications from Respondents required by this Order shall be sent simultaneously to:

> Charles Ridenour, P.E.
> Performance Manager
> Cleanup Program – Sacramento Office
> Attention: Peter MacNicholl, P.E.
> Project Manager (two copies)
> Department of Toxic Substances Control
> 8800 Cal Center Drive
> Sacramento, California 95826

6.6 Communications. All approvals and decisions of DTSC made regarding submittals and notifications will be communicated to Respondents in writing by the Cleanup Program Performance Manager, or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by Respondents shall be construed to relieve Respondents of the obligation to obtain such formal approvals as may be required.

6.7 DTSC Review and Approval.

(a) All response actions taken pursuant to this Order shall be subject to the approval of DTSC. Respondents shall submit all deliverables required by this Order to DTSC. Once the deliverables are approved by DTSC, they shall be deemed incorporated into, and where applicable, enforceable under this Order.

(b) If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Order fails to comply with this Order or fails to protect public health or safety or the environment, DTSC may:

(1) Modify the document as deemed necessary and approve the document as modified; or

(2) Return comments to Respondents with recommended changes and a date by which Respondents must submit to DTSC a revised document incorporating the recommended changes.

(c) Any modifications, comments or other directives issued pursuant to (a) above, are incorporated into this Order. Any noncompliance with these modifications or directives shall be deemed a failure or refusal to comply with this Order.

6.8     Compliance with Applicable Laws.  Nothing in this Order shall relieve Respondents from complying with all other applicable laws and regulations, including but not limited to compliance with all applicable waste discharge requirements issued by the State Water Resources Control Board or a California Regional Water Quality Control Board.  Respondents shall conform all actions required by this Order with all applicable federal, state and local laws and regulations.

6.9     Respondent Liabilities.  Nothing in this Order shall constitute or be construed as a satisfaction or release from liability for any conditions or claims arising as a result of past, current or future operations of Respondents.  Nothing in this Order is intended or shall be construed to limit the rights of any of the parties with respect to claims arising out of or relating to the deposit or disposal at any other location of substances removed from the Site.  Nothing in this Order is intended or shall be construed to limit or preclude DTSC from taking any action authorized by law to protect public health or safety or the environment and recovering the cost thereof.  Notwithstanding compliance with the terms of this Order, Respondents may be required to take further actions as are necessary to protect public health and the environment.

6.10    Site Access.  Access to the Site and laboratories used for analyses of samples under this Order shall be provided at all reasonable times to employees, contractors, and consultants of DTSC.  Nothing in this Section is intended or shall be construed to limit in any way the right of entry or inspection that DTSC or any other agency may otherwise have by operation of any law.  DTSC and its authorized representatives shall have the authority to enter and move freely about all property at the Site at all reasonable times for purposes including, but not limited to: inspecting records, operating logs, sampling and analytic data, and contracts relating to this Site; reviewing the progress of Respondents in carrying out the terms of this Order; conducting such tests as DTSC may deem necessary; and verifying the data submitted to DTSC by Respondents.

To the extent the Site or any other property to which access is required for the implementation of this Order is owned or controlled by persons other than Respondents, Respondents shall use best efforts to secure from such persons access for Respondents, as well as DTSC, its representatives, and contractors, as necessary to effectuate this Order.  To the extent that any portion of the Site is controlled by tenants of Respondents, Respondents shall use best efforts to secure from such tenants, access for Respondents, as well as for DTSC, its representatives, and contractors, as necessary to effectuate this Order.  For purposes of this Section, "best efforts" includes the payment of reasonable sums of money in consideration of access.  If any access required to complete the Work is not obtained within sixty (60) days of the effective date of this Order, or within forty-five (45) days of the date DTSC notifies Respondents in writing that additional access beyond that previously secured is necessary, Respondents shall promptly notify DTSC, and shall include in that notification a summary of the steps Respondents have taken to attempt to obtain access.  DTSC may, as it deems appropriate, assist Respondents in obtaining access.  Respondents shall reimburse DTSC in obtaining access, including, but not limited to, attorneys fees and the amount of just compensation.

12 of 17

Respondents shall grant access to any persons who need access for the purpose of conducting activities pursuant to this Order or for activities deemed necessary by DTSC to meet the objectives of this Order and/or the O&M Plan.

6.11    Sampling, Data and Document Availability. Respondents shall permit DTSC and its authorized representatives to inspect and shall provide copies of all sampling, testing, monitoring or other data including technical records and contractual documents generated by Respondents, or on Respondents' behalf in any way whether or not such information or data was developed pursuant to this Order. Respondents shall submit all such data upon the request of DTSC. Copies shall be provided within (7) days of receipt of DTSC's written request. For Final reports, Respondents shall submit one hard (paper) copy and one electronic copy with all applicable signatures and certification stamps as a text-readable Portable Document Formatted (pdf) file Adobe Acrobat or Microsoft Word formatted file. Respondents shall inform DTSC at least (7) days in advance of all field sampling under this Order, and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Respondents pursuant to this Order. Respondents shall maintain a central depository of the data, reports, and other documents prepared pursuant to this Order.

6.12    Record Retention. All such data, reports and other documents shall be preserved by Respondents for a minimum of ten years after the conclusion of all activities under this Order. If DTSC requests that some or all of these documents be preserved for a longer period of time, Respondents shall either comply with that request or deliver the documents to DTSC, or permit DTSC to copy the documents prior to destruction. Respondents shall notify DTSC in writing at least six months prior to destroying any documents prepared pursuant to this Order.

6.13    Government Liabilities. The State of California shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by Respondents, or related parties specified in Section 6.25, Parties Bound, in carrying out activities pursuant to this Order, nor shall the State of California be held as party to any contract entered into by Respondents or its agents in carrying out activities pursuant to this Order.

6.14    Additional Actions. By issuance of this Order, DTSC does not waive the right to take any further actions authorized by law.

6.15    Extension Requests. If Respondents are unable to perform any activity or submit any document within the time required under this Order, Respondents may, prior to expiration of the time, request an extension of the time in writing. The extension request shall include a justification for the delay. All such requests shall be in advance of the date on which the activity or document is due.

6.16    Extension Approvals. If DTSC determines that good cause exists for an extension, it will grant the request and specify a new schedule in writing. Respondents shall comply with the new schedule incorporated in this Order.

shall comply with the new schedule incorporated in this Order.

6.17  Liability for Costs.  Respondents are liable for all of DTSC's costs that have been incurred in taking response actions at the Site (including costs of overseeing response actions performed by Respondents and costs to be incurred in the future.

6.18  Payment of Costs.  DTSC may bill Respondents for costs incurred in taking response actions at the Site prior to the effective date of this Order.  DTSC will bill Respondents quarterly for its response costs incurred after the effective date of this Order.  Respondents shall pay DTSC within sixty (60) days of receipt of any DTSC billing.  Any billing not paid within sixty (60) days is subject to interest calculated from the date of the billing pursuant to Health and Safety Code section 25360.1.  All payments made by Respondents pursuant to this Order shall be by cashier's or certified check made payable to this "DTSC," and shall bear on the face the project code of the Site (Site # 100164) and the Docket number of this Order.  Payments shall be sent to:

> Department of Toxic Substances Control
> Accounting/Cashier
> 1001 I Street, 21st Floor
> P.O. Box 806
> Sacramento, California 95812-0806

A photocopy of all payment checks shall also be sent to the person designated by DTSC to receive submittals under this Order.

6.19  Severability.  The requirements of this Order are severable, and Respondents shall comply with each and every provision hereof, notwithstanding the effectiveness of any other provision.

6.20  Incorporation of Plans, Schedules and Reports.  All plans, schedules, reports, specifications and other documents that are submitted by Respondents pursuant to this Order are incorporated in this Order upon DTSC's approval or as modified pursuant to Section 6.7, DTSC Review and Approval, and shall be implemented by Respondents.  Any noncompliance with the documents incorporated in this Order shall be deemed a failure or refusal to comply with this Order.

6.21  Modifications.  DTSC reserves the right to unilaterally modify this Order. Any modification to this Order shall be effective upon the date the modification is signed by DTSC and shall be deemed incorporated in this Order.

6.22  Time Periods.  Unless otherwise specified, time periods begin from the effective date of this Order and "days" means calendar days.

6.23  Termination and Satisfaction.  Except for Respondents' obligations under Sections 5.4 Operation and Maintenance (O&M), 5.5 Five-Year Review, 5.9 Financial Assurance, 6.12 Record Retention, 6.17 Liability for Costs, and 6.18 Payment of Costs, Respondents' obligations under this Order shall terminate and be deemed satisfied upon Respondents' receipt of written notice from DTSC that Respondents have

6.24  Calendar of Tasks and Schedules.  This Section is merely for the convenience of listing in one location the submittals required by this Order.  If there is a conflict between the date for a scheduled submittal within this Section and the date within the Section describing the specific requirement, the latter shall govern.

Calendar of Tasks and Schedules

| TASK | SCHEDULE |
|---|---|
| 1.  Identify Project Coordinator; Section 6.1; | Within fourteen (14) days from the effective date of this Order. |
| 2.  Identify Project Engineer/Geologist; Section 6.2; | Within fourteen (14) days from the effective date of this Order. |
| 3.  Submit Monthly Summary Reports; Section 6.3; | Within sixty (60) days from the effective date of this Order. |
| 4.  Submit groundwater level measurements Section 5.1; | First Monday of specified month. |
| 5.  Groundwater sampling results; Section 5.1; | Quarterly basis. |
| 6.  Submit O&M Workplan Schedule; Section 5.4; | Within thirty (30) days of DTSC's request. |
| 7.  Submit and initiate O&M Workplan; Section 5.4; | Within sixty (60) days from the effective date of this order. |
| 8.  Submit Emergency Response Action Report; Section 5.7; | Within seven (7) days of a emergency response action. |
| 9.  Provide copies of sampling, data, and documentation; Section 6.11; | Within seven (7) days of receipt of DTSC's request. |
| 10.  Maintain central depository of data, reports, documentation; Section 6.12; and | Maintain central depository for a minimum of ten years after conclusion of all activities conducted pursuant to this Order. |
| 11.  Provide prior written notice to DTSC before destroying any documentation prepared pursuant to this Order; Section 6.12. | At least six months prior to destroying any documents. |

15 of 17

6.25   Parties Bound.  This Order applies to and is binding upon Respondents, and their officers, directors, agents, employees, contractors, consultants, receivers, trustees, successors and assignees, including but not limited to, individuals, partners, and subsidiary and parent corporations.  Respondents shall provide a copy of this Order to all contractors, subcontractors, laboratories, and consultants that are retained to conduct any work performed under this Order, within fifteen (15) days after the effective date of this Order or the date of retaining their services, whichever is later. Respondents shall condition any such contracts upon satisfactory compliance with this Order.  Notwithstanding the terms of any contract, Respondents are responsible for compliance with this Order and for ensuring that its subsidiaries, employees, contractors, consultants, subcontractors, agents and attorneys comply with this Order.

6.26   Change in Ownership.  No change in ownership or corporate or partnership status relating to the Property shall in any way alter Respondents' responsibility under this Order.  No conveyance of title, easement, or other interest in the Site, or a portion of the Property, shall affect Respondents' obligations under this Order.  Unless DTSC agrees that such obligations may be transferred to a third party, Respondents shall be responsible for and liable for any failure to carry out all activities required of Respondents by the terms and conditions of this Order, regardless of Respondents' use of employees, agents, contractors, or consultants to perform any such tasks.  Respondents shall provide a copy of this Order to any subsequent owners or successors before ownership rights or stock or assets in a corporate acquisition are transferred.

## VII.  NOTICE OF INTENT TO COMPLY

7.0   Not later than seven (7) days after the effective date of this Order, Respondents shall provide written notice, in accordance with paragraph 6.5 Submittals of this Order, stating whether or not Respondents will comply with the terms of this Order.  If Respondents do not unequivocally commit to perform all of the requirements of this Order, they, or each so refusing, shall be deemed to have violated this Order and to have failed or refused to comply with this Order.  Respondents' written notice shall describe, using facts that exist on or prior to the effective date of this Order, any "sufficient cause" defenses asserted by Respondents under Health and Safety Code sections 25358.3(a) and 25355.5(a)(1)(B) or CERCLA section 107(c)(3), 42 U.S.C. section 9607(c)(3).

## VIII.  EFFECTIVE DATE

8.0   This Order is final and effective five days from the date of mailing, which is the date of the cover letter transmitting the Order to you.

## IX.  PENALTIES FOR NONCOMPLIANCE

9.0   Each Respondent may be liable for penalties of up to $25,000 for each day out of compliance with any term or condition set forth in this Order and for punitive

16 of 17

ER-645

damages up to three times the amount of any costs incurred by DTSC as a result of
Respondent's(s') failure to comply, pursuant to Health and Safety Code sections 25359,
25359.2, 25359.4, and 25367(c).  Health and Safety Code section 25359.4.5 provides
that a responsible party who complies with this Order, or with another order or
agreement concerning the same response actions required by this Order, may seek
treble damages from responsible parties who fail or refuse to comply with this Order
without sufficient cause.


DATE OF ISSUANCE: 3/16/11

Charles Ridenour, P.E.
Performance Manager
Cleanup Program – Sacramento Office
Department of Toxic Substances Control

EXHIBIT "A"

The land referred to herein is in the State of California, County of Solano, unincorporated area, and is described as follows:

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian, running thence north along the Quarter Section line to the southeasterly boundary of the right of way of the Southern Pacific Railroad; thence southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running east and west through said Section Nineteen (19); thence east and along said Quarter Section line to the place of beginning.

EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10, 1916, and recorded May 23, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows:  Beginning at the point of intersection of the southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian, thence southwesterly along said southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle southeasterly 15 feet to a point, thence at a right angle northeasterly parallel to said right of way line 265 feet to a point, thence at a right angle southeasterly 15 feet to a point, thence at right angle northeasterly parallel to said right of way line 200 feet to a point, thence at a right angle northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19, thence north along said east line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly, thence running westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company, thence northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also know as Binghampton Street, thence easterly and along the southerly line of County Road Number 246, to the intersection of the westerly line of a Street, extended northerly, thence southerly and along the westerly line of a Street, extended northerly to the northerly line of Edwards Street and the place of beginning.  All as said streets herein referred to are laid down and designated on that certain Map entitled:  "Plan of

1 of 2

Resurvey of Portion of Vaca Station, Property of W.C. Farmer, situated on South West One Quarter (S.W. ¼) of Section Nineteen (19) Township VI North Range 1 East Solano County," surveyed by E.H. Marshall, Deputy County Surveyor, April 8, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended northerly, and the northerly line of County Road Number 246 (Holdener Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears north 0°22' 08" west, 30 feet and south 89°55' 06" west, 397.80 feet from the southeast corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B & M., thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street south 89°55' 06" west, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad and thence along said easterly right-of-way line south 34° 52' 51" west, 73.21 feet to the southerly line of said Binghampton Street, thence, along said southerly line, north 89°55' 06" east, 171.67 feet to the westerly line of the aforementioned "A" Street, thence along the prolongation of said westerly line of "A" Street, north 34°52" 51" east, 73.21 feet to the point of beginning.

A.P.N. 142-010-130, 142-010-140 and 142-042-010

1 | JENNIFER HARTMAN KING (Bar No. 211313)
NICOLE R. GLEASON (Bar No. 199655)
2 | SHELBY M. GATLIN (Bar No. 272701)
KING WILLIAMS & GLEASON LLP
3 | 520 Capitol Mall, Suite 750
Sacramento, CA  95814
4 | Telephone:      (916) 379-7530
Facsimile:       (916) 379-7535
5 | jhartmanking@kwgattorneys.com
ngleason@kwgattorneys.com
6 | sgatlin@kwgattorneys.com

7 | Attorneys for Defendant Jim Dobbas, Inc.

8

9

10 | IN THE UNITED STATES DISTRICT COURT

11 | FOR THE EASTERN DISTRICT OF CALIFORNIA

12 | SACRAMENTO DIVISION

13 | CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL and the TOXIC
14 | SUBSTANCES CONTROL ACCOUNT,

15 |     Plaintiffs,

16 |     v.

17 | JIM DOBBAS, INC., a California
corporation; CONTINENTAL RAIL, INC., a
18 | Delaware corporation; DAVID VAN OVER,
individually; PACIFIC WOOD
19 | PRESERVING, a dissolved California
corporation; and WEST COAST WOOD
20 | PRESERVING, LLC,  a Nevada limited
liability company,
21

22 |     Defendants,

23 | AND RELATED CROSSCLAIMS AND
COUNTERCLAIMS.
24

Case No.:  2:14-cv-00595-WBS-EFB

**ANSWER OF JIM DOBBAS, INC. TO
COMPLAINT BY CALIFORNIA
DEPARTMENT OF TOXIC
SUBSTANCES CONTROL and the
TOXIC SUBSTANCES CONTROL
ACCOUNT & DEMAND FOR JURY
TRIAL**

**DEMAND FOR JURY TRIAL**

Action filed:  March 3, 2014

*(vertical text, left margin)* KING WILLIAMS & GLEASON LLP
520 CAPITOL MALL, SUITE 750
SACRAMENTO, CA 95814
TELEPHONE: (916) 379-7530 FAX: (916)379-7535

00010784.2

1    Defendant Jim Dobbas, Inc. ("DOBBAS"), by and through its attorneys of record, hereby

2    answer Plaintiffs California Department of Toxic Substances Control and the Toxic Substances

3    Control Account ("PLAINTIFFS') Complaint for Recovery of Response Costs; Declaratory

4    Relief; Injunctive Relief; Treble Damages; And Civil Penalties, filed on March 3, 2014,

5    ("Complaint") as follows:

6                                    **GENERAL DENIAL**

7        Except as expressly admitted herein, DOBBAS denies each and every allegation in

8    PLAINTIFFS' Complaint. DOBBAS hereby demands trial by jury in this action.

9                               **I.    JURISDICTION**

10       1.    Paragraph 1 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

11   which no response is required.  To the extent a response is required, DOBBAS denies that this

12   Court has jurisdiction over the claims pursuant to 28 U.S.C. sections 1331 and 1367, and section

13   113(b) of the Comprehensive Environmental Response, Compensation and Liability Act

14   ("CERCLA") 42 U.S.C. section 9613(b).

15                                  **II.    VENUE**

16       2.    Paragraph 2 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

17   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

18   knowledge or information to form a belief regarding the allegations contained therein and on that

19   basis denies, generally and specifically, each and every allegation.

20                        **III.    INTRA-DISTRICT ASSIGNMENT**

21       3.    Paragraph 3 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

22   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

23   knowledge or information to form a belief regarding the allegations contained within Paragraph 3

24   of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

25   allegation.

26                        **IV.    STATEMENT OF THE ACTION**

27       4.    In answer to Paragraph 4 of PLAINTIFFS' Complaint, DOBBAS admits that the

28   real property at issue has a street address of 147 A Street, Elmira, California 95625 ("Site").

00010784.2                                    1

1   Except as expressly admitted herein, DOBBAS lacks sufficient knowledge or information to form

2   a belief regarding the allegations contained in paragraph 4 of PLAINTIFFS' Complaint and on

3   that basis denies, generally and specifically, each and every such allegation.

4        5.    Paragraph 5 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

5   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

6   knowledge or information to form a belief regarding the allegations contained within Paragraph 5

7   of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

8   allegation.

9        6.    Paragraph 6 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

10  which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

11  knowledge or information to form a belief regarding the allegations contained within Paragraph 6

12  of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

13  allegation.

14                **V.**     **PLAINTIFFS**

15       7.    Paragraph 7 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

16  which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

17  knowledge or information to form a belief regarding the allegations contained within Paragraph 7

18  of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

19  allegation.

20       8.    Paragraph 8 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

21  which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

22  knowledge or information to form a belief regarding the allegations contained within Paragraph 8

23  of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

24  allegation.

25                **VI.**     **DEFENDANTS**

26       9.    In answer to Paragraph 9 of PLAINTIFFS' Complaint, DOBBAS admits that Jim

27  Dobbas, Inc. is a California corporation, with its principal place of business in Placer County,

28  California.  DOBBAS further admits that it owned an interest in the Site from in or about March

00010784.2

-2-

1   1997, to in or about 2011. Except as expressly admitted herein, Dobbas lacks sufficient

2   knowledge or information to form a belief regarding the allegations contained within Paragraph 9

3   of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

4   allegation.

5         10.    In answer to Paragraph 10 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

6   knowledge or information to form a belief regarding the allegations contained within Paragraph

7   10 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

8   every allegation.

9         11.    In answer to Paragraph 11 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

10   knowledge or information to form a belief regarding the allegations contained within Paragraph

11   11 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

12   every allegation.

13         12.    In answer to Paragraph 12 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

14   knowledge or information to form a belief regarding the allegations contained within Paragraph

15   12 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

16   every allegation.

17         13.    In answer to Paragraph 13 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

18   knowledge or information to form a belief regarding the allegations contained within Paragraph

19   13 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

20   every allegation.

21   **VII.    GENERAL ALLEGATIONS**

22         14.    In answer to Paragraph 14 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

23   knowledge or information to form a belief regarding the allegations contained within Paragraph

24   14 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

25   every allegation.

26         15.    In answer to Paragraph 15 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

27   knowledge or information to form a belief regarding the allegations contained within Paragraph

28   / / /

00010784.2

-3-

1    15 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

2    every allegation.

3          16.    In answer to Paragraph 16 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

4    knowledge or information to form a belief regarding the allegations contained within Paragraph

5    16 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

6    every allegation.

7          17.    In answer to Paragraph 17 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

8    knowledge or information to form a belief regarding the allegations contained within Paragraph

9    17 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

10   every allegation.

11         18.    In answer to Paragraph 18 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

12   knowledge or information to form a belief regarding the allegations contained within Paragraph

13   18 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

14   every allegation.

15         19.    In answer to Paragraph 19 of PLAINTIFFS' Complaint, DOBBAS admits that in

16   or about 1997, Collins & Aikman Products LLC ("C&A Products") sold an interest in the Site to

17   Defendant DOBBAS.  Except as expressly admitted herein, DOBBAS lacks sufficient knowledge

18   or information to form a belief regarding the allegations contained within Paragraph 19 of

19   PLAINTIFFS' Complaint and on that basis denies each and every allegation.

20         20.    In answer to Paragraph 20 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

21   knowledge or information to form a belief regarding the allegations contained within Paragraph

22   20 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

23   every allegation.

24         21.    In answer to Paragraph 21 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

25   knowledge or information to form a belief regarding the allegations contained within Paragraph

26   21 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

27   every allegation.

28   / / /

00010784.2                                           -4-

1   22. In answer to Paragraph 22 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

2 knowledge or information to form a belief regarding the allegations contained within Paragraph

3 22 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

4 every allegation.

5   23. In answer to Paragraph 23 of PLAINTIFFS' Complaint, DOBBAS denies the

6 allegation that in December 2007, Defendant DOBBAS agreed to perform certain actions at the

7 Site. DOBBAS lacks sufficient knowledge or information to form a belief regarding the

8 remaining allegations contained within Paragraph 23 of PLAINTIFFS' Complaint and on that

9 basis denies, generally and specifically, each and every allegation.

10   24. In answer to Paragraph 24 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

11 knowledge or information to form a belief regarding the allegations contained within Paragraph

12 24 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

13 every allegation.

14   25. In answer to Paragraph 25 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

15 knowledge or information to form a belief regarding the allegations contained within Paragraph

16 25 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

17 every allegation.

18   26. In answer to Paragraph 26 of PLAINTIFFS' Complaint, DOBBAS admits that on

19 or about February 11, 2011, DOBBAS and Continental Rail, Inc. ("CRI") sold the Site to David

20 Van Over ("Van Over") for $2.00.

21   27. In answer to Paragraph 27 of PLAINTIFFS' Complaint, DOBBAS admits the

22 allegation that on or about March 16, 2011, the Department of Toxic Substances Control

23 ("DTSC") issued an Imminent or Substantial Endangerment Determination and Remedial Action

24 Order to Defendants DOBBAS, CRI, and Van Over. DOBBAS lacks sufficient knowledge or

25 information to form a belief regarding the remaining allegations contained within Paragraph 27 of

26 PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and every

27 allegation.

28 / / /

00010784.2

-5-

1      28.     In answer to Paragraph 28 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

2  knowledge or information to form a belief regarding the allegations contained within Paragraph

3  28 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

4  every allegation.

5      29.     In answer to Paragraph 29 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

6  knowledge or information to form a belief regarding the allegations contained within Paragraph

7  29 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

8  every allegation.

9      30.     In answer to Paragraph 30 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

10  knowledge or information to form a belief regarding the allegations contained within Paragraph

11  30 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

12  every allegation.

13      31.     In answer to Paragraph 31 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

14  knowledge or information to form a belief regarding the allegations contained within Paragraph

15  31 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

16  every allegation.

17      32.     In answer to Paragraph 32 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

18  knowledge or information to form a belief regarding the allegations contained within Paragraph

19  32 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

20  every allegation.

### VIII.   FIRST CLAIM FOR RELIEF

**(Claim for Recovery of Response Costs Pursuant to
Section 107(a) of CERCLA, 42 U.S.C. § 9607(a))**

24      33.     In answer to Paragraph 33 of PLAINTIFFS' Complaint, DOBBAS realleges and

25  incorporates by reference its answers to paragraphs 1 through 32, inclusive.

26      34.     Paragraph 34 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

27  which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

28  knowledge or information to form a belief regarding the allegations contained within Paragraph

00010784.2      -6-

1    34 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

2    every allegation.

3         35.    Paragraph 35 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

4    which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

5    knowledge or information to form a belief regarding the allegations contained within Paragraph

6    35 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

7    every allegation.

8         36.    Paragraph 36 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

9    which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

10   knowledge or information to form a belief regarding the allegations contained within Paragraph

11   36 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

12   every allegation.

13        37.    Paragraph 37 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

14   which no response is required.  To the extent a response is required, DOBBAS denies each and

15   every allegation contained in Paragraph 37 that characterizes section 107(a) of CERCLA, 42

16   U.S.C. section 9607(a), on the grounds that the statute speaks for itself.  DOBBAS denies that it

17   is an "owner" and/or "operator" of the Site, or was an "owner" and/or "operator" of the Site "at

18   the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of

19   CERCLA, 42 U.S.C. section 9607(a).  DOBBAS denies each and every allegation contained in

20   Paragraph 37.

21        38.    Paragraph 38 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

22   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

23   knowledge or information to form a belief regarding the allegations contained within Paragraph

24   38 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

25   every allegation.

26        39.    Paragraph 39 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

27   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

28   knowledge or information to form a belief regarding the allegations contained within Paragraph

1   39 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

2   every allegation.

3                          **IX.    SECOND CLAIM FOR RELIEF**

4   **(Declaratory Relief Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2))**

5           40.     In answer to Paragraph 40 of PLAINTIFFS' Complaint, DOBBAS realleges and

6   incorporates by reference its answers to paragraphs 1 through 39, inclusive.

7           41.     Paragraph 41 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

8   which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

9   knowledge or information to form a belief regarding the allegations contained within Paragraph

10  41 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

11  every allegation.

12                         **X.     THIRD CLAIM FOR RELIEF**

13  **(Failure and Refusal to Comply with Imminent or Substantial Determination
    Order and Remedial Action Order – California Health and Safety Code**
14  **Sections 325355.5, 25358.3, 25359, 25359.2, 25367)**

15          42.     In answer to Paragraph 42 of PLAINTIFFS' Complaint, DOBBAS realleges and

16  incorporates by reference its answers to paragraphs 1 through 41, inclusive.

17          43.     Paragraph 43 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

18  which no response is required.  To the extent a response is required, DOBBAS lacks sufficient

19  knowledge or information to form a belief regarding the allegations contained within Paragraph

20  43 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

21  every allegation.

22          44.     Paragraph 44 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

23  which no response is required.  To the extent a response is required, DOBBAS denies each and

24  every allegation contained in Paragraph 44 that characterizes California Health and Safety Code

25  section 25358.3(f) on the grounds that the statute speaks for itself.  DOBBAS denies each and

26  every allegation contained in Paragraph 44.

27          45.     Paragraph 45 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

28  which no response is required.  To the extent a response is required, DOBBAS denies each and

1    every allegation contained in Paragraph 45 that characterizes California Health and Safety Code

2    section 25359(a) on the grounds that the statute speaks for itself.  DOBBAS denies each and

3    every allegation contained in Paragraph 45.

4         46.    Paragraph 46 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

5    which no response is required.  To the extent a response is required, DOBBAS denies each and

6    every allegation contained in Paragraph 46 that characterizes California Health and Safety Code

7    section 25359.2 on the grounds that the statute speaks for itself.  DOBBAS denies each and every

8    allegation contained in Paragraph 46.

9         47.    Paragraph 47 of PLAINTIFFS' Complaint consists entirely of legal conclusions, to

10   which no response is required.  To the extent a response is required, DOBBAS denies each and

11   every allegation contained in Paragraph 46 that characterizes California Health and Safety Code

12   section 25367(c) on the grounds that the statute speaks for itself.  DOBBAS denies each and

13   every allegation contained in Paragraph 47.

14        48.    In answer to Paragraph 48 of PLAINTIFFS' Complaint, DOBBAS denies that it

15   failed and refused, without sufficient cause, to comply with the Imminent or Substantial

16   Endangerment Determination Order and Remedial Action Order.  In addition to the allegation

17   expressly denied herein, DOBBAS lacks sufficient knowledge or information to form a belief

18   regarding the allegations contained within Paragraph 48 of PLAINTIFFS' Complaint and on that

19   basis denies, generally and specifically, each and every allegation.

20        49.    In answer to Paragraph 49 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

21   knowledge or information to form a belief regarding the allegations contained within Paragraph

22   49 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

23   every allegation.

24        50.    In answer to Paragraph 50 of PLAINTIFFS' Complaint, DOBBAS lacks sufficient

25   knowledge or information to form a belief regarding the allegations contained within Paragraph

26   50 of PLAINTIFFS' Complaint and on that basis denies, generally and specifically, each and

27   every allegation.

28   / / /

00010784.2                                    -9-

## XI.   AFFIRMATIVE DEFENSES

DOBBAS alleges the following affirmative defenses to PLAINTIFFS' Complaint:

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.      The Complaint fails to state any claim against DOBBAS upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Not a Responsible Party)

2.      DOBBAS is not a "covered person," "responsible party," "potentially responsible party," or "liable person" within the meaning of CERCLA section 107(a), 42 U.S.C. section 9607(a) or California Health and Safety Code section 25323.5(a).

### THIRD AFFIRMATIVE DEFENSE

### (PLAINTIFFS are Responsible Parties)

3.      PLAINTIFFS are "covered persons," "responsible parties," "potentially responsible parties," and "liable persons" within the meaning of CERCLA section 107(a), 42 U.S.C. section 9607(a) or California Health and Safety Code section 25323.5(a).   As such, PLAINTIFFS' claims against DOBBAS are barred or should be reduced in proportion to PLAINTIFFS' own liability.

### FOURTH AFFIRMATIVE DEFENSE

### (Act of God)

4.      Any release or threatened release of a hazardous substance, any damages allegedly resulting therefrom, and any response costs or expenditures allegedly incurred as a result thereof, were caused in whole or in part by an act or acts of God.

### FIFTH AFFIRMATIVE DEFENSE

### (Acts of Omissions of Others)

5.      Any release or threatened release of a hazardous substance, any damages allegedly resulting therefrom, and any response costs or expenditures allegedly incurred as a result thereof, were caused in whole or in part by acts or omissions of other defendants in this action or of third

1   parties, other than an employee or agent of, or one whose act or omission occurred in connection

2   with a contractual relationship with, DOBBAS.  DOBBAS exercised due care with respect to any

3   hazardous substance, taking into consideration the characteristics of such hazardous substance, in

4   light of all relevant facts and circumstances, and took precautions against foreseeable acts or

5   omissions of such third parties and the consequences that could foreseeably result from such acts

6   or omissions.

7   **SIXTH AFFIRMATIVE DEFENSE**

8   **(Acts or Omissions of PLAINTIFFS)**

9       6.      Any release or threatened release of a hazardous substance, any damages allegedly

10  resulting therefrom, and any response costs or expenditures allegedly incurred as a result thereof,

11  were caused in whole or in part by acts and/or omissions by PLAINTIFFS.

12  **SEVENTH AFFIRMATIVE DEFENSE**

13  **(Unrecoverable Costs)**

14      7.      Some or all of the costs alleged in the Complaint do not constitute response costs

15  within the meaning of CERCLA section 101(25), 42 U.S.C. section 9601(25), do not constitute

16  removal or remedial costs within the meaning of CERCLA sections 101(23) and 101(24), 42

17  U.S.C. sections 9601(23) and 9601(24), and are unreasonable, unnecessary, and inconsistent with

18  the National Contingency Plan.  Such costs, therefore, are unrecoverable.

19  **EIGHTH AFFIRMATIVE DEFENSE**

20  **(Future Costs Not Recoverable)**

21      8.      PLAINTIFFS cannot recover future costs, if any, under CERCLA section 107(a)(4),

22  42 U.S.C. section 9607(a)(4).

23  **NINTH AFFIRMATIVE DEFENSE**

24  **(Innocent Party)**

25      9.      DOBBAS is an innocent party pursuant to CERCLA section 101(35)(A), 42 U.S.C.

26  section 9601(35)(A).

27  / / /

28  / / /

00010784.2

-11-

1        **TENTH AFFIRMATIVE DEFENSE**

2        **(Waiver, Equitable Estoppel and Equitable Indemnity)**

3        10.     PLAINTIFFS' claims are barred by the doctrines of waiver, equitable estoppel and

4   equitable indemnity.

5        **ELEVENTH AFFIRMATIVE DEFENSE**

6        **(Laches)**

7        11.     PLAINTIFFS' claims are barred by the doctrine of laches because of PLAINTIFFS'

8   inexcusable and unreasonable delay.

9        **TWELFTH AFFIRMATIVE DEFENSE**

10        **(Unclean Hands)**

11        12.     PLAINTIFFS' claims are barred by the doctrine of unclean hands.

12        **THIRTEENTH AFFIRMATIVE DEFENSE**

13        **(Failure to Join Indispensable Parties)**

14        13.     PLAINTIFFS have failed to join indispensable parties as required under state and

15   federal law.

16        **FOURTEENTH AFFIRMATIVE DEFENSE**

17        **(Comparative Fault)**

18        14.     The responsibility for damages alleged in the Complaint, assuming they are proven,

19   are the result of acts and/or omissions by the other defendants and/or PLAINTIFFS, and therefore,

20   responsibility must be apportioned pursuant to the principles of comparative fault.

21        **FIFTEENTH AFFIRMATIVE DEFENSE**

22        **(Statute of Limitations)**

23        15.     Each claim for relief in the Complaint is barred by the applicable statutes of

24   limitations, including but not limited to, CERCLA section 113(g), 42 U.S.C. section 9613(g),

25   California Health and Safety Code section 25360.4, and California Code of Civil Procedure section

26   338.

27   / / /

28   / / /
     00010784.2

                                        -12-

<div align="center">

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

</div>

16.    PLAINTIFFS have failed to take reasonable steps to mitigate the damages for which they seek relief in the Complaint.

<div align="center">

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Lack of Causation)**

</div>

17.    No act or omission by DOBBAS, or by any person or entity for which DOBBAS is or was responsible, is the cause in fact or proximate cause of any costs or damages alleged in the Complaint.

<div align="center">

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

</div>

18.    PLAINTIFFS have assumed the risk of the conditions and damages for which they seek relief in the Complaint.

<div align="center">

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Divisibility and Apportionment)**

</div>

19.    If DOBBAS is judged liable, which liability DOBBAS denies, for any contamination, condition, or harm alleged in the Complaint, such contamination, condition, and/or harm is divisible and DOBBAS is not jointly and severally liable.

<div align="center">

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Ripeness)**

</div>

20.    PLAINTIFFS' claims for relief are not ripe.

<div align="center">

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(De Minimis Contribution, If Any)**

</div>

21.    DOBBAS' contribution to the harm alleged by the Complaint, if any is proven to exist, is de minimis.

/ / /

/ / /

/ / /

00010784.2

-13-

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

**(No Standing)**

22.     PLAINTIFFS do not have standing to bring an action against DOBBAS under applicable law, including, but not limited to CERCLA section 107, 42 U.S.C. section 9607.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

**(No Duty)**

23.     DOBBAS owed no duty of care to PLAINTIFFS at any and all times relevant to the allegations in the Complaint.  DOBBAS complied with all applicable laws and regulations and has acted in a careful, reasonable, and prudent manner.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

**(Money Damages Adequate)**

24.     Declaratory relief is not appropriate for some or all of the allegations contained in the Complaint because, if PLAINTIFFS are entitled to a remedy, which DOBBAS denies, money damages would be an adequate remedy.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Reasonableness and Good Faith)**

25.     DOBBAS acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by DOBBAS at the time it so acted.  Accordingly, PLAINTIFFS are barred from any recovery in this action.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

**(Performance of Duties)**

26.     DOBBAS has fully performed any and all contractual, statutory, and other duties owed, and PLAINTIFFS therefore are estopped from asserting any cause of action against DOBBAS.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Aggravation of Harm)**

27.     DOBBAS is informed and believes, and based thereon alleges, that PLAINTIFFS' actions caused the release or threatened release of hazardous substances, if any, or otherwise

00010784.2                                      -14-

1    aggravated the harm, if any, alleged in the Complaint.  Therefore, any recovery by PLAINTIFFS

2    under the Complaint should be barred or reduced accordingly.

3                         **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

4                                    **(Equitable Factors)**

5           28.     Under CERCLA section 113(0(1), 42 U.S.C. section 9613(0(1), the Court is

6    directed to consider such equitable factors as the Court deems appropriate in resolving actions for

7    contribution under CERCLA.  DOBBAS is informed and believes, and based thereon alleges, that

8    upon reviewing such equitable factors, the Court in this action will determine that DOBBAS

9    bears no responsibility for any response costs under CERCLA.

10                         **TWENTY-NINTH AFFIRMATIVE DEFENSE**

11                          **(No Liability for Others' Releases)**

12          29.     If DOBBAS is deemed liable for any of PLAINTIFFS' response costs, which

13   DOBBAS denies, DOBBAS is not liable for any costs that were not incurred as a direct result of

14   hazardous substance releases by DOBBAS.

15                         **THIRTIETH AFFIRMATIVE DEFENSE**

16                                        **(Offset)**

17          30.     If PLAINTIFFS are held entitled to recover any costs or damages against

18   DOBBAS, which entitlement DOBBAS denies, such recovery must be reduced by the greater of

19   (1) any amount previously obtained by PLAINTIFFS for any harms alleged in Complaint, or (2)

20   the equitable share of the liability of any person or entity from which PLAINTIFFS previously

21   received payment, whether by direct payment, offset or otherwise, for the harms alleged in the

22   Complaint.

23                       **THIRTY-FIRST AFFIRMATIVE DEFENSE**

24                          **(Joint and Several Liability Improper)**

25          31.     The Complaint fails to state a claim or set forth facts sufficient to support a finding

26   that DOBBAS should be held jointly and severally liable for any harm or damages alleged in the

27   Complaint.

28   / / /
     00010784.2
                                                   -15-

**THITY-SECOND AFFIRMATIVE DEFENSE**

**(Subject Matter Jurisdiction)**

32.    The Court lacks subject matter jurisdiction to consider PLAINTIFFS' Complaint and each cause of action therein.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(Compliance with Laws)**

33.    DOBBAS is not liable to PLAINTIFFS because DOBBAS acted reasonably and with due care and complied with all applicable statutes, regulations, ordinances, and/or other laws.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(Lack of Control)**

34.    The discharges referred to in PLAINTIFFS' Complaint, if any, were caused by acts or omissions of entities or persons other than DOBBAS and over whom DOBBAS had no control.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(Reasonable Precaution)**

35.    The discharges alleged in PLAINTIFFS' Complaint, if any there are, were caused by any or one or combination of the following:  an act of war; a unanticipated grave natural disaster or other natural phenomenon of an exceptional, inevitable and irresistible character, the effects of which could not have been prevented or avoided by the exercise of due care or foresight; negligence on the part of the State, the United States, or any department or agency thereof; or any other circumstances or event which caused the discharge despite the exercise of every reasonable precaution to prevent and/or mitigate and/or avoid adverse consequences from the alleged discharge.

/ / /

/ / /

/ / /

/ / /

00010784.2

-16-

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Reliance)**

36.    DOBBAS, at all relevant times relative to the matters that form the subject of PLAINTIFFS' Complaint, acted in reliance upon the directions given it by the pertinent government authorities and regulations.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

**(Independent, Intervening, and/or Superseding Claims)**

37.    Any act or omission of DOBBAS was not a substantial factor in bringing about PLAINTIFFS' alleged injuries and was not a contributing cause thereof.  If PLAINTIFFS sustained losses or injuries, such losses or injuries were the result of independent, intervening, or superseding forces and/or actions or omissions of third parties over which DOBBAS had no control and did not in any way participate in and for which DOBBAS is not liable.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

**(Release or Waiver)**

38.    The Complaint and each claim therein, is barred, in whole or in part, by the doctrines of express or implied release or waiver.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

**(Undue Delay)**

39.    PLAINTIFFS have, contrary to their legal and equitable obligations, failed to take effective action to abate the harm alleged in the Complaint for several years, a delay that has resulted in great prejudice to DOBBAS.  Given this delay on the part of PLAINTIFFS, an award of equitable injunctive relief against DOBBAS would be inappropriate and inequitable.

**FORTIETH AFFIRMATIVE DEFENSE**

**(No Declaratory Relief)**

40.    PLAINTIFFS are not entitled to declaratory relief against DOBBAS and such claims are not ripe for adjudication.

/ / /

/ / /

00010784.2

-17-

<div align="center">

**FORTY-FIRST AFFIRMATIVE DEFENSE**

**(Preemption)**

</div>

41.     PLAINTIFFS' claims and/or the remedies PLAINTIFFS seek are preempted, in whole or in part, by state and/or federal law.

<div align="center">

**FORTY-SECOND AFFIRMATIVE DEFENSE**

**(Necessity)**

</div>

42.     Any alleged injuries were the result of intentional but reasonable and reasonably necessary actions to protect persons or property from harm.

<div align="center">

**FORTY-THIRD AFFIRMATIVE DEFENSE**

**(Uncertainty)**

</div>

43.     The Complaint and each purported cause of action contained therein, is uncertain as to the wrongful acts of DOBBAS.

<div align="center">

**FORTY-FOURTH AFFIRMATIVE DEFENSE**

**(Failure to Plead with Sufficient Particularity/Reservation of Rights)**

</div>

44.     PLAINTIFFS do not describe their factual allegations or claims for relief with sufficient particularity to allow DOBBAS to ascertain what other affirmative defenses may exist, and DOBBAS therefore reserves the right to assert all affirmative defenses which may pertain to PLAINTIFFS' Complaint once the precise nature of the factual allegations and claims for relief is ascertained.   DOBBAS also reserves the right to assert all other defenses that arise through discovery, at trial, or otherwise.

<div align="center">

**XII.     PRAYER FOR RELIEF**

</div>

WHEREFORE, DOBBAS prays for judgment as follows:

1.     That this matter be tried before a jury;

2.     That PLAINTIFFS take nothing by way of their Complaint against DOBBAS;

3.     That judgment be entered in favor of DOBBAS and the PLAINTIFFS' Complaint be dismissed with prejudice;

4.     That DOBBAS be awarded its reasonable attorneys' fees, costs of suit, expenses and disbursements, according to proof;

00010784.2

<div align="center">-18-</div>

5.     That in the event DOBBAS is deemed liable to PLAINTIFFS in any manner, that such liability be apportioned among all parties, including PLAINTIFFS, proportionate to each party's degree of fault; and

6.     That the Court grant such other and further relief as it may deem just and proper.

Dated: June 10, 2014            KING WILLIAMS & GLEASON LLP

By: _____
     Jennifer Hartman King
     Nicole R. Gleason
     Shelby M. Gatlin

Attorneys for Defendant JIM DOBBAS, INC.

00010784.2

-19-

ANSWER OF JIM DOBBAS, INC. TO DTSC'S COMPLAINT
ER-668 00595-WBS-EFB

1

**DEMAND FOR JURY TRIAL**

2

3          Defendant Jim Dobbas, Inc. hereby requests a jury trial on all issues raised in this answer

4    to Plaintiffs' Complaint.

5

Dated: June 10, 2014                          KING WILLIAMS & GLEASON LLP

6

7

8                                              By:_____
                                                   Jennifer Hartman King
9                                                  Nicole R. Gleason
                                                   Shelby M. Gatlin
10
                                              Attorneys for Defendant JIM DOBBAS, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00010784.2                              -20-

1  JENNIFER HARTMAN KING (Bar No. 211313)
   NICOLE R. GLEASON (Bar No. 199655)
2  SHELBY M. GATLIN (Bar No. 272701)
   KING WILLIAMS & GLEASON LLP
3  520 Capitol Mall, Suite 750
   Sacramento, CA  95814
4  Telephone:     (916) 379-7530
   Facsimile:     (916) 379-7535
5  jhartmanking@kwgattorneys.com
   ngleason@kwgattorneys.com
6  sgatlin@kwgattorneys.com

7  Attorneys for Defendant Jim Dobbas, Inc.

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11                    SACRAMENTO DIVISION

12

13  CALIFORNIA DEPARTMENT OF TOXIC        Case No.:  2:14-cv-00595-WBS-EFB
    SUBSTANCES CONTROL and the TOXIC
14  SUBSTANCES CONTROL ACCOUNT,           **JIM DOBBAS, INC.'S**
                                          **COUNTERCLAIM FOR:**
15        Plaintiffs,
                                          **1. COST RECOVERY UNDER**
16        v.                              **   CERCLA § 107;**
                                          **2. CONTRIBUTION UNDER**
17  JIM DOBBAS, INC., a California        **   CERCLA § 113(f);**
    corporation; CONTINENTAL RAIL, INC., a **3. DECLARATORY RELIEF**
18  Delaware corporation; DAVID VAN OVER, **   UNDER CERCLA § 113(g);**
    individually; PACIFIC WOOD           **4. CONTRIBUTION AND INDEMNITY**
19  PRESERVING, a dissolved California    **   UNDER CALIFORNIA HEALTH**
    corporation; and WEST COAST WOOD     **   AND SAFETY CODE §§ 25300 ET**
20  PRESERVING, LLC,  a Nevada limited    **   SEQ.;**
    liability company,                    **5. DECLARATORY RELIEF UNDER 28**
21                                        **   U.S.C. § 2201.**
          Defendants.
22
                                          [FILED CONCURRENTLY WITH ANSWER TO
23  JIM DOBBAS, INC., a California         COMPLAINT AND DEMAND FOR JURY TRIAL]
    corporation,
24                                        Action filed:  March 3, 2014
          Counterclaimant,
25
          v.
26
    CALIFORNIA DEPARTMENT OF TOXIC
27  SUBSTANCES CONTROL and the TOXIC
    SUBSTANCES CONTROL ACCOUNT,
28
          Counterdefendants.

00010740.6

---

KING WILLIAMS & GLEASON LLP
520 CAPITOL MALL, SUITE 750
SACRAMENTO, CA 95814
TELEPHONE: (916) 379-7530 FAX: (916)379-7535

1    Defendant and counter-claimant Jim Dobbas, Inc. ("DOBBAS") hereby counterclaims

2  against Plaintiff California Department of Toxic Substances Control ("COUNTER-

3  DEFNDANT"). DOBBAS makes the following allegations upon information and belief as to all

4  matters, other than those allegations specifically referring to DOBBAS, which it makes based

5  upon its own knowledge:

6                                **I.    JURISDICTION**

7    1.    The Court has jurisdiction over these counterclaims pursuant to 28 United States

8  Code ("U.S.C.") section 1331, and 42 U.S.C. section 9613(b).  The Court has supplemental

9  jurisdiction pursuant to 28 U.S.C. section 1367, because the claims brought under California state

10  law arise from the same nucleus of operative facts.

11                                **II.    VENUE**

12    2.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b) and 42 U.S.C.

13  section 9613(b) because the alleged acts and omissions relate to the alleged hazardous substances

14  releases giving rise to COUNTER-DEFEDNANT's claims asserted in the Complaint for

15  Recovery of Response Costs; Declaratory Relief; Injunctive Relief; Treble Damages; and Civil

16  Penalties ("Complaint") on file herein, and relate to the real property located at or near 147 A

17  Street, Elmira, Solano County, California.

18                            **III.    DEMAND FOR JURY TRIAL**

19    3.    Defendant and counter-claimant, DOBBAS, hereby demands trial by jury in this

20  action.

21                                **IV.    PARTIES**

22    4.    Defendant and counter-claimant, DOBBAS, is a privately held California

23  Corporation, located in the County of Placer, in the State of California.

24    5.    DOBBAS is informed and believes, and thereon alleges, that COUNTER-

25  DEFENDANT the California Department of Toxic Substances Control ("DTSC") is a public

26  agency of the State of California, organized and existing under California Health and Safety Code

27  section 58000 et seq.  DTSC's predecessor agency was the California Department of Public

28  Health.

00010740.6                                1

## V.    GENERAL ALLEGATIONS

6.    DOBBAS is informed and believes, and thereon alleges that COUNTER-DEFENDANT, and/or its predecessor agency, the California Department of Health Services, has been involved with the property located at or near 147 A Street, Elmira, Solano County, California ("Site") for more than thirty-five years.

7.    COUNTER-DEFENDANT approved a remedial action plan for the Site in or around the year 1983 ("1983 Remedial Action Plan").  A copy of the 1983 Remedial Action Plan is attached hereto as **Exhibit A** and incorporated by this reference as though fully stated herein.

8.    Subsequent to approval and implementation of the 1983 Remedial Action Plan, COUNTER-DEFENDANT has undertaken additional response actions at, on, and/or near the Site and surrounding properties.

9.    On or about March 6, 1996, COUNTER-DEFENDANT issued a Certification of Remedial Action for the Site ("1996 Certification of Remedial Action").  A copy of the 1996 Certification of Remedial Action is attached hereto as **Exhibit B** and incorporated by this reference as though fully stated herein.

10.    Subsequent to COUNTER-DEFENDANT'S 1996 Certification of Remedial Action for the Site, COUNTER-DEFENDANT continued to be actively involved in the Site and surrounding property.

11.    COUNTER-DEFENDANT'S selection and implementation of response actions at, on, and/or near the Site and surrounding properties were, and continue to be, negligent, grossly negligent and/or constitute intentional misconduct.

12.    COUNTER-DEFENDANT, through its response actions at the Site, is a liable party pursuant to 42 U.S.C. section 9607(a), and California Health and Safety Code section 25323.5.

## VI.    FIRST COUNTERCLAIM

### (Costs Recovery Under §107 of CERCLA)

13.    DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 12, inclusive.

00010740.6

-2-

1     14.    COUNTER-DEFENDANT alleges in its COMPLAINT that the Site is a "facility"

2  within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9).  If such allegation

3  is true, the Site is a "facility."

4     15.    COUNTER-DEFENDANT is a "person" within the meaning of section 101(21) of

5  CERCLA, 42 U.S.C. section 9601(21).

6     16.    COUNTER-DEFENDANT is an "operator," or was an "operator," of the Site "at

7  the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of

8  CERCLA, 42 U.S.C. section 9607(a).

9     17.    COUNTER-DEFENDANT negligently selected and implemented response actions

10  at, on, and/or near the Site and surrounding properties.

11     18.    COUNTER-DEFENDANT has engaged in gross negligence and/or intentional

12  misconduct at and with respect to the Site, in violation of 42 U.S.C. section 9607(d).

13     19.    DOBBAS did not cause or contribute to any "hazardous substance" "release" or

14  "threatened release" at or from the Site.

15     20.    DOBBAS denies that it is liable for any costs incurred as the result of the alleged

16  release or threatened release of hazardous substances at or from the Site.   This denial

17  notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the

18  release or threatened release of hazardous substances at or from the Site in a manner that satisfies

19  the requirements of Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

20     21.    COUNTER-DEFENDANT is jointly and severally liable, without regard to fault,

21  under section 107(a) of CERCLA, 42, U.S.C. section 9607(a), for DOBBAS' costs incurred in

22  response to the release or threatened release of hazardous substances at or from the Site.

23          **VII.   SECOND COUNTERCLAIM**

24          **(Contribution under CERCLA § 113(f))**

25     22.    DOBBAS realleges and incorporates by reference the allegations contained in

26  paragraphs 1 through 21, inclusive.

27  / / /

28  / / /

00010740.6

-3-

1      23.    COUNTER-DEFENDANT alleges in its COMPLAINT that the Site is a "facility"

2   within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9).  If such allegation

3   is true, the Site is a "facility."

4      24.    COUNTER-DEFENDANT is a "person" within the meaning of section 101(21) of

5   CERCLA, 42 U.S.C. section 9601(21).

6      25.    COUNTER-DEFENDANT is an "operator," or was an "operator," of the Site "at

7   the time of disposal of a [] hazardous substance" there, as those terms are used in section 107(a)

8   of CERCLA, 42 U.S.C. section 9607(a).

9      26.    COUNTER-DEFENDANT negligently selected and implemented response actions

10   at, on, and/or near the Site and surrounding properties.

11      27.    COUNTER-DEFENDANT has engaged in gross negligence and/or intentional

12   misconduct at and with respect to the Site, in violation of 42 U.S.C. section 9607(d).

13      28.    DOBBAS did not cause or contribute to any "hazardous substance" "release" or

14   "threatened release" at or from the Site.

15      29.    DOBBAS denies that it is liable for any costs incurred as the result of the alleged

16   release or threatened release of hazardous substances at or from the Site.  This denial

17   notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the

18   release or threatened release of hazardous substances at or from the Site.

19      30.    COUNTER-DEFENDANT is liable to DOBBAS for contribution under CERCLA

20   section 113(f), 42 U.S.C. section 9613(f) for some of all amounts DOBBAS incurred and may, in

21   the future, incur as a result of any release or threatened release of hazardous substances at and

22   from the Site, in that COUNTER-DEFENDANT is a liable party under CERCLA section 107(a),

23   42 U.S.C. section 9607(a).

24            **VIII.   THIRD COUNTERCLAIM**

25       **(Declaratory Relief under CERCLA § 113(g), 42 U.S.C. § 9613(g))**

26      31.    DOBBAS realleges and incorporates by reference the allegations contained in

27   paragraphs 1 through 30, inclusive.

28   / / /

1    32.    An actual, substantial, and justiciable controversy exists between DOBBAS and

2    COUNTER-DEFENDANT, and each of them, regarding their respective rights and obligations

3    for response costs that DOBBAS may incur to respond to the release and/or threatened release of

4    hazardous substances into the soil and/or groundwater at and from the Site.

5    33.    DOBBAS seeks declaratory judgment against COUNTER-DEFENDANT under

6    CERCLA section 133(g)(2), 42 U.S.C. section 9613(g)(2), that will be binding in any subsequent

7    action to recover further response costs, holding COUNTER-DEFENDANT liable for an

8    equitable share (all or some portion) of any response costs DOBBAS may pay to respond to any

9    release and/or threatened release of hazardous substances into the soil and/or ground water at and

10   from the Site.

## IX.    FOURTH COUNTERCLAIM

### (Contribution and Indemnity Under California Health and Safety Code Section 25300 et seq.)

14   34.    DOBBAS realleges and incorporates by reference the allegations contained in

15   paragraphs 1 through 33, inclusive.

16   35.    COUNTER-DEFENDANT caused or permitted a release or threatened release of

17   substances governed by the Hazardous Substances Account Act ("HSAA") (California Health and

18   Safety Code section 25300 et seq.) into, on, or about the Site and surrounding properties.

19   36.    COUNTER-DEFENDANT is a "liable person" within the meaning of California

20   Health and Safety Code section 25323.5.

21   37.    COUNTER-DEFENDANT negligently selected and implemented response actions

22   at, on, and/or near the Site and surrounding properties.

23   38.    DOBBAS has not caused or contributed to any release or threatened release of

24   substances governed by the HSAA into, on, about or from the Site or surrounding properties and,

25   therefore, is not a "liable person" as defined by California Health and Safety Code section

26   25323.5.

27   39.    As a direct, legal, and proximate result of COUNTER-DEFENDANT's acts and/or

28   omissions, pursuant to California Health and Safety Code sections 25320 and 25323.5, DOBBAS

00010740.6                                    -5-

## XI.   PRAYER FOR RELIEF

WHEREFORE, DOBBAS prays that judgment be entered for DOBBAS and against COUNTER-DEFENDANT as follows:

1.     For judgment that PLAINTIFF is jointly and severally liable without regard to fault pursuant to CERCLA section 107(a), 42 U.S.C. section 9607(a), for all response costs incurred as a result of the release and threatened release of hazardous substances at and from the Site, in an amount according to proof;

2.     For contribution pursuant to CERCLA section 113(f), 42 U.S.C. section 9613(f), in the amount of any judgment entered or settlement approved in favor of COUNTER-DEFENDANT, or any other party, against DOBBAS for costs incurred and/or to be incurred in response to the release and/or threatened release of hazardous substances at or from the Site;

3.     For contribution and indemnification pursuant to HSAA section 25300 *et seq,* for all costs incurred and/or to be incurred by DOBBAS in response to the release and/or threatened release of hazardous substances at or from the Site;

4.     For litigation expenses and costs of suit incurred herein, including reasonable attorney's fees and expert fees;

5.     For an award of interest at the maximum legal rate on any and all damages from the earliest date permitted by law;

6.     For a declaration and judgment of this Court in favor of DOBBAS and against the COUNTER-DEFENDANT, and an order retaining jurisdiction to effectuate a declaration that COUNTER-DEFENDANT is liable for all costs that DOBBAS may incur to respond to the release and/or threatened release of hazardous substances at and from the Site;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

00010740.6

-7-

1        6.     For such other and further relief as the Court deems just and proper.

2

3    Dated: June 10, 2014                  KING WILLIAMS & GLEASON LLP

4

5                                       By: _____
                                           Jennifer Hartman King

6                                          Nicole R. Gleason
                                           Shelby M. Gatlin

7                                  Attorneys for Defendant JIM DOBBAS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00010740.6                              -8-

JIM DOBBAS, INC.'S COUNTERCLAIM TO DTSC'S COMPLAINT

0595-WBS-EFB

# EXHIBIT A

BEFORE THE
DEPARTMENT OF HEALTH SERVICES
STATE OF CALIFORNIA

In Re:                              )
Wickes Forest Industries            )              ORDER
A Division of The Wickes            )               AND
Corporation,                        )        SCHEDULE OF COMPLIANCE
Elmira Facility                     )

The attached Settlement Agreement and Schedule of Compliance is
hereby adopted by the Department of Health Services as an Order
and Schedule of Compliance pursuant to Health and Safety Code
Section 25187.

This Order shall become effective on __2/26/84__.

IT IS SO ORDERED on this __26th__ day of __February__.

_____
(Signature)

BEFORE THE
DEPARTMENT OF HEALTH SERVICES
AND
CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD,
CENTRAL VALLEY REGION
STATE OF CALIFORNIA

In Re: )
)
Wickes Forest Industries, )
A Division of The Wickes )
Corporation, )
Elmira Facility )
_____)

SETTLEMENT AGREEMENT
AND
SCHEDULE OF COMPLIANCE

I

The State Department of Health Services (Department) alleges that The Wickes Corporation (Wickes) has violated, and is in violation of, specific provisions of the Hazardous Waste Control Laws (Act) and regulations adopted thereunder, as set forth more fully in Paragraph VII as a result of its alleged disposal of hazardous waste at its facility in Elmira, California (Site).

II

The California Regional Water Quality Control Board, Central Valley Region, (Board) alleges that Wickes' waste discharges at the Site have violated the Porter-Cologne Water Quality Control Act and regulations and orders adopted thereunder. The Board issued Cleanup and Abatement Orders on June 6, 1982 and October 4, 1982 after finding that on-Site soils were contaminated (in part by a toxic spill on November 7, 1980) and are threatening surface and ground waters in Elmira. The Board alleges that Wickes is in violation of the October 4, 1982 Order.

III

The Settlement Agreement (Agreement) and Schedule of Compliance (Order) have been agreed to by Wickes, the Department and the Board to resolve the matters found and alleged in Paragraphs II and VII without civil litigation and to facilitate implementation of the measures described herein.

IV

Wickes, the Department and the Board admit and agree that the Department and the Board have jurisdiction over these matters and the parties.

V

This Agreement and Order apply to and are binding upon the parties, their successors and assigns.

Wickes Forest Industries
Elmira Facility

-2-

### VI

For the purposes of this Agreement and Order, Wickes agrees to waive any right to a hearing prior to issuance of the Order or to the reimbursement agreed to in Paragraph VIII of this Agreement. Wickes has denied all of the allegations in Paragraphs I, II, and VII. Any payments or actions by Wickes pursuant to this Agreement are not to be construed as an admission of guilt or liability. By means of this Agreement the Department and the Board make no finding of fact or conclusion of law that resolves issues of culpability or guilt on the part of Wickes.

### VII

The Department alleges that Wickes has violated, or is in violation of, the Act and regulations adopted thereunder for the following reasons:

1. Wickes has disposed of hazardous waste on-site without a permit or an Interim Status Document (ISD) for such disposal [Health and Safety Code, Sections 25142, 25154, 25189 and 25201 and Title 22, California Administrative Code (22 CAC), Sections 66387 and 66490].

2. As a result of its disposal of hazardous wastes, Wickes has committed the additional following violations of regulations adopted pursuant to the Act:

   a. As a producer of hazardous waste, Wickes did not take steps to ensure that its waste was taken to a facility permitted by the Department (22 CAC, Section 66505).

   b. Wickes did not operate, design or equip the facility to prevent discharge of hazardous wastes and to prevent hazards to public health, personal safety and wildlife [22 CAC, Sections 66525(a) and 66530(e)].

3. Wickes has not complied with closure requirements in Health and Safety Code, Section 25159.6 and 40 CFR 265.111 through 265.114.

4. Wickes has not complied with post-closure plan requirements in Health and Safety Code, Section 25159.6 and 40 CFR 265.118.

5. Wickes has not complied with financial assurance requirements in Health and Safety Code, Section 25159.6 and 40 CFR, Subpart H.

The Department is not aware of any fact regarding the Site which would constitute additional violations of the Act or regulations adopted thereunder.

### VIII

Wickes agrees to reimburse the Department $2,500 as full settlement for all resources previously expended on this matter and to contribute $10,000 to the Board's Cleanup and Abatement account. Payment will occur within sixty (60) days after execution of this Agreement. Such payment shall in no event be construed as a fine or penalty.

Wickes Forest Industries                                                    -3-
Elmira Facility

IX

Wickes has conducted sampling and analyses to define the extent of soil and surface and ground water contamination on and off the Site.  In a letter dated 9 September 1983, Wickes submitted a "Remedial Action Plan" (Plan):

1. The Department and the Board approve the stormwater management, the ground water treatment and contaminated soils removal and containment elements of the Plan, as amended by Wickes' letter to the Board dated 29 September 1983 and any subsequent amendments agreed to in writing by the parties.

2. Wickes shall implement the Plan and subsequent amendments agreed to in writing by the parties in compliance with the terms herein and shall complete corrective measures, other than the ground water treatment system, on-going treatment, maintenance and monitoring activities, within sixty (60) days from the date of this Agreement.  Wickes shall complete the ground water treatment system within ninety (90) days from the date of this Agreement.

3. Wickes shall submit a Post-Closure Care Plan (PCCP) and a proposed financial assurance mechanism for post closure care to the Department for approval that meets the requirements of 40 CFR 265.118 within 60 days after the date of this agreement.  Wickes shall implement the approved PCCP in compliance with the terms therein.

4. Wickes shall provide to the Department and the Board within thirty (30) days from the approval of the PCCP acceptable financial assurance documentation for post-closure care.

5. Wickes shall propose deed restrictions for the Department's approval.  The restrictions shall limit the type and manner of future uses of the site and ensure the continued integrity of treatment and control facilities. The proposed restrictions shall be submitted within 60 days of the date of this Agreement.

6. Wickes shall record the approved deed restrictions within 30 days of the date of their approval.  The deed restrictions may be removed upon written agreement of the parties.

7. Wickes shall comply with the Board's Monitoring and Reporting Program (MRP).  The attached MRP is approved by the Board.

Exhibit A - Dobbas Counterclaims

Wickes Forest Industries                                                    -4-
Elmira Facility

## X

The goals of the Plan discussed in Paragraph IX are:

1.  Elimination of human and animal contact with contaminated soils at the
    Site within 60 days of the date of this Agreement.

2.  Elimination of the migration of contaminated ground water away from the
    Site within 270 days of the date of this Agreement.

3.  Elimination of off-Site contamination in ground water in approximately 5
    years.*

4.  Elimination of on-Site contamination in ground water in 5 to 10 years.*

    *  The goals are based on current drinking water standards.  Stricter stan-
       dards may require review and revision of the time estimates.

## XI

Whenever the remaining elements of the Plan are submitted to the Department
and the Board pursuant to this Agreement and Order, the Department and the Board
shall review them and either approve them or request modifications within 15
working days of their receipt.  If the Department or Board requests modifications
to Wickes' submission, Wickes shall respond thereto within 15 working days of the
receipt of the request.

## XII

If, for any reason, Wickes is unable to perform any activity or submit any
document in compliance with the schedule set forth herein or in compliance with
any work schedule submitted pursuant to this Agreement and approved by the Depart-
ment and Board, Wickes may request, in writing, an extension of the time spec-
ified.  The extension request shall include a justification for the delay.

## XIII

If the Department and the Board reasonably determine that good cause exists
for an extension, they will grant the request and specify in writing a new sched-
ule.  Wickes shall comply with the new schedule.  No penalty shall be imposed or
paid pursuant to Paragraph XIV for any time period included within an extension
granted under this paragraph.  Extensions may be granted retroactively.  Wickes
shall notify the Board or Department as soon as possible and in no event later
than 24 hours of its knowledge of non-compliance.

Wickes Forest Industries
Elmira Facility

-5-

The Department and Board will find that good cause exists for an extension if the delay is caused by factors totally beyond Wickes' reasonable control despite Wickes' best efforts to comply.

XIV

In the event that Wickes fails to perform work on pad sealing, roof construction, stormwater diversions, soil removal, french drain trench for the treatment system, or ground water treatment system within the times specified in the Order Wickes shall pay a civil penalty of $2,500 to the Department and a contribution of $2,500 to the Board's Cleanup and Abatement account for each day of non-compliance. If Wickes fails to submit other documents or perform other activities within the time specified in the Order Wickes shall pay civil penalties of $250 to the Department and a contribution of $250 to the Board's Cleanup and Abatement Account for each day of each item of non-compliance. The provisions of this paragraph do not apply if Wickes establishes that the failure to comply with a deadline is due solely to an Act of God.

The Department and the Board will allow additional days for performance of work on pad sealing, stormwater diversions, soil removal, and the french drain trenches if the following rainfall occurs. For each day rainfall exceeds 0.20", Wickes will be granted an extension of 1 day. For each day rainfall equals or exceeds 0.50", Wickes will be granted an extension of 1 additional day per each 0.50" increment of rain. For example, if rainfall equals 3.00" on a given day, Wickes shall be entitled to an extension of 7 days. Rainfall measurements for the site shall be those recorded by the United States Weather Service at the Vacaville Station.

XV

If, through the discovery of new facts or otherwise, Wickes, the Department or the Board believes corrective measures are inadequate or unnecessary to achieve goals discussed in Paragraph X; or if the Department and Board do not approve elements submitted pursuant to Paragraph IX or modifications submitted pursuant to Paragraph XI; or do not approve removal of deed restrictions; the parties shall seek agreement. If agreement is not reached within 45 days, or if the Department or Board believes that Wickes is not in compliance with this Agreement, any of the parties may seek judicial relief.

In the case of any proposed changes in the MRP, the Board shall provide notice to Wickes and the Department 30 days before amending it. The MRP shall be amended only by written agreement of the parties or by action of the Board at a Board Meeting.

The Department may amend the PCCP to reflect changes in the MRP or changes in applicable federal or state laws or regulations. The Department will provide 30 days notice to Wickes and the Board before amending the PCCP.

Wickes Forest Industries
Elmira Facility

-6-

## XVI

In consideration of Wickes' performance under this Agreement, the Department and Board hereby convenant not to seek civil or criminal penalties, fines or similar sanctions against Wickes, its parent, subsidiary or affiliated companies on matters alleged in Paragraphs I, II, & VII.

## XVII

Except as specifically provided in Paragraph XVI, nothing in this Agreement or Order shall be construed to prevent or limit the Department or the Board, as part of any judicial relief pursuant to paragraph XV, from taking any additional action authorized by law in regard to those matters alleged in Paragraphs I, II and VII, including, but not limited to removal, remedial, or cost recovery actions pursuant to the Hazardous Substances Act, Health and Safety Code, Section 25300, et seq., or to the Porter-Cologne Water Quality Control Act.

## XVIII

In consideration of Wickes' performance under this agreement, the Board rescinds the Cleanup and Abatement Orders dated October 4, 1982 and June 6, 1982.

## XIX

Wherever notification or submission of documents are required under this Agreement, they shall be addressed to: Enforcement Coordinator, Toxic Substances Control Division, 714/744 P Street, Sacramento, CA 95816; Executive Officer, Regional Board, 3201 S Street, Sacramento, CA 95816 and to the General Counsel, Wickes Companies Inc. 3340 Ocean Park Boulevard, Santa Monica, California 90405. If these persons or addresses change, the affected party shall immediately notify the other parties.

## XX

Wickes, the Department and the Board hereby consent to this Agreement and the issuance of the Order by their duly authorized representative and stipulate that without the necessity of a hearing or findings of fact and conclusions of law the Director of the Department of Health Services or his duly authorized representative may enter an order binding on the parties in accordance with this Settlement Agreement and Order.

Wickes Forest Industries
Elmira Facility                                                      -7-


2/26/84
_____
Date


Feb. 15, 1984
_____
DATE


Feb 9, 1984
_____
DATE

_____
Peter Rank
Director
Department of Health Services
State of California


_____
William H. Crooks, Executive Officer
California Regional Water
 Quality Control Board
Central Valley Region


_____
VICE PRESIDENT
The Wickes Corporation

Exhibit A - Dobbas Counterclaims



*C5a*

## Wickes Companies, Inc.
**Corporate Offices**

<u>FEDERAL EXPRESS</u>

September 9, 1983

Ms. Karen O'Haire
Regional Water Quality Control Board
3201 S Street
Sacramento, California 95816

Re:  Wickes Forest Industries Facility, Elmira, California

Dear Karen:

The following remedial action proposal has been approved by
Wickes management and is submitted to the California Regional
Water Quality Control Board ("CRWQCB") and the Department of
Health Services ("DOHS") pursuant to the schedule agreed upon at
our meeting on August 5, 1983:

1.    Stormwater Management:

    a.  Construct lined diversion ditches along northwestern
        and southwestern edges of property;

    b.  Construct corrugated metal pipe culvert at northern
        corner of drying pad;

    c.  Route roof downspouts from office building into back
        ditch;

    d.  Roof process area to prevent direct rainfall into this
        area.

2.    Ground-water Removal and Treatment:

    a.  Construct subsurface drainage system 200 feet long, 15
        feet deep and 18 inches wide.  A recovery well will be
        located at the midpoint of the drainage system and
        will contain a submersible sump fitted with PVC piping
        to deliver water to an on site storage tank and treat-
        ment system.

    b.  Construct a treatment plant utilizing an ion-exchange
        system with both cation and anion adsorber columns.

OFFICIAL FILE COPY
TOXIC SUBSTANCES CONTROL DIVISION
CENTRAL FILE UNIT

3340 Ocean Park Boulevard, Suite 2000  ●  P.O. Box 4056  ●  Santa Monica, California 90405  ●  (213) 452-0161

Exhibit A - Dobbas Counterclaims

Ms. Karen O'Haire
September 9, 1983
Page Two


3.     Soil Contamination:

   a.   Remove soil in truck loading pad area;

   b.   Seal drying pad with textile fabric and 4 inch thick
        layer of asphaltic concrete;

   c.   Fence process area.

4.     Monitoring:

   a.   Visual   inspection   of   sealed   pad,   fencing   and
        stormwater management construction;

   b.   Sampling of effluent from water treatment system;

   c.   Sampling of selected on-site and off-site wells;

   d.   Repairs as necessary.

Details of the above proposal are set forth in the enclosed "Pro-
posed Remedial Action Plan, Wickes Elmira Facility" prepared by
Woodward-Clyde Consultants in conjunction with Levine-Fricke En-
gineering Consultants.  The figures referred to in such document
are being express mailed to you directly by Woodward-Clyde.  The
information requested in your letter to me dated August 29, 1983
is contained in a letter dated September 9, 1983 which is being
sent directly to you by Jim Levine of Levine-Fricke.

The schedule agreed to at our meeting on August 5, 1983, calls
for the following events:

   9-19    Approval of plan by RWQCB and DOHS.

   9-19    Resin bench test results.

   10-10   Completion of french drain and stormwater trench;
           draw up design and specifications for fabrication;
           selection of vendors completed.

   11-7    Construction of treatment plant on site.

   11-21   Start up testing completed.

If you have any questions on Wickes' proposed plan, please call
me or Bob Tuch immediately so that we can maintain this schedule.

Exhibit A - Dobbas Counterclaims

**ER-689**

Ms. Karen O'Haire
September 9, 1983
Page Three

It is our understanding that at such time as it is demonstrated
that the proposed plan is effecting a continuing reduction in
levels of copper, chromium and arsenic in the ground water, and
is preventing contamination of surface water and direct contact
with contaminated soils, that the staff of the CRWQCB will
promptly recommend to the Board that the pending Clean-Up and
Abatement Order be dismissed with prejudice.

Very truly yours,

Jeannette Meier Zacker
Associate Counsel

JMZ:cs
enclosure
cc:  Larry Pearson, CRWQCB
     Gary Reents, DOHS
     Steve Debuskey
     Robert Tuch



C5a

RECEIVED

SEP 2 9 1983

JEANNETTE M. ZACKER

**Wickes Companies, Inc.**
Corporate Offices

September 29, 1983                                   <u>**Via Federal Express**</u>

Regional Water Quality Control
  Board
Central Valley Region
3201 S Street
Sacramento, CA 95816

Attn:  Ms. Karen O'Haire

RE:    Proposed Remedial Action Plan/Wickes Forest Industries
       Facility/Elmire, California

Dear Ms. O'Haire:

The purpose of this letter is to provide additional information
to the California Regional Water Quality Control Board ("CRWQCB")
and the Department of Health Service ("DOHS") in regard to the
above referenced remedial action plan proposed on behalf of
Wickes Forest Industries on September 9, 1983, in accordance with
understandings reached in the course of telephone conferences
which occurred on September 27 and 28, 1983 between Larry Pearson
and Gary Varney of the CRWQCB, Gary Reents of DOHS, James Levine
of Levine-Fricke Engineering Consultants, Albert Ridley of
Woodard-Clyde Consultants, you, and myself.

As I stated in my letter to you of September 22, 1983 and reiter-
ated verbally on September 27, Wickes is ready to proceed with
the commencement of immediate construction activities pertaining
to the french drain and storm water diversion ditches outlined in
the remedial action plan as soon as I receive authorized written
approval on behalf of the CRWQCB and DOHS in regard to the
primary elements of the remedial action plan submitted on Septem-
ber 9, 1983.  Specifically, I request approval by CRWQCB and DOHS
of the following elements of our previously submitted remedial
action plan:  (i) storm water management, (ii) ground-water re-
moval and treatment, (iii) soil contamination containment and
control, and (iv) monitoring program.  Based on our prior conver-
sations, it is agreeable to Wickes if the approval by the CRWQCB
and DOHS of the foregoing elements of the remedial action plan is
conditioned upon the subsequent and mutually agreeable negotia-
tion of appropriate deed restrictions on the subject property,
implementation by Wickes of a financial assurance program which
would reasonably underwrite the ability of the company to comply
with the primary monetary obligations undertaken by it pursuant
to the proposed plan, and final refinement of the monitoring
process.

The following information is provided in response to the issues
raised by the CRWQCB and DOHS in the course of the telephone con-
ferences referenced above:

OFFICIAL FILE COPY
TOXIC SUBSTANCES CONTROL DIVISION
CENTRAL FILE UNIT

3340 Ocean Park Boulevard, Suite 2000  •  P.O. Box 4056  •  Santa Monica, California 90405  •  (213) 452-0161

1.   Possible effects of high ground-water encountering contami-
     nated soils under the drying pad.

     As previously stated, although the possibility that ground-
     water may contact shallow contaminated soils beneath the
     concrete drying pad cannot be ruled out entirely, we do not
     believe there is a significant basis to conclude there will
     be a resulting leaching or ground-water contamination prob-
     lem.  However, notwithstanding this, and in order to provide
     an engineering option in case this unlikely event does oc-
     cur, Wickes intends to construct a seven foot deep subsur-
     face drainage trench along the northeast edge of the drying
     pad.  This trench will include a recovery well similar to
     that proposed for the southeast side of the property.  The
     purpose of this trench will be to allow, if necessary, main-
     tenance of the ground-water table below the elevation of
     contaminated soils underlying the concrete drying pad.
     Ground-water levels will be controlled by the use of elec-
     trodes placed at adjustable elevations in the recovery well.
     We are proposing to construct this trench as part of the
     remedial action plan previously submitted.  This trench is
     proposed as a safeguard measure to be implemented only if a
     significant leaching problem is confirmed by monitoring of
     well E-4 or evidence of surface water contamination is de-
     tected in the "A" street ditch resulting from leaching under
     the pad.

2.   Injection at the sump near well E-6

     To aid in flushing residual contaminants from the sump area
     near well E-6, we are proposing injection of clean water
     into this area.  This injection will commence when draw-down
     of the ground-water has been effected by the subdrain sys-
     tem.  We would advise the CRWQCB and the DOHS in advance of
     the implementation of these measures.

3.   Monitoring Program.

     Wells E-17 and E-18 were not included in the proposed
     ground-water monitoring program as initially submitted.
     These wells were intended to be included in the monitorng
     program and we hereby amend the remedial action plan to in-
     clude them in the previously submitted ground-water monitor-
     ing scheme.

Exhibit A - Dobbas Counterclaims

4.    Financial Assurance Program for Future Operations, Main-
      tenance, and Monitoring

      Wickes is pursuing the development of a financial assurance
      program either in the form of a performance or other type of
      bond or through the substantial prepayment of expenses and
      costs involved in the remedial action plan. Whichever route
      is followed, the primary intent of Wickes is to insure that
      adequate financial resources will exist endependently of our
      company to provide for successful implementation and main-
      tenance of the remedial action plan.

5.    Proposal for Deed Restriction on Future Use and Sale of the
      Property.

      As previously discussed, we are in agreement with you on the
      need for the negotiation of appropriate deed restrictions
      affecting the future use and sale of the subject property.
      We are in conceptual agreement with the restrictions set
      forth in Article III of the draft Covenant and Agreement
      which accompanied your correspondence of September 19, 1983.
      We intend to negotiate in good faith with the DOHS and
      CRWQCB in regard to the specific terms and conditions of the
      covenants and restrictions which will be imposed on the El-
      mira property.

I trust the foregoing satisfactorily responds to your remaining
questions concerning the remedial action plan as proposed by
Wickes. If this is the case, please provide the above-mentioned
written approval of the DOHS and CRWQCB as soon as possible.

Very truly yours,

Robert I. Tuch
Associate Counsel

RIT/sg

cc:  Al Ridley
     Steve Dubuskey
     Jim Levine
     Jeannette Zacker

– 3 –

Exhibit A - Dobbas Counterclaims

PROPOSED REMEDIAL ACTION PLAN
WICKES ELMIRA FACILITY
Elmira, California

### INTRODUCTION

The herein proposed remedial action plan for the Wickes Elmira facility, developed by Woodward-Clyde Consultants and Levine-Fricke, Inc., is intended to respond to directives from the California Department of Health Services (DOHS) and the Regional Water Quality Control Board, Central Valley Region (CRWQCB). These agencies have required Wickes to develop and submit a proposed remedial action plan to mitigate potential human health hazards associated with residual contamination at the Elmira wood-treating facility. The herein proposed remedial action plan has been developed based upon the results of Phase I and Phase II soil and ground-water investigations performed at the site. Reports for these investigations are dated April 19, 1983 and August 19, 1983, respectively. Additional data and interpretations concerning relevant site conditions are contained in our response to questions from the CRWQCB dated July 28, 1983.

The CRWQCB and DOHS are concerned about potential human exposure to copper, chromium (hexavalent and trivalent), and arsenic; heavy metals that have been identified in soil and ground-water at the site. In developing this remedial action plan, our approach has been to analyze the data on site conditions, to identify the potential pathways of human exposure in different areas of the site, and to develop engineering measures which will interfere with or eliminate the exposure pathways. The potential exposure pathways identified at the site include:

- o direct contact with contaminated soils, ground water, and surface water;

- o inhalation of soil particles (dust) from wind-blown contaminated soils; and

- o drinking of contaminated ground water potentially pumped from the shallow (less than 20 feet deep ) zone.

The Phase I and II studies described above provided sufficient data with which to identify areas of the site where these potential exposure pathways are present and areas where the potential exposure would be similar to background conditions. Specific engineering measures were then developed to reduce the potential exposures where they would be above background or more established criteria (i.e. drinking water standards).

## SITE CONDITIONS

Although site conditions are fully described in the Phase I and Phase II reports (see Reference), a brief description of the site is provided, highlighting those areas with potential exposure problems. For this discussion it is useful to view the site as composed of several operating areas:

o   The process area – including the storage tanks, the pressure cylinders, associated piping and controls, two collection sumps, and an office building. This is the area where chemicals were stored and mixed, and where wood was treated. Sumps were used to collect drippage and rainwater for use as make-up water for treating solutions.

o   The drip pad or drying pad area – comprised of a concrete slab area (approx. 120 ft. by 180 ft. in plan dimensions) adjacent to the process area. This area was used to collect the drippage from newly-treated lumber. Drippage and direct rainfall onto this area flowed to the sumps in the process area.

o   An unpaved storage yard – located northeast of the drying pad. This area as well as a smaller unpaved area southwest of the process area was used for wood storage before treating and after initial drying on the drip pad. The smaller area southwest of the process area is leased from Southern Pacific Railroad.

o   A truck loading pad – located at the southern corner of the process area. This 40 ft. by 15 ft. concrete area was used for parking tank trucks while they unloaded shipments of treating chemicals.

Laboratory analyses results of soil and ground-water samples from exploratory borings in the northeastern and southwestern unpaved storage yards show relatively low concentrations of copper, arsenic, and chromium that are in the range of background concentrations measured in the site vicinity. These data suggest that potential human exposures to these metals from either direct contact with soils or inhalation of dust would be in the same range as would occur in uncontaminted off-site areas, and thus require no remedial actions.

Laboratory analyses results of ground-water samples collected from Phase I wells in the process area indicated significantly elevated concentrations of chromium and arsenic in the shallow ground water in this area. Phase II monitoring wells indicate that this ground-water contamination is confined to relatively shallow depths (less than 40 feet deep). No off-site contamination has been detected in the shallow Phase II monitoring wells.

- 2 -

Analysis of soil samples from on-site and off-site borings in the area of ground-water contamination show esentially background concentrations of copper, chromium, and arsenic. Where concentrations in soils were higher than background (E-6), the predominance of hexavalent chromium suggests that the vast majority of contamination measured in these soil samples occurs as contaminated pore water. These results suggest that an appropriate remedial strategy for this area would be to install a shallow ground water collection system to prevent subsequent off-site migration of contaminated shallow ground water and to retrieve that which may have already moved off-site. These actions will greatly reduce the potential for shallow ground water to be extracted by local domestic wells and subsequently ingested by residents. Since direct contact with or inhalation of contaminated soils is not considered an important pathway of exposure for residual subsurface contamination in the process area, no soil removal here is considered necessary. Recommended actions to reduce the potential for direct contact with remaining process equipment on-site are described later in this plan.

Laboratory analyses of soil samples from the drying pad area indicate concentrations of copper, chromium, and arsenic above background levels generally to depths of approximately 2 feet below the bottom of the slab and at least 3 feet in two areas. Ground-water analyses results from samples beneath the pad indicate concentrations generally below drinking water criteria. These results indicate that although the concrete surface covering the pad may preclude short-term exposures, the direct contact and inhalation exposure pathways may be important. The ground-water ingestion pathway appears insignificant here as long as infiltration through contaminated underlying soils is minimized. Sealing the surface of the pad is a measure being considered which would interfere with the direct contact and inhalation pathways.

Laboratory analyses results from borings in the truck loading pad indicate that the soil contamination extends to less than 2 feet deep in one end of the pad and greater than 2 feet deep in the other. Potential exposure from direct contact with or inhalation of the contaminated soils appears to be presently precluded by the presence of an overlying concrete pad, however, excavation of contaminated soils is being considered here as a long-term solution.

PROPOSED REMEDIAL ACTION PLAN

The proposed remedial action plan for the Elmira facility is comprised of several elements:

    o   Stormwater (surface water) management;
    o   Shallow ground-water removal and treatment;
    o   Soil removal in the truck loading pad area;
    o   Surface sealing the drying pad area;

- 3 -

Exhibit A - Dobbas Counterclaims

o   Monitoring; and
o   Maintenance.

These elements are described below.

### Stormwater Management

In previous winters, stormwater runoff generated on the adjacent Railroad property to the west would flow onto the site, and cause flooding of the pad and process areas. Similarly, direct rainfall on the drying pad area would flow into the process area and contact residual contamination in the sumps; thus requiring pumping and hauling or treatment of a large amount of stormwater.

To control this run-on and run-off problem, a stormwater management plan has been formulated and is herein proposed. The plan consists of:

o   The construction of lined diversion ditches along the northwestern and southwestern edges of the property to divert incoming stormwater around the process and drying pad areas. The northwestern ditch (shown on Figure 1) would convey incoming stormwater northeast along the back edge of the property to a point approximately 10 feet beyond the northern corner of thedrying pad. A corrugated metal pipe culvert originating at this point would convey this water easterly across the site and outfall into the "A" Street ditch. The southwestern ditch would convey water along this property edge and outfall directly into the "A" Street ditch at the south corner of the process area. Both ditches and the culvert have been designed to convey water volumes up to those anticipated for the 100-year storm. It is possible that during large storm events, however, the "A" Street ditch will be flooded and will prevent the discharge of the full flow from these conveyances. Due to this possibility, the ditches have been designed to overflow onto the uncontaminated storage yards in the northeastern and southwestern portions of the site rather than spill over into the drying pad or process areas. Due to the low elevations of these storage yards, they will likely be flooded anyway to a certain extent from run-off from other areas. This precaution should result in protection of the sensitive areas of the site (the pad and process areas) and result in greater access and use of these areas in winter months.

o   The routing of roof downspouts from the office building directly into the back ditch. This will divert an additional amount of clean stormwater from collecting in the process area.

- 4 -

o    Roofing of the process area to prevent direct rainfall
     into this area and potential leakage into the "A"
     Street ditch.

## Ground-water Removal and Treatment

To prevent subsequent off-site migration of contaminated shallow
ground water and retrieve contaminated ground water which may
have already moved off-site, a subsurface drainage system is pro-
posed along the southeast edge of the process area and a portion
of the drying pad (Figure 1). The drain will consist of a 200
foot long, 15 foot deep, 18 inch wide trench with appropriately
sized permeable backfill (Figure 2). A recovery well will be
located at the mid-point of the drainage trench. The recovery
well will consist of a 12 inch diameter well casing installed
inside a 24 inch diameter borehole. The recovery well will ex-
tend to a depth of approximately 20 feet. The bottom 5 feet of
well casing (below the trench) will be blank and the annulus
around this section will be backfilled with a cement-bentonite
grout. The section of casing from approximately 3 feet below the
ground surface to the bottom of the trench will consist of a per-
forated section as shown in Figure 2. The well annulus adjacent
to the perforated section will be backfilled with Caltrans Class
2 permeable filter material. The annulus opposite the upper 3
feet will be backfilled with a cement bentonite seal. A submers-
ible pump will be installed within the well and fitted with PVC
piping to deliver the withdrawn ground water to an on-site
storage tank and subsequently to the treatment system. Down-hole
control switches will turn the pump on and off to maintain the
desired ground-water elevation in the drainage trench.

Based upon preliminary calculations, a water level drawdown of
approximately 5 feet will be adequate to prevent ground water in
the upper 40 feet from crossing a vertical projection of the
trench and will retrieve shallow ground water from at least 300
feet in the downgradient direction. These calculations indicate
that a flow of approximately 7 gallons/minute can be expected
from this drawdown.

Treatment of collected ground water and surface water will be
accomplished utilizing an ion exchange system with both cation
and anion adsorber columns. A composite water sample of the E-4,
E-5 and E-6 wells was collected on August 29, 1983 and is cur-
rently being analyzed by the laboratory. Resin bench test
results will be available to the CRWQCB on September 19 in accor-
dance with the schedule agreed upon on August 5, 1983. The pro-
posed design configuration (Figure 3) consists of a storage/flow
equalization tank, a cartridge filter to remove inert solids, and
cation and anion columns to remove dissolved copper, chromium,
and arsenic. After water has passed through these columns it
will be discharged to either the "A" Street ditch or, if permis-
sion is obtained, to the City of Vacaville sanitary sewer system

- 5 -

(see separate letter to CRWQCB dated September 9, 1983). Ef-fluent from the columns should meet California Drinking Water Standards for copper, chromium, and arsenic.

Based upon the assumed flow rates discussed above, a column diameter of 18 inches has been selected with column lengths (and bed depths) of 5 feet. Assuming average influent concentrations of 10 to 15 ppm for chromium, 0.5 ppm for arsenic, and 2 ppm for copper, resin change-out frequencies were calculated to prevent breakthrough. These calculations utilize textbook resin efficiency numbers which should be tested in the laboratory to select the appropriate resins and refine hese estimates. Based upon these calculations, the cation resin will need to be changed every 78 days and the anion resin changed every 21 days. Based upon the high capital and operating costs of on-site regeneration, the resins will be disposed of in accordance with applicable state and federal regulations.

## Soil Removal in the Truck Loading Pad Area

To prevent future exposure to presently covered, contaminated soils underlying the truck loading pad, approximately 2.5 feet of soil will be excavated and replaced with clean soil fill. The excavated soil will be disposed in a disposal site approved by the DOHS and CRWQCB. Excavation of this soil is proposed instead of sealing the surface of this pad because, unlike the drying pad:

o    The truck loading pad is in the same area of the site where ground-water contamination was detected. It is not known whether the contaminated soil beneath the truck loading pad has contributed to this ground-water contamination.

o    The ground surface around the truck loading pad is at a low enough elevation (67.9 feet) to make the pad area susceptible to potential flooding from high water in the "A" Street ditch.

## Concrete Drying Pad

The proposed sealing of the drying pad is intended to reduce potential human exposure to copper, arsenic and chromium in the drying pad area. Potential pathways of exposure include direct contact with soil beneath the slab or with the surface of the slab. Other pathways of exposure include breathing wind blown dust from the slab or underlying soil, or ingestion of underlying soil or runoff water from the surface of the slab.

Sealing the surface of the Drying Pad will mitigate potential direct contact, dust, and surface water migration of contaminants. It is recommended that the Drying Pad be covered with approximately a 4 inch thick layer of asphaltic concrete (A.C.)

- 6 -

paving. A textile fabric is recommended between the A.C. and the concrete slab to reduce the potential for cracking of the A.C. paving. A special mix of A.C. will be prepared to achieve the desired low permeability. Surface runoff from the sealed Drying Pad will then be diverted directly to the ditch at "A" Street. Continued inspection and maintenance will be performed to provide continued effectiveness of the A.C. surface seal.

## Process Area

Potential pathways for human exposure to arsenic, copper, and chromium in the Process Area include: direct contact with concrete or equipment, or direct contact with surface runoff, and ingestion of groundwater from beneath the area. The proposed ground water removal and treatment system is intended to mitigate potential health risks from groundwater. Constructing a roofed structure over the Process Area will mitigate potential off-site migration of copper, arsenic, and chromium in runoff water by preventing rainfall from contacting contaminated surfaces. Presently rainfall collected in the sumps is removed by tank truck to an approved disposal site. Clean runoff from the new roof will be diverted to the ditch on "A" Street. A cyclone fence or siding on the proposed roof structure will be constructed around the process area to prevent direct contact with equipment on-site.

## Monitoring Effectiveness

A.     Ground Water Removal and Treatment.

During initial operations it is estimated that the effluent from the ion-exchange water treatment system will need to be sampled and analysed for copper, arsenic, and chromium on a bi-weekly basis. As operational experience develops it is anticipated that effluent sampling and analysis may be reduced to bi-monthly or possibly monthly intervals.

Sampling and measurement of ground water elevations in groundwater monitoring wells and off-site domestic wells should initially be completed at monthly intervals to evaluate the effectiveness of the ground-water removal and treatment system. It is proposed that samples be taken from Wells E-4, E-5, E-6, E-15, E-16, DW-2, the Elmira School well and the Rhodes domestic water well. After evaluation of three months of data, the sampling frequency may be able to be reduced to every two months.

A minimum period of six months after initiation of pumping should be allowed to evaluate the groundwater removal and treatment system since this period of time will be required to develop the desired changes in gradient. Thereafter, the effectiveness of the ground-water removal and treatment system will be evaluated based upon decreasing levels of copper, arsenic, and chromium in

- 7 -

water from the monitoring wells.  When the levels of these compo-
nents are at or below the California Drinking Water Standard for
a period of six (6) consecutive months the ground-water removal
system can be discontinued.

B.     Stormwater Management and Sealing.

The effectiveness of the stormwater management and sealing will
be monitored by visual inspection no less frequently than the
sampling of the wells.  Upon discontinuance of the ground water
treatment and monitoring, such inspection, and appropriate
mainenance, will occur no less than quarterly.

Annual Maintenance

Annual maintenance of the surface water management system is an-
ticipated to be minimal.  The ditches and pipes should be cleaned
and inspected each fall and no less than monthly during the rainy
season.  For the Drying Pad the pavement should be inspected each
fall prior to the rainy season and any cracks should be sealed.

Maintenance of the ion-exchange system will require replacement
of the resins and disposal of the used resins.  Change out
frequencies for the resins will change over time as the influent
concentrations decrease. - Early operations will most likely re-
quire change out of the resins every three to twelve weeks.  As
the ground-water concentrations decrease the change out frequen-
cies will be reduced.  Very little maintenance is anticipated for
the submersible pump and ground-water removal system.

- 8 -

Exhibit A - Dobbas Counterclaims

# REFERENCES

Woodward-Clyde Consultants, 1983(a), consultants report entitled "Interim Phase I Report, Wickes Forest Industries Elmira, California," dated April 28, 1983, prepared for Wickes Forest Industries, Dinuba, California.

Woodward-Clyde Consultants, 1983(b), consultants report entitled "Response to Questions in Letter of July 8, 1983, Wickes Elmira Facility," dated July 28, 1983, prepared for Wickes Forest Industries, Dinuba, California.

Woodward-Clyde Consultants, 1983(c), consultants report entitled "Phase II Data Report, Wickes Forest Industries Facility, Elmira California," prepared for Wickes Forest Industries, Dinuba, California.

Exhibit A - Dobbas Counterclaims

**ER-703**

# EXHIBIT B

STATE OF CALIFORNIA — ENVIRONMENTAL PROTECTION AGENCY                                      PETE WILSON, *Governor*

## DEPARTMENT OF TOXIC SUBSTANCES CONTROL

10151 CROYDON WAY, SUITE 3
ACRAMENTO, CA  95827-2106



(916) 255-3545

March 12, 1996

Mr. James D. Moore III
Environmental Manager
Collins & Aikman Products Co.
P.O. Box 32665
Charlotte, North Carolina 28232

WICKES FOREST INDUSTRIES, ELMIRA CALIFORNIA, SOLANO COUNTY: SITE
CERTIFICATION

Dear Mr. Moore:

Enclosed is a copy of the signed final Operation and
Maintenance Agreement (OMA) for the Wickes Forest Industries site
in Elmira, California.  The OMA incorporates the language that
was agreed upon through negotiations between DTSC and the Collins
& Aikman Products Co (CAPCo).  With the approval of the October
16, 1995, Operation and Maintenance Manual (OMM) and the signing
of the OMA, DTSC hereby certifies implementation of the final
remedial actions at the Wickes Site.  Be advised that, in
addition to the implementation of the OMM, the OMA contains
paragraphs which specify compliance conditions.  It is CAPCo's
responsibility to insure that these conditions are met.

DTSC has also completed a review of the March 4, 1996,
transmittal of the sheet for Wickes.  The fact sheet was prepared
by Levine * Fricke on behalf of CAPCo and it is intended to
present a description of the remedial actions conducted at the
site as well as the activities to be conducted as part of ongoing
operation and maintenance.  By this letter DTSC approves the fact
sheet.  It shall be distributed to the recipients identified on
the Wickes mailing list mail and the DTSC mandatory mailing list
within 15 days of the date of this letter.  Attached is the
latest copy of DTSC,s mandatory mailing list.

If you have any questions or comments please contact Timothy
Patenaude at (916) 255-3580.

Sincerely,

James L. Tjosvold, P.E.
Branch Chief
Central California Cleanup
Operations Branch

Enclosure



cc:   John B. Orgain, Esq.
      Senior Counsel
      Collins & Aikman Corporation
      P.O. Box 32665
      Charlotte, North Carolina 28232

      Mr. Frank Lorincz
      Levine-Fricke
      1900 Powell Street, 12th Floor
      Emeryville, California 94608

      Mr. Lawrence Pearson, P.E.
      Supervising Engineer
      Regional Water Quality Control Board
      Central Valley Region
      3443 Routier Road
      Sacramento, California 95827

      Greg Mackin
      Collins & Aikman Corporation
      P.O. Box 32665
      Charlotte, North Carolina 28232

**REGION 1**
**MANDATORY MAILING LIST**
**8-17-95**

SIERRA CLUB
LIZ ALLEN
394 BLAISDELL
CLAREMONT  CA 91711

TOXICS ASSESSMENT GROUP
JODY SPARKS
P O BOX 73620
DAVIS  CA 95617

CA COUNCIL FOR ENVIRONMENT AND
  ECONOMIC BALANCE
LISA BICKER
100 SPEAR STREET  SUITE 805
SAN FRANCISCO  CA 94105

CA DEPT TOXICS
MARCIA MURPHY  CHIEF
PUBLIC PARTICIPATION
P O BOX 806
SACRAMENTO  CA 95812-0806

CA DEPT TOXICS
JESSE R. HUFF DIRECTOR
P O BOX 806
SACRAMENTO  CA 95812-0806

CA DEPT TOXICS-REGION 1
J    BAKER
EXTERNAL AFFAIRS LIAISON
10151 CROYDON WAY  SUITE 3
SACRAMENTO  CA 95827

CITIZENS FOR A BETTER ENVIRONMENT
MIKE BELLIVEAU
501 SECOND STREET  SUITE 305
SAN FRANCISCO  CA 94107

ENVIRONMENTAL HEALTH COALITION
DIANE TAKVORIAN
1717 KETTNER  SUITE 100
SAN DIEGO  CA 92101

GREENPEACE
BRADLEY ANGEL
568 HOWARD STREET  3RD FLOOR
SAN FRANCISCO  CA 94105-3008

CA DEPT TOXICS-REGION 1
LARRY WOODSON
PUBLIC PARTICIPATION SUPERVISOR
10151 CROYDON WAY  SUITE 3
SACRAMENTO  CA 95827

CENTER FOR COMMUNITY ACTION
 AND ENVIRONMENTAL JUSTICE
PENNY NEWMAN
P O BOX 33124
RIVERSIDE  CA 92519

LEAGUE OF WOMEN VOTERS
ANN COOMBS
5^1 GUADALUPE DRIVE
L    ALTOS  CA 94022

CALPIRG
MARY RAFTERY
LEGISLATIVE ADVOCATE
926 J STREET  SUITE 713
SACRAMENTO  CA 95814

captured and routed off-site; and affected groundwater to be extracted and treated with an on-site electrochemical co-precipitation treatment system. The RAPs also set forth the chemicals to be remediated, remediation levels, requirements for monitoring capture zones, and reporting requirements.

4. <u>Type of Site:</u>

RCRA-Permitted Facility _____        Bond-funded _____

RCRA Facility Closure    _____        RP-funded    __X__

Federal Facility         _____        NPL          _____

Other:

Explain Briefly:

5. <u>Size of Site:</u>

Small _____   Medium _____   Large __X__   Extra Large _____

6. <u>Dates of Remedial Action</u>

- Ground Water Extraction and Treatment - December 1983.

- Soil removal, asphalt cap and expanded groundwater extraction and treatment - October 1994.

7. <u>Response Action Taken on Site:</u>

_____   Initial Removal or Remedial Action (site inspection/sampling)
__X__    Final Remedial Action
_____   RCRA enforcement/closure action
_____   No action, further investigation verified that no cleanup action at site was needed.

A. Type of Remedial Action:

- Soil excavation and off-site disposal.
- Asphalt cap.
- Ground water extraction and treatment in an on-site chemical treatment plant.
- Deed Restriction.

B. Estimated quantity of waste associated with the site:

1. __X__ removed soil          Amount: 3,040 Cu Yrds
2. __X__ untreated (capped sites) Amount: 4.3 acres
3. __X__ treated ground water   Amount:  45,000,000 gallons to date

2

8.  **Cleanup Levels/Standards**

A.  What were the cleanup standards established by DTSC/EPA pursuant to the final RAP or workplan (if cleanup occurred as the result of a removal action (RA) or interim remedial measures (IRM) prior to development of a RAP)?

50 part per billion total chromium in groundwater

B.  Were the specified cleanup standards met?  Yes____ No_X___

C.  If "no", why not:

Ground water is continuing to be extracted and treated pursuant to an operation and maintenance agreement.

9.  **DTSC Involvement in the Remedial Action:**

A.  Did DTSC order the Remedial Action?

Yes __X__ No _____

Date of order: 02/26/84

B.  Did DTSC/EPA review and approve:

__X__ Sampling Analysis Procedures  Date: 02/25/94

__X__ Health & Safety Protections   Date: 02/25/94

__X__ Removal/Disposal Procedures   Date: 02/25/94

__X__ Remedial Action Plan          Date: 02/25/94

C.  If site was abated by a responsible party, did DTSC receive a signed statement from a licensed professional on all Remedial Action?

Yes_X_ No___      Dates (from) 10/30/84 (to) 06/30/95

D.  Did a registered engineer or geologist verify that acceptable engineering practices were implemented?

Yes_X_ No___      Name: Mark Knox

Date of verification: 12/13/94

E.  Did DTSC confirm completion of all Remedial Action?

Yes___ No_X_ Date of verification: 03/16/95

3

F.  Did DTSC actually perform the Remedial Action?

Yes___ No_X_ Name of Contractor:

G.  Was there a community relations plan in place?

Yes_X_ No___

H.  Was a remedial action plan developed for this site?

Yes_X_ No___

I.  Did DTSC/USEPA hold a public meeting regarding the draft
RAP?

Yes_X_ No___

J.  Were public comments address?  Yes_X_ No____

Date of DTSC/USEPA analysis and response: 02/25/94

K.  Are all of the facts cited above adequately documented in
DTSC files?  Yes_X_ No___

If no, identify areas where documentation is lacking:

10.  <u>EPA Involvement in the Remedial Action:</u>

A.  Was the EPA involved in the site cleanup?  Yes___  No_X_

If yes, did EPA concur with all remedial actions?

Yes___ No___

B.  EPA comments:

C.  EPA staff involved in cleanup:

11.  <u>Other Regulatory Agency Involvement in the Cleanup Action:</u>

Agency:        Activity:

_X_  RWQCB     <u>Waste Discharge Requirements, NPDES_____</u>

_____  ARB    _____

_____  CHP    _____

_____  Caltrans _____

_____  Other   _____

Name of contact persons and agency: RWQCB - Issac  Kiang

4

12.   **Post-Closure Activities:**

A.   Will there be post-closure activities at this site?

Yes__X__ No_____

If yes, describe:

    Pursuant to an operation and maintenance agreement, the Collins & Aikman Products Co. will continue to extract, treat, sample and analyze ground water from the site. There are also operation, maintenance, sample and analysis procedures associated with the on-site chemical treatment system and asphalt cap which are described in the June 20, 1995, Operation and Maintenance Plan.

B.   Have post-closure plans been prepared and approved by the DTSC/USEPA? Yes__X__ No_____

C.   What is the estimated duration of post-closure activities?  10 years.

D.   Are deed restrictions proposed or in place? Yes_X_ No___

If yes, have deed restrictions been recorded with the County Recorder? Yes_X_ No___ Date: 10/27/95

If no, who is responsible for assuring that the deed restrictions are recorded?

Who is the Division contact?

E.   Has cost recovery been initiated?  Yes__X__ No_____

If yes, amount received: $43,731.83

F.   Were local planning agencies notified of the cleanup action?  Yes_____ No__X__

If yes, the name and address of agency:

13.   **Expenditure of Funds and Source:**

| _____HWCA | $_____ | _____HSA | $_____ |
|---|---|---|---|
| _____HSCF | $_____ | _____RCRA | $_____ |
| _X_ RP | $5,500,000 Aprox | _____Other | $_____ |
| _____Federal Cooperative Agreement | $_____ | | |

5

Exhibit B - DOBBAS Counterclaims

14. **Certification Statement:** Based upon the information which is currently and actually known to DTSC,

___ DTSC has determined that all appropriate response actions have been completed, that all acceptable engineering practices were implemented and that no further removal/remedial action is necessary.

___ DTSC has determined, based upon a remedial investigation or site characterization that the site poses no significant threat to public health, welfare or the environment and therefore implementation of removal/remedial measures is not necessary.

_X_ DTSC has determined that all appropriate removal/remedial actions have been completed and that all acceptable engineering practices were implemented; however, the site requires ongoing operation and maintenance (O&M) and monitoring efforts. The site will be deleted from the "active" site list following (1) a trial operation and maintenance period and (2) execution of a formal written settlement between DTSC and the responsible parties, if appropriate. However, the site will be placed on DTSC's list of sites undergoing O&M to ensure proper monitoring of long-term clean-up efforts.

15. **Additional Comments:**

Chromium sludge generated from the treatment of ground water is disposed in an off-site permitted disposal facility. Treated ground water is used to recharge the aquifer by means of existing drainage ditches.

16. **Certification of Remedial Action:**

I hereby certify that the foregoing information is true and correct to the best of my knowledge.

1. _____      3/6/96
          Project Manager                    Date

2. _____      3/6/96
          Unit Chief                         Date

3. _____      3/7/96
          Branch Chief                       Date

6

## SITE CERTIFICATION SYNOPSIS

NAME AND LOCATION OF SITE:

    Wickes Forest Industries
    147 A Street
    Solano County
    Elmira, California 95625

DATE PROJECT BEGAN: February 1983

DATE PROJECT CERTIFIED: March 1996

DESCRIPTION OF THE SITE AND CONTAMINANTS:

    During the 1970's the site was used as a wood treatment facility. Lumber was treated with preserving solutions containing arsenic, chromium, and copper. Preserving fluid spills and dribble from treated lumber contaminated the soils at the site with these metals. Chromium has migrated through the soils and contaminated the ground water beneath the site and beneath the adjacent properties.

DESCRIPTION OF REMOVALS AND REMEDIAL ACTIONS:

    Soils with concentrations of metals that exceeded the hazardous waste threshold were excavated and disposed at a permitted off-site disposal facility (89 cubic yards). An asphalt cap was constructed on the site to prevent direct exposure to metals in concentrations above background (25,150 square yards). A ground water extraction and treatment system was constructed to remediate chromium ground water contamination (15 gallons per minute average flow).

DESCRIPTION OF PROBLEMS ENCOUNTERED WHICH CAUSE MAJOR DELAYS:

    For the purpose of investigation, the site was divide into two operable units, wood treatment unit (south) and the wood storage unit (north). During the remedial investigation, preliminary sampling data indicated that the northern portion of the site was not contaminated. A remedial action plan was prepared and implemented for the southern portion of the site. Subsequent confirmation sampling identified additional soil contamination in the northern portion. Consequently, a second remedial action plan, design, and implementation had to be conducted.

DESCRIPTION OF ACCOMPLISHMENTS UNIQUE TO THIS PROJECT:

     To date, approximately 45 millions gallons of ground water has been extract and treated to below clean up goals. Sludge from the treatment process is disposed at an off-site disposal facility.  Treated ground water recharges the existing aquifer by means of an existing drainage ditch.  A storm water management system has been constructed to divert collected rain water away from the asphalt cap.

FINAL USE OF SITE:

     The site is currently fenced and is vacant.  However, the responsible party is conducting research into potential use of the site as a railroad equipment or highway maintenance equipment storage facility.

JENNIFER HARTMAN KING (Bar No. 211313)
NICOLE R. GLEASON (Bar No. 199655)
SHELBY M. GATLIN (Bar No. 272701)
KING WILLIAMS & GLEASON LLP
520 Capitol Mall, Suite 750
Sacramento, CA  95814
Telephone:    (916) 379-7530
Facsimile:    (916) 379-7535
jhartmanking@kwgattorneys.com
ngleason@kwgattorneys.com
sgatlin@kwgattorneys.com

Attorneys for Defendant Jim Dobbas, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

KING WILLIAMS & GLEASON LLP
520 CAPITOL MALL, SUITE 750
SACRAMENTO, CA 95814
TELEPHONE: (916) 379-7530 FAX: (916)379-7535

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,<br><br>Plaintiffs,<br><br>v.<br><br>JIM DOBBAS, INC., a California corporation; CONTINENTAL RAIL, INC., a Delaware corporation; DAVID VAN OVER, individually; PACIFIC WOOD PRESERVING, a dissolved California corporation; and WEST COAST WOOD PRESERVING, LLC,  a Nevada limited liability company,<br><br>Defendants. | Case No.:  2:14-cv-00595-WBS-EFB<br><br>**JIM DOBBAS, INC.'S CROSSCLAIMS FOR:**<br><br>1. **COST RECOVERY UNDER CERCLA § 107;**<br>2. **CONTRIBUTION UNDER CERCLA § 113(f);**<br>3. **DECLARATORY RELIEF UNDER CERCLA § 113(g);**<br>4. **CONTRIBUTION & INDEMNITY UNDER CALIFORNIA HEALTH AND SAFETY CODE SECTION 25300 ET SEQ.;**<br>5. **CONTINUING PUBLIC NUISANCE UNDER CIVIL CODE §§ 3479 & 3480;**<br>6. **DECLARATORY RELIEF UNDER 28 U.S.C. §2201;**<br>7. **NEGLIGENCE;**<br>8. **EQUITABLE INDEMNITY;**<br>9. **BREACH OF CONTRACT.** |
| JIM DOBBAS, INC., a California corporation,<br><br>Cross-Claimant,<br><br>v. | [FILED CONCURRENTLY WITH ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL]<br><br>Action filed: March 3, 2014 |

00010742.9

1

2 | CONTINENTAL RAIL, INC., a Delaware
corporation; DAVID VAN OVER,
3 | individually; PACIFIC WOOD
PRESERVING, a dissolved California
4 | corporation; and WEST COAST WOOD
PRESERVING, LLC, a Nevada limited
5 | liability company,

6 |      Cross-Defendants.

7      Defendant and cross-claimant, Jim Dobbas, Inc. ("DOBBAS") hereby crossclaims against

8 Defendants, Continental Rail, Inc., David van Over, Pacific Wood Preserving, and West Coast

9 Wood Preserving, LLC (collectively, "CROSS-DEFENDANTS"). DOBBAS makes the

10 following allegations upon information and belief as to all matters, other than those allegations

11 specifically referring to DOBBAS, which it makes based upon its own knowledge:

12              **I.    JURISDICTION**

13      1.    The Court has jurisdiction over these crossclaims pursuant to 28 United States

14 Code ("U.S.C.") section 1331, and 42 U.S.C. section 9613(b). The Court has supplemental

15 jurisdiction pursuant to 28 U.S.C. section 1367, because the claims brought under California state

16 law arise from the same nucleus of operative facts.

17              **II.    VENUE**

18      2.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b) and 42 U.S.C.

19 section 9613(b) because the alleged acts and omissions relate to the alleged hazardous substances

20 releases giving rise to the claims asserted in the Plaintiffs', the California Department of Toxic

21 Substances Control ("DTSC") and the Toxic Substances Control Account, Complaint for

22 Recovery of Response Costs; Declaratory Relief; Injunctive Relief; Treble Damages; and Civil

23 Penalties ("Complaint") on file herein, and relate to the real property located at or near 147 A

24 Street, Elmira, Solano County, California ("Site").

25           **III.    DEMAND FOR JURY TRIAL**

26      3.    Cross-claimant, DOBBAS, hereby demands trial by jury in this action.

27 / / /

28 / / /
00010742.9

-1-

#### IV.    PARTIES

4.    Defendant and cross-claimant, DOBBAS, is a privately held California Corporation, located in the County of Placer, in the State of California.

5.    Cross-defendant, Continental Rail, Inc. ("CRI") is a Delaware corporation. CRI owned an interest in the Site from in or about 1997, to in or about 2011.

6.    Cross-defendant, David van Over ("Van Over") is a citizen of California residing in Solano County, California. Van Over currently owns and operates the Site.

7.    Cross-defendant, Pacific Wood Preserving ("PWP") is a dissolved California corporation. It conducted business operations at the Site from in or about 1972 to in or about 1979, and owned it from in or about 1977 to in or about 1979.

8.    Cross-defendant, West Coast Wood Preserving, LLC ("West Coast Wood") is a Nevada limited liability company, with its principal place of business in Kern County, California. It is a successor-in-interest to cross-defendant PWP.

#### V.    GENERAL ALLEGATIONS

9.    DOBBAS did not cause or contribute to any "hazardous substance" "release" or "threatened release" at or from the Site, as alleged in Plaintiffs' Complaint.

10.    Any "hazardous substance" "release" or "threatened release" at or from the Site, is the direct, legal, and proximate result of CROSS-DEFENDANTS' acts and/or omissions.

11.    Accordingly, CROSS-DEFENDANTS are liable for any and all costs incurred as the result of the alleged release and threatened release of hazardous substances at the Site.

#### VI.    FIRST CROSSCLAIM

**(Costs Recovery Under CERCLA § 107 – Against All CROSS-DEFENDANTS)**

12.    DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 11, inclusive.

13.    Plaintiffs the California Department of Toxic Substances Control and the Toxic Substances Control Act ("Plaintiffs") allege in their COMPLAINT that the Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9). If such allegation is true, the Site is a "facility."

00010742.9

-2-

14.     CROSS-DEFENDANTS are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. section 9601(21).

15.     CROSS–DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site "at the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

16.     DOBBAS did not cause or contribute to any "hazardous substance" "release" or "threatened release" at or from the Site.

17.     DOBBAS denies that it is liable for any costs incurred as the result of the alleged release or threatened release of hazardous substances at or from the Site.   This denial notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the release or threatened release of hazardous substances at or from the Site in a manner that satisfies the requirements of Section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

18.     CROSS-DEFENDANTS are jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for DOBBAS' costs incurred in response to the release or threatened release of hazardous substances at or from the Site.

## VII.     SECOND CROSSCLAIM

### (Contribution under CERCLA § 113(f) – Against All CROSS-DEFENDANTS)

19.     DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 18, inclusive.

20.     Plaintiffs allege in their COMPLAINT that the Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. section 9601(9).  If such allegation is true, the Site is a "facility."

21.     CROSS-DEFENDANTS are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. section 9601(21).

22.     CROSS-DEFENDANTS are "owners" and/or "operators," or were "owners" and/or "operators," of the Site "at the time of disposal of a[] hazardous substance" there, as those terms are used in section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

/ / /

00010742.9

-3-

23.     DOBBAS did not cause or contribute to any "hazardous substance" "release" or "threatened release" at or from the Site.

24.     DOBBAS denies that it is liable for any costs incurred as the result of the alleged release or threatened release of hazardous substances at or from the Site.   This denial notwithstanding, DOBBAS has incurred and/or may, in the future, incur costs in response to the release or threatened release of hazardous substances at or from the Site.

25.     CROSS-DEFENDANTS are liable to DOBBAS for contribution under CERCLA section 113(f), 42 U.S.C. section 9613(f) for some of all amounts DOBBAS incurred and may, in the future, incur as a result of any release or threatened release of hazardous substances at and from the Site, in that CROSS-DEFENDANTS are liable parties under CERCLA section 107(a), 42 U.S.C. section 9607(a).

## VIII.   THIRD CROSSCLAIM

### (Declaratory Relief under CERCLA § 113(g), 42 U.S.C. § 9613(g) – Against All CROSS-DEFENDANTS)

26.     DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 25, inclusive.

27.     An actual, substantial, and justiciable controversy exists between DOBBAS and CROSS-DEFENDANTS, and each of them, regarding their respective rights and obligations for response costs that DOBBAS may incur to respond to the release and/or threatened release of hazardous substances into the soil and/or groundwater at and from the Site.

28.     DOBBAS seeks declaratory judgment against CROSS-DEFENDANTS under CERCLA section 133(g)(2), 42 U.S.C. section 9613(g)(2), that will be binding in any subsequent action to recover further response costs, holding CROSS-DEFENDANTS liable for an equitable share (all or some portion) of any response costs DOBBAS may pay to respond to any release and/or threatened release of hazardous substances into the soil and/or ground water at and from the Site.

/ / /

/ / /

00010742.9

-4-

## IX. FOURTH CROSSCLAIM

**(Contribution and Indemnity Under California Health and Safety Code Section 25300 et seq. – Against All CROSS-DEFENDANTS)**

29.   DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 28, inclusive.

30.   CROSS-DEFENDANTS caused or permitted a release or threatened release of substances governed by the Hazardous Substances Account Act ("HSAA") (California Health and Safety Code section 25300 et seq.) into, on, or about the Site and surrounding properties.

31.   CROSS-DEFENDANTS are "liable persons" within the meaning of California Health and Safety Code section 25323.5.

32.   DOBBAS has not caused or contributed to any release or threatened release of substances governed by the HSAA into, on, about or from the Site or surrounding properties and, therefore, is not a "liable person" as defined by California Health and Safety Code section 25323.5.

33.   As a direct, legal, and proximate result of CROSS-DEFENDANTS' acts and/or omissions, pursuant to California Health and Safety Code sections 25320 and 25323.5, DOBBAS is entitled to contribution and/or indemnity under California Health and Safety Code section 25363(e) and 25323.5 for some or all the costs DOBBAS has incurred or might incur in the future as a result of the alleged release or threatened release at and from the Site.

34.   As a direct, legal, and proximate result of CROSS-DEFENDANT acts and/or omissions, pursuant to California Health and Safety Code sections 25320 and 25323.5, DOBBAS has suffered injury and is entitled to monetary compensation and other relief and remedies.

## X. FIFTH CROSSCLAIM

**(Continuing Public Nuisance Pursuant to Cal. Civ. Code §§ 3479 & 3480 – Against All CROSS-DEFENDANTS)**

35.   DOBBAS realleges and incorporates by reference the allegations contained in paragraphs 1 through 34, inclusive.

/ / /
00010742.9

-5-

1    36.    CROSS-DEFENDANTS' actions have caused, created, maintained, contributed to,

2    and neglected to abate, a public nuisance at, on, and/or near the Site, as defined by California

3    Civil Code section 3479 and 3480.

4    37.    CROSS-DEFENDANTS' actions at, on and/or near the Site, have adversely

5    affected the quality and comfortable enjoyment of the environment by the community by creating

6    the public nuisance conditions and endangering health and property at, on and/or near the Site.

7    38.    DOBBAS is, and has been, specially and adversely affected by the public nuisance

8    conditions caused and/or created by CROSS-DEFENDANTS' actions at, on and/or near the Site.

9    39.    An ordinary person would be reasonably annoyed or disturbed by CROSS-

10   DEFENDANTS' conduct.

11   40.    As a direct, legal, and proximate result of the nuisance created by CROSS-

12   DEFENDANTS, DOBBAS has been, and will be, damaged.  DOBBAS is entitled to monetary

13   compensation and other relief and remedies including, but not limited to, equitable relief in the

14   form of an order requiring CROSS-DEFENDANTS to abate the nuisance.

## XI. SIXTH CROSSCLAIM

### (Declaratory Relief under 28 U.S.C. § 2201 – Against All Cross-Defendants)

17   41.    DOBBAS realleges and incorporated by reference the allegations contained in

18   paragraphs 1 through 40, inclusive.

19   42.    An actual controversy exists between DOBBAS and CROSS-DEFENDANTS, and

20   each of them, regarding their respective rights and obligations for response costs that DOBBAS

21   may incur to respond to any release and/or threatened release of hazardous substances into the

22   soil and/or groundwater at and from the Site.  Unless all of the rights, duties and obligations of

23   DOBBAS are determined in this action, there will be a multiplicity of actions.    Judicial

24   determination of the liability of CROSS-DEFENDANTS is necessary and appropriate at this time

25   so that DOBBAS may ascertain its rights as against CROSS-DEFENDANTS.

26   43.    Pursuant to 28 U.S.C. section 2201(a), this Court has jurisdiction to award

27   declaratory relief.  DOBBAS therefore requests a judicial determination of its rights, and the

28   / / /

00010742.9                                    -6-

1   duties and obligations of CROSS-DEFENDANTS, in responding to the release and/or threatened

2   release of hazardous substances into the soil and/or groundwater at and from the Site.

3       44.     Pursuant to 28 U.S.C. section 2202, DOBBAS further requests that this Court,

4   after entering the declaratory judgment prayed for herein, retain jurisdiction of this action to grant

5   DOBBAS such further relief against CROSS-DEFENDANTS as necessary and proper to

6   effectuate the Court's declaration.

7                       **XII.    SEVENTH CROSSCLAIM**

8                   **(Negligence – Against All CROSSDEFENDANTS)**

9       45.     DOBBAS realleges and incorporated by reference the allegations contained in

10  paragraphs 1 through 44, inclusive.

11      46.     CROSS-DEFENDANTS owed a duty to refrain from injuring the Site and

12  surrounding properties.  Specifically, CROSS-DEFENDANTS owed a duty not to cause or allow

13  any releases or threatened releases of environmental contamination at or from the Site.

14      47.     CROSS-DEFENDANTS caused and/or permitted releases or threatened releases

15  of environmental contamination at or from the Site and surrounding properties and, therefore,

16  breached their duty and acted negligently in failing to protect such properties.

17      48.     As a direct, legal and proximate result of CROSS-DEFENDANTS' negligent

18  reckless and/or careless acts and/or omissions, DOBBAS has suffered injury and is entitled to

19  monetary compensation and other relief and remedies as requested herein.

20                      **XIII.   EIGHTH CROSSCLAIM**

21                  **(Equitable Indemnity – Against All Cross-Defendants)**

22      49.     DOBBAS realleges and incorporated by reference the allegations contained in

23  paragraphs 1 through 48, inclusive.

24      50.     CROSS-DEFENDANTS were negligent, reckless, careless, in breach of duty

25  and/or otherwise legally responsible with respect to the matters and things alleged in this Cross-

26  complaint.  Such negligence, breach of duty, or other legal fault or responsibility proximately or

27  legally caused or contributed in whole or in part to the losses and liabilities DOBBAS has

28  suffered and may suffer in the future.

00010742.9                                    -7-

1        51.    DOBBAS has either provided, or does hereby provide, written notice to CROSS-

2    DEFENDANTS of the matters for which DOBBAS is entitled to indemnity and has requested, or

3    does hereby request, defense and indemnity for such matters.

4        52.    DOBBAS has incurred and continues to incur, necessary and reasonable attorneys'

5    fees and other costs and expenses in connection with the matters described in this cross-

6    complaint.  As a result, pursuant to California Code of Civil Procedure section 1021.6 and any

7    and all other applicable provisions and principals of law and equity, DOBBAS is entitled to an

8    order requiring CROSS-DEFENDANTS to reimburse DOBBAS in an amount equal to such fees,

9    costs, and expenses.

10        53.    As a direct, legal, and proximate result of CROSS-DEFENDANTS' failure to meet

11    their obligation to hold harmless and indemnify DOBBAS, DOBBAS has suffered injury and is

12    entitled to monetary compensation and other relief and remedies as requested herein.

13                      **XIV.  NINTH CROSSCLAIM**

14                 **(Breach of Contract – Against Van Over)**

15        54.    DOBBAS realleges and incorporated by reference the allegations contained in

16    paragraphs 1 through 53, inclusive.

17        55.    On or around February 11, 2011, DOBBAS and Cross-Defendant Van Over

18    entered into an Agreement of Purchase and Sale ("February 2011 Sales Agreement").  A copy of

19    the February 2011 Sales Agreement is attached hereto as **Exhibit A** and incorporated by this

20    reference as though fully stated herein.

21        56.    Cross-Defendant Van Over has breached the February 2011 Sales Agreement by

22    failing and refusing to comply with the provisions of that agreement, including but not limited to

23    failing and refusing to assume responsibility and liability for any hazardous substances on, at, or

24    beneath the Site, and by failing and refusing to indemnify DOBBAS for the same.

25        57.    Cross-Defendant Van Over, through execution of the February 2011 Sales

26    Agreement, assumed all responsibility and liability for the hazardous substances on, at, beneath,

27    or emanating from the Site.

28    / / /

1      58.    Cross-Defendant Van Over, through execution of February 2011 Sales Agreement,

2 also agreed to indemnify, defend, and hold harmless DOBBAS against claims, costs, cost

3 recovery actions, government orders, expenses, fees, losses, penalties, liens, related to or arising

4 from the hazardous substances on, at, beneath or emanating from the Site, regardless of when the

5 claims arose.

6      59.    DOBBAS has delivered a written demand on Cross-Defendant Van Over,

7 demanding his compliance with the February 2011 Sales Agreement.

8      60.    DOBBAS has performed all conditions, covenants and promises required of

9 DOBBAS in accordance with the terms and conditions of the February 2011 Sales Agreement.

10      61.    As a direct and proximate result of Cross-Defendant Van Over's breach of the

11 February 2011 Sales Agreement, DOBBAS has incurred and will incur, costs and expenses and

12 has suffered and will suffer direct, indirect, consequential, general, and special damages,

13 attorneys' fees, and interest thereon in an amount according to proof at trial.

14      **XV.   PRAYER FOR RELIEF**

15      WHEREFORE, DOBBAS prays that judgment be entered for DOBBAS and against all

16 CROSS-DEFENDANTS as follows:

17      1.    For judgment that CROSS-DEFENDANTS are jointly and severally liable without

18 regard to fault pursuant to CERCLA section 107(a), 42 U.S.C. section 9607(a), for all response

19 costs incurred as a result of the release and threatened release of hazardous substances at and

20 from the Site, in an amount according to proof;

21      2.    For contribution pursuant to CERCLA section 113(f), 42 U.S.C. section 9613(f),

22 in the amount of any judgment entered or settlement approved in favor of CROSS-

23 DEFENDANTS, or any other party, against DOBBAS for costs incurred and/or to be incurred in

24 response to the release and/or threatened release of hazardous substances at or from the Site;

25      3.    For contribution and indemnification pursuant to HSAA section 25300 *et seq,* for

26 all costs incurred and/or to be incurred by DOBBAS in response to the release and/or threatened

27 release of hazardous substances at or from the Site;

28     / / /
00010742.9

1    4.    For award of money damages as compensation for economic and non-economic

2  harm in the amount to be determined by proof at trial;

3    5.    For litigation expenses and costs of suit incurred herein, including reasonable

4  attorney's fees and expert fees;

5    6.    For an award of interest at the maximum legal rate on any and all damages from

6  the earliest date permitted by law;

7    7.    For a declaration and judgment of this Court in favor of DOBBAS and against all

8  CROSS-DEFENDANTS:

9        a.    Awarding monetary damages to DOBBAS as alleged herein;

10       b.    Requiring CROSS-DEFENDANTS to indemnify and hold harmless

11             DOBBAS from and against all claims, losses, liabilities, and expenses

12             incurred by DOBBAS as a result of CROSS-DEFENDANTS' acts and/or

13             omissions, including, but not limited to any and all existing and future

14             claims by third parties relating to such contamination;

15       c.    Retaining jurisdiction to effectuate a declaration that CROSS-

16             DEFENDANTS are liable for all costs that DOBBAS may incur to respond

17             to the release and/or threatened release of hazardous substances at and from

18             the Site; and

19    8.    For such other and further relief as the Court deems just and proper.

20  Dated: June 10, 2014                    KING WILLIAMS & GLEASON LLP

21

22                                          By: _____
23                                              Jennifer Hartman King
                                                Nicole R. Gleason
24                                              Shelby M. Gatlin

25                                          Attorneys for Defendant JIM DOBBAS, INC.

26

27

28

# EXHIBIT A

## AGREEMENT OF PURCHASE AND SALE

This Agreement of Purchase and Sale ("**Agreement**"), made this _11_ +h day of February, 2011(the "**Effective Date**"), is entered into by and between **Jim Dobbas, Inc, a California corporation** ("**Seller**"), and **David van Over, an individual as an unmarried man** ("**Buyer**").

### Recitals

A. Seller is the owner of an undivided fifty percent (50%) interest in that certain real property located in the unincorporated community of Elmira ("**City**"), Solano County ("**County**"), State of California, commonly known as APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on Exhibit A attached hereto (the "**Real Property**"). The Property is adjacent to, or nearby, a Union Pacific Railroad rail spur.

B. The Real Property has constructed thereon two (2) buildings (the "Buildings") containing a total of approximately 18,216 square feet, related improvements (collectively, the "**Improvements**"). If, and to the extent Seller has mineral or other rights in the Property ("**Additional Property Rights**"), such rights are intended to be transferred to Buyer. The Real Property, Improvements and Additional Property Rights are hereinafter collectively referred to as the "**Property**".

C. Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property pursuant to the terms of this Agreement.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants contained herein, the parties agree as follows:

### Agreement

1. _Purchase and Sale_. Seller agrees to sell and convey to Buyer, and Buyer agrees to purchase from Seller, the Property on the terms set forth in this Agreement.

2. _Purchase Price_. The purchase price (**"Purchase Price"**) for the Property shall be One Dollar ($1.00) and shall be payable at the Transfer of Title (defined below).

3. _Transfer of Title_. For purposes of this Agreement, **"Transfer of Title"** shall be defined as the date that the Quit Claim Deed is recorded in the Official Records of the County. The Transfer of Title shall occur on the Effective Date unless extended by the mutual written consent of the parties.

4. _Condition of Title_. Title to the Property shall be conveyed to Buyer by Seller by a quit claim deed, which shall be in the form attached hereto as Exhibit B ("Quit

-1-

1141071.4
2/11/11

Claim Deed"). Buyer agrees and acknowledges that it is taking title subject to the Deed Restriction and Environmental Lien described in Section 8; all real estate taxes and assessments which are liens upon the property; all applicable laws, ordinances, rules; all governmental regulations (including, but not limited to those relative to building, zoning and land use) affecting the development, use, occupancy or enjoyment of the property; all matters apparent from the inspection of the property; and all other title matters affecting the property, whether or not of record (collectively, **"Approved Condition of Title"**).

5. Costs and Expenses. Buyer and Seller shall equally share the cost of: (i) any local transfer tax imposed by the City, and (ii) any documentary transfer tax imposed by the County.

6. Prorations.

(a) Taxes/Assessments. At the Transfer of Title, Seller shall pay the 2011 second installment of real estate taxes and assessments for the Property. From and after the Effective Date, Buyer shall be responsible for all real estate taxes, assessments, supplemental taxes or assessment bonds related to the Property and Seller shall be released from any and all obligations thereunder.

(b) Other Expenses. All other expenses for the Property shall be prorated as of 11:59 p.m. on the day prior to the Transfer of Title between the parties based upon the latest available information.

(c) Corrections. If any errors or omissions are made regarding adjustments and prorations as set forth herein, the parties shall make the appropriate corrections promptly upon discovery thereof. If any estimates are made at the Transfer of Title regarding adjustments or prorations, the party shall make the appropriate correction promptly when accurate information becomes available. Any corrected adjustment or proration shall be paid in cash to the party entitled thereto.

7. Review of Documents and Materials. Buyer acknowledges that due to time constraints, Seller cannot provide all of the documents in its possession concerning the Property to Buyer. Within ten (10) business days following the Effective Date, Seller shall make available to Buyer, those documents which Buyer may reasonably request, such request to be made in writing within five (5) business days following the Effective Date (collectively, **"Documents and Materials"**). Seller makes no representation or warranty regarding the truth or accuracy of the Documents and Materials. All such documents and materials shall be subject to that certain Bilateral Confidentiality Agreement with an effective date of February 1, 2011 between the parties.

1141071.4
2/11/11

8.  Environmental Disclosures.

(a) Deed Restriction.  The Property is subject to that certain Covenant to Restrict Use of Property dated October 27, 1995 ("Deed Restriction").  Buyer acknowledges its receipt of a copy of the Deed Restriction and agrees and acknowledges that it is taking the Property subject to the Deed Restriction.  Buyer agrees and acknowledges that Seller will have no liability for the performance of any obligations required by the Deed Restriction following the Effective Date and that Buyer will assume any liability Seller has related to or arising from the Deed Restriction following the Effective Date. Buyer acknowledges that the land described herein contains hazardous substances.  Such condition renders the land and the owner, lessee, or other possessor of the land subject to requirements, restrictions, provisions, and liabilities contained in Chapter 6.5 and Chapter 6.8 of Division 20 of the Health and Safety Code.  This statement is not a declaration that a hazard exists.

(b) Former Uses/Hazardous Substances.  As previously disclosed in the Letter of Intent dated February 7, 2011, the Property is a former wood treatment facility. Operations at the Property included treating lumber with preservative solutions containing arsenic, chromium and copper.  Investigations by third parties have shown that soils on the Property have been affected by these inorganic metals.  Groundwater beneath the Property and beneath adjacent properties has also been contaminated by chromium, copper and arsenic.  The cost to complete the investigation, remediation and monitoring of the hazardous substances associated with the former wood treatment facilities is uncertain. The California Department of Toxic Substances Control ("DTSC") has jurisdiction over the environmental conditions at the Property and has been providing oversight since approximately 1982.  A Proof of Claim was filed by DTSC in the bankruptcy proceedings of the former owner, Collins and Aikman Products.

(c) Environmental Lien.  On November 22, 2010, a lien was recorded by DTSC against Seller's interest in the Property in the amount of $883,348 ("Environmental Lien").  Buyer acknowledges its receipt of a copy of the Environmental Lien and agrees and acknowledges that it is taking the Property subject to the Environmental Lien.  Buyer agrees and acknowledges that Seller will have no liability for the Environmental Lien following the Effective Date and that Buyer will assume any liability Seller has for the Environmental Lien following the Effective Date.

(d) Environmental Disclosure Documents.  Additional information concerning the above described hazardous substances on and around the Property has been provided by Seller to Buyer, including, but not limited to, the documents listed on Exhibit "C", "Environmental Disclosure Documents." Buyer acknowledges that third parties, rather than Seller, have performed the majority of the investigation, remediation and monitoring activities at the Property and as such Seller does not have many of the technical work plans or reports that describe environmental conditions on the Property.

1141071.4
2/11/11

-3-

As required by California Health & Safety Code section 25359.7, Buyer acknowledges that it has been advised in writing that a release of hazardous substances has come to be located on or beneath the Property.

Buyer's Initials:

9. "As-Is" Purchase. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE PROPERTY IN ITS PRESENT "AS IS/WHERE IS WITH ALL FAULTS" CONDITION AND WITH ALL DEFECTS (INCLUDING SOIL AND GROUNDWATER CONTAMINATION) AND NEITHER SELLER NOR ANY EMPLOYEE OR AGENT OF SELLER HAS MADE OR WILL MAKE, EITHER EXPRESSLY OR IMPLIEDLY (AND SELLER SPECIFICALLY NEGATES AND DISCLAIMS) ANY REPRESENTATIONS, GUARANTIES, PROMISES, STATEMENTS, ASSURANCES OR WARRANTIES OF ANY KIND CONCERNING THE PROPERTY. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS THE RIGHT TO INVESTIGATE THE PROPERTY PRIOR TO THE EFFECTIVE DATE AND TO PERFORM ANY AND ALL REASONABLE TESTS, INCLUDING ENVIRONMENTAL SAMPLING, ON THE PROPERTY TO DETERMINE THE CONDITION OF THE PROPERTY, FEASIBILITY OF THE PROPERTY FOR BUYER'S INTENDED USE THEREOF AND ANY OTHER PAST, PRESENT OR FUTURE MATTER RELATING TO THE PROPERTY WHICH MAY AFFECT THE PROPERTY, BUYER'S LIABILITY OR ITS CURRENT OR FUTURE USE, HABITABILITY, VALUE OR DESIRABILITY.

Buyer's Initials:

10. Buyer's Compliance with Environmental Regulatory Directives, Orders and Applicable Environmental Laws. Buyer agrees and acknowledges that it is assuming responsibility and liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date and that Seller will have no liability for the hazardous substances on, at, beneath or emanating from, the Property following the Effective Date. Commencing on the Effective Date, Buyer shall, at its sole cost, promptly comply with all applicable environmental laws (whether in existence as of the Effective Date or thereafter promulgated) and all applicable regulatory agency directives, orders and policies pertaining to the Property and/or related to or arising from hazardous substances on, at, beneath or emanating from, the Property. Buyer agrees that it shall promptly provide written notice to DTSC in the form of the letter attached as Exhibit "D", with a copy to Seller, of its interest in the Property, and assumption of responsibility for compliance with all laws as set forth herein.

11. Buyer's Indemnification of Seller. Commencing on the Effective Date, Buyer shall indemnify, defend and hold harmless Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by

-4-

1141071.4
2/11/11

DTSC even if such orders are issued or threatened on or after the Effective Date, but before the Transfer of Title, expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement. Buyer agrees and acknowledges that the obligations pursuant to this Section 11 shall survive the Transfer of Title.

12. <u>Buyer's Release of Seller</u>. Commencing on the Effective Date, Buyer shall release Seller (and its officers, shareholders, directors, employees, representatives and agents) against claims, costs, cost recovery actions, government orders (including, but not limited to, any orders issued or threatened by DTSC) expenses, fees (including, but not limited to Attorneys' fees or consultant fees), losses, penalties, liens (including, but not limited to, the Environmental Lien), judgments or damages (collectively, "Claims") related to or arising from the hazardous substances on, at, beneath or emanating from, the Property regardless of whether such Claims arose before or after the Effective Date, the Deed Restriction or challenges by third parties to validity or enforceability of this Agreement. This release is intended by Buyer to be a general release. Buyer is aware of the provisions of California Civil Code Section 1542, which reads as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

Buyer hereby expressly waives all the benefits of Section 1542 and any other similar law of any jurisdiction. Buyer understands and further agrees that it may later discover facts different from, or in addition to, those which it now believes to be true, but nonetheless agrees herein that this Agreement shall be and remain in effect in all respects notwithstanding such different or additional facts or Buyer's discovery thereof. Nevertheless, Buyer intends to release and forever discharge Seller as set forth above.

To the best of Seller's actual knowledge (without the duty to investigate) at the time of the Effective Date, there are no impending liens or claims against the Property other than those previously described in Section 8 of this Agreement.

13. <u>Notices</u>. All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by electronic facsimile and shall be deemed received upon the earlier of (i) if personally delivered, the date of delivery to the address of the person to receive such notice, (ii) if mailed, on the date of

1141071.4
2/11/11

-5-

posting by the United States Post Office, or (iii) if given by electronic facsimile, when received by the other party.

TO SELLER:        Jim Dobbas, Inc.
                             300 Taylor Road
                             Newcastle, CA 95658
                             Attention:  Don Dobbas
                             Facsimile:  (916) 663-4376

                             With a copy to:
                             Nicole R. Gleason
                             Downey Brand LLP
                             621 Capitol Mall, 18th Floor
                             Sacramento, CA 95814
                             Facsimile:  (916) 520-5743

TO BUYER:        David van Over
                             216 F Street #108
                             Davis, CA 95616
                             Facsimile:  (530) 231-6372

Notice of change of address shall be given by written notice in the manner described in this Section.

14. Brokers.  Buyer and Seller represent and warrant that neither party has used a real estate broker in connection with the sale of the Property and no real estate brokerage commission is due or payable upon the consummation of the transactions herein.  If any claims for brokers' or finders' fees for the consummation of this Agreement arise, then Buyer hereby agrees to indemnify, hold harmless and defend Seller from and against such claims if they shall be based upon any statement, representation or agreement by Buyer, and Seller hereby agrees to indemnify, hold harmless and defend Buyer if such claims shall be based upon any statement, representation or agreement made by Seller.

15.  Miscellaneous.

(a) Partial Invalidity.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid, and shall be enforced to the fullest extent permitted by law.

(b) Waivers.  No waiver of any breach of any covenant or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof, or of

1141071.4
2/11/11

-6-

any other covenant or provision herein contained.  No extension of time for performance of any obligation or act shall be deemed an extension of time for performance of any other obligation or act except those of the waiving party, which shall be extended by a period of time equal to the period of the delay.

(c) Discharge of Seller's Obligations.  The acceptance of the Quit Claim Deed by Buyer shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed pursuant to the provisions of this Agreement.

(d) Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the parties hereto.

(e) Professional Fees.  If either party commences an action against the other to interpret or enforce any of the terms of this Agreement or because of the breach by the other party of any of the terms hereof, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs and expenses and court costs and other costs of action incurred in connection with the prosecution or defense of such action, whether or not the action is prosecuted to a final judgment.  For the purpose of this Agreement, the terms "attorneys' fees" or "attorneys' fees and costs" shall mean the fees and expenses of counsel to the parties hereto, which may include printing, photostating, duplicating and other expenses, air freight charges, and fees billed for law clerks, paralegals, librarians and others not admitted to the bar but performing services under the supervision of an attorney.  The terms "attorneys' fees" or "attorneys' fees and costs" shall also include, without limitation, all such fees and expenses incurred with respect to appeals, arbitrations and bankruptcy proceedings, and whether or not any action or proceeding is brought with respect to the matter for which said fees and expenses were incurred.  The term "attorney" shall have the same meaning as the term "counsel."

(f) Entire Agreement.  This Agreement (including the preamble, Recitals and all Exhibits attached hereto) is the final expression of, and contains the entire agreement between, the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto with the exception of that certain Bilateral Confidentiality Agreement effective as of February 1, 2011.  This Agreement may not be modified, changed, supplemented, superseded, canceled or terminated, nor may any obligations hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein.  The parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto and lawful assignees.

(g) Assignment.  Prior to the Transfer of Title, Buyer may not assign its right, title or interest in this Agreement to any other party without prior written notice to Seller.

1141071.4
2/11/11

-7-

(h) Time of Essence.  Seller and Buyer hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof.

(i) Construction.  Headings at the beginning of each paragraph and subparagraph are solely for the convenience of the parties and are not a part of the Agreement.  Whenever required by the context of this Agreement, the singular shall include the plural and the masculine shall include the feminine and vice versa.  This Agreement shall not be construed as if it had been prepared by one of the parties, but rather as if both parties had prepared the same.  Buyer acknowledges and agrees that Downey Brand LLP has been retained solely to represent the interests of Seller. Unless otherwise indicated, all references to paragraphs, sections, subparagraphs and subsections are to this Agreement.  All exhibits referred to in this Agreement are attached and incorporated by this reference.

(j) Governing Law.  The parties hereto acknowledge that this Agreement has been negotiated and entered into in the State of California.  The parties hereto expressly agree that this Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of California.

(k) Possession of Property.  Subject to the Approved Condition of Title, Buyer shall be entitled to the possession of the Property immediately following the Effective Date.

(l) Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.  For purposes of executing this Agreement, a facsimile or PDF signature shall have the same force and effect as the original.

-8-

      (m)    <u>Limited Liability</u>.  The obligations of Seller, its agents, representatives or employees, arising by virtue of this Agreement shall be limited to the interest of Seller in the Property and there shall be no recourse against any other assets of Seller, its agents, representatives or employees.  In the event of a Seller breach, Buyer's sole and absolute remedy (regardless of the nature of the cause of action alleged) shall be specific performance.

      IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**BUYER:**

David van Over,
an individual as an unmarried man

**SELLER:**

**Jim Dobbas, Inc., a California corporation**

By: _____
Name: Donald James Dobbas
Its: President

EXHIBIT A - DOBBAS CROSSCLAIM
**ER-735**

## EXHIBIT A

### Description of Real Property

The following described parcels of land are located within the County of Solano, State of California..

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor J. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

-1-

11411071.4
2/11/11

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the westerly line of a street, extended Northerly; thence Southerly and along the westerly line of a street, extended Northerly to the northerly line of Edwards Street and the place of beginning. All as said streets herein referred to are laid down and designated on that certain map entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF W. C. PARKER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by E. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended Northerly, and the northerly line of County Road Number 246 (Haldaner Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears North 0° 22' 08" West, 30 feet and South 89° 55' 06" West, 397.60 feet from the southeast corner of the Northeast One-Quarter of Section 19, T6N, R1E, M.D.B. & M.; thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad; thence along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet to the southerly line of said Binghampton Street; thence, along said southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line of the aforementioned "A" Street; thence along the prolongation of said westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the point of beginning.

-2-

1141071.4
2/11/11

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

Recorded in Official Records,
Solano County
Doc#: 201100013729
2/14/2011    3:22 PM

C

✱ STATE OF CALIFORNIA )
   COUNTY OF PLACER )ss

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

**QUITCLAIM DEED**

FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation ("Grantor"),
hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over,
an unmarried man ("Grantee"), all of Grantor's right title and interest (subject to that certain Covenant to
Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all
appurtenant rights, including mineral rights) in and to that certain real property, commonly known as
APNs 0142-042-010, 0142-010-130 and 0142-010-140, and more particularly described on Exhibit A
attached hereto and incorporated by this reference (the "Property").

IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the _11_ day of February,
2011.

Jim Dobbas, Inc., a California
Corporation

*The undersigned grantor(s) declare(s)
DOCUMENTARY TRANSFER TAX is $101.20
computed on Full value of Property conveyed or
computed on Full value less value of Liens and
encumbrances remaining at time of sale
unincorporated area city of _____*

By _____
Donald James Dobbas

Its: _____
President

✱

On _FEB 11 2011_ before me, _R. L. ROGERS, NOTARY PUBLIC_
(Name and Title of Officer)

personally appeared _DONALD JAMES DOBBAS_, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)
(Notary Officer)

R. L. ROGERS
Commission # 1835712
Notary Public - California
Placer County
My Comm. Expires Mar 8, 2013

TAX BILL To:
DAVID VAN OVER
216 F STREET #108
Davis, CA. 95616

# EXHIBIT A

## Description of Real Property

The following described parcels of land are located within the County of Solano, State of California.

### PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 106, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 806 feet to a points thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a points thence at a right angle Southeasterly 15 feet to a points thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 80.7 feet to the point of beginning.

### PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Westerly and along

CONTINUED

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended, Northerly to the northerly
line of Redwris Street and the place of beginning. All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF
W. C. PARKER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," Surveyed by
R. H. Marshall, Deputy County Surveyor, April 8th, 1870 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (Holdener Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 0° 23' 08"
West, 30 feet and South 89° 53' 06" West, 397.80 feet from the southeast
corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

11411156.2                          3

**EXHIBIT B**

**Quit Claim Deed**

RECORDING REQUESTED BY

and

WHEN RECORDED MAIL TO

Jim Dobbas, Inc.
P.O. Box 177
Newcastle, CA 95658

<div align="right">(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)</div>

**QUITCLAIM DEED**

FOR VALUABLE CONSIDERATION, Jim Dobbas, Inc., a California corporation ("**Grantor**"),
hereby RELINQUISHES, REMISES, RELEASES AND FOREVER QUITCLAIMS to David van Over,
an unmarried man ("**Grantee**"), all of Grantor's right title and interest (subject to that certain Covenant to
Restrict Use of Property dated October 27, 1995/Recorders No. 1995-00068154 and including all
appurtenant rights, including mineral rights) in and to that certain real property, commonly known as
APNs 0142-042-010, 0142-010-130 and 0142-010-140 and more particularly described on Exhibit A
attached hereto and incorporated by this reference (the "Property").

IN WITNESS WHEREOF, this Quitclaim Deed was executed on this the ___ day of February,
2011.

Jim Dobbas, Inc., a California
Corporation

By _____

   Donald James Dobbas
_____

Its: _____

   President
_____

On _____ before me, _____,
(Name and Title of Officer)

personally appeared _____, who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument

-3-

1141071.4
2/11/11

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (NOTARY SEAL)

     (Notary Officer)

-4-

1141071.4
2/11/11

## EXHIBIT C

### Environmental Disclosure Document

1. Covenant to Restrict Use of Property dated 10.27.95

2. 2007 BEC Appraisal of the Property

3. Settlement Agreement dated 1984

4. Continental Rail Bankruptcy documents

5. Removal Action Workplan, Draft Final dated October 2009

6. Sampling & Analysis Plan - April 2009

7. Remedial Investigation Report - July 2008

8. Imminent &Substantial Endangerment Determination and Cover Letter dated 11.09.06

9. Operation and Maintenance Agreement 2.26.96

10. Wickes Final Lien_11_22_10

11. Collins and Aikman Bankruptcy Amended Disclosure Statement for the First Amended Joint Plan

12. Background documents on Pacific Wood Preserving

13. 2010 Draft Imminent and Substantial Endangerment Determination and Consent Order and letter dated May 10, 2010

14. 2006 Draft Imminent or Substantial Endangerment Determination Order and Remedial Action Order and letter dated July 24, 2006

15. DTSC's Proof of Claim in the Collins and Aikman Bankruptcy dated January 10, 2006

16. DTSC's Supplement Statement in Support of Proof of Claim dated January 10, 2006

17. DTSC's Summary of Site Conditions, "9/6/06 Meeting between DTSC and Property Owners"

-5-

1141071.4
2/11/11

18. Asphalt Cap Report dated March 1, 2005

19. Pilot Study Work Plan dated March 18, 2005

-6-

1141071.4
2/11/11

**EXHIBIT D**

**DTSC Notice Letter**

February __, 2011

**VIA FEDERAL EXPRESS**

Department of Toxic Substances Control
1001 I Street
Sacramento, CA 95814-2828
Attention: Chief,
Northern California – Central Cleanup Operations Branch

Re:      **Former Wickes Forest Industries Site; 147 A Street, Elmira, California**

Dear Sir/Madam:

On February **(insert Transfer of Title date)**, 2011, I acquired Jim Dobbas, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00). On February **(Insert Transfer of Title date)**, 2011, I acquired Continental Rail, Inc.'s fifty percent (50%) interest in the above referenced property for one dollar ($1.00). I also agreed to comply with all applicable environmental laws and all applicable regulatory agency directives pertaining to the property and the releases from the former Wickes facility. In addition, I agreed to take the property subject to DTSC's lien on Jim Dobbas, Inc.'s interest in the property and assume any liability Jim Dobbas, Inc. has for the lien. I write to provide my contact information and to request a meeting with DTSC to discuss site conditions, my plans for the property and the agency's expectations.

Best Regards,

David van Over
216 F Street #108
Davis, CA 95616
Cell: 775.830.3888
Fax: 530.231.6372

cc: Elizabeth Yelland, DTSC (via E-Mail: EYelland@dtsc.ca.gov )
    Ray Leclerc, DTSC (via E-Mail: rleclerc@dtsc.ca.gov )
    Marilee Hanson, DTSC (via E-Mail: MHanson@dtsc.ca.gov )
    Don Dobbas, Jim Dobbas, Inc. (via E-Mail)
    Nicole Gleason, Downey Brand (via E-Mail)

-7-

1141071.4
2/11/11





# UNITED STATES DISTRICT COURT
# FOR THE
# EASTERN DISTRICT OF CALIFORNIA

**CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, ET AL.,**

**CLERKS CERTIFICATE OF ENTRY OF DEFAULT**

**2:14–CV–00595–WBS–EFB**

v.

**JIM DOBBAS, INC., ET AL.,**

**TO ALL COUNSEL:**

By application of Plaintiff and it appearing that the defendant having been duly served with process as appears from the record and papers on file herein; and having failed to appear, plead or answer Plaintiff's complaint within the time allowed by law; the default of the following Defendant(s) is/are hereby entered:

**Pacific Wood Preserving**

Counsel is/are referred to Rule 55(b), of the Federal Rules of Civil Procedure, and Local Rules 302(c)(19) and 230. If there is more then one defendant in this case, counsel are further referred to Fed. R. Civ. P. 54(b).



**IN TESTIMONY WHERE OF, I have hereunto subscribed my name and affixed the seal of the United States District Court for the Eastern District of California, on June 2, 2014.**

**MARIANNE MATHERLY**
**CLERK OF COURT**

**By:** /s/ G. Michel

**Deputy Clerk**

# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF CALIFORNIA

**CALIFORNIA DEPARTMENT OF TOXIC
SUBSTANCES CONTROL, ET AL.,**

v.

**JIM DOBBAS, INC., ET AL.,**

      **CLERKS CERTIFICATE OF
ENTRY OF DEFAULT**

      **2:14–CV–00595–WBS–EFB**

---

**TO ALL COUNSEL:**

    **By application of Plaintiff and it appearing that the defendant having been duly served with process as appears from the record and papers on file herein; and having failed to appear, plead or answer Plaintiff's complaint within the time allowed by law; the default of the following Defendant(s) is/are hereby entered:**

    **Continental Rail, Inc.**

**Counsel is/are referred to Rule 55(b), of the Federal Rules of Civil Procedure, and Local Rules 302(c)(19) and 230. If there is more then one defendant in this case, counsel are further referred to Fed. R. Civ. P. 54(b).**



**IN TESTIMONY WHERE OF, I have hereunto subscribed my name and affixed the seal of the United States District Court for the Eastern District of California, on June 2, 2014.**

**MARIANNE MATHERLY
CLERK OF COURT**

**By:** /s/ **G. Michel**

    **Deputy Clerk**

**ER-748**

1  KAMALA D. HARRIS, State Bar No. 146672
   Attorney General of California
2  TIMOTHY R. PATTERSON, State Bar No. 72209
   Supervising Deputy Attorney General
3  THOMAS G. HELLER (Counsel for service)
   State Bar No. 162561
4  DENNIS L. BECK, JR., State Bar No. 179492
   Deputy Attorneys General
5   300 South Spring Street, Suite 1702
   Los Angeles, CA 90013
6  Telephone:  (213) 897-2628
   Fax:  (213) 897-2802
7  E-mail:  Thomas.Heller@doj.ca.gov
8  *Attorneys for the California Department of Toxic*
   *Substances Control and the Toxic Substances*
9  *Control Account*

10

11              IN THE UNITED STATES DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13                     SACRAMENTO DIVISION

14

15

16  **CALIFORNIA DEPARTMENT OF TOXIC**      Case No.
    **SUBSTANCES CONTROL and the TOXIC**
17  **SUBSTANCES CONTROL ACCOUNT,**          **COMPLAINT FOR RECOVERY OF**
                                             **RESPONSE COSTS; DECLARATORY**
18                          Plaintiffs,      **RELIEF; INJUNCTIVE RELIEF;**
                                             **TREBLE DAMAGES; AND CIVIL**
19         v.                                **PENALTIES**

20                                           **(Comprehensive Environmental Response,**
    **JIM DOBBAS, INC., a California**        **Compensation, and Liability Act**
21  **corporation; CONTINENTAL RAIL, INC.,** **("CERCLA"), 42 U.S.C. § 9607(a) and**
    **a Delaware corporation; DAVID VAN**    **9613(g)(2), and supplemental state law**
22  **OVER, individually; PACIFIC WOOD**     **claims)**
    **PRESERVING, a dissolved California**
23  **corporation; and WEST COAST WOOD**
    **PRESERVING, LLC,  a Nevada limited**
24  **liability company,**

25                          Defendants.

26

27

28
                               1
                                              COMPLAINT

1    Plaintiffs, the California Department of Toxic Substances Control ("Department") and the

2    Toxic Substances Control Account (together "Plaintiffs"), allege as follows:

3                                    **JURISDICTION**

4        1.   This Court has jurisdiction under 28 U.S.C. sections 1331 and 1367, and under

5    section 113(b) of the Comprehensive Environmental Response, Compensation, and Liability Act

6    ("CERCLA"), 42 U.S.C. section 9613(b).

7                                      **VENUE**

8        2.   Venue is proper in this district under 42 U.S.C. section 9613(b) and 28 U.S.C. section

9    1391(b), because the releases and threatened releases of hazardous substances into the

10   environment that are at issue occurred in this judicial district.

11                              **INTRA-DISTRICT ASSIGNMENT**

12       3.   Under Local Rule 120(d), Plaintiffs are filing this action in the Sacramento Division

13   of the Eastern District because it arose in Solano County.

14                               **STATEMENT OF THE ACTION**

15       4.   Plaintiffs make a claim against Defendants under section 107(a) of CERCLA, 42

16   U.S.C. section 9607(a), for the recovery of response costs and interest on such response costs that

17   Plaintiffs have incurred in connection with releases and threatened releases of hazardous

18   substances, including arsenic, chromium, and copper, at, beneath, and/or from the approximately

19   7.5 acre property located northwest of the intersection of A Street and Holdener Road  in the

20   community of Elmira, Solano County, California.  The property has a street address of 147 A

21   Street, Elmira, California 95625, and is identified by Solano County Assessor's Parcel Number(s)

22   142-010-130, 142-010-140, and 142-042-010.  The property, and the areal extent of the hazardous

23   substances contamination that is, or has been, present at or has extended from the property, are

24   referred to herein as "the Site."

25       5.   Plaintiffs further make a claim for declaratory relief, under 28 U.S.C. section 2201

26   and section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), for a declaratory judgment that

27   each of the Defendants is jointly and severally liable to Plaintiffs  for future response costs

28

2

COMPLAINT

1   incurred by the Plaintiffs in responding to releases and threatened releases of hazardous

2   substances at, beneath, and/or from the Site.

3       6.   Plaintiffs also seek injunctive relief, treble damages, and civil penalties against

4   certain Defendants pursuant to a supplemental state law claim under Chapter 6.8 of Division 20

5   of the California Health and Safety Code, for the Defendants' failure to comply with an Imminent

6   or Substantial Endangerment Determination Order and Remedial Action Order that the

7   Department issued to those Defendants, concerning the releases and threatened releases of

8   hazardous substances referenced above.

9                              **PLAINTIFFS**

10      7.   The Department is a public agency of the State of California, organized and existing

11  under California Health and Safety Code section 58000 et seq.  The Department is responsible

12  under state law for determining whether there has been a release and/or threatened release of a

13  hazardous substance into the environment and for responding to releases and/or threatened

14  releases of a hazardous substance into the environment.

15      8.   The Toxic Substances Control Account is an account within the State of California

16  General Fund.  California Health and Safety Code section 25173.6 establishes the account, and

17  the director of the Department administers it.  Under California Health and Safety Code section

18  25361(a), the account shall be a party in any action for recovery of response costs or expenditures

19  incurred from the account under Chapter 6.8 of Division 20 of the California Health and Safety

20  Code.

21                             **DEFENDANTS**

22      9.   Defendant Jim Dobbas, Inc. ("Dobbas") is a California corporation, with its principal

23  place of business in Placer County, California.  It owned an undivided fifty percent interest in the

24  Site from on or about March 20, 1997 to on or about February 11, 2011, and conducted business

25  operations there during all or part of that time.

26      10.  Defendant Continental Rail, Inc. ("CRI") is a Delaware corporation.  Under Delaware

27  Code, title 8, section 510, its charter is presently void, and all powers conferred by Delaware law

28  on the corporation are presently inoperative.  It owned an undivided fifty percent interest in the

3

COMPLAINT

1   Site from on or about March 20, 1997 to on or about February 11, 2011, and conducted business

2   operations there during all or part of that time.

3       11.  Defendant David van Over ("Van Over") is a citizen of California residing in Solano

4   County, California.  He currently owns and operates the Site.

5       12.  Defendant Pacific Wood Preserving ("PWP") is a dissolved California corporation.  It

6   conducted business operations at the Site from about 1972 to on or about September 12, 1979,

7   and owned it from 1977 to on or about September 12, 1979.

8       13.  Defendant West Coast Wood Preserving, LLC ("West Coast Wood") is a Nevada

9   limited liability company, with its principal place of business in Kern County, California.  It is a

10  successor to Defendant PWP, as evidenced by the following facts:

11      •   PWP was incorporated in 1972.

12      •   The sole or primary shareholder of PWP was non-party Richard F. Jackson

13          (deceased March 2012).

14      •   Mr. Jackson elected to wind up and dissolve PWP on or about December 30,

15          1979.

16      •   Before PWP's dissolution, Mr. Jackson caused the formation of what is now

17          West Coast Wood Preserving, LLC, which was originally organized as Pacific

18          Wood Preserving of Bakersfield Inc. ("PWP-Bakersfield"), in October 1978.

19      •   On information and belief, Mr. Jackson was the sole or primary shareholder of

20          PWP-Bakersfield until his death in March 2012, just as he was the sole or

21          primary shareholder of PWP.

22      •   Mr. Jackson was a director of both PWP and PWP-Bakersfield.

23      •   Mr. Jackson was the President of PWP during most of all of its corporate

24          existence, and was also the President of PWP-Bakersfield from at least

25          September 1980 until his death.

26      •   In 1979, PWP-Bakersfield (now West Coast Wood) started business operations

27          on  property that PWP owned in Bakersfield, California, and has operated at

28          that location through the present.

4

COMPLAINT

- Since 1979, PWP-Bakersfield (now West Coast Wood) has engaged in substantially the same wood preserving business at a facility in Bakersfield, California as PWP conducted at the Site in Elmira, California until 1979.

- PWP conveyed its Bakersfield, California property directly to PWP-Bakersfield in September 1981 for unknown consideration.

- PWP's transfer of its Bakersfield, California property to PWP-Bakersfield occurred almost two years *after* PWP certified that it had dissolved.

- PWP-Bakersfield (now West Coast Wood), which incorporated in October 1978, has stated in company brochures and elsewhere that it has operated since 1972, the year of PWP's incorporation.

- PWP-Bakersfield (West Coast Wood) has stated on its website that the proceeds from PWP's sale of the assets of its facility in Elmira, California were used to start the PWP-Bakersfield facility in Bakersfield, California.

- On or about November 19, 2013, PWP-Bakersfield filed Articles of Conversion with the Nevada Secretary of State that provided for the conversion of PWP-Bakersfield to West Coast Wood.

- The Articles of Conversion attached a plan of conversion stating that all debts, liabilities, and obligations of PWP-Bakersfield "shall be assumed and continue as debts, liabilities, and obligations" of West Coast Wood.

## GENERAL ALLEGATIONS

14.  Defendant PWP conducted wood preserving operations at the Site from approximately 1972 through on or about September 12, 1979.

15.  From on or about September 12, 1979 through approximately 1982, non-party Collins & Aikman Products, LLC, a cancelled Delaware limited liability company under Delaware Code, title 6, section 18-203 (formerly known as Collins & Aikman Products Co., and the successor by merger to The Wickes Corporation) ("C&A Products") conducted wood preserving operations at the Site.

5

16.  At various times since 1972, hazardous substances within the definition of section 101(14) of CERCLA, 42 U.S.C. section 9601(14), were released into the environment at and from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. section 9601(22).  These hazardous substances included arsenic, chromium, and copper, which were constituents of wood preserving chemicals used at the Site.

17.  From the 1980's through 2005, C&A Products took various actions under oversight of the Department and its predecessor agency to address environmental contamination at, around, and/or beneath the Site.  Those actions included, among other things, soil excavation, installing an asphalt cap over contaminated soils, constructing a building and a drainage system over another contaminated area of the Site, installing and operating a groundwater extraction and treatment system, and groundwater monitoring.

18.  On or about October 27, 1995, the Department and C&A Products recorded a Covenant to Restrict Use of Property ("Land Use Covenant") concerning the Site under California Health and Safety Code sections 25355.5 and 25356.1 that restricted the permissible uses of the Site based on environmental conditions there.  A copy of the Land Use Covenant is attached as Exhibit A and incorporated by this reference.

19.  On or about March 20, 1997, C&A Products sold the Site to Defendants Dobbas and CRI, while continuing to take actions to address environmental contamination at, around, and/or beneath the Site.

20.  On or about May 17, 2005, C&A Products (then known as Collins & Aikman Products Co.) filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Michigan, Case No. 05-55932.  That bankruptcy case was jointly administered with the bankruptcy cases of numerous other debtors under Case No. 05-55927.

21.  In  July or August 2005, while in Chapter 11 bankruptcy proceedings, C&A Products stopped operating the groundwater extraction and treatment system, and stopped taking other action to address contamination at, around, and/or beneath the Site.  The Department was verbally notified that C&A Products had stopped operating the groundwater extraction and treatment system in early November 2005.

COMPLAINT

22.  In 2006, the Department requested that Defendants Dobbas and CRI, the then-owners and operators of the Site, resume such actions to address contamination.

23.  In December 2007, Defendant Dobbas agreed to perform certain actions at the Site, which included limited maintenance of the asphalt cap and repair of a roof drainage system for a building over an area that was a source of contamination at the Site.  However, Defendants Dobbas and CRI failed and refused to perform most of the actions formerly conducted by C&A Products to address contamination at, around, and/or beneath the Site.

24.  On or about October 16, 2008, CRI filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of California (Sacramento), Case No. 08-34986 (closed December 7, 2010).

25.  In July 2010, the Department finalized a Removal Action Workplan for the Site that called for contaminated soil excavation, off-site disposal, backfilling, confirmation sampling, demolition of the groundwater extraction and treatment system, and long-term groundwater monitoring.

26.  On or about February 11, 2011, Defendants Dobbas and CRI sold the Site to Defendant Van Over for $2.00.

27.  On March 16, 2011, the Department issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order ("I/SE Order") ordering Defendants Dobbas, CRI, and Van Over to conduct the actions described in the Removal Action Workplan, and to take other response actions.  A copy of the I/SE Order is attached as Exhibit B and incorporated by this reference.

28.  Defendants Dobbas, CRI, and Van Over failed to complete the actions described in the Removal Action Workplan, and to take other response actions described in the I/SE Order.

29.  Based on the above, from November 2005 to the present, the Department has taken "response" actions of the Site, as that term is defined in section 101(25) of CERCLA, 42 U.S.C. section 9601(25), related the release and/or threatened release of hazardous substances at the Site. The response actions included, inter alia, efforts to repair and restart the groundwater extraction and treatment system, completion of a remedial investigation for site soils, preparation of the

7

1  Removal Action Workplan, implementation of the Removal Action Workplan in October and

2  November 2011, groundwater monitoring, and other tasks.

3       30.  As a result of taking response actions at the Site, Plaintiffs have incurred response

4  costs related to the release and/or threatened release of hazardous substances at, around, and/or

5  beneath the Site.

6       31.  Plaintiffs' unpaid costs related to the Site from November 2005 through September

7  2013 total $2,202,176.92, exclusive of interest.

8       32.  Plaintiffs have incurred and expect to continue to incur additional response costs

9  related to the release and/or threatened release of hazardous substances at, beneath, and/or from

10  the Site.

11                          **FIRST CLAIM FOR RELIEF**

12                  (Claim for Recovery of Response Costs Pursuant to

13                  Section 107(a) of CERCLA, 42 U.S.C. § 9607(a))

14                          (Against All Defendants)

15       33.  Plaintiffs incorporate the allegations in each of the preceding paragraphs as though

16  fully set forth herein.

17       34.  The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C.

18  section 9601(9).

19       35.  Each Defendant is a "person," within the meaning of section 101(21) of CERCLA, 42

20  U.S.C. section 9601(21).

21       36.  The Department is a "State" for purposes of recovery of response costs under section

22  107(a) of CERCLA, 42 U.S.C. section 9607(a).  Under this section, the Department may also

23  recover interest on response costs incurred.

24       37.  Each of the Defendants is an "owner" and/or "operator" of the Site, or was an

25  "owner" and/or "operator" of the Site "at the time of disposal of a[] hazardous substance" there,

26  as those terms are used in section 107(a) of CERCLA, 42 U.S.C. section 9607(a).

27       38.  Plaintiffs have incurred costs in responding to the release or threatened release of

28  hazardous substances at or from the Site in a manner that satisfies the requirements of Section

                                    8

COMPLAINT

107(a)(4) of CERCLA, 42 U.S.C. section 9607(a)(4), in that the costs arose from activities that are not, and have not been, inconsistent with the applicable requirements of the National Contingency Plan, 40 C.F.R. Part 300.

39.   Each of the Defendants is jointly and severally liable, without regard to fault, under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for Plaintiffs' costs incurred in response to the release or threatened release of hazardous substances at or from the Site.

**SECOND CLAIM FOR RELIEF**

(Declaratory Relief Pursuant to Section 113(g)(2) of

CERCLA, 42 U.S.C. § 9613(g)(2))

(Against All Defendants)

40.  Plaintiffs incorporate the allegations of each of the preceding paragraphs as though fully set forth herein.

41.   Under section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that each of the Defendants is jointly and severally liable in any subsequent action or actions by the Plaintiffs to recover any further costs incurred in response to the release and/or threatened release of hazardous substances into the environment at or from the Site.

**THIRD CLAIM FOR RELIEF**

(Failure and Refusal to Comply with Imminent or Substantial Determination Order

and Remedial Action Order – California Health and Safety Code sections

25355.5, 25358.3, 25359, 25359.2, 25367)

(Against Defendants Dobbas, CRI, and Van Over)

42.  Plaintiffs incorporate the allegations of each of the preceding paragraphs as though fully set forth herein.

43.  The Department issued the I/SE Order to Defendants Dobbas, CRI, and Van Over under, inter alia, Chapter 6.8 of Division 20 of the California Health and Safety Code, specifically sections 25355.5 and 25358.3.

9

44.   California Health and Safety Code section 25358.3(f) provides that upon the failure of any person to comply with any order issued under sections 25355.5 or 25358.3, the director may request the Attorney General to petition for the issuance of a temporary restraining order or preliminary or permanent injunction requiring that person to comply with the order.

45.   California Health and Safety Code 25359(a) provides that any person liable for a release or threatened release of hazardous substances who "fails, without sufficient cause…to properly provide a removal or remedial action upon order of the director…pursuant to Section 25358.3," is liable for "damages equal to three times the…costs incurred by the state account…as a result of the failure to take proper action."  The referenced "state account" is Plaintiff Toxic Substances Control Account.

46.   California Health and Safety Code section 25359.2 provides that any person who does not comply with an order under section 25355.5 or 25358.3 without sufficient cause shall be subject to a civil penalty of not more than twenty-five thousand dollars ($25,000) for each day of noncompliance.

47.   California Health and Safety Code section 25367(c) provides that any person who refuses, without sufficient cause, any activity authorized under section 25358.1 or 25358.3 is subject to a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each separate violation, or for each day of a continuing violation.

48.   Defendants Dobbas, CRI, and Van Over have failed and refused, without sufficient cause, to comply with the I/SE Order, including, without limitation, as follows:

- Defendants failed and refused to restore groundwater monitoring at the Site, as specified in section 5.1 of the I/SE Order.
- Defendants failed and refused to implement the Removal Action Workplan for the Site, as specified in section 5.2 of the I/SE Order.
- Defendants failed and refused to conduct operation and maintenance activities, including maintenance of the asphalt cap, as specified in section 5.4 of the I/SE Order.

10

- • Defendants failed and refused to demonstrate and maintain financial assurance for operation and maintenance and monitoring, as specified in section 5.9 of the I/SE Order.
- • Defendant Van Over has used and is using the Site as a residence, in violation of section 5.3 of the I/SE Order and the Land Use Covenant.

49. Plaintiffs have incurred costs as a result of the failure of Defendants Dobbas, CRI, and Van Over to take proper action as directed in the I/SE Order.

50. The director of the Department has requested the Attorney General to petition for injunctive and other relief concerning the failure and refusal of Defendants Dobbas, CRI, and Van Over to comply with the I/SE Order.

**PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

A. For a judgment that each Defendant is jointly and severally liable without regard to fault to the Department under section 107(a) of CERCLA, 42 U.S.C. section 9607(a), for all response costs incurred by the Plaintiffs as a result of the release and threatened release of hazardous substances from the Site, in an amount to be proven at trial, but at least $2,202,176.92;

B. For interest on the above sums from each Defendant as provided under section 107(a) of CERCLA, 42 U.S.C. section 9607(a);

C. For a declaratory judgment that each Defendant is jointly and severally liable without regard to fault to the Plaintiffs under section 113(g)(2) of CERCLA, 42 U.S.C. section 9613(g)(2), for all future response costs incurred by the Plaintiffs as a result of the release and threatened release of hazardous substances at and/or from the Site;

D. For an injunction ordering Defendants Jim Dobbas, Inc., Continental Rail, Inc., and David van Over to comply with the I/SE Order, including, without limitation, by performing groundwater monitoring and operation and maintenance activities, including asphalt cap maintenance, as required by the I/SE Order, and by obtaining financial assurance as required by that order;

11

1   E. For an injunction ordering Defendant David van Over to stop using the Site as a

2 residence, in violation of the I/SE Order and the Land Use Covenant;

3   F. For treble damages against Defendants Jim Dobbas, Inc., Continental Rail, Inc., and

4 David van Over under California Health and Safety Code section 25359, in an amount to be

5 proven at trial;

6   G. For civil penalties against Defendants Jim Dobbas, Inc., Continental Rail, Inc., and

7 David van Over under California Health and Safety Code sections 25359.2 and/or 25367, in an

8 amount to be proven at trial;

9   H. For enforcement costs against each Defendant, including costs of this suit and

10 attorneys' fees; and

11   I. For all other relief the Court deems just and appropriate.

12

13 Dated:  March 3, 2014     Respectfully submitted,

14           KAMALA D. HARRIS
           Attorney General of California
15           TIMOTHY R. PATTERSON
           Supervising Deputy Attorney General
16

17           /s/ Thomas G. Heller

18           THOMAS G. HELLER
           DENNIS L. BECK, JR.
19           Deputy Attorneys General
           *Attorneys for the California Department of*
20           *Toxic Substances Control and the Toxic*
           *Substances Control Account*
21

22

23

24

25

26

27

28

<div align="center">12</div>

Exhibit A

1995-00068154
Recorded By:            03 RecFee
COLLINS & AIKMAN           SurMon
                          NoPCOR
Official Records          DTTax
County of Solano          Free   $. 0
Robert Blechschmidt       OvrSht
Assessor/Recorder

14:36   27-OCT-95   AR16   11   Pgs

Recording requested by:
Collins & Aikman Products Co.
701 McCullough Drive
Charlotte, North Carolina 28262

When recorded, mail to:
Department of Toxic Substances Control
Region 1
10151 Croydon Way, Suite 3
Sacramento, California 95827
Attention: James L. Tjosvold

## COVENANT
## TO RESTRICT USE OF PROPERTY

### Wickes Forest Industries
### Elmira, Solano County, California

---

This Covenant and Agreement ("Covenant") is made on this  27th  day of  October  , 1995, by Collins & Aikman Products Co. ("Covenantor"), a Delaware corporation, which is the owner of record of certain real property situated at 147 A Street in the City of Elmira, County of Solano, State of California, described in Exhibit "A" attached hereto and incorporated herein by this reference ("the Property") and the California Department of Toxic Substances Control ("DTSC"), with reference to the following facts:

A.    The Property is the real property known as Wickes Forest Industries, which has been contaminated.

B.    The Property was formerly used as a wood treatment facility.   During the operational years, wood was treated with preservative solutions containing arsenic, chromium, and copper. These metals have contaminated the soils.   Arsenic is highly toxic by ingestion and inhalation and is a known carcinogen.   Higher concentrations of copper can be toxic to humans, and aquatic life is sensitive to lower concentrations.   The soils at the site exceed local background concentrations for these metals.   Certain of the

1

soils have been left in place, and an asphalt cap has been constructed over the site to prevent direct human exposure and migration of the contamination.

C.    Covenantor desires and intends that in order to protect the present or future public health and safety, and the environment, the Property shall be used in such a manner as to avoid any potential harm to persons or property which may result from contamination in place underneath the Property.

## ARTICLE I
## GENERAL PROVISIONS

1.01 <u>Provisions To Run With The Land</u>.  This Covenant sets forth protective provisions, covenants, restrictions, and conditions, (collectively referred to as "Restrictions"), upon the Property and subject to which the Property shall be improved, held, used, occupied, leased, sold, hypothecated, encumbered, and/or conveyed.  Each and all of the Restrictions shall run with the land and pass with each and every portion of the Property, and shall apply to and bind the respective successors in interest thereof. Each and all of the Restrictions are imposed upon the entire Property unless expressly stated as applicable to a specific portion of the Property.   Each and all of the Restrictions are imposed pursuant to Sections 25355.5 and 25356.1 of the California Health and Safety Code (H&SC) and run with the land pursuant to Section 25230(a)(1) of the California H&SC.  Each and all of the Restrictions are enforceable by DTSC and its successor agencies, if any.

1.02 <u>Concurrence of Owners Presumed</u>.  All purchasers, lessees, or possessors of the Property shall be deemed by their purchase, leasing, or possession of such Property, to be in accord with the foregoing and to agree for and among themselves, their heirs, successors and assignees, and the agents, employees, and lessees of such owners, heirs, successors, and assignees,   that their interests in the Property will be subject to the Restrictions contained herein.

2

1.03 <u>Incorporation Into Deeds and Leases</u>. Covenantor desires and covenants, and all purchasers, lessees or possessors shall be deemed to have covenanted, that the Restrictions set out herein shall be incorporated by reference in each and all deeds and leases of the Property.

## ARTICLE II
## DEFINITIONS

2.01 <u>DTSC</u>. "DTSC" shall mean the California Department of Toxic Substances Control and shall include its successor agencies, if any.

2.02 <u>Improvements</u>. "Improvements" shall mean all buildings, structures, roads, driveways, regrading, landscaping, bodies of water, park and playground improvements, and paved parking areas, constructed or placed upon any portion of the Property.

2.03 <u>Occupants</u>. "Occupants" shall mean those persons entitled by ownership, leasehold, or other legal relationship to the exclusive right to occupy any portion of the Property.

2.04 <u>Owner</u>. "Owner" shall mean the Covenantor, its successors in interest, and their successors in interest, including heirs, and assigns, who at any time hold title to all or any portion of the Property.

2.05 "Final Cap" shall mean the combination of materials that covers the site to reduce infiltration of surface water and limit human exposure to contaminated soil.

2.06 "Excavation" shall mean the excavation of soil below the final cap that covers the Property.

2.07 "Hazardous materials" shall have the meaning set forth in California Code of Regulations, Title 22, Section 66260.10.

## ARTICLE III
## DEVELOPMENT, USE, AND CONVEYANCE OF THE PROPERTY

3.01 <u>Restrictions on Use</u>. Every Owner and Occupant promises to restrict the use of the Property described in Exhibit "A" as follows:

3



(A)  The Property at 147 A Street shall not be used for residences, hospitals, schools for persons under age 21, day-care centers or any permanently occupied human habitation, including hotels or motels which are used as a permanent residence by employees, without the prior written approval of DTSC.

(B)  Except as specified in subsection (D), no use of the Property shall disturb the integrity of the final cap over the Property as described in Exhibit "A", unless the Covenantor, owner, occupant or lessee can demonstrate to DTSC that the disturbance of the final cap is necessary to the proposed use of the Property and will not increase to an unacceptable level any potential reasonable hazard to the public health and safety or the environment, or is necessary to reduce an imminent threat to the public health and safety or the environment, and DTSC approves such a use in writing.

(C)  The Covenantor, owner, occupant, or lessee may obtain DTSC approvals as provided in subsection (A) and (B) of this paragraph without instituting the variance provisions of Section 4.01.

(D)  The final cap may be disturbed for the purpose of performing emergency repairs, routine periodic maintenance or planned construction, if the final cap is restored to its original condition upon completion of such work.  The Covenantor shall notify DTSC of emergency repairs, or planned construction on the property where the final cap has been disturbed not later than two business days after such repairs are begun.  Upon completion of the emergency repairs or planned construction, the owner or occupant shall provide DTSC with all documentation requested by DTSC to establish that the final cap has been restored to an equivalent condition.

3.02 Conveyance of Property. The Owner or Owners and the Occupants shall provide a thirty (30) day advance notice to DTSC of any sale, lease, or other conveyance of the Property or an interest in the Property to a third person.  DTSC shall not, by reason of this Covenant, have authority to approve, disapprove, or otherwise affect any sale, lease, or other conveyance of the Property or any

4

interest in it except as otherwise provided by law or by reason of this Covenant.

3.03 <u>Enforcement</u>.   Failure of an Owner to comply with any of the requirements, as set forth in Paragraph 3.01, shall be grounds for DTSC, by reason of this Covenant, to have the authority to require that the Owner modify or remove any Improvements constructed in violation of that paragraph.   Violation of the Covenant shall be grounds for DTSC to file an action against the Owner as provided by law, including but not limited to the provisions of Chapter 6.5 and 6.8, Division 20 of the H&SC.

3.04 <u>Notice in Agreements</u>.   The Covenantor shall provide a notice to all Owners and Occupants that shall accompany all purchase, lease, sublease, or rental agreements relating to the Property by supplying a copy of this Agreement.   In this way all Owners and Occupants shall be aware of the following statement:

> "The land described herein contains hazardous substances. Such condition renders the land and the owner, lessee, or other possessor of the land subject to requirements, restrictions, provisions, and liabilities contained in Chapter 6.5 and Chapter 6.8 of Division 20 of the Health and Safety Code.   This statement is not a declaration that a hazard exists."

### ARTICLE IV
### VARIANCE AND TERMINATION

4.01 <u>Variance</u>.   Any Owner or, subject to the prior written consent of the Owner, any Occupant of the Property or a portion thereof may apply to DTSC for a written variance from the provisions of this Covenant.   Such application shall be made in accordance with Section 25233 of the California H&SC.

4.02 <u>Termination</u>.   Any Owner or, subject to the prior written consent of the Owner, an Occupant of the Property or a portion thereof may apply to DTSC for a termination of the Restrictions as they apply to all or any portion of the Property.   Such application

5

shall be made in accordance with Section 25234 of the California H&SC.

    4.03 <u>Term</u>.   Unless terminated in accordance with paragraph 4.02 above, by law or otherwise, this Covenant shall continue in effect in perpetuity.

<div align="center">

ARTICLE V

MISCELLANEOUS
</div>

    5.01 <u>No Dedication Intended</u>.  Nothing set forth herein shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property to the general public or for any purposes whatsoever.

    5.02 <u>Notices</u>. Whenever any person gives or serves any notice, demand, or other communication with respect to this Covenant, each such notice, demand, or other communication shall be in writing and shall be deemed effective (1) when delivered, if personally delivered to the person being served or to an officer of a corporate party being served, or (2) three business days after deposit in the mail if mailed by United States mail, postage paid, certified, return receipt requested to the record Owner. Notices shall be sent to:

> Collins & Aikman Products Co
> Real Estate Department
> 701 McCullough Drive
> Post Office Box 32665
> Charlotte, North Carolina 28232
> Attention:  Bettie Coltrane
> (704) 548-2369
> (704) 548-2300 FAX

>     and

> Collins & Aikman Products Co.
> Legal Department
> Post Office Box 32665
> Charlotte, North Carolina 28232
> Attention: John B. Orgain
> (704) 548-2353
> (704) 548-2010 FAX

<div align="center">

6
</div>

In every case, a copy shall be sent to:

> Department of Toxic Substances Control
> Attention: James L. Tjsovold
> Region 1
> Acting Chief
> Central California Site Mitigation Branch
> 10151 Croydon Way, Suite 3
> Sacramento, California 95827
> (916) 255-3545
> (916) 255-3697 FAX

5.03  **Partial Invalidity.**  If any portion of the Restrictions or terms set forth herein are determined to be invalid for any reason, the remaining portions shall remain in full force and effect as if such portion had not been included herein.

5.04  **Article Headings.**  Headings at the beginning of each numbered article of this Covenant are solely for the convenience of the parties and are not a part of this Covenant.

5.05  **Recordation.**  This instrument shall be executed by the Covenantor, and by the Director, California Department of Toxic Substances Control.  This instrument shall be recorded by the Covenantor in the County of Solano within fourteen (14) days after the date of execution by both parties in accordance with the recording requirements of the California H&SC, Section 25230.

IN WITNESS WHEREOF, the parties execute this Covenant as of the date first set forth above.

Covenantor:    Collins & Aikman Products Co.
    By:        _John B. Organ_____
    Title:     _Senior Counsel_____
    Date:      _August 28, 1995_____

    DEPARTMENT OF TOXIC SUBSTANCES CONTROL
    By:        _James Dowell_____
    Title:     _Acting Branch Chief_____
    Date:      _July 18, 1995_____

7

Order No. 40969

## EXHIBIT "A"

The following described parcels of land are located within the County of Solano, State of California.

### PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen (19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian; running thence North along the Quarter Section line to the Southeasterly boundary of the right of way of the Southern Pacific Railroad; thence Southwesterly along the southeasterly line of the right of way of the Southern Pacific Railroad Company to the Quarter Section line running East and West through said Section Nineteen (19); thence East and along said Quarter Section line to the place of beginning. EXCEPTING THEREFROM, however, all that certain real property as conveyed by Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated May 10th, 1916, and recorded May 23rd, 1916 in Liber "226" of Deeds, Page 104, thereof, and described as follows: Beginning at the point of intersection of the Southeasterly right of way line of the Southern Pacific Railroad Company's railroad (as it now exists across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian; thence Southwesterly along said Southeasterly right of way line of the Southern Pacific Railroad Company, a distance of 506 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 265 feet to a point; thence at a right angle Southeasterly 15 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point; thence at a right angle Northeasterly parallel to said right of way line 200 feet to a point on the east line of said Northwest Quarter of Section 19; thence North along said East line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of beginning.

### PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly line of "A" Street extended northerly; thence running Westerly and along the northerly line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection of the easterly line of the right of way of the Southern Pacific Railroad Company; thence Northerly and along the easterly line of the right of way of the Southern Pacific Railroad Company, One Hundred Ninety-One (191) feet more or less to the southerly line of County Road Number Two Hundred Forty-Six (246) sometimes also known as Binghampton Street; thence Easterly and along

CONTINUED

Order No. 40969

Exhibit "A" Cont'd. (Parcel Two)

the southerly line of County Road Number 246, to the intersection of the
westerly line of a street, extended Northerly; thence Southerly and
along the westerly line of a street, extended Northerly to the northerly
line of Edwards Street and the place of beginning. All as said streets
herein referred to are laid down and designated on that certain map
entitled: "PLAN OF RESURVEY OF PORTION OF VACA STATION, PROPERTY OF
H. C. FARMER, SITUATED ON SOUTH WEST ONE QUARTER (S.W. 1/4) OF SECTION
NINETEEN (19) TOWNSHIP VI NORTH RANGE 1 EAST SOLANO COUNTY," surveyed by
E. H. Marshall, Deputy County Surveyor, April 8th, 1970 and now appearing
of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A"
Street, extended Northerly, and the northerly line of County Road Number
246 (Holdener Road, formerly shown as Binghampton Street) in Elmira
Townsite, Solano County, California, which point bears North 0° 22' 08"
West, 30 feet and South 89° 55' 06" West, 397.80 feet from the southeast
corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B. & M.;
thence, from said point of beginning, along the northerly line of the
aforementioned Binghampton Street South 89° 55' 06" West, 171.67 feet to
the easterly right-of-way line of the Southern Pacific Railroad; thence
along said easterly right-of-way line South 34° 52' 51" West, 73.21 feet
to the southerly line of said Binghampton Street; thence, along said
southerly line, North 89° 55' 06" East, 171.67 feet to the westerly line
of the aforementioned "A" Street; thence along the prolongation of said
westerly line of "A" Street, North 34° 52' 51" East, 73.21 feet to the
point of beginning.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** No. 5907

State of _CALIFORNIA_

County of _SACRAMENTO_

On _JULY 18, 1998_ before me, _DAVID HURLEY_
DATE                                     NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared _JAMES TJOSVOLD_
                                     NAME(S) OF SIGNER(S)

☐ personally known to me - **OR -** ☒ proved to me on the basis of satisfactory evidence
                                     to be the person(s) whose name(s) is/are
                                     subscribed to the within instrument and ac-
                                     knowledged to me that he/she/they executed
                                     the same in his/her/their authorized
                                     capacity(ies), and that by his/her/their
                                     signature(s) on the instrument the person(s),
                                     or the entity upon behalf of which the
                                     person(s) acted, executed the instrument.

> DAVID HURLEY
> COMM. #1040651
> Notary Public-California
> SACRAMENTO COUNTY
> My Comm. Exp. Jan. 4, 1999

WITNESS my hand and official seal.

_____
SIGNATURE OF NOTARY

━━━━━━ **OPTIONAL** ━━━━━━

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent
fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)     ☐ LIMITED
                 ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER:_____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)

_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

©1993 NATIONAL NOTARY ASSOCIATION • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184

STATE OF NORTH CAROLINA        )
                               )
COUNTY OF MECKLENBURG          )

     On August 28, 1995, before me the undersigned, a Notary Public in and for said state, personally appeared John B. Orgain, IV, personally known to me or proved to me on the basis of satisfactory evidence to be the person who executed the within instrument as Senior Counsel of Collins & Aikman Products Co., the corporation that executed the within instrument, and acknowledged to me that such corporation executed the same pursuant to its bylaws or a resolution of its Board of Directors.

     WITNESS my hand and official seal.

_Karen M. Allen_
Notary Public in and for said County and State
MY COMMISSION EXPIRES JANUARY 31, 1998



This is certified to be an exact
reproduction of the filed record if
certification is imprinted in purple ink,
bearing date of issuance and an original
signature of the Assessor/Recorder or
deputy.
MARC C. TONNESEN
Solano County Assessor/Recorder

By _____ Deputy

Issue Date: 2 | 13 | 14

Copy No: 14 - 58766 7



# Exhibit B





# Department of Toxic Substances Control

**Linda S. Adams**
Acting Secretary for
Environmental Protection

Leonard E. Robinson
Acting Director
8800 Cal Center Drive
Sacramento, California 95826-3200

**Edmund G. Brown Jr.**
Governor

March 17, 2011

Mr. David Van Over
216 F Street #108
Davis, California 95616

Mr. Don Dobbas
Jim Dobbas, Incorporated
P.O. Box 177
Newcastle, California 95658

Continental Rail, Inc.
3218 Nacodoches Road, #8
San Antonio, Texas 78217

NOTICE OF ISSUANCE OF IMMINENT OR SUBSTANTIAL ENDANGERMENT
ORDER AND REMEDIAL ACTION ORDER (I/SE ORDER) FOR FORMER WICKES
FOREST INDUSTRIES SITE, ELMIRA, CALIFORNIA, SOLANO COUNTY

Dear Mr. Van Over, Mr. Dobbas and Continental Rail, Inc.:

The purpose of this letter is to provide notification that the Department of Toxic
Substances Control (DTSC) is issuing an Imminent and Substantial Endangerment
Order (I/SE Order) for the former Wickes Forest Industries Site at 147 A Street (the
Property), Elmira, California, due to hazardous substances releases on the site. This
I/SE Order applies to the Property and the areal extent of contamination that resulted
from activities on the Property (hereinafter, the "Site"). Elevated levels of arsenic and
hexavalent chromium in surface and sub-surface soil on the Property are continuing to
act as a persistent source to groundwater contamination and represent a significant
threat to human health and the environment.

DTSC has enclosed a copy of the I/SE Order for your records. The Order is final and
effective five days from the date of mailing, which is the date of this cover letter
transmitting the Order to you.

Any legal representatives acting on behalf of you with regard to this letter or the I/SE
Order should contact Ms. Marilee Hanson, with DTSC's Office of Legal Counsel at
(916) 327-0979 or e-mail mhanson@dtsc.ca.gov.

Mr. David Van Over
Mr. Don Dobbas
Continental Rail, Inc.
March 17, 2011
Page 2


If you have any questions or comments on this letter, please feel free to contact
Mr. MacNicholl at (916) 255-3713 or e-mail at pmacnich@dtsc.ca.gov.

Sincerely,

Charles Ridenour, P.E.
Performance Manager
Cleanup Program – Sacramento Office

Enclosure

cc:    Ms. Marilee Hanson
       Staff Counsel III
       Office of Legal Counsel
       Department of Toxic Substances Control
       1011 "I" Street, 23rd Floor
       P.O. Box 806
       Sacramento, California 95812-0806

       Mr. Richard Hume, P.E.
       Supervising Hazardous Substances Engineer
       Cleanup Program – Sacramento Office
       Department of Toxic Substances Control
       8800 Cal Center Drive
       Sacramento, California 95826

       Mr. Peter MacNicholl, P.E.
       Project Manager
       Cleanup Program – Sacramento Office
       Department of Toxic Substances Control
       8800 Cal Center Drive
       Sacramento, California 95826

STATE OF CALIFORNIA
CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY
DEPARTMENT OF TOXIC SUBSTANCES CONTROL

| | |
|---|---|
| In the Matter of: | Docket No. I/SE 10/11 - 008 |
| Wickes Forest Industries Site<br>147 A Street<br>Elmira, California 95625 | IMMINENT OR SUBSTANTIAL<br>ENDANGERMENT<br>DETERMINATION ORDER<br>AND REMEDIAL ACTION ORDER |
| Respondents:<br>Mr. David Van Over<br>216 F Street #108<br>Davis, California 95616 | |
| Jim Dobbas, Inc.<br>P.O. Box 177<br>Newcastle, California 95658 | Health and Safety Code<br>Sections<br>25355.5(a)(1)(B),<br>25358.3(a), 58009 and 58010 |
| Continental Rail, Inc.<br>3218 Nacodoches Road, #8<br>San Antonio, Texas 78217 | |

## I. INTRODUCTION

1.1     Parties. The California Environmental Protection Agency, Department of Toxic Substances Control (DTSC) issues this Imminent or Substantial Endangerment Determination and Order and Remedial Action Order (Order) to Jim Dobbas Inc. (Dobbas), a California Corporation, Continental Rail, Inc., a corporation (Continental Rail), and David Van Over, an individual  (Van Over) (Respondents).

1.2     Property/Site.  This Order applies to the property located at 147 A Street, Elmira, Solano County, California 95625, which consists of 7.5 acres and is identified by Assessor's Parcel Number(s) 142-010-130, 142-010-140, and 142-042-010 (the Property).  A legal description of the Property is attached as Exhibit A.  This Order applies to the Property and the areal extent of contamination that resulted from activities on the Property (hereinafter, the "Site").  The Property is frequently referred to as the "Wickes Forest Industries Site."

1.3     Jurisdiction.  This Order is issued by DTSC to Respondents pursuant to DTSC's authority under Health and Safety Code  sections 25358.3(a), 25355.5(a)(1)(B), 58009 and 58010.

Health and Safety Code section 25358.3(a) authorizes DTSC to take various actions, including issuance of an Imminent or Substantial Endangerment Determination and Order, when DTSC determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance.

Health and Safety Code section 25355.5(a)(1)(B) authorizes DTSC to issue an order establishing a schedule for removing or remedying a release of a hazardous substance at a site, or for correcting the conditions that threaten the release of a hazardous substance. The order may include, but is not limited to, requiring specific dates by which the nature and extent of a release shall be determined and the site adequately characterized, a Remedial Action Plan (RAP) prepared and submitted to DTSC for approval, and a removal or remedial action completed.

Health and Safety Code section 58009 authorizes DTSC to commence and maintain all proper and necessary actions and proceedings to enforce its rules and regulations; to enjoin and abate nuisances related to matters within its jurisdiction which are dangerous to health; to compel the performance of any act specifically enjoined upon any person, officer, or board, by any law of this state relating to matters within its jurisdiction; and/or on matters within its jurisdiction, to protect and preserve the public health.

Health and Safety Code section 58010 authorizes DTSC to abate public nuisances related to matters within its jurisdiction.

## II. FINDINGS OF FACT

DTSC hereby finds:

2.1   Liability of Respondents.  Respondents are responsible parties or liable persons as defined in Health and Safety Code section 25323.5.  Dobbas and Continental Rail both owned undivided fifty percent (50%) interests in the Property from April 1, 1997 until approximately February 15, 2011.  Van Over purchased the Property from Dobbas and Continental Rail on or around February 15, 2011, with knowledge that environmental contamination exists at the Site.

2.2   Property/Site History.

2.2.1  The Property is a former wood treatment facility located on approximately 7.5 acres near the intersection of A Street and Holdener Road in Elmira, California. Pacific Wood Preserving (a domestic corporation, dissolved effective September 11, 1980) operated a wood treatment facility at the Property until September 1979.  The Wickes Corporation (Wickes), the predecessor to Collins and Aikman Products Company (CAPCO), purchased the Property from Pacific Wood Preserving and then operated the wood treatment facility at the Property until August 1982.  Operations at the Property included treating lumber with preservative solutions containing arsenic,

chromium, and copper. Investigations have shown that the Site soils have been affected by these inorganic metals. Groundwater beneath the Site has also been contaminated by chromium, copper, and arsenic. The Central Valley Regional Water Quality Control Board (CVRWQCB) and DTSC conceptually approved a Remedial Action Plan (RAP) on September 19, 1983, submitted by Wickes, which proposed storm water management and ground water removal and treatment measures for the Site. On February 26, 1984, DTSC issued to Wickes an Order and Schedule of Compliance pursuant to Health and Safety Code section 25187. The Order adopted and incorporated a Settlement Agreement and Schedule of Compliance addressing soil, surface water, and ground water contamination at the Site. The CVRWQCB has also issued a series of Waste Discharge Requirements (WDRs) over the years to Wickes and CAPCO, including the last WDR Order No. R5-2005-0022, which was issued to CAPCO on June 4, 2004.

Respondents Dobbas and Continental Rail purchased the Property from CAPCO in April 1997. Respondent Van Over purchased the Property from Dobbas and Continental Rail on or about February 15, 2011.

2.2.2  To address groundwater contamination, a subsurface french drain system 200 feet long with a single recovery well was installed along with an ion-exchange treatment system so effluent could be discharged to the ditch adjacent to Holdener Road and A Street under the 1983 RAP. In 1987, an additional extraction well was connected to the system to prevent the migration of affected ground water further off-site. This system was confined to the southern portion of the Property. In 1992, the groundwater extraction and treatment system (GWETS) was modified significantly. Seven (7) additional extraction wells were installed (five (5) off-Property) and the ion-exchange treatment system was replaced with an electrochemical treatment system that removes chromium, arsenic, and copper from ground water by co-precipitating the metal ions with ferric hydroxide particles. Treated water was then discharged to the ditch along Holdener Road and A Street under a National Pollutant Discharge Elimination System (NPDES) permit from the CVRWQCB.

2.2.3  Initial soil investigations conducted during the early 1980s were centered on the southern portion of the Property where the manufacturing process took place. In 1983, contaminated soil was excavated from the truck loading pad, and the drying pad for treated wood was sealed with a low permeability asphalt cap under a RAP approved by DTSC on September 19, 1983. Soils inside the metal sided building situated over the process area were capped in 1991 with shot-crete to prevent rainwater from further transporting the constituents of concern to ground water. Two additional RAPs were completed to address contamination at the Site. The RAP approved by DTSC on September 9, 1993 addressed the soil contamination, storm water control, and ground water treatment in the southern portion of the Site. On February 25, 1994, DTSC approved a RAP concentrating on soil in the northern portion of the Site (the "1994 RAP"). The implementation of the 1994 RAP included: (i) excavating 2,100 cubic yards of off-Property soil from drainage ditches and placing it on the Property in an area to be capped with asphalt; (ii) excavation of 89 cubic yards of soil from the railroad drainage

ditch and disposing of it at the Chemwaste Kettleman Hills facility in Kettleman City, California; (iii) regrading the Property; (iv) installing an asphalt cap in all areas of the Property that were not previously sealed; and (v) installing a positive drainage system to prevent storm water intrusion under the cap. On January 5, 1996, DTSC approved the Operation and Maintenance Plan dated October 1995 (the "O&M Plan"), which required, among other things, maintenance of the cap and operation of the GWETS.

2.2.4  On October 27, 1995, CAPCO recorded in Solano County a Covenant to Restrict Use of Property-Environmental Restriction, which was entered into between CAPCO and DTSC (the "Covenant"). The Covenant, among other things, disclosed that the Property was contaminated with hazardous substances, banned uses that would disturb the cap, and restricted the Property's use to non-residential purposes without prior written approval from DTSC. On February 26, 1996, CAPCO and DTSC entered into an Operation and Maintenance Agreement, Docket Number 95/96-038 (the "O&M Agreement") in which CAPCO agreed to maintain the cap and operate the GWETS pursuant to the O&M Plan. Respondents Dobbas and Continental Rail purchased the Property from CAPCO on April 1, 1997, after the Covenant for the Property had been recorded and the O&M Agreement was in place. Also on April 1, 1997 an "Access and Remediation Agreement" was recorded which was signed by Respondent Dobbas, in which Dobbas agreed to provide access to the Property for CAPCO's remediation activities. Dobbas subsequently apparently provided access to the Property to CAPCO's contractors to conduct O&M activities, including operating the GWETS. On May 17, 2005, CAPCO filed a voluntary Chapter 11 bankruptcy petition in United States Bankruptcy Court, Eastern District of Michigan (Detroit), Case Number 05-55927-SWR. In August, 2005, CAPCO ceased operating the GWETS. On March 7, 2006, DTSC directed CAPCO to resume operating the GWETS. On March 22, 2006, CAPCO refused to comply.

From July 24, 2006 through September 28, 2006, DTSC negotiated with Dobbas and Continental Rail regarding the continuation of O&M activities at the Site. Respondents refused to conduct O&M activities such as restarting and repairing the GWETS. DTSC issued an Imminent and Substantial Endangerment Determination on November 13, 2006. On January 19, 2007, DTSC contracted with Kleinfelder Inc. to resume operation of the GWETS, groundwater monitoring and reporting and maintenance of the asphalt cap. On December 3, 2007, Dobbas agreed to perform certain repairs at the Site, which included limited maintenance of the asphalt cap and repair of the roof drainage system for the building over the source area. On May 9, 2007, DTSC and Dobbas entered into an Access Agreement.

On February 14, 2008, DTSC contracted with URS Corporation to investigate soils in the source area of the Site. Results of the 2008 URS soil investigation confirmed that elevated levels of arsenic and hexavalent chromium in soil were continuing to act as a persistent source to groundwater contamination. In August 2009, URS on behalf of DTSC prepared a draft Removal Action Work Plan (2010 RAW) to remediate groundwater at the Site. The 2010 RAW identifies demolition of the GWETS, contaminated soil excavation, confirmation sampling, off-site disposal, backfilling,

4 of 17

reporting, and long-term groundwater monitoring to assess the performance of the remedial action.

In February and March 2010, DTSC staff conducted Site inspections and noticed numerous cracks in the asphalt cap, including blockage and disrepair to the drain and gutter systems. Site inspections also revealed that the lock on the main gate was removed, allowing unsecured access to the Site. In April 2010, DTSC conducted surface water sampling of accumulated stormwater inside the Site's source area. Analytical data showed dissolved arsenic at 720 µg/L and 1200 µg/L due to contact with the remaining contaminated soil. Hexavalent chromium concentrations in the storm water measured 14 µg/L and 21 µg/L, including 30 µg/L and 15 µg/L reported for total chromium.

DTSC finalized the Wickes Forest Industries 2010 RAW in July of 2010. On November 22, 2010, DTSC recorded a lien in the amount of $833,347.98 against Dobbas' undivided fifty percent interest in the Property, which reflected the amount of funds DTSC had spent to clean up and mitigate impacts from the Site since December 2006.

Reports about the Site are available on DTSC's website at http://www.envirostor.dtsc.ca.gov/public/profile_report.asp?global_id=48240001 and are otherwise publically available.

2.3   <u>Hazardous Substances Found at the Property</u>.  The Property has been used as a wood preparation, treatment, and storage area. Wood preserving solutions used at the Property contained copper, chromium, and arsenic. Property investigations conducted in 1982 showed that Site soil and ground water have been contaminated with chromium, copper, and arsenic. Samples of groundwater taken in June 1984, as listed in the June 1984 Monthly Monitoring and Progress Report/Wickes Forest Industries Elmira Site, had concentrations of 120 mg/L or parts per million (ppm) of hexavalent chromium and .22 mg/L (ppm) of arsenic. Groundwater samples taken by Kleinfelder Inc. between September 11 and 13, 2007 had a maximum on-Property concentration of 1700 µg/L (ppb) in monitoring well E-6 and a maximum off-Property concentration of 74 µg/L (ppb) in monitoring well E-18A for hexavalent chromium. Analytical groundwater data from February 10, 2010, reported maximum hexavalent chromium concentrations in groundwater of 1500 µg/L and 93 µg/L in both on-site and off-site groundwater, respectively. Maximum concentrations of arsenic in groundwater measured 650 µg/L on-site compared to 190 µg/L in off-site groundwater. Storm water runoff from the leaking gutter on the source area building has allowed rainwater to pond and collect in the two existing sumps. Surface water samples taken from the accumulated storm water in April 2010, identified dissolved arsenic at 720 µg/L and 1200 µg/L due to contact with the remaining contaminated soil. Hexavalent chromium concentrations in the storm water run-off measured 14 µg/L and 21 µg/L, including 30 µg/L and 15 µg/L reported for total chromium.

Near surface soil samples taken by LFR Levine and Fricke in 1991 to support the 1994 RAP showed elevated concentrations of arsenic and hexavalent chromium in the source area ranging from 52 to 70,000 mg/kg and 0.2 to 190 mg/kg (ppm), respectively. URS' 2008 soil investigation at the Site sampled the original locations from the 1991 remedial investigation, but focused efforts on deeper intervals to satisfy the data gaps. URS' 2008 fieldwork effort sampled soil at three depth intervals of 0.5, 2.5, and 5 feet below ground surface. The sampling effort was conducted to further characterize the vertical extent of contaminants remaining and augment the 1991 dataset with newer analytical data. The 2008 analytical soil data produced arsenic concentrations ranging from 4.7 mg/kg to 610 mg/kg, with hexavalent chromium levels spanning 0.05 mg/kg to 17 mg/kg. Fieldwork efforts show that contaminant concentrations are the highest in surface soil and attenuate with depth, indicating that surface releases likely contaminated the Site.

Soil cleanup goals identified in the 2010 RAW specify 13 mg/kg for arsenic (background), the target compound at the site. Due to the similar distribution patterns of arsenic and chromium in the soil, the cleanup will allow for the remediation of chromium concurrent with the removal of arsenic contaminated soil. The 2010 RAW presents a groundwater cleanup goal of 10 µg/L for both arsenic and hexavalent chromium, including 50 µg/L for total chromium. If new cleanup standards are promulgated by State or federal agencies, those new standards may be applicable at the Site.

2.4    Health Effects.

2.4.1  Arsenic.  Acute ingestion of arsenic may lead to a burning sensation in the mouth, nausea and vomiting. Chronic exposure to arsenic is associated with a persistent metallic taste in the mouth, hyperkeratosis, anemia, and peripheral nerve disease, and may increase the risk of developing skin cancer, aplastic anemia and leukemia.

2.4.2  Chromium.  Chronic inhalation of Chromium (VI) compounds has been associated with the development of lung disease, including cancer in humans.

2.4.3  Copper.  Acute inhalation of copper fumes or dust can result in a reversible influenza-like syndrome. Chronic ingestion of high levels of copper has been reported to cause hemolysis, fibrosis, and cirrhosis of the liver, nervous system damage and kidney dysfunction.

2.5    Routes of Exposure.  Potential routes of exposure at the Site for hazardous substances that may affect public health or the environment, factoring the protectiveness of the asphalt cap, include direct contact with contaminated soil, air routes for dust, contact with contaminated surface storm water in the source area, consumption of food irrigated with contaminated groundwater, migration of hazardous substances to groundwater, and migration of hazardous substances in soil and surface runoff from rain into surface water bodies. If the drinking water source is impacted, direct exposure could be through bathing or drinking the water or breathing vapors while

using the water. Ecological habitat receptors may be more sensitive to hazardous substances concentrations than are human receptors.

2.6 <u>Public Health and/or Environmental Risk</u>. The Property is limited to non-residential use by a Covenant recorded with Solano County on October 27, 1995 that will remain in effect until its termination is approved in writing by DTSC. Adjacent properties are used for commercial and residential purposes. Nearby residences use down-gradient irrigation water drawn from the contaminated aquifer to grow produce for personal consumption. Additional remedial actions are necessary at the Site to address the existing soil contamination. Remedial actions including contaminated soil removal, will eliminate human exposure pathways, protect the environment, restore the beneficial uses of the aquifer, and remediate the persistent source of groundwater contamination for both on-site and off-site aquifers. Without mitigating the persistent source of groundwater contamination, domestic irrigation wells and potential drinking water already impacted by contaminants, would likely reach concentrations that would exceed federal standards and present an acute risk to human health. Inspection and maintenance of the asphalt cap and storm water drainage systems are necessary to prevent direct contact with contaminated soil, eliminate exposure pathways due to contaminated surface storm water, help mitigate infiltration and flushing of contaminated soils with surface water, and to reduce hydraulic influences therefore aiding in the capture of the groundwater plume and helping to achieve the remedial action objectives established for the Site.

## III. CONCLUSIONS OF LAW

3.1 Respondents are responsible parties as defined by Health and Safety Code section 25323.5.

3.2 Each of the substances listed in Section 2.4 is a "hazardous substance" as defined in Health and Safety Code section 25316.

3.3 There has been a "release" and/or there is a "threatened release" of hazardous substances listed in Section 2.4 at the Site, as defined in Health and Safety Code section 25320.

3.4 The actual and threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment.

3.5 Response action is necessary to abate a public nuisance and/or to protect and preserve the public health.

## IV. DETERMINATION

4.1 DTSC issued an Imminent or Substantial Endangerment Determination for the Site on November 13, 2006, thereby determining that response actions are necessary at the Site due to the release of a hazardous substance.

4.2    Based on the foregoing findings of fact and conclusions of law, DTSC hereby determines that there may be an imminent and/or substantial endangerment to the public health or welfare or to the environment because of the release and/or the threatened release of the hazardous substances at the Site due to the unauthorized cessation of the approved remedy.

## V.  ORDER

Based on the foregoing FINDINGS, CONCLUSIONS, AND DETERMINATION, IT IS HEREBY ORDERED THAT Respondents conduct the following response actions in the manner specified herein, and in accordance with a schedule specified by DTSC as follows:  All response actions taken pursuant to this Order shall be consistent with the requirements of Chapter 6.8 (commencing with section 25300), Division 20 of the Health and Safety Code and any other applicable state or federal statutes and regulations.

5.1    Groundwater Monitoring.  Respondents shall immediately restore groundwater monitoring in accordance with the approved O&M Plan for the Site dated October 16, 1995 and the Final Sampling and Analysis Plan for Groundwater Monitoring dated April 2009, prepared by URS Corporation.

5.2    Groundwater Remediation.  Respondents shall take all necessary steps to implement the 2010 RAW and meet its remedial action objectives, including any additional steps necessary to remediate groundwater and restore its beneficial uses.

5.3    Land Use Covenant.  The Respondents shall comply with the Covenant recorded with Solano County on October 27, 1995.

5.4    Operation and Maintenance (O&M).  Respondents shall conduct all operation and maintenance activities for the approved Site remedies including the asphalt cap and shall comply with the O&M Plan approved by DTSC for the Site dated October 16, 1995 as part of the 1993 and 1994 RAPs.  Within thirty (30) days of the effective date of this Order, Respondents shall submit to DTSC for approval an O&M Plan implementation schedule.  The schedule shall propose that Respondents initiate the following within sixty (60) days from the effective date of the Order: a) a routine inspection and necessary maintenance program for the Cap and storm water drainage system; and b) groundwater monitoring activities.  Respondents shall implement section Section G, subsection 6.0, of the O&M Plan specifying the work necessary and maintenance schedule for the asphalt cap fieldwork efforts.

5.5    Five-Year Review.  The remedial action shall be reviewed and reevaluated after a period of five (5) years from the completion of construction and startup, and every five (5) years thereafter.  The last comprehensive five year review for the Site was completed on July 27, 2001; a five year review for the asphalt cap only was completed on March 1, 2005.  The 2001 five year review determined that the current ground water pump and treat system would likely be unsuccessful in meeting the

remedial action objectives and proposed an alternative technology.  The 2010 RAW specifies demolition of the GWETS due the unsuccessful system performance, required access to remaining soil contamination, and the necessity to remove impacted soil acting as continuing source to groundwater contamination.

As a result of any review performed under this Section, Respondents may be required to perform additional Work or to modify Work previously performed.

5.6     Stop Work Order.  In the event that DTSC determines that any activity (whether or not pursued in compliance with this Order) may pose an imminent or substantial endangerment to the health or safety of people on the Site or in the surrounding area or to the environment, DTSC may order Respondents to stop further implementation of this Order for such period of time needed to abate the endangerment. In the event that DTSC determines that any Site activities (whether or not pursued in compliance with this Order) are proceeding without DTSC authorization, DTSC may order Respondents to stop further implementation of this Order or activity for such period of time needed to obtain DTSC authorization, if such authorization is appropriate. Any deadline in this Order directly affected by a Stop Work Order, under this Section, shall be extended for the term of the Stop Work Order.

5.7     Emergency Response Action/Notification.  In the event of any action or occurrence (such as a fire, earthquake, explosion, or human exposure to hazardous substances caused by the release or threatened release of a hazardous substance) during the course of this Order, Respondents shall immediately take all appropriate action to prevent, abate, or minimize such emergency, release, or immediate threat of release and shall immediately notify the Project Manager.  Respondents shall take such action in consultation with the Project Manager and in accordance with all applicable provisions of this Order.  Within seven (7) days of the onset of such an event, Respondents shall furnish a report to DTSC, signed by Respondents' Project Coordinator, setting forth the events which occurred and the measures taken in the response thereto.  In the event that Respondents fail to take appropriate response and DTSC takes the action instead, Respondents shall be liable to DTSC for all costs of the response action.  Nothing in this Section shall be deemed to limit any other notification requirement to which Respondents may be subject.

5.8     Discontinuation of Remedial Technology.  Any remedial technology employed in implementation of any DTSC approved RAP or RAW shall be left in place and operated by Respondents until and except to the extent that DTSC authorizes Respondents in writing to discontinue, move or modify some or all of the remedial technology because Respondents have met the criteria specified in the approved RAP or RAW for its discontinuance, or because the modifications would better achieve the goals of the approved RAP or RAW.

5.9     Financial Assurance.  Respondents shall demonstrate to DTSC and maintain financial assurance for operation and maintenance and monitoring. Respondents shall demonstrate financial assurance within sixty (60) days of the

effective date of the Order and shall maintain it throughout the period of time necessary to complete all required operation and maintenance activities.  The financial assurance mechanisms shall meet the requirements of Health and Safety Code section 25355.2. All financial assurance mechanisms are subject to the review and approval of DTSC.

## VI.  GENERAL PROVISIONS

6.1     Project Coordinator.  Within fourteen (14) days from the date the Order is signed by DTSC, Respondents shall submit to DTSC in writing the name, address, and telephone number of a Project Coordinator whose responsibilities will be to receive all notices, comments, approvals, and other communications from DTSC.  Respondents shall promptly notify DTSC of any change in the identity of the Project Coordinator. Respondents shall obtain approval from DTSC thirty (30) days before the new Project Coordinator performs any work under this Order.

6.2     Project Engineer/Geologist.  The work performed pursuant to this Order shall be under the direction and supervision of a qualified professional engineer or a registered geologist in the State of California, with expertise in hazardous substance site cleanups.  Within fourteen (14) calendar days from the date this Order is signed by DTSC, Respondents shall submit:  a) The name and address of the project engineer or geologist chosen by Respondent; and b) in order to demonstrate expertise in hazardous substance cleanup, the resumé of the engineer or geologist, and the statement of qualifications of the consulting firm responsible for the work.  Respondents shall promptly notify DTSC of any change in the identity of the Project Engineer/Geologist. Respondents shall obtain approval from DTSC before the new Project Engineer/Geologist performs any work under this Order.

6.3     Monthly Summary Reports.  Within sixty (60) days from the date this Order is signed by DTSC, and on a monthly basis thereafter, Respondents shall submit a Monthly Summary Report of its activities under the provisions of this Order.  The report shall be received by DTSC by the fifteenth (15th) day of each month and shall describe:

   (a)   Specific actions taken by or on behalf of Respondents during the previous calendar month;
   (b)   Actions expected to be undertaken during the current calendar month;
   (c)   All planned activities for the next month;
   (d)   Any requirements under this Order that were not completed;
   (e)   Any problems or anticipated problems in complying with this Order; and
   (f)    All results of sample analyses, tests, and other data generated under this Order during the previous calendar month, and any significant findings from these data.

6.4     Quality Assurance/Quality Control (QA/QC). All sampling and analysis conducted by Respondents under this Order shall be performed in accordance with QA/QC procedures submitted by Respondent and approved by DTSC pursuant to this Order.

6.5     Submittals. All submittals and notifications from Respondents required by this Order shall be sent simultaneously to:

> Charles Ridenour, P.E.
> Performance Manager
> Cleanup Program – Sacramento Office
> Attention: Peter MacNicholl, P.E.
> Project Manager (two copies)
> Department of Toxic Substances Control
> 8800 Cal Center Drive
> Sacramento, California 95826

6.6     Communications. All approvals and decisions of DTSC made regarding submittals and notifications will be communicated to Respondents in writing by the Cleanup Program Performance Manager, or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by Respondents shall be construed to relieve Respondents of the obligation to obtain such formal approvals as may be required.

6.7     DTSC Review and Approval.

(a)     All response actions taken pursuant to this Order shall be subject to the approval of DTSC. Respondents shall submit all deliverables required by this Order to DTSC. Once the deliverables are approved by DTSC, they shall be deemed incorporated into, and where applicable, enforceable under this Order.

(b)     If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Order fails to comply with this Order or fails to protect public health or safety or the environment, DTSC may:

(1)   Modify the document as deemed necessary and approve the document as modified; or

(2)   Return comments to Respondents with recommended changes and a date by which Respondents must submit to DTSC a revised document incorporating the recommended changes.

(c)     Any modifications, comments or other directives issued pursuant to (a) above, are incorporated into this Order. Any noncompliance with these modifications or directives shall be deemed a failure or refusal to comply with this Order.

6.8    Compliance with Applicable Laws.  Nothing in this Order shall relieve Respondents from complying with all other applicable laws and regulations, including but not limited to compliance with all applicable waste discharge requirements issued by the State Water Resources Control Board or a California Regional Water Quality Control Board.  Respondents shall conform all actions required by this Order with all applicable federal, state and local laws and regulations.

6.9    Respondent Liabilities.  Nothing in this Order shall constitute or be construed as a satisfaction or release from liability for any conditions or claims arising as a result of past, current or future operations of Respondents.  Nothing in this Order is intended or shall be construed to limit the rights of any of the parties with respect to claims arising out of or relating to the deposit or disposal at any other location of substances removed from the Site.  Nothing in this Order is intended or shall be construed to limit or preclude DTSC from taking any action authorized by law to protect public health or safety or the environment and recovering the cost thereof.  Notwithstanding compliance with the terms of this Order, Respondents may be required to take further actions as are necessary to protect public health and the environment.

6.10   Site Access.  Access to the Site and laboratories used for analyses of samples under this Order shall be provided at all reasonable times to employees, contractors, and consultants of DTSC.  Nothing in this Section is intended or shall be construed to limit in any way the right of entry or inspection that DTSC or any other agency may otherwise have by operation of any law.  DTSC and its authorized representatives shall have the authority to enter and move freely about all property at the Site at all reasonable times for purposes including, but not limited to: inspecting records, operating logs, sampling and analytic data, and contracts relating to this Site; reviewing the progress of Respondents in carrying out the terms of this Order; conducting such tests as DTSC may deem necessary; and verifying the data submitted to DTSC by Respondents.

To the extent the Site or any other property to which access is required for the implementation of this Order is owned or controlled by persons other than Respondents, Respondents shall use best efforts to secure from such persons access for Respondents, as well as DTSC, its representatives, and contractors, as necessary to effectuate this Order.  To the extent that any portion of the Site is controlled by tenants of Respondents, Respondents shall use best efforts to secure from such tenants, access for Respondents, as well as for DTSC, its representatives, and contractors, as necessary to effectuate this Order.  For purposes of this Section, "best efforts" includes the payment of reasonable sums of money in consideration of access.  If any access required to complete the Work is not obtained within sixty (60) days of the effective date of this Order, or within forty-five (45) days of the date DTSC notifies Respondents in writing that additional access beyond that previously secured is necessary, Respondents shall promptly notify DTSC, and shall include in that notification a summary of the steps Respondents have taken to attempt to obtain access.  DTSC may, as it deems appropriate, assist Respondents in obtaining access.  Respondents shall reimburse DTSC in obtaining access, including, but not limited to, attorneys fees and the amount of just compensation.

Respondents shall grant access to any persons who need access for the purpose of conducting activities pursuant to this Order or for activities deemed necessary by DTSC to meet the objectives of this Order and/or the O&M Plan.

6.11   Sampling, Data and Document Availability.  Respondents shall permit DTSC and its authorized representatives to inspect and shall provide copies of all sampling, testing, monitoring or other data including technical records and contractual documents generated by Respondents, or on Respondents' behalf in any way whether or not such information or data was developed pursuant to this Order.  Respondents shall submit all such data upon the request of DTSC.  Copies shall be provided within (7) days of receipt of DTSC's written request.  For Final reports, Respondents shall submit one hard (paper) copy and one electronic copy with all applicable signatures and certification stamps as a text-readable Portable Document Formatted (pdf) file Adobe Acrobat or Microsoft Word formatted file. Respondents shall inform DTSC at least (7) days in advance of all field sampling under this Order, and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Respondents pursuant to this Order.  Respondents shall maintain a central depository of the data, reports, and other documents prepared pursuant to this Order.

6.12   Record Retention.  All such data, reports and other documents shall be preserved by Respondents for a minimum of ten years after the conclusion of all activities under this Order.  If DTSC requests that some or all of these documents be preserved for a longer period of time, Respondents shall either comply with that request or deliver the documents to DTSC, or permit DTSC to copy the documents prior to destruction.  Respondents shall notify DTSC in writing at least six months prior to destroying any documents prepared pursuant to this Order.

6.13   Government Liabilities.  The State of California shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by Respondents, or related parties specified in Section 6.25, Parties Bound, in carrying out activities pursuant to this Order, nor shall the State of California be held as party to any contract entered into by Respondents or its agents in carrying out activities pursuant to this Order.

6.14   Additional Actions.  By issuance of this Order, DTSC does not waive the right to take any further actions authorized by law.

6.15   Extension Requests.  If Respondents are unable to perform any activity or submit any document within the time required under this Order, Respondents may, prior to expiration of the time, request an extension of the time in writing.  The extension request shall include a justification for the delay.  All such requests shall be in advance of the date on which the activity or document is due.

6.16   Extension Approvals.  If DTSC determines that good cause exists for an extension, it will grant the request and specify a new schedule in writing.  Respondents shall comply with the new schedule incorporated in this Order.

13 of 17

shall comply with the new schedule incorporated in this Order.

6.17   Liability for Costs.  Respondents are liable for all of DTSC's costs that have been incurred in taking response actions at the Site (including costs of overseeing response actions performed by Respondents and costs to be incurred in the future.

6.18   Payment of Costs.  DTSC may bill Respondents for costs incurred in taking response actions at the Site prior to the effective date of this Order.  DTSC will bill Respondents quarterly for its response costs incurred after the effective date of this Order.  Respondents shall pay DTSC within sixty (60) days of receipt of any DTSC billing.  Any billing not paid within sixty (60) days is subject to interest calculated from the date of the billing pursuant to Health and Safety Code section 25360.1.  All payments made by Respondents pursuant to this Order shall be by cashier's or certified check made payable to this "DTSC," and shall bear on the face the project code of the Site (Site # 100164) and the Docket number of this Order.  Payments shall be sent to:

> Department of Toxic Substances Control
> Accounting/Cashier
> 1001 I Street, 21st Floor
> P.O. Box 806
> Sacramento, California 95812-0806

A photocopy of all payment checks shall also be sent to the person designated by DTSC to receive submittals under this Order.

6.19   Severability.  The requirements of this Order are severable, and Respondents shall comply with each and every provision hereof, notwithstanding the effectiveness of any other provision.

6.20   Incorporation of Plans, Schedules and Reports.  All plans, schedules, reports, specifications and other documents that are submitted by Respondents pursuant to this Order are incorporated in this Order upon DTSC's approval or as modified pursuant to Section 6.7, DTSC Review and Approval, and shall be implemented by Respondents.  Any noncompliance with the documents incorporated in this Order shall be deemed a failure or refusal to comply with this Order.

6.21   Modifications.  DTSC reserves the right to unilaterally modify this Order. Any modification to this Order shall be effective upon the date the modification is signed by DTSC and shall be deemed incorporated in this Order.

6.22   Time Periods.  Unless otherwise specified, time periods begin from the effective date of this Order and "days" means calendar days.

6.23   Termination and Satisfaction.  Except for Respondents' obligations under Sections 5.4 Operation and Maintenance (O&M), 5.5 Five-Year Review, 5.9 Financial Assurance, 6.12 Record Retention, 6.17 Liability for Costs, and 6.18 Payment of Costs, Respondents' obligations under this Order shall terminate and be deemed satisfied upon Respondents' receipt of written notice from DTSC that Respondents have

14 of 17

6.24  Calendar of Tasks and Schedules.  This Section is merely for the convenience of listing in one location the submittals required by this Order.  If there is a conflict between the date for a scheduled submittal within this Section and the date within the Section describing the specific requirement, the latter shall govern.

Calendar of Tasks and Schedules

| TASK | SCHEDULE |
|---|---|
| 1. Identify Project Coordinator; Section 6.1; | Within fourteen (14) days from the effective date of this Order. |
| 2. Identify Project Engineer/Geologist; Section 6.2; | Within fourteen (14) days from the effective date of this Order. |
| 3. Submit Monthly Summary Reports; Section 6.3; | Within sixty (60) days from the effective date of this Order. |
| 4. Submit groundwater level measurements Section 5.1; | First Monday of specified month. |
| 5. Groundwater sampling results; Section 5.1; | Quarterly basis. |
| 6. Submit O&M Workplan Schedule; Section 5.4; | Within thirty (30) days of DTSC's request. |
| 7. Submit and initiate O&M Workplan; Section 5.4; | Within sixty (60) days from the effective date of this order. |
| 8. Submit Emergency Response Action Report; Section 5.7; | Within seven (7) days of a emergency response action. |
| 9. Provide copies of sampling, data, and documentation; Section 6.11; | Within seven (7) days of receipt of DTSC's request. |
| 10. Maintain central depository of data, reports, documentation; Section 6.12; and | Maintain central depository for a minimum of ten years after conclusion of all activities conducted pursuant to this Order. |
| 11. Provide prior written notice to DTSC before destroying any documentation prepared pursuant to this Order; Section 6.12. | At least six months prior to destroying any documents. |

6.25   <u>Parties Bound</u>.  This Order applies to and is binding upon Respondents, and their officers, directors, agents, employees, contractors, consultants, receivers, trustees, successors and assignees, including but not limited to, individuals, partners, and subsidiary and parent corporations.  Respondents shall provide a copy of this Order to all contractors, subcontractors, laboratories, and consultants that are retained to conduct any work performed under this Order, within fifteen (15) days after the effective date of this Order or the date of retaining their services, whichever is later. Respondents shall condition any such contracts upon satisfactory compliance with this Order.  Notwithstanding the terms of any contract, Respondents are responsible for compliance with this Order and for ensuring that its subsidiaries, employees, contractors, consultants, subcontractors, agents and attorneys comply with this Order.

6.26   <u>Change in Ownership</u>.  No change in ownership or corporate or partnership status relating to the Property shall in any way alter Respondents' responsibility under this Order.  No conveyance of title, easement, or other interest in the Site, or a portion of the Property, shall affect Respondents' obligations under this Order.  Unless DTSC agrees that such obligations may be transferred to a third party, Respondents shall be responsible for and liable for any failure to carry out all activities required of Respondents by the terms and conditions of this Order, regardless of Respondents' use of employees, agents, contractors, or consultants to perform any such tasks.  Respondents shall provide a copy of this Order to any subsequent owners or successors before ownership rights or stock or assets in a corporate acquisition are transferred.

## VII.  <u>NOTICE OF INTENT TO COMPLY</u>

7.0   Not later than seven (7) days after the effective date of this Order, Respondents shall provide written notice, in accordance with paragraph 6.5 Submittals of this Order, stating whether or not Respondents will comply with the terms of this Order.  If Respondents do not unequivocally commit to perform all of the requirements of this Order, they, or each so refusing, shall be deemed to have violated this Order and to have failed or refused to comply with this Order.  Respondents' written notice shall describe, using facts that exist on or prior to the effective date of this Order, any "sufficient cause" defenses asserted by Respondents under Health and Safety Code sections 25358.3(a) and 25355.5(a)(1)(B) or CERCLA section 107(c)(3), 42 U.S.C. section 9607(c)(3).

## VIII.  <u>EFFECTIVE DATE</u>

8.0   This Order is final and effective five days from the date of mailing, which is the date of the cover letter transmitting the Order to you.

## IX.  <u>PENALTIES FOR NONCOMPLIANCE</u>

9.0   Each Respondent may be liable for penalties of up to $25,000 for each day out of compliance with any term or condition set forth in this Order and for punitive

16 of 17

damages up to three times the amount of any costs incurred by DTSC as a result of Respondent's(s') failure to comply, pursuant to Health and Safety Code sections 25359, 25359.2, 25359.4, and 25367(c).  Health and Safety Code section 25359.4.5 provides that a responsible party who complies with this Order, or with another order or agreement concerning the same response actions required by this Order, may seek treble damages from responsible parties who fail or refuse to comply with this Order without sufficient cause.


DATE OF ISSUANCE: 3/16/11

Charles Ridenour, P.E.
Performance Manager
Cleanup Program – Sacramento Office
Department of Toxic Substances Control

EXHIBIT "A"

The land referred to herein is in the State of California, County of Solano,
unincorporated area, and is described as follows:

PARCEL ONE

Beginning at the southeast corner of the Northwest One Quarter of Section Nineteen
(19) Township Six (6) North Range One (1) East, Mount Diablo Base and Meridian,
running thence north along the Quarter Section line to the southeasterly boundary of the
right of way of the Southern Pacific Railroad; thence southwesterly along the
southeasterly line of the right of way of the Southern Pacific Railroad Company to the
Quarter Section line running east and west through said Section Nineteen (19); thence
east and along said Quarter Section line to the place of beginning.

EXCEPTING THEREFROM, however, all that certain real property as conveyed by
Eleanor B. Allison to Southern Pacific Railroad Company, a corporation, by Deed dated
May 10, 1916, and recorded May 23, 1916 in Liber "226" of Deeds, Page 104, thereof,
and described as follows:  Beginning at the point of intersection of the southeasterly
right of way line of the Southern Pacific Railroad Company's railroad (as it now exists
across said Northwest Quarter of Section 19) with the east line of the Northwest Quarter
of Section 19, Township 6 North Range 1 East, Mount Diablo Base and Meridian,
thence southwesterly along said southeasterly right of way line of the Southern Pacific
Railroad Company, a distance of 506 feet to a point; thence at a right angle
southeasterly 15 feet to a point, thence at a right angle northeasterly parallel to said
right of way line 265 feet to a point, thence at a right angle southeasterly 15 feet to a
point, thence at a right angle northeasterly parallel to said right of way line 200 feet to a
point, thence at a right angle northeasterly parallel to said right of way line 200 feet to a
point on the east line of said Northwest Quarter of Section 19, thence north along said
east line of the Northwest Quarter of Section 19, a distance of 50.7 feet to the point of
beginning.

PARCEL TWO

Beginning at the intersection of the northerly line of Edwards Street and the westerly
line of "A" Street extended northerly, thence running westerly and along the northerly
line of Edwards Street, One Hundred Forty (140) feet, more or less, to the intersection
of the easterly line of the right of way of the Southern Pacific Railroad Company, thence
northerly and along the easterly line of the right of way of the Southern Pacific Railroad
Company, One Hundred Ninety-One (191) feet more or less to the southerly line of
County Road Number Two Hundred Forty-Six (246) sometimes also know as
Binghampton Street, thence easterly and along the southerly line of County Road
Number 246, to the intersection of the westerly line of a Street, extended northerly,
thence southerly and along the westerly line of a Street, extended northerly to the
northerly line of Edwards Street and the place of beginning.  All as said streets herein
referred to are laid down and designated on that certain Map entitled:  "Plan of

1 of 2

Resurvey of Portion of Vaca Station, Property of W.C. Farmer, situated on South West One Quarter (S.W. ¼) of Section Nineteen (19) Township VI North Range 1 East Solano County," surveyed by E.H. Marshall, Deputy County Surveyor, April 8, 1870 and now appearing of record in Volume "1" of Maps, Page 44 thereof, Solano County Records.

PARCEL THREE

Beginning at the point of intersection of the westerly line of "A" Street, extended northerly, and the northerly line of County Road Number 246 (Holdener Road, formerly shown as Binghampton Street) in Elmira Townsite, Solano County, California, which point bears north 0°22' 08" west, 30 feet and south 89°55' 06" west, 397.80 feet from the southeast corner of the Northwest One-Quarter of Section 19, T6N, R1E, M.D.B & M., thence, from said point of beginning, along the northerly line of the aforementioned Binghampton Street south 89°55' 06" west, 171.67 feet to the easterly right-of-way line of the Southern Pacific Railroad and thence along said easterly right-of-way line south 34° 52' 51" west, 73.21 feet to the southerly line of said Binghampton Street, thence, along said southerly line, north 89°55' 06" east, 171.67 feet to the westerly line of the aforementioned "A" Street, thence along the prolongation of said westerly line of "A" Street, north 34°52" 51" east, 73.21 feet to the point of beginning.

A.P.N. 142-010-130, 142-010-140 and 142-042-010

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

California Department of Toxic Substances Control, and Toxic Substances Control Account

### DEFENDANTS

(1) Jim Dobbas, Inc. (2) Continental Rail, Inc. (3) Van Over, David (4) Pacific Wood Preserving (5) West Coast Wood Preserving, LLC

**(b)**  County of Residence of First Listed Plaintiff   Sacramento
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Placer
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:          IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas G. Heller, Deputy Attorney General, California Department of Justice, 300 South Spring Street, Suite 1702, Los Angeles, CA 90013, (213) 897-2628

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                         *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT

☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY

☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS

☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities Employment
☐ 446 Amer. w/Disabilities Other
☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY

☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

### LABOR

☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

### IMMIGRATION

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

### BANKRUPTCY

☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS

☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY

☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS

☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES

☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☒ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 9607; 42 USC 9613
Brief description of cause:
Recovery of environmental response costs, and declaratory relief

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   At least $2202176.92   CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
03/03/2014

SIGNATURE OF ATTORNEY OF RECORD
/s/ Thomas G. Heller, Deputy Attorney General

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   **ER-796**   JUDGE _____   MAG. JUDGE _____

1  THOMAS F. VANDENBURG (SBN: 163446)
   tvandenburg@wshblaw.com
2  STRATTON P. CONSTANTINIDES (SBN: 305103)
   sconstantinides@wshblaw.com
3  WOOD, SMITH, HENNING & BERMAN LLP
   10960 Wilshire Blvd., 18th Floor
4  Los Angeles, CA 90024
5  Telephone:     (310) 481-7600
   Facsimile:     (310) 481-7650
6  Attorneys for Proposed Intervenors
7  Century Indemnity Company, Allianz Underwriters
   Insurance Company, Chicago Insurance Company,
8  and Fireman's Fund Insurance Company

9  SARA M. THORPE (SBN: 146529)
   sthorpe@nicolaidesllp.com
10 RANDALL P. BERDAN (SBN: 199623)
   rberdan@nicolaidesllp.com
11 NICOLAIDES FINK THORPE
12 MICHAELIDES SULLIVAN LLP
   101 Montgomery Street, Suite 2300
13 San Francisco, CA 94104
   Telephone:     (415) 745-3770
14 Facsimile:     (415) 745-3771

15
16 Attorneys for Proposed Intervenor
   The Continental Insurance Company

17                    **UNITED STATES DISTRICT COURT**

18       **EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION**

| 19 | CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, et al., | 2:14-cv-00595-WBS-EFB |
|----|----|----|
| 20 | | **JOINT NOTICE OF APPEAL TO THE** |
| 21 | Plaintiffs, | **UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT;** |
| 22 | v. | **REPRESENTATION STATEMENT** |
| 23 | JIM DOBBAS, INC., a California corporation; et al., | |
| 24 | Defendants. | |
| 25 | AND RELATED COUNTER CLAIMS AND CROSS CLAIMS. | Action Filed: March 3, 2014 |
| 26 | | |

27

28

1     PLEASE TAKE NOTICE that Century Indemnity Company, Allianz Underwriters

2 Insurance Company, Chicago Insurance Company, Fireman's Fund Insurance Company, and

3 The Continental Insurance Company, Proposed Intervenors in the above-named case, hereby

4 appeal to the United States Court of Appeals for the Ninth Circuit from the order entered

5 December 4, 2019 (ECF No. 237) denying Proposed Intervenors' respective motions to

6 intervene and set aside/vacate default (ECF Nos. 205, 217, 222).  The order is appealable

7 pursuant to 28 U.S.C. section 1291.

8     The Representation Statement begins on the next page of this document.  The order

9 appealed from (ECF No. 237) is attached hereto as Exhibit A.  Proposed Intervenors know of no

10 related cases currently in the Ninth Circuit.

11                                          Respectfully submitted,

12 Dated: January 3, 2020              WOOD, SMITH, HENNING &
                                       BERMAN LLP
13

14                                     By:    /s/ Stratton P. Constantinides
                                              Thomas F. Vandenburg
15                                            Stratton P. Constantinides
                                       Attorneys for Century Indemnity Company,
16                                     Allianz Underwriters Insurance Company,
                                       Chicago Insurance Company, and Fireman's
17                                     Fund Insurance Company

18

19

20 Dated: January 3, 2020              NICOLAIDES FINK THORPE
                                       MICHAELIDES SULLIVAN LLP
21

22                                     By:    /s/ Randall P. Berdan
                                              Sara M. Thorpe
23                                            Randall P. Berdan
                                       Attorneys for The Continental Insurance
24                                     Company

25

26

27

28

**REPRESENTATION STATEMENT**
**(FED. R. APP. P. 12(B); Circuit Rule 3-2(B))**

PLEASE TAKE FURTHER NOTICE THAT, in this appeal, the undersigned represent Century Indemnity Company, Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company, Proposed Intervenors and appellants in this matter, and no other party:

THOMAS F. VANDENBURG (SBN: 163446)
tvandenburg@wshblaw.com
STRATTON P. CONSTANTINIDES (SBN: 305103)
sconstantinides@wshblaw.com
WOOD, SMITH, HENNING & BERMAN LLP
10960 Wilshire Blvd., 18th Floor
Los Angeles, CA 90024
Telephone:     (310) 481-7600
Facsimile:     (310) 481-7650

The undersigned represent The Continental Insurance Company, Proposed Intervenor and appellant in this matter, and no other party:

SARA M. THORPE (SBN: 146529)
sthorpe@nicolaidesllp.com
RANDALL P. BERDAN (SBN: 199623)
rberdan@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone:     (415) 745-3770
Facsimile:     (415) 745-3771


California Department of Toxic Substances Control and Toxic Substances Control Account, Plaintiffs and appellees in this matter are represented by:

Olivia W. Karlin
Laura J. Zukerman
laura.zuckerman@doj.ca.gov
1515 Clay Street, 20th Floor
Oakland, CA 94612
Telephone:     (510) 879-1299
Facsimile:     (510) 622-2270

1    Dated: January 3, 2020          WOOD, SMITH, HENNING &

2                                   BERMAN LLP

3                          By:    */s/ Stratton P. Constantinides*

4                                 Thomas F. Vandenburg

5                               Stratton P. Constantinides
                          Attorneys for Century Indemnity Company,

6                          Allianz Underwriters Insurance Company,
                          Chicago Insurance Company, and Fireman's

7                          Fund Insurance Company

8

9    Dated: January 3, 2020          NICOLAIDES FINK THORPE
                          MICHAELIDES SULLIVAN LLP

10

11                        By:    */s/ Randall P. Berdan*
                               Sara M. Thorpe

12                               Randall P. Berdan
                          Attorneys for The Continental Insurance

13                          Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-5, Page 194 of 231
Case 2:14-cv-00595-WBS-EFB Document 243 Filed 01/03/20 Page 6 of 13
Case 2:14-cv-00595-WBS-EFB Document 237 Filed 12/04/19 Page 1 of 13

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   CALIFORNIA DEPARTMENT OF TOXIC      No. 2:14-CV-00595 WBS EFB
     SUBSTANCES CONTROL and the TOXIC
13   SUBSTANCES CONTROL ACCOUNT,

14              Plaintiffs,             ORDER RE: MOTIONS TO
                                        INTERVENE AND TO VACATE
15        v.                            DEFAULT

16   JIM DOBBAS, INC. a California
     corporation; CONTINENTAL RAIL,
17   INC., a Delaware corporation;
     DAVID VAN OVER, individually;
18   PACIFIC WOOD PRESERVING, a
     dissolved California
19   corporation; WEST COAST WOOD
     PRESERVING, LLC., a Nevada
20   limited liability company; and
     COLLINS & AIKMAN PRODUCTS, LLC,
21   a Delaware limited liability
     company,
22
                Defendants.
23

24                         ----oo0oo----

25        Plaintiffs Department of Toxic Substances Control and

26   the Toxic Substances Control Account (collectively "DTSC") sought

27   recovery of costs and interest incurred during the cleanup of a

28

                                 1

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-5, Page 195 of 231
Case 2:14-cv-00595-WBS-JDP Document 237 Filed 01/03/20 Page 7 of 13
Case 2:14-cv-00595-WBS-EFB Document 247 Filed 12/04/19 Page 2 of 6

1   wood preserving operation in Elmira, California against multiple

2   defendants under the Comprehensive Environmental Response,

3   Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et

4   seq. (First Am. Compl. ("FAC") at ¶ 19.) In 2015, DTSC obtained

5   entry of default against a canceled Delaware corporation,

6   defendant Collins & Aikman Products, LLC ("C&A Products") after

7   it failed to respond to DTSC's First Amended Complaint. (Docket

8   No. 129.) Presently before the court are motions to intervene

9   and vacate C&A Products' default filed by The Continental

10  Insurance Company ("Continental"), Century Indemnity Company

11  ("Century"), and Allianz Underwriters Insurance Company, Chicago

12  Insurance Company, and Fireman's Fund Insurance Company

13  (collectively, "Allianz"), insurers of C&A Products. (Docket

14  Nos. 205, 217, 222.)

15          This is not the first time an insurance company has

16  moved to intervene and set aside default in this matter. The

17  Travelers Insurance Company ("Travelers") previously attempted to

18  do so (Docket No. 196), but this court denied the motion after

19  finding that Travelers' refusal to defend C&A Products under a

20  reservation of rights forfeited its interest in the litigation

21  and it could not establish good cause to set aside C&A Products'

22  default.[1] (Order Re: Mot. to Intervene and Set Aside Default at

23  3-4 (Docket No. 221).) The moving parties before the court now

24  offer many of the same arguments Travelers did in its motion,

25  _____

26          [1]  Allstate Insurance Company filed a notice of joinder
    (Docket No. 218) to Travelers' motion to intervene and did not
27  file a separate motion to intervene. (Docket No. 196.)
    Traveler's motion to intervene was denied on October 22, 2019.
28  (Docket No. 221.) Accordingly, Allstate's joinder fails.

                                    2

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-5, Page 196 of 231
Case 2:14-cv-00595-WBS-EFB   Document 247   Filed 01/03/20   Page 8 of 13
Case 2:14-cv-00595-WBS-EFB   Document 243   Filed 12/04/19   Page 8 of 13

1   with some important differences.  (Compare Docket Nos. 205, 217,

2   222, with Docket No. 196.)  Each will be discussed in turn.

3         First, the court will consider Continental's motion.

4   Continental's position is distinguishable from that of Travelers

5   in that it did not become aware of this lawsuit until after C&A

6   Products' default was entered.  However, it is substantially

7   indistinguishable in that Continental has neither admitted

8   coverage nor agreed to defend C&A Products on a reservation of

9   rights.  DTSC offered to stipulate to Continental's intervention

10  if it either (1) accepted coverage without a reservation of

11  rights or (2) defended C&A Products with a reservation of rights.

12  (Decl. of Laura Zuckerman ("Zuckerman Decl."), Ex. B (Docket No.

13  228).)  This was the same stipulation DTSC offered to Travelers

14  before its motion was heard.  Just as in Travelers' case,

15  Continental did not stipulate, although instead of affirmatively

16  refusing the stipulation, it failed to respond to plaintiffs'

17  offer.  (Zuckerman Decl. ¶ 4.)  Continental also does not advance

18  any new argument to establish good cause to set aside C&A

19  Products' default.  (Compare Docket No. 205, with Docket No.

20  196.)  Accordingly, Continental's motion will be denied.

21        Next, the court considers Century's motion.  Century,

22  too, offers the same arguments Travelers did in its motion to

23  intervene and set aside default.  (Compare Docket No. 217, with

24  Docket No. 196.)  Indeed, just like Travelers, Century disclaimed

25  coverage of any claims arising from the DTSC litigation, citing a

26  settlement agreement Century purportedly signed with C&A Products

27  in 2000.  (Century Mot. to Intervene at 6 (Docket No. 217).)

28  Like Continental, Century failed to respond to plaintiffs'

3

Case: 20-15029, 04/08/2021, ID: 12069037, DktEntry: 19-5, Page 197 of 231
Case 2:14-cv-00595-WBS-EFB Document 247 Filed 01/03/20 Page 9 of 13
Case 2:14-cv-00595-WBS-EFB Document 243 Filed 12/04/19 Page 4 of 6

1   proposed stipulation, and by implication refuses to offer a

2   defense under a reservation of rights.  (Zuckerman Decl. ¶ 4.)

3   Because it has both disclaimed coverage and refused to defend C&A

4   Products under a reservation of rights, Century's motion to

5   intervene and set aside default will also be denied.  Finally,

6   the court will consider Allianz's motion.  In California, "where

7   the insured is unable to assert its rights, an insurer who seeks

8   to intervene and protect its coverage defenses may provide an

9   explicit reservation of rights to its client and allege that

10  reservation of rights within its pleading to put the plaintiff on

11  notice that the insurance company is reserving those rights and

12  asserting coverage defenses." Kaufman & Broad Communities, Inc.

13  v. Performance Plastering, Inc., 136 Cal. App. 4th 212, 222 (3d

14  Dist. 2006).  Allianz expressly stated in its motion that it has

15  "reserved all rights to decline coverage on any applicable ground

16  and expressly ha[s] not waived or otherwise forfeited any direct

17  interest in the instant action that would serve to defeat Allianz

18  Intervenors' claim for intervention of right."  (Allianz Mot. to

19  Intervene at 11 (Docket No. 222).)  Furthermore, unlike Century

20  and Travelers, Allianz has not disclaimed coverage.  Instead, it

21  is purportedly "gathering information regarding coverage and or

22  duties" in the present action.[2]  (Id.)

23         However, Allianz was C&A Products' excess insurer.

24  (Opp. to Mot. to Intervene and Vacate Default at 2 n.2 (Docket

25  No. 227); see also Allianz Reply to Opp. to Mot. to Intervene at

26  _____

27         [2]    Like Continental and Century, Allianz failed to respond
     to DTSC's proposed stipulation to allow them to intervene.
     (Zuckerman Decl. ¶ 4.)

28

4

1   2 (Docket No. 230).)  California law recognizes a distinction

2   between primary and excess insurance coverage.  "Primary coverage

3   is insurance coverage whereby, under the terms of the policy,

4   liability attaches immediately upon the happening of the

5   occurrence that gives rise to the liability . . . "excess" or

6   "secondary" insurance is coverage whereby, under the terms of

7   that policy, liability attaches only after a predetermined amount

8   of primary coverage has been exhausted."  <u>Residence Mut. Ins. Co.</u>

9   <u>v. Travelers Indem. Co. of Conn.</u>, 26 F. Supp. 3d 965, 972-73

10  (C.D. Cal. 2014) (quoting <u>Am. Cas. Co. v. Gen. Star Indem. Co.</u>,

11  125 Cal. App. 4th 1510, 1521 (2d Dist. 2005) (emphasis omitted)).

12        Normally, the policy limits of the underlying primary

13  policy must be exhausted before excess insurers have the "right

14  or duty to participate in the defense" of the insured.  <u>Ticor</u>

15  <u>Title Ins. Co. v. Employers Ins. of Wausau</u>, 40 Cal. App. 4th

16  1699, 1707 (1st Dist. 1995) (citing <u>Signal Companies, Inc. v.</u>

17  <u>Harbor Ins. Co.</u>, 27 Cal. 3d 359, 365 (1980)).  In some instances,

18  excess insurers may assume the obligations of the primary insurer

19  before exhaustion occurs.  <u>Id.</u> at 1708-09 (finding excess insurer

20  could defend when the primary insurer was insolvent or refused to

21  defend).  But in the environmental context, primary coverage

22  cannot be exhausted "until a remediation plan is approved which

23  clearly establishes that the costs of remediation will exceed the

24  primary indemnity limits."  <u>Cty. of Santa Clara v. USF & G</u>, 868

25  F. Supp. 274, 280 (N.D. Cal. 1994).

26        While DTSC vaguely seeks to recover cleanup costs from

27  C&A Products' "historic insurers" (Docket No. 197-4), DTSC has

28  yet to obtain judicial approval for C&A Products' portion of the

5

1  remediation plan[3] and failed to determine "which of C&A Products'

2  insurers, if any, to proceed against." (Opp. to Mot. to

3  Intervene and Vacate Default at 6 n.5.) Consequently, because

4  DTSC has yet to determine which primary insurer, if any, will be

5  responsible for C&A Products' damages, the parties and the court

6  do not know what the "primary indemnity limits" are. Absent this

7  information, the court cannot conclude that primary coverage is

8  exhausted and that excess insurers can properly intervene. See

9  Cty. of Santa Clara, 868 F. Supp. at 280. Accordingly, Allianz's

10 motion to intervene and set aside default will also be denied.

11      IT IS THEREFORE ORDERED that the motions to intervene

12 and vacate default filed Continental (Docket No. 205), Century

13 (Docket No. 217), and Allianz (Docket No. 222), be, and the same

14 thereby are, DENIED.

15 Dated:  December 3, 2019

16

17      WILLIAM B. SHUBB
        UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24
_____

25      [3]    Plaintiffs did not include the amount they sought to
        recover in their First Amended Complaint, but have since asserted
26      C&A Products owes them $3,219,449.85 in their motion for default
        judgment. (Mot. for Default J. ¶ 5(a) (Docket No. 184).) This
27      court expresses no opinion as to the merit of that determination
        and may hold a "prove-up" hearing in the future.

28

6

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 10960 Wilshire Boulevard, 18th Floor, Los Angeles, CA 90024-3804.

On January 3, 2019, I served the following document(s) described as **JOINT NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT; REPRESENTATION STATEMENT** on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 3, 2019, at Los Angeles, California.

*/s/ Christina Samayoa*
Christina Samayoa

**SERVICE LIST**

*California Dept. of Toxic Substances Control, et al. v. Jim Dobbas, Inc., et al,*
*United States District Court, Eastern District of California*
**Case No. 2:14-cv-0595-WBS-EFB**

| | |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>EDWARD H. OCHOA<br>Supervising Deputy Attorney General<br>OLIVIA W. KARLIN, State Bar No. 150432<br>LAURA J. ZUCKERMAN (Counsel for service)<br>State Bar No. 161896<br>Deputy Attorneys General<br>1515 Clay Street, 20th Floor<br>Oakland, CA 94612<br>Telephone: (510) 879-1299<br>Fax: (510) 622-2270<br>E-mail: Laura.Zuckerman@doj.ca.gov **Attorneys for Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account** | Alexander Eugene Potente<br>Clyde & Co US LLP<br>101 2nd Street, Suite 2400<br>San Francisco, CA 94105<br>Telephone: (415) 365-9800<br>Fax: (415) 365-9801<br>Email: alex.potente@clydeco.us<br>LEAD ATTORNEY<br>ATTORNEY TO BE NOTICED<br>**Attorneys for Proposed Intervenor, THE TRAVELERS INDEMNITY COMPANY** |
| U.S. MAIL<br><br>Brian M. Rostocki<br>Reed Smith LLP - Delaware<br>1201 Market Street - Suite 1500<br>Wilmington, DE 19801<br>**Registered Agent for C&A Products, LLC** | Sara M. Thorpe<br>Randall P. Berdan<br>Nicolaides Fink Thorpe Michaelides Sullivan LLP<br>101 Montgomery Street, Suite 2300<br>San Francisco, CA 94104<br>Telephone: (415) 745-3772<br>Fax: (415) 745-3771<br>Email: ssthorpe@nicolaidesllp.com<br>LEAD ATTORNEY<br>ATTORNEY 70 BE NOTICED<br>**Attorneys for Proposed Intervenor, THE CONTINENTAL INSURANCE COMPANY** |

# U.S. District Court
# Eastern District of California - Live System (Sacramento)
# CIVIL DOCKET FOR CASE #: 2:14-cv-00595-WBS-JDP

CA Dept. of Toxic Substances Control et al v. Jim Dobbas, Inc. et al

Assigned to: Senior Judge William B. Shubb

Referred to: Magistrate Judge Jeremy D. Peterson

Demand: $2,202,000

Related Case: 2:19-cv-01892-WBS-JDP

Case in other court: US Court of Appeals, 20-15029

Cause: 42:9607 Real Property Tort to Land

Date Filed: 03/03/2014

Jury Demand: None

Nature of Suit: 893 Environmental Matters

Jurisdiction: Federal Question

**Plaintiff**

**California Department of Toxic Substances Control**

represented by **Laura Zuckerman**
State Of California Department Of Justice
Attorney General's Office
1515 Clay Street, 20th Floor
Oakland, CA 94612
510-622-2174
Fax: 510-622-2270
Email: laura.zuckerman@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
Office Of The Attorney General, State Of California
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
213-897-0473
Fax: 213-897-2802
Email: Olivia.Karlin@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Martin Thornton**
Gray Duffy, LLP
15760 Ventura Boulevard
16th Floor
Encino, CA 91436
818-907-4023
Fax: 818-783-4551
Email: tthornton@grayduffylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
Office Of The Attorney General, California

Dept. Of Justice
1300 I Street, Suite 125
Sacramento, CA 95814
916-323-5184
Fax: 916-327-2319
Email: Dennis.Beck@doj.ca.gov
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
State of California
Office of the Attorney General
300 South Spring Street
Suite 1702
Los Angeles, CA 90013
213-897-2628
Fax: 213-897-2802
Email: thomas.heller@doj.ca.gov
*TERMINATED: 02/27/2015*

**Plaintiff**

**Toxic Substances Control Account**     represented by **Laura Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy Martin Thornton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
(See above for address)
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
(See above for address)
*TERMINATED: 02/27/2015*

V.

**Defendant**

**Jim Dobbas, Inc.**     represented by **Jennifer Hartman King**
*TERMINATED: 12/22/2016*     Hartman King, PC
520 Capitol Mall
Suite 750
Sacramento, CA 95814
916-379-7530
Fax: 916-379-7535

**ER-811**

Email: jhartmanking@hartmankinglaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole R. Gleason**
Diepenbrock Elkin Gleason LLP
500 Capitol Mall
Suite 2200
Sacramento, CA 95814
916-492-5000
Fax: 916-446-2840
Email: ngleason@diepenbrock.com

**Defendant**

**Continental Rail, Inc.**

**Defendant**

**David Van Over**              represented by    **David Van Over, PRO-SE E-FILER**
*TERMINATED: 03/21/2018*                          216 F Street #108
                                                  Davis, CA 95616
                                                  775-830-3888
                                                  Email: david.vanover@gmail.com
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

**Defendant**

**Pacific Wood Preserving**

**Defendant**

**West Coast Wood Preserving, LLC**    represented by    **Lester Owen Brown**
*Limited Liability Company*                              Perkins Coie LLP
*TERMINATED: 09/16/2015*                                 1888 Century Park East
                                                         Suite 1700
                                                         Los Angeles, CA 90067
                                                         310-788-3203
                                                         Fax: 310-788-3399
                                                         Email: lbrown@perkinscoie.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Collins & Aikman Products, LLC**

V.

**Intervenor Defendant**

**Allstate Insurance Company**       represented by    **Maria S. Quintero**
                                                       Hinshaw & Culbertson, LLP
                                                       One California Street
                                                       18th Floor
                                                       San Francisco, CA 94111
                                                       415-362-6000
                                                       Fax: 415-834-9070

**ER-812**

Email: mquintero@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Travelers Indemnity Company**                    represented by    **Alexander Eugene Potente**
*TERMINATED: 10/22/2019*                                             Clyde & Co US LLP
                                                                     4 Embarcadero
                                                                     Suite 1350
                                                                     San Francisco, CA 94111
                                                                     415-365-9800
                                                                     Fax: 415-365-9801
                                                                     Email: alex.potente@clydeco.us
                                                                     *TERMINATED: 10/22/2019*
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Intervenor**

**The Continental Insurance Company**              represented by    **Sara M. Thorpe**
*TERMINATED: 12/04/2019*                                             Nicolaides, Fink, et al.,
                                                                     101 Montgomery St.
                                                                     Suite 2300
                                                                     San Francisco, CA 94104
                                                                     415-745-3772
                                                                     Fax: 415-745-3771
                                                                     Email: sthorpe@nicolaidesllp.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Stratton Peter Constantinides**
                                                                     Wood Smith Henning & Berman LLP
                                                                     10960 Wilshire Blvd.
                                                                     18th Floor
                                                                     Los Angeles, CA 90024
                                                                     310-481-7647
                                                                     Email: sconstantinides@wshblaw.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

**Intervenor**

**Century Indemnity Company**                      represented by    **Stratton Peter Constantinides**
*TERMINATED: 12/04/2019*                                             (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Thomas Vandenburg**
                                                                     Wood Smith Henning & Berman LLP
                                                                     10960 Wilshire Blvd., 18th Floor
                                                                     Los Angeles, CA 90024
                                                                     310-481-7600
                                                                     Fax: 310-481-7650
                                                                     Email: tvandenburg@wshblaw.com

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Allianz Underwriters Insurance Company**
*TERMINATED: 12/04/2019*

represented by **Stratton Peter Constantinides**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Vandenburg**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Jim Dobbas, Inc.**

represented by **Jennifer Hartman King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole R. Gleason**
(See above for address)

V.

**Cross Defendant**

**Pacific Wood Preserving**

**Cross Defendant**

**Continental Rail, Inc.**

**Cross Defendant**

**David Van Over**

represented by **David Van Over, PRO-SE E-FILER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**West Coast Wood Preserving, LLC**
*Limited Liability Company*

represented by **Lester Owen Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Jim Dobbas, Inc.**
*TERMINATED: 12/22/2016*

represented by **Jennifer Hartman King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole R. Gleason**
(See above for address)

4/2/2021                                     Live 6.3.3 LM/ECF ous District Court for Eastern California

V.

### Counter Defendant

**California Department of Toxic Substances Control**
*TERMINATED: 12/22/2016*

represented by **Laura Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
(See above for address)
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
(See above for address)
*TERMINATED: 02/27/2015*

### Counter Defendant

**Toxic Substances Control Account**
*TERMINATED: 12/22/2016*

represented by **Laura Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
(See above for address)
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
(See above for address)
*TERMINATED: 02/27/2015*

### Cross Claimant

**David Van Over**

represented by **David Van Over, PRO-SE E-FILER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Cross Defendant

**Pacific Wood Preserving**

### Cross Defendant

**West Coast Wood Preserving, LLC**

represented by **Lester Owen Brown**

**ER-815**

Limited Liability Company

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**West Coast Wood Preserving, LLC**
*Limited Liability Company*

represented by **Lester Owen Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Jim Dobbas, Inc.**

represented by **Jennifer Hartman King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole R. Gleason**
(See above for address)

**Cross Claimant**

**West Coast Wood Preserving, LLC**
*Limited Liability Company*

represented by **Lester Owen Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**David Van Over**

represented by **David Van Over, PRO-SE E-FILER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**West Coast Wood Preserving, LLC**
*Limited Liability Company*
*TERMINATED: 09/16/2015*

represented by **Lester Owen Brown**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**California Department of Toxic Substances Control**
*TERMINATED: 09/16/2015*

represented by **Laura Zuckerman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
(See above for address)
*LEAD ATTORNEY*

**ER-816**

*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
(See above for address)
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
(See above for address)
*TERMINATED: 02/27/2015*

**Counter Defendant**

**Toxic Substances Control Account**     represented by **Laura Zuckerman**
*TERMINATED: 09/16/2015*                                      (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Olivia W. Karlin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dennis L. Beck , Jr.**
(See above for address)
*TERMINATED: 07/23/2015*

**Thomas Gerald Heller**
(See above for address)
*TERMINATED: 02/27/2015*

**Cross Claimant**

**Jim Dobbas, Inc.**     represented by **Jennifer Hartman King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole R. Gleason**
(See above for address)

V.

**Cross Defendant**

**Collins & Aikman Products, LLC**

**Cross Defendant**

**Continental Rail, Inc.**

**Cross Defendant**

**Pacific Wood Preserving**

**Cross Defendant**

**David Van Over**     represented by **David Van Over, PRO-SE E-FILER**
(See above for address)

LEAD ATTORNEY
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**West Coast Wood Preserving, LLC**          represented by **Lester Owen Brown**
*Limited Liability Company*                                    (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2014 | 1 | COMPLAINT against All Defendants by California Department of Toxic Substances Control, Toxic Substances Control Account. (Filing fee $ 400, receipt number 0972-5207641) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Civil Cover Sheet)(Heller, Thomas) (Entered: 03/03/2014) |
| 03/04/2014 | 2 | SUMMONS ISSUED as to *Continental Rail, Inc., Jim Dobbas, Inc., Pacific Wood Preserving, David Van Over, West Coast Wood Preserving, LLC* with answer to complaint due within *21* days. Attorney *Thomas Gerald Heller* *State of California, Office of the Attorney General* *300 South Spring Street, Suite 1702* *Los Angeles, CA 90013*. (Kastilahn, A) (Entered: 03/04/2014) |
| 03/04/2014 | 3 | CIVIL NEW CASE DOCUMENTS ISSUED; Initial Scheduling Conference set for 6/9/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Consent Form, # 2 VDRP) (Kastilahn, A) (Entered: 03/04/2014) |
| 03/21/2014 | 4 | WAIVER of SERVICE RETURNED EXECUTED: West Coast Wood Preserving, LLC Waiver sent on 3/14/2014, answer due 5/13/2014. (Heller, Thomas) (Entered: 03/21/2014) |
| 03/21/2014 | 5 | CERTIFICATE of SERVICE for 3 Civil New Case Documents for WBS by plaintiffs. (Heller, Thomas) Modified on 3/24/2014 (Marciel, M) (Entered: 03/21/2014) |
| 04/18/2014 | 6 | WAIVER of SERVICE RETURNED EXECUTED: Jim Dobbas, Inc. Waiver sent on 3/14/2014. (Heller, Thomas) Modified on 4/21/2014 (Mena-Sanchez, L). (Entered: 04/18/2014) |
| 04/18/2014 | 7 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 3 Civil New Case Documents for WBS. (Heller, Thomas) (Entered: 04/18/2014) |
| 04/18/2014 | 8 | WAIVER of SERVICE RETURNED EXECUTED: David Van Over Waiver sent on 3/14/2014. (Heller, Thomas) Modified on 4/21/2014 (Mena-Sanchez, L). (Entered: 04/18/2014) |
| 04/18/2014 | 9 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 3 Civil New Case Documents for WBS. (Heller, Thomas) (Entered: 04/18/2014) |
| 05/01/2014 | 10 | STIPULATION to Extend Defendant Jim Dobbas, Inc.'s Time to Respond to Complaint by Jim Dobbas, Inc. Attorney King, Jennifer Hartman added. (King, Jennifer) (Entered: 05/01/2014) |
| 05/02/2014 | 11 | SUMMONS RETURNED EXECUTED: Continental Rail, Inc. served on 4/17/2014. (Heller, Thomas) (Entered: 05/02/2014) |
| 05/12/2014 | 12 | SUMMONS RETURNED EXECUTED: Pacific Wood Preserving served on 4/27/2014, |

**ER-818**

| | | |
|---|---|---|
| | | answer due 5/19/2014. (Heller, Thomas) (Entered: 05/12/2014) |
| 05/12/2014 | 13 | STIPULATION to Extend Defendant David Van Over's Time to Respond to the Complaint by California Department of Toxic Substances Control, Toxic Substances Control Account. (Heller, Thomas) (Entered: 05/12/2014) |
| 05/13/2014 | 14 | STIPULATION To Extend Time To Respond To Complaint Re: Defendant West Coast Wood Preserving, LLC by West Coast Wood Preserving, LLC. Attorney Brown, Lester Owen added. (Brown, Lester) (Entered: 05/13/2014) |
| 05/23/2014 | 15 | JOINT STATUS REPORT by California Department of Toxic Substances Control, Toxic Substances Control Account. (Heller, Thomas) (Entered: 05/23/2014) |
| 05/30/2014 | 16 | REQUEST FOR ENTRY OF DEFAULT as to Continental Rail, Inc. by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Declaration of Thomas G. Heller, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Proof of Service) (Heller, Thomas) (Entered: 05/30/2014) |
| 05/30/2014 | 17 | REQUEST FOR ENTRY OF DEFAULT as to Pacific Wood Preserving by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Declaration of Thomas G. Heller, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proof of Service) (Heller, Thomas) (Entered: 05/30/2014) |
| 06/02/2014 | 18 | CLERK'S ENTRY OF DEFAULT as to *Continental Rail, Inc.* (Michel, G) (Entered: 06/02/2014) |
| 06/02/2014 | 19 | CLERK'S ENTRY OF DEFAULT as to *Pacific Wood Preserving*. (Michel, G) (Entered: 06/02/2014) |
| 06/02/2014 | 20 | STATUS (PRETRIAL SCHEDULING) ORDER signed by Senior Judge William B. Shubb on 5/30/2014: Parties shall serve Initial Disclosures by no later than 7/30/2014. All Discovery shall be conducted so as to be completed by 3/30/2016. Disclosure of Expert Witnesses is due no later than 4/29/2016. All Motions to be filed by 9/2/2016. Final Pretrial Conference set for 11/7/2016 at 2:00 PM and Bench Trial set for 1/4/2017 at 9:00 AM in Courtroom 5 (WBS). (Marciel, M) (Entered: 06/02/2014) |
| 06/04/2014 | 21 | CERTIFICATE OF SERVICE re 18 Clerk's Entry of Default, 19 Clerk's Entry of Default, 20 Status (Pretrial Scheduling) Order by California Department of Toxic Substances Control, Toxic Substances Control Account. (Heller, Thomas) Modified on 6/5/2014 (Michel, G). (Entered: 06/04/2014) |
| 06/10/2014 | 22 | ANSWER with Jury Demand by West Coast Wood Preserving, LLC.(Brown, Lester) (Entered: 06/10/2014) |
| 06/10/2014 | 23 | ANSWER with Jury Demand, CROSSCLAIM against Pacific Wood Preserving, Continental Rail, Inc., David Van Over, West Coast Wood Preserving, LLC by Jim Dobbas, Inc., COUNTERCLAIM against California Department of Toxic Substances Control, Toxic Substances Control Account by Jim Dobbas, Inc.. by Jim Dobbas, Inc.. (Attachments: # 1 Jim Dobbas Inc.'s Counterclaim, # 2 Exhibit A to Counterclaim, # 3 Exhibit B to Counterclaim, # 4 Jim Dobbas Inc.'s Cross-Claims, # 5 Exhibit A to Cross-Claim)(King, Jennifer) Modified on 6/12/2014 (Zignago, K.). (Entered: 06/10/2014) |
| 06/10/2014 | 24 | ANSWER with Jury Demand, CROSS-CLAIM against Pacific Wood Preserving, West Coast Wood Preserving, LLC by David Van Over. by David Van Over. (Attachments: # 1 Proposed Order) (Manzer, C) Modified on 9/13/2019 (Kirksey Smith, K). (Entered: 06/12/2014) |
| 06/10/2014 | 42 | [DISREGARD SEE ECF NO. 55] PROPOSED ORDER granting access to electronic filing by David Van Over. (Michel, G) Modified on 10/10/2014 (Shaddox-Waldrop, A). |

**ER-819**

| | | (Entered: 09/08/2014) |
|---|---|---|
| 06/24/2014 | 25 | NOTICE of Errata to 23 Counterclaim by Jim Dobbas, Inc. (King, Jennifer) Modified on 6/25/2014 (Zignago, K.) (Entered: 06/24/2014) |
| 07/01/2014 | 26 | STIPULATION extending time to respond to Counterclaim of defendant Jim Dobbas, Inc. by California Department of Toxic Substances Control. (Beck, Dennis) Modified on 7/2/2014 (Marciel, M) (Entered: 07/01/2014) |
| 07/07/2014 | 27 | MOTION TO DISMISS; MOTION TO STRIKE by California Department of Toxic Substances Control, Toxic Substances Control Account. Motion Hearing SET for 8/25/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order, # 3 Proof of Service) (Heller, Thomas) Modified on 7/8/2014 (Michel, G.) (Entered: 07/07/2014) |
| 07/07/2014 | 28 | STIPULATION FOR EXTENSION OF TIME to respond to the 24 Counterclaim by West Coast Wood Preserving, LLC. (Attachments: # 1 Signataure Page) (Brown, Lester) Modified on 7/8/2014 (Michel, G.) (Entered: 07/07/2014) |
| 07/07/2014 | 29 | STIPULATION FOR EXTENSION OF TIME to respond to the 23 Crossclaim by West Coast Wood Preserving, LLC. (Brown, Lester) Modified on 7/8/2014 (Michel, G.). (Entered: 07/07/2014) |
| 07/07/2014 | 30 | NOTICE OF ERRATA re 28 Stipulation for Extension of Time by West Coast Wood Preserving, LLC. (Attachments: # 1 Exhibit 1) (Brown, Lester) Modified on 7/8/2014 (Michel, G.). (Entered: 07/07/2014) |
| 08/04/2014 | 31 | ANSWER with Jury Demand, CROSSCLAIM against Jim Dobbas, Inc. by West Coast Wood Preserving, LLC. by West Coast Wood Preserving, LLC.(Brown, Lester) (Entered: 08/04/2014) |
| 08/04/2014 | 32 | ANSWER with Jury Demand, CROSSCLAIM against David Van Over by West Coast Wood Preserving, LLC. by West Coast Wood Preserving, LLC.(Brown, Lester) (Entered: 08/04/2014) |
| 08/07/2014 | 33 | STIPULATION and PROPOSED ORDER to Continue Hearing on Plaintiffs' 27 Motion to Dismiss Counterclaim and to Strike Portions of Answers, by Jim Dobbas, Inc.. (King, Jennifer) Modified on 8/8/2014 (Kastilahn, A). (Entered: 08/07/2014) |
| 08/11/2014 | 34 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 8/8/14 re 27 Motion to Dismiss/Motion to Strike : Motion Hearing reset for 9/8/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Manzer, C) (Entered: 08/11/2014) |
| 08/19/2014 | 35 | STIPULATION and PROPOSED ORDER to 27 strike portions of West Coast Preserving, LLC's Answer. (Attachments: # 1 Proof of Service) (Heller, Thomas) Modified on 8/20/2014 (Marciel, M) (Entered: 08/19/2014) |
| 08/20/2014 | 36 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 8/20/14 ORDERING that WCWP's demand for a jury trial and prayer for attorney's fees are stricken from WCWP's Answer to Plaintiffs' Complaint; WCWP's Fifth (Laches), Tenth (Minimal Contribution), Eleventh (Waiver), and Twelfth (Failure to Mitigate) Affirmative Defenses are stricken from WCWP's Answer to Plaintiffs' Complaint; and If WCWP is found to be liable to Plaintiffs in this case, nothing in this stipulation shall affect WCWP's rights under 42 U.S.C. section 9613(f)(1) with respect to the Court's allocation of response costs in resolving contribution claims among liable persons. This stipulation does not resolve the portions of the Motion that concern the counterclaim and answer of Defendant Jim Dobbas, Inc. and the answer of Defendant David Van Over. Therefore, the |

| | | |
|---|---|---|
| | | Motion remains set for hearing at the above date and time. (Becknal, R) (Entered: 08/20/2014) |
| 08/21/2014 | 37 | STIPULATION extending time to respond to West Coast Wood Preserving's 23 Crossclaim by Jim Dobbas, Inc.. (King, Jennifer) Modified on 8/25/2014 (Marciel, M) (Entered: 08/21/2014) |
| 08/22/2014 | 38 | OPPOSITION by Jim Dobbas, Inc. to 27 Motion to DismissMotion to Strike. (King, Jennifer) (Entered: 08/22/2014) |
| 08/28/2014 | 40 | SUMMONS RETURNED UNEXECUTED as to Continental Rail, Inc. (Manzer, C) (Entered: 08/29/2014) |
| 08/29/2014 | 39 | REPLY by California Department of Toxic Substances Control, Toxic Substances Control Account re 38 Opposition to Motion, 27 Motion to DismissMotion to Strike. (Attachments: # 1 Proof of Service)(Heller, Thomas) (Entered: 08/29/2014) |
| 09/08/2014 | 41 | MINUTES (Text Only) for proceedings held before Senior Judge William B. Shubb: MOTION HEARING held on 9/8/2014 re 27 Plaintiffs' Motion to Dismiss Defendant Jim Dobbas, Inc.'s Counterclaim, and to Strike Portions of Answers of Defendants Jim Dobbas, Inc., David Van Over and West Coast Wood Preserving, LLC. Counsel argue. Court grants defendant David Van Over's request for leave to file an opposition, and orders the opposition to be filed no later than 9/29/2014. Plaintiffs' reply shall be filed no later than 10/6/2014. Plaintiffs' Motion to Strike Portions of Answer of Defendant David Van Over 27 is reset for 10/20/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. Plaintiff's counsel, Thomas Heller, is granted leave to appear by telephone on 10/20/2014. Court takes the motion as to the remaining defendants UNDER SUBMISSION. Court shall prepare and issue a separate order. Plaintiffs Counsel Thomas Heller (via telephone), Dennis Beck, Jr. present. Defendants Counsel Jennife Hartman King, David Van Over (pro per), Lester Brown present. Court Reporter: Kathy Swinhart. (Kirksey Smith, K) (Entered: 09/08/2014) |
| 09/08/2014 | | SERVICE BY MAIL: MINUTES (TEXT ONLY) of 9/8/2014 motion hearing, served on David Van Over. (Kirksey Smith, K) (Entered: 09/08/2014) |
| 09/16/2014 | 43 | ORDER signed by Senior Judge William B. Shubb on 9/16/14 DENYING 27 Motion to Dismiss and GRANTING in part and DENYING in part 27 Motion to Strike. Jim Dobbas, Inc. has 20 days to file an amended answer if it can do so consistent with this order. (Manzer, C) (Entered: 09/16/2014) |
| 09/16/2014 | | SERVICE BY MAIL: 43 Order on Motions served on David Van Over. (Manzer, C) (Entered: 09/16/2014) |
| 09/22/2014 | 44 | NOTICE of APPEARANCE by Jennifer Hartman King on behalf of Jim Dobbas, Inc.. (King, Jennifer) (Entered: 09/22/2014) |
| 09/25/2014 | 45 | AMENDED ANSWER and Jury Demand to Plaintiffs California Department of Toxic Substances Control and the Toxic Substances Control Account Complaint by Jim Dobbas, Inc..(King, Jennifer) Modified on 9/26/2014 (Becknal, R). (Entered: 09/25/2014) |
| 09/25/2014 | 46 | ANSWER and Jury Demands to West Coast Wood Preserving, LLC's Crossclaim by Jim Dobbas, Inc.(King, Jennifer) Modified on 9/26/2014 (Becknal, R). (Entered: 09/25/2014) |
| 09/29/2014 | 48 | OPPOSITION to 27 Motion to Strike by Defendant David Van Over. (Michel, G) (Entered: 09/30/2014) |
| 09/30/2014 | 47 | ANSWER to 23 Counterclaim by California Department of Toxic Substances Control, Toxic Substances Control Account. (Beck, Dennis) Modified on 10/1/2014 (Michel, G). (Entered: 09/30/2014) |

**ER-821**

| 10/02/2014 | 49 | MOTION for Leave to File Counterclaim by West Coast Wood Preserving, LLC. Motion Hearing set for 11/3/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Declaration of Lester O. Brown, # 2 Exhibit A to Brown Declaration, # 3 Proposed Order)(Brown, Lester) (Entered: 10/02/2014) |
|---|---|---|
| 10/02/2014 | 50 | MOTION for Leave to File Third Party Complaint by West Coast Wood Preserving, LLC. Motion Hearing set for 11/3/2014 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Declaration of Lester O. Brown, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Proposed Order) (Brown, Lester) Modified on 10/3/2014 (Reader, L). (Entered: 10/02/2014) |
| 10/02/2014 | 51 | [DISREGARD SEE ECF NO. 55] PROPOSED ORDER to allow defendant permission to file electronically by David Van Over. (Reader, L) Modified on 10/10/2014 (Shaddox-Waldrop, A). (Entered: 10/03/2014) |
| 10/06/2014 | 52 | REPLY by plaintiffs to defendants' 48 Opposition to Motion to Dismiss and to Strike. (Attachments: # 1 Proof of Service) (Heller, Thomas) Modified on 10/7/2014 (Marciel, M) (Entered: 10/06/2014) |
| 10/06/2014 | 53 | WITHDRAWAL of 50 Motion for Leave to file Third-Party Complaint by West Coast Wood Preserving, LLC. (Brown, Lester) Modified on 10/7/2014 (Marciel, M) (Entered: 10/06/2014) |
| 10/06/2014 | 54 | MINUTE ORDER (TEXT ONLY): Pursuant to the Withdrawal of Motion 53 , the Motion for Leave to File Third Party Complaint 50 filed by West Coast Wood Preserving, LLC is WITHDRAWN. The 11/3/2014 hearing for the Motion 50 is VACATED. (Shaddox-Waldrop, A) (Entered: 10/06/2014) |
| 10/06/2014 | | SERVICE BY MAIL: 54 Minute Order served on David Van Over. (Shaddox-Waldrop, A) (Entered: 10/06/2014) |
| 10/09/2014 | 55 | EX PARTE APPLICATION and PROPOSED ORDER by defendant David Van Over for permission to file and receive documents electronically. (Marciel, M) Modified on 10/15/2014 (Kaminski, H). (Entered: 10/10/2014) |
| 10/10/2014 | 56 | STATEMENT of NON-OPPOSITION TO EX PARTE APPLICATION by Defendant West Coast Wood Preserving, LLC re 55 Proposed Order. (Brown, Lester) (Entered: 10/10/2014) |
| 10/10/2014 | 57 | STATEMENT of Non-Opposition by Plaintiffs California Department of Toxic Substances Control, Toxic Substances Control Account, Counter Defendants California Department of Toxic Substances Control, Toxic Substances Control Account re 55 Proposed Order. (Attachments: # 1 Proof of Service)(Beck, Dennis) (Entered: 10/10/2014) |
| 10/10/2014 | 58 | STATEMENT of Non-Opposition to Van Over's Ex Parte Application Requesting Permission to File and Receive Documents Electronically by Defendant Jim Dobbas, Inc. re 55 Proposed Order. (King, Jennifer) (Entered: 10/10/2014) |
| 10/10/2014 | 59 | REQUEST for Telephonic Appearance by Jennifer Hartman King at Hearing by Jim Dobbas, Inc. re 27 Motion to DismissMotion to Strike filed by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Proposed Order)(King, Jennifer) (Entered: 10/10/2014) |
| 10/15/2014 | 60 | ORDER signed by Senior Judge William B. Shubb on 10/14/14: 59 Request to appear telephonically at the hearing on October 20, 2014 be, and the same hereby is, DENIED. (Kaminski, H) (Entered: 10/15/2014) |
| 10/15/2014 | 61 | ORDER granting 55 EX PARTE APPLICATION for permission to file and receive |

**ER-822**

| | | documents electronically signed by Senior Judge William B. Shubb on 10/14/14. (Kaminski, H) (Entered: 10/15/2014) |
|---|---|---|
| 10/16/2014 | 62 | ORDER signed by Senior Judge William B. Shubb on 10/16/2014 GRANTING 27 Plaintiffs' motion to strike the jury demand of defendant David van Over, GRANTING 27 Plaintiffs' motion to strike the prayer for attorney's fees of defendant David van Over and DENYING 27 Plaintiffs' motion to strike David van Over affirmative defenses with respect to the ninth, tenth, and thirty-four affirmative defenses and GRANTED in all other aspects. David Van Over has 20 days from the date of this order to file an amended answer and counterclaim consistent with this order. (Donati, J) (Entered: 10/16/2014) |
| 10/16/2014 | 63 | MINUTE ORDER (TEXT ONLY): In light of the 10/16/2014 Order 62 , the 10/20/2014 hearing on the Plaintiffs' Motion to Strike Portions of Answer of Defendant David Van Over 27 is VACATED. (Shaddox-Waldrop, A) (Entered: 10/16/2014) |
| 10/17/2014 | 64 | STATEMENT of NON-OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to 49 MOTION for Leave to File Counterclaim. (Beck, Dennis) (Entered: 10/17/2014) |
| 10/20/2014 | 65 | STATEMENT of NON-OPPOSITION by Jim Dobbas, Inc. to 49 MOTION for Leave to File Counterclaim. (King, Jennifer) (Entered: 10/20/2014) |
| 10/23/2014 | 66 | ORDER signed by Senior Judge William B. Shubb on 10/22/14 ORDERING that WCWP's MOTION for Leave to file Counterclaim 49 is GRANTED. (Mena-Sanchez, L) (Entered: 10/23/2014) |
| 10/27/2014 | 67 | COUNTERCLAIM against All Plaintiffs by West Coast Wood Preserving, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Brown, Lester) (Entered: 10/27/2014) |
| 11/14/2014 | 68 | MOTION for LEAVE to AMEND 1 COMPLAINT by plaintiffs. Motion Hearing set for 12/15/2014 at 2:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Thomas G. Heller, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Proposed Order, # 9 Proof of Service) (Heller, Thomas) Modified on 11/26/2014 (Marciel, M) (Entered: 11/14/2014) |
| 11/18/2014 | 69 | ANSWER by California Department of Toxic Substances Control, Toxic Substances Control Account.(Heller, Thomas) (Entered: 11/18/2014) |
| 11/25/2014 | 70 | STATEMENT of NON-OPPOSITION by defendant West Coast Wood Preserving, LLC to 68 Motion for Leave to Amend 1 Complaint. (Brown, Lester) Modified on 11/26/2014 (Marciel, M) (Entered: 11/25/2014) |
| 11/26/2014 | 71 | STATEMENT of NON-OPPOSITION by defendant Jim Dobbas, Inc. to plaintiffs' 68 Motion for Leave to Amend 1 Complaint. (King, Jennifer) Modified on 12/1/2014 (Marciel, M) (Entered: 11/26/2014) |
| 12/01/2014 | 72 | STATEMENT of NON-OPPOSITION by David Van Over to 68 Motion for Leave to Amend 1 Complaint. (Van Over, PRO-SE E-FILER, David) (Entered: 12/01/2014) |
| 12/08/2014 | 73 | REQUEST for JUDICIAL NOTICE by California Department of Toxic Substances Control in re 68 Motion to Amend the Complaint/Petition. (Attachments: # 1 Exhibit A, # 2 Proof of Service)(Beck, Dennis) Modified on 12/9/2014 (Zignago, K.). (Entered: 12/08/2014) |
| 12/08/2014 | 74 | NOTICE of Errata by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Exhibit A - Request for Judicial Notice, # 2 Proof of Service)(Beck, Dennis) (Entered: 12/08/2014) |

| 12/10/2014 | 75 | ORDER signed by Senior Judge William B. Shubb on 12/10/2014 GRANTING 68 Plaintiffs' Motion for leave to file a First Amended Complaint. (Kirksey Smith, K) (Entered: 12/10/2014) |
|---|---|---|
| 12/10/2014 | 76 | MINUTE ORDER (TEXT ONLY): Pursuant to the Court's 75 Order filed 12/10/2014, the parties are hereby notified that the hearing date on 68 Plaintiffs' Motion for Leave to File First Amended Complaint set for 12/15/2014 is VACATED. (Kirksey Smith, K) (Entered: 12/10/2014) |
| 12/11/2014 | 77 | FIRST AMENDED COMPLAINT against All Defendants by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Heller, Thomas) (Entered: 12/11/2014) |
| 12/12/2014 | 78 | SUMMONS ISSUED as to *Collins & Aikman Products, LLC* with answer to complaint due within *21* days. Attorney *Thomas Gerald Heller* *State of California, Office of the Attorney General* *300 South Spring Street, Suite 1702* *Los Angeles, CA 90013*. (Verduzco, M) (Entered: 12/12/2014) |
| 12/15/2014 | 79 | MOTION for SUMMARY JUDGMENT by West Coast Wood Preserving, LLC. Motion Hearing set for 1/26/2015 at 2:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Statement of Undisputed Facts, # 2 Declaration of Stephen Ryan, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Proposed Order) (Brown, Lester) Modified on 12/16/2014 (Reader, L). (Attachment 3 replaced on 12/18/2014) (Kaminski, H). (Entered: 12/15/2014) |
| 12/15/2014 | 80 | DECLARATION of Lester O. Brown in SUPPORT OF 79 MOTION for SUMMARY JUDGMENT. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z)(Brown, Lester) Modified on 12/16/2014 (Reader, L). (Entered: 12/15/2014) |
| 12/15/2014 | 81 | REQUEST for JUDICIAL NOTICE by West Coast Wood Preserving, LLC in re 79 Motion for Summary Judgment,. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit M, # 13 Exhibit N)(Brown, Lester) Modified on 12/16/2014 (Reader, L). (Entered: 12/15/2014) |
| 12/16/2014 | 82 | NOTICE OF ERRATA Exhibit L Mislabeled as Exhibit M Inadvertently omitted by West Coast Wood Preserving, LLC re 81 Request for Judicial Notice. (Attachments: # 1 Exhibit L - Request for Judicial Notice, # 2 Exhibit M - Request for Judicial Notice) (Brown, Lester) Modified on 12/17/2014 (Reader, L). (Entered: 12/16/2014) |
| 12/16/2014 | 83 | REQUEST for Removal and Replacement of Incorrectly Filed Document by West Coast Wood Preserving, LLC re 79 MOTION for SUMMARY JUDGMENT filed by West Coast Wood Preserving, LLC. (Attachments: # 1 Corrected Exhibit A - Ryan Declaration, # 2 Proposed Order, # 3 Corrected 79-3 attached to Proposed Order)(Brown, Lester) (Entered: 12/16/2014) |
| 12/18/2014 | 84 | ORDER signed by Senior Judge William B. Shubb on 12/17/14: The Clerk of the Court shall remove Docket Number 79-3, and replace it with the corrected version, a copy of which is attached to this Order. (Kaminski, H) (Entered: 12/18/2014) |
| 12/24/2014 | 85 | ANSWER with Jury Demand by Jim Dobbas, Inc.. Attorney Gleason, Nicole R. added. (Gleason, Nicole) (Entered: 12/24/2014) |
| 12/30/2014 | 86 | STIPULATION and PROPOSED ORDER for Continuance of Hearing re 79 MOTION |

**ER-824**

| | | |
|---|---|---|
| | | for SUMMARY JUDGMENT by California Department of Toxic Substances Control, Toxic Substances Control Account. (Heller, Thomas) (Entered: 12/30/2014) |
| 12/31/2014 | 87 | MOTION FOR LEAVE to file an Amended Cross-Claim AMEND by Jim Dobbas, Inc. Motion Hearing SET for 2/9/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Jennifer Hartman King, # 3 Exhibit A, # 4 Exhibit B, # 5 Proposed Order) (King, Jennifer) Modified on 1/5/2015 (Michel, G). (Entered: 12/31/2014) |
| 01/05/2015 | 88 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 12/31/14 ORDERING that the hearing on the MOTION for SUMMARY JUDGMENT 79 is CONTINUED to 2/9/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. All oppositions must be filed and served by 1/23/2015, and any reply must be filed and served by 1/30/2015. (Kastilahn, A) (Entered: 01/05/2015) |
| 01/05/2015 | 89 | ANSWER by West Coast Wood Preserving, LLC.(Brown, Lester) (Entered: 01/05/2015) |
| 01/05/2015 | 90 | MOTION for Leave to File Crossclaim Against Collins & Aikman Products, LLC by West Coast Wood Preserving, LLC. Motion Hearing set for 2/9/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Declaration of Lester O. Brown, # 2 Proposed Order)(Brown, Lester) (Entered: 01/05/2015) |
| 01/05/2015 | 91 | NOTICE by The Corporation Trust Company stating they are unable to accept service for Continental Rail, Inc.. (Zignago, K.) (Entered: 01/06/2015) |
| 01/06/2015 | 92 | SUMMONS RETURNED EXECUTED: Collins & Aikman Products, LLC served on 12/18/2014, answer due 1/8/2015. (Heller, Thomas) (Entered: 01/06/2015) |
| 01/07/2015 | 93 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 77 Amended Complaint. (Heller, Thomas) (Entered: 01/07/2015) |
| 01/09/2015 | 94 | PROPOSED ORDER re Motion for Leave to file a First Amended Crossclaim Judge William B. Shubb by David Van Over. (Attachments: # 1 MOTION FOR LEAVE to file a First Amended Crossclaim, # 2 Proposed First Amended Crossclaim) (Van Over, PRO-SE E-FILER, David) Modified on 1/12/2015 (Michel, G). (Entered: 01/09/2015) |
| 01/20/2015 | 95 | STIPULATION and PROPOSED ORDER to further continue hearing on 79 Motion for Summary Judgment by plaintiffs. (Heller, Thomas) Modified on 1/21/2015 (Marciel, M) (Entered: 01/20/2015) |
| 01/23/2015 | 96 | STATEMENT of NON-OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to 90 MOTION for Leave to File Crossclaim Against Collins & Aikman Products, LLC, 94 Motion for Leave to file a First Amended Crossclaim, 87 Motion for Leave to file an Amended Cross-Claim. (Beck, Dennis) (Entered: 01/23/2015) |
| 01/23/2015 | 97 | STIPULATION and ORDER 95 signed by Senior Judge William B. Shubb on 1/23/2015 continuing 79 Defendant West Coast Wood Preserving, LLC's Motion for Summary Judgment to 3/9/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. All opposition papers to the motion shall be filed and served (via CM/ECF or mail) by 2/20/2015. Any reply papers shall be filed and served (via CM/ECF or mail) by 2/27/2015. (Kirksey Smith, K) (Entered: 01/23/2015) |
| 01/26/2015 | 98 | STATEMENT of NON-OPPOSITION by Jim Dobbas, Inc. to 90 MOTION for Leave to File Crossclaim Against Collins & Aikman Products, LLC, 94 Motion for Leave to file a First Amended Crossclaim. (Gleason, Nicole) (Entered: 01/26/2015) |

| | | |
|---|---|---|
| 02/04/2015 | 99 | ORDER signed by Senior Judge William B. Shubb on 2/3/2015 ORDERING that Defendant Jim Dobbas, Inc.'s 87 motion for leave to file a First Amendment Cross-Claim is GRANTED. Defendant West Coast Wood Preserving's 90 motion for leave to file an amended Answer including new cross-claims is GRANTED. Defendant David van Over's 94 motion for leave to file a First Amendment Cross-Claim is GRANTED. (Zignago, K.) (Entered: 02/04/2015) |
| 02/06/2015 | 100 | MINUTE ORDER (TEXT ONLY): The Court, having issued an 99 Order ruling on 87 Defendant Jim Dobbas, Inc's Motion for Leave to File First Amended Cross-Claim and 90 Defendant West Coast Wood Preserving, LLC's Motion for Leave to File Cross-claim Against Collins & Aikman Products, LLC, hereby VACATES the motion hearing date of 2/9/2015. No appearance is necessary. (Kirksey Smith, K) (Entered: 02/06/2015) |
| 02/11/2015 | 101 | FIRST AMENDED CROSSCLAIM to DTSC's 1 COMPLAINT against Collins & Aikman Products, LLC; Continental Rail, Inc.; Pacific Wood Preserving; David Van Over; and West Coast Wood Preserving, LLC by Jim Dobbas, Inc.; DEMAND for Jury Trial. (King, Jennifer) Modified on 2/12/2015 (Marciel, M) (Entered: 02/11/2015) |
| 02/12/2015 | 102 | SUMMONS ISSUED as to *Collins & Aikman Products, LLC; Continental Rail, Inc.; Pacific Wood Preserving; David Van Over* with answer to complaint due within *21* days. Attorney *Jennifer Hartman King* *King Williams & Gleason LLP* *520 Capitol Mall, Suite 750* *Sacramento, CA 95814* (Marciel, M) (Entered: 02/12/2015) |
| 02/12/2015 | 103 | NOTICE of LODGING of Administrative Record by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Exhibit 1 - Certification and Index, # 2 Proof of Service) (Heller, Thomas) Modified on 2/13/2015 (Marciel, M) (Entered: 02/12/2015) |
| 02/13/2015 | | ACKNOWLEDGEMENT of RECEIPT for 103 Administrative Record - DVD from plaintiffs' counsel Thomas Heller. (Marciel, M) (Entered: 02/13/2015) |
| 02/16/2015 | 104 | NOTICE OF ASSOCIATION OF COUNSEL by California Department of Toxic Substances Control, Toxic Substances Control Account. Attorney Zuckerman, Laura J. ADDED. (Zuckerman, Laura) Modified on 2/17/2015 (Michel, G.). (Entered: 02/16/2015) |
| 02/20/2015 | 105 | ***DISREGARD*** OPPOSITION by Jim Dobbas, Inc. to 79 Motion for Summary Judgment. (King, Jennifer) (Entered: 02/20/2015) |
| 02/20/2015 | 106 | CLERK'S NOTICE re 105 Opposition to Motion: Please DISREGARD filing - Document filed in error. (Marrujo, C) (Entered: 02/20/2015) |
| 02/20/2015 | 107 | OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to 79 Motion for Summary Judgment. (Attachments: # 1 Response to Statement of Undisputed Facts)(Heller, Thomas) (Entered: 02/20/2015) |
| 02/20/2015 | 108 | DECLARATION of Peter MacNicholl in OPPOSITION TO 79 Motion for Summary Judgment. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15)(Heller, Thomas) (Entered: 02/20/2015) |
| 02/20/2015 | 109 | DECLARATION of Laura J. Zuckerman in OPPOSITION TO 79 Motion for Summary Judgment. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12)(Heller, Thomas) (Entered: 02/20/2015) |
| 02/20/2015 | 110 | REQUEST for JUDICIAL NOTICE by California Department of Toxic Substances Control, Toxic Substances Control Account in re 107 Opposition to Motion. |

**ER-826**

| | | (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Heller, Thomas) (Entered: 02/20/2015) |
|---|---|---|
| 02/20/2015 | 111 | RESPONSE by California Department of Toxic Substances Control, Toxic Substances Control Account to 81 Request for Judicial Notice,. (Heller, Thomas) (Entered: 02/20/2015) |
| 02/20/2015 | 112 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 110 Request for Judicial Notice, 109 Declaration, 107 Opposition to Motion, 108 Declaration, 111 Response. (Heller, Thomas) (Entered: 02/20/2015) |
| 02/20/2015 | 113 | PARTIAL JOINDER by Jim Dobbas, Inc. in Opposition to 79 Motion for Summary Judgment and partial statement of non-opposition. (King, Jennifer) Modified on 2/23/2015 (Becknal, R). (Entered: 02/20/2015) |
| 02/27/2015 | 114 | NOTICE of Change of Designation of Counsel for Service by All Plaintiffs. (Zuckerman, Laura) (Entered: 02/27/2015) |
| 02/27/2015 | 115 | REPLY by West Coast Wood Preserving, LLC(Limited Liability Company) re 79 Motion for Summary Judgment. (Attachments: # 1 Declaration of Elaina Jackson, # 2 Declaration of Darrel Nicholas, # 3 Declaration Supplemental of Lester O. Brown)(Brown, Lester) (Entered: 02/27/2015) |
| 03/02/2015 | 116 | MOTION for SUMMARY JUDGMENT by Jim Dobbas, Inc.. Motion Hearing set for 4/6/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Points and Authorities, # 2 Statement of Undisputed Facts In Support, # 3 Proposed Order)(King, Jennifer) Modified on 3/3/2015 (Meuleman, A). (Entered: 03/02/2015) |
| 03/02/2015 | 117 | REQUEST to Further Continue Hearing on West Coast Wood Preserving's Motion for Summary Judgment by Jim Dobbas, Inc. re 97 Stipulation and Order. (King, Jennifer) Modified on 3/3/2015 (Meuleman, A). (Entered: 03/02/2015) |
| 03/03/2015 | 118 | STATEMENT of Non-Opposition to Continuance Request by Plaintiff California Department of Toxic Substances Control re 117 Request. (Zuckerman, Laura) (Entered: 03/03/2015) |
| 03/03/2015 | 119 | ORDER signed by Senior Judge William B. Shubb on 3/3/2015 GRANTING 117 Defendant Jim Dobbas' Request to Continue Motion Hearing : Good cause appearing, IT IS HEREBY ORDERED that the hearing on 79 Defendant West Coast Wood Preserving, LLC's motion for summary judgment currently scheduled for 3/9/2015, be, and the same hereby is, CONTINUED to 4/6/2015, at 2:00 p.m. in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Kirksey Smith, K) (Entered: 03/03/2015) |
| 03/05/2015 | 120 | STIPULATION and [PROPOSED] ORDER for Continuation of Summary Judgment Motion Hearing 79 Due to Settlement In Principle. (Brown, Lester) Modified on 3/9/2015 (Mena-Sanchez, L). (Entered: 03/05/2015) |
| 03/06/2015 | 121 | STIPULATION and ORDER 79 signed by Senior Judge William B. Shubb on 3/6/2015 resetting Defendant West Coast Wood Preserving, LLC's Motion for Summary Judgment on 7/27/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. The Court further sets a hearing date on the Motion to Approve the Consent Decree for 7/13/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Kirksey Smith, K) (Entered: 03/06/2015) |
| 03/18/2015 | 122 | STIPULATION and PROPOSED ORDER for Continuation of Hearing Due to Settlement in Principle re 116 MOTION for SUMMARY JUDGMENT by California Department of |

**ER-827**

| | | Toxic Substances Control, Toxic Substances Control Account. (Beck, Dennis) (Entered: 03/18/2015) |
|---|---|---|
| 03/19/2015 | 123 | STIPULATION and ORDER 122 signed by Senior Judge William B. Shubb on 3/19/2015 DENYING request to continue Dobbas' Motion for Summary Judgment: The court cannot continue the hearing on this motion for the length of time requested. The motion remains scheduled for hearing at 2:00 p.m. on 4/6/2015. If the parties do not wish to submit the motion for decision at that time, they may alternatively agree that the motion be withdrawn, without prejudice to being refiled at a later date consistent with the court's Pretrial Scheduling Order. (Kirksey Smith, K) (Entered: 03/19/2015) |
| 03/19/2015 | 124 | STIPULATION AND ORDER FOR WITHDRAWAL of 116 MOTION for SUMMARY JUDGMENT by Jim Dobbas, Inc. supported by Stipulated Request and Proposed Order filed by Defendant Jim Dobbas, Inc. and Plaintiffs (Gleason, Nicole) Modified on 3/19/2015 (Kirksey Smith, K). (Entered: 03/19/2015) |
| 03/20/2015 | 125 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 3/20/2015. ORDERING defendant Jim Dobbas' 116 Motion for Summary Judgment WITHDRAWN WITHOUT PREJUDICE to being refiled at a later date consistent with the Court's Pretrial Scheduling Order. The 4/6/2015 motion hearing date before Judge Shubb is VACATED. (Shaddox-Waldrop, A) (Entered: 03/20/2015) |
| 03/25/2015 | 126 | REQUEST FOR ENTRY OF DEFAULT as to Collins & Aikman Products, LLC by California Department of Toxic Substances Control. (Zuckerman, Laura) (Entered: 03/25/2015) |
| 03/25/2015 | 127 | DECLARATION of Laura J. Zuckerman re 126 Request for Entry of Default. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Zuckerman, Laura) (Entered: 03/25/2015) |
| 03/25/2015 | 128 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control re 126 Request for Entry of Default, 127 Declaration. (Zuckerman, Laura) (Entered: 03/25/2015) |
| 03/26/2015 | 129 | CLERK'S ENTRY OF DEFAULT as to *Collins & Aikman Products, LLC* (Kaminski, H) (Entered: 03/26/2015) |
| 05/10/2015 | 130 | ANSWER with Jury Demand by David Van Over.(Van Over, PRO-SE E-FILER, David) (Entered: 05/10/2015) |
| 06/02/2015 | 131 | NOTICE of Lodging of Proposed Consent Decree with Defendant West Coast Wood Preserving, LLC by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Proposed Consent Decree)(Beck, Dennis) (Entered: 06/02/2015) |
| 06/15/2015 | 132 | SUMMONS RETURNED UNEXECUTED as to Continental Rail, Inc. Process attempted upon The Corporation Trust Company but Continental Rail, Inc. is inactive. (Meuleman, A) (Entered: 06/16/2015) |
| 07/06/2015 | 133 | STIPULATION and PROPOSED ORDER for Continue Hearing on Motion to Approve Consent Decree Between Plaintiffs and Defendant West Coast Wood Preserving, LLC and Vacate Hearing on Defendant West Coast Wood Preserving, LLC's Motion for Summary Judgment by California Department of Toxic Substances Control, Toxic Substances Control Account. (Beck, Dennis) (Entered: 07/06/2015) |
| 07/10/2015 | 134 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 7/9/15. Hearing set for Motion to Approve the Consent Decree on 8/24/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. The 7/27/15 hearing on the Motion for Summary Judgment is VACATED. (Manzer, C) (Entered: 07/10/2015) |

<div align="center">**ER-828**</div>

| | | |
|---|---|---|
| 07/15/2015 | 135 | NOTICE of LODGING Proposed Consent Decree with defendant Jim Dobbas, Inc. by plaintiffs. (Attachments: # 1 Proposed Consent Decree) (Zuckerman, Laura) Modified on 7/16/2015 (Marciel, M) (Entered: 07/15/2015) |
| 07/23/2015 | 136 | NOTICE of Association of Counsel and Request to Remove Dennis L. Beck, Jr., from Service List, by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 07/23/2015) |
| 07/24/2015 | 137 | MOTION for JUDICIAL APPROVAL *of Consent Decree Between Plaintiffs and West Coast Wood Preserving, LLC* by California Department of Toxic Substances Control. Motion Hearing set for 8/24/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Declaration of Peter MacNicholl)(Karlin, Olivia) Modified on 7/27/2015 (Reader, L). (Entered: 07/24/2015) |
| 08/24/2015 | 138 | MINUTES (Text Only) for proceedings before Senior Judge William B. Shubb: MOTION HEARING held on 8/24/2015 re 137 Plaintiffs' MOTION for JUDICIAL APPROVAL Consent Decree. Counsel argue. MOTION SUBMITTED. The Court shall prepare and issue a separate order. Plaintiffs Counsel Laura Zuckerman present. Defendants Counsel Lester Brown present. Court Reporter: Kimberly Bennett. (Kirksey Smith, K) (Entered: 08/24/2015) |
| 08/25/2015 | 139 | MEMORANDUM AND ORDER RE: MOTION FOR ORDER APPROVING CONSENT DECREE signed by Senior Judge William B. Shubb on 8/24/15 ORDERING that plaintiffs' motion for approval of the Consent Decree be, and the same hereby is, GRANTED. IT IS FURTHER ORDERED that all claims for contribution or indemnity against West Coast Wood Preserving, LLC arising out of response costs incurred at the Elmira Site be, and the same hereby are, DISMISSED pursuant to 42 U.S.C. § 9613(f)(2). (Becknal, R) (Entered: 08/25/2015) |
| 09/02/2015 | 140 | CERTIFICATE of SERVICE by Jim Dobbas, Inc.. (Gleason, Nicole) (Entered: 09/02/2015) |
| 09/16/2015 | 141 | CONSENT DECREE between plaintiffs and defendant West Coast Wood Preserving, LLC signed by Senior Judge William B. Shubb on 9/15/15. (Kaminski, H) (Entered: 09/16/2015) |
| 09/18/2015 | 142 | MOTION for Judicial Approval of Consent Decree between Plaintiffs and Defendant Jim Dobbas, Inc. Motion Hearing SET for 10/19/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Zuckerman, Laura) Modified on 9/23/2015 (Mena-Sanchez, L). (Entered: 09/18/2015) |
| 09/18/2015 | 143 | MEMORANDUM of Points and Authorities by Plaintiffs in SUPPORT of 142 MOTION for Judicial Approval of Consent Decree. (Zuckerman, Laura) Modified on 9/23/2015 (Mena-Sanchez, L). (Entered: 09/18/2015) |
| 09/18/2015 | 144 | DECLARATION of Peter MacNicholl in SUPPORT OF 142 MOTION for Judicial Approval of Consent Decree. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (Zuckerman, Laura) Modified on 9/23/2015 (Mena-Sanchez, L). (Entered: 09/18/2015) |
| 09/18/2015 | 145 | MINUTE ORDER (TEXT ONLY): The parties are hereby notified that the 142 Plaintiffs' Motion for Judicial Approval of Consent Decree Between Plaintiffs and Jim Dobbas, Inc. is improperly noticed on an unavailable motion date. The motion shall be heard on 11/2/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. Counsel for plaintiff is instructed to immediately file and serve an amended notice of motion setting forth the above-referenced date and time, or the motion shall be stricken. The parties are further instructed to review Judge Shubb's calendaring information on the |

| | | court's website for available hearing dates prior to filing any motions. (Kirksey Smith, K) (Entered: 09/18/2015) |
|---|---|---|
| 09/18/2015 | 146 | AMENDED MOTION re 142 MOTION for Judicial Approval of Consent Decree by Plaintiffs. Motion Hearing SET for 11/2/2015 at 02:00 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Zuckerman, Laura) Modified on 9/23/2015 (Mena-Sanchez, L). (Entered: 09/18/2015) |
| 11/02/2015 | 147 | MINUTE ORDER (TEXT ONLY): The parties are hereby notified 146 Plaintiffs' Amended Motion for Judicial Approval of Consent Decree Between Plaintiffs and *Jim Dobbas, Inc. is continued from 11/2/2016 to 11/16/2015 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Kirksey Smith, K) *Modified on 11/2/2015 (Kirksey Smith, K). (Entered: 11/02/2015) |
| 11/13/2015 | 148 | MINUTE ORDER (TEXT ONLY): On the Court's own motion, the parties are hereby notified that 146 Plaintiffs' Amended Motion for Judicial Approval of Consent Decree Between Plaintiffs and Jim Dobbas, Inc. now set for hearing on 11/16/2015 is taken off calendar and under submission, no appearance is necessary. The Court shall issue a separate order. (Kirksey Smith, K) (Entered: 11/13/2015) |
| 11/16/2015 | 149 | MEMORANDUM AND ORDER signed by Senior Judge William B. Shubb on 11/13/15 ORDERING that granting 146 Motion for Approval of the Consent Decree between plaintiffs and Jim Dobbas, Inc. is GRANTED; all claims for contribution or indemnit against Jim Dobbas, Inc. arising out of response costs incurred at the Elmira Site are DISMISSED pursuant to 42 U.S.C. § 9613(f)(2). (Benson, A) (Entered: 11/16/2015) |
| 11/18/2015 | 150 | CONSENT DECREE BETWEEN PLAINTIFFS AND DEFENDANT JIM DOBBAS, INC. signed by Senior Judge William B. Shubb on 11/17/15. (Benson, A) (Entered: 11/18/2015) |
| 11/18/2015 | 151 | ORDER signed by Senior Judge William B. Shubb on 11/17/15 ORDERING that, pursuant to the 150 Consent Decree, that Jim Dobbas, Inc.'s 23 , 25 counterclaims against plaintiffs are DISMISSED. (Benson, A) (Entered: 11/18/2015) |
| 01/19/2016 | 152 | STIPULATION and PROPOSED ORDER for Extension of Cut-Off Dates and Trial by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 01/19/2016) |
| 01/20/2016 | 153 | STIPULATION AND ORDER signed by Senior Judge William B. Shubb on 1/19/2016 ORDERING that fact discovery be completed by 8/3/2016; ORDERING that expert reports be due on 8/31/2016; ORDERING that expert discovery be completed by 10/31/2016; ORDERING that motions be filed by 1/6/2017; CONTINUING the Final Pretrial Conference to 3/13/2017 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb; CONTINUING the Trial to 5/9/2017 at 09:00 AM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Michel, G.) (Entered: 01/20/2016) |
| 12/15/2016 | 154 | STIPULATION and PROPOSED ORDER for Extension of Cut-Off Dates and Trial by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 12/15/2016) |
| 12/19/2016 | 155 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 12/16/16 ORDERING that the Motion filing deadline is EXTENDED to 5/5/2017, the Final Pretrial Conference is EXTENDED to 7/17/2017 at 01:30 PM, and the Trial is EXTENDED to 9/12/2017 at 09:00 AM. (Kastilahn, A) (Entered: 12/19/2016) |
| 05/05/2017 | 156 | MOTION for PARTIAL SUMMARY JUDGMENT on the Liability of Defendant David Van Over by CA Dept. of Toxic Substances Control, Toxic Substances Control Account. |

**ER-830**

| | | Motion Hearing set for 6/12/2017 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
|---|---|---|
| 05/05/2017 | 157 | DECLARATION of Olivia W. Karlin in Support of 156 Motion for Partial Summary Judgment. (Attachments: # 1 Exhibit A)(Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 158 | DECLARATION of Jason Xiao in Support of 156 Motion for Partial Summary Judgment. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 159 | STATEMENT of Undisputed Facts and Conclusions of Law by Plaintiffs CA Dept of Toxic Substances Control, Toxic Substances Control Account re 156 Motion for Partial Summary Judgment. (Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 160 | NOTICE of Lodging [Proposed] Order by CA Dept of Toxic Substances Control, Toxic Substances Control Account re 156 Motion for Partial Summary Judgment. (Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 161 | DECLARATION of Deena Stanley in Support of 156 Motion for Partial Summary Judgment. (Attachments: # 1 Exhibit A , # 2 Exhibit B, # 3 Exhibit C)(Karlin, Olivia) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 162 | PROPOSED ORDER re 156 Motion for Partial Summary Judgment by CA Dept of Toxic Substances Control. (Karlin, Olivia) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 05/05/2017 | 163 | MEMORANDUM of Points and Authorities by CA Dept of Toxic Substances Control, Toxic Substances Control Account in Support of 156 Motion for Partial Summary Judgment. (Zuckerman, Laura) Modified on 5/8/2017 (Reader, L). (Entered: 05/05/2017) |
| 06/07/2017 | 164 | NOTICE to RESCHEDULE HEARING on 156 Motion for Partial Summary Judgment: Motion Hearing set for 6/12/2017 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Van Over, PRO-SE E-FILER, David) (Entered: 06/07/2017) |
| 06/07/2017 | 165 | STIPULATION and PROPOSED ORDER for Continuance of June 12, 2017 Hearing Date re 156 Motion for Partial Summary Judgment. by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 06/07/2017) |
| 06/08/2017 | 166 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 06/08/17 ORDERING that the following dates are RESET re 156 Motion for Partial Summary Judgment: Van Over Opposition due 06/16/17; reply due 06/26/17; and Motion Hearing is RESET for 7/10/2017 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Benson, A) (Entered: 06/08/2017) |
| 06/12/2017 | 167 | MINUTE ORDER (TEXT ONLY): On the Court's own motion, the parties are hereby notified that the Final Pretrial Conference is reset for 8/28/2017 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. The Court Trial is reset for 10/24/2017 at 09:00 AM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Kirksey Smith, K) (Entered: 06/12/2017) |
| 06/21/2017 | 168 | RESPONSE by David Van Over to 156 Motion for Partial Summary Judgment, 162 Proposed Order, 160 Notice. (Van Over, PRO-SE E-FILER, David) (Entered: 06/21/2017) |
| 06/26/2017 | 169 | REPLY by California Department of Toxic Substances Control, Toxic Substances Control |

**ER-831**

| | | Account re 156 Motion for Partial Summary Judgment. (Zuckerman, Laura) (Entered: 06/26/2017) |
|---|---|---|
| 07/06/2017 | 170 | ORDER signed by Senior Judge William B. Shubb on 7/6/17, ORDERING that 156 Motion for Partial Summary Judgment is GRANTED as follows: (1) Defendant Van Over is jointly and severally liable for costs plaintiffs incurred and may incur in the future in responding to the release and threatened release of hazardous chemicals at the Elmira site, to the extent recovery of such costs is authorized under CERCLA. (2) The amount of past response costs plaintiffs are authorized to recover under CERCLA is yet to be determined. (Kastilahn, A) (Entered: 07/06/2017) |
| 07/31/2017 | 171 | STIPULATION and PROPOSED ORDER for Extension of Pretrial Dates and Trial by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 07/31/2017) |
| 08/01/2017 | 172 | STIPULATION and ORDER signed by Senior Judge William B. Shubb on 7/31/2017 ORDERING the Final Pretrial Conference CONTINUED to 1/16/2018 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb; and the Bench Trial CONTINUED to 3/13/2018 at 09:00 AM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Washington, S) (Entered: 08/01/2017) |
| 10/30/2017 | 173 | NOTICE OF LODGING by California Department of Toxic Substances Control. (Attachments: # 1 Proposed Consent Decree)(Karlin, Olivia) Modified on 10/31/2017 (Washington, S). (Entered: 10/30/2017) |
| 12/26/2017 | 174 | STIPULATION and PROPOSED ORDER for Extension of Pretrial Dates and Trial; Declaration of Laura J. Zuckerman, by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) Modified on 12/27/2017 (Kastilahn, A). (Entered: 12/26/2017) |
| 12/27/2017 | 175 | STIPULATION and ORDER for continuance of pretrial dates 174 signed by Senior Judge William B. Shubb on 12/27/2017 resetting the Pretrial Conference date for 4/9/2018 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. The Bench Trial is reset for 6/5/2018 at 09:00 AM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Kirksey Smith, K) (Entered: 12/27/2017) |
| 02/15/2018 | 176 | NOTICE of LODGING of Proposed Consent Decree by California Department of Toxic Substances Control. (Attachments: # 1 Proposed Consent Decree)(Karlin, Olivia) Modified on 2/15/2018 (Benson, A.). (Entered: 02/15/2018) |
| 02/16/2018 | 177 | MOTION to APPROVE CONSENT JUDGMENT Between Plaintiffs and Defendant David Van Over by California Department of Toxic Substances Control, Toxic Substances Control Account. Motion Hearing set for 3/19/2018 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Zuckerman, Laura) Modified on 2/20/2018 (Fabillaran, J). (Entered: 02/16/2018) |
| 02/16/2018 | 178 | DECLARATION of William Beckman in support of 177 Motion to Approve Consent Judgment. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Zuckerman, Laura) Modified on 2/20/2018 (Fabillaran, J). (Entered: 02/16/2018) |
| 02/16/2018 | 179 | MEMORANDUM by California Department of Toxic Substances Control, Toxic Substances Control Account in support of 177 Motion to Approve Consent Judgment. (Zuckerman, Laura) Modified on 2/20/2018 (Fabillaran, J). (Entered: 02/16/2018) |
| 03/21/2018 | 180 | MINUTES (Text Only) for proceedings before Senior Judge William B. Shubb: MOTION HEARING Re: 177 Motion for Judicial Approval of Consent Decree between Plaintiffs and defendant David Van Over held on 3/19/2018. No appearance by defendant David Van Over. Plaintiff's counsel informs the Court that defendant has no opposition to |

| | | |
|---|---|---|
| | | the motion. After further discussion with plaintiff's counsel, the Court found that the proposed consent decree is procedurally and substantively fair and APPROVED the settlement. Matter submitted. Court to issue separate order. Plaintiffs' Counsel Laura Zuckerman present. Defendant Not present. Court Reporter: Kelly O'Halloran. (Kirksey Smith, K) (Entered: 03/21/2018) |
| 03/21/2018 | 181 | MEMORANDUM AND ORDER signed by Senior Judge William B. Shubb on 3/20/2018 ORDERING that plaintiffs' 177 Motion for Judicial Approval of the Consent Decree between plaintiffs and Van Over is GRANTED; all claims for contribution against Van Over arising out of response costs incurred at the Site are, DISMISSED pursuant to 42 U.S.C. § 9613(f)(2). (Becknal, R) Modified on 9/13/2019 (Kirksey Smith, K). (Entered: 03/21/2018) |
| 03/28/2018 | 182 | CONSENT DECREE between Plaintiffs and Defendant David Van Over, signed by Senior Judge William B. Shubb on 3/27/18. (Kastilahn, A) (Entered: 03/28/2018) |
| 05/25/2018 | 183 | ABSTRACT OF JUDGMENT ISSUED. (Hunt, G) (Entered: 05/25/2018) |
| 08/21/2019 | 184 | MOTION for DEFAULT JUDGMENT by California Department of Toxic Substances Control, Toxic Substances Control Account. Motion Hearing set for 9/23/2019 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 185 | MEMORANDUM by California Department of Toxic Substances Control, Toxic Substances Control Account in SUPPORT of 184 Motion for Default Judgment. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 186 | DECLARATION of Robin McGinnis in support of 184 Motion for Default Judgment. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 187 | DECLARATION of Anthony Westlake in support of 184 Motion for Default Judgment. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 188 | DECLARATION of Jason Xiao in support of 184 Motion for Default Judgment. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 189 | DECLARATION of McKinley Lewis, Jr. in support of 184 Motion for Default Judgment. (Attachments: # 1 Exhibit A, Part 1, # 2 Exhibit A, Part 2, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N)(Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 190 | DECLARATION of Laura J. Zuckerman in support of 184 Motion for Default Judgment. (Attachments: # 1 Exhibit A)(Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 191 | PROPOSED ORDER re Granting re 184 Motion for Default Judgment. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 192 | MINUTE ORDER (TEXT ONLY): The parties are hereby notified that 184 Plaintiffs' Motion for Default Judgment has been improperly noticed before Senior District Senior Judge William B. Shubb, and therefore, the 9/23/2019 hearing date is VACATED. Pursuant to Local Rule *302(c)(19), this motion shall be heard before the assigned Magistrate Judge, Edmund F. Brennan. The filer is instructed to contact Magistrate Judge Brennan's courtroom clerk for an available hearing date. (Kirksey Smith, K) *Modified on 8/21/2019 (Kirksey Smith, K). (Entered: 08/21/2019) |
| 08/21/2019 | 193 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 185 Memorandum in Support of Motion, 189 |

**ER-833**

| | | Declaration, 191 Proposed Order, 187 Declaration, 184 Motion for Default Judgment, 188 Declaration, 190 Declaration, 186 Declaration. (Zuckerman, Laura) (Entered: 08/21/2019) |
|---|---|---|
| 08/21/2019 | 194 | NOTICE to RESCHEDULE HEARING on 184 Motion for Default Judgment : Motion Hearing set for 9/25/2019 at 10:00 AM in Courtroom 8 (EFB) before Magistrate Judge Edmund F. Brennan. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 08/21/2019 | 195 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 194 Notice to Reschedule Hearing on Motion. (Zuckerman, Laura) (Entered: 08/21/2019) |
| 09/18/2019 | 196 | MOTION to INTERVENE and to VACATE DEFAULT by The Travelers Indemnity Company. Attorney Potente, Alexander Eugene added. Motion Hearing set for 10/21/2019 at 01:30 PM before Senior Judge William B. Shubb. (Potente, Alexander) Modified on 9/19/2019 (Huang, H). (Entered: 09/18/2019) |
| 09/18/2019 | 197 | DECLARATION of Alexander E. Potente in support of 196 Motion to Intervene and to Vacate Default. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Potente, Alexander) Modified on 9/19/2019 (Huang, H). (Entered: 09/18/2019) |
| 09/18/2019 | 198 | EX PARTE APPLICATION for Order to Continue 184 Motion for Default Hearing or for Order Shortening Time for 196 Motion to Intervene and to Vacate Default Hearing by The Travelers Indemnity Company. (Potente, Alexander) Modified on 9/19/2019 (Huang, H). (Entered: 09/18/2019) |
| 09/19/2019 | 199 | OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to 198 Ex Parte Application. (Zuckerman, Laura) (Entered: 09/19/2019) |
| 09/19/2019 | 200 | DECLARATION of Laura J. Zuckerman re 199 Opposition to Motion. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Zuckerman, Laura) (Entered: 09/19/2019) |
| 09/19/2019 | 201 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 199 Opposition to Motion, 200 Declaration. (Zuckerman, Laura) (Entered: 09/19/2019) |
| 09/19/2019 | 202 | JOINDER by The Continental Insurance Company in re 196 Motion to Intervene and Vacate Default filed by The Travelers Indemnity Company. Attorney Thorpe, Sara M. added. (Thorpe, Sara) (Entered: 09/19/2019) |
| 09/19/2019 | 203 | JOINDER by The Continental Insurance Company in re 198 Ex Parte Application. (Thorpe, Sara) Modified on 9/20/2019 (Huang, H). (Entered: 09/19/2019) |
| 09/20/2019 | 204 | REPLY by The Travelers Indemnity Company to 198 Ex Parte Application. (Potente, Alexander) (Entered: 09/20/2019) |
| 09/20/2019 | 205 | MOTION to INTERVENE and SET ASIDE DEFAULT by The Continental Insurance Company. Motion Hearing set for 10/21/2019 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Declaration, # 2 Exhibit)(Thorpe, Sara) Modified on 9/23/2019 (Coll, A). (Entered: 09/20/2019) |
| 09/23/2019 | 206 | MINUTE ORDER: Proposed Intervenor The Traveler Indemnity Company's Ex Parte Application for an order to continue hearing on Pltfs' Motion for Default Judgment 196 is GRANTED in part. The 9/25/2019 hearing re: Pltfs' Motion for Default Judgment 184 is VACATED pending resolution of the Motions to Intervene 196 , 205 . If necessary, Pltfs' Motion for Default Judgment will be placed back on the Court's calendar via Minute Order and the parties will be notified accordingly. Ordered by Magistrate Judge |

**ER-834**

| | | |
|---|---|---|
| | | Edmund F. Brennan on 9/23/2019. (Text only entry)(Cannarozzi, N) (Entered: 09/23/2019) |
| 09/23/2019 | [207](#) | NOTICE of RELATED CASE 2:19-cv-01892 by The Travelers Indemnity Company. (Potente, Alexander) (Entered: 09/23/2019) |
| 09/26/2019 | [208](#) | ORDER RELATING CASES signed by Senior Judge William B. Shubb on 9/25/2019 ORDERING that cases 2:14-cv-0595 WBS EFB and 2:19-cv-1892 KJM AC are RELATED. Case No. 2:19-cv-1892, is reassigned to District Judge William B. Shubb and Magistrate Judge Edmund F. Brennan. (Becknal, R) (Entered: 09/26/2019) |
| 09/27/2019 | [209](#) | NOTICE OF INTERESTED PARTIES by The Travelers Indemnity Company. (Potente, Alexander) (Entered: 09/27/2019) |
| 10/03/2019 | [210](#) | STIPULATION and PROPOSED ORDER for Continuance of Hearing re [205](#) Motion to Intervene and to Set Aside Default by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 10/03/2019) |
| 10/03/2019 | [211](#) | EX PARTE REQUEST to CONTINUE Hearing on [196](#) Motion to Intervene and to Vacate Default by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) Modified on 10/4/2019 (York, M). (Entered: 10/03/2019) |
| 10/03/2019 | [212](#) | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re [211](#) Ex Parte Application, [210](#) Stipulation and Proposed Order. (Zuckerman, Laura) (Entered: 10/03/2019) |
| 10/04/2019 | [213](#) | STIPULATION and ORDER for continuance [210](#) signed by Senior Judge William B. Shubb on 10/4/2019 resetting [205](#) The Continental Insurance Company's Motion to Intervene and to Set Aside Default for 12/2/2019 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. *Because the Travelers Indemnity Company does not join in the stipulation to continue the hearing, the hearing on its motion to intervene and vacate the default remains set for 10/21/2019. (Kirksey Smith, K) *Modified on 10/4/2019 (Kirksey Smith, K). (Entered: 10/04/2019) |
| 10/04/2019 | [214](#) | OPPOSITION by Intervenor The Travelers Indemnity Company to [211](#) Ex Parte Application. (Attachments: # [1](#) Declaration, # [2](#) Exhibit A)(Potente, Alexander) (Entered: 10/04/2019) |
| 10/07/2019 | [215](#) | OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to [196](#) Motion to Intervene and Vacate Default. (Attachments: # [1](#) Declaration, # [2](#) Proof of Service)(Zuckerman, Laura) (Entered: 10/07/2019) |
| 10/11/2019 | [216](#) | REPLY in support of [196](#) Motion to Intervene by The Travelers Indemnity Company. (Potente, Alexander) Modified on 10/15/2019 (Huang, H). (Entered: 10/11/2019) |
| 10/17/2019 | [217](#) | MOTION to INTERVENE as Alleged Insurer of Defendant Collins & Aikman Products, LLC and to VACATE DEFAULT. Attorney Constantinides, Stratton P. added. Motion Hearing set for 12/2/2019 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # [1](#) Declaration)(Constantinides, Stratton) Modified on 10/18/2019 (Huang, H). (Entered: 10/17/2019) |
| 10/18/2019 | [218](#) | JOINDER by Allstate Insurance Company re [196](#) Motion to Intervene. Attorney Quintero, Maria S. added. (Attachments: # [1](#) Memorandum)(Quintero, Maria) Modified on 10/21/2019 (Coll, A). (Entered: 10/18/2019) |
| 10/18/2019 | [219](#) | CORPORATE DISCLOSURE STATEMENT by Intervenor Defendant Allstate Insurance Company. (Quintero, Maria) (Entered: 10/18/2019) |
| | | |

| 10/21/2019 | 220 | MINUTES (Text Only) for proceedings before Senior Judge William B. Shubb: MOTION HEARING held on 10/21/2019 re 196 The Travelers Indemnity Company's Motion to Intervene and to Vacate Default. Counsel argue. MOTION SUBMITTED. The Court shall issue a separate order. Plaintiffs' Counsel Laura Zuckerman present. Defendants' Counsel Alex Potente present; Intervenor's Counsel: Maria Quintero present. Court Reporter: Vicki Britt (Diamond). (Kirksey Smith, K) (Entered: 10/21/2019) |
|---|---|---|
| 10/22/2019 | 221 | ORDER signed by Senior Judge William B. Shubb on 10/22/2019 DENYING 196 Traveler's Motion to Intervene. (Kirksey Smith, K) (Entered: 10/22/2019) |
| 11/04/2019 | 222 | MOTION to INTERVENE and to VACATE DEFAULT by Allianz Underwriters Insurance Company. Attorney Constantinides, Stratton P. added. Motion Hearing set for 12/2/2019 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Attachments: # 1 Declaration)(Constantinides, Stratton) Modified on 11/5/2019 (York, M). (Entered: 11/04/2019) |
| 11/08/2019 | 223 | TRANSCRIPT REQUEST by California Department of Toxic Substances Control, Toxic Substances Control Account for proceedings held on 10/21/19 before Judge William B. Shubb. Court Reporter Diamond Court Reporters. (Zuckerman, Laura) (Entered: 11/08/2019) |
| 11/11/2019 | 224 | TRANSCRIPT REQUEST by Travelers for proceedings held on 10/21/19 before Judge William B. Shubb. Court Reporter Diamond Court Reporters. (Constantinides, Stratton) Modified on 11/12/2019 (Benson, A.). (Entered: 11/11/2019) |
| 11/15/2019 | 225 | ASSOCIATION OF ATTORNEY: Added attorney Timothy Martin Thornton for California Department of Toxic Substances Control,Timothy Martin Thornton for Toxic Substances Control Account. (Thornton, Timothy) (Entered: 11/15/2019) |
| 11/18/2019 | 226 | TRANSCRIPT of Motion to Intervene and to Vacate Default held on October 21, 2019, before Senior Judge William B. Shubb, filed by Diamond Court Reporters, Phone number 916-498-9288. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 12/9/2019. Redacted Transcript Deadline set for 12/19/2019. Release of Transcript Restriction set for 2/18/2020. (Rivas, A) (Entered: 11/18/2019) |
| 11/18/2019 | 227 | OPPOSITION by California Department of Toxic Substances Control, Toxic Substances Control Account to 205 Motion to Intervene, 217 Motion to Intervene, 222 Motion to Intervene. (Zuckerman, Laura) (Entered: 11/18/2019) |
| 11/18/2019 | 228 | DECLARATION of Laura Zuckerman in opposition to 205 Motion to Intervene, 217 Motion to Intervene, 222 Motion to Intervene. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Zuckerman, Laura) (Entered: 11/18/2019) |
| 11/18/2019 | 229 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 227 Opposition to Motion, 228 Declaration. (Zuckerman, Laura) (Entered: 11/18/2019) |
| 11/25/2019 | 230 | REPLY by Allianz Underwriters Insurance Company re 227 Opposition to Motion. (Constantinides, Stratton) (Entered: 11/25/2019) |
| 11/25/2019 | 231 | REPLY by The Continental Insurance Company re 227 Opposition to Motion. Attorney Constantinides, Stratton P. added. (Constantinides, Stratton) (Entered: 11/25/2019) |
| 11/25/2019 | 232 | REPLY by Century Indemnity Company re 227 Opposition to Motion. (Constantinides, Stratton) (Entered: 11/25/2019) |

**ER-836**

| | | |
|---|---|---|
| 11/27/2019 | 233 | NOTICE OF INTERESTED PARTIES by Proposed Intervenor The Continental Insurance Company. (Thorpe, Sara) Modified on 12/3/2019 (Benson, A.). (Entered: 11/27/2019) |
| 12/02/2019 | 234 | NOTICE OF INTERESTED PARTIES by Proposed Intervenor Century Indemnity Company. (Constantinides, Stratton) Modified on 12/3/2019 (Benson, A.). (Entered: 12/02/2019) |
| 12/02/2019 | 235 | NOTICE OF INTERESTED PARTIES by Proposed Intervenor Allianz Underwriters Insurance Company. (Constantinides, Stratton) Modified on 12/3/2019 (Benson, A.). (Entered: 12/02/2019) |
| 12/02/2019 | 236 | MINUTES (Text Only) for proceedings before Senior Judge William B. Shubb: MOTION HEARING held on 12/2/2019 re Proposed Intervenor The Continental Insurance Company's 205 Motion to Intervene and to Set Aside Default, Proposed Intervenor Century Indemnity Company's 217 Motion to Intervene and Proposed Intervenors Allianz Underwriters Insurance Company's, Chicago Insurance Company's and Fireman's Fund Insurance Company's 222 Motion to Intervene and to Vacate Default. Counsel argue. MOTION SUBMITTED. The Court shall issue a separate order. Counsel for Plaintiffs: Laura Zuckerman and Timothy Thornton present. Counsel for Proposed Intervenors Allianz Underwriters Insurance Company, Chicago Insurance Company and Fireman's Fund Insurance Company: Thomas Vandenburg present. Counsel for Proposed Intervenor The Continental Insurance Company: Randall Berdan present. Court Reporter: Kacy Barajas. (Michel, G.) (Entered: 12/02/2019) |
| 12/04/2019 | 237 | ORDER signed by Senior Judge William B. Shubb on 12/3/2019 DENYING the motions to intervene and vacate default filed Continental (Docket No. 205 ), Century(Docket No. 217 ), and Allianz (Docket No. 222 ). (Becknal, R) (Entered: 12/04/2019) |
| 12/18/2019 | 238 | MINUTE ORDER: Plaintiffs' California Department of Toxic Substances Control and the Toxic Substances Control Account Motion for Default Judgment 184 is ordered set for hearing on 1/29/2020 at 10:00 AM in Courtroom 8 (EFB) before Magistrate Judge Edmund F. Brennan. Ordered by Magistrate Judge Edmund F. Brennan on 12/18/2019. (Text only entry)(Cannarozzi, N) (Entered: 12/18/2019) |
| 12/18/2019 | 239 | MINUTE ORDER: (TEXT ONLY): The Court hereby orders a Status Conference Re Further Proceedings set for 3/2/2020 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. A joint status report shall be filed no later than 2/18/2020. (Kirksey Smith, K) (Entered: 12/18/2019) |
| 12/23/2019 | 240 | TRANSCRIPT REQUEST by Century Indemnity Company for proceedings held on 12/2/19 before Judge William B. Shubb. Court Reporter Kacy Barajas. (Constantinides, Stratton) (Entered: 12/23/2019) |
| 01/03/2020 | 241 | NOTICE of APPEAL by The Continental Insurance Company as to 237 Order on Motion to Intervene,,. (Filing fee $ 505, receipt number 0972-8649608) (Constantinides, Stratton) (Entered: 01/03/2020) |
| 01/06/2020 | 242 | APPEAL PROCESSED to Ninth Circuit re 241 Notice of Appeal filed by the Continental Insurance Company. Notice of Appeal filed *1/3/2020*, Complaint filed *3/3/2014* and Appealed Order/Judgment filed *12/4/2019*. Court Reporter: *K. Barajas, V. Britt,*. *Fee Status: Paid on 1/3/2020 in the amount of $505.00* (Attachments: # 1 Appeal Information) (Becknal, R) (Entered: 01/06/2020) |
| 01/08/2020 | 243 | USCA CASE NUMBER 20-15029 for 241 Notice of Appeal filed by The Continental Insurance Company. (Donati, J) (Entered: 01/08/2020) |
| 01/17/2020 | 244 | MOTION to STAY by Allianz Underwriters Insurance Company, Century Indemnity |

| | | Company, The Continental Insurance Company. Motion Hearing set for 2/24/2020 at 01:30 PM in Courtroom 5 (WBS) before Senior Judge William B. Shubb. (Constantinides, Stratton) (Entered: 01/17/2020) |
|---|---|---|
| 01/23/2020 | 245 | TRANSCRIPT of Proceedings, Motions to Intervene held on December 2, 2019, before Senior Judge William B. Shubb, filed by Court Reporter Kacy Barajas, Phone number 916-426-7640 E-mail kbarajas.csr@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction must be filed within 5 court days. Redaction Request due 2/13/2020. Redacted Transcript Deadline set for 2/24/2020. Release of Transcript Restriction set for 4/23/2020. (Barajas, K) (Entered: 01/23/2020) |
| 01/23/2020 | 246 | MINUTE ORDER: In light of the pending Motion to Stay 244 the 1/29/2020 hearing re: Plaintiffs' California Department of Toxic Substances Control and the Toxic Substances Control Account Motion for Default Judgment 184 is ordered CONTINUED to 3/4/2020 at 10:00 AM in Courtroom 8 (EFB) before Magistrate Judge Edmund F. Brennan. Ordered by Magistrate Judge Edmund F. Brennan on 1/23/2020. (Text only entry) (Cannarozzi, N) (Entered: 01/23/2020) |
| 02/03/2020 | 247 | TRANSCRIPT REQUEST by Allianz Underwriters Insurance Company, Century Indemnity Company, The Continental Insurance Company for proceedings held on 12/2/19 before Judge William B. Shubb. Court Reporter Kacy Barajas. (Constantinides, Stratton) (Entered: 02/03/2020) |
| 02/10/2020 | 248 | OPPOSITION to 244 Motion to Stay by California Department of Toxic Substances Control, Toxic Substances Control Account. (Attachments: # 1 Declaration)(Zuckerman, Laura) Modified on 2/10/2020 (York, M). (Entered: 02/10/2020) |
| 02/10/2020 | 249 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 248 Opposition to Motion. (Zuckerman, Laura) (Entered: 02/10/2020) |
| 02/11/2020 | 250 | TRANSCRIPT REQUEST by California Department of Toxic Substances Control, Toxic Substances Control Account for proceedings held on 12/02/19 before Judge William B. Shubb. Court Reporter Kacy Barajas. (Zuckerman, Laura) (Entered: 02/11/2020) |
| 02/14/2020 | 251 | REPLY by Century Indemnity Company re 248 Opposition to Motion. (Constantinides, Stratton) (Entered: 02/14/2020) |
| 02/18/2020 | 252 | STATUS REPORT by California Department of Toxic Substances Control, Toxic Substances Control Account. (Zuckerman, Laura) (Entered: 02/18/2020) |
| 02/19/2020 | 253 | CERTIFICATE of SERVICE by California Department of Toxic Substances Control, Toxic Substances Control Account re 252 Status Report. (Zuckerman, Laura) (Entered: 02/19/2020) |
| 02/24/2020 | 254 | MINUTES (Text Only) for proceedings before Senior Judge William B. Shubb: MOTION HEARING held on 2/24/2020 re 244 Proposed Intervenors' Motion to Stay Pending Appeal. Counsel argue. MOTION SUBMITTED. The Court shall prepare and issue a separate order. Plaintiffs' Counsel Laura Zuckerman present. Proposed Intervenors's Counsel Thomas Vandenburg present. Court Reporter: Kimberly Bennett. (Kirksey Smith, K) (Entered: 02/24/2020) |
| 02/26/2020 | 255 | ORDER signed by Senior Judge William B. Shubb on 02/25/20 STAYING case; VACATING 03/02/20 status conference. (Benson, A.) (Entered: 02/26/2020) |
| 02/26/2020 | 256 | MINUTE ORDER: In light of the Court's Order 255 staying this matter pending the Proposed Intervenors' appeal, the Clerk is directed to administratively terminate |

**ER-838**

| | | |
|---|---|---|
| | | Plaintiff's Motion for Default Judgment <u>184</u> . Counsel for Plaintiff may re-notice their motion for default judgment after the stay has been lifted. Ordered by Magistrate Judge Edmund F. Brennan on 2/26/2020. (Text only entry) (Cannarozzi, N) (Entered: 02/26/2020) |
| 10/01/2020 | <u>257</u> | ORDER by Chief Judge Kimberly J. Mueller: The Court having considered the equitable division and efficient and economical determination of court business, hereby reassigns this case from Magistrate Judge *Edmund F. Brennan* to *Magistrate Judge Jeremy D. Peterson* for all further proceedings. As of October 1, 2020, Magistrate Judge Jeremy D. Peterson is reassigned to the Sacramento Division of the Eastern District of California. (Zignago, K.) (Entered: 10/01/2020) |

| PACER Service Center | | | | |
|---|---|---|---|---|
| **Transaction Receipt** | | | | |
| 04/02/2021 14:02:16 | | | | |
| **PACER Login:** | sconstant305103:5284146:5716763 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:14-cv-00595-WBS-JDP |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |

**ER-839**