No. 20-15029

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES
CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT,
Plaintiffs-Appellees
v.

JIM DOBBAS, INC., a California corporation, et al.,
Defendants,
v.

CENTURY INDEMNITY COMPANY, et al.,
Movants-Appellants.

_____

On Appeal from the United States District Court
for the Eastern District of California

No. 2:14-cv-00595-WBS-EFB
(Hon. William B. Shubb)

**APPELLEES' ANSWERING BRIEF**

_____

ROB BONTA
Attorney General of the State of
California
DENNIS L. BECK, JR.
Supervising Deputy Attorney
General
LAURA J. ZUCKERMAN
Deputy Attorney General
State Bar No. 161896
 1515 Clay Street, 20th Floor
 Oakland, CA 94612-0550
 Telephone: (510) 879-1299
 Fax: (510) 622-2270
Email:
Laura.Zuckerman@doj.ca.gov

GRAY-DUFFY, LLP
TIMOTHY M. THORNTON, JR.
State Bar No. 106413
 15760 Ventura Blvd, 16th Floor
 Encino, CA 91436-3027
 Telephone: (818) 907-4000
 Fax: (818) 783-4551
 Email:
 tthornton@grayduffylaw.com

*Attorneys for Plaintiffs-Appellees*
*California Department of Toxic*
*Substances Control and the Toxic*
*Substances Control Account*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

JURISDICTIONAL STATEMENT .............................................. 5

STATEMENT OF ISSUES PRESENTED ..................................... 6

STATEMENT OF THE CASE ................................................... 7

    I.      Statutory and Regulatory Background......................... 7

    II.     Factual Background ........................................... 8

    III.    Procedural History. ........................................... 11

SUMMARY OF ARGUMENT ................................................. 18

STANDARD OF REVIEW ..................................................... 22

ARGUMENT ...................................................................... 22

    I.      The Proposed Intervenors Were Not Entitled to
           Intervene as a Matter of Right......................... 22

          A.    The Proposed Intervenors Have Failed to
                Demonstrate That They Have a Significant
                Protectable Interest in the Property or Transaction
                That Would Entitle Them to Intervene as of Right. ..... 24

                1.    A "Putative Insurer" Which Has Not
                        Accepted Coverage Does Not Have a
                        Significant Protectable Interest in Litigation
                        Involving the Insured......................... 25

                2.    Because They Refused to Accept Coverage
                        or Defend with a Reservation of Rights, the
                        Proposed Intervenors Cannot Establish They
                        Have a Significant Protectable Interest. ............. 29

          B.    The Proposed Intervenors Cannot Show That Their
                Ability to Protect Their Significant Protectable
                Interests Will Be Impaired, or that Their Interests
                Are Not Adequately Represented, as They Have
                No Such Interests. ........................................ 37

i

# TABLE OF CONTENTS
## (continued)

Page

II.    THE PROPOSED INTERVENORS DO NOT MEET THE TEST
       FOR PERMISSIVE INTERVENTION ............................................... 39

III.   THE INTERLOCUTORY APPEAL OF THE DENIAL OF THE
       MOTIONS TO SET ASIDE C&A PRODUCTS' DEFAULT
       UNDER RULE 55(C) SHOULD BE DISMISSED FOR LACK OF
       JURISDICTION. .......................................................................... 41

       A.    When Judgment Has Not Been Entered, an Order
             Denying a Motion to Set Aside a Clerk's Entry of
             Default is Not Appealable. ......................................... 41

       B.    The Collateral Order Doctrine Cannot Provide a
             Basis for Jurisdiction Over the Proposed
             Intervenors' Challenge to the Motions Setting
             Aside the Entry of Default. ........................................ 43

       C.    There Is No Pendent Appellate Jurisdiction Over
             This Portion of the Appeal ......................................... 46

IV.    EVEN ASSUMING THIS COURT HAS JURISDICTION OVER
       THIS PORTION OF THE APPEAL, THE DISTRICT COURT
       CORRECTLY DENIED THE PROPOSED INTERVENORS'
       MOTIONS TO SET ASIDE THE DEFAULT. .................................. 47

       A.    DTSC's Evidence Has Established a Prima Facie
             Case Against C&A Products, Which Has No
             Viable Defense to Liability Under CERCLA. .............. 49

             1.    The Site is a "Facility." ..................................... 50

             2.    A Release or Threatened Release of
                   Hazardous Substances Occurred at the Site. ...... 50

             3.    DTSC Incurred Costs in Response to the
                   Releases and Threatened Releases at the
                   Site. .................................................................... 52

ii

**TABLE OF CONTENTS**
**(continued)**

Page

4. C&A Products Was an Owner or Operator, or Both, of the Site at the Time of Disposal of Hazardous Substances at the Site, and Thus Is a Responsible Party Under CERCLA. ........................................................... 55

5. C&A Products Has No Defense to CERCLA Liability. ........................................................... 56

B. DTSC Would Be Prejudiced by Setting Aside the Default ........................................................................... 61

CONCLUSION ........................................................................... 61

CERTIFICATE OF COMPLIANCE ........................................................... 63

STATUTORY ADDENDUM ........................................................................ 64

# TABLE OF AUTHORITIES

**Page**

CASES

*Akina v. Hawaii*
    835 F.3d 1003 (9th Cir. 2016) ................................................................ 22

*Allen v. Bedolla*
    787 F.3d 1218 (9th Cir. 2015) ............................................................... 22

*APL Co. Pte Ltd. v. Valley Forge Ins. Co.*
    No. C09-05641, 2010 WL 1340373 (N.D. Cal. Apr. 5, 2010)............... 26

*Arizona v. City of Tucson*, 761 F.3d 1005, 1011 (9th Cir. 2014) ..................8

*Asarco LLC v. Atl. Richfield Co.*
    866 F.3d 1108 (9th Cir. 2017) ..................................................................8

*B.G.N. Fremont Square Ltd. v. Chung*
    No. CV 10-9749, 2011 WL 13129968 (C.D. Cal. 2011) ....................... 34

*Baker v. Limber*
    647 F.2d 912 (9th Cir. 1981) ............................................................. 6, 42

*Brandt v. Am. Bankers Ins. Co. of Fla.*
    653 F.3d 1108 (9th Cir. 2011) ............................................................... 42

*Choice Hotels International v. Kusum Vali, Inc.*
    No. 11cv1277, 2012 WL 1570844 (S.D. Cal. May 3, 2012) ................. 58

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*
    647 F.3d 893 (9th Cir. 2011) ........................................................ 6, 23, 39

*City of Emeryville v. Robinson*
    621 F.3d 1251 (9th Cir. 2010) ............................................................... 38

*Cohen v. Beneficial Loan Corp.*
    337 U.S. 541 (1949)................................................................................ 43

# TABLE OF AUTHORITIES
## (continued)

Page

*Cont'l Vinyl Prods. Corp. v. Mead Corp.*
27 Cal. App. 3d 543 (Cal. Ct. App. 1972).........................................26, 28

*Cnty. of Santa Clara v. USF & G*, 868 F. Supp. 274, 280 (N.D.
Cal. 1994) .............................................................................................32

*Dave Drilling Env't Eng'g, Inc. v. Gamblin*
No. 14-cv-02851, 2015 WL 4051968 (N.D. Cal. July 2,
2015) ..............................................................................................34, 35

*Dilks v. Aloha Airlines*
642 F.2d 1155 (9th Cir. 1981) ..............................................................24

*Doe v. Holy See*
557 F.3d 1066 (9th Cir. 2009) .......................................................44, 45

*Donnelly v. Glickman*
159 F.3d 405 (9th Cir. 1998) ...........................................................5, 24

*Enron Oil Corp. v. Diakuhara*
10 F.3d 90 (2d Cir. 1993) ..........................................................44, 45, 58

*Franchise Holding II, Ltd. Liab. Co. v. Huntington Rests. Grp.,*
*Inc.*
375 F.3d 922 (9th Cir. 2004) .............................................42, 43, 48, 59

*Freedom from Religion Foundation, Inc. v. Geithner*
644 F.3d 836 (9th Cir. 2011) ................................................................23

*Gray v. Begley*
182 Cal. App. 4th 1509 (Cal. Ct. App. 2010)............................25, 27, 28

*Gray v. Zurich Insurance Co.*
65 Cal. 2d 263 (Cal. 1966) ...................................................................17

*Haw. Carpenters' Tr. Funds v. Stone*
794 F.2d 508 (9th Cir. 1986) .............................................6, 42, 44, 48

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hinton v. Beck*
176 Cal. App. 4th 1378 (Cal. Ct. App. 2009)......................................... 26

*In re Collins & Aikman Prods.*, LLC
No. 10348, 2014 WL 6907689 (Del. Ch. Dec. 8, 2014) ........................ 13

*In re First T.D. & Inv., Inc*.
253 F.3d 520 (9th Cir. 2001) ................................................................. 15

*K.W. ex rel. D.W. v. Armstrong*
789 F.3d 962 (9th Cir. 2015) ................................................................. 46

*Key Bank of Maine v. Tablecloth Textile Co. Corp*.
74 F.3d 349 (1st Cir. 1996)............................................................... 58, 60

*Key Tronic Corp. v. United States*
511 U.S. 809 (1994)............................................................................... 58

*Levin Metals Corp. v. Parr-Richmond Terminal Co*.
799 F.2d 1312 (9th Cir. 1986) ............................................................... 57

*Louisiana-Pacific Corp. v. Beazer Materials & Services*
811 F. Supp. 1421 (E.D. Cal. 1993) ...................................................... 53

*Matthew v. Laudamiel*
C.A. No. 5957, 2012 WL 605589 (Del. Ch. Feb. 21, 2012) .................. 13

*Meadows v. Dominican Republic*
817 F.2d 517 (9th Cir. 1987) ................................................................. 43

*Mendoza v. Wight Vineyard Mgmt.*
783 F.2d 941 (9th Cir. 1986) ................................................................. 43

*Mohawk Indus. v. Carpenter*
558 U.S. 100 (2009)............................................................................... 45

# TABLE OF AUTHORITIES
## (continued)

Page

*New York v. Green*
420 F.3d 99 (2d Cir. 2005) .......................................................... 28, 59, 60

*Northwest Forest Res. Council v. Glickman*
82 F.3d 825 (9th Cir. 1996) ...................................................... 24

*Noya v. A.W. Coulter Trucking*
143 Cal. App. 4th 838 (Cal. Ct. App. 2006)........................................... 27

*O'Connor v. Nevada*
27 F.3d 357 (9th Cir. 1994) ...................................................... 43

*Olden v. Hagerstown Cash Reg., Inc.*
619 F.2d 271 (3d Cir. 1980) ...................................................... 26

*Orange County Airport Hotel Assoc. v. Hongkong & Shanghai Banking Corp.*
52 F.3d 821 (9th Cir. 1995) ............................................... 44, 45

*Parker v. Dean Transp., Inc.*
No. CV 13-02621, 2013 WL 7083269 (C.D. Cal. Oct. 15, 2013) ................................................. 12

*Pena v. Seguros La Comercial*
770 F.2d 811 (9th Cir. 1985) ................................................. 43

*Perry v. Schwarzenegger*
630 F.3d 898 (9th Cir. 2011) .......................................... *passim*

*Poulos v. Caesars World, Inc.*
379 F.3d 654 (9th Cir. 2004) ................................................. 46

*Reliance Ins. Co. v. Superior Ct.*
84 Cal. App. 4th 383 (Cal. Ct. App. 2000)................................. 27, 33, 34

vii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy*
*Prods., Inc.*
725 F.2d 871 (2d Cir. 1984) ............................................................. 26, 35

*SEC v. Capital Consultants LLC*
453 F.3d 1166 (9th Cir. 2006) ................................................................ 44

*Smith v. L.A. Unified Sch. Dist.*
830 F.3d 843 (9th Cir. 2016) ................................................................. 22

*State of Cal. Dep't of Toxic Substances Control v.*
*Snydergeneral Corp.*
876 F. Supp. 222 (E.D. Cal. 1994) ........................................................ 52

*State of California ex. rel. Cal. Dep't of Toxic Substances*
*Control v. Neville Chem. Co.*
358 F.3d 661 (9th Cir. 2004) ................................................................. 52

*Symantec Corp. v. Glob. Impact, Inc.*
559 F.3d 922 (9th Cir. 2009) .................................................. 6, 22, 41, 42

*TCI Grp. Life Ins. Plan v. Knoebber*
244 F.3d 691 (9th Cir. 2001) ................................................................. 43

*Ticor Title Ins. Co. v. Emps. Ins. of Wausau*
40 Cal. App. 4th 1699 (Cal. Ct. App. 1995) ........................................... 32

*Travelers Indem. Co. v. Dingwell*
884 F.2d 629 (1st Cir. 1989) ........................................................... *passim*

*United States v. Signed Personal Check No. 730 of Yubran*
*Mesle*
615 F.3d 1085 (9th Cir. 2010) ..................................................... 48, 59, 60

*United States v. Aguilar*
782 F.3d 1101 (9th Cir. 2015) ......................................................... 43, 48

viii

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Carolina Transformer Co.*
739 F. Supp. 1030 (E.D.N.C. 1989) ........................................................ 51

*United States v. Chapman*
146 F.3d 1166 (9th Cir. 1998) ............................................... 49, 53, 54, 57

*United States v. City of Los Angeles*
288 F.3d 391 (9th Cir. 2002) .................................................. 39

*United States v. Hardage*
982 F.2d 1436 (10th Cir. 1992) .............................................. 55

*United States v. Hunter*
70 F. Supp. 2d 1100 (C.D. Cal. 1999) ....................................... 8

*United States v. Union Electric Co.*
64 F.3d 1152 (8th Cir. 1995) ........................................... 40, 41

*United States v. W.R. Grace & Co.*
429 F.3d 1224 (9th Cir. 2005) ............................................... 54

*Washington State Dep't of Transp. v. Washington Nat. Gas Co.*,
59 F.3d 793 (9th Cir.1995) ...................................... 58

*Western Heritage Ins. Co. v. Superior Court*
199 Cal. App. 4th 1196 (Cal. Ct. App. 2011) ......................... 34

*WildEarth Guardians v. U.S. Forest Service*
573 F.3d 992 (9th Cir. 2009) ................................................. 38

## FEDERAL STATUTES

28 U.S.C.
§ 1291 .................................................................... 5
§ 1331 .................................................................... 5

# TABLE OF AUTHORITIES
## (continued)

Page

**FEDERAL STATUTES (CONTINUED)**

42 U.S.C.

§ 9601(8) .................................................................... 51
§ 9601(9) .................................................................... 50
§ 9601(14) .................................................................. 50
§ 9601(22) .................................................................. 51
§ 9601(23) .................................................................. 52
§ 9601(24) .................................................................. 51
§ 9601(25) .................................................................. 52
§ 9607 ........................................................................ 55
§ 9607(a)(2) ............................................................... 55
§ 9607(a)(4)(A) ....................................................... 8, 52
§ 9607(b) .................................................................... 56
§ 9613(g)(2) ............................................................... 13
§ 9613(j) ..................................................................... 54

**FEDERAL RULES AND REGULATIONS**

Federal Rules of Civil Procedure

§ 17(b)(3) ................................................................... 12
§ 24 ............................................................................ 26
§ 24(a) .................................................................. *passim*
§ 24(a)(2) ....................................................... 6, 22, 26
§ 24(a)(3), (4) ............................................................ 38
§ 24(b) .......................................................... 6, 39, 40
§ 55(b) ........................................................................ 16
§ 55(b)(2) .......................................................... 16, 28
§ 55(c) ............................................................ 41, 47, 48
§ 60(b) ............................................................ 47, 48, 57

40 C.F.R., pt. 302.4 ..................................................... 50

# TABLE OF AUTHORITIES
## (continued)

**Page**

STATE STATUTES

California Code of Civil Procedure § 387 .................................................... 26
California Corporation Code § 17708.01(a) ................................................. 12
California Health & Safety Code § 25358.3(a)(2) ...................................... 11
California Insurance Code § 11580 ....................................................... *passim*
Delaware Code Ann. tit. 6, § 18-805 ..................................................... 13, 28

**INTRODUCTION**

Plaintiffs-Appellees California Department of Toxic Substances

Control and the Toxic Substances Control Account (collectively, "DTSC")

incurred over $3.2 million in unreimbursed response costs through May

2019 responding to soil and groundwater contamination resulting from

releases at and from a privately-owned former wood treatment and

preserving facility in Elmira, California (the "Site"). DTSC never owned the

Site, and did not cause or contribute to the contamination.

As the state agency with authority to address the release or threatened

release of hazardous substances, DTSC took response actions because the

contamination threatened public health and the environment, and because

none of the companies responsible for the contamination would perform the

necessary response actions. One of these companies, Collins & Aikman

Products Co., a predecessor to defendant Collins & Aikman Products, LLC

("C&A Products"),[1] had filed for bankruptcy and stopped all investigation

and remediation at the Site. The Site's owners and operators at the time of

the bankruptcy, Jim Dobbas, Inc. and Continental Rail, Inc., and a later

---

[1] Other predecessor entities of C&A Products included Collins & Aikman Group, Inc., Wickes Companies, Inc., and The Wickes Corporation. 3-ER-530-531. C&A Products LLC is the successor by merger or name change to those entities. *Ibid*; *see infra n.2.*

1

purchaser, David Van Over, also refused to address the contamination at the Site.

Having been forced to spend public funds to investigate and clean up contamination on private property, in 2014, DTSC filed suit against all of the responsible parties except for C&A Products, a cancelled Delaware corporation (the "Action"). DTSC sought cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675, and additional relief under state environmental law. In November 2014, DTSC successfully moved the Delaware Court of Chancery for the appointment of a receiver in order to sue C&A Products. 2-ER-164-172. After the receiver was appointed in December 2014, 2-ER-280, DTSC filed an amended complaint in the Action adding C&A Products as a defendant. C&A Products, through the receiver, failed to respond to the amended complaint, and the clerk entered C&A Products' default in March 2015. 2-ER-282.

After several years of litigation, DTSC resolved its claims against all of the solvent defendants. DTSC filed an application for entry of a default judgment against C&A Products that would establish the amount of past response costs owed, and would, if granted, result in a declaration that C&A Products was liable for all future response costs at the Site. DTSC's

2

insurance consultant Arcina Risk Group ("Arcina") subsequently completed its identification of C&A Products' historical insurers, and sent demand letters on behalf of DTSC to multiple potential insurance carriers.

A flurry of litigation followed. Multiple insurers filed motions to intervene in the Action and to set aside the clerk's entry of default. The district court denied them all, in orders dated October 22 and December 4, 2019. 4-ER-834-836. Five of the insurers, collectively referred to herein as the Proposed Intervenors – Century Indemnity Company ("Century"); Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company (collectively, "Allianz"); and The Continental Insurance Company ("Continental") – filed notices of appeal from the district court's December 4, 2019, order denying their motions to intervene and to set aside the clerk's entry of default. The district court stayed the Action pending appeal. 2-ER-13.

The Proposed Intervenors present the issue to be decided on appeal as one of fairness and due process. They argue that they were denied their claimed right to be notified of the existence of the Action as soon as C&A Products was sued – which was well before DTSC even knew the identities of C&A Products' historical insurers. However, they cite no pertinent authority for this claim, and there are no due process issues here.

3

Rather, this is a case in which multiple insurance companies, none of which even acknowledges that C&A Products is, in fact, its insured, refuse to accept responsibility for their insured's liability under CERCLA. They do so while arguing strenuously that they are entitled to control the litigation and enjoy the benefits that would accrue to an insurer that had agreed to provide coverage, either with or without a reservation of rights. But the Proposed Intervenors cannot have it both ways. Had they stipulated to the existence of coverage, even with a reservation of rights, there would have been no need to litigate the intervention issue; DTSC would have stipulated to their intervention. Since they continued to disclaim responsibility for C&A Products' liability under CERCLA, however, the district court correctly held that they were not entitled to intervene.

In addition, although the Proposed Intervenors assume that it is, the district court's denial of the motions to set aside the default is not an appealable final order. The Court has no jurisdiction over this portion of the appeal, and it need not – and should not – reach the merits of the issue. But even if jurisdiction existed, affirmance of the district court's denial of the motions to set aside C&A Products' default would nonetheless be appropriate. There were no grounds for the district court to vacate the clerk's entry of default, because C&A Products could assert no meritorious

4

defense to liability under CERCLA. The Proposed Intervenors do not even argue that C&A Products has a defense to liability; they only argue that the amount of DTSC's damages is in dispute. This means that the adequacy of the notice they received is irrelevant, because notice could not have changed the outcome. The district court's December 2019 order was correct, and should be affirmed in full.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this matter pursuant to 28 U.S.C. § 1331 (action based on federal law, 42 U.S.C. §§ 9601-9675).

On December 4, 2019, the district court denied the Proposed Intervenors' motions to intervene and set aside the default of C&A Products, which had failed to respond to DTSC's First Amended Complaint. 1-ER-3-8. The Proposed Intervenors filed a notice of appeal of this interlocutory order on January 3, 2020. 4-ER-797-798.

This Court has jurisdiction over the district court's denial of the Proposed Intervenors' motion to intervene as of right pursuant to 28 U.S.C. § 1291. *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The Court has jurisdiction over the district court's failure to grant the Proposed Intervenors' alternative request for permissive intervention only if the

5

district court abused its discretion. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011).

Since the district court's denial of the Proposed Intervenors' motions to set aside C&A Products' default is not appealable, this Court does not have jurisdiction over that issue. *Symantec Corp. v. Glob. Impact, Inc*., 559 F.3d 922, 923 (9th Cir. 2009) (no jurisdiction over an appeal from an order denying a motion to set aside entry of default alone); *see also Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 512 (9th Cir. 1986) (entry of default is not an appealable final order); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981) (an appeal of entry of default filed before entry of judgment must be dismissed as premature).

## STATEMENT OF ISSUES PRESENTED

1.  Are the Proposed Intervenors – insurance carriers who describe themselves merely as C&A Products' "putative insurers," and have neither accepted coverage without a reservation of rights nor agreed to defend C&A Products with a reservation of rights – entitled to intervention as of right in the Action under Rule 24(a)(2) of the Federal Rules of Civil Procedure?

2.  Did the district court abuse its discretion when it failed to grant permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure to the Proposed Intervenors – insurance carriers who describe

themselves merely as C&A Products' "putative insurers," and have neither accepted coverage without a reservation of rights nor agreed to defend C&A Products with a reservation of rights?

3.    Does this Court have jurisdiction over the Proposed Intervenors' appeal of the district court's order denying their motions to set aside C&A Products' default?

4.    If this Court holds that it has jurisdiction over the appeal of the order denying the Proposed Intervenors' motion to set aside the clerk's entry of default (which DTSC contends it does not), was the motion nonetheless properly denied due to C&A Products' lack of a meritorious defense under CERCLA?

## STATUTORY ADDENDUM

Pertinent statutes and regulations are set forth in an addendum to this brief.

## STATEMENT OF THE CASE

### I.   STATUTORY AND REGULATORY BACKGROUND

Congress enacted CERCLA for two primary purposes: (1) to ensure that hazardous substances released to the environment are promptly and properly investigated and remediated; and (2) to ensure that response costs are borne by those parties responsible for the releases rather than by the

7

public. *Asarco LLC v. Atl. Richfield Co*., 866 F.3d 1108, 1115 (9th Cir. 2017).

CERCLA "imposes strict liability on certain classes of parties who are potentially responsible for a site's contamination." *Arizona v. City of Tucson*, 761 F.3d 1005, 1011 (9th Cir. 2014). A party found liable under section 107 of CERCLA is liable for "all costs of removal or remedial action incurred by . . . a State . . . not inconsistent with the national contingency plan." *Ibid.*; 42 U.S.C. § 9607(a)(4)(A). Defendants are typically jointly and severally liable for response costs. *Arizona*, 761 F.3d at 1011.

## II. FACTUAL BACKGROUND

DTSC generally does not dispute the summary of facts in Appellants' Opening Brief ("Appellants' Br.") as it relates to the contamination at the Site, and the dealings among third parties. However, DTSC sets forth below certain key information omitted from the Proposed Intervenors' Statement of the Case.

From approximately 1972 to 1982, wood-preserving operations were conducted at the Site. 2-ER-288; 1-SER-028-029; 1-SER-265; 3-ER-529-530. At various times since 1972, including in 1979 and 1980, hazardous substances, including arsenic, chromium, and copper, were released at the Site. *E.g.*, 2-ER-285-288; 1-SER-003-023; 1-SER-264-265; 2-SER-292,

297-300, 302-303; 3-ER-531. These hazardous substances are constituents of the wood preserving chemicals used at the Site. 2-ER-288; 1-SER-028-029; *see* 3-ER-531.

On approximately September 12, 1979, The Wickes Corporation ("Wickes") purchased the Site and conducted business operations there until about 1982.[2] 2-ER-285; 3-ER-531. Wickes and its successor, Collins & Aikman Products Co., continued to own the Site until about March 20, 1997, on which date they sold it to Jim Dobbas, Inc. ("Dobbas") and Continental Rail, Inc. ("CRI"). 1-SER-265; 3-ER-532. From the 1980s through 2005, Wickes and its successor Collins & Aikman Products Co., under the oversight of DTSC, took various response actions to address environmental contamination at, around, and/or beneath the Site. 2-ER-286-287; 1-SER-265; 3-ER-531. Those response actions included soil excavation; installation of an asphalt cap over contaminated soils; construction of a building and a drainage system at another area of contamination; and installation, operation and monitoring of a groundwater extraction and

---

[2] Wickes changed its name to Collins & Aikman Group, Inc., and later merged into Collins & Aikman Products Co. 3-ER-530-531. Collins & Aikman Products Co. owned the Site until 1997. 3-ER-531. C&A Products was formed in 2007 from Collins & Aikman Products Co. 3-ER-530.

treatment system.  2-ER-286-287; 1-SER-265; 3-ER-531.  Collins &

Aikman Products Co. paid DTSC's oversight costs until December 2004.

*See* 1-SER-051.

In 2005, while in Chapter 11 bankruptcy proceedings, Collins &

Aikman Products Co. stopped performing response actions at the Site.  *See*

1-SER-265; 3-ER-532.  In 2006, DTSC requested that Dobbas and CRI, the

then-current owners of the Site, carry out the necessary response actions to

address the contamination at the Site.  2-ER-287; 3-ER-532.  When Dobbas

and CRI refused to perform any of these response actions, DTSC issued an

Imminent or Substantial Endangerment Determination on November 9,

2006, and reevaluated the necessary response actions at the Site.  2-ER-287;

1-SER-265.

In July 2010, DTSC finalized a Removal Action Work Plan for the Site

that called for contaminated soil excavation, off-site disposal, backfilling,

confirmation sampling, demolition of the groundwater extraction and

treatment system, and long-term groundwater monitoring.  1-SER-265; 3-

ER-533.  Contaminated groundwater had migrated from beneath the Site to

the nearby residential area, threatening exposure to contaminants if

groundwater was used for irrigation, or if crop or orchard tree roots

contacted shallow groundwater.  2-ER-288; *see also* 1-SER-265-266.

10

On or about February 11, 2011, Dobbas and CRI sold the Site to an individual, David Van Over ("Van Over"). 2-ER-288; 3-ER-533. On March 16, 2011, DTSC issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order to Dobbas, CRI, and Van Over, instructing them to conduct response actions at the Site. 1-SER-266; 3-ER-533. Because Dobbas, CRI, and Van Over refused to comply with this order, DTSC had to expend additional public funds to take response actions at the Site. 1-SER-266; 3-ER-533-534; *see also* Cal. Health & Safety Code § 25358.3(a)(2). DTSC's response actions at the Site are ongoing. 2-ER-288-289.

## III.  PROCEDURAL HISTORY

Between 2005 and May 2019, DTSC spent over $3.2 million in unreimbursed taxpayer funds performing response actions and monitoring chromium, arsenic, and copper contamination at the privately-owned Site. *See* 3-ER-326; 1-SER-053. DTSC filed the Action on March 3, 2014, to recover the unreimbursed taxpayer funds it was forced to spend to respond to soil and groundwater contamination caused by releases at and from the Site when the responsible parties – including defendant C&A Products – became defunct, stopped doing the cleanup, or simply refused to do it in the first instance. *See* 2-SER-304-315. The original complaint named as

11

defendants Dobbas, CRI, West Coast Wood Preserving, LLC ("WCWP"),

Pacific Wood Preserving ("PWP"), and Van Over.  2-SER-304.

Defendant C&A Products is a Delaware limited liability company,

formed on or about December 6, 2007, from the different Delaware

corporation Collins & Aikman Products Co.  3-ER-530-531.  A Certificate

of Cancellation for defendant C&A Products was filed with the Delaware

Secretary of State on or about August 28, 2013.  3-ER-530.  On November

13, 2014, DTSC petitioned the Delaware Court of Chancery for appointment

of a receiver for C&A Products under 6 Delaware Code section 18-805, so

that C&A Products could be sued under Rule 17(b)(3) of the Federal Rules

of Civil Procedure.[3]  2-ER-263-271.  Under Delaware law, a cancelled

limited liability company can be sued if the Delaware Court of Chancery

appoints a trustee or receiver for the company under 6 Delaware Code

---

[3] Rule 17(b)(3) provides in pertinent part that capacity to be sued is determined "by the law of the state where the court is located . . . ."  Fed. R. Civ. P. 17(b)(3).  California law in turn provides that "[t]he law of the state or other jurisdiction under which a foreign limited liability company [such as C&A Products, LLC] is formed governs . . . [t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers."  Cal. Corp. Code § 17708.01(a).  Therefore, Delaware law governs the capacity of a Delaware limited liability company to be sued in federal court in California.  *Parker v. Dean Transp., Inc.*, No. CV 13-02621, 2013 WL 7083269, at *12 (C.D. Cal. Oct. 15, 2013), *abrogated on other grounds by Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014).

section 18-805, or nullifies the certificate of cancellation. *Matthew v. Laudamiel*, C.A. No. 5957, 2012 WL 605589, at \*21 (Del. Ch. Feb. 21, 2012); *see also* Del. Code Ann. tit. 6, § 18-805.

The Delaware Court of Chancery granted DTSC's petition, and appointed Mr. Brian Rostocki as the receiver for C&A Products on December 8, 2014, 2-ER-280, with the power (but not the obligation) to defend it in the Action. *In re Collins & Aikman Prods*., LLC, No. 10348, 2014 WL 6907689, at \*1-2 (Del. Ch. Dec. 8, 2014). DTSC then filed an amended complaint on December 11, 2014, adding C&A Products as a defendant. 4-ER-824. The First Amended Complaint ("FAC") seeks recovery of response costs and declaratory relief under CERCLA, alleging that C&A Products and the others, as former owners and/or operators of the Site, are jointly and severally liable under CERCLA section 107(a), for costs incurred and to be incurred by DTSC in response to the release of hazardous substances into the soil and groundwater at and from the Site. 3-ER-534-535. The FAC also seeks a declaratory judgment for DTSC's future response costs incurred at the Site pursuant to CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2). 3-ER-535.

The costs set forth in the FAC are response costs that DTSC incurred after November 2005. 3-ER-532-535. DTSC had no unreimbursed costs in

13

the 1980s, 1990s, or early 2000s, and very few before November 2005, because C&A Products paid all of DTSC's oversight costs until December 2004, just before it entered bankruptcy. 1-SER-051. In November 2005, DTSC learned that C&A Products had stopped operating the groundwater treatment system at the Site. DTSC then began taking response actions to address the public health and environmental threat. *See* 2-ER-287-288; 1-SER-265. DTSC incurred response costs related to its efforts to repair and restart the groundwater extraction and treatment system; conduct a removal investigation for site soils; prepare and implement the Removal Action Workplan; conduct groundwater monitoring; and monitor the condition of the asphalt cap. 2-ER-288-289.

In March 2015, after C&A Products failed to answer the FAC, DTSC obtained a clerk's entry of default. 2-ER-280, 282. Between 2014 and 2019, DTSC requested and received entry of default against two other insolvent defendants (CRI, PWP), 4-ER-819, and focused on resolving the liability of the solvent defendants, namely, WCWP, Dobbas, and Van Over. Those defendants entered into settlements with DTSC that were embodied in consent decrees approved by the district court on September 16, 2015, November 18, 2015, and March 28, 2018, respectively. 3-ER-487-500; 3-ER-473-486; 3-ER-449-467. DTSC did not move for a default judgment

14

against C&A Products until after the case had been resolved as to all other viable defendants, in accordance with applicable case law. *See In re First T.D. & Inv., Inc*., 253 F.3d 520, 532 (9th Cir. 2001) (where a complaint alleges defendants are jointly liable, and one of them defaults, a default judgment should not be entered against the defaulting defendant until the matter has been adjudicated with respect to all defendants).

After the entry of the consent decrees resolving the liability against the solvent defendants, DTSC continued its research into the existence of insurance policies that could cover the period during which C&A Products and its predecessors were operational, seeking to determine if it was worth the significant expenditure of funds required for DTSC to file a motion for default judgment. In June 2018, DTSC sent a tender to the agents for service of process for The Travelers Indemnity Company, 2-ER-252-253, and The Hartford, the two of C&A Products' historical insurers of which it was then aware.

By 2019, DTSC's consultant Arcina had located evidence of a number of other potential historical insurance policies related to C&A Products, and DTSC prepared and filed a motion for default judgment that would, if granted, have entitled DTSC to proceed directly against C&A Products'

historical insurers under California Insurance Code section 11580.[4] Shortly thereafter, once Arcina had finalized the list of possible historical insurers of C&A Products, DTSC requested that Arcina give notice of the lawsuit to those insurers on behalf of DTSC and on behalf of C&A Products.

DTSC thus gave notice to additional insurers, including Century, Allianz, and Continental, by letters dated September 10, 2019. 2-ER-107, 244; *see also, e.g.*, 2-ER-161-174; 2-ER-214-217; 2-ER-241, 244. The Proposed Intervenors promptly filed multiple motions to intervene, either as of right or permissively, and to set aside C&A Products' default. *See*, *e.g.*, 2-ER-128-159; 2-ER-188-212; 2-ER-221-239. At that time, the investigation into the historic insurance policies was still ongoing, and the Proposed Intervenors had not shared with DTSC any documents demonstrating an absence of coverage for C&A Products.

---

[4] Because the prayer for relief in the FAC did not set forth a sum certain or a sum that could be made certain by computation, the clerk could not enter default judgment in the case. Fed. R. Civ. P. 55(b). Default judgment will have to be entered by the Court, and the Court may hold a "prove-up" hearing. *See* Fed. R. Civ. P. 55(b)(2); 1-ER-8 n.3. DTSC filed its motion for default judgment, together with declarations relating to the response costs incurred, on August 21, 2019. 4-ER-833. To date, the motion has not been heard, and the case is stayed pending appeal. 4-ER-838-839.

Subsequently, Century denied coverage, claiming it was shielded by a confidential settlement agreement. 2-ER-214; 1-ER-5 ("Century disclaimed coverage of any claims arising from the DTSC litigation, citing a settlement agreement Century purportedly signed with C&A Products in 2000."). It did not produce the agreement to DTSC. Continental asserted that it could not take a position on coverage, and did not do so. 2-ER-50. Allianz claimed that it "reserved rights" while investigating, but it never took a position on coverage. *See* 2-ER-178.

Prior to filing its opposition to the Proposed Intervenors' motions to intervene and to set aside the default, DTSC offered to stipulate to the intervention of (1) any insurer that accepted coverage for C&A Products' liability without a reservation of rights, or (2) any insurer who agreed that there was a potential for coverage, as defined by *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263 (Cal. 1966).[5] 2-ER-89, 94. When none of the Proposed Intervenors accepted DTSC's proposal,[6] DTSC filed its opposition to the

_____

[5] DTSC offered to "stipulate to the intervention of any insurer that (1) accepts coverage for C&A Products, LLC's potential liability without a reservation of rights, or (2) any insurer who agrees that there is a potential for coverage, as defined by *Gray v. Zurich Ins. Co.*, [65 Cal. 2d 263 (Cal. 1966)], so that (if a primary insurer) it has a duty to defend C&A Products, LLC with a reservation of rights." 2-ER-89-90, 94.

[6] 2-ER-88-90; 1-ER-5; 1-ER-6 & n.2.

17

motions to intervene and set aside the default, 4-ER-836. The district court denied the motions to intervene and to set aside the default,[7] 1-ER-3-8, and the Proposed Intervenors appealed. 4-ER-797-809.

## SUMMARY OF ARGUMENT

Since 2005, DTSC has spent over $3.2 million in unreimbursed taxpayer funds performing response actions and monitoring chromium, arsenic, and copper contamination at the privately-owned Site. C&A Products is the successor to Wickes, whose wood treatment operations led to much of the contamination at the Site. DTSC therefore took the steps necessary to sue and secure the default of C&A Products. The Proposed Intervenors sought to intervene in the Action, but disregarded DTSC's proposed stipulation, which would have allowed them to do so. Specifically, they refused to acknowledge that there was any potential for coverage under the policies they wrote for C&A Products. The Proposed Intervenors also

---

[7] The Proposed Intervenors claim, erroneously, that the district court's order "did not address the Proposed Intervenors' requests to vacate the default." Appellants' Br. at 18. However, the order is clear that the motions were denied in their entirety. 1-ER-5 ("Continental also does not advance any new argument to establish good cause to set aside C&A Products' default"); 1-ER-8 ("IT IS THEREFORE ORDERED that the motions to intervene and vacate default filed [by Continental, Century, and Allianz] be, and the same thereby are, DENIED.").

18

failed to provide the district court with any evidence indicating that C&A Products was not liable for the response costs DTSC incurred at the Site.

Under Rule 24(a), three of the four elements to be considered in evaluating intervention as of right each concerns a "significant protectable interest." One of these elements is whether or not the applicant has such an interest; another, whether such interest will be impaired or impeded if the applicant cannot intervene; and a third, whether such interest is adequately represented by a party already in the lawsuit. The remaining element does not relate to the existence of a "significant protectable interest," but to the applicant's diligence: i.e., whether it made a timely application to intervene.

The Proposed Intervenors did not then, and do not now, demonstrate that they have any significant protectable interest that would justify intervention as of right under the applicable law. To the contrary: Century denied coverage, asserting that it was shielded by a confidential settlement agreement. Continental asserted that it could not take a position on coverage, and did not do so. Allianz (a high excess insurer, unlike the primary insurers), made a statement indicating that it "reserve[d] all of its rights" while investigating, but it never took a position on coverage. DTSC offered to stipulate to the intervention of any insurer that would agree that there was some *potential* for coverage – that is, that it had some sort of a

19

protectable interest – but none of the Proposed Intervenors accepted the offer, much less accepted coverage, either with or without a reservation of rights.

On this record, the district court was correct to deny the Proposed Intervenors' motions to intervene as of right, because the applicable law establishes that when an insurer fails to acknowledge any potential for coverage, it has not met its burden to demonstrate the existence of a significant protectable interest.[8] The Proposed Intervenors also fail to show that the district court abused its discretion by not granting their requests, in the alternative, for permissive intervention. Although permissive intervention does not require demonstrating the existence of a significant protectable interest, it does require the Proposed Intervenors to demonstrate that they have standing, which their coverage positions make clear they do not. At best, they have an interest contingent upon resolution of the coverage issue. Moreover, the Proposed Intervenors fail to identify common questions of law or fact that would support a need for permissive

---

[8] Since the Proposed Intervenors do not demonstrate the existence of such an interest, the Court need not reach the issue whether such an interest would be impaired or whether it would be adequately represented by the existing parties. And since intervention as of right under Rule 24(a) requires that the applicant satisfy all four elements, the timeliness element, though not in dispute, is not relevant here.

intervention, or to show how they could contribute to full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented. To the contrary, their intervention would simply prolong and complicate the litigation. Thus, the district court did not abuse its discretion by failing to grant the Proposed Intervenors' requests for permissive intervention.

Finally, the Proposed Intervenors also seek to overturn the district court's denial of their motions to set aside the clerk's entry of default against C&A Products. This Court does not have jurisdiction over this aspect of the appeal, because the denial of the motions to set aside the default is not an appealable final order. No default judgment has been entered as to C&A Products, and there is no other basis for appellate jurisdiction. Even assuming the Court had jurisdiction to review the district court's denial of these motions, however, this Court should affirm. The Proposed Intervenors have not established that their insured, C&A Products, has a meritorious defense to liability under CERCLA, and reopening the default would merely serve to prejudice DTSC.

On this record, the district court was correct to deny the motions to intervene and to set aside the clerk's entry of default. This will not leave the Proposed Intervenors without a remedy: if the district court enters a default

21

judgment against C&A Products, the Proposed Intervenors will be able to litigate their coverage defenses in an action under California Insurance Code section 11580.

## STANDARD OF REVIEW

Generally, this Court conducts a de novo review of the district court's order adjudicating a claim of intervention as of right. *Akina v. Hawaii*, 835 F.3d 1003, 1011 (9th Cir. 2016). The issue of timeliness, which is not disputed by DTSC here, is reviewed for abuse of discretion. *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

Denial of a motion for permissive intervention is reviewed for an abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015); *Perry v. Schwarzenegger*, 630 F.3d 898, 905-06 (9th Cir. 2011) (per curiam).

Where a default judgment has not been entered, denial of a motion to set aside a default is not appealable. *See Symantec Corp.*, 559 F.3d at 923.

## ARGUMENT

**I.** **THE PROPOSED INTERVENORS WERE NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT.**

Rule 24(a)(2) of the Federal Rules of Civil Procedure permits a person to intervene as a matter of right, on timely motion, where the movant

22

"claims an interest relating to the property or transaction that is the subject

of the action, and is so situated that disposing of the action may as a

practical matter impair or impede the movant's ability to protect its interest,

unless existing parties adequately represent that interest."

Thus, intervention as of right is appropriate when (1) the application is

timely; (2) the applicant has a significant protectable interest relating to the

property or transaction that is the subject of the action; (3) the disposition of

the action may impair or impede the applicant's ability to protect its interest

as a practical matter; and (4) the parties in the lawsuit may not adequately

represent the applicant's interest. *Citizens for Balanced Use*, 647 F.3d at

897. "An applicant's [f]ailure to satisfy any one of the requirements is fatal

to the application, and [the court] need not reach the remaining elements if

one of the elements is not satisfied." *Perry*, 630 F.3d at 903 (citation and

internal quotation marks omitted). It is the applicant's burden to establish

that each of the four elements is met. *Freedom from Religion Foundation,*

*Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

Three of the four elements in Rule 24(a) relate to the "significant

protectable interest" described in *Citizens for Balanced Use*, 647 F.3d at

897. One of these elements is whether or not the applicant has such an

interest; another, whether such interest will be impaired or impeded if the

23

applicant cannot intervene; and a third, whether such interest is adequately represented by a party already in the lawsuit. *Ibid*. The fourth element, timeliness, is not disputed here. Thus, the key issue in this appeal is whether the Proposed Intervenors have a significant protectable interest relating to the property or transaction that is the subject of the Action. The district court correctly determined they did not.

> **A. The Proposed Intervenors Have Failed to Demonstrate That They Have a Significant Protectable Interest in the Property or Transaction That Would Entitle Them to Intervene as of Right.**

In the Ninth Circuit, to demonstrate the existence of a "significantly protectable interest," the prospective intervenor must show that the interest asserted is "protectable under some law" and that there is a "relationship between the legally protected interest and the claims at issue." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citations and internal quotation marks omitted). The relationship requirement will be met "if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998). The interest must be "direct, non-contingent, substantial and legally protectable." *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981). As shown

below, none of the Proposed Intervenors has demonstrated an interest sufficiently direct to meet this standard.

      **1.    A "Putative Insurer" Which Has Not Accepted Coverage Does Not Have a Significant Protectable Interest in Litigation Involving the Insured.**

      When an action is brought against an insured asserting a claim that the insured is liable for injury or damage, and the insured tenders the defense to the insurer, there are only three possible positions the insurer can take towards the request for coverage and a defense. *Gray v. Begley*, 182 Cal. App. 4th 1509, 1522 (Cal. Ct. App. 2010). The insurer can (1) admit coverage and provide a defense; (2) deny coverage and refuse to provide a defense; or (3) provide a defense, while reserving its right to contest coverage. *Id.* at 1522. Which of these three courses the insurer takes determines whether it has a protectable interest that would support a right to intervene. *See id.* at 1522-25; *see also*, *e.g.*, *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989).

      "There can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured when the insurer admits that the claim is covered by the policy in question." *Travelers*, 884 F.2d at 638. By contrast, many federal cases hold that even an interest asserted by an insurer *that has offered to defend the insured* while reserving

its right to deny coverage is a contingent interest not sufficient to constitute a "significant protectable interest" for purposes of Rule 24(a)(2).[9] *E.g.*, *Travelers*, 884 F.2d at 638; *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874-76 (2d Cir. 1984); *see also APL Co. Pte Ltd. v. Valley Forge Ins. Co.*, No. C09-05641, 2010 WL 1340373, at *6 (N.D. Cal. Apr. 5, 2010). A fortiori, an insurer will *not* have a direct interest in such a lawsuit when it denies coverage, contending the claim is *not* covered by the policy in question. *Cf. Travelers*, 884 F.2d at 638.

Similarly, under California law, not every interest in the outcome of litigation gives to its possessor the right to intervene in a lawsuit. *Cont'l Vinyl Prods. Corp. v. Mead Corp.*, 27 Cal. App. 3d 543, 549 (Cal. Ct. App. 1972); *Hinton v. Beck*, 176 Cal. App. 4th 1378, 1383 (Cal. Ct. App. 2009).[10] The interest must be direct and not consequential. *Cont'l Vinyl*, 27 Cal. App. 3d at 549. "A person has a direct interest justifying intervention in

---

[9] The rationale behind this rule is that "[a]llowing the insurer to intervene to protect its contingent interest would allow it to interfere with and in effect control the defense. Such intervention would . . . grant the insurer 'a double bite at escaping liability.'" *Travelers*, 884 F.2d at 639.

[10] These California cases interpret California Code of Civil Procedure section 387, not Rule 24, but the standards are similar, and insurance coverage issues are determined by state law. *See Olden v. Hagerstown Cash Register, Inc.*, 619 F.2d 271, 273-74 (3d Cir. 1980).

litigation where the judgment in the action of itself adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation." *Id.*

If an insurer admits coverage, it has a direct and immediate interest in the outcome of the action against its insured, and may intervene. *See id.* at 551*; see also Reliance Ins. Co. v. Superior Ct.*, 84 Cal. App. 4th 383 (Cal. Ct. App. 2000) (permitting intervention where there was no denial of coverage or reservation of rights). But if an insurer does not accept coverage, it does not have a direct interest in the litigation between the plaintiff and the insured sufficient to warrant intervention. *Gray v. Begley*, 182 Cal. App. 4th at 1522; *cf. Noya v. A.W. Coulter Trucking*, 143 Cal. App. 4th 838, 842 (Cal. Ct. App. 2006) (while insurer had "direct and immediate interest in the lawsuit, because it may ultimately be required to pay the judgment," its application for intervention was properly denied because it had consistently denied coverage and refused to provide a defense). By denying coverage, the insurer loses its right to control the litigation. *Gray v. Begley,* 182 Cal. App. 4th at 1522.

Some California courts of appeal hold that an insurer has a protectable interest if it agrees to defend its insured with a reservation of rights; *see, e.g.*, *Gray v. Begley,* 182 Cal. App. 4th at 1523-24. Others disagree. *See, e.g.*,

27

*Cont'l Vinyl,* 27 Cal. App. 3d at 551 ("An insurer which refused to defend except upon a reservation of rights has only a consequential interest not justifying intervention in an action against its insured."). Under either approach, an insurer that refuses to accept coverage loses its right to intervene. *Gray v. Begley*, 182 Cal. App. 4th at 1522.[11]

///

///

---

[11] Although the Proposed Intervenors devote five pages of their brief, Appellants' Br. at 36-40, to distinguishing *Gray v. Begley*, the distinctions they draw, most of which relate to the manner and timing of notification, and complaints about the receiver, are without significance. The lawsuit was served on the receiver rather than on C&A Products because C&A Products was defunct, and a receiver was required for service under Delaware law. *See* Del. Code Ann. tit. 6, § 18-805. (Nothing in the record suggests the Proposed Intervenors sought to ask the Delaware Court of Chancery to replace the receiver with one of their choosing.) DTSC was not required to serve the Proposed Intervenors with the application for default judgment, as they had not appeared in the case, Fed. R. Civ. P. 55(b)(2); *see also New York v. Green*, 420 F.3d 99, 105-106 (2d Cir. 2005), but DTSC had its consultant Arcina send tenders to all of C&A Products' historical insurers as soon as it could identify them. The Proposed Intervenors did not ask DTSC to postpone the hearing on its application for default judgment to allow them additional time to determine their coverage positions; moreover, by the time the Proposed Intervenors filed their notice of appeal on January 3, 2020, 4-ER-837, they had had nearly four months to evaluate coverage, so timing was not a factor in any failures to take a position on coverage.

**2. Because They Refused to Accept Coverage or Defend with a Reservation of Rights, the Proposed Intervenors Cannot Establish They Have a Significant Protectable Interest.**

Because none of the Proposed Intervenors here either accepted coverage, or – the allegations in Appellants' brief notwithstanding – even agreed to defend under a reservation of rights,[12] despite DTSC's offer to stipulate to their intervention if they did, the law makes clear they have no interest in this litigation sufficiently direct to constitute a "significant protectable interest" for purposes of Rule 24(a).

Century neither accepted coverage, nor accepted coverage under a reservation of rights; to the contrary, it denied any coverage obligation based on the existence of a prior confidential settlement. 2-ER-214. Continental never took a position on coverage, stating, "Proposed Intervenors [Continental and Century] are not in a position to either disclaim or accept

---

[12] As noted, some courts consider an insurer's agreement to defend under a reservation of rights to be a significant protectable interest. This is because, under the reservation of rights, the insurer will pay the judgment under one set of facts, but not under another. For example, if the insurer reserves rights under an expected and intended injury or damage exclusion, it may pay the judgment if the jury finds the injury or damage is not expected or intended, but will not pay the judgment if the jury finds that the damage was expected or intended. Of course, if an insurer's statement that it "reserves its rights" means it will not pay a judgment under any set of facts, then the insurer is in effect denying coverage, and it would have no significant protectable interest to support a right to intervene.

coverage for C&A Products, LLC." 2-ER-50. Instead, Continental stated it was "conducting searches for insurance policies" and "continues to investigate." 2-ER-241. An insurer's mere investigation, however, absent a position on coverage, does not suffice to demonstrate the existence of a significant protectable interest. *Cf. Travelers*, 884 F.2d at 638. The district court properly held that, as neither Century nor Continental had accepted coverage or agreed to defend C&A Products under a reservation of rights, their motions to intervene were properly denied. 1-ER-5-6.

Appellants' brief argues that Century and Continental need to conduct discovery in the Action and "determine whether they have any obligation to provide coverage for any liability that C&A Products, LLC might incur in this action[.]" Appellants' Br. at 35. This statement underscores the tenuous and contingent nature of any interest Century and Continental might assert. The possibility that they might at some future time identify an interest that might be protectable did not, and does not, establish the existence of a legally protectable interest. And although discovery to determine coverage may be appropriate in a declaratory relief action under California Insurance Code section 11580, it is not appropriate here.

Allianz claims, without a cite to the record, that it "issued a reservation of rights[.]" Appellants' Br. at 29, 35. However, the record makes clear that

Allianz issued only a "response and acknowledgment letter," which stated in general terms that it was in the process of evaluating its potential obligations under two policies. 2-ER-161, 178. The letter specifically stated, "In the interim, Allianz reserves all of its rights as to insurance coverage issues that may potentially arise from this matter, including the right to deny coverage entirely in the event that our investigation indicates that this loss is outside the scope of coverage provided under any policies." 2-ER-178. Allianz's letter also stated, "No action taken by Allianz shall constitute an admission of liability or coverage under any policies issued to or alleged to have been issued to C&A . . . ." *Id*. Thus, its statement that it "reserves all of its rights" while investigating is unavailing: Allianz has not shown a direct interest by admitting "that the claim is covered by the policy in question." *Travelers*, 884 F.2d at 638 (if an insurer reserves the right to deny coverage, the insurer's interest in the action's liability phase is contingent on the resolution of the coverage issue, and does not suffice to establish a significant protectable interest).

Further, Allianz identifies itself as an excess insurer. 2-ER-135. Allianz fails to demonstrate how as an excess insurer it could have a significant protectable interest. Allianz argued in the district court that excess policies only respond once the loss exceeds stated underlying limits.

31

2-ER-146. The amount of past response costs sought was $3,219,449.85. *See* 3-ER-326; 1-SER-053. The coverage chart provided to the district court, which shows eight years of coverage, shows one Allianz company, Chicago Insurance Company, with coverage of $5,000,000, part of a $15,000,000 layer that is above a policy with a limit of $10,000,000, which in turn is above the primary policy with a limit of $1,000,000. 2-ER-89, 92. Allianz did not demonstrate to the district court, nor has it articulated to this Court, how it has a protectable interest given those facts. 2-ER-89, 92.

The district court recognized the distinction. It noted, "the policy limits of the underlying primary policy must be exhausted before excess insurers have the 'right or duty to participate in the defense' of the insured." 1-ER-7 (quoting *Ticor Title Ins. Co. v. Emps. Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (Cal. Ct. App. 1995)). It went on to state, "in the environmental context, primary coverage cannot be exhausted 'until a remediation plan is approved which clearly establishes that the costs of remediation will exceed the primary indemnity limits.'" *Id*. (quoting *Cnty. of Santa Clara v. USF & G*, 868 F. Supp. 274, 280 (N.D. Cal. 1994)). The district court correctly held that because DTSC had yet to determine which primary insurer(s) would be responsible for its response costs, the parties and the court did not know what the primary indemnity limits were, meaning that "the court [could not]

32

conclude that primary coverage is exhausted and that excess insurers can properly intervene." 1-ER-8.

The cases on which the Proposed Intervenors rely do not advance their arguments. *Reliance Ins. Co. v. Superior Ct.*, 84 Cal. App. 4th 383 (Cal. Ct. App. 2000), for example, is not on point. *Reliance* concerned a corporation suspended for failure to pay franchise taxes, not a dissolved corporation (which would be analogous to a cancelled corporation under Delaware law). In *Reliance*, customers entrusted property to Campbell Moving and Storage, the insured moving company. *Id*. at 385. The customers sued Campbell for negligently mishandling and/or losing their personal property. *Id*. at 384. When Campbell's corporate status was suspended, the customers moved to strike its answer. *See id*. at 385-86. Reliance, the insurer, moved to intervene, and the court held that, on those facts, it had a right to intervene. *Id*. at 388.

The most significant distinction between *Reliance* and this case is that Reliance did not contest coverage, and there was no dispute in *Reliance* that Campbell was insured by Reliance. By contrast, none of the Proposed Intervenors in this case have conceded that it will be liable for any default

33

judgment against C&A Products, so the *Reliance* court's reasoning does not apply.[13]

    *Dave Drilling Env't Eng'g, Inc. v. Gamblin*, No. 14-cv-02851, 2015 WL 4051968 (N.D. Cal. July 2, 2015), although a CERCLA case, is similarly inapposite.  In that case, the plaintiff had sued the insurer and the insured, which had been discharged in a bankruptcy proceeding.  *Id*. at *1. Plaintiff then dismissed that lawsuit without prejudice and filed a new suit just against the insured, without filing a notice of related case.  *See id*. at *1-2, 19.  The plaintiff obtained a default judgment and sued the insurer in state court, seeking to collect the judgment from the policy.  *Id*. at *2.  The insurer moved to intervene in the action and set aside the default judgment.  *Ibid*.

    The court granted the motion to set aside the default judgment due to evidence suggesting the plaintiff had committed misconduct and acted in bad faith.  *See id*. at *7.  With respect to the motion to intervene, the court commented that an insurer that accepts coverage without reservation has a protectable interest, but that many courts deny intervention where the insurer

---

[13] Many of the cases the Proposed Intervenors cite in their brief, including *B.G.N. Fremont Square Ltd. v. Chung*, No. CV 10-9749, 2011 WL 13129968 (C.D. Cal. 2011), and *Western Heritage Ins. Co. v. Superior Court*, 199 Cal. App. 4th 1196 (Cal. Ct. App. 2011), involved situations in which there was no dispute regarding coverage or the identity of the insurers, and are distinguishable on the same basis.

reserves its right to deny coverage. *Id.* at *3 (citing, *e.g.*, *Travelers*, 884 F.2d at 638; *Restor-A-Dent Dental Labs., Inc.*, 725 F.2d at 875-76). The court distinguished these authorities in the context of the facts in *Dave Drilling* by noting that, because of the way the plaintiff filed the second lawsuit, the insurer never had an opportunity to accept coverage, or to agree to defend the insured with a reservation of rights. *Id*. at *4.

Here, by contrast, the Proposed Intervenors had such an opportunity. Century denied coverage, Continental did not state a position, and Allianz reserved its rights while investigating, but did not ultimately articulate any coverage position. *See* 2-ER-214; 2-ER-50; 2-ER-241; 2-ER-161, 178. *Dave Drilling* is simply not on point.

The Proposed Intervenors' argument boils down to the assertion that it is "possible" that a $3,219,449.85 judgment, together with a declaration of C&A Products' liability for all future remediation costs, could impair their interests. *See* Appellants' Br. at 35 (discussing Allianz; also claiming that the Proposed Intervenors "face at least potential exposure in any future Section 11580 action" that DTSC could bring). They also argue, erroneously, that "DTSC itself claims that the Proposed Intervenors are

obligated to cover any judgment entered against C&A Products, LLC."[14] However, the focus of the law is on the conduct of the insurer, and its position regarding coverage – not on the claims of a potential judgment creditor like DTSC. The Proposed Intervenors have the burden of proof, and if they show only a remote or contingent interest, as they do here, they fail to prove a substantial protectable interest justifying intervention.

The Proposed Intervenors also contend that allowing them to intervene could "potentially simplify[] and reduc[e] the scope and size of any future Section 11580 coverage action that DTSC could bring." Appellants' Br. at 35-36. But they do not explain how their intervention would accomplish this, or how this is relevant to the requirements of Rule 24(a). None of these arguments suffice to establish that any of the Proposed Intervenors have a significant protectable interest entitling them to intervene as of right.

In sum, in the context of a motion to intervene as of right, the moving party has the burden to establish the existence of a substantial protectable interest. In this case, the Proposed Intervenors could have established the

---

[14] It is true that DTSC asked its consultant, Arcina, to send demand letters to all of the historical insurers of C&A Products it located, including the Proposed Intervenors. But as the district court correctly noted, 1-ER-8, at the time the motions were filed, DTSC had not yet determined which insurers to proceed against if a default judgment was entered.

existence of such an interest by representing to the court that they provided

coverage for the loss, or that they *might* provide coverage for the loss.

DTSC offered to stipulate to the Proposed Intervenors' intervention if they

agreed to accept coverage, or even accept coverage under a reservation of

rights, but they did not do so.  2-ER-89-90, 94.  Because the Proposed

Intervenors made no representation to the court that they had a coverage

obligation, or even a potential coverage obligation – and in the case of

Century, specifically represented to DTSC that no coverage obligation

existed – they failed to establish the existence of a protectable interest

sufficiently substantial to support intervention as of right.

**B.    The Proposed Intervenors Cannot Show That Their Ability to Protect Their Significant Protectable Interests Will Be Impaired, or that Their Interests Are Not Adequately Represented, as They Have No Such Interests.**

Because the Proposed Intervenors have no significant protectable

interests, the Court need not analyze the remaining prongs of the test for

intervention as of right.  *Perry*, 630 F.3d at 903 (applicant's "'[f]ailure to

satisfy any one of the requirements is fatal to the application . . . .'") (citation

omitted).   Under Rule 24(a), two of the remaining prongs are whether

Proposed Intervenors' interest will be impaired or impeded if they cannot

intervene, and whether that interest is adequately represented by a party already in the lawsuit.[15]

Here, the Proposed Intervenors have no significant protectable interest that even *could* be impaired by the disposition of the Action.  Although the standard for demonstrating impairment is "minimal," it is the *impairment* that is permitted to be uncertain, *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (9th Cir. 2009), not, as here, the existence of the "substantial legal interest" that may be subject to impairment.[16]  Nor is intervention necessary to prevent impairment of the Proposed Intervenors' coverage defenses, which can be litigated in an action under Insurance Code section 11580.

Further, because the Proposed Intervenors have no significant protectable interest in this litigation, the Court need not reach the issue whether such interest would be adequately represented by other parties in the

---

[15] The remaining prong, timeliness, is not at issue here.

[16] The Proposed Intervenors quote *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010), for the proposition that a party "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."  Appellants' Br. at 42.  But this does not help their argument, as the Proposed Intervenors have not demonstrated that they will suffer an impairment of their interests.

38

case.  *See* Fed. R. Civ. P. 24(a)(3), (4).  In sum, the district court properly denied the Proposed Intervenors' motions to intervene as of right.

## II.    THE PROPOSED INTERVENORS DO NOT MEET THE TEST FOR PERMISSIVE INTERVENTION

Because the Proposed Intervenors' motions to intervene as of right were properly denied, this Court must determine whether it has jurisdiction to review the district court's failure to grant the Proposed Intervenors' request, in the alternative, for permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure.  *See Citizens for Balanced Use*, 647 F.3d at 896.  The Court has jurisdiction only if the district court abused its discretion.  *Ibid*.  Under Rule 24(b), permissive intervention may be permitted in the court's discretion when the applicant for intervention shows independent grounds for jurisdiction, the motion is timely, and the applicant's claim or defense and the main action involve a common question of law or fact.  *See United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002); Fed. R. Civ. P. 24(b).

In ruling on a motion for permissive intervention, the court may consider the following factors, among others:

> . . . the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case . . . whether the intervenors' interests are adequately represented by other parties,

39

> whether intervention will prolong or unduly delay the litigation, and
> whether parties seeking intervention will significantly contribute to full
> development of the underlying factual issues in the suit and to the just
> and equitable adjudication of the legal questions presented.

*Perry*, 630 F.3d at 905 (quoting *Spangler v. Pasadena Bd. of Educ.*, 552
F.2d 1326, 1329 (9th Cir. 1977)).

      The Proposed Intervenors urge that even if the Court determines they
are not entitled to intervene as of right, they are entitled to permissive
intervention. However, they have failed to demonstrate that the district court
abused its discretion by not granting permissive intervention. Although it is
true that the Proposed Intervenors need not show they have a significant
protectable interest under Rule 24(b), they must show that they have
standing to intervene in the litigation. *See Perry*, 630 F.3d at 905. Here,
although Proposed Intervenors did not clearly articulate their interest in the
Action, it is at best a contingent interest, *see Travelers Indemnity Co*., 884
F.2d at 638, because the Proposed Intervenors either denied coverage
outright or failed to take a coverage position.[17] *See* 2-ER-214-215; 2-ER-50;
2-ER-241; 2-ER-161; 2-ER-178. This does not suffice.

---

[17] The Proposed Intervenors cite *United States v. Union Electric Co*.,
64 F.3d 1152, 1162 (8th Cir. 1995), for the proposition that intervention is
not barred "simply because the proposed intervenor's interest is contingent
and inchoate." Appellants' Br. at 31. An interest "contingent upon the

In addition, the Proposed Intervenors have not identified common questions of law or fact that would support permissive intervention. Nor have they shown how they will contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *Perry*, 630 F.3d at 905. In sum, there would have been no basis for the district court to grant permissive intervention here.

### III. THE INTERLOCUTORY APPEAL OF THE DENIAL OF THE MOTIONS TO SET ASIDE C&A PRODUCTS' DEFAULT UNDER RULE 55(C) SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

#### A. When Judgment Has Not Been Entered, an Order Denying a Motion to Set Aside a Clerk's Entry of Default is Not Appealable.

The Proposed Intervenors' attempt to appeal the district court's denial of their motions to set aside the clerk's entry of C&A Products' default fails for a very simple reason: where no judgment has been entered, an order denying a motion to set aside entry of default is non-appealable.[18] *Symantec*

---

outcome of the litigation," *Union Electric*, 64 F.3d at 1162, may qualify as a significant protectable interest for purposes of intervention, but that is not the type of contingent interest discussed in *Travelers* and at issue here, which is contingent on whether coverage exists under an insurance policy.

[18] The Proposed Intervenors request that, if the default cannot "be vacated outright," the Court "reverse the order denying their intervention motion and remand this action back to the District Court for a determination

*Corp.*, 559 F.3d at 923 (no jurisdiction over an appeal from an order denying a motion to set aside entry of default alone); *see also Haw. Carpenters'*, 794 F.2d at 512 (entry of default is not an appealable final order); *Baker*, 647 F.2d at 916 (an appeal of entry of default filed before entry of judgment must be dismissed as premature).

The cases cited by the Proposed Intervenors do not hold otherwise. *See* Appellants' Br. at 20, 47-48, 51. To the extent they involved appellate review of the denial of a motion to set aside a default, in each of these cases judgment had also been entered. *See*, *e.g.*, *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1110 (9th Cir. 2011) (appeal of grant of motion to set aside default and default judgment); *Franchise Holding II, Ltd. Liab. Co. v.*

---

of their motions seeking to vacate that default." Appellants' Br. at 56. This request suggests, erroneously, that the district court failed to rule on the motions to set aside C&A Products' default. *See supra* n.7. It also but tacitly acknowledges the unappealability of this interlocutory order, and seeks to sidestep it by asking the Court to give it a second chance to convince the district court to rule in its favor (with instructions to the court not to impute the acts or omissions of the receiver to C&A Products or to the Proposed Intervenors, *id*. at 57). Not surprisingly, the Proposed Intervenors cite no authority for this extraordinary request, which would effectively provide them the relief they seek in this portion of the appeal. Because the district court's order denying the Proposed Intervenors' motions to set aside the clerk's entry of default is not appealable at this stage of the litigation, that portion of the order stands – even if the Court believes (which it should not) that the district court erred by not allowing intervention.

*Huntington Rests. Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004) (appeal of denial of motion to set aside default and default judgment); *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 942-43, 945-46 (9th Cir. 1986) (appeal of grant of motion to set aside default and grant of summary judgment); *O'Connor v. Nevada*, 27 F.3d 357, 359, 364 (9th Cir. 1994) (appeal of grant of motion to set aside default in connection with appeal from judgment).[19]

### B. The Collateral Order Doctrine Cannot Provide a Basis for Jurisdiction Over the Proposed Intervenors' Challenge to the Motions Setting Aside the Entry of Default.

Nor can the Proposed Intervenors rely on the collateral order doctrine to provide a basis for jurisdiction here. Pursuant to this doctrine, which originated with *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949),

---

[19] The other appellate cases the Proposed Intervenors cite involve appeals of grants or denials of motions to set aside default judgments. *See*, *e.g.*, *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015) (appeal of denial of motion to set aside default judgment); *Pena v. Seguros La Comercial*, 770 F.2d 811, 812 (9th Cir. 1985) (appeal of denial of motion to vacate default judgment); *Meadows v. Dominican Republic*, 817 F.2d 517, 519 (9th Cir. 1987) (appeal of denial of motion to set aside default judgment); *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 693 (9th Cir. 2001) (appeal of denial of motion to set aside default judgment). Moreover, the district court cases the Proposed Intervenors cite on pp. 47-48 of their brief relating to the standard for setting aside a clerk's entry of default are inapposite, as they do not establish the appealability of an order denying a motion to set aside a default when judgment has not been entered.

"[o]rders that do not dispose of the entire litigation are appealable as collateral orders if they [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] are effectively unreviewable on appeal from a final judgment." *SEC v. Capital Consultants LLC*, 453 F.3d 1166, 1171 (9th Cir. 2006) (citation and internal quotation marks omitted) (per curiam); *see also Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009) (citation omitted).

An order denying a motion to set aside a clerk's entry of default fails all three parts of the test. First, the denial of a motion to set aside a default does not conclusively determine the disputed question of C&A Products' liability. C&A Products' liability could be reviewed on a motion to set aside the default judgment, if default judgment is entered. *See*, *e.g.*, *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

Second, the order denying the motion to set aside the default does not resolve "an important issue completely separate from the merits of the action . . . ." *SEC*, 453 F.3d at 1171. As set forth below, "courts uniformly consider whether defendant has a meritorious defense" as part of ruling on a motion to set aside a default. *Haw. Carpenters*', 794 F.2d at 513. Thus, review of the order denying the motion to set aside the default would "thrust [the] court into the merits of the dispute," *see Orange County Airport Hotel*

44

*Assoc. v. Hongkong & Shanghai Banking Corp.*, 52 F.3d 821, 824 (9th Cir. 1995).

Third, the order denying the Proposed Intervenors' motions to set aside the default is not, unlike certain other interlocutory orders, "effectively unreviewable on appeal from the final judgment in the underlying action." *See Mohawk Indus. v. Carpenter*, 558 U.S. 100, 105 (2009). The propriety of the denial of a motion to set aside a default is reviewable in connection with an appeal from a final judgment. *See*, *e.g.*, *Enron Oil Corp.*, 10 F.3d at 95 ("In an appeal from a default judgment, the court may review both the interlocutory entry of default and the final judgment.").

Nor does the fact that the unappealable ruling was contained in an order that also contained an appealable ruling transform the denial of the Proposed Intervenors' motions to set aside the default into an appealable order. "The collaterally appealable order doctrine does not automatically permit review of district court rulings contained in the same district court opinion as the appealable determination, if they do not themselves meet [the] requirements" of the collateral order doctrine. *Holy See*, 557 F.3d at 1074.

///

///

45

## C. There Is No Pendent Appellate Jurisdiction Over This Portion of the Appeal.

By the same token, the Proposed Intervenors cannot claim that pendent appellate jurisdiction applies to this portion of the appeal. "'Pendent appellate jurisdiction refers to the exercise of jurisdiction over issues that ordinarily may not be reviewed on interlocutory appeal, but may be reviewed on interlocutory appeal if raised in conjunction with other issues properly before the court.'" *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 975 (9th Cir. 2015) (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1284 (9th Cir.2000)). This Court went on to hold,

> We have consistently acknowledged that we must "exercise restraint in reviewing on interlocutory appeal otherwise non-appealable orders," *id*., lest litigants use collateral orders as "multi-issue ... appeal tickets," *id*. (quoting *Swint*, 514 U.S. at 49–50, 115 S.Ct. 1203); *see also Poulos v. Caesars World, Inc.*, 379 F.3d 654, 670 (9th Cir. 2004) (noting that "we took pains to cabin our holding [in *Meredith*] to the unique facts" of the case). We may exercise pendent jurisdiction over an otherwise non-appealable issue only in two "narrow" circumstances: (1) if it is "'inextricably intertwined' with" or (2) "'necessary to ensure meaningful review of'" the order properly before us on interlocutory appeal. [Citation.]

*Armstrong*, 789 F.3d at 975.

Review of the portion of the court's order denying the motions to set aside the default is neither "inextricably intertwined" with nor "necessary to ensure meaningful review of" the portion of the order denying the motions

46

to intervene. The issue of the Proposed Intervenors' entitlement to have the default set aside is not coupled to the issue whether the Proposed Intervenors were appropriately denied intervention in the litigation. Indeed, the two standards have nothing in common, and neither hinges on resolution of the other. Thus, the Court does not have pendent appellate jurisdiction over this portion of the appeal. In sum, because the Court has no subject matter jurisdiction of any kind over the appeal of the district court's denial of the motions to set aside C&A Products' default, this portion of the appeal should be dismissed.

## IV. EVEN ASSUMING THIS COURT HAS JURISDICTION OVER THIS PORTION OF THE APPEAL, THE DISTRICT COURT CORRECTLY DENIED THE PROPOSED INTERVENORS' MOTIONS TO SET ASIDE THE DEFAULT.

Even assuming subject matter jurisdiction existed over the portion of the district court's order denying the motions to set aside the defaults, however – which it does not – none of the Proposed Intervenors had good cause to set aside the defaults. Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "the court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Many courts have held that the "good cause" standard applicable to Rule 55(c) is the same standard that applies to vacating a default judgment under

47

Rule 60(b). *E.g., Franchise Holding II*, 375 F.3d at 925; *U.S. v. Signed Personal Check No. 730 of Yubran Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

In either case, three factors are relevant to the analysis: (1) whether the party seeking to set aside the default engaged in culpable conduct leading to the default, (2) whether no meritorious defense exists, and (3) whether reopening the [default] would prejudice the other party. *Mesl*e, 615 F.3d at 1091. Because the standard is disjunctive, the district court may deny the motion to set aside the default if any *one* of these conditions exists. *Ibid*.

C&A Products' joint and several liability for response costs is founded in CERCLA. As set forth below, DTSC has established a prima facie case against C&A Products, and C&A Products has no viable defense to liability. This means that setting aside the default and permitting the Proposed Intervenors to litigate the matter on the merits would have been futile – the outcome would have been the same. In such a case, a motion to set aside a default under Rule 55(c) of the Federal Rules of Civil Procedure is appropriately denied. *See, e.g., Aguilar*, 782 F.3d at 1106-07 (if "the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment") (citation and internal quotation marks omitted); *accord, e.g., Haw. Carpenters'*, 794 F.2d at 513. Moreover,

vacating the default would merely prejudice DTSC and delay the complete

resolution of the case. As discussed below, even though DTSC does not

allege that the Proposed Intervenors engaged in culpable conduct, the court

was correct to deny the motions to set aside the default because of the

presence of the two other factors alone. *E.g., Mesle*, 615 F.3d at 1091.

### A. DTSC's Evidence Has Established a Prima Facie Case Against C&A Products, Which Has No Viable Defense to Liability Under CERCLA.

DTSC undertook a response action at the Site, and filed this lawsuit to

recover its response costs from the defendants, liable parties pursuant to

CERCLA. To establish C&A Products' liability under CERCLA, DTSC

was required to establish the following elements: (1) the Site is a "facility,"

(2) a release or threatened release of hazardous substances occurred at the

Site, (3) DTSC incurred costs in response to the releases and threated

releases at the Site, and (4) C&A Products was an owner or operator or both

at the time of disposal of hazardous substances at the Site. *United States v.

Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998).

As established in DTSC's application for default judgment and

supporting declarations, and as summarized below, on this record, there is

no doubt that C&A Products is a liable party under CERCLA. The Proposed

Intervenors did not even allege below, much less provide evidence, that any

49

of CERCLA's statutory defenses would apply to C&A Products, or that DTSC acted inconsistently with the National Contingency Plan ("NCP") in conducting response activities at the Site. For that reason, and because reversing this portion of the order would merely serve to prejudice DTSC, the court's denial of the motions to set aside the default of C&A Products was proper, and should be affirmed.

### 1. The Site is a "Facility."

DTSC has established the first element of CERCLA liability: the Site is a "facility." CERCLA defines "facility" as "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed or otherwise come to be located . . . ." 42 U.S.C. § 9601(9). Investigations conducted at the Site showed that the soil and groundwater at the Site were contaminated with arsenic, chromium, and copper. *See* 2-ER-285-286. These contaminants are designated hazardous substances under CERCLA section 101(14), 42 U.S.C. § 9601(14), and under 40 C.F.R., Part 302.4. The Site is a facility as defined in CERCLA section 101(9), 42 U.S.C. § 9601(9), because there is undisputed evidence that hazardous substances have come to be located at the Site. 2-ER-285-286.

///

50

## 2. A Release or Threatened Release of Hazardous Substances Occurred at the Site.

DTSC also has established the second element, that there has been a release or threatened release of hazardous substances from the facility. The term "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ." 42 U.S.C. § 9601(22). "Environment" is defined broadly to include "surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air . . . ." 42 U.S.C. § 9601(8). These expansive definitions, taken together, provide that a release is established whenever hazardous substances are present in the soil. *United States v. Carolina Transformer Co*., 739 F. Supp. 1030, 1036 (E.D.N.C. 1989), *aff'd*, 978 F.2d 832 (4th Cir. 1992) (release defined broadly to encompass the entire universe of ways in which hazardous substances may come to exist in the environment). Here, during wood preserving operations, hazardous substances were released at the Site. *See*, *e.g*., 2-ER-283, 285-286; 1-SER-003-023; 1-SER-264-265. Thus, the evidence shows that there has been a release or threatened release of hazardous substances at the Site.

///

51

### 3. DTSC Incurred Costs in Response to the Releases and Threatened Releases at the Site.

DTSC has also established that DTSC incurred costs in response to the release of hazardous substances at the Site. "Response" is broadly defined under CERCLA as "remove, removal, remedy and remedial action." 42 U.S.C. § 9601(25). The terms include the cleanup or removal of released hazardous substances from the environment, actions taken in the event of the threat of release of hazardous substances, actions to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, and actions consistent with a permanent remedy. 42 U.S.C. §§ 9601(23), (24). CERCLA authorizes the recovery of "all costs of removal or remedial action incurred by . . . a State . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A) (emphasis added).

Recoverable "response costs" have been held to include oversight costs incurred by a government agency in an effort to ensure that a site is being adequately investigated and remediated by responsible parties. *State of Cal. Dep't of Toxic Substances Control v. Snydergeneral Corp.*, 876 F. Supp. 222, 224-25 (E.D. Cal. 1994); *State of California ex. rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004).

52

Courts also have held that attorneys' fees attributable to litigation may be recovered as part of response costs. *E.g.*, *Chapman*, 146 F.3d at 1175. Where the government shows "some connection" between the release at the site and the incurrence of response costs, those costs are recoverable. *Louisiana-Pacific Corp. v. Beazer Materials & Services*, 811 F. Supp. 1421, 1430 (E.D. Cal. 1993). It is the *incurrence* of the response costs, however, not their *amount*, that constitutes an element of liability under CERCLA. *See Chapman*, 146 F.3d at 1169.

There is an abundance of evidence submitted in support of DTSC's motions to approve the consent decrees, its motion for partial summary judgment, and its motion for default judgment, that DTSC has incurred response costs in taking actions related to the release or threatened release, or both, of hazardous substances at, around, and/or beneath the Site, and related to its efforts to remediate the Site. *See, e.g.*, 2-ER-279-308; 3-ER-311-423; 1-SER-003-023; 1-SER-046-275; 2-SER-277-282. Moreover, the Court has entered three consent decrees acknowledging that DTSC has incurred these necessary response costs. 3-ER-487-500; 3-ER-473-486; 3-ER-449-467.

DTSC's unreimbursed response costs through May 31, 2019, including interest and attorneys' fees, total $3,219,449.85. *See* 3-ER-326; 1-SER-053.

53

DTSC is conducting ongoing monitoring at the Site, continues to incur
response costs related to the Site, and may incur response costs related to the
Site in the future.  *See* 2-ER-283, 288-289.  Continued monitoring of
stormwater and evaluation of the condition of the asphalt cap are necessary
to prevent exposure of contaminated soil to humans and environmental
receptors; to ensure that the Site is not causing further groundwater
contamination; and to ensure that contaminant concentrations at the four off-
site private irrigation wells do not exceed drinking water standards.   1-SER-
266.

Once DTSC establishes a prima facie case that its response costs were
incurred in connection with the release or threatened release of hazardous
substances from a site, as it has done here, the costs are presumed to be
consistent with the NCP, and the burden shifts to the defendants to prove
otherwise.  *Chapman*, 146 F.3d at 1170-71. Defendants have the burden of
proving that DTSC's choice of a particular response action is "arbitrary and
capricious," based on the administrative record, to maintain an assertion that
the action was inconsistent with the NCP.  42 U.S.C. § 9613(j); *Chapman*,
146 F.3d at 1171; *United States v. W.R. Grace & Co.*, 429 F. 3d 1224, 1233
(9th Cir. 2005).

As discussed further below, the Proposed Intervenors claim they have a meritorious defense by asserting that DTSC's response costs are disputed. Appellants' Br. at 52-54. However, they offer no specific facts or evidence to rebut DTSC's showing. Simply pointing out that DTSC has the burden to establish its response costs, which DTSC does in its application for default judgment and supporting declarations, does not suffice to establish a viable defense. Even if it did, such a defense, if established, would be to the amount of damages, not to liability. *See United States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir. 1992) (whether response costs were necessary and "not inconsistent" with the NCP is not an element of the plaintiff's prima facie case); *see* Section III.A.5 below.

### 4. C&A Products Was an Owner or Operator, or Both, of the Site at the Time of Disposal of Hazardous Substances at the Site, and Thus Is a Responsible Party Under CERCLA.

DTSC has also established the fourth element of CERCLA liability, which is that C&A Products falls within one of the four classes of responsible parties under section 107(a), 42 U.S.C. § 9607(a). As relevant here, under CERCLA, "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . ." is a liable party. 42 U.S.C. § 9607(a)(2).

C&A Products' ownership of the Site is through its predecessor Wickes. Wickes bought the assets of PWP, a dissolved California corporation, including the Site, on or about September 12, 1979, and operated at the Site thereafter as Wickes Companies, Inc. until 1982, when the facility closed. 3-ER-531. As set forth above, spills of hazardous substances, including arsenic, chromium, and copper, used in the wood preserving operations at the Site were released into the environment at and from the Site, from the beginning of operations in 1972 and throughout Wickes's and C&A Products' ownership and operation. 2-ER-285-286; 3-ER-529, 531. Because there were disposals of hazardous substances during C&A Products' ownership and operation of the facility, the fourth element of liability under CERCLA has been satisfied.

### 5. C&A Products Has No Defense to CERCLA Liability.

Strict liability applies to DTSC's right of recovery under CERCLA, except in three limited situations not present here. These three statutory affirmative defenses to section 107(a) liability are the following: an act of God; an act of war; and "an act or omission of a third party" who is not related to the defendant by any sort of "contractual relationship." 42 U.S.C. § 9607(b). These are the only cognizable defenses to liability under section

107(a), *see Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986), and none are relevant to the Action.

Not surprisingly, the Proposed Intervenors do not even allege, much less offer evidence to support, facts on which they could base one of these affirmative defenses to liability. Instead, they seek to question DTSC's response costs, their sole argument being that DTSC should be required to prove such costs, and they be allowed to contest them. *See* Appellants' Br. at 52.

But as discussed above, once DTSC establishes a prima facie case that its response costs were incurred in connection with the release or threatened release of hazardous substances from a site, the costs are presumed consistent with the NCP, and the burden shifts to the defendant to prove otherwise. *Chapman*, 146 F.3d at 1170-1171. The Proposed Intervenors have produced no evidence that DTSC's costs were inconsistent with the NCP. Even if they had, whether some or all of DTSC's costs are "not inconsistent" with the NCP (and the other arguments the Proposed Intervenors make in claiming they have a meritorious defense to assert in favor of C&A Products) is a factual issue affecting only the amount of

damages.[20]  *Washington State Dep't of Transp. v. Washington Nat. Gas Co.*,

59 F.3d 793, 798 (9th Cir.1995).  Thus, the Proposed Intervenors' arguments

relating to the amount of response costs, *see* Appellants' Br. at 52-54, have

no relevance to the issue whether C&A Products has a valid defense to

liability.[21]  It does not.

---

[20] Were this Court to reverse the district court's denial of the Proposed
Intervenors' motions to intervene – which it should not – the Proposed
Intervenors could oppose DTSC's motion for default judgment (once it is
back on calendar), and challenge the demand for response costs by
presenting evidence supporting a claim that the costs were inconsistent with
the NCP.  If the district court were to grant the motion for default judgment,
the Proposed Intervenors could seek to move to set aside the default
judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  If
the court were to deny that motion, the Proposed Intervenors could appeal
that ruling, and on that appeal, also appeal the district court's denial of the
motion to set aside C&A Products' default.  *E.g.*, *Enron Oil Corp.*, 10 F.3d
at 95.  But they cannot do so in this appeal.

[21] The authority Proposed Intervenors cite does not hold to the contrary.
*Key Bank of Maine v. Tablecloth Textile Co. Corp.*, 74 F.3d 349, 350-51 (1st
Cir. 1996), which they cite for the proposition that the moving party need
only establish a valid defense to liability *or* damages to set aside a default
was a case involving a motion to set aside a default *judgment*, and is
distinguishable on that basis.  *Choice Hotels International v. Kusum Vali,
Inc.*, No. 11cv1277, 2012 WL 1570844 (S.D. Cal. May 3, 2012) was a
dispute over nonpayment of franchise fees, making a defense regarding the
amount of damages relevant.  Even if defenses to damages were relevant in
this case, *Key Tronic Corp. v. United States*, 511 U.S. 809, 819-20 (1994),
would nonetheless be inapposite, as it merely holds that section 107 of
CERCLA does not provide for an award of *private litigants'* attorney's fees
associated with bringing a cost recovery action.

Moreover, the Proposed Intervenors' challenges to the appropriateness of DTSC's response costs incurred go no further than speculation and "conclusory denials." *Green*, 420 F.3d at 109-10 (no abuse of discretion to deny motion to set aside default judgment when defendants in CERCLA case "never argued, much less offered any evidence suggesting, that the State's response costs and actions are inconsistent with the national contingency plan[,]" and failed to submit a single affidavit or other evidence supporting their claimed defenses). The Proposed Intervenors did not submit with their motions proposed answers, affidavits, or declarations alleging facts that would support an assertion that any of the response costs incurred were unnecessary or inconsistent with the NCP.

"A mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II*, 375 F.3d at 926 (district court did not abuse its discretion in denying motion for default judgment when defendant offered only conclusory statements that a dispute existed about amounts owed) (citation and internal quotation marks omitted); *see also Mesl*e, 615 F.3d at 1094 (although a movant need not prove the defense by a preponderance of the evidence, it must present "specific facts that would constitute a defense.").

Although a defendant need not establish a defense conclusively to establish a meritorious defense, "he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Green*, 420 F.3d at 109. If the Proposed Intervenors could have alleged facts that would provide a defense if true, they have failed to do so. This despite having all the information they needed for that purpose: DTSC's evidence relating to response costs was submitted to the court with the motion for default judgment on August 21, 2019. 4-ER-833-834.

By contrast, in the cases the Proposed Intervenors cite, the moving party not only alleged *facts,* but submitted *evidence* to establish the existence of a meritorious defense. *E.g.*, *Mesle*, 615 F.3d at 1094 (sworn assertions submitted); *Key Bank of Maine*, 74 F.3d at 354 ("strong evidence" presented); *Choice Hotels*, 2012 WL 1570844, at *4 (declarations submitted). Instead, without addressing any specifics, the Proposed Intervenors merely make legal arguments, and question whether DTSC has met its burden to establish this aspect of its entitlement to relief. *E.g.*, Appellants' Br. at 52-54. Because the Proposed Intervenors have presented no "specific facts that would constitute a defense," much less any form of evidence, they have not established the existence of a meritorious defense

60

that would justify setting aside the clerk's entry of default under applicable Ninth Circuit law. *See Mesle*, 615 F.3d at 1094.

### B.   DTSC Would Be Prejudiced by Setting Aside the Default.

If the district court's ruling denying the Proposed Intervenors' motions to set aside C&A Products' default were reversed, DTSC would be prejudiced by having had to prepare and file an unnecessary motion for default judgment, and by having to litigate multiple times, over several years, against multiple "putative" insurers of C&A Products, none of whom will accept coverage.  In addition, allowing the default to be set aside could delay the eventual litigation of the California Insurance Code section 11580 action, which involves issues of lost and incomplete policies; further delay may make that proof yet more difficult or complicated.  There is no reason for continued litigation that will cause DTSC, which is funded by California taxpayers, to incur significant, and ultimately pointless, expense.

### CONCLUSION

For all the foregoing reasons, the district court's December 4, 2019, order denying the Proposed Intervenors' motions to intervene and to set

///

///

///

61

aside C&A Products' default should be affirmed in full.

Dated: July 9, 2021                    Respectfully Submitted,

                                       ROB BONTA
                                       Attorney General of California
                                       SARAH MORRISON
                                       Acting Senior Assistant Attorney General
                                       DENNIS L. BECK, JR.
                                       Supervising Deputy Attorney General


                                       /s/ *Laura J. Zuckerman*

                                       LAURA J. ZUCKERMAN
                                       Deputy Attorney General


Dated: July 9, 2021                    GRAY DUFFY, LLP

                                       /s/ *Timothy M. Thornton, Jr.*

                                       TIMOTHY M. THORNTON, JR.

                                       *Attorneys for Plaintiffs-Appellees*
                                       *California Department of Toxic Substances*
                                       *Control and the Toxic Substances Control*
                                       *Account*

OK2020500397

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**        20-15029.

I am the attorney or self-represented party.

**This brief contains 13,854 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
     [ ] it is a joint brief submitted by separately represented parties;
     [ ] a party or parties are filing a single brief in response to multiple briefs; or
     [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**  s/  *Laura J. Zuckerman*_____   **Date** _____July 9, 2021_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

**STATUTORY ADDENDUM**

**TABLE OF CONTENTS**

**Page**

42 U.S.C. § 9601(8) ........................................................... 65

42 U.S.C. § 9601(9) ........................................................... 66

42 U.S.C.§ 9601(14) .......................................................... 67

42 U.S.C. § 9601(22) ......................................................... 68

42 U.S.C. § 9601(23) ......................................................... 69

42 U.S.C. § 9601(24) ......................................................... 70

42 U.S.C. § 9601(25) ......................................................... 71

42 U.S.C. § 9607(a)(2) ....................................................... 72

42 U.S.C. § 9607(a)(4)(A) ................................................... 73

42 U.S.C. § 9607(b) .......................................................... 74

42 U.S.C. § 9613(g)(2)........................................................ 75

42 U.S.C. § 9613(j) ........................................................... 76

Fed. R. Civ. P. 17(b) ......................................................... 77

Fed. R. Civ. P. 24 ............................................................. 78

Fed. R. Civ. P. 55 ............................................................. 79

Fed. R. Civ. P. 60(b) ......................................................... 80

40 C.F.R., Part 302.4.......................................................... 81

Cal. Civ. Proc. Code § 387 ................................................82-83

Cal. Corp. Code § 17708.01(a) .............................................. 84

Cal. Health & Safety Code § 25358.3(a)(2) ................................ 85

Cal. Ins. Code § 11580........................................................ 86

Delaware Code Ann. Tit. 6, § 18-805........................................ 87

**42 U.S.C. § 9601(8)**

(8) The term "environment" means

(A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. 1801 et seq.], and

(B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States.

**42 U.S.C. § 9601(9)**

(9) The term "facility" means

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or

(B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

66

## 42 U.S.C. § 9601(14)

(14) The term "hazardous substance" means

(A) any substance designated pursuant to section 311(b)(2)(A) of the Federal Water Pollution Control Act [33 U.S.C. 1321(b)(2)(A)],

(B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title,

(C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C. 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C. 6901 et seq.] has been suspended by Act of Congress),

(D) any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act [33 U.S.C. 1317(a)],

(E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C. 7412], and

(F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 7 of the Toxic Substances Control Act [15 U.S.C. 2606]. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).

## 42 U.S.C. § 9601(22)

(22) The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant), but excludes

(A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons,

(B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine,

(C) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954 [42 U.S.C. 2011 et seq.], if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act [42 U.S.C. 2210], or, for the purposes of section 9604 of this title or any other response action, any release of source byproduct, or special nuclear material from any processing site designated under section 7912(a)(1) or 7942(a) of this title, and

(D) the normal application of fertilizer.

## 42 U.S.C. § 9601(23)

(23) The terms "remove" or "removal" means

[2] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, action taken under section 9604(b) of this title, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act [42 U.S.C. 5121 et seq.].

**42 U.S.C. § 9601(24)**

(24) The terms "remedy" or "remedial action" means those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment.

The term includes the costs of permanent relocation of residents and businesses and community facilities where the President determines that, alone or in combination with other measures, such relocation is more cost-effective than and environmentally preferable to the transportation, storage, treatment, destruction, or secure disposition offsite of hazardous substances, or may otherwise be necessary to protect the public health or welfare; the term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials.

## 42 U.S.C. § 9601(25)

(25) The terms "respond" or "response" means

remove, removal, remedy, and remedial action; [3] all such terms (including the terms "removal" and "remedial action") include enforcement activities related thereto.

## 42 U.S.C. § 9607(a)(2)

(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date;

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

      \* \* \*

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

### 42 U.S.C. § 9607(a)(4)(A)

(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date;

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

   * * *

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

**42 U.S.C. § 9607(b)**

(b) Defenses.

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

**42 U.S.C. § 9613(g)**

(g) Period in which action may be brought:

    \* \* \*

(2) Actions for recovery of costs.

An initial action for recovery of the costs referred to in section 9607 of this title must be commenced—

(A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and

(B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

**42 U.S.C. § 9613(j)**

(j) Judicial Review.

(1) Limitation.

In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record. Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

(2) Standard.

In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

(3) Remedy.

If the court finds that the selection of the response action was arbitrary and capricious or otherwise not in accordance with law, the court shall award (A) only the response costs or damages that are not inconsistent with the national contingency plan, and (B) such other relief as is consistent with the National Contingency Plan.

(4) Procedural errors.

In reviewing alleged procedural errors, the court may disallow costs or damages only if the errors were so serious and related to matters of such central relevance to the action that the action would have been significantly changed had such errors not been made.

**Fed. R. Civ. P. 17(b)**

(b) Capacity to Sue or Be Sued. Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

## Fed. R. Civ. P. 24.  Intervention.

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency.* On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## Fed. R. Civ. P. 55.  Default; Default Judgment.

(a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) Entering a Default Judgment.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

(c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

(d) Judgment against the United States. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

**Fed. R. Civ. P. 60(b)**

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

**40 C.F.R., Part 302.4**

**§ 302.4 Designation of hazardous substances.**

(a) Listed hazardous substances. The elements and compounds and hazardous wastes appearing in table 302.4 are designated as hazardous substances under section 102(a) of the Act.

(b) Unlisted hazardous substances. A solid waste, as defined in 40 CFR 261.2, which is not excluded from regulation as a hazardous waste under 40 CFR 261.4(b), is a hazardous substance under section 101(14) of the Act if it exhibits any of the characteristics identified in 40 CFR 261.20 through 261.24.

81

## Cal. Civ. Proc. Code § 387

(a) For purposes of this section:

(1) "Defendant" includes a cross-defendant.

(2) "Plaintiff" includes a cross-complainant.

(b) An intervention takes place when a nonparty, deemed an intervenor, becomes a party to an action or proceeding between other persons by doing any of the following:

(1) Joining a plaintiff in claiming what is sought by the complaint.

(2) Uniting with a defendant in resisting the claims of a plaintiff.

(3) Demanding anything adverse to both a plaintiff and a defendant.

(c) A nonparty shall petition the court for leave to intervene by noticed motion or ex parte application. The petition shall include a copy of the proposed complaint in intervention or answer in intervention and set forth the grounds upon which intervention rests.

(d) (1) The court shall, upon timely application, permit a nonparty to intervene in the action or proceeding if either of the following conditions is satisfied:

(A) A provision of law confers an unconditional right to intervene.

(B) The person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by one or more of the existing parties.

(2) The court may, upon timely application, permit a nonparty to intervene in the action or proceeding if the person has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both.

(e) If leave to intervene is granted by the court, the intervenor shall do both of the following:

(1) Separately file the complaint in intervention, answer in intervention, or both.

(2) Serve a copy of the order, or notice of the court's decision or order, granting leave to intervene and the pleadings in intervention as follows:

(A) A party to the action or proceeding who has not yet appeared shall be served in the same manner for service of summons pursuant to Article 3 (commencing with Section 415.10) of Chapter 4 of Title 5 of Part 2.

## Cal. Civ. Proc. Code § 387 (continued)

(B) A party who has appeared in the action or proceeding, whether represented by an attorney or not represented by an attorney, shall be served in the same manner for service of summons pursuant to Article 3 (commencing with Section 415.10) of Chapter 4 of Title 5 of Part 2, or in the manner provided by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

(f) Within 30 days after service of a complaint in intervention or answer in intervention, a party may move, demur, or otherwise plead to the complaint in intervention or answer in intervention in the same manner as to an original complaint or answer.

## Cal. Corp. Code § 17708.01(a)

(a) The law of the state or other jurisdiction under which a foreign limited liability company is formed governs all of the following:

(1) The organization of the limited liability company, its internal affairs, and the authority of its members and managers.

(2) The liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the limited liability company.

## Cal. Health & Safety Code § 25358.3(a)(2)

 (a)  Whenever the director determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance, the director may do any or all of the following:

(1)  Order any responsible party or parties to take or pay for appropriate removal or remedial action necessary to protect the public health and safety and the environment. No order under this section shall be made to an owner of real property solely on the basis of that ownership as specified in Sections 101(35) and 107(b) of the federal act (42 U.S.C. Secs. 9601(35) and 9607(b)). The director shall give the responsible party an opportunity to assert all defenses to the order.

(2)  Take or contract for any necessary removal or remedial action.

## Cal. Ins. Code § 11580

A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provisions were embodied therein.

(a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

(1) Against loss or damage resulting from liability for injury suffered by another person other than (i) a policy of workers' compensation insurance, or (ii) a policy issued by a nonadmitted Mexican insurer solely for use in the Republic of Mexico.

(2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable, other than a policy which provides insurance in the Republic of Mexico, issued or delivered in this state by a nonadmitted Mexican insurer.

(b) Such policy shall not be thus issued or delivered to any person in this state unless it contains all the following provisions:

(1) A provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.

(2) A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment.

## Delaware Code Title 6 § 18-805

**Trustees or receivers for limited liability companies; appointment; powers; duties.**

When the certificate of formation of any limited liability company formed under this chapter shall be canceled by the filing of a certificate of cancellation pursuant to § 18-203 of this title, the Court of Chancery, on application of any creditor, member or manager of the limited liability company, or any other person who shows good cause therefor, at any time, may either appoint 1 or more of the managers of the limited liability company to be trustees, or appoint 1 or more persons to be receivers, of and for the limited liability company, to take charge of the limited liability company's property, and to collect the debts and property due and belonging to the limited liability company, with the power to prosecute and defend, in the name of the limited liability company, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the limited liability company, if in being, that may be necessary for the final settlement of the unfinished business of the limited liability company. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.