CASE NO. 20-15029

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

CENTURY INDEMNITY COMPANY, as successor to CCI
Insurance Company as successor to Insurance Company of North
America; ALLIANZ UNDERWRITERS INSURANCE COMPANY;
CHICAGO INSURANCE COMPANY; FIREMAN'S FUND
INSURANCE COMPANY; and THE CONTINENTAL
INSURANCE COMPANY

*Appellants,*

v.

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES
CONTROL and the TOXIC SUBSTANCES CONTROL ACCOUNT

*Respondents.*

————————————

Appeal From The United States District Court,
Eastern District of California, Case No. 2:14-cv-00595-WBS-EFB,
Hon. William B. Shubb

————————————

## APPELLANTS' REPLY BRIEF

————————————

Wood, Smith, Henning & Berman LLP
Thomas F. Vandenburg (State Bar No. 163446)
Nicholas M. Gedo (State Bar No. 130503)
Stratton P. Constantinides (State Bar No. 305103)
10960 Wilshire Boulevard, 18th Floor
Los Angeles, California 90024-3804
Telephone:  310-481-7600
Facsimile:  310-481-7650

Attorneys for Appellants, Century Indemnity Company as successor to CCI Insurance Company as successor to Insurance Company of North America, Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company


Nicolaides Fink Thorpe Michaelides Sullivan LLP
Sara M. Tharpe (State Bar No. 146529)
Randall P. Berdan (State Bar No. 199623)
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone: 415-745-3770
Facsimile: 415-745-3771

*Attorneys for Proposed Intervenor - Appellant,*
*THE CONTINENTAL INSURANCE COMPANY*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT. ........................................................................................25

I.  THE DISTRICT COURT ERRED IN RULING THAT THE
    PROPOSED INTERVENORS ARE NOT ENTITLED TO
    INTERVENE IN THIS ACTION AS A MATTER OF RIGHT
    UNDER *F.R.C.P.* 24(a)(2). .............................................................1

    A.  The Proposed Intervenors All Have a Protectable Interest in this
    Action. .......................................................................................1

        1.  Those Insurers Have a Protectable Interest Because the
        DTSC Will Pursue *Insurance Code* § 11580 Coverage
        Actions Against Them, and Intervention Cannot Be
        Denied Merely Because They Have Not Unconditionally
        Accepted Coverage. ..................................................................1

        2.  Basic Considerations of Equity and Fairness also Dictate
        that the Proposed Intervenors Have a Protectable Interest. .......13

        3.  Allianz also Has a Protectable Interest Because It Issued
        a Valid Reservation of Rights and Because It Faces
        Possible Exposure to Liability. ................................................16

    B.  The Three Remaining Prongs of the *Citizens for Balanced Use*
    Test All Militate in Favor of the Proposed Intervenors'
    Intervention as a Matter of Right. .......................................................18

        1.  The DTSC Concedes that Those Insurers' Intervention
        Motions Were Timely and that Their Interests Will Not
        Be Adequately Represented in this Action Unless They
        Are Allowed to Intervene. .........................................................18

    C.  The Proposed Intervenors' Interests Will Absolutely Be
    Impaired Unless They Are Allowed to Intervene. ..............................19

II. THE DISTRICT COURT ALSO ERRED IN RULING THAT THE
    PROPOSED INTERVENORS ARE NOT ENTITLED TO
    PERMISSIVE INTERVENTION UNDER *F.R.C.P.* 24(b) .........................21

III. THE TRIAL COURT ERRED IN FAILING TO VACATE THE
     DEFAULT ENTERED AGAINST C&A PRODUCTS, LLC. .....................24

IV. CONCLUSION. ....................................................................................25

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*APL Co. Pte Ltd. v. Valley Forge Insurance Co.*
*No. C09-05641*, 2010 WL 1340373 ............................................................7

*B.G.N. Fremont Square LTD v. Chung*
*CV 10-9749 GAP (RZx)*, 2011 ................................................................4, 9

*Bridge v. Air Quality Technical Services, Inc.*
194 F.R.D. 3, 7 (D.Me.1999)....................................................................9, 12

*Citizens for Balanced Use v. Montana Wilderness Ass'n.*
647 F.3d 893, 898 (9th Cir., 2011) .................................................. 18, 19, 20

*City of Emeryville v. Robinson*
621 F.3d 1251, 1259 (9th Cir., 2010) ..........................................................19

*Clemmer v. Hartford Insurance Co.*
22 Cal.3d 865 ...............................................................................................4

*Continental Vinyl Products Corp. v. Mead Corp.*
27 Cal.App.3d 543 .........................................................................................7

*Corridan v. Rose*
137 Cal.App.2d 524, 529-30 (1955)..............................................................7

*Dave Drilling Environmental Engineering, Inc. v. Gamblin*
2015 WL 4051968 (N.D. Cal.).................................................................9, 15

*Employee Staffing Servs., Inc. v. Aubry*
20 F.3d 1038, 1042 (9th Cir. 1994) ..............................................................4

*Falk v. Allen*
739 F.2d 461, 463 (9th Cir. 1984) ...............................................................22

*Gray v. Begley*
182 Cal.App.4th 1509, 1522-23 (2010)......................................... 5, 6, 11, 16

*Hinton v. Beck*
176 Cal.App.4th 1378, 1384 (2009) ..............................................................5

*Nasongkhla v. Gonzalez*
29 Cal.App.4th Supp 1, 4-5 (1994) ..............................................................4

*Playboy Enterprises, Inc. v. Public Service Commn. of Puerto Rico*
906 F.2d 25, 40 (1st Cir. 1990) ...................................................................18

*Reliance Insurance Co. v. Superior Court*
    84 Cal.App.4th 383 ..............................................................................4

*Restor-a-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*
    725 F.2d 871 ...................................................................................7, 8

*Ross v. Marshall*
    426 F.3d 745, 759–60 (5th Cir.2005) .........................................9, 12

*Stallworth v. Monsanto Co.*
    558 F.2d 257, 265 (5th Cir. 1977) ................................................23

*Travelers Indemnity Co. v. Dingwell*
    884 F.2d 629, 638 (1st Cir., 1989) .......................... 7, 8, 9, 11, 23

*Truck Insurance Exchange v. Superior Court*
    60 Cal.App.4th 342, 245-46 (1997)....................................... 14, 15

*UMG Recordings, Inc. v. Bertelsmann AG*
    222 F.R.D. 408, 412 (N.D. Cal 2004) ..........................................23

*Western Heritage Ins. Co. v. Superior Court*
    199 Cal. App. 4th 1196, 1206-08 (2011).....................................25

*WildEarth Guardians v. U.S. Forest Service*
    573 F.3d 992, 995 (10th Cir. 2009) .............................................19

## OTHER AUTHORITIES

*Insurance Code* § 11580 ............................................................... 1, 3, 19

## RULES

*F.R.A.P.* 28(a)(9)(A) .........................................................................18

*F.R.C.P.* 24(a)(2)...............................................................................1

*F.R.C.P.* 24(b) .................................................................................21

*F.R.C.P.* Rule 55 .............................................................................22

Rule 24(a)(2) .......................................................... 4, 9, 13, 22, 23

Rule 24(b)........................................................................... 21, 23

Appellants Century Indemnity Company as successor to CCI Insurance Company as successor to Insurance Company of North America, Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company[1], and The Continental Insurance Company (the "Proposed Intervenors") submit the following Reply Brief in this appeal:

## ARGUMENT

I. **THE DISTRICT COURT ERRED IN RULING THAT THE PROPOSED INTERVENORS ARE NOT ENTITLED TO INTERVENE IN THIS ACTION AS A MATTER OF RIGHT UNDER *F.R.C.P.* 24(a)(2).**

A. **The Proposed Intervenors All Have a Protectable Interest in this Action.**

1. **Those Insurers Have a Protectable Interest Because the DTSC Will Pursue *Insurance Code* § 11580 Coverage Actions Against Them, and Intervention Cannot Be Denied**

---

[1] Allianz Reinsurance America, Inc., handles legacy claims involving insurance policies issued by Proposed Intervenors Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company. Allianz Underwriters Insurance Company, Chicago Insurance Company, and Fireman's Fund Insurance Company are collectively referred to herein as "Allianz".

1

**Merely Because They Have Not Unconditionally Accepted**

**Coverage.**

In its Answering Brief, the DTSC has failed to show that any of the essential material facts in the record in this action are in dispute. Based on those facts, reversal of the trial court's order denying the Proposed Intervenors' motions seeking to intervene in this action is essential to prevent a gross miscarriage of justice.

As set forth in the Proposed Intervenors' Opening Brief, those facts are:

• The Proposed Intervenors' putative insured, C&A Products, LLC, was bankrupt and defunct by the time that the DTSC filed its Complaint in the instant action on March 3, 2014. (3 ER 530-31, ¶ 15 and 3 ER 532, ¶ 23);

• The DTSC had the receiver for C&A Products appointed on December 8, 2014, and paid all of his fees. (2 ER 28:1-11 and 2 ER 186:4-9);

• On December 11, 2013, the DTSC served its FAC on that receiver. (3 ER 522-23);

• The receiver was not required to respond and in fact chose not to file any response to the DTSC's FAC on C&A Products, LLC's behalf. The receiver failed to provide any defense whatsoever to C&A Products, LLC, or even to notify the Proposed Intervenors of the existence of this action against their insured. (2 ER 186:4-11 and 3 ER 516-18);

2

• The DTSC then took C&A Products, LLC's default on March 15, 2015.  (3 ER 516-18);

• Neither C&A Products itself, nor the receiver, <u>ever</u> requested that the Proposed Intervenors defend C&A Products, LLC.  (2 ER 161:19-25, 3 ER 186:4-11, 2 ER214:11-19, and 2ER 240-42);

• On August 21, 2019, over three years after it took C&A Products, LLC's default, the DTSC applied for a default judgment of <u>$3,219,449.85</u> (plus <u>future</u> remediation costs) against C&A Products, LLC.  (3 ER 447);

• On September 10, 2019, two weeks after it applied for that default judgment, <u>the DTSC itself</u> (through its investigator, Arcina), finally notified the Proposed Intervenors of the existence of this action and demanded that those insurers reimburse it for all remaining past and future remediation costs at the subject site.  (2 ER 173-75, 2 ER 216-18, and 2 ER 240-45); and

• The DTSC has expressly stated that it does <u>not</u> intend to execute on any judgment entered against C&A Products, LLC, but instead will pursue a separate *Insurance Code* § 11580 coverage action against the Proposed Intervenors.  (2 ER 248, ¶ 6 and 2 ER 264, ¶ 3.)

As also discussed in the Opening Brief, both California and federal courts have held that <u>insurers have a protectable interest sufficient to allow them to intervene when they face exposure to a future Section 11580 coverage action</u> from

third parties who claim that they suffered a loss resulting from the insured's conduct. *Reliance Insurance Co. v. Superior Court*, 84 Cal.App.4th 383, 386-87; *B.G.N. Fremont Square LTD v. Chung, CV 10-9749 GAP (RZx)*, 2011 WL 13129968, *4 (CD CA 2011).

It is also axiomatic that <u>an insurer's right to intervene in order to move to prevent entry of or "set aside a default judgment which it might otherwise be required to satisfy is therefore clear</u>." *Clemmer v. Hartford Insurance Co.*, 22 Cal.3d 865, 886 (1986) (emphasis added) (overruled on alternate grounds); *Nasongkhla v. Gonzalez*, 29 Cal.App.4th Supp 1, 4-5 (1994) (insurer could intervene in action where its insured defaulted, since otherwise, burdens of proof would be reversed, and insurer would have to prove that, had insured not breached cooperation clause, the trier of fact would have found in the insured's favor.)

Based on these authorities, the District Court erred in denying the Proposed Intervenors intervention as a matter of right under Rule 24(a)(2). As also discussed in the Opening Brief, that court did not have broad discretion in ruling on that intervention request; except with respect to the issue of the timeliness of that request (not at issue in this appeal), its order must be judged under the <u>de novo</u> standard of review, rather than the abuse of discretion standard. *Employee Staffing Servs., Inc. v. Aubry*, 20 F.3d 1038, 1042 (9th Cir. 1994).

In its Answering Brief, the DTSC has failed to cite <u>any</u> authority whatsoever supporting denial of such intervention in circumstances like those involved in the instant case—i.e., the plaintiff serving the Complaint on a receiver it paid for and had appointed, the insured never appearing in the action, never tendering its defense to its insurers, and never facing any actual exposure to any ultimate judgment, and--because of the plaintiff's manipulation of events--the insurers never having any opportunity to provide any defense before a default judgment had been requested.

Many of the cases cited by the DTSC involved situations in which an insured <u>had</u> tendered its defense of an action against it to its insurer, and the insurer's subsequent motion seeking to intervene hinged on whether or not it had provided such a defense (albeit under a reservation of rights.) *See, Hinton v. Beck*, 176 Cal.App.4th 1378, 1384 (2009) (insurer that had declined coverage and refused to defend insured could not subsequently intervene in action and seek to vacate insured's default); *Gray v. Begley*, 182 Cal.App.4th 1509, 1522-23 (2010) (insurer which had defended insured through trial under reservation of rights could intervene in order to oppose insured's collusive settlement agreement with plaintiff.)

As also discussed in the Opening Brief, however, the "key factor" behind a requirement that the insurer at least issue a reservation of rights in order to intervene "is whether the insurer provided a defense, not whether the insurer denied coverage." *Gray, supra*, 182 Cal.App.4th at 1523. That "key factor" has no bearing in the instant case, where the DTSC's and receiver's machinations prevented the Proposed Intervenors from having even the opportunity to provide a defense, and they immediately sought to intervene to defend the DTSC's claims and protect their interests.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

The DTSC also cites a handful of cases holding that even an insurer's reservation of rights is insufficient to create a protectable interest warranting intervention, and that only its unconditional acceptance of coverage is sufficient: *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir., 1989), *Restor-a-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc*., 725 F.2d 871, 874-76, and *APL Co. Pte Ltd. v. Valley Forge Insurance Co., No. C09-05641*, 2010 WL 1340373 at ^6 (N.D. Cal. 2010); and *Continental Vinyl Products Corp. v. Mead Corp.*, 27 Cal.App.3d 543, 549[2].

As the DTSC itself concedes, however, the core rationale behind those decisions is that, where an insurer is actively defending its insured under a

---

[2] In fact, the DTSC overstates *Continental Vinyl*'s holding, since that case actually involved a motion brought by a majority shareholder seeking to intervene in an action against a bankrupt corporation, not an insurer's intervention motion. 27 Cal.App.3d at 548-49. While the *Continental Vinyl* court did state that an insurer which had issued a reservation of rights had only a "consequential" interest not justifying its intervention in an action against its insured, that court cited to *Corridan v. Rose*, 137 Cal.App.2d 524, 529-30 (1955) as support for that proposition. *Corridan, supra*, 137 Cal.App.2d at 527-28, however, involved a situation in which an insurer which had refused to provide any defense to its insureds whatsoever after one of them refused to sign the insurer's "reservation of rights" letter, and another refused to sign an Answer which misstated material facts about the underlying accident. At most, *Continental Vinyl* and *Corridan* seem to fall within the category of cases holding that an insurer which refuses to defend an insured who faces actual exposure in an action against him (absent the insured perjuring himself in the insurer's interests or signing other documents benefiting the insurer) cannot subsequently intervene in the action against its insured. Again, that situation is completely distinguishable from the instant case.

reservation of rights, allowing the insurer to also intervene to protect its contingent interest "would allow it to interfere with and in effect control the defense"; insurers should not be allowed "to bootstrap their coverage defenses" into the underlying action against the insured. *Travelers Indemnity Co., supra*, 884 F.2d at 639 and 640; *Restore-a-Dent, supra*, 725 F.2d at 874 (insurer could not intervene solely for purpose of submitting coverage-related special interrogatories, counter to insured's interest, in verdict form.)

That rationale simply has no bearing in the instant case, in which there effectively is <u>no</u> insured with whose defense the Proposed Intervenors would interfere. The sole stated purpose of the DTSC's scheme of appointing a receiver was to pursue only the Proposed Intervenors for C&A Products, LLC's alleged liability at issue in this action. C&A Products, LLC faces no actual exposure (since the DTSC has expressly stated that it will not attempt to execute on any judgment against that company and intends only to pursue Section 11580 coverage actions against the Proposed Intervenors.)

Additionally, as noted, C&A Products, LLC was bankrupt, never appeared in the action, and never tendered its defense to or even notified any of the Proposed Intervenors of this action.

The DTSC itself contends that the only issues to be decided with respect to its claims against the Proposed Intervenors are the amount of that default judgment

(in the instant case) and those carriers' coverage defenses (in its subsequent Section 11580 coverage actions.) In these circumstances, denying those insurers a chance to oppose the DTSC's oppressive default judgment application would represent a travesty of justice.

    <u>Several courts have found that insurers may intervene in such circumstances, in which they do not seek to litigate to the detriment of the insured</u>. *E.g., Ross v. Marshall*, 426 F.3d 745, 759–60 (5th Cir.2005) (insurer could intervene under Rule 24(a)(2) to appeal existing judgment because, at appellate stage, it could not attempt to manipulate events to develop grounds for challenging coverage, distinguishing *Travelers, supra*, 884 F.2d at 639 on that basis); *Bridge v. Air Quality Technical Services, Inc*., 194 F.R.D. 3, 7 (D.Me.1999) (insurer could intervene on issue of damages because insured's liability was established, so insurer could not inject coverage issues into litigation to insured's detriment); *Dave Drilling Environmental Engineering, Inc. v. Gamblin, 2015 WL 4051968* (N.D. Cal.); *B.G.N. Fremont Square LTD v. Chung, CV 10-9749 GAP (RZx)*, 2011 WL 13129968, *4 (C.D. Cal).

    In *Dave Drilling, id.* at *1-2, a plaintiff sued an insurer and its bankrupt insured under CERCLA, then dismissed that action and then filed a second action against the insured alone, without notifying the insurer or disclosing the existence

of a related case to the court, obtained a default judgment against the defunct insured.

In that second action, the District Court granted the insurer's motions seeking to intervene in order to vacate the default judgment. With respect to the intervention motion, the court distinguished cases requiring that the insurer unconditionally accept coverage or at least to defend under a reservation of rights in order to intervene on the grounds that, in the case before it, the plaintiff's failure to give the insurer notice of that action effectively deprived the insurer of any opportunity to provide any defense to its insured or take any position with respect to coverage, including issuing a reservation of rights. *Id*. at *7.

In the instant case, the DTSC and the receiver have likewise deprived the Proposed Intervenors of any opportunity to provide any defense to their insured, under a reservation of rights or otherwise. The DTSC also effectively deprived those insurers of any chance to reach any position with respect to coverage before filing their intervention motions, since it only had its agent, Arcina, notify them of this action's existence weeks before the scheduled hearing on its application seeking a default judgment, and those carriers therefore had to file those motions

immediately.[3]  At all times, the receiver apparently acted at the will of, and to advance the interests of, the DTSC.

In its Answering Brief, the DTSC simply fails to address these fundamental distinctions between the authorities on which it relies and the instant case.  In footnote 11 of its brief, it tries to dismiss those distinctions as merely "relat[ing] to the manner and timing of notification" of the action to the insurer.

As discussed above, however, those distinctions actually relate to fundamental policy goal of ensuring that the insured's interests are protected before allowing an insurer to intervene, either by requiring that the insurer at least provide a defense under a reservation of rights (as in *Gray*), or even accept coverage unconditionally so that its intervention will not inject coverage issues into the underlying action against the insured (as in *Travelers Indemnity Co.*)  Again, those considerations do not apply in the instant case.

The DTSC also seems to argue at page 30 of its Answering Brief that, even when an insured's rights would <u>not</u> be threatened by an insurer's intervention (as in the instant case), the insurer's interests are nonetheless still too contingent or

_____

[3]  While the DTSC argues that the Proposed Intervenors should have reached conclusions regarding coverage when they had to file their intervention motions in late 2019, it is difficult to see how that would have been practically possible.  The Allianz September 23, 2019 reservation of rights letter (2 ER 177-79), for example, states that Allianz was still searching for its applicable policies on that date!

uncertain for it to have a protectable interest unless it has unconditionally accepted coverage, without even a reservation of rights. The DTSC cites no authority in support of that claim, however, and as discussed supra, several cases have expressly rejected it. *Ross, supra*, 426 F.3d 759-60; *Bridge Air Quality, supra*, 194 F.R.D. at 7.

Likewise, the DTSC's argument that the rights of even <u>primary</u> insurers Century and Continental to intervene[4] are too contingent or uncertain because <u>the DTSC itself</u> has not determined "which insurers to proceed against" fails on multiple levels. It is undisputed that, in its initial communication dated September 19, 2019, the DTSC demanded that all insurers indemnify the DTSC for the remediation costs incurred at the subject site. (2 ER 173-75, 2 ER 216-18, and 2 ER 240-45.) The DTSC also sought entry of judgment for <u>$3,219,449.85</u> (plus <u>future</u> remediation costs), which it represented would be enforced solely against the insurers. On these facts, the DTSC has no basis to argue that the insurers lack a protectable interest.

Significantly, the DTSC did not, and cannot, cite any authority for its position that an insurer could be barred from intervening in a third party action against its insured simply because that <u>third party plaintiff</u> is uncertain whether that

---

[4]  Additional issues concerning the rights of Allianz, an excess carrier, are discussed separately *infra* in section I.A.3. of this brief.

insurer will ultimately be obligated to cover the loss. As pointed out in the Opening Brief, such a rule would give a third-party claimant the ultimate power to preclude an insurer's intervention simply by declaring that coverage under that insurer's policy is uncertain.

Finally, the DTSC repeatedly argues that denial of intervention was somehow justified based on its purported offer to stipulate to allow the Proposed Intervenors to intervene if they would accept coverage or admit that a potential exists for coverage by issuing a reservations of rights. Preliminarily, that argument is simply improper, since it introduces insurance coverage disputes in the underlying third-party action.

For all of the reasons discussed at length above, the insurers were and are entitled to intervene under Rule 24(a)(2) as a matter of <u>right</u>. The DTSC cannot somehow deprive the insurers of that right merely because they did not acquiesce to its attempt to strong-arm them into acknowledging that coverage might exist, when coverage issues must be litigated in a subsequent proceeding. The District Court's order denying them that right was therefore unjust and erroneous.

## 2. Basic Considerations of Equity and Fairness also Dictate that the Proposed Intervenors Have a Protectable Interest.

In addition to the grounds set forth above, the Proposed Intervenors are also entitled to intervene in this action based on fundamental principles of equity, as the

courts held in the analogous cases of *Truck Insurance Exchange v. Superior Court*, 60 Cal.App.4th 342, 245-46 (1997) and *Dave Drilling, supra*, WL 4051968 *4.

In *Truck*, the plaintiff insurer, Truck, and two co-insurers issued liability policies to a roofing contractor that was eventually sued for installing allegedly defective roofing. *Id.* Truck agreed to defend the insured contractor under reservation of rights, but two co-insurers filed a declaratory relief action against the insured contractor seeking to rescind the policies that they had issued based on purported fraud. *Id.*

Before the co-insurers filed that action, the Franchise Tax Board had suspended the contractor for failure to file tax returns. *Id.* Truck sought to intervene in that declaratory relief action and oppose any such rescission, and the trial court denied Truck's motion. *Truck*, *supra*, 60 Cal.App.4th at 345.

In holding that the trial court had erred in denying that intervention, the appellate court noted that insurers have no control over their insured's solvency or corporate viability, and that it would be unjust to allow the co-insurers to unilaterally prevail on a rescission claim against their suspended insured who, by statute, cannot defend itself. 60 Cal.App.4th at 347-51.

The appellate court further noted that unless intervention were allowed, the co-insurers could use any judgment of rescission to avoid liability for Truck's equitable contribution claim. *Id.* The court ruled that Truck was entitled to

intervene so that the co-insurers not be allowed to obtain rescission of their policies "'on [their] own unilateral terms,'" in effect "shooting fish in a barrel."  *Id.* at 347 and 349 (citations omitted, emphasis added.)

Similarly in *Dave Drilling, supra*, WL 4051968 *4, the court granted the insurer's intervention request in the plaintiff's second action against the bankrupt insured in part on the grounds that that plaintiff had engaged in misconduct by filing that action without disclosing to the court the existence of the first, related action, or notifying that carrier of that action at all.

In the instant case, the circumstances also dictate that the Proposed Intervenors be allowed to intervene.  Like the plaintiff insurer in *Truck*, those insurers had no control over C&A Products' solvency, especially years after they had issued their policies.  The DTSC and its receiver also manipulated events so that neither C&A Products, LLC nor the Proposed Intervenors ever had an opportunity to respond to the FAC, or even have notice of the action until after the DTSC had already obtained their insured's default and with the scheduled hearing on the default judgment application only weeks away.

In addition, if the DTSC succeeds in obtaining its requested $3,219,449.85 default judgment (plus potential future mitigation costs), the Proposed Intervenors will not be able to contest the amount of the DTSC's damages in any future Section

11580 coverage action.[5]  The Proposed Intervenors accordingly request that this court reverse the trial court's order denying their motion seeking intervention in this action.

### 3. Allianz also Has a Protectable Interest Because It Issued a Valid Reservation of Rights and Because It Faces Possible Exposure to Liability.

Allianz also has a protectable interest pursuant to *Gray, supra*, 182 Cl.App.4th at 1523-24 because it <u>did</u> issue a reservation of rights.  The DTSC's argument that Allianz somehow lacks such an interest is contrary to controlling precedent.

The DTSC's argument that Allianz's reservation was too vague and general fails because there is no authority holding that an insurer's reservation of rights must meet any standard of specificity in order for that insurer to have a protectable interest, for purposes of intervention as a matter of right.  In holding that a defending insurer had a protectable interest, the *Gray* court's focus was entirely on

---

[5]  The Proposed Intervenors' comment at pages 35-36 of their Opening Brief that their intervention could reduce the scope and size of any subsequent Section 11580 coverage actions, which the DTSC says was unclear, simply went to this point— i.e., that if those insurers can intervene and prevent the DTSC from obtaining a default judgment "on its own unilateral terms," the amount of any judgment that ultimately is entered could well be significantly less than the $3,219,449.85 (plus future remediation costs) that it currently seeks.

ensuring that the insured's interests are protected in the third party action against the insured, not on the scope or specificity of the reservation, or the extent to which a reservation preserved the insurer's right to contest coverage in the future. *Id.*

The DTSC's argument that Allianz lacks a protectable interest because it is not certain if its excess policy layer will be penetrated by any judgment in the DTSC's future Section 11580 coverage action likewise fails as a matter of law. Even assuming that Allianz's policy provided an excess layer that only began providing coverage at a level above the $3,219,449.85 face value of the default judgment sought by the DTSC[6], the DTSC also seeks to recover <u>future</u> remediation costs from all of the Proposed Intervenors, including Allianz.

Since there is no indication in the record regarding the amount of those future costs, and the DTSC has not affirmatively rescinded its coverage request to Allianz, the DTSC has failed to establish that Allianz lacks a protectable interest sufficient to intervene in this action.

/ / /

/ / /

/ / /

---

[6] The DTSC, at page 32 of its brief, relies on a purported "coverage chart" prepared by its investigator (2 ER 89 and 92). That document raises disputed coverage issues that are not at issue here. Additionally, there is no evidence in the record establishing the accuracy of any information on that chart.

**B.**     **The Three Remaining Prongs of the *Citizens for Balanced Use* Test All Militate in Favor of the Proposed Intervenors' Intervention as a Matter of Right.**

**1.**     **The DTSC Concedes that Those Insurers' Intervention Motions Were Timely and that Their Interests Will Not Be Adequately Represented in this Action Unless They Are Allowed to Intervene.**

The DTSC does not dispute that the Proposed Intervenors' intervention motions were timely. It has therefore waived any right to dispute that issue. (*F.R.A.P.* 28(a)(9)(A);  *Playboy Enterprises, Inc. v. Public Service Commn. of Puerto Rico,* 906 F.2d 25, 40 (1ˢᵗ Cir. 1990) (party to an appeal waives any contentions not set forth in their brief.)

With respect to the issue of whether the Proposed Intervenors' interests will be adequately represented in this action absent their intervention, the DTSC only states that this court need not reach that issue if it concludes that those insurers lacked any protectable interest; it does not actually suggest that it could or would represent the Proposed Intervenors' interests in any manner. Since the Proposed Intervenors have a protectable interest for all of the reasons discussed above in section I.A., the DTSC's circular argument fails as well.

**C.     The Proposed Intervenors' Interests Will Absolutely Be Impaired Unless They Are Allowed to Intervene.**

As discussed in the Opening Brief, in order to satisfy the substantial impairment prong of the test for intervention as a matter of right, a proposed intervenor need only show that impairment of its interest is "<u>possible</u>" if intervention is denied; "[t]his burden is <u>minimal</u>." *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992, 995 (10th Cir. 2009) (emphasis added.)

Unless the Proposed Intervenors are allowed to intervene in the instant action, the DTSC can proceed with its application for a default judgment of $3,219,449,85 (plus future remediation costs) against C&A Products LLC without any party having the right to challenge liability or the amount of damages sought or otherwise oppose that judgment.  The DTSC has also expressly stated that it intends to use that judgment as a vehicle to prosecute *Insurance Code* § 11580 coverage actions against the Proposed Intervenors.

Therefore, the Proposed Intervenors easily meet the minimal burden of showing a substantial potential impairment of their interests, since they will be "substantially affected in a practical sense by a determination" made in this action. *Citizens for Balanced Use v. Montana Wilderness Ass'n.*, 647 F.3d 893, 898 (9th Cir., 2011);  *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir., 2010)

(articulating the test as a "practical impairment of the party's interest as a result of the pending litigation.")

At page 38 of its brief, the DTSC concedes that the burden of showing impairment is minimal, but argues that the Proposed Intervenors nonetheless have no "'substantial legal interest' that may be subject to impairment." The DTSC cites no authority in support of that claim, and fails to explain why the Proposed Intervenors have no such interest. Instead, the DTSC simply rehashes its arguments relating to the protectable interest prong of the *Citizens for Balanced Use* test--i.e., that those insurers should somehow be precluded from intervening because they have not unconditionally accepted coverage, or because the DTSC itself has supposedly not determined which insurers' policies provide coverage.

The DTSC essentially tries to conflate the protectable interest prong of the *Citizens for Balanced Use* test with the completely separate substantial impairment prong. Its arguments relating to the protectable interest prong, however, fail for the reasons discussed at length above in section I.A., and it cannot somehow convert those failed protectable interest arguments into successful arguments with respect to the separate substantial impairment prong of that test.

The DTSC also argues that the Proposed Intervenors' interests will not be impaired if they are precluded from intervening because they can still assert coverage defenses in its future Section 11580 coverage action(s) against them.

Again, however, the Proposed Intervenors should also have a right to contest their insured's underlying <u>liability</u> and the <u>amount of the DTSC's damages</u>, and they will not have any opportunity to do so unless this court reverses the District Court's erroneous ruling denying them the right to intervene in this action and oppose the DTSC's default judgment application.

For the reasons discussed above, the District Court erred as a matter of law in denying the Proposed Intervenors' motions—especially in light of the de novo standard governing this court's review of that order.

## II. <u>THE DISTRICT COURT ALSO ERRED IN RULING THAT THE PROPOSED INTERVENORS ARE NOT ENTITLED TO PERMISSIVE INTERVENTION UNDER *F.R.C.P.* 24(b).</u>

The DTSC likewise failed to refute the Proposed Intervenors' showing that they are entitled to permissive intervention under Rule 24(b). In determining such a motion, a District Court must consider whether the proposed intervenor has a claim or defense that shares common questions of law or fact with the action and whether intervention will delay or prejudice the original parties' adjudication of their rights. *F.R.C.P.* 24(b).

Basic considerations of fairness and due process dictate that the Proposed Intervenors be able to contest both their insured's underlying liability and the amount of the DTSC's damages—defenses which certainly "share common

questions of law and fact" with the instant action. They cannot do so in any future Section 11580 coverage action(s) that the DTSC brings. The DTSC's unsupported assertion that the Proposed Intervenors "have not identified common questions of law" (Answering Brief, p. 41) should fail as a matter of law.

Intervention would also certainly not prejudice the DTSC, since under federal law, merely requiring the proponent of prejudice to prove its case and allowing the opposing party to contest that proof cannot constitute prejudice. *E.g., Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (prejudice in context of motion seeking to set aside default under *F.R.C.P.* Rule 55.) In fact, the DTSC does not even argue in its brief that the prejudice/delay factor militates against permissive intervention in the instant action; it instead argues that the Proposed Intervenors lack standing to intervene in the instant action because their interests are somehow "contingent" merely because they have not unconditionally accepted coverage. (Answering Brief, p. 39.)

That argument fails for several reasons. First, it again simply represents a rehashing of the DTSC's argument that the Proposed Intervenors have no protectable interest for purposes of intervention as a matter of right under Rule 24(a)(2). As discussed above at length above in section I.A., that argument fails as a matter of law, and the sole authority that the DTSC cites in support - *Travelers*

*Indemnity Co., supra*, 884 F.2d at 638 - is distinguishable on its face from the instant case.

Even assuming that the Proposed Intervenors do not have an adequate protectable interest in the instant action for purposes of intervention as a matter of right under Rule 24(a)(2), the DTSC's argument is also inconsistent with the black-letter rule that a "significant protectable interest" is <u>not</u> required for <u>permissive</u> intervention under Rule 24(b). *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 412 (N.D. Cal 2004); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977).

Finally, the DTSC argues that the Proposed Intervenors have not shown how their intervention would "contribute to the full development of the underlying factual issues" or to "the just and equitable adjudication of the legal questions presented." (Answering Brief, p. 41, citations omitted.) It cannot be disputed, however, that allowing the Proposed Intervenors to defend the DTSC's claims against a bankrupt insured will contribute to a more "just and equitable" result than allowing the DTSC to obtain an uncontested default judgment. The District Court accordingly erred in denying permissive intervention in this action.

**III.** **THE TRIAL COURT ERRED IN FAILING TO VACATE THE DEFAULT ENTERED AGAINST C&A PRODUCTS, LLC.**

The Proposed Intervenors should not be bound by the default entered against C&A Products, LLC. In its December 4, 2019 order denying the motions seeking to vacate that default, the District Court provided no explanation or rationale for that denial, discussing only the bases for its denial of the concurrent intervention motions.[7] (4 ER 802-07.)

In light of the DTSC's and the receiver's collusive conduct in the instant case, however, justice required that the default be vacated. As discussed at length above, the receiver failed to provide a defense for C&A Products, LLC, and neither it nor the DTSC notified the Proposed Intervenors of this action, of the default entered against C&A Products, LLC, or of the application for a default judgment, until mere weeks before the hearing on that application. That manipulation of the legal system justifies the elimination of the default that resulted from it.

In any case, even where a default has been entered against the insured, an intervening insurer is entitled to contest the insured's underlying liability, as well as damages. *Western Heritage Ins. Co. v. Superior Court*, 199 Cal. App. 4th 1196,

---

[7] The Opening Brief's comment that the District Court did not "address" the motions seeking to vacate the default referred (perhaps a little imprecisely) only to this absence of explanation in that court's order. It is undisputed that that court expressly denied those motions.

1206-08 (2011).  Basic considerations of fairness and due process dictate that the

Proposed Intervenors be afforded an opportunity to contest C&A Products, LLC's

liability and the amount of the DTSC's damages, rather than just being limited to

coverage defenses in any future Section 11580 actions.

## IV.    <u>CONCLUSION.</u>

For the reasons set forth above, the Proposed Intervenors request that this

court reverse the District Court's December 4, 2019 order denying their motions

seeking to intervene and to vacate the default entered against C&A Products, LLC.

DATED:  September 8, 2021  WOOD, SMITH, HENNING &
           BERMAN LLP


          By:  */s/ Thomas F. Vandenburg*
            THOMAS F. VANDENBURG
            NICHOLAS M. GEDO
            STRATTON P. CONSTANTINIDES
          Attorneys for Appellants, Century Indemnity
          Company as successor to CCI Insurance
          Company as successor to Insurance Company
          of North America, Allianz Underwriters
          Insurance Company, Chicago Insurance
          Company, and Fireman's Fund Insurance
          Company

DATED: September 8, 2021    NICOLAIDES FINK THORPE MICHAELIDES
SULLIVAN LLP


By:    */s/ Randall P. Berdan*
           SARA M. THORPE
           RANDALL P. BERDAN
Attorneys for Proposed Intervenor-Appellant,
THE CONTINENTAL INSURANCE
COMPANY

## CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULE 32-1

The undersigned certified that the attached brief has been prepared in proportionately spaced Times New Roman typeface of fourteen (14) point, in double spaced text and the word count, as determined by the word processing system used in preparing this brief, is 5,628 words.

DATED: September 8, 2021    WOOD, SMITH, HENNING & BERMAN LLP

By:    */s/ Thomas F. Vandenburg*
    THOMAS F. VANDENBURG
    NICHOLAS M. GEDO
    STRATTON P. CONSTANTINIDES
Attorneys for Proposed Intervenors-Appellants,
CENTURY INDEMNITY COMPANY,
ALLIANZ UNDERWRITERS INSURANCE
COMPANY, CHICAGO INSURANCE
COMPANY, and FIREMAN'S FUND
INSURANCE COMPANY

DATED: September 8, 2021    NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP

By:    */s/ Randall P. Berdan*
    SARA M. THORPE
    RANDALL P. BERDAN
Attorneys for Proposed Intervenor-Appellant,
THE CONTINENTAL INSURANCE
COMPANY